# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | | |
|---|---|---|
| **JOHN DOE #1-#14 and JANE DOE #1-#2,**<br>**Plaintiffs,**<br>vs. | ) ) ) ) | |
| **LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense** | ) ) ) ) | |
| **XAVIER BECERRA, in his official capacity as Secretary of the U.S. Department of Health and Human Services,** | ) ) ) ) ) | |
| **FRANK KENDALL, in his official capacity as Secretary of the Air Force, Department of the Air Force,** | ) ) ) ) | **CIVIL ACTION NO. 3:21-cv-01211-TKW-HTC**<br><br>**(ORAL ARGUMENT REQUESTED)** |
| **CARLOS DEL TORO, in his official capacity as Secretary of the Navy, Department of the Navy, and** | ) ) ) ) | |
| **JANET WOODCOCK, in her official capacity as Acting Commissioner of the U.S. Food and Drug Administration, and** | ) ) ) ) | |
| **CHRISTINE WORMUTH, in her official capacity as Secretary of the Army, Department of the Army,**<br>**Defendants.** | ) ) ) ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR ADMINISTRATIVE STAY, DECLARATORY ORDER, TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………1

I.  STATEMENT OF FACTS………………………………………………..4

II. ARGUMENT……………………………………………………………..4

   A.  Jurisdiction and Justiciability……………………………………..4

   B.  Plaintiffs' Standing…………………………………………………...5

   C.  Legal Standard……………………………………………………..7

     1.  Preliminary Injunction and Temporary Restraining Order………………...7

     2.  Administrative Stay…………………………………………………..7

     3.  For Plaintiffs' Constitutional Claims the Court Should Apply Strict
       Scrutiny, rather than *Jacobson v. Massachusetts* Rational Basis Review….7

       a)  State Legislation vs. Federal Administrative Action……………………..8

       b)  Material Differences Between Diseases, Vaccines and Risks…………...9

       c)  The Changing Meaning of "Vaccine" and Implications for Public Health
         Justification for Vaccine Mandate…………………………………...12

       d)  Consequences for Non-Compliance…………………………………14

   D.   Plaintiffs Have a Substantial Likelihood of Success on the Merits……...14

     1.  The DOD Mandate Violates Plaintiffs' Substantive Due Process Rights to
       Bodily Integrity and to Refuse Unwanted, Unnecessary, and Unproven
       Experimental Medical Treatmenty Restraining Order……………….......14

     2.  DOD Mandate Imposes Unconstitutional Conditions……………………19

     3.  DOD Mandate Violates Equal Protection Clause………………………...20

     4.  Major Questions Doctrine & Separation of Powers Issues……………..22

   E.  Plaintiff Will Suffer Irreparable Harm Absent a Preliminary Injunction
      and/or Temporary Restraining Order……………………………………..24

   F.  The Balance of Equities (Including the Public Interest) Weighs Heavily in

Plaintiffs' Favor…………………………………………………………26

III. CONCLUSION………………………………………………………..27

CERTIFICATE OF COMPLIANCE…………………………………………..27

CERTIFICATE OF SERVICE……………………………………...............28

## <u>TABLE OF AUTHORITIES</u>

**AGENCY ORDERS & GUIDANCE**

FDA, BL 125742/0, Comirnaty Vaccine BLA Approval (Aug. 23, 2021) ("FDA Comirnaty Approval") — *Passim*

FDA, Pfizer-BioNTech EUA Letter (Aug. 23, 2021) ("BioNTech EUA Expansion Letter") — *Passim*

SECDEF, "Memorandum for Senior Pentagon Leadership, Mandatory Coronavirus Disease 2019 Vaccination of DOD Service Members" (Aug. 24, 2021) ("DOD Mandate") — *Passim*

**CASES**

*Ala. Assoc. of Realtors v. U.S. Dep't Health and Human Servs.*, 2021 WL 1779282 (D.D.C. May 5, 2021), *aff'd*, 2021 WL 2221646 (D.C. Cir. June 2, 2021), *aff'd*, 2021 WL 3783142 (U.S. Aug. 26, 2021) — 23

*Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807 127 L.Ed.2d 114 (1994) — 15

*Amend v. Bioport, Inc.*, 322 F.Supp.2d 848 (W.D. Mich. 2004) — 18

*Banks v. HHS*, ---Fed.Appx.---, 2021 WL 3138562 (11th Cir. 2021) — 5

*Bolling v. Sharpe*, 347 U.S. 497 (1954) — 20

*Brown v. HHS*, 4 F.4th 1220 (11th Cir. 2021) — 24

*Cruzan v. Dir., Mo. Dep't of Public Health*, 497 U.S. 261 (1990) — 14

*Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012 (D.C. Cir. 1997) — 6

*Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976) — 24

*Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) — 17

*Graham v. Richardson*, 403 U.S. 365, 91 S. Ct. 1848, 29 L.Ed.2d 534 (1971) — 21

*Heinrich v. Sweet,* 62 F.Supp.2d 282 (D.Mass.1999) — 17, 18

*In re Cincinnati Radiation Litig.,* 874 F.Supp. 796 (S.D.Ohio 1995) — 17, 18

*Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) — *Passim*

*Jessen v. Village of Lyndon Station*, 519 F. Supp, 1183 (W.D. Wis. 1981) — 25

*John Doe No. 1 v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003) — *Passim*

*John Doe No. 1 v Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004)    *Passim*

*Klaassen v. Trustees of Ind. Univ.*, --- F.Supp.3d. ---, 2021 WL 3073926 (N.D. Ind. July 18, 2021), *aff'd*, 7 F.4th 592 (7th Cir. 2021)    *Passim*

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013)    19

*Laube v. Haley*, 234 F. Supp. 2d 1227 (M.D. Ala. 2002)    26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 1230, 119 L.Ed.2d 351 (1992)    6

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009)    7, 26

*Rempfer v. Eschenbach*, 535 F.Supp.2d 99 (D.D.C. 2008)    10

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 208 L.Ed.2d 206 (2020)    *Passim*

*Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L.Ed.2d 908 (1966)    15

*Sessions v. Morales*, 137 S. Ct. 1678 (2017)    20

*Siegel v. LePore,* 234 F.3d 1163 (11th Cir. 2000)    7, 24

*Schloendorff v. Society of N.Y. Hosp.*, 211 N.Y. 125, 105 N.E. 92 (1914)    14

*Spokeo, Inc. v. Robbins*, 578 U.S. 856, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016)    5

*South Bay Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 207 L.Ed.2d 154 (2020)    8

*Speigner v. Alexander*, 248 F.3d 1292 (11th Cir. 2001)    5

*Stadt v. Univ. of Rochester,* 921 F.Supp. 1023 (W.D.N.Y.1996)    17, 18

*Teva Pharmaceuticals USA, Inc. v. FDA*, 514 F.Supp.3d 66 (D.D.C. 2020)    6

*Union Pac. Ry. Co. v. Botsford,* 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891)    15

*U.S. Forest Serv. v. Cowpasture River Preservation Assn.*, 140 S. Ct. 1837 (2020)    23

*United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987)    17

*Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L.Ed.2d 772 (1997)    14, 15

*Winter v. NRDC*, 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008)    24, 26

**CONSTITUTION**

U.S. CONST. AMEND. V    *Passim*

U.S. CONST. AMEND. IX    5

U.S. CONST. AMEND. XIV    *Passim*

**STATUTES AND RULES**

5 U.S.C. § 551    5

5 U.S.C. § 705    7

28 U.S.C. § 2201    5

28 U.S.C. § 2202    5

28 U.S.C. § 1331    5

28 U.S.C. §§ 1343(a)(3), (a)(4)    5

42 U.S.C § 1983    5

American Rescue Plan Act of 2021, Pub. L. No. 117-2    23

Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020)    23

Consolidated Appropriations Act, 2021 Pub. L. 116–260, 134 Stat. 2078–2079    23

Fed. R. Civ. P. 65    25

**OTHER AUTHORITIES**

CDC, *Smallpox Vaccine Basics*    10

CDC, *Vaccines and Immunizations: Definition of Terms*    13

CDC, *COVID Data Tracker Weekly Review*    *Passim*

W. Keeton, et al. PROSSER AND KEETON ON LAW OF TORTS (5th ed. 1984)    14

Michael Lee, *Biden's Vaccination Mandate Doesn't Include Illegal Immigrants*, FOX NEWS (Sept. 9, 2021)    21

Rich Mendez, *WHO Says Covid Will Mutate Like the Flu and Is Likely Here to Stay*, CNBC (Sept. 7, 2021)   10

National Center for Biotechnology Information, *Smallpox Vaccine: The Good, the Bad, and the Ugly*, Clin. Med. Res. Apr. 2003; 1(2):87-92 (2003)   9

GAO, *Coronavirus Oversight: Overview*   23

**<u>INTRODUCTION</u>**

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiffs John Doe #1 to #14 and Jane Doe #1 and #2,[1] file this action against Defendants seeking an Administrative Stay of—and Temporary Restraining Order ("TRO") and Preliminary Injunction enjoining—the Department of Defense's ("DOD") August 24, 2021 COVID-19 vaccine mandate ("DOD Mandate"), *see* ECF No. 1-2, and the implementation thereof by each of the Armed Services. *See* ECF No. 1-6 to 1-9 ("Armed Services Guidance").  Defendants are sued in their official capacities for injunctive and declaratory relief.

The DOD Mandate should be considered as part of a larger effort by federal administrative agencies and the Executive Branch to impose unconstitutional vaccination mandates for essentially all Americans. *See* ECF No. 1, Compl., Section II ("Federal Vaccine Mandates").  Because federal administrative vaccine mandates bypass Congress, the States, and the constitutional limits on federal executive authority, these mandates implicate not only Plaintiffs' individual rights, but also the separation of powers and State sovereignty in our federal system.

In the instant motion, Plaintiffs' request that this Court address the larger

---

[1] Plaintiffs are a group of active-duty service members from each branch of the military, *i.e.*, United States Air Force, Army, Marine Corps, and Navy (collectively, "Armed Services").  *See* ECF No. 1-18 (Plaintiffs' Declarations).

questions raised by federal vaccine mandates, in particular: whether federal administrative agencies, acting without any clear grant of congressional authority, can unilaterally mandate medical treatment for essentially all U.S. citizens; whether federal agencies can deprive citizens of their freedom, livelihoods, and fundamental rights for refusal; whether the federal government can assert emergency power to displace the States' inherent "police power;" and whether federal agencies may make 100 million or more unvaccinated Americans second-class citizens, unable to serve their country, work, attend school, or participate in the Nation's economic and cultural life.   Plaintiffs' constitutional claims thus raise distinct issues from Plaintiffs' statutory claims.[2]

Plaintiffs' central constitutional objection to the DOD Mandate, and other federal mandates, is that they violate Plaintiffs' substantive due process right to refuse unwanted, unnecessary, and unproven experimental medical treatment. Courts have frequently—and in Plaintiffs' view, incorrectly—analyzed COVID-related restrictions using the "rational basis" standard of review based on the Supreme Court's 1905 decision in *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct.

---

[2] On October 6, 2021, Plaintiffs filed an emergency motion seeking injunctive and declaratory relief for Defendants' violations of federal laws and regulations. *See* ECF No. 3. The instant motion is more narrowly focused on the constitutional issues raised by the DOD Mandate, and the requested relief is limited to the DOD and the Armed Services that would not necessarily apply to the Food and Drug Administration ("FDA") or the Department of Health and Human Services ("HHS").

358, 49 L.Ed. 643 (1905), a case decided before the development of substantive due process and bodily integrity and privacy doctrines. There are several material differences between the smallpox vaccine mandate at issue in *Jacobson* and the DOD Mandate for COVID-19 with respect to the legal basis (or lack thereof) for the enactment of the mandates (as well as the diseases, vaccine safety and efficacy, and the consequences for non-compliance). The Supreme Court has recently rejected *Jacobson*'s "rational basis review" standard in favor of "strict scrutiny" analysis where, as here, COVID-19 restrictions impinge on fundamental rights. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, --- U.S. ---, 141 S.Ct. 63, 67, 208 L.Ed.2d 206 (2020) ("*Cuomo*"). Plaintiffs' urge this Court to follow *Cuomo* and apply strict scrutiny to strike down the DOD Mandate, rather than *Jacobson*'s rational basis review. *See supra* Section II.C.3

The DOD Mandate also imposes unconstitutional conditions by forcing Plaintiffs to choose between an involuntary injection or suffering the loss of employment, liberty, benefits, reputation and fundamental rights. Further, if the DOD and other federal vaccine mandates are upheld, unvaccinated Plaintiffs' will likely be unable to find alternative employment, and will likely be deprived of an ever greater range of constitutionally protected freedoms and privileges. In addition, the DOD Mandate and other federal mandates violate equal protection insofar as these mandates: (1) would collectively apply to all U.S. citizens and lawful residents,

while systematically excluding those entering or remaining in the country illegally; and (2) single out individuals for differential and less favorable treatment based on their medical history, medical conditions, or disabilities.

Plaintiffs therefore urge this court to: (1) find that the DOD Mandate infringes upon Plaintiffs' constitutional right to refuse unwanted, unnecessary, and unproven medical treatment, imposes unconstitutional conditions and violates equal protection; (2) find that neither the DOD nor any other federal agency has the authority to issue a vaccine mandate; (3) stay the effective date of the DOD Mandate and enjoin any implementation of the DOD Mandate by the Armed Services, or any disciplinary action against Plaintiffs' for non-compliance; and (4) grant any other declaratory or injunctive relief as described in the Complaint and Motion or deemed necessary or appropriate by this Court.

## I.      STATEMENT OF FACTS

The relevant facts are fully set forth in the Complaint. *See* ECF No. 1 ("Statement of Facts"), Sections I-VIII. Given the complexity of the argument and this Court's page limits, the relevant facts shall be referenced as necessary in Section II of this Memorandum.

## II.     ARGUMENT

### A.      Jurisdiction and Justiciability

This Court has jurisdiction because this case arises under federal law,

namely: the Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, U.S. CONST. AMENDS. V, IX, and XIV; 42 U.S.C § 1983; and the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 et seq. Accordingly, this court has federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1343(a)(3)-(4). This court also has jurisdiction to provide the declaratory and equitable relief requested herein. *See* 28 U.S.C. §§ 2201-2202.

Plaintiffs' claims against Defendants' SECDEF and the DOD are justiciable. In the Eleventh Circuit, claims by service members against the armed services are normally non-justiciable, except for "facial challenges to military regulations." *Speigner v. Alexander*, 248 F.3d 1292, 1296 (11th Cir. 2001). Plaintiffs' claims are facial challenges to the DOD Mandate, a military regulation. In light of the issued and announced federal vaccine mandates that will apply to nearly all public and private employees, the DOD Mandate should be considered more appropriately a generally applicable employment regulation.

## B.   Plaintiffs' Standing

A plaintiff establishes standing by demonstrating (1) a "concrete and particularized" injury that is "actual or imminent"; (2) "fairly traceable to the challenged conduct"; and (3) "likely to be redressed by a favorable judicial decision." *Banks v. HHS.*, --- Fed.Appx. ---, 2021 WL 3138562 (11th Cir. July 26, 2021) (*quoting Spokeo, Inc. v. Robbins*, 578 U.S. 856, 136 S. Ct. 1540, 1547, 194

L.Ed.2d 635 (2016)).

Each of these requirements are easily met. Plaintiffs will suffer an "actual and imminent" "concrete and particularized" injury" due to the unlawful and unconstitutional DOD Mandate and the Armed Service Guidance. Courts have routinely granted standing to service members challenging a new vaccine mandate applicable to them. *See generally John Doe No. 1 v. Rumsfeld,* 297 F. Supp. 2d 119 (D.D.C. 2003) and *John Doe No. 1 v Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004) ("*Rumsfeld II*"). Plaintiffs also have standing as the subject of the challenged agency action. *Teva*, 514 Supp.3d at 91.

The latter two elements, traceability and redressability, normally "overlap as two sides of the causation coin." *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997). Where, as here, the plaintiff or "petitioner is the object of the challenged agency action, there is usually little doubt of causation." *Teva Pharmaceuticals USA, Inc. v. FDA*, 514 F.Supp.3d 66, 91 (D.D.C. 2020) ("*Teva*") (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62, 112 S. Ct. 1230, 119 L.Ed.2d 351 (1992) ("*Lujan*")). Plaintiffs' injury is directly traceable to the actions of the DOD in adopting the DOD Mandate, and to the Armed Services Guidance. Their injury can be redressed by this Court's grant of the stay and the declaratory and injunctive relief requested in this Motion.

6

C.    **Legal Standard**

1.    **Preliminary Injunction and Temporary Restraining Order**

A district court may grant a preliminary injunction, or a temporary restraining order, if the moving party shows that it has: (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) the balance of equities favors the moving party; and (4) the injunction is in the public interest.  *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

2.    **Administrative Stay**

The Administrative Procedures Act allows a court to:

> [I]ssue all necessary and appropriate ***process*** to postpone the effective date of agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705 (emphasis added).  The standards for administrative stays are the same as the above for injunctive relief, with the important distinction that preliminary injunctions act on the person, while stays act on the proceeding. *See, e.g., Nken v. Holder*, 556 U.S. 418, 432-33 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009) ("*Nken*").  Here, the proceedings that Plaintiffs seek to stay are the proceedings resulting in the issuance of the DOD Mandate and the Armed Services Guidance.

3.    **For Plaintiffs' Constitutional Claims the Court Should Apply Strict Scrutiny, rather than *Jacobson v. Massachusetts* Rational Basis Review.**

Courts have frequently, and incorrectly, analyzed COVID-related restrictions using the "rational basis" standard of review based on the Supreme

7

Court's 1905 decision in *Jacobson v. Massachusetts*, a case decided before the development of substantive due process and bodily integrity and privacy doctrines. There are several material differences between the smallpox vaccine mandate at issue in *Jacobson* and the DOD Mandate for COVID-19 with respect to the legal basis (or lack thereof) for the enactment of the mandates and with respect to the diseases, vaccine safety and efficacy, and the consequences for non-compliance.

The Supreme Court has recently rejected *Jacobson*'s "rational basis review" standard in favor of "strict scrutiny" analysis where, as here, COVID-19 restrictions impinge on fundamental rights. *See Cuomo*, 141 S.Ct. at 67.[3]  This Court should apply *Cuomo*'s strict scrutiny, rather than *Jacobson*'s rational basis review.

### a)      State Legislation vs. Federal Administrative Action

The vaccine mandate at issue in *Jacobson* was enacted pursuant to State

---

[3]   In *Cuomo*, the Supreme Court emphasized that "[e]ven in a pandemic, the Constitution cannot be put away and forgotten," *Cuomo*, 141 S.Ct. at 68, and abandoned its reliance on *Jacobson* in earlier cases such as *South Bay Pentecostal Church v. Newsom*, 590 U.S. ---, 140 S.Ct. 1613, 207 L.Ed.2d 154 (2020).  See *Cuomo*, 141 S.Ct. at 70 ("But *Jacobson* hardly supports cutting the Constitution loose during a pandemic.") (Gorsuch, J., concurring).   Justice Gorsuch's concurrence suggests that the mandatory vaccine regime at issue in *Jacobson* – where the plaintiff had to choose between a highly safe and effective smallpox vaccine or a $5 fine, with opt-outs for objectors – might have survived modern strict scrutiny analysis. Gorsuch's speculation is merely dicta, however, as there was no vaccine mandate before the Court in *Cuomo*; in any case, there are material differences between the mandate in *Jacobson* and the DOD Mandate (discussed below) that render *Jacobson* inapposite.

legislation enacted under its "inherent police power." *See Klaassen v. Trustees of Ind. Univ.*, --- F.Supp.3d. ---, 2021 WL 3073926, at *17 (N.D. Ind. July 18, 2021), *aff'd*, 7 F.4th 592 (7th Cir. 2021) (*citing Jacobsen*, 197 U.S. at 24-25). Here, by contrast, the DOD Mandate is simply an (unlawful) administrative order that is premised on a separate and unlawful administrative action by the FDA. Congress has not authorized the DOD or any other federal agency to impose a vaccine mandate.

**b)   Material Differences Between Diseases, Vaccines and Risks**

"Smallpox has been a scourge against humanity for at least the past 1500 years," and has "inarguably shaped the course of human history,"[4] killing at least 300 million people in the Twentieth Century alone. *Klaassen*, 2021 WL 3073926, at *17. The mortality rate for smallpox is "about 30%," *id.*, compared to less than one percent (1%) for COVID, and less than 0.02% for military service members like Plaintiffs. *See* ECF No. 1, Compl., ¶ 43.[5]

---

[4] *See* National Center for Biotechnology Information, *Smallpox Vaccine: The Good, the Bad, and the Ugly* at 87, Clin. Med. Res. Apr. 2003; 1(2):87-92 (2003), available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1069029/ (last visited Oct. 4, 2021) ("*Smallpox Vaccine*").

[5] Smallpox had an IFR of 30% vs. 0.02% (or 600 times greater) for COVID for DOD service members (or 0.05% for 20-49 age group). So, for example, out of one million people there would be 300,000 smallpox deaths compared to 500 COVID-19 deaths in the 20-49 age group (*i.e.*, 600 times greater death rate for smallpox than for COVID-19). The IFR for anthrax, the only recent adult disease that that has been

With respect to the vaccines, one key difference is that the smallpox vaccine *worked*, and it was known to have worked *safely* for over a century prior to the *Jacobson* mandate.  *See Klaassen*, 2021 WL 3073926, at \*17 (smallpox vaccine in use since 1808).  It worked so well that smallpox was eradicated in the United States in first half of the Twentieth Century, and was eradicated *worldwide* by 1980 when the U.S. and UN decided to act.[6]  No one suggests that the mandated COVID-19 vaccines could eliminate COVID-19; instead, the scientific consensus is that COVID-19 will mutate like the flu and that it is "here to the stay with us."[7]

In any case, until less than a month ago, all COVID-19 vaccines were officially designated as "experimental" drugs, and Comirnaty's long-term efficacy and risks are still unknown and "not proven." *Klaassen*, 2021 WL 3073926, at \*12.

_____

the subject of a vaccine mandate, ranged from 20% up to 90%.  *See Rempfer v. Eschenbach*, 535 F.Supp.2d 99, 101 (D.D.C. 2008).

[6] CDC, *Smallpox*, available at: https://www.cdc.gov/smallpox/index.html (last visited Sept. 18, 2021). The smallpox vaccine was a "traditional" vaccine in that the vaccine provided vaccinated persons with long-term immunity that prevented both infection and transmission to others. According to the CDC, the smallpox vaccine prevented infection in 95% of those vaccinated for a period of three to five years. *See* CDC, *Smallpox Vaccine Basics*, available at: https://www.cdc.gov/smallpox/vaccine-basics/index.html (last visited Sept. 18, 2021).

[7] *See, e.g.,* Rich Mendez, *WHO Says Covid Will Mutate Like the Flu and Is Likely Here to Stay*, CNBC (Sept. 7, 2021), available at: https://www.cnbc.com/2021/09/07/who-says-covid-is-here-to-stay-as-hopes-for-eradicating-the-virus-diminish.html (last visited Sept. 19, 2021).

The FDA's rushed, politicized, and improper approval, based on data for a minimal period (or non-existent data for populations like Natural Immunity Plaintiffs and WOCBP Plaintiffs), does not change that.   The FDA reaffirmed the Pfizer-BioNTech vaccine's experimental status when it reissued the EUA on the same day, and for the same indication, as it licensed Comirnaty. *See* ECF No. 1, Compl., ¶ 74. The recent FDA debate over whether to authorize a third "booster" shot, *see* ECF No. 1, ¶¶ 89-90, and current Israeli proposals to administer a fourth booster shot, mean that the efficacy and even the dosage for Comirnaty are still unknown.

What is known, however, is that, unlike the smallpox vaccine, the COVID-19 vaccines: (1) do not provide "immunity," even in the short-term; (2) have rapidly decreasing efficacy, *e.g.*, decreasing to as low as 42% after six months (with a median of only 65%), *see* ECF No. 1-15, Oliver FDA Presentation, Slide 15; and (3) do not prevent retransmission to the vaccinated or unvaccinated alike.

Regarding safety, the smallpox vaccine was discovered in 1798, and thus had been in use for over a Century when *Jacobson* was decided. Its long-term risks and side effects were well understood and minimal, with roughly one death per one million injected with Smallpox vaccine. *See supra Smallpox Vaccine*, note 4, at 89.   For the COVID-19 vaccines, by contrast, the mortality rate, based on substantial under- and self-reported VAERS data, is nearly two orders of magnitude

greater (roughly one per 30,000 vaccinated persons).[8]

### c) The Changing Meaning of "Vaccine" and Implications for Public Health Justification for Vaccine Mandate

These differences between the smallpox vaccine and the COVID-19 vaccines have important implications for public health and evaluating the costs and benefits of a vaccine mandate. The smallpox vaccine provided long-term immunity and prevented retransmission. Accordingly, it was an appropriate and effective means of preventing outbreaks or pandemics, and thereby protecting public health and reducing risk to others. The COVID-19 "vaccine" at most provides protection, rather than immunity, from COVID-19, and it does not prevent re-transmission. It is presumably for this reason that the CDC has repeatedly changed the definitions of vaccine and vaccination repeatedly from "prevent" (pre-2015), "produce immunity" (2015-August 2021) to "produce protection" (September 2021). Compare the "evolution" of the CDC's definitions of vaccines and vaccination over the past years and even weeks:

**July 10, 2012**

**Vaccination:** Injection of a killed or weakened infectious organism in order to **prevent** the disease.

---

[8] The Comirnaty VAERS data covers only a few months from a limited, self-selected and statistically invalid sample, where 93% of sample was "unblinded" after the first two months. The smallpox vaccine mortality rate of one in one million compared to about 6,000 deaths after 180,000,000 vaccinations (or approximately 0.03% or 300 per million), or 300 times greater.

**Vaccine:** A product that **produces immunity** therefore protecting the body from the disease.[9]

**August 26, 2021**

**Vaccine:** A product that stimulates a person's immune system **to produce immunity** to a specific disease, protecting the person from that disease.

**Vaccination:** The act of introducing a vaccine into the body to **produce immunity** to a specific disease.[10]

**September 18, 2021**

**Vaccine:** A preparation that is used to **stimulate** the body's **immune response** against diseases.

**Vaccination:** The act of introducing a vaccine into the body to **produce protection** from a specific disease.[11]

Based on the limited efficacy of the COVID-19 vaccines and their inability to prevent re-transmission, the CDC abandoned any pretense that the COVID-19 vaccines can prevent disease or its spread, and moved the goalposts to merely providing "protection."

---

[9] CDC, *Vaccines and Immunizations: Definition of Terms* (July 10, 2021), available at: http://web.archive.org/web/20120710132002/https://www.cdc.gov/vaccines/vac-gen/imz-basics.htm (last visited Sept. 18, 2021) (emphasis added).

[10] CDC, *Vaccines and Immunizations: Definition of Terms* (Aug. 26, 2021), available at: http://web.archive.org/web/20210826113846/https://www.cdc.gov/vaccines/vac-gen/imz-basics.htm (last visited Sept. 18, 2021) (emphasis added).

[11] CDC, *Vaccines and Immunizations: Definition of Terms*, available at: https://www.cdc.gov/vaccines/vac-gen/imz-basics.htm (last visited Sept. 18, 2021).

13

### d)    Consequences for Non-Compliance

Unlike the plaintiff in *Jacobson*, who was faced with the choice of smallpox vaccination or payment of a $5 fine (about $140 today), *Cuomo*, 141 S.Ct. at 70, Plaintiffs face termination, separation from the Armed Services, and disciplinary action, up to and including a dishonorable discharge and prison time, as well as the loss of fundamental constitutional rights. *See generally*, ECF No. 1, Compl., Section III.D, ¶¶ 56-57 ("Consequences for Non-Compliance").

### D.    Plaintiff Has a Substantial Likelihood of Success on the Merits

### 1.    The DOD Mandate Violates Plaintiffs' Substantive Due Process Rights to Bodily Integrity and to Refuse Unwanted, Unnecessary, and Unproven Experimental Medical Treatment.

The Constitution protects a person's right to "refus[e] unwanted medical care." *See, e.g., Cruzan v. Dir., Mo. Dep't of Public Health*, 497 U.S. 261, 278 (1990) ("*Cruzan*").[12]   This right is "so rooted in our history, tradition, and practice as to require special protection under the Fourteenth Amendment." *Washington v.*

---

[12] The common law baseline is also a key touchstone out of which grew the relevant constitutional law. *See, Cruzan*, 497 U.S. at 278 ("At common law, even the touching of one person by another without consent and without legal justification was a battery."). *See also* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON LAW OF TORTS § 9, pp. 39-42 (5th ed. 1984).); *Schloendorff v. Society of N.Y. Hosp.*, 211 N.Y. 125, 129-130, 105 N.E. 92, 93 (1914) (Cardozo, J.) ("Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages.").

14

*Glucksberg,* 521 U.S. 702, 722 n.17, 117 S. Ct. 2258, 138 L.Ed.2d 772 (1997) ("*Glucksberg*"). As such, the right to bodily integrity and to refuse unwanted medical treatment is a central plank of the Supreme Court's substantive due process doctrine.[13]

The Supreme Court has, however, cautioned lower courts to "exercise the utmost care" in "extending constitutional protection to an asserted right or liberty interest." *Glucksberg*, 521 U.S. at 720. The Supreme Court's "established method of substantive-due-process analysis" has "two primary features:"

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a ***careful description*** of the asserted fundamental liberty interest.

*Id.* at 720-721 (emphasis added). The discussion above demonstrates that the right

---

[13] As the Supreme Court has noted, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994). The right to bodily integrity has long been recognized. *See Union Pac. Ry. Co. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891) (holding that "[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law"); *Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966) (stating that "[t]he integrity of an individual's person is a cherished value of our society").

to bodily integrity is as deeply rooted in our traditions and in the common law as any.

But recent decisions by lower courts have carelessly and expansively described the right at issue as a right to refuse vaccines, then relied on *Jacobson* rational basis review to deny that there is any right against involuntary vaccination. *See, e.g., Klaassen*, 2021 WL 3073926, at *24 (*citing Jacobson*, 197 U.S. at 30-31 and other cases) ("the court declines the students' invitation to extend substantive due process" to grant a "right to refuse a vaccination").

Plaintiffs here do not assert a generic right to refuse a vaccination. Instead, they assert a right to refuse mandatory medical treatment that: (1) is still experimental and whose long-term safety and efficacy is "not proven," *Klaassen*, 2021 WL 3073926, at *17, as reaffirmed by the FDA's reissuance of the EUA for the same indication as the licensed vaccine; (2) is unnecessary, based on long-standing scientific evidence of natural immunity from previous infections; and (3) has not been shown to have any therapeutic effect, and for which there is no data for "special populations" that include the Plaintiffs with natural immunity, women of child bearing potential or with other medical conditions or medical history that may limit vaccine efficacy or decrease safety. *See* ECF No. 1, Compl., Section V.D.1, ¶¶ 79-80.

Plaintiff's substantive due process claims should instead be viewed in light

16

of the long line of cases that recognize a fundamental right against participation in DOD medical experiments that was involuntary due to deception or coercion.[14] The DOD Mandate is yet another instance in a long line where the Government has abused unwilling and/or unwitting soldiers for medical experimentation.

In any case, this vaccine was deemed *experimental* until less than a month ago, and it still is based on the FDA's EUA reissuance. The vaccine uses an entirely novel mRNA technology and delivery system. The FDA's rushed, politicized, and unlawful approval process does not change this conclusion, and in fact reinforces it, as does the recent debate over booster shots, which demonstrates that there is no scientific consensus on Comirnaty's efficacy, or even the proper dosage. Plaintiffs further submit that informed consent cannot exist here, because data regarding the long-term efficacy, safety and unanticipated side effects are simply not available.

Further, the FDA has intentionally chosen to approve the vaccine for individuals like Natural Immunity Plaintiffs and WOCBP Plaintiffs, despite the complete absence of any clinical trial data for this group, and in the face of

---

[14] *See, e.g., Heinrich v. Sweet*, 62 F.Supp.2d. 282 (D.Mass.1999) ("*Heinrich*"); *Stadt v. Univ. of Rochester*, 921 F.Supp. 1023 (W.D.N.Y.1996) ("*Stadt*"); *In re Cincinnati Radiation Litig.*, 874 F.Supp. 796 (S.D.Ohio 1995) ("*Cincinatti*"); *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). These decisions addressed claims for damages that were dismissed based on the doctrine announced in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) that enlisted personnel may not sue the United States government for injuries sustained incidental to military service.

numerous studies indicating that there is likely little benefit and potential harm to this group.   As such, the DOD Mandate is closer to the *Heinrich, Stadt*, and *Cincinnati* cases that involved medical experiments whose therapeutic value was unknown, *see e.g.*, *Amend v. Bioport, Inc.*, 322 F.Supp.2d 848, 871 (W.D. Mich. 2004) (discussing substantive due process rights against involuntary participation in medical experiments), than the smallpox vaccine in *Jacobson* that was known to be safe and to worked so well that it eradicated smallpox worldwide.

Plaintiffs' claims regarding the DOD Mandate's violation of substantive due process rights should be analyzed under the *Cuomo* strict scrutiny standard, rather than the *Jacobson* rational basis standard of review. Coercing service members to receive a vaccine—that regardless of the FDA's decision should still be considered experimental and whose long-term safety and efficacy are unknown—for a virus that presents a near-zero risk of illness or death (less than 0.02%) to them.   The "public health" rationale is also unavailing for individuals with natural immunity as they are exceedingly unlikely to pass on to others. And coercing service members to do so when a vaccine could also cause harm to a recipient with natural immunity adds injury to constitutional insult.

Nor can Defendants show that the DOD Mandate is narrowly tailored to a compelling governmental interest. Any benefit that the DOD may gain in promoting immunity among service members does not extend to vaccinating those

18

individuals who already have immunity from the virus.

### 2. DOD Vaccine Mandate Imposes Unconstitutional Conditions.

The DOD Vaccine Mandate imposes unconstitutional conditions on Plaintiffs by withholding of benefits, terminating employment/separation from service, and threatening other disciplinary actions, up to and including dishonorable discharge, for non-compliance. Further, a dishonorable discharge will necessarily result in loss of the right to bear arms under the Second Amendment of the United States Constitution, loss of a property interest in current employment and veterans and other government benefits to which they would otherwise be entitled, and loss of liberty interest due to loss of future employment opportunities. *See, e.g.*, *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) ("[U]nconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them").

The DOD Mandate and other federal vaccine mandates threaten to deprive Plaintiffs of their freedom, livelihoods, and fundamental rights, unless they follow an unlawful and unconstitutional order to take an experimental vaccine. If this action is not struck down, this Court would effectively grant federal agencies the authority to make 100 million or more unvaccinated Americans second-class citizens, unable to serve their country, work, attend school, or participate in the Nation's economic

19

and cultural life.

The unconstitutional conditions doctrine and due process rights combine to invalidate the DOD Mandate as applied to Plaintiffs with natural immunity. The DOD has not and cannot shown that forcing Plaintiffs to take the vaccine reduces any risk that they will become infected with and spread the virus to DOD personnel or their communities. DOD and the Armed Services do not offer any justifications for why the penalties and other restrictions it establishes are appropriate and tailored to DOD service members who have acquired robust natural immunity. And the rationales it does offer are not logically coherent. Plaintiffs' natural immunity fully serves the supposed purposes of the public-health protection that DOD claims that it is pursuing.

### 3.    DOD Mandate Violates Equal Protection Clause.

Finally, the DOD Mandate and related mandates violate the Equal Protection Clause under the Fifth and Fourteenth Amendments of the United States Constitution.[15]   At the same time that the Executive Branch and federal agencies seek to require vaccination for nearly all U.S. citizens and lawful residents, the

---

[15] The Supreme Court established in *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) that the Equal Protection Clause of the Fourteenth Amendment is incorporated against the federal government through the Fifth Amendment's Due Process Clause. *See also Sessions v. Morales*, 137 S. Ct. 1678, 1686 n.1 (2017) (the Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment").

federal government has disclaimed any COVID-19 vaccination requirement for illegal aliens—even if they are being released into the U.S., rather than being immediately deported. Many refuse: reporting indicates that roughly 30% decline the offer of vaccination.[16]

By contrast, Plaintiffs, service members sworn to uphold the Constitution and defend our borders, are treated less favorably than unauthorized aliens who flout our laws and refuse vaccination. Unauthorized aliens will not be subject to any vaccination requirements, even when released directly into the United States, while at least 100 million U.S. citizens will be subject to unprecedented vaccination mandates as a conditions for serving in the military, working in the public or private sectors, or going to school

This discrimination in favor of unauthorized aliens violates the Equal Protection Clause. Notably, alienage is a suspect class that triggers strict scrutiny. *See, e.g., Graham v. Richardson*, 403 U.S. 365, 371, 375-376 (1971).  While the discrimination in question was against aliens, the same principle applies to discrimination against U.S. citizens, or lawful residents, in favor of aliens. Even if only rational basis review applied, the government's discrimination is

---

[16] Michael Lee, *Biden's Vaccination Mandate Doesn't Include Illegal Immigrants*, FOX NEWS (September 9, 2021), https://www.foxnews.com/politics/biden-plan-for-forced-vaccinations-doesnt-include-illegal-immigrants (accessed September 22, 2021).

unconstitutional, because there can be no "rational basis" for the government's commitment to vaccinating every U.S. citizen or legal resident, while at the same time systematically refusing to do the same for millions of aliens illegally flooding over our borders.

The DOD Mandate also violates equal protection insofar as it singles out, and discriminates against, Plaintiffs based on their medical history, disabilities and/or medical conditions. There is no rational basis for such differential treatment that reduces patriotic service members to the status of second-class citizens in the nation they are sworn to defend and have served loyally.

### 4.    Major Questions Doctrine & Separation of Powers Issues

The DOD Mandate, the Armed Services implementation thereof, and the FDA Comirnaty Approval cannot be considered in isolation.  Instead, they must be viewed as part of a larger effort by the Executive Branch to use administrative agencies to bypass Congress and constitutional limits on Executive and Federal authority, such as the CDC eviction moratorium struck down twice by the Supreme Court and the proposed OSHA and other mandates that would affect nearly 100 million workers, which like the DOD Mandate, would also be based on the FDA's Comirnaty approval.

Where, as in the case of the CDC eviction moratorium struck down last month and the proposed OSHA Mandate, "an agency claims to discover in a long-extant

statute an unheralded power to regulate a significant portion of the economy," courts must "greet its announcement with a measure of skepticism."[17] Congress must "speak clearly when authorizing an agency to exercise vast powers of economic and political significance." *Alabama Realtors*, 2021 WL 3783142, at *3. Even stricter judicial scrutiny is required where the federal administrative actions "significantly alter the balance between federal and state power and the power of the Government." *U.S. Forest Service v. Cowpasture River Preservation Assn.*, 140 S. Ct. 1837, 1849, 207 L.Ed.2d 186 (2020). Because the federal overreach is so unprecedented— requiring nearly every U.S. citizen or lawful resident to be vaccinated as a condition to work or attend school, and if current proposals are enacted, to cross state borders—there is no precedent to cite, other than the fundamental rights set forth in the U.S. Constitution to substantive and procedural due process.

Congress has enacted numerous laws in response to COVID-19[18] that dramatically expanded agencies' authority, and appropriated $4.7 trillion,[19] to

---

[17] *Ala. Assoc. of Realtors v. U.S. Dep't Health and Human Servs.*, --- F.Supp.3d ---, 2021 WL 1779282, *8 (D.D.C. May 5, 2021), *aff'd*, 2021 WL 2221646 (D.C. Cir. June 2, 2021), *aff'd*, 2021 WL 3783142 (U.S. Aug. 26, 2021) ("*Alabama Realtors*").

[18] *See, e.g.,* Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020) ($2 trillion); Consolidated Appropriations Act, 2021 Pub. L. 116–260, 134 Stat. 2078–2079 (2020) ($900 billion); American Rescue Plan Act of 2021, Pub. L. No. 117-2 ($1.9 trillion).

[19] *See* U.S. Government Accountability Office, *Coronavirus Oversight: Overview*, available at: https://www.gao.gov/coronavirus (last visited Sept. 15, 2021).

combat the disease, improve healthcare, provide emergency assistance, and promote economic recovery. Congress has not, however, enacted a vaccine mandate or granted any agency the authority to enact a mandate, nor is there any indication that it intends to do so. This Court must therefore reject the efforts of Defendants, and the Executive Branch, to bypass Congress, the States, and the Constitution, to enact by administrative fiat a vaccine mandate.

### E.   Plaintiff Will Suffer Irreparable Harm Absent a Preliminary Injunction and/or Temporary Restraining Order

To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction, they are "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. NRDC*, 555 U.S. 7, 22 (2008) (citation omitted).  Mere economic harm that can be remedied by money damages "or other corrective relief … at a later date" is not sufficient.  *Brown v. HHS*, 4 F.4th 1220, 1226 (11th Cir. 2021) (citations and quotations omitted).

The deprivation of certain constitutional rights, however, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  In the Eleventh Circuit, alleged violations of the right to bodily integrity at issue here presumptively cause irreparable injury. *See Brown*, 4 F.4th 1220 at 1225 (*citing Siegel*, 234 F.3d at 1178).  The denial of a stay or an injunction—and permitting the involuntary administration of the vaccine—is an

24

injury that cannot be undone and will permanently prevent Plaintiffs from exercising their right to refuse unwanted, unnecessary, and unproven experimental medical treatments. "[R]equiring a person to submit to an inoculation without informed consent or the presidential waiver is an irreparable harm for which there is no monetary relief." *Rumsfeld I*, 297 F.Supp.2d at 135.

Because the DOD and the Armed Services have threatened disciplinary action for non-compliance, Plaintiffs also request that the Court issue a TRO against disciplinary actions for vaccine refusal to preserve the *status quo*, as otherwise they will suffer immediate and irreparable injury, including but not limited to the loss of constitutional rights and bodily autonomy. *See* Fed. R. Civ. P. 65(b)(1)(A) and *supra*, Attach. 1, Proposed Order.

Further, Plaintiffs are faced with a choice between two irreparable harms: (1) accept unnecessary medical treatment (i.e., vaccination) that may irreparably and irreversibly harm their health or (2) refuse to do so and likely sacrifice their current and future employment, benefits, reputation, freedom and other enumerated constitutional rights. Both options constitute violations of Plaintiff's constitutional rights. *See, e.g., Jessen v. Village of Lyndon Station*, 519 F. Supp, 1183, 1189 (W.D. Wis. 1981) (finding irreparable injury where plaintiff stood to lose a property right without due process).

25

**F.     The Balance of Equities (Including the Public Interest) Weighs Heavily in Plaintiff's Favor.**

A preliminary injunction is proper when "the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. "[T]here is a strong public interest in requiring that the plaintiffs' constitutional rights no longer be violated[.]" *Laube v. Haley*, 234 F. Supp.2d 1227, 1252 (M.D. Ala. 2002). That is true even though COVID-19 is involved. *Cf. Cuomo*, 141 S. Ct. at 68 ("[E]ven in a pandemic, the Constitution cannot be put away and forgotten.").

There is also a strong public interest in ensuring the rights of informed consent, and that citizens are not subject to unwanted, unnecessary and unproven experimental medical treatment.  Informed consent fosters trust and support in the doctor-patient relationship.  It is also in the public interest for those seeking vaccines to receive accurate, truthful, complete information, and that they give informed consent—or refusal—to experimental vaccines.  Conversely, the DOD and the Air Force have no legitimate interest whatsoever in forcing Plaintiffs to receive an experimental vaccine before this Court has the opportunity to address the merits of Plaintiffs' claims.

The public interest is also served by granting a stay or injunction for the DOD Mandate and any implementation thereof by the Armed Services because it will

26

allow this Court the time to determine whether federal administrative agencies have the legal authority to impose vaccine mandates and to deprive citizens of their freedom, livelihoods, and fundamental rights for non-compliance.

## III.   CONCLUSION

For the reasons set out above, the Court should enter a declaratory judgment, stay, TRO and/or a preliminary injunction against the DOD Vaccine Mandate, the Armed Services' implementation thereof to Plaintiffs, and the FDA Comirnaty Approval.  A form of order is attached as an exhibit to the Motion.

Respectfully submitted,

*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esq.
Florida Bar No. 581798
REYES LA WYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email: ireyes@reyeslawyers.com

*/s/ Brandon Johnson*
Brandon Johnson
DC Bar No. 491370
*/s/ Travis Miller*
Travis Miller
TX Bar No. 24072952
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org
Email: traviswmiller@gmail.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this submission contains 6,520 words according to Microsoft Word's word count function, and as such is in compliance with L.R. 7.1(F).

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day e-filed the foregoing Plaintiffs' Motion for Declaratory Judgment, Stay, Temporary Restraining Order and Permanent Injunctive Relief and Memorandum in Support Thereof using the CM/ECF system, and that I have delivered the filing to the Defendants by email and FedEx at the following addresses:

This 8th day of October, 2021.

Lloyd J. Austin III
Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

Carlos Del Toro
Secretary of the Navy
1000 Navy Pentagon
Washington, DC 20350-1000

Xavier Becerra
Secretary
Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

Janet Woodcock
Commissioner
Food and Drug Administration
10903 New Hampshire Ave
Silver Spring, MD 20993-0002

Frank Kendall
Secretary of the Air Force
1670 Air Force Pentagon
Washington, DC 20330-1670

Christine E. Wormuth
Secretary of the Army
101 Army Pentagon
Washington, DC 20310-0101

*/s/Ibrahim Reyes*
Ibrahim Reyes, Esq.

28