# Exhibit 17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **JOHN DOE #1–14 and JANE DOE #1–2,**<br><br>Plaintiffs,<br><br>v.<br><br>**LLOYD AUSTIN**, in his official capacity as Secretary of Defense; **XAVIER BECERRA**, in his official capacity as Secretary of Health and Human Services; **FRANK KENDALL**, in his official capacity as Secretary of the Air Force; **CARLOS DEL TORO**, in his official capacity as Secretary of the Navy; **JANET WOODCOCK**, in her official capacity as Acting Commissioner of the U.S. Food and Drug Administration; and **CHRISTINE WORMUTH**, in her official capacity as Secretary of the Army,<br><br>Defendants. | Case No. 3:21-cv-01211-AW-HTC |

## DECLARATION OF WILLIAM MERZ

I, William Merz, hereby state and declare as follows:

1. I am a Vice Admiral in the United States Navy, currently serving as the Deputy Chief of Naval Operations, Operations, Plans and Strategy (OPNAV N3/N5), located in Arlington, Virginia at the Pentagon. I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

2. I have been assigned to my current position since August 6, 2021. Prior to my current assignment, I served as Commander, U.S. SEVENTH Fleet, the Deputy Chief of Naval Operations for Warfighting Requirements, the Director, Undersea Warfare Division, and

Commander, Naval Mine & Anti-Submarine Warfare Command. I graduated from the U.S. Naval Academy in 1986, and earned master's degrees from Catholic University and the Naval War College. As part of my duties currently, I am responsible for serving as the principal advisor to the Chief of Naval Operations (CNO) on operational matters, strategy, policy, and plans; international politico-military matters; and the current operational status of naval forces. As part of my responsibility for the current operational status of naval forces, CNO delegated responsibility to me for the Navy's COVID-19 policies. Those responsibilities include tracking the number of COVID-19 cases across the Navy, implementing Secretary of the Navy COVID-19 plans and policies, planning for and ensuring the appropriate initial distribution of COVID-19 vaccines, coordination across the Navy and with the other services on COVID-19 plans and policy, and providing input to the Secretary of the Navy on proposed COVID-19 plans and policy.

3. On August 24, 2021, the Secretary of Defense directed the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve. The Secretary of the Navy directed implementation of SECDEF's COVID-19 vaccination mandate[1] via a Department-wide administrative message (ALNAV) on August 30, 2021. The ALNAV applies to both Services within the Department of the Navy (DON), the United States Navy and the United States Marine Corps. The ALNAV requires all active duty DON Service members, who are not already vaccinated, exempted, or currently seeking an exemption, to be fully vaccinated with an FDA-approved COVID-19 vaccine within 90 days, and all Reserve Component personnel to be fully

---

[1] SECDEF Memo, "Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency, and DoD Field Activity Directors," (August 24, 2021).

2

vaccinated within 120 days. ALNAV 062/21 ¶ 4. Active duty Sailors and Marines must therefore become fully vaccinated by November 28, 2021, and Reserve Component Sailors and Marines must become fully vaccinated[2] by December 28, 2021. The requirement to obtain full vaccination constitutes a lawful order under Article 92 of the Uniform Code of Military Justice (UCMJ), and failure to comply may result in punitive or adverse administrative action, or both. ALNAV 062/21 ¶ 5.

4. The United States Navy issued service-specific guidance via a separate administrative message ("NAVADMIN") on September 1, 2021. NAVADMIN 190/21 outlines Navy policy concerning the mandatory vaccination of Navy service members, vaccination administration and reporting requirements, and general guidance related to logistics and distribution of vaccines. The policy reiterates that COVID-19 vaccination "is mandatory for all DoD service members who are not medically or administratively exempt" under existing Navy policy. NAVADMIN 190/21 ¶ 2, 3.a. Refusal to be fully vaccinated against COVID-19 without an approved or pending exemption constitutes a failure to obey a lawful order and is punishable under Article 92, UCMJ. Ordinarily, any officer with authority to convene courts-martial or administer nonjudicial punishment under Article 15 of the UCMJ may dispose of alleged violations of the UCMJ. Manual for Courts-Martial ("MCM"), Part II, Rules for Court Martial, 401. However, authority to initiate courts-martial, non-judicial punishment, or administrative separation processing for failure to become fully vaccinated is withheld to a designated COVID Consolidated Disposition Authority (CCDA). NAVADMIN 190/21 ¶ 3.c., 3.e.(5). Withholding this authority from Service members' commanders precludes administrative separation or

---

[2] Although refusal to receive the vaccine may subject a member to adverse administrative or disciplinary action, the vaccine will not be forcibly administered to any member who refuses.

3

disciplinary action without elevated review and direction by the CCDA. On October 13, 2021, the Chief of Naval Personnel (CNP) was designated as the CCDA. NAVADMIN 225/21 ¶ 1.

5. NAVADMIN 190/21 ¶ 3.d. provides that service members may seek two types of exemptions, medical and administrative. Medical exemptions are governed by Army Regulation (AR) 40-562, which is a consolidated Military Services regulation implemented by the Navy and Marine Corps via Bureau of Medicine (BUMED) Instruction 6230.15B (hereinafter BUMEDINST 6230.15B). Medical personnel are responsible for reviewing and granting medical exemptions, whereas non-medical personnel (sometimes with the assistance of advising medical personnel) are responsible for reviewing and granting administrative exemptions. BUMEDINST 6230.15B, 2-6.

6. The policy provides the following with respect to medical exemptions:

a. Medical exemptions. A medical exemption includes any medical contraindication relevant to a specific vaccine or other medication. Health care providers will determine a medical exemption based on the health of the vaccine candidate and the nature of the immunization under consideration. Medical exemptions may be temporary (up to 365 days) or permanent. Standard exemption codes appear in appendix C.

(1) *General examples* of medical exemptions include the following—

(a) Underlying health condition of the vaccine candidate (for example, based on immune competence, pharmacologic or radiation therapy, pregnancy and/or previous adverse response to immunization).

(b) *Evidence of immunity* based on serologic tests, documented infection, or similar circumstances.

(c) An individual's clinical case is not readily definable. In such cases, consult appropriate medical specialists, including specialists in immunization health care.

AR 40-562, 2-6a.(1), (emphasis added).

As the policy reflects, these are just examples of situations when health care providers may determine a medical exemption is warranted, but each exemption request is an individual

4

determination based on the health of the individual and the disease at issue. Additionally, there are *some*, but not all, diseases in which serologic or other tests may be used to identify pre-existing immunity.[3]

7. Service members who seek a medical exemption first submit their request to Navy medical providers who follow BUMED policy when processing those requests. A Navy medical provider is defined as any uniformed, Navy-employed civilian, or contract-licensed independent medical practitioner whose scope of practice encompasses immunization healthcare delivery, and Independent Duty Corpsmen. BUMEDNOTE 6300, ¶ 7.b. Navy medical providers have the authority to grant temporary medical exemptions for pregnancy or other temporary medical contraindications. BUMED Notice 6150 (Sept. 21, 2021). For requests for permanent exemptions, Navy medical providers have authority to disapprove temporary or permanent medical exemption requests that do not meet clinical contraindications for the COVID-19 vaccine. BUMEDNOTE 6300, ¶ 6.c. Service members who are actively participating in COVID-19 clinical trials are exempt from mandatory vaccination until the trial is complete. NAVADMIN 190/21 ¶ 3.d.(2).

8. For either a temporary or permanent medical exemption request, medical providers evaluate the patient for medical contraindications based on documented medical history and/or clinical evaluation, and an assessment of the benefits and risks to the patient. BUMEDNOTE 6300 of September 3, 2021, *Clinical Consultation Guidance for COVID 19 Vaccine Permanent Exemption* (published September 3, 2021). Additionally, medical providers

---

[3] The AR states, *"Screening for immunity.* For *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations." AR 40-562, 2-1.g (emphasis added).

5

are encouraged to request expert consultation by an immunizations specialist, when necessary. Medical contraindications for the COVID-19 vaccine include:

    (a) Anaphylaxis from a previous COVID-19 vaccine or COVID-19 vaccine ingredient;

    (b) Myocarditis or pericarditis after COVID-19 vaccine administration or infection;

    (c) Temporary association of Stevens-Johnson Syndrome or Guillain-Barré Syndrome that cannot be attributed to another underlying cause within 6 weeks of COVID-19 vaccine administration or infection;

    (d) Thrombosis with Thrombocytopenia Syndrome (TTS) after COVID-19 vaccine administration;

    (e) Persistent clinical symptoms lasting 4 or more weeks following a COVID-19 infection that cannot be attributed to another underlying cause after evaluation and focused workup ("Long COVID"). *Id.*

In the *Clinical Consultation Guidance*, providers are also encouraged to consult CDC guidance.[4]

---

[4] An example of CDC clinical considerations includes:

> If you were treated for COVID-19 with monoclonal antibodies or convalescent plasma, you should wait 90 days before getting a COVID-19 vaccine. Talk to your doctor if you are unsure what treatments you received or if you have more questions about getting a COVID-19 vaccine.

> If you or your child has a history of multisystem inflammatory syndrome in adults or children (MIS-A or MIS-C), consider delaying vaccination until you or your child have recovered from being sick and for 90 days after the date of diagnosis of MIS-A or MIS-C. Learn more about the clinical considerations for people with a history of multisystem MIS-C or MIS-A.

*See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html

6

9.      In addition to the procedures in BUMEDINST 6230.15B, authority to approve a permanent medical exemption for COVID-19 vaccination is the first Navy Medical Department Flag Officer[5] in the medical provider's chain of command. NAVADMIN 190/21 ¶ 3.d. BUMEDNOTE 6300 outlines the process for Navy medical providers recommending approval for a permanent medical exemption for COVID 19 vaccination. Where a provider recommends such an exemption, the provider drafts an initial permanent exemption letter and routes the letter to the appropriate flag officer as well as the member's commanding officer. BUMED Notice 6300, ¶ 6.c. A temporary medical exemption is granted pending the approval or disapproval decision of a permanent medical exemption.[6] BUMED Notice 6300, ¶ 7.b. If the permanent medical exemption is approved, a formal letter of approval is forwarded to the initial recommending Navy provider. BUMED Notice 6300, ¶ 7.j. Vaccinations and vaccine exemptions are entered into the member's Electronic Health Record (EHR), or the Medical Readiness Reporting System (MRRS) where entry in the EHR is impracticable. BUMED Note 6150, ¶ 5.b. During the pendency of a temporary exemption or once a permanent exemption is approved, a member will not be subject to disciplinary action.

10.     Medical rationale for disapproval based on serology: Serological test results that shows the presence of antibodies from a prior COVID-19 infection, standing alone, will not be a basis for a permanent medical exemption. Serologic testing, as a means to determine immunity, has not been scientifically validated and evidence suggests that prior infection does not prevent later infection.[7] Although AR 40-562 indicates that serology screening tests for immunity may

---

[5] "Flag Officers" comprise the highest ranks in the military. Officer ranks range from O-1 to O-10, with flag officers occupying the ranks between O-7 to O-10. In the Navy, a flag officer is any officer serving in the rank of Rear Admiral (Lower Half) or higher.

[6] No disciplinary or administrative action will be initiated while a permanent medical exemption request is pending.

[7] One study found the following: "[A]mong Kentucky residents who were previously infected with SARS-CoV-2 in 2020, those who were unvaccinated against COVID-19 had significantly higher likelihood of reinfection during May and June 2021. This finding supports the CDC recommendation that all eligible persons be offered COVID-19

7

be warranted, it applies to diseases or conditions where it has been established that serologic tests are able to determine one's immunological status.[8] AR 40-562 contemplates that serologic or other tests might be appropriate to determine immunity for some diseases, but not all vaccine-preventable diseases. AR 40-562 ¶ 2-1.g. In contrast to a disease such as varicella ("chicken pox"), where prior infection usually provides "immunity for life" and a second occurrence is uncommon, prior COVID-19 infection does not provide similar immunity. *See* CDC, "Chicken Pox for Healthcare Professionals, *available at* https://www.cdc.gov/chickenpox/hcp/index.html; Alyson M. Cavanaugh, et al., *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination*, Morbidity and Mortality Weekly Report, Vol. 70, No. 32 (Aug. 13, 2021).

11. Administrative exemptions may be granted for various reasons, including pending separation or retirement, permanent change of station, emergency leave, and religious accommodation. BUMEDINST ¶ 6230.15B, 2-6.b. Navy policy concerning requests for the accommodation of religious practices generally, including immunizations, is outlined in Bureau of Personnel (BUPERS) Instruction 1730.11A (hereinafter BUPERSINST 1730.11A), while specific guidance related to immunization exemptions for religious beliefs is found in the Naval Military Personnel Manual (MILPERSMAN), Article 1730-020. A service member seeking an exemption of immunization for religious reasons must submit the request in in accordance with BUPERSINST 1730.11A, ¶ 5.e. The requirements include: (1) a written request via his or her commander stating the waiver sought; and (2) an interview with a Navy Chaplain, who assesses

---

vaccination, regardless of previous SARS-CoV-2 infection status." Further, the authors noted limited available evidence to determine the extent and duration of immunity from natural infection, and cited the emergence of new variants might affect infection-acquired immunity. Alyson M. Cavanaugh, et al., *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination*, Morbidity and Mortality Weekly Report, Vol. 70, No. 32 (Aug. 13, 2021), *available at* https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7032e1-H.pdf.

[8] "g. *Screening for immunity*. For *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations." AR 40-562, 2-1.g (emphasis added).

8

whether the requestor's beliefs appear sincerely held for recommendation to the commander. BUPERSINST 1730.11A, ¶ 5.e. The approval authority for requests for immunization exemptions is the Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (hereinafter CNO N1). BUPERSINST 1730.11A, ¶ 5.a.(4). Commanders routing requests to CNO N1 must forward the matter within 7 days from the date of the member's request. BUPERSINST 1730.11A, ¶ 5.c. Action on a service member's written request for accommodation must be in a timely manner, generally no later than 60 days from receipt by the Office of the Secretary concerned.[9] DoD Instruction 1300.17, ¶ 3.2.c., Table 1. A member may appeal CNO N1 decisions to the Chief of Naval Operations (CNO). BUPERSINST 1730.11A, ¶ 5.f.

12. NAVADMIN 225/21 provides guidance for disposition of offenses involving Navy service members who are not fully vaccinated as required by NAVADMIN 190/21. Navy Service members refusing the COVID-19 vaccine, absent a pending or approved exemption, are required to be processed for administrative separation.[10] NAVADMIN 225 ¶ 2. A Navy Service member is considered to be "refusing the vaccine, if: (1) the individual has received a lawful order to be fully vaccinated, (2) is not or will not be fully vaccinated by the date required, and (3) does not have a pending or approved exemption request." NAVADMIN 225/21 ¶ 3.c. The policy designates CNP as the CCDA to ensure fair and consistent administrative processing across the service. NAVADMIN 225/21 ¶ 5.b. For disciplinary matters, authority to initiate disciplinary proceedings, either non-judicial punishment or court-martial, is withheld to the Vice Chief of Naval Operations. *Id.*

---

[9] No disciplinary or administrative action will be initiated while a request for an exemption for religious accommodations is pending.

[10] Although processing for separation is required, this does not automatically result in a member actually being separated. Members processed for separation may ultimately be retained in the service.

9

13. Prior to the initiation of administrative or disciplinary action, Navy service members are formally advised of the order to be fully vaccinated using a NAVPERS 1070/613, "Administrative Remarks" form (commonly known as a "Page 13"). NAVADMIN 225/21 ¶ 7.e.(1). A Page 13 is not a punitive action, but is a manner to document formal counseling of a Navy Service member. The inclusion of this Page 13, by itself, is not considered to be an adverse matter and will not affect a member's career. The Page 13 provides guidance to the Navy service member and serves to document that the member has been advised of his or her acknowledgement of the lawful order to be vaccinated against COVID-19. It also provides the service member with an opportunity to notify his or her commander of the member's intent to seek a medical or religious exemption.

14. Officer administrative separation is initiated by a formal report of misconduct to Navy Personnel Command (NAVPERS), as required by MILPERSMAN 1611-010, and governed by the procedures in SECNAV Instruction 1920.6D (hereinafter SECNAVINST 1920.6D). The CCDA serves as the "show cause authority" under SECNAVINST 1920.6D, and requires mandatory show cause proceedings for all officers who refuse the vaccine. Specifically, officers are processed for separation on the bases of Misconduct, Moral or Professional Dereliction, and Substandard Performance. NAVADMIN 225/21 ¶ 7.a. Officers are processed with the least favorable characterization of service[11] as General (Under Honorable Conditions), unless inclusion of another basis for separation warrants a characterization of Other Than Honorable. *Id.*

---

[11] A characterization of service is assigned to a Service member upon separation from the military and generally reflects the quality of an individual's military service. The highest characterization of service is Honorable, followed by General (Under Honorable Conditions), Other Than Honorable, Bad-Conduct, and Dishonorable. Officers may be awarded a Dismissal, which is akin to a Dishonorable discharge. The first three types of characterization may be awarded using administrative procedures, whereas Bad Conduct and Dishonorable discharges, as well as an officer's Dismissal, are considered "punitive discharges." These types of discharges may only be awarded by a court-martial sentence and imposed after appellate review is complete.

a. The specific procedures involved with processing an officer for misconduct are outlined in SECNAVINST 1920.6D, Enclosure (6), "Policy Governing Involuntary Separation for Cause or Parenthood", and Enclosure (7), "Guidelines on Separations for Cause". The applicable procedures may vary in certain respects depending on the officer's type of appointment, years of service, and record of performance, amongst other factors.

b. Probationary officers may be processed without a Board of Inquiry (BOI) when the show cause authority determines that an Honorable, or General (under honorable conditions) characterization of service is appropriate. SECNAVINST 1920.6D, Encl (2), ¶ 25; Encl (7), ¶ 3.a. Non-probationary officers must be processed using BOI procedures, which entails a formal administrative hearing over which a panel of no fewer than three senior officers preside in order to make findings with respect to the bases for separation, and recommendations with respect to retention or separation, and character of service. *Id.*, Encl (7) ¶ 4; Encl (11).

15. Administrative separation of enlisted service members is processed under MILPERSMAN 1910-142, "Commission of a Serious Offense." NAVADMIN 225/21 ¶ 7.b. A "serious offense" is one that would warrant a punitive discharge in accordance with the Manual for Courts-Martial (MCM), which includes violations of Article 92, UCMJ. MILPERSMAN 1910-142 ¶ 2.a. The CCDA directs processing with the least favorable characterization of General (under honorable conditions), unless inclusion of another basis for separation warrants other than honorable. NAVADMIN 225/21 ¶ 7.b.

a. Similar to officer administrative separation processing, the applicable procedures may vary in certain respects depending on the service member's specific

11

community (*e.g.*, nuclear-trained Sailors), their years of service, and record of performance, amongst other factors. Processing or enlisted Navy service members is initiated using a NAVPERS form 1910/31, "Administrative Separation Processing Notice," and those service members may be processed using either notification procedures or administrative board procedures under MILPERSMAN 1910-402.

        b. Notification procedures are appropriate where the least favorable characterization is General (under honorable conditions). *Id.* ¶ 1.a. For Navy service members with fewer years of service, notification procedures permit an opportunity to consult with counsel and submit matters for consideration to the separation authority. The CCDA serves as the separation authority for cases involving vaccine refusal, unless a higher separation authority is required by MILPERSMAN 1910-704. NAVADMIN 225/21 ¶ 7.b. Navy service members with more than 6 years of service may elect an administrative separation board, which is a formal administrative hearing similar to a BOI except with regards to the composition of board membership and post-hearing administrative processing. *See generally* MILPERSMAN 1910-010 through 1910-710.

    16.    Timelines to complete administrative processing vary depending on whether the Navy service member is an officer or enlisted Sailor, the efficiency of administrative processing within any given command or unit, and what specific procedures apply to the member's case. For cases involving a Navy service member's vaccine refusal and no other misconduct or basis for separation, the following timelines offer a rough estimate for administrative separation processing:

        a. For officers, it generally takes between 6 to 12 months from the time the officer is notified to show cause to the officer's approved separation. It takes

approximately 86 days from notification of officer misconduct to NAVPERS before the officer is notified to show cause. The officer ("respondent") normally has 10 working days to respond to the notice, and an extension of time may be granted for good cause. The commanding officer must forward the case to the Secretary of the Navy via NAVPERS and the Chief of Naval Personnel (CNP). Review of the case at each level of review takes approximately 50 to 75 days. In cases where a BOI is required, it typically takes another 120 days to complete all phases of the BOI process. The respondent is afforded a minimum 30 days' notice prior to the board convenes, and may request a continuance not to exceed 30 days for good cause. After review is completed and the officer's separation is approved, the decision is communicated to the command via naval message. The officer is generally required to complete separation requirements within 60 days of the approved separation notice.

b. Administrative separation of enlisted service members often takes several months, although the range of processing timelines varies more so than with officer processing. Following the notice of administrative separation, the service member generally has two working days to consult with counsel. For probationary service members, the individual may elect to submit matters to the separation authority and is given a reasonable time to do so, typically 5 working days. The commander must then route the case file to the CCDA for action as the separation authority. The approved separation is then forwarded to the command to complete separation processing requirements locally. Where a service member is entitled to, and thereafter elects an administrative separation board, the command must request qualified counsel be assigned to the member. The command and the member's counsel then coordinate to set a date for

13

the administrative hearing. There is no required timeline, but generally the board should occur within 30 days of defense counsel appointment. Following the board, the command must generate a record of the board's proceedings and forward the case file to the CCDA using a formal letter format, which typically takes between 5-10 working days. Where a higher separation authority is required by MILPERSMAN 1910-704, such as for members with greater than 18 years of service or who are pending a Physical Evaluation Board (PEB), the review timelines inherent to officer administrative separation processing apply.

17. While NAVADMIN 225/21 withholds authority to initiate disciplinary either non-judicial punishment or courts-martial for cases involving vaccine refusal, commanders generally possess a wide array of administrative and disciplinary options with which to dispose of service members' offenses under the UCMJ. Subject to the limits of the commander's authority, the commander's administrative corrective measures include formal or informal counseling, non-punitive letters of caution or censure,[12] withholding of privileges, and extra-military instruction, as governed by the relevant service policy. Disciplinary options include non-judicial punishment under Part V of the MCM, disposition of the charges by court-martial where the commander has the authority to do so, or forwarding of charges for trial by court-martial where the commander does not.

    a. Nonjudicial punishment is a forum generally reserved for minor offenses, or those offenses which the maximum sentence would not include a Dishonorable Discharge or confinement for greater than one year if tried by a general court-martial. MCM, Part V ¶ 1.e.

---

[12] Non-punitive letters of caution or censure are matters between the issuing authority and the counseled member and do not become part of the member's official service record. Manual of the Judge Advocate General (JAGMAN) 105 ¶b.(2).

14

Punishments are limited by the rank and position of the cognizant commander, as well as the rank of the person accused of misconduct. *Id.* ¶ 2, 5. Punishments and service limitations are outlined in MCM Part V and the Manual of the Judge Advocate General (JAGMAN), but commonly include some combination of the following: admonishment or reprimand, extra duties, restriction, reduction in rank, or forfeiture of pay. MCM, Part V ¶ 5; JAGMAN, 0111. Commanders are encouraged to permit the accused to speak with counsel subject to the immediate availability of counsel, the delay involved, and operational commitments or military exigencies. JAGMAN 0108 ¶ a.(1). Service members not attached to a vessel have the right to refuse non-judicial punishment and request trial by court-martial. MCM, Part V ¶ 3; JAGMAN 0108 ¶ a. Following imposition of non-judicial punishment, the service member has five working days to submit an appeal, and may request additional time for good cause. MCM, Part V ¶ 7. The member's appeal is forwarded, along with the commander's endorsement, to the cognizant general court-martial convening authority for action. MCM, Part V ¶ 7; JAGMAN, 0117.

    b. More serious offenses under the UCMJ may be subject to trial by court-martial. There are three types of courts-martial: summary court-martial, special court-martial, and general court-martial. Depending on the rank and position of the commander, he or she may or may not be authorized to convene certain types of courts-martial. UCMJ, 10 U.S.C. § 821-24. Further, the nature of the proceedings and punishments available are limited depending on the forum and rank of the accused. *See* UCMJ, 10 U.S.C. Chapter 47, Subchapters IV, VIII. The most severe punishments, such as the death penalty, a Dishonorable Discharge, Dismissal, or extended periods of confinement, are only available at general courts-martial, and certain offenses are only permitted to be tried by general courts-martial. *Id.* Summary courts-martial

15

are less formal than either special or general courts-martial, which are equivalent in formality and procedure to civilian criminal courts; however, each court-martial forum is governed by the procedures outlined in the MCM, Part II, Rules for Court Martial. Special courts-martial and general courts-martial, in particular, have substantial legal and procedural requirements with respect to pre-trial, trial, and post-trial judicial proceedings.[13] The adjudication of trials by court-martial generally take months before the court is convened, and may take several months, depending on the matters involved in the case and the court's docket, prior to the trial date. Upon conclusion of the trial, the member may appeal the findings or sentence as provided in Chapter XI and XII of the MCM.

18. Discharged service members may seek a review of his or her discharge through the cognizant Discharge Review Board (DRB). 10 U.S.C. § 1553. The DRB is empowered to change and issue a new discharge on grounds of equity or propriety. 32 C.F.R. § 70.9. DRBs may consider factors such as the applicant's service history, awards and decorations, letters of commendation or reprimand, wounds received in action, acts of merit, length of service, convictions by court-martial or civilian convictions, non-judicial punishments, records of unauthorized absence, or records relating to the member's discharge. *Id*. Discharged service members may also seek an upgraded discharge from the appropriate Board for Correction of Military Records (BCMR), which is the Board for Correction of Naval Records (BCNR) for the Navy and Marine Corps personnel. 10 U.S.C. § 1552. The BCNR has more extensive authority than DRBs to upgrade discharges, void discharges, alter reenlistment codes, and remove otherwise inaccurate or adverse documents from a service member's record. The BCNR may

---

[13] Relevant to a charge of violation of Article 92 (disobeying a lawful order) for refusal to receive the COVID-19 vaccination, an accused member could choose to raise all available affirmative defenses, including the lawfulness of the order, at court-martial.

16

correct any military record when it is necessary to correct an error or remove an injustice. *Id*. The BCNR's action may result in a member being reinstated in the Navy. If a Service member is unable to obtain relief through the appropriate DRB or BCMR, the service member may elect to challenge the agency's decision and administrative proceedings in federal court under applicable federal law.

19. In summary, the Navy is providing its personnel opportunities to seek medical and religious exemptions from the requirement to be vaccinated. For those Sailors who do not wish to pursue an exemption or have their exemption requests denied after full adjudication including appeals and still refuse to be immunized, the Navy's interest in good order and discipline is best served by adjudicating each refusal on a case-by-case basis. Each Sailor will be afforded all due process to which he or she is entitled while fully exhausting intra-service administrative and disciplinary processes that result in a final agency action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of October, 2021.

W. R. MERZ