# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| **JOHN DOE #1,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **LLOYD AUSTIN, III, in his official** | ) | **3:21-cv-01211-TKW-HTC** |
| **capacity as Secretary of Defense,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>PLAINTIFFS' REPLY BRIEF</u>

i

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................1

JURISDICTION AND JUSTICIABILITY ...........................................4

  A.   Plaintiffs' Claims Are Ripe and Justiciable. ................................4

  B.   Plaintiffs Have Exhausted Available Administrative Remedies, But Are Not Required to Pursue Such Remedies if Unavailable or Inapplicable to Their Claims Before This Court. ..............................................................5

  C.   Plaintiffs Have Standing for Claims Against FDA. .....................6

ARGUMENT .......................................................................................8

  A.   Plaintiffs Have a Substantial Likelihood of Success on the Merits. .............8

   1.   DOD and Armed Services Violated DOD Directives, Regulations, APA and/or Informed Consent Statutes. ...................................................8

     a)   Armed Services Guidance Violates DOD Mandate...................8

     b)   DOD Mandate & Regulations Are Subject to APA...................9

     c)   DOD Mandate & Armed Services Guidance Violate AR 40-562 by Eliminating Exemption for Previous Infection and Other Medical Conditions. ………………………………………………………………..11

     d)   DOD and Armed Services' Violation of Informed Consent Requirements. .............................................................................11

   2.   FDA Violations of FDCA, PHSA and APA in Re-Issuing BioNTech EUA and Comirnaty Licensure........................................................12

     a)   EUA Are Determinations Subject to Judicial Review. ...........12

     b)   FDA Approval of Comirnaty Violated PHSA and APA. ........15

     c)   FDA Approval of Comirnaty Was Based on Impermissible and Extra-Statutory Criteria. ............................................................17

     d)   Interchangeability Determination Is Contrary to Law. ...........17

     e)   Same Product Cannot Simultaneously Be Licensed and Unlicensed for Same Indication or Use. .......................................................19

     f)   Defendants' Challenges to Plaintiffs' Expert Witness Are Without Merit and Procedurally Improper...........................................................20

   3.   Defendants Violated Plaintiffs' Constitutional Rights..............................21

a)   DOD Mandate Violates Plaintiffs' Substantive Due Process Rights to Refuse Unwanted, Unnecessary, and Unproven Experimental Medical Treatment...........................................................................................21

b)   DOD Mandate Is Unconstitutional Even Under Rational Basis Standard of Review.............................................................................................23

B.    Plaintiffs Will Suffer Irreparable Harm. ....................................................25

C.    The Balance of Equities (Including the Public Interest) Weighs Heavily in Plaintiff's Favor. ...........................................................................................27

CONCLUSION ..............................................................................................29

# TABLE OF AUTHORITIES

## AGENCY ORDERS & GUIDANCE

Terry Adirim, Asst. Sec. of Defense Memo to Surgeons General, *Mandatory Vaccination of Service Members Using the Pfizer-BioNTech COVID-19 and Comirnaty COVID-19 Vaccines* (Sept. 14, 2021) ("Surgeons General Memo") (ECF No. 31-3) ............... *Passim*

Dept. of the Air Force, Deputy Director of Staff for COVID-19, "COVID-19 Mandatory Vaccination Implementation Guidance for Service Members" (Sept. 3, 2021) ("Air Force Guidance") (ECF 1-7) ............... *Passim*

DOD, SECDEF, "Memorandum for Senior Pentagon Leadership, Mandatory Coronavirus Disease 2019 Vaccination of DOD Service Members" (Aug. 24, 2021) ("DOD Mandate") (ECF No. 1-3) ............... *Passim*

FDA, BL 125742/0, Comirnaty BLA Approval (Aug. 23, 2021) ("FDA Comirnaty Approval Letter") (ECF No. 1-4) ............... *Passim*

FDA, Pfizer-BioNTech EUA Letter (Aug. 23, 2021) ("BioNTech EUA Expansion Letter") (ECF No. 1-6) ............... *Passim*

FDA, *Summary Basis of Regulatory Action*, BLA 125742/0 (Aug. 23, 2021) ("Comirnaty SBRA) (ECF No. 1-7) ............... 18

## CASES

*Ammend v. BioPort, Inc.*, 322 F.Supp.2d 848 (W.D. Mich. 2004) ............... 22

*Ass'n of Am. Physicians & Surgeons v. FDA*, 2020 WL 574974 (6th Cir. Sept. 24, 2020) ............... 14

*Chilcott v. Orr*, 747 F.2d 29 (1st Cir. 1984) ............... 25

*Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993) ............... 19

*Dep't of Commerce v. New York*, 139 S. Ct. 2551, 204 L.Ed.2d 978 (2019) ............... 13

*Dibble v. Fenimore,* 339 F.3d 120 (2d Cir. 2003) ............... 4

*E. St. Louis Laborers v. Bellon Wrecking Co.*, 414 F.3d 700 (7th Cir. 2005) ............... 26

*Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) ............... 1

*Fla. Wildlife Fed., Inc. v. Jackson*, 2011 WL 13112090 (N.D. Fla. Sept. 30, 2011) ............... 13

*lndep. Guard Ass'n of Nevada, Local No. I v. O'Leary on Behalf of US Dep't of Energy,* 57 F.3d 766 (9th Cir. 1995) — 9

*Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) — *Passim*

*John Doe No. 1 v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003) — *Passim*

*John Doe No. 1 v Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004) — *Passim*

*John Doe No. 1 v. Rumsfeld*, 2005 WL 774857 (D.D.C. Feb. 6, 2005) — 14

*Klaassen v. Trustees of Ind. Univ.*, --- F.Supp.3d. ---, 2021 WL 3073926 (N.D. Ind. July 18, 2021), *aff'd*, 7 F.4th 592 (7th Cir. 2021) — 21

*Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville, Fla.*, 896 F.2d 1283 (11th Cir. 1990) — 25

*Null v. FDA*, 2009 WL 10744069 (D.D.C. Nov. 10, 2009) — 7

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009) — 27

*People for Ethical Treatment of Animals, Inc. v. USDA*, 851 Fed.Appx. 896 (11th Cir. 2021) — 13

*Roman Catholic Diocese of Brooklyn v. Cuomo*, --- U.S. ---, 141 S.Ct. 63, 208 L.Ed.2d 206 (2020) — *Passim*

*Silvester v. Becerra*, 138 S.Ct. 945, 200 L.Ed.2d 293 (2018) — 21

*Somerset House, Inc. v. Turnock*, 900 F.2d 1012 (7th Cir. 1990) — 26

*Speigner v. Alexander,* 248 F.3d 1292 (11th Cir. 2001) — 4

*Tummino v. Torti*, 603 F.Supp.2d 519 (E.D.N.Y. 2009) — 16

*Trump v. Hawaii*, 138 S. Ct. 2392, 201 L.Ed.2d 775 (2018) — 23

*U.S. v. Mingo*, 964 F.3d 134, 2017 WL 11576680 (2d Cir. 2020) — 9

*Weyerhauser Co. v. U.S. Fish and Wildlife Servs.*, 139 S. Ct. 361, 202 L.Ed.2d 269 (2018) — 13

*Winter v. NRDC*, 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008) — 26

*Yu v. Shinseki*, 2014 WL 259845 (Vet. App. Jan. 24, 2014) — 17

## RULES & REGULATIONS

21 C.F.R. § 14.171 — 15-16

21 C.F.R. § 312.12 — 15

Army Regulation 40-562, "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases" (7 Oct. 2013) — *Passim*

**STATUTES**

5 U.S.C. § 553 — 9

5 U.S.C. § 701 — 12-13

5 U.S.C. § 706 — *Passim*

10 U.S.C. § 1107a — 8, 11

21 U.S.C. § 355 — 14, 15

21 U.S.C. § 360bbb-3 — *Passim*

42 U.S.C. §§ 247d-6d, 247-6e — 1

42 U.S.C. § 262 — 14, 15

**OTHER AUTHORITIES**

Joseph Choi, *Hundreds of Thousands of U.S. Troops Still Unvaccinated Ahead of First Deadline: Report*, THE HILL (Oct. 10, 2021) — 2

Congressional Research Service, *Trends in Active-Duty Military Deaths Since 2006*, In Focus (May 17, 2021) — 2

Meghann Myers, *Military Suicides up 16 Percent in 2020, But Official Don't Blame Pandemic*, Military Times (Sept. 30, 2021) — 2

Office of Legal Counsel, Memorandum Opinion for the Deputy Counsel to the President, *Whether Section 564 for the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization* at 16 (July 6, 2021) — 8

S.Rep. No. 752, 79th Cong. 1st Sess. 13 (1945) — 9

## **INTRODUCTION**

Defendants' lengthy response boils down to one central point. The Executive has the unreviewable power to unilaterally impose vaccine mandates on the entire U.S. population. Plaintiffs and hundreds of thousands of other unvaccinated service members with excellent service records face the prospect of being expelled from the military, and into a job market where they will be unemployable due to other federal mandates and their discharge status and blemished service records.[1]

Courts normally defer to the armed forces and public health authorities on administrative actions and apply rational basis review. This Court should not do so here where the asserted national security and public health justifications are merely a pretext for an unprecedented, unlawful, and unconstitutional expansion of federal administrative authority. Nor should it do so where the necessary and foreseeable consequences of the administrative action will counter to its stated purpose, and the means chosen to achieve the end are overbroad, disproportional, and unnecessarily cruel and punitive.

---

[1] This proceeding seeking declaratory and injunctive relief is the only opportunity Plaintiffs have to challenge this unlawful and unconstitutional order, or any resulting employment, constitutional, or vaccine-related injuries. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) is an absolute bar against any subsequent suit against the United States or the Armed Services, and the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d and 6e, is an impenetrable liability shield for the manufacturers.

The DOD Mandate does not promote national security, public health, or military readiness. It is in fact an employment regulation that is part of a broader set of federal mandates applicable to all U.S. citizens and lawful residents as a condition to work (and soon for education as well).  Nor will it advance military health or readiness. According to Defendants, a total of 23 active-duty service members in 2020 and 2021. *See* ECF No. 31-14, Rans Decl., ¶ 10. The hospitalization rate is less than one percent (1%), and the survival rate is 99.98% (*i.e.*, conversely the mortality rate is one in 5,000).  ECF No. 1, Compl., ¶ 43. This compares to annual average of over 1,200 deaths (or 100 times the COVID-19 deaths) in the period from 2006-2021 (nearly 80% of which were not combat-related),[2] while there were 580 deaths from suicide alone in 2020.[3]

The DOD Mandate, and Armed Services implementation thereof, threatens the expulsion and severe punishment of hundreds of thousands of unvaccinated service members.[4]  While rates vary greatly by component and duty status, each

---

[2] *See* Ex. 3, Congressional Research Service, *Trends in Active-Duty Military Deaths Since 2006*, Table I, In Focus (May 17, 2021).

[3] *See* Meghann Myers, *Military Suicides up 16 Percent in 2020, But Official Don't Blame Pandemic*, Military Times (Sept. 30, 2021), available at: https://www.militarytimes.com/news/pentagon-congress/2021/09/30/military-suicides-up-15-percent-in-2020-but-officials-dont-blame-pandemic/ (last visited Oct. 24, 2021).

[4] *See* Joseph Choi, *Hundreds of Thousands of U.S. Troops Still Unvaccinated Ahead of First Deadline: Report*, THE HILL (Oct. 10, 2021), available at:

component stands to lose at least 10% and up to 50% or more of its personnel, *id.*, including highly decorated, experienced and combat-tested service members like Plaintiffs. These losses would be catastrophic for readiness and render most units not capable of performing their missions.  Plaintiffs raise this point not to second guess the DOD's military experts, but rather to demonstrate the absurdity of their claim that losing hundreds of thousands to save dozens of lives promotes readiness or the "health and welfare of the troops."  ECF No. 31, Def. Opp'n, at 1.

Turning to Defendants' response, Defendants fail to acknowledge the glaring contradiction between the DOD Mandate itself, which is expressly limited to licensed vaccines, and the Armed Services Guidance that mandates use of EUA vaccines "as if" or "interchangeably" with licensed vaccines. It is thus the Armed Services themselves that appear to be disobeying a direct order. This Court should direct the Armed Services to comply with the DOD Mandate, and bar the mandatory administration of any EUA-labeled or manufactured vaccine.

With respect to Defendants' constitutional claims, this Court must not be fooled by Defendants' assertions of national security of emergency authorities. "Even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, --- U.S. ---, 141 S.Ct. 63, 68, 208 L.Ed.2d

---

https://thehill.com/policy/defense/576144-hundreds-of-thousands-of-us-troops-still-unvaccinated-ahead-of-first-military (last visited Oct. 24, 2021).

206 (2020) ("*Cuomo*"). The Constitution does not grant the Executive, or unelected, unaccountable and purportedly unreviewable agencies unlimited power to unilaterally rule the nation, without any judicial oversight or congressional authorization. This Court must apply the strictest scrutiny to Defendants' actions.

## JURISDICTION AND JUSTICIABILITY

### A.    Plaintiffs' Claims Are Ripe and Justiciable.

In the Eleventh Circuit, claims by service members against the armed services are normally non-justiciable, except for "facial challenges to military regulations." *Speigner v. Alexander*, 248 F.3d 1292, 1296 (11th Cir. 2001). Plaintiffs' claims are facial challenges to a generally applicable military regulation based on allegations that the DOD and Armed Services Defendants "acted arbitrarily and capriciously by failing to adhere to statutes and regulations." *John Doe No. 1 v. Rumsfeld*, 297 F.Supp.2d 119, 128 (D.D.C. 2003) ("*Rumsfeld I*").

Plaintiffs are not challenging discrete individualized personnel or disciplinary actions,[5] and therefore need not wait for "final disciplinary action," ECF No. 31, Def. Opp'n, at 12, for their facial challenge to become ripe. If Plaintiffs were to wait for the institution of courts-martial proceedings or final

---

[5] "[T]he governing rule" in the Second, Fifth, Seventh, Eighth, Ninth, Eleventh and D.C. Circuits "allow[s] equitable challenges to personnel decisions only when they constitute facial challenges to the constitutionality of military regulations, and not in cases of discrete individualized actions." *Dibble v. Fenimore,* 339 F.3d 120, 126 (2d Cir. 2003).

4

disciplinary actions, as Defendants urge, then this court would lose jurisdiction over Plaintiffs' claims.

**B.  Plaintiffs Have Exhausted Available Administrative Remedies, But Are Not Required to Pursue Such Remedies if Unavailable or Inapplicable to Their Claims Before This Court.**

Defendants erroneously claim that "Plaintiffs' claims are not ripe because no plaintiff exhausted available administrative remedies."  ECF No. 31, Def. Opp'n, at 12.  Once again, Plaintiffs are facially challenging generally applicable regulations, rather than to individualized personnel and disciplinary actions. In any case, Plaintiffs have exhausted administrative remedies, or have been denied any recourse to administrative remedies, which gives rise to their cause of action.

First, with respect to medical exemptions, the DOD Mandate and Armed Services Guidance categorically exclude exemptions based on natural immunity from previous infections.  *See* ECF No. 31-2, DOD Mandate, at 1.  Accordingly, there are no administrative remedies to pursue for John Doe #9 and #10. Nevertheless, John Doe #10 requested exemption was denied, while John Doe #3 was informed that he was not eligible for exemption based on history of cancer.[6]

Second, with respect to religious accommodation requests, Plaintiffs have not claimed any violations of the First Amendment or any statutes governing

---

[6] John Doe #3 was identified to Defendants on October 22, 2021, after the filing of Defendants' Response.

religious freedom or expression, nor do they seek any relief based on violations of religious freedom or discrimination. Ripeness does not require Plaintiffs to pursue administrative remedies, or await a final determination, on claims that are unrelated to, or have not been made, in their Complaint to this Court.[7]

### C.    Plaintiffs Have Standing for Claims Against FDA.

Defendants contend that Plaintiffs lack standing to challenge the FDA's actions because their injuries from hte DOD Mandate are not traceable to the FDA, and further cannot be redressed by this Court. ECF No. 31, Def. Opp'n, at 28. Defendants' arguments are foreclosed by *John Doe No. 1 v. Rumsfeld*, 341 F.Supp.2d 1 (D.D.C. 2004) ("*Rumsfeld II*"), where the court held that service members had standing to sue the FDA for the same relief that Plaintiffs seek here, namely: (1) to vacate FDA's unlawful approval of a vaccine and (2) to enjoin the DOD from mandatory administration of a vaccine unlawfully approved by FDA. *See Rumsfeld II*, 341 F.Supp.2d at 9.

Regarding causation, the FDA's actions in re-issuing the EUA for the BioNTech Vaccine and licensing Comirnaty are both the proximate and but for cause of Plaintiffs' injuries. The FDA Comirnaty Approval provided the legal predicate for the DOD Mandate, which permits only FDA licensed vaccines to be

---

[7] Certain Plaintiffs, including Jane Doe #2 and John Doe #11 have already had their religious accommodation requests denied.

mandate.  Further, the DOD Mandate was issued the very next day, demonstrating that the timing of the mandate was also driven by FDA approval. The FDA's statutory violations are also the cause of injury Plaintiffs will suffer if they are required to take an EUA vaccine under the mandate.  Defendants concede that "DOD relied on [FDA's] determination" that the EUA and licensed vaccine "can be used interchangeably" for its directive that the BioNTech EUA Vaccine may be mandated.  *See* ECF No. 31, Def. Opp'n, at 21.

Defendants' assertion that the FDA's licensure and the DOD Mandate were "independent decision[s]" is not plausible.[8] The President is the Commander-in-Chief, and the Defendant administrative agencies are under the direct control of the President who serve at his pleasure. They are engaged in concerted action to adopt near universal vaccine mandates for all U.S. citizens and legal residents. *See* ECF No. 1, Compl., Section II ("Federal Vaccine Mandates").

---

[8] Defendants' reliance on *Null v. FDA*, 2009 WL 10744069 (D.D.C. Nov. 10, 2009), is misplaced because it addressed a New York state mandate (which had been enjoined), rather than a federal mandate. The independence of federal and state actions in our federal system of dual sovereignty is not in dispute. In any case, the court in *Null* acknowledged that the discussion was "purely academic" because the state mandate had already been enjoined.  *Null*, 2009 WL 10744069, at *3.

## ARGUMENT

**A.    Plaintiffs Have a Substantial Likelihood of Success on the Merits.**

      **1.    DOD and Armed Services Violated DOD Directives, Regulations, APA and/or Informed Consent Statutes.**

            **a)    Armed Services Guidance Violates DOD Mandate.**

In the DOD Mandate, SECDEF Austin directed that mandatory vaccination "will only use COVID-19 vaccines that receive full licensure from the [FDA]." ECF No. 31-2, DOD Mandate, at 1.[9]  Defendants' response appears to confirm that the DOD Mandate does not require or permit the use of EUA vaccines pursuant to the mandate.  ECF No. 31, Def. Opp'n, at 19-20.  Plaintiffs and Defendants thus appear to be in full agreement that EUA vaccines may not be mandated.

Defendants' Response fails, however, to acknowledge that the Air Force Guidance and the Surgeon Generals Guidance expressly permit the use of EUA-labeled and manufactured products "interchangeably" with and/or "as if" they were the licensed product.  *See* ECF No. 31-11, Air Force Guidance, § 3.1.1 and ECF

---

[9] DOD's position here is consistent with its position reported in the July 6, 2021 Memorandum Opinion for the Deputy Counsel to the President, *Whether Section 564 for the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization* (July 6, 2021) ("OLC EUA Opinion") (attached as Ex. 4). There, the DOJ stated that DOD interpreted the informed consent requirements in 10 U.S.C. § 1107a "to mean that DOD may not require service members to take an EUA [vaccine]" without first obtaining a Presidential Waiver under 10 U.S.C. § 1107a. *Id.* at 16 (citations omitted). DOD has not obtained a Presidential Waiver.

No. 31-3, Surgeons General Memo, at 1. There appears to be a direct conflict between the DOD's directive that only fully licensed vaccines may be mandated, and the Air Force and the Surgeon Generals Guidance that mandate EUA vaccines.

The Defendants' Response does resolve this contradiction, as it appears to adopt both the DOD position that only licensed vaccines may be mandated, while also advancing the Air Force and FDA position that EUA and licensed vaccines are interchangeable. *See* ECF No. 31, Def. Opp'n, at 21. This Court must direct the DOD and Armed Services to strictly comply with the DOD Mandate, and enjoin the Armed Services from mandatory administration of an EUA vaccine.

### b) DOD Mandate & Regulations Are Subject to APA.

Defendants claim that the DOD Mandate is exempt from the APA's requirements under 5 U.S.C. 553(a)(1), which exempts a "military or foreign affairs ***function***" from APA's rulemaking provisions. *See* ECF No. 31, Def. Opp'n, at 22 (*quoting* 5 U.S.C. 553(a)(1)) (emphasis added). Defendants cite *U.S. v. Mingo*, 964 F.3d 134, 2017 WL 11576680 (2d Cir. 2020) ("*Mingo*"), which explains that this narrow exception is so "rarely invoked" that the few cases addressing it provide "only limited guidance." *Mingo*, 2017 WL 11576680, *4. *Mingo* goes on to discuss *lndep. Guard Ass'n of Nevada, Local No. I v. O'Leary on Behalf of US Dep't of Energy*, 57 F.3d 766 (9th Cir. 1995), which held that "the statutory language … instructs us to look not to whether … the agency promulgating a regulation is

9

'civilian' or 'military,' but to the ***function being regulated***."  *Indep. Guard Ass'n*, 57 F.3d at 769 (emphasis added).[10]

The DOD Mandate is not issued pursuant to any specifically "military function," and thus is not exempt from the APA's rulemaking requirements. Instead, the DOD Mandate is one piece in the larger federal administrative scheme to impose nearly universal federal vaccine mandates (affecting 100 million Americans) as a condition for employment. *See* ECF No. 6, Compl., Section II.

The DOD's asserted justifications—military health and military readiness—are belied by the facts, and should be considered pretextual justifications that are not due deference by this Court.  The health and safety rationale is belied by the DOD's own numbers. *See* ECF No. 31-14 (23 active-duty deaths in 2020 and 2021) & ECF 6, Compl., ¶ 43 (survival rate of 99.98%). DOD claims that the DOD Mandate is needed for military readiness are not plausible, because the vaccine mandate itself will create a crisis in readiness, as it may ultimately result in loss of 10% to 30% or more in combat and aviation units across the board.

---

[10] The functional approach is also consistent with the statute's legislative history, where Congress rejected proposals to categorically exempt the Army and Navy "since the bill relates to functions, rather than agencies, it would seem better to define functions." *Id.* (*quoting* S.Rep. No. 752, 79th Cong. 1st Sess. 13 (1945)).

c)    **DOD Mandate & Armed Services Guidance Violate AR 40-562 by Eliminating Exemption for Previous Infection and Other Medical Conditions.**

The DOD Mandate and Armed Services Guidance uniformly violate AR 40-562 by eliminating the exemption for those with a documented previous infection, which remains in full effect.  *See* ECF 31-5, AR 40-562, para. 2-6(a)(1)(b); *see also* ECF No. 31-2, DOD Mandate, at 1.  The DOD is also refusing exemptions for underlying health conditions that would have previously been granted exemptions. *See id.*, para. 2-6(a)(1)(a).  The DOD and Armed Services' policy deprives nearly 250,000 service members of a presumptive right to exemption to which they are currently entitled under AR 40-562. *See* ECF 31-14, Rans Declaration, at 8, Table: "DOD COVID-19 Cumulative Deaths") (247,583 Military Cases).

Defendants do not dispute that service members with a documented previous infection are not exempt, though their response is silent on DOD's justification or rationale for reading these exemptions out of its own regulations. Accordingly, Natural Immunity Plaintiffs and others with previous infections or other relevant conditions should be able to rely on this provision to receive medical exemptions.

d)    **DOD and Armed Services' Violation of Informed Consent Requirements.**

Defendants argue that the informed consent requirements in 10 U.S.C. § 1107a "require informed consent in certain limited circumstances that are not

11

applicable to the facts of this case." ECF No. 31, Def. Opp'n, at 19.[11] Defendants

are correct that the DOD Mandate itself provides that "[m]andatory vaccination

against COVID-19 will only use COVID-19 vaccines that receive full licensure."

ECF No. 31, Def. Opp'n, at 20 (*quoting* ECF No. 6-2, DOD Mandate, at 1).  But

this statement ignores the Air Force Guidance and the Surgeons General Guidance

that permit or require EUA vaccines to be administered pursuant to the mandate.

This appears to be an admission by Defendant DOD, the author of the

mandate, that EUA vaccines cannot be mandated. Accordingly, the Court should

enter a declaratory judgment immediately adopting this apparently undisputed

finding – that EUA vaccines may not be mandated – and issue a TRO enjoining

any Defendant DOD and Armed Services from administering an EUA vaccine

pursuant to the mandate.

> **2.    FDA Violations of FDCA, PHSA and APA in Re-Issuing BioNTech EUA and Comirnaty Licensure.**

> **a)    EUA Are Determinations Subject to Judicial Review.**

Defendants erroneously assert that the Secretary's EUA determinations

---

[11] Defendants attempt to distinguish the *Doe v. Rumsfeld* line of cases that enjoined a similar DOD vaccine mandate on the fact that *Rumsfeld I* addressed an anthrax vaccine was initially an investigational new drug ("IND"), rather than an EUA vaccine.  *See* ECF No. 31, Def. Opp'n, at 19-20. This ignores the fact that, after the FDA granted EUA status to the anthrax vaccine, the injunction continued in full force and was expanded to enjoin administration of EUA vaccines. *See John Doe #1 v. Rumsfeld*, 2005 WL 774857, at *1 (D.D.C. Feb. 6, 2005) ("*Rumsfeld III*").

under 21 U.S.C. § 360bbb-3 ("EUA Statute") are exempt from judicial review. ECF No. 31, Def. Opp'n, at 42. In doing so, Defendants conflate 5 U.S.C. § 701(a)(1) (statutes that expressly and categorically "preclude judicial review" altogether) with 5 U.S.C. § 701(a)(2) (actions "committed to agency discretion").

The Supreme Court and the Eleventh Circuit have read 5 U.S.C. § 701(a)(2) very narrowly to permit APA review where, as under the EUA statute, there are meaningful standards for review.  The Supreme Court has noted the "tension" between the prohibition of judicial review for actions "committed to agency discretion" and the command in § 706(2)(A) that courts set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Weyerhauser Co. v. U.S. Fish and Wildlife Servs.*, 139 S. Ct. 361, 370, 202 L.Ed.2d 269 (2018) (citation omitted).  To give effect to § 706(2)(A) and to honor the presumption of review, the Supreme Court reads the exception in § 701(a)(2) quite narrowly, restricting it to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," such as agency enforcement. *Id.* (citation and quotation omitted).[12]

---

[12] The 11th Circuit and this district review agency decisions committed to agency discretion where there is a meaningful standard for review. *See, e.g., People for Ethical Treatment of Animals, Inc. v. USDA*, 851 Fed.Appx. 896, 899 (11th Cir. 2021) (permitting judicial review of agency licensing decision) ("*PETA*"); *Fla.*

Further, even where a statute like EUA Statute uses permissive language such as "may," this does not preclude review where it concerns a challenge, like Plaintiffs make here, that an administrative agency "did not consider all relevant factor that the statute sets forth to guide the agency in the exercise of its discretion." *Id.* at 371. *See also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 204 L.Ed.2d 978 (2019).

The EUA Statute, 21 U.S.C. § 360bbb-3, provides clear and meaningful standards of review. Section 564(c)(1)-(4) sets forth three required conditions that must be met for the initial grant of the EUA. Section 564(g)(2) sets forth clear and specific conditions for revision and revocation of the EUA; while permissive, these conditions are sufficiently clear to permit judicial review under *Weyerhauser*. Finally, and most importantly, Section 564(b)(2) set forth ***mandatory conditions*** for revocation of declaration with respect to a product where, as here, there has been a change in the approval status of the product such that the circumstances under Section 564(a)(2), 21 U.S.C. § 360bbb-3(a)(2), cease to exist (i.e., an unapproved EUA product becomes approved).[13]

---

*Wildlife Fed., Inc. v. Jackson*, 2011 WL 13112090, at *2 (N.D. Fla. Sept. 30, 2011). *See also*

[13] The lone case cited by Defendants, *Ass'n of Am. Physicians & Surgeons v. FDA*, 2020 WL 574974 (6th Cir. Sept. 24, 2020) ("*AAPS*"), addressed a complaint dismissed on grounds of associational standing, and did not reach the merits. Accordingly, *AAPS*'s categorical preclusion of judicial review is both dicta and non-

14

**b)** **FDA Approval of Comirnaty Violated PHSA and APA.**

Defendants erroneously claim that Plaintiffs "cit[ed] and quot[ed] the wrong statute" in challenging the FDA's action, as is their suggestion that Plaintiffs asserted that a biologic must be "approved pursuant to a New Drug Application." ECF No. 31, Def. Opp'n, at 34. The PHSA's substantive requirements for approval and clinical trials are largely identical to those under the FDCA. The PHSA, 42 U.S.C. § 262(j), directs the FDA to apply the requirements of FDCA Section 505, 21 U.S.C. § 355, for approval of drugs to vaccines and other biologics; the primary difference is that the PHSA application requirements are governed by the PHSA requirements in 42 U.S.C. § 262(a), rather than FDCA requirements in 42 U.S.C. § 355(a).[14]

**Exclusion of Special Populations**. Contrary to the FDA's assertion, Pfizer/BioNTech and other COVID-19 vaccine developers intentionally excluded those with previous infections from clinical trials. *See* Ex. 1, McCullough Decl., ¶ 48. The FDA asserts that some may have inadvertently been included—

---

binding insofar as it is inconsistent with *Weyerhauser*, *PETA*, and *Rumsfeld III*, where the court retained jurisdiction for challenges to "the lawfulness or merits of any EUA." *Rumsfeld III*, 2005 WL 774857, at *1.

[14] Clinical trials for both drugs and biologics are governed by 21 C.F.R. § 312.2. Further, while effectiveness is not a statutory requirement under the PHSA, the FDA treats "potency" under the PHSA as equivalent to "effectiveness" under the FDCA. *See* ECF No. 31-13, Marks Decl., at 2 n.1.

"approximately 3% … had evidence of prior infection," ECF No. 31, Def. Opp'n, at 37—but there is no indication that this was confirmed, that they were analyzed separately, or that there were sufficient numbers, or that they were properly distributed among treatment groups, for the data to be statistically significant.

**Advisory Committee Hearing and Review.** While Advisory Committee hearing and review is not mandatory, ECF No. 31, Def. Opp'n, at 39 (*citing* 21 C.F.R. 14.171(a)), the Comirnaty application met nearly all the criteria for "high priority" under 21 C.F.R. § 14.171(a) (any one of which would have sufficed), including: (i) "pose significant safety hazards;" (ii) "narrow benefit-risk considerations," at least for special populations that include Plaintiffs (and service members who are younger and healthier than the general population); (iii) utilizes "novel delivery system or formulation;" (iv) "subject of major scientific or public controversy," *i.e.*, safety and vaccine mandates; and (v) "subject to special regulatory requirements," namely the vaccine mandates and the unjustified "interchangeability" determination for EUA vaccines. 21 C.F.R. § 14.171(a). While the regulation is discretionary, this regulation provides meaningful standards that permit judicial review under *Weyerhauser* and *PETA*. Under these standards, the FDA abused its discretion by refusing to require Advisory Committee hearing and review for Comirnaty.

16

### c) FDA Approval of Comirnaty Was Based on Impermissible and Extra-Statutory Criteria.

FDA has failed to justify its numerous violations of FDCA, PHSA and APA requirements, as well as its own regulations, rules, procedures and the June 2020 Industry Guidance. *See* ECF No. 31-2, October 6 TRO Brief, at 15-24 & 27-31. FDA's actions can be much more easily explained when considered in light of its overriding goal: enabling the DOD and the Executive Branch to impose vaccine mandates on pre-determined schedules. Plaintiffs do not contend that "acting expeditiously" in itself is evidence of "bad faith." ECF No. 31, Def. Opp'n, at 33. But when such shortcuts are combined with evidence of improper purposes, political interference, statutory and regulatory violations, and significant departures from normal decision-making processes, this constitutes evidence of "the FDA's bad faith that renders its decision arbitrary and capricious." *Tummino v. Torti*, 603 F.Supp.2d 519, 544 (E.D.N.Y. 2009).

### d) Interchangeability Determination Is Contrary to Law.

There is no statutory authority, and no precedent, for the FDA's determination that an EUA vaccine may be used "interchangeably" with a licensed vaccine (much less that the FDA can retroactively license an EUA product). The FDA concedes as much where it claims that this determination was a "factual" or "scientific", rather than a legal, determination. ECF No. 31, Def. Opp'n, at 47.

"Interchangeable" is a specifically defined statutory terms under the PHSA,

17

and to find product "interchangeable" requires the FDA and applicants to follow specific set of procedures set forth in the statute before making this determination.[15] *See* ECF No. 3-2, October 6 TRO Motion, at 29-31. The FDA concedes that these procedures were not followed, and the FDA did not make any legal determinations. This is confirmed by the FDA's failure to list any products as "interchangeable" with Comirnaty in the FDA's Purple Book.[16]

The FDA asserts that it has decided to exercise "enforcement discretion with respect to certain labeling" and manufacturing requirements, ECF No. 31-13, Marks Declaration, ¶ 13, and that this somehow converts an EUA vaccine into a licensed vaccine.  *See* ECF No. 31, Def. Opp'n, at 21.  The FDA does not explain

---

[15] The BioNTech EUA Expansion Letter used the specific statutory "interchangeable" and "interchangeably" in a manner that could only be read as the FDA making a legal determination under the PHSA, a legal determination on which the DOD, the Air Force, and Surgeon Generals apparently relied. *See* ECF No. 31, Def. Opp'n, at 21 (*citing* ECF No. 31-3, Surgeon Generals Memo). It is only after being challenged that the FDA now retreats to take the position it was not a legal determination, but rather a factual or scientific determination, that apparently has no legal significance.  An agency's *post hoc* rationalization for its litigation position cannot be accorded deference. *See Yu v. Shinseki*, 2014 WL 259845, at *1 (Vet. App. Jan. 24, 2014) (citation and quotation omitted).

[16] *See* FDA, *Purple Book Database of Licensed Biological Products*, available at: https://purplebooksearch.fda.gov/. A query for Comirnaty in the Purple Book database returns the result, under "Interchangeable(s)" that there are "[n]o interchangeable data at this time." *See* FDA, *Purple Book Database of Licensed Biological Products: Simply Search Results for: Comirnaty* https://purplebooksearch.fda.gov/results?query=COVID-19%20Vaccine,%20mRNA&title=Comirnaty (accessed Oct. 24, 2021).

18

how non-enforcement of its statutory duties can convert an unlicensed product, which the DOD acknowledges cannot be mandated, into a licensed product. Licensing is an affirmative, reviewable action by FDA.  FDA has cited no statute, regulation, rule or precedent that would permit its non-enforcement inaction to retroactively license an unlicensed product, or convert an unlicensed product into a licensed one.

Finally, Defendants incorrectly assert that that the FDA's interchangeability finding is "undisputed."  *See* ECF No. 31, Def. Opp'n, at 46.  Plaintiffs have never conceded that the two products are interchangeable or have the "same formulation," or that the FDA has approved the same manufacturing standards.  Nor could they given that the FDA's redaction of essential information regarding drug formulation, composition, testing, storage, and manufacturing.[17]  There is no basis in the public record for the FDA's determination, or for Plaintiffs to evaluate or challenge these "factual" claims.

### e)   Same Product Cannot Simultaneously Be Licensed and Unlicensed for Same Indication or Use.

In the October 6 TRO Motion, Plaintiffs explained that the same product

---

[17] *See* ECF No. 1-4, FDA Comirnaty Approval Letter, at 1-2 (redacted information regarding Comirnaty manufacturing locations and formulation); ECF No. 1-5, Comirnaty SBRA, at 6-8 (redactions for Comirnaty manufacturing overview, drug substance, drug product, drug composition, diluent, etc.), 12-13 (manufacturing facility and testing information) and 15 (testing).

cannot simultaneously be licensed and unlicensed (*i.e.*, EUA) for the same indication or use, nor can it simultaneously be subject to two mutually exclusive regulatory regimes. *See* ECF No. 3-2, October 6 TRO Motion, at 27-29. Defendants' response has not demonstrated otherwise; instead, it appears to confirm that Comirnaty is simply not available, or in Defendants' terms "in existence," at present. *See* ECF No. 31, Def. Opp'n, at 43. If licensed Comirnaty is not "in existence," then this Court should enjoin the DOD Mandate until it is.

> **f)   Defendants' Challenges to Plaintiffs' Expert Witness Are Without Merit and Procedurally Improper.**

Defendants' challenges to the qualifications and testimony of Dr. Jane Ruby, *see* ECF No. 31, Def. Opp'n, at 35-36, are without merit.[18]  While Dr. Ruby is not an MD, she does hold multiple doctorates and additional graduate degrees in relevant fields. *See* ECF No. 1-18, Ex. A (Dr. Ruby CV).  More importantly, she has "over 20 years of experience in pharmaceutical drug development," including serving "as a principal investigator for multi-center randomized, placebo-controlled trials in the United States and ROW," as well as "interfacing with FDA guidance documents, regulations, and submission review," like those at issue here. ECF No. 1-18, Ruby Aff., ¶ 8.

---

[18] To the extent Defendants seek to exclude Dr. Ruby's testimony pursuant to *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993), their request is premature and procedurally improper.

Plaintiffs have also included the testimony of Dr. Peter McCullough in support of the Complaint and TRO Motions. Dr. McCullough is an MD and is widely recognized as one of, if not the, leading experts on cardiovascular and chronic kidney disease, with over 1,000 related scientific publications. Ex. 1, McCullough Decl., ¶ 5. As relevant here, Dr. McCullough has been a leader in the medical response to COVID-19 in general, and in the development of effective outpatient treatments that obviate the need for dangerous experimental vaccines, and he has published 47 peer-reviewed publications on COVID-19 cited in the National Library of Medicine. *Id*.

### 3.   Defendants Violated Plaintiffs' Constitutional Rights

#### a)   DOD Mandate Violates Plaintiffs' Substantive Due Process Rights to Refuse Unwanted, Unnecessary, and Unproven Experimental Medical Treatment.

This Court must apply strict scrutiny for violations of substantive due process rights, and consequent violations of protected liberty and property interests and enumerated constitutional rights. Such application would be consistent with the Supreme Court's holding in *Cuomo*, where it rejected rational basis review in favor of strict scrutiny for evaluating pandemic-related restrictions of fundamental rights. "Even in a pandemic, the Constitution cannot be put away and forgotten." *Cuomo*, 141 S.Ct. at 68 (*citing Jacobson v. Massachusetts*, 197 U.S. 11, 24-25, 25 S.Ct. 358, 49 L.Ed. 643 (1905) ("*Jacobson*")).

Defendants propose that rational basis is appropriate because the mandate does not burden Plaintiffs' fundamental rights, citing *Jacobson* in support. *See* ECF No. 31, Def. Opp'n, at 49. The *Jacobson* case is irrelevant to this matter, as it addressed mandates imposed by a State legislature under its "inherent police power." *Klaassen v. Trustees of Ind. Univ.*, 2021 WL 3073926, at *17 (N.D. Ind. July 18, 2021), *aff'd*, 7 F.4th 592 (7th Cir. 2021) (*citing Jacobson*, 197 U.S. at 24-25).

Defendants' overall reliance on the history of vaccination does not make the right to bodily autonomy – including the right to not receive experimental vaccines in light of valid medical and religious exemptions – any less fundamental. It does, however, leave service members and the general public vulnerable to the types of experimental vaccines they seek to mandate here. The danger of the rational basis review proposed by Defendants is that it "allows the government to justify a law with rational speculation unsupported by evidence or empirical data." *Silvester v. Becerra*, 138 S.Ct. 945, 948, 200 L.Ed.2d 293 (2018) (Thomas, J., dissenting).

Defendants' position is contrary to broader legal principles over medical treatment. Courts have rejected the near-limitless bounds of governmental power over bodily autonomy that Defendants advocate: "the Constitution's due process guarantee protects an individual's liberty to decide whether or not to submit to serious medical treatment." *Doe v. Sullivan*, 938 F.2d 1370, 1383 (D.C. Cir. 1991) ("*Sullivan*"). *See also Ammend v. BioPort, Inc.*, 322 F.Supp.2d 848, 871 (W.D.

22

Mich. 2004) ("Several federal courts have found violations of the fundamental right to bodily integrity in medical experiments on humans.").

> **b)** **DOD Mandate Is Unconstitutional Even Under Rational Basis Standard of Review.**

Even if this court were to apply the rational basis standard, Plaintiffs have met their burden. For example, there is no rational basis for the difference in treatment, with respect to the vaccine mandate, between an unvaccinated service member and one who has natural immunity. This is especially true when considering the superiority of natural immunity to the short-lived immunity of the vaccinated.

The weight of scientific evidence, and the history and general principles of virology, demonstrate that "natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2" compared to BioNTech vaccine immunity. ECF No. 1, Compl., ¶ 99 (discussing "Israeli Study"); *see also id.* ¶¶ 100-102 (discussing "Cleveland Clinic Study" and "Longitudinal Study"). Dr. McCullough discusses the Murchu Study of 615,777 previously infected individuals, which found a re-infection rate of less than one percent (<1%) over the long term (including periods where the Delta variant is dominant). *See* Ex. 1, McCullough Decl., ¶ 57.

The provable effectiveness of natural immunity obliterates Defendants' argument that vaccination of the naturally immune is necessary to maintain "a

healthy and ready force of warfighters" and "in preventing the spread of infectious disease." ECF No. 31, Def. Opp'n, at 52. Moreover, the fact that Defendants target those with natural immunity and disregard their medical exemptions proves Defendants' policy is driven by improper animus. *See Trump v. Hawaii*, 138 S.Ct. 2392, 2420 (2018) (quoting *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973) (noting that the Court has struck down policies as illegitimate under rational basis where "a common thread has been that the laws at issue lack any purpose other than a 'bare. . . desire to harm a politically unpopular group'").

Additionally, Defendants' acts of discrimination, if analyzed under rational basis review, are improper and unlawful, in that they are done in furtherance of a broader plan to vaccinate nearly every American, regardless of need, medical conditions, religious exemptions, contraindications, side effects/adverse reactions, or contrary data. At the same time, the federal government remains committed to not require vaccination – or even testing – for the millions of aliens illegally flooding over our borders. While Defendants justify their position on vaccine mandates on *Sullivan*, that reliance is ultimately misplaced as that court was presented with different considerations and different FDA rules for the conditions of waiving informed consent. *See Sullivan*, 938 F.2d at 1374. Defendants seem to suggest that they can mandate vaccines at any time for any reason; *Sullivan* stands for no such thing.

24

### B. Plaintiffs Will Suffer Irreparable Harm.

Plaintiffs face injury that is actual and imminent if relief is not granted.[19] For example, servicemembers have been threatened with administrative action and have been declared ineligible for training or future deployment; John Doe #3 did not receive a stratification statement from a senior officer due to his exemption request; John Doe #5 faces punishment if his religious exemption is granted; and John Doe #13 faces administrative separation even though he works from home. *See* Ex. 2, Plaintiffs' Supp. Decls.

These injuries are guaranteed by the policies of the services. For example, Navy Guidance (NAVADMIN 225/21) requires immediate relief from command and the commencement of Detachment for Cause ("DFC") of any senior leader who is not vaccinated. It further requires the enlisted to be processed-out of not fully vaccinated by November 28, 201, and permits the recoupment of bonuses or incentives and for costs of training and education. Additionally, Marine Corps Guidance provides that the vaccine mandate "constitutes a lawful general order and any violation of these provisions is punishable as a violation of article 92" of the UCMJ. ECF No. 1, Compl., ¶¶ 56-57.

---

[19] In support, Plaintiffs have filed redacted declarations as Exhibit 2. The unredacted declarations and supporting documents (*e.g.*, antibody results and other records with personally identifying information) will be filed separately pursuant to the Protective Order issued October 12, 2021.

25

Defendants misconstrue the harm Plaintiffs face, stating that "no one will physically force them" to be vaccinated. ECF No. 31, Def. Opp'n, at 55. In doing so, Defendants downplay the pressure they themselves are placing on Plaintiffs and ignore the irreparable consequences of not getting the experimental vaccine, which includes potential dishonorable discharge, imprisonment, future unemployabilitay and inability to support themselves or their families, loss of veterans, retirement and other benefits, and loss of constitutional rights. Despite Defendants' arguments to the contrary, federal courts have granted injunctive relief in military discharge cases. *See Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984).

Defendants further argue that Plaintiffs do not face irreparable harm because they could "later be made whole." ECF No. 31, Def. Opp'n, at 58. Defendants do not adequately explain how Plaintiffs could be "made whole" after they lose their livelihoods and are severely punished, and they ignore the constitutional rights at issue in this matter and the presumption of injury they carry. In the Eleventh Circuit, alleged violations of the right to privacy, which includes the right to bodily integrity at issue here, presumptively cause irreparable injury. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citations omitted). Restrictions on fundamental and constitutional rights – such as those faced by Plaintiffs in the present case, including their rights secured

26

by the Second Amendment – are sufficient to establish irreparable harm. *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

The denial of an injunction, preventing Plaintiffs from being coerced into accepting an experimental vaccine, or else lose their careers, freedom, and future livelihoods, is an injury that cannot be undone and will permanently prevent Plaintiffs from exercising their right to refuse unwanted, unnecessary, and unproven experimental medical treatments. Further, "requiring a person to submit to an inoculation without informed consent or the presidential waiver is an irreparable harm for which there is no monetary relief." *Rumsfeld I*, 297 F.Supp.2d at 135.

The fact that Plaintiffs' economic interests and constitutional rights are tied-in together support a finding of irreparable harm. *See E. St. Louis Laborers v. Bellon Wrecking Co.*, 414 F.3d 700, 705 (7th Cir. 2005) ("Our conclusion that the union would suffer irreparable harm was driven in large part by the practical impossibility of fashioning a damage remedy under these circumstances."). This is the precise type of case where a plaintiff may suffer irreparable harm "where the nature of the loss makes monetary damages difficult to calculate." *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1018 (7th Cir. 1990).

### C.   The Balance of Equities (Including the Public Interest) Weighs Heavily in Plaintiff's Favor.

A preliminary injunction is proper when "the balance of equities tips in [its]

favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008). "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009).

"[T]here is a strong public interest in requiring that the plaintiffs' constitutional rights no longer be violated[.]" *Laube v. Haley*, 234 F. Supp.2d 1227, 1252 (M.D. Ala. 2002). That is true even though COVID-19 is involved. *Cf. Cuomo*, 141 S. Ct. at 68. Therefore, the mandate and any implementation thereof by the Armed Services must be enjoined to allow Court the time to determine whether federal administrative agencies have the legal authority to impose vaccine mandates and to deprive citizens of their freedom, livelihoods, and fundamental rights for non-compliance.

## **CONCLUSION**

For these reasons, the Court should immediately grant an administrative stay of the DOD and FDA proceedings. This Court should also issue a declaratory judgment, and enter a TRO against the DOD Vaccine Mandate, the Armed Services' implementation thereof to Plaintiffs, and the FDA Comirnaty Approval, for the reasons discussed herein and in Plaintiffs' TRO Motions.

Respectfully Submitted,

*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esq.
Florida Bar No. 581798
REYES LA WYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. (305) 445-0011
Fax. (305) 445-1181
Email: ireyes@reyeslawyers.com

*/s/ Brandon Johnson*
Brandon Johnson
DC Bar No. 491370
*/s/ Travis Miller*
Travis Miller
Texas Bar No. 24072952
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org
Email: traviswmiller@gmail.com

29

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this submission contains 6,678 words according to Microsoft Word's word count function, and as such is in compliance with L.R. 7.1(F), and the Court's October 19, 2021 Scheduling Order.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day e-filed the foregoing Plaintiffs' Reply Brief to Defendants' Opposition to Plaintiffs' TRO Motions using the CM/ECF system, and that I have delivered the filing to the Defendants by email and FedEx at the following addresses and any other parties required to receive service.

This 24th day of October, 2021.

Respectfully Submitted,
*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esq.

Lloyd J. Austin III
Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

Carlos Del Toro
Secretary of the Navy
1000 Navy Pentagon
Washington, DC 20350-1000

Xavier Becerra
Secretary
Dept. Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

Janet Woodcock
Commissioner
Food and Drug Administration
10903 New Hampshire Ave
Silver Spring, MD 20993-0002

Frank Kendall
Secretary of the Air Force
1670 Air Force Pentagon
Washington, DC 20330-1670

Christine E. Wormuth
Secretary of the Army
101 Army Pentagon
Washington, DC 20310-0101