## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

**BENJAMIN COKER,** *et al.*,

        Plaintiffs,

  v.

**LLOYD AUSTIN, III, in his official capacity as Secretary of Defense,** *et al.*,

        Defendants.

Case No. 3:21-cv-01211-AW-HTC

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

## **Table of Contents**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................1

I.    The COVID-19 Pandemic ........................................................1

II.   Federal Regulation of and Guidance Concerning COVID-19 Vaccines ...3

III.  Department of Defense COVID-19 Vaccination Directive .......................7

IV.   Procedural History.....................................................................9

LEGAL STANDARDS ......................................................................11

ARGUMENT ....................................................................................12

I.    Plaintiffs have Failed to Demonstrate the Court's Subject-Matter
      Jurisdiction over their Claims.....................................................12

      A.   Plaintiffs Lack Standing to Sue HHS..................................12

      B.   Plaintiffs' Challenges to Military Policy Are Not Justiciable. ..........13

      C.   Plaintiffs Lack Standing to Challenge FDA Actions. ........................17

II.   Plaintiffs Cannot Otherwise Proceed on their Claims.............................20

      A.   The DoD Directive and the Service's Guidance Do Not
           Contravene AR 40-562........................................................20

B.    Plaintiffs Fail to State a Claim with Respect to 10 U.S.C. § 1107a
      and 21 U.S.C. § 360bbb-3. .................................................................26

      1.    Plaintiffs Have Not Identified a Cause of Action. ...........................26

      2.    DoD is Requiring an Approved Vaccine. ......................................27

C.    The Services' Guidance Accords with the DoD Directive. ................31

D.    Plaintiffs Fail to State a Claim with Respect to the Comirnaty
      Approval. .........................................................................................33

E.    Plaintiffs' "Improper Purpose" Claim Fails. .......................................39

F.    Count 6 Should be Dismissed Because Plaintiffs Fail to
      State a Claim with Respect to Interchangeability. ..............................40

G.    Count 6 Should Be Dismissed Because a Product May be Both
      Approved and Subject to an EUA. ......................................................43

H.    FDA was not Required to Undertake Notice and Comment
      Rulemaking Procedures........................................................................47

CONCLUSION ....................................................................................................49

## Table of Authorities

**Cases**

*Aktepe v. United States,*
   105 F.3d 1400 (11th Cir. 1997) ........................................................ 23

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) ........................................................................ 26

*Anderson v. Yungkau,*
   329 U.S. 482 (1947) ........................................................................ 45

*Animal Legal Def. Fund v. USDA,*
   789 F.3d 1206 (11th Cir. 2015) ........................................................ 19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................... 11, 12, 40

*Austin v. Metro Dev. Grp., LLC,*
   No. 8:20-CV-1472-T-60TGW, 2020 WL 5543805
   (M.D. Fla. Sept. 16, 2020) ............................................................... 33

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.,*
   462 U.S. 87 (1983) .......................................................................... 34

*Bates v. Donley,*
   935 F. Supp. 2d 15 (D.D.C. 2013) ................................................... 16

*Bennett v. Spear,*
   520 U.S. 154 (1997) ........................................................................ 42

*Bishop v. Reno,*
   210 F.3d 1295 (11th Cir. 2000) ........................................................ 11

*Bridges v. Hous. Methodist Hosp.,*
   -- F. Supp. 3d --, 2021 WL 2399994 (S.D. Tex. June 12, 2021) ............... 26, 27

*Children's Health Def. v. FDA,*
   -- F. Supp. 3d. --, 2021 WL 5756085 (E.D. Tenn. Nov. 30, 2021) ............. 17, 18

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................. 18, 30

*Coal. for Mercury-Free Drugs v. Sebelius*,
    671 F.3d 1275 (D.C. Cir. 2012) ....................................................... 30

*Common Cause v. Biden*,
    748 F.3d 1280 (D.C. Cir. 2014) ....................................................... 12

*Daniels v. United States*,
    947 F. Supp. 2d 11 (D.D.C. 2013) ................................................... 23

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) ................................................... 2, 33

*Dep't of Com. v. New York*
    139 S. Ct. 2551 ......................................................... 22, 34, 41

*Dodson v. Dep't of Army*,
    988 F.2d 1199 (Fed. Cir. 1993) ....................................................... 25

*Doe v. Ball*,
    725 F. Supp. 1210 (M.D. Fla. 1989), *aff'd*, 903 F.2d 1455 (11th Cir. 1990) .... 17

*Doe v. Franklin Square Union Free Sch. Dist.*,
    -- F. Supp. 3d --, 2021 WL 4957893 (E.D.N.Y. Oct. 26, 2021) ........................26

*Doe v. Rumsfeld*,
    297 F. Supp. 2d 119 (D.D.C. 2003) ................................................... 13

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) ....................................................... 14

*Fastway Moving & Storage, Inc. v. Ugarte*
    No. 13-60832-CIV, 2013 WL 3927687 (S.D. Fla. July 29, 2013) ................... 32

*FCC v. Prometheus Radio Proj.*,
    141 S. Ct. 1150 (2021) ................................................................. 22

*FDA v. Am. Coll. of Obstetricians & Gynecologists*,
   141 S. Ct. 578 (2021) ........................................................................ 34

*Frame v. United States*,
   *No. 4:09-cv-458-RH/WCS*, 2010 WL 883804 (N.D. Fla. Mar. 5, 2010) ......... 14

*Genus Med. Techs. LLC v. FDA*,
   994 F.3d 631 (D.C. Cir. 2021) ........................................................... 47

*Gilligan v. Morgan*,
   413 U.S. 1 (1973) ............................................................................. 23

*Guilfoyle v. Beutner*, No. 2:21-cv-05009-VAP,
   2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) .................................... 27

*Harmon v. Thornburgh*,
   878 F.2d 484 (D.C. Cir. 1989) ........................................................... 22

*Henderson v. Sun Pharms. Indus., Ltd.*,
   809 F. Supp. 2d 1373 (N.D. Ga. 2011) .............................................. 33

*Hodges v. Callaway*,
   499 F.2d 417 (5th Cir. 1974) ............................................................. 17

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*,
   641 F.3d 1259 (11th Cir. 2011) ......................................................... 12

*Isenbarger v. Farmer*,
   463 F. Supp. 2d 13 (D.D.C. 2006) ..................................................... 15

*Kawa Orthodontics, LLP v. U.S. Dep't of the Treasury*,
   773 F.3d 243 (11th Cir. 2014) ........................................................... 12

*Langston v. Texas Cap. Bank, Nat'l Ass'n*,
   No. 8:20-CV-2954-VMC-AAS, 2021 WL 698171 (M.D. Fla. Feb. 23, 2021)  11

*Latif v. Obama*,
   677 F.3d 1175 (D.C. Cir. 2012) .................................................... 40, 49

*Love v. Delta Air Lines*,
   310 F.3d 1347 (11th Cir. 2002) ........................................................ 26

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 12

*Mahon v. USDA*,
   485 F.3d 1247–55 (11th Cir. 2007) .................................................. 35

*Marshall Cty. Health Care Auth. v. Shalala*,
   988 F.2d 1221 (D.C. Cir. 1993) ....................................................... 33

*Martin v. Donley*,
   886 F. Supp. 2d 1 (D.D.C. 2012) ..................................................... 16

*Mazares v. Dep't of Navy*,
   302 F.3d 1382 (Fed. Cir. 2002) ....................................................... 25

*Morrison v. Amway Corp.*,
   323 F.3d 920 (11th Cir. 2003) ......................................................... 11

*MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*,
   950 F.3d 764–74 (11th Cir. 2020) .................................................... 45

*Murphy v. Hunt*,
   455 U.S. 478 (1982) ........................................................................ 16

*Nat'l Council for Adoption v. Blinken*,
   4 F.4th 106 (D.C. Cir. 2021) ........................................................... 47

*Nat'l Mining Ass'n v. Sec'y, U.S. Dep't of Labor*,
   812 F.3d 843 (11th Cir. 2016) ......................................................... 34

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ................................................................... 14, 15

*Navy Seal 1 v. Biden*,
   -- F. Supp. 3d --, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021) ..................... 29

*Norris v. Stanley*,
   -- F. Supp. 3d --, 2021 WL 3891615, at *2 (W.D. Mich. Aug. 31, 2021) ....... 31

*Null v. FDA*,
   No. 09-1924, 2009 WL 10744069 (D.D.C. Nov. 10, 2009) ...................... 17, 18

*Oklahoma v. Biden*,
   -- F. Supp. 3d --, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021) .................... 7

*Orloff v. Willoughby*,
   345 U.S. 83 (1953) ........................................................................... 23

*Robert v. Austin*,
   No. 21-cv-2228 (D. Colo. 2021) ...................................................... 25

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ........................................................................... 23

*Shaw v. Austin*,
   No. 20-2036, 2021 WL 1840397 (D.D.C. May 1, 2021) ................................. 17

*Speigner v. Alexander*,
   248 F.3d 1292–98 (11th Cir. 2001) ........................................... 13, 14

*Standage v. Braithwaite*,
   No. ELH-20-2830, 2021 WL 1060342 (D. Md. Mar. 18, 2021) ..................... 17

*Stewart v. Spencer*,
   344 F. Supp. 3d 147 (D.D.C. 2018) ................................................. 23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ........................................................................... 2

*Texas v. United States*,
   523 U.S. 296 (1998) ........................................................................... 14

*Underwater Exotics, Ltd. v. Sec'y of Interior*
   No. 93-1586, 1994 WL 80878, at *9-10 (D.D.C. Feb. 28, 1994) .................... 48

*United States v. Kisala*,
   64 M.J. 50 (C.A.A.F. 2006) ................................................................ 16

*United States v. Sanders*,
   731 F. Supp. 2d 1261 (M.D. Fla. 2010) ............................................ 13

*Valdez v. Grisham*,
   -- F. Supp. 3d --, 2021 WL 4145746 (D.N.M. Sept. 13, 2021)........................ 31

*Vt. Yankee Nuclear Power Corp. v. NRDC*,
   435 U.S. 519 (1978) ............................................................................ 49

*Winck v. England*,
   327 F.3d 1296 (11th Cir. 2003) ................................................... 16, 23

## Statutes

5 U.S.C. § 551 ............................................................................................ 48

5 U.S.C. § 553 ............................................................................ 21, 22, 47, 48

5 U.S.C. § 558 ............................................................................................ 48

5 U.S.C. § 701 ............................................................................................ 19

5 U.S.C. § 706 ............................................................................................ 22

10 U.S.C. § 1107 ......................................................................................... 10

10 U.S.C. § 1107a ................................................................................ *passim*

10 U.S.C. § 1552 ......................................................................................... 16

10 U.S.C. § 1553 ......................................................................................... 16

21 U.S.C. § 337 ........................................................................................... 27

21 U.S.C. § 360bbb-3 .......................................................................... *passim*

21 USC § 355 .............................................................................................. 35

42 U.S.C. § 262 .................................................................................... *passim*

## Rules

Federal Rule of Civil Procedure 12 ........................................................... 11

**Regulations and Other Executive Materials**

21 C.F.R. § 10.45 ................................................................ 34

21 C.F.R. § 14.171 ............................................................. 39

21 C.F.R. § 310.4 .............................................................. 35

85 Fed. Reg. 15,337 (Mar. 13, 2020) ................................... 2

85 Fed. Reg. 18,250 (Apr. 1, 2020) .............................. 3, 4, 5

**Other Authorities**

Army Regulation ("AR") 40-562........................................ 7, 20, 21, 22

Cavanaugh, Alyson, *et al.*, *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021*, Morbidity & Mortality Weekly Report, 70(32):1081–83 (Aug. 13, 2021), http://dx.doi.org/10.15585/mmwr.mm7032e1) ............................................... 6, 7

CDC, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#cases_community (last accessed Jan. 13, 2022)................................... 2

CDC, *Delta Variant: What We Know About the Science* (updated Aug. 26, 2021), https://perma.cc/4RW6-7SGB ........................................... 2

CDC, *Frequently Asked Questions about COVID-19 Vaccination* (updated Dec. 28, 2021), https://perma.cc/5NUQ-NRM7 ..........................................6

CDC, COVID-19 Vaccines for Children and Teens (last updated Jan. 11, 2022), https://www.cdc.gov/coronavirus/2019ncov/vaccines/recommendations/adolescents.html?s_cid=11369:cdc%20children%20covid%20vaccine:sem.ga:p:RG:GM:gen:PTN:FY21.......................................................24

Congressional Research Report Defense Health Primer: Military Vaccinations, available at https://crsreports.congress.gov/product/pdf/IF/IF11816/2 ............... 7

DOD, Coronavirus: DOD Response (service member data updated Jan. 12, 2022), https://www.defense.gov/Spotlights/Coronavirus-DOD-Response ................... 2

DOD Instruction ("DoDI") 6205.02 ................................................................. 7, 22

FDA, *Clinical Review Memorandum,* https://www.fda.gov/media/152256/download ................................................... 39

FDA, Comirnaty Approved Prescribing Information at 12 (revised Aug. 2021), https://perma.cc/P87N-YGX2 ....................................................................... 4

FDA, *News Release – FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021), https://perma.cc/C4DD-PWE5 ........................................ 4, 49

*FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine,* https://perma.cc/6HEG-C6VV (Dec. 11, 2021) ...................................................................................... 3

HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://perma.cc/VZ5X-CT5R ...................................................................... 2

https://www.cvdvaccine-us.com/resources (last visited Jan. 14, 2022) ................ 30

*Response to Citizen Petition*, Coalition Advocating for Adequately Licensed Medicines, (Docket No. FDA-2021-P-0786) (Aug. 23, 2021), https://www.regulations.gov/docket/FDA-2021-P-0786/ ("*Response to CAALM Citizen Petition*") ............................................... 6, 37, 38

*Response to Citizen Petition*, Siri & Glimstad LLP, at 13-15 (Docket No. FDA-2021-P-0529) (Aug. 23, 2021), https://www.regulations.gov/docket/FDA-2021-P-0529/document ("*Response to Siri Citizen Petition*") ........................... *passim*

Statement of Pres. George W. Bush Signing S.15, 40 Weekly Compilation of
     Presidential Documents 1346, *reprinted in* 2004 U.S.C.C.A.N. S17
     (July 21, 2004) ................................................................................................. 46

Summary Basis for Regulatory Action (SBRA),
     https://www.fda.gov/media/151733/download *with* EUA Letter.............. *passim*

## INTRODUCTION

In warfare, disease has traditionally accounted for more service member deaths than battlefield injuries. General Washington instituted the first vaccine mandate for the Continental Army in 1777, and a program to inoculate the troops on either a routine or situational basis has existed in the American military ever since. The current Department of Defense immunization program, which has been in place for decades, requires that all service members obtain nine immunizations, and an additional eight may be required depending on circumstances like deployment.

Despite this historical backdrop, Plaintiffs contend that the Secretary of Defense lacks the authority to add COVID-19 to the list of diseases for which routine immunizations are required for all service members. Taking their challenge one step further, Plaintiffs seek to invalidate the Food and Drug Administration's approval of the COVID-19 vaccine. But Plaintiffs cannot proceed on any of their claims, both because the Court lacks subject-matter jurisdiction and because Plaintiffs' claims fail as a matter of law. For these reasons, set forth further below, the Court should grant Defendants' motion to dismiss this action.

## BACKGROUND

### I.     The COVID-19 Pandemic

On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a public health emergency because of COVID-19, a respiratory disease

caused by the novel coronavirus named SARS-CoV-2.  HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://perma.cc/VZ5X-CT5R.[1] On March 13, 2020, the President declared the COVID-19 outbreak a national emergency.  85 Fed. Reg. 15,337 (Mar. 13, 2020).

In July 2021, the United States experienced "a rapid and alarming rise in . . . COVID-19 case and hospitalization rates," driven by an especially contagious strain of SARS-CoV-2 known as the Delta variant.  *See* Centers for Disease Control and Prevention ("CDC"), *Delta Variant: What We Know About the Science* (updated Aug. 26, 2021), https://perma.cc/4RW6-7SGB.  Today, community transmission rates of SARS-CoV-2 are high in all fifty states, driven by the Omicron variant.  *See* CDC, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#cases_community (last accessed Jan. 13, 2022).  More than 299,000 service members have been infected, more than 2,300 service members have been hospitalized, and more than 85 service members have died from COVID-19.  *See* DOD, Coronavirus: DOD Response (service member data updated Jan. 12, 2022), https://www.defense.gov/Spotlights/Coronavirus-DOD-Response; *see also* Ex. 12 (Rans); Ex. 13 (Stanley).

---

[1] The Court may take judicial notice of information available on government websites.  *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).  Additionally, in resolving a motion to dismiss, a court may consider a document incorporated by reference in a complaint, provided the document is "(1) central to the plaintiff's claim and (2) undisputed[,]" meaning "the authenticity of the document is not challenged."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## II.   Federal Regulation of and Guidance Concerning COVID-19 Vaccines

The Food and Drug Administration ("FDA") has authority to review and approve "biological products," including vaccines.  *See* 42 U.S.C. § 262(a)(1), (i)(1). In an emergency, FDA may issue an "emergency use authorization" ("EUA"), which authorizes the marketing of vaccines (and other FDA-regulated products) "intended for use" in responding to the emergency, provided certain statutory criteria are met. 21 U.S.C. § 360bbb-3.

In March 2020, the Secretary of HHS determined that "circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic."  EUA Declaration, 85 Fed. Reg. 18,250, 18,250-51 (Apr. 1, 2020).  Based on that determination, FDA issued an EUA for a COVID-19 vaccine developed by Pfizer, Inc., as well as EUAs for two other COVID-19 ulvaccines.  *See FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine*, https://perma.cc/6HEG-C6VV (Dec. 11, 2021); *see also* https://perma.cc/9A9L-RYMV (Moderna vaccine EUA); https://perma.cc/U2BJ-TR8S (Jannsen vaccine EUA).  The EUA for Pfizer's vaccine was supported by extensive safety and efficacy data from a clinical trial with tens of thousands of participants.  *Id.*; *see also* ECF No. 1-6, at 3; Ex. 11 (Marks Decl.) ¶¶ 8-9&n.3.

On August 23, 2021, Pfizer's COVID-19 vaccine, under the name Comirnaty, obtained FDA approval for active immunization to prevent COVID-19 caused by severe acute respiratory syndrome coronavirus 2 in individuals 16 years of age and older. FDA, *News Release – FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021), https://perma.cc/C4DD-PWE5. This means that the vaccine successfully completed "the agency's standard process for reviewing the quality, safety and effectiveness of medical products." *Id.* FDA concluded that the Pfizer vaccine was safe based on clinical trial data from approximately 22,000 people who received the vaccine and 22,000 people who received a placebo, 16 years of age and older. *Id.* Approximately 12,000 vaccine recipients were followed for safety outcomes for at least six months after receiving their second dose of the vaccine, and FDA also considered safety information from the millions of vaccine doses administered under the EUA. *Id.*; *see* FDA, Comirnaty Approved Prescribing Information at 12 (revised Aug. 2021), https://perma.cc/P87N-YGX2; Ex. 11 ¶ 6 & Ex. A. FDA's decision to approve Comirnaty was based on data demonstrating that the vaccine was 91.1% effective in preventing COVID-19 disease and between 95% and 100% effective in preventing severe COVID-19, based on an analysis of effectiveness data from tens of thousands of vaccine and placebo recipients. Prescribing Information, at 15-18.

The Pfizer vaccine as approved on August 23, 2021 has the same formulation as the Pfizer vaccine that was authorized under the EUA. *Compare* Summary Basis

for    Regulatory    Action    (SBRA)    at    7-8,    available    at https://www.fda.gov/media/151733/download *with* EUA Letter, ECF No. 1-6; Ex. 11, Ex. B.[2]  FDA determined that "[t]he licensed vaccine has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns."  ECF No. 1-6 at 2, n.8; Ex. 11 ¶ 10.

Also on August 23, 2021, FDA responded to three citizen petitions regarding the COVID-19 vaccines.  In two of the responses, FDA addressed the petitioners' expressed safety concerns with vaccinating individuals who have had COVID-19, finding that their assertions had no scientific basis or were unsupported by the cited sources.  *See Response to Citizen Petition*, Siri & Glimstad LLP, at 13-15 (Docket

---

[2] Plaintiffs, relying on an older version of the SBRA with more redactions than the version Defendants submitted, speculated at the preliminary injunction hearing that the originally approved and authorized vaccines (the "PBS" formulation) might have different excipients. *See* Order, ECF No. 47, at 7 n.5 (comparing prior version of SBRA with description of EUA formulation in EUA Authorization letter and concluding that Plaintiffs had not plausibly alleged safety or efficacy concerns from the alleged exclusion of an excipient from the EUA version of the vaccine).  That line in the SBRA was unredacted in October, revealing that Plaintiffs' "extra ingredient" is water, which is present in the multi-dose vial being described in that portion of the SBRA. *See* ECF No. 31-13, Ex. D, at 9.  The EUA Authorization letter lists the ingredients for the 0.3 mL dose after dilution.  ECF No. 1-6 at 7.  The water is not separately listed as an ingredient of the single dose because that dose has already been prepared from the multi-dose vial by dilution. *Id.* Thus, there is no difference in formulation.  Defendants note that the SBRA was updated again in November to unredact additional information that is no longer protected and to correct the heading of the second column on pages 7-8 to read "Amount per vial" instead of "Quantity after dilution (per vial)" and to change the amount of water to be added for dilution from "0.450 mL" to "q.s." defined below the chart as "q.s. = quantum satis (as much as may suffice)." Ex. 11 ¶11n.5. FDA subsequently authorized then approved a new formulation of the vaccine, the "Tris" formulation; Plaintiffs do not challenge that approval. *Id.*¶10n.4.

No.    FDA-2021-P-0529)    (Aug.    23,    2021),    available    at
https://www.regulations.gov/docket/FDA-2021-P-0529/document  ("*Response to
Siri Citizen Petition*"); *Response to Citizen Petition*, Coalition Advocating for
Adequately Licensed Medicines, at 8 n.31 (Docket No. FDA-2021-P-0786) (Aug.
23,  2021),  available  at  https://www.regulations.gov/docket/FDA-2021-P-0786/
("*Response to CAALM Citizen Petition*").   FDA also addressed a petitioner's
expressed concern with the efficacy of the COVID-19 vaccines for individuals who
have had COVID-19, stating that while "there is scientific uncertainty about the
duration of protection provided by previous natural infection, . . . the scientific
community believes that vaccines may provide a longer duration of protection than
that provided by natural infection." *Response to CAALM Citizen Petition*, at 8 n.31.

In addition, the CDC has recommended that individuals who have already had
COVID-19 get vaccinated.  *See* CDC, *Frequently Asked Questions about COVID-
19 Vaccination* (updated Dec. 28, 2021), https://perma.cc/5NUQ-NRM7.  The CDC
based this recommendation on a study that "showed that, for people who already had
COVID-19, those who do not get vaccinated after their recovery are more than 2
times as likely to get COVID-19 again than those who get fully vaccinated after their
recovery." *Id.* (citing Cavanaugh, Alyson, *et al.*, *Reduced Risk of Reinfection with
SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021*, Morbidity
&    Mortality    Weekly    Report,    70(32):1081–83    (Aug.    13,    2021),

http://dx.doi.org/10.15585/mmwr.mm7032e1).

## III.    Department of Defense COVID-19 Vaccination Directive

The U.S. military instituted its first vaccination program when General Washington directed the inoculation of the Continental Army to protect personnel from smallpox.  *See Oklahoma v. Biden*, -- F. Supp. 3d --, 2021 WL 6126230, at *8 (W.D. Okla. Dec. 28, 2021).  Military-mandated vaccines have played a key role in reducing infectious disease morbidity and mortality among military personnel; accordingly, for decades, the military has implemented a variety of enduring or situational inoculation measures to maintain the readiness of the force.  *See* Congressional Research Report Defense Health Primer: Military Vaccinations, available at https://crsreports.congress.gov/product/pdf/IF/IF11816/2.

The Department of Defense's ("DoD") current immunization program is governed by DoD Instruction ("DoDI") 6205.02.  Certain vaccines are required for all service members while others are required when certain elevated risk factors are present.  *See* Ex. 1 (Army Regulation ("AR") 40-562), Table D-1.  The policy states that DoD will make immunization requirements and eligibility determinations for service members in accordance with recommendations from the CDC and its Advisory Committee on Immunization Practices.  Ex. 2 (DoDI 6205.02) at 3.  The Military Services have separately issued regulatory guidance for the administration of vaccines to service members including establishing a process by which service

members may seek, and the Services may grant, medical or administrative exemptions to vaccine requirements.  *See* Ex. 1, Chapter 2-6.

On August 9, 2021, Secretary of Defense Austin, noting the rise in infection rates due to the Delta variant of COVID-19 and the impact these rates might have on military readiness, announced that he would add COVID-19 to the list of diseases for which routine immunizations are required for all service members.  *See* Ex. 3 (Mem. for all Defense Employees (Aug. 9, 2021)).  On August 24, 2021, after FDA announced approval of the Pfizer COVID-19 vaccine, Secretary Austin directed the Secretaries of the Military Departments to immediately begin full vaccination of all members of the armed forces under DoD authority who were not fully vaccinated against COVID-19.  *See* Ex. 4 (Mem. For Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency and DoD Field Activity Directors (Aug. 24, 2021)).  Only vaccines that have received licensure from FDA are required, in accordance with FDA guidance.  *Id.*  Service members with a previous COVID-19 infection are not considered fully vaccinated.  *Id.*

Shortly thereafter, the Military Services began issuing guidance for implementing the Secretary's directive.  The implementation guidance for each Service provides for a process for a service member to seek medical, administrative, and religious exemptions.  *See* Ex. 5 (Fragmentary Order ("FRAGO") 5 to Headquarters Department of the Army Executive Order 225-21) ¶ 3.D.8.B.6; Ex. 6

8

(NAVADMIN 190/21) ¶ 3.d; Ex. 9 (MARADMIN 462/21) ¶¶ 3j, 3k, (MARADMIN 533/21) ¶ 3; Ex. 7 (Dep't of the Air Force COVID-19 Vaccine Implementation Guidance (Sept. 3, 2021)) ¶ 4.5, 5.1.  If a service member refuses vaccination and does not have an approved exemption, that service member may be subject to discipline and adverse administrative action.  *See, e.g*., Ex. 5 ¶¶ 3.D.8.B.1.D, 3.D.8.B.1.E.  However, adverse action will not be taken against a service member with a pending exemption request.  *Id*.; Ex. 6 ¶ 3.e.4.  And each Service withholds adverse action against a service member who refuses vaccination from unit commander to higher (and in several instances centralized) authority.  *See id.* ¶ 3.D.8.B.1; Ex. 6 ¶ 3.e.(5); Ex. 9 ¶ 3.l; Ex. 8 (Secretary of Air Force Memorandum for Air Force Commanders (Sept. 3, 2021)).

## IV.    Procedural History

On October 6, 2021, sixteen service members, initially attempting to proceed anonymously, filed suit against DoD, the Military Services, HHS, and FDA.  *See* ECF No. 1; Corrected Compl., ECF No. 6.  Plaintiffs subsequently filed emergency motions for preliminary relief, requesting that the Court "stay and preliminarily enjoin Defendants from implementing the DOD's vaccine mandate[.]"  ECF No. 10 at 1; *see also* ECF No. 3.  The Court denied the motions on November 12, 2021, ECF No. 47, and also denied Plaintiffs' motion for leave to proceed anonymously on December 1, 2021, ECF No. 49.  On December 10, 2021, Plaintiffs filed their

Second Amended Complaint, ECF No. 56 ("SAC"), naming 18 service members as parties to the action.

Plaintiffs raise seven claims, first asserting that DoD's COVID-19 vaccination directive and the Military Services' implementation guidance violate the Administrative Procedure Act ("APA") and DoD requirements (Counts 1 and 5, as well as Count 6 against DoD only). *Id.* ¶¶ 108-112, 130-34, 144. Further, Plaintiffs claim that the directive and guidance, as well as their implementation, violate statutes governing investigational new drugs ("INDs"), 10 U.S.C. § 1107, and emergency use products, 10 U.S.C. § 1107a, 21 U.S.C. § 360bbb-3 (Count 2). *Id.* ¶¶ 113-118. Moreover, according to Plaintiffs, the Services' guidance and implementation of the DoD directive contravenes the directive's terms regarding the COVID-19 vaccines that may be administered. *Id.* ¶¶ 119-22 (Count 3). Finally, Plaintiffs allege that FDA violated the APA by approving a Biologics License Application for Comirnaty (Counts 4 through 7). *Id.* ¶¶ 123-49. Plaintiffs seek a variety of declaratory and injunctive relief, including an order "[e]njoin[ing] any implementation of the DOD Mandate by the Armed Services or other DOD components[,]" as well as an order "vacat[ing] and remand[ing] the FDA Comirnaty Approval to the FDA for reconsideration[.]" *Id.*, Relief Requested.

## LEGAL STANDARDS

"'Federal courts are courts of limited jurisdiction' and 'possess only that power authorized by Constitution and statute.'" *Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000) (citation omitted).  Where plaintiffs fail to demonstrate a court's subject-matter jurisdiction because, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1). *Langston v. Texas Cap. Bank, Nat'l Ass'n*, No. 8:20-CV-2954-VMC-AAS, 2021 WL 698171, at *2 (M.D. Fla. Feb. 23, 2021). Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Id.*  By contrast, "[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings[,]" and "[i]n resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Id.*

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Mere "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id*. at 678.  Rather, a court must disregard "pleadings

that, because they are no more than conclusions, are not entitled to the assumption

of truth," and determine whether the remaining "well-pleaded factual allegations . .

. plausibly give rise to an entitlement to relief." *Id*. at 679.

## ARGUMENT

I.   **Plaintiffs have Failed to Demonstrate the Court's Subject-Matter Jurisdiction over their Claims.**

### A. Plaintiffs Lack Standing to Sue HHS.

"[T]he 'irreducible constitutional minimum' of standing under Article III

consists of three elements: an actual or imminent injury, causation, and

redressability." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d

1259, 1265 (11th Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-

61 (1992)).  The second element of standing requires that a plaintiff allege a

"causal connection between the [alleged] injury and the conduct complained of,"

meaning "the injury has to be fairly . . . traceable to the challenged action of the

defendant." *Lujan*, 504 U.S. at 560.  Even if a plaintiff adequately alleges an

injury in fact, the plaintiff lacks standing if he attributes that injury to the wrong

defendant. *Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014).  As to

the third element of standing, "[t]o establish redressability, 'it must be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable

decision.'" *Kawa Orthodontics, LLP v. U.S. Dep't of the Treasury*, 773 F.3d 243,

247 (11th Cir. 2014) (quoting *Lujan*, 504 U.S. at 561).

Plaintiffs here have brought suit against the Secretary of HHS.  SAC ¶ 35. But Plaintiffs' allegations regarding HHS pertain to the Secretary's declaration of a public health emergency, *id.* ¶¶ 41, 61, and the agency's issuance of guidance regarding vaccine review, *id.* ¶ 72.  Nothing in the SAC indicates that the Secretary of HHS has caused any injury allegedly suffered by Plaintiffs, or that an order against the Secretary is likely to redress such injuries.  As the Court has previously observed, "[t]he FDA is part of HHS, but an order against HHS is not necessary to effect the relief plaintiffs seek against the FDA."  ECF No. 47 at 4 n.3.  The Court should therefore dismiss the Secretary of HHS as a defendant in this matter.

### B. Plaintiffs' Challenges to Military Policy Are Not Justiciable.

First, Plaintiffs' as-applied challenges to military policies are not justiciable in the Eleventh Circuit—regardless of whether Plaintiffs exhaust their administrative remedies.  *Speigner v. Alexander*, 248 F.3d 1292, 1296–98 (11th Cir. 2001) ("doctrine of nonjusticiability extends to cases for injunctive relief").[3]  As-applied challenges are non-justiciable because "civilian courts have traditionally deferred to the superior experience of the military in matters of duty orders, promotions, demotions, and retentions."  *Id.* at 1298.  The Court thus lacks jurisdiction over any

---

[3] Plaintiffs cannot rely on *Doe v. Rumsfeld*, especially because the court declined to follow the Eleventh Circuit's holding in *Speigner* that as-applied challenges to military regulations are not justiciable.  297 F. Supp. 2d 119, 126-27 (D.D.C. 2003).  While a D.C. District Court is not bound by the Eleventh Circuit, *Speigner* binds this Court.  *United States v. Sanders*, 731 F. Supp. 2d 1261, 1267 (M.D. Fla. 2010).

claim that the military incorrectly decided an exemption request or imposed discipline.

This Court can exercise jurisdiction over a plaintiff's facial challenge to military policies only after that plaintiff has exhausted *all* available administrative remedies. *See Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006). Here, Plaintiffs' claims must be particularly scrutinized because the "military occup[ies] a unique position" with "specialized regulations and procedures, including military administrative procedures." *Frame v. United States*, No. 4:09-cv-458-RH/WCS, 2010 WL 883804, at *2-*3 (N.D. Fla. Mar. 5, 2010) (claim not ripe while "application to have his discharge changed to an honorable discharge is still pending[]"). "Until [a] Plaintiff has received a decision from the military, judicial review of his claim, even if available, has not arisen." *Id.* at *3. No plaintiff has exhausted available administrative remedies. *See* Exs. 22-38.

Plaintiffs with pending exemption requests or appeals do not have ripe claims because any harm from receiving the vaccine or facing adverse action rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). If the military grants the request or appeal, the service member will be exempted from the COVID-19 vaccination requirement, and while Plaintiffs wait for a determination, they are temporarily

exempted from the requirement and not subject to any adverse employment or disciplinary action. *See* Ex. 14 (Decl. of William Merz) ¶¶ 9, 15; Ex. 15 (Decl. of David Furness) ¶¶ 9, 12; Ex. 16 (Decl. of Michele Soltis) ¶¶ 8, 24; Ex. 17 (Decl. of Matthew Streett) ¶ 16.  Moreover, one Plaintiff has no standing at all, since he concedes he is already received the EUA Janssen vaccine and is fully vaccinated. SAC ¶ 24 (Lund); Ex. 31 (Decl. of Marc Church) ¶ 8.

While a handful of Plaintiffs claim that their religious exemption requests have been denied, only one Plaintiff claims that he has completed the appeal process for a requested exemption. *Compare* SAC ¶ 20 (Harwood) *with* ¶¶ 13-19, 21-30. For all other Plaintiffs, the only potential "hardship" while waiting is uncertainty as to the outcome of the exemption request, and that kind of uncertainty is not enough to demonstrate ripeness. *See Isenbarger v. Farmer*, 463 F. Supp. 2d 13, 20-21 (D.D.C. 2006); *see also Nat'l Parks Hospitality Ass'n*, 538 U.S. at 811 (if "mere uncertainty" constituted hardship "courts would soon be overwhelmed with requests for what would essentially be advisory opinions").

For the one Plaintiff who alleges that his exemption appeal was denied, his claim is still not ripe because he has not been subject to final disciplinary action, much less exhausted appeals of any decision through available administrative processes.  For any service member facing adverse action or disciplinary proceedings, the military has administrative procedures that offer multiple

opportunities to present arguments, including raising the same claims that Plaintiffs assert in this case. *See* Ex. 19 (Decl. of Elizabeth Hernandez), ¶¶ 3-15; Ex. 16 ¶¶ 21-23 (Army); Ex. 14 ¶¶ 15-23 (Navy); Ex. 15 ¶¶ 13-23 (Marines). Anyone subject to discipline can challenge the lawfulness of the vaccination requirement in those military proceedings. *See United States v. Kisala*, 64 M.J. 50 (C.A.A.F. 2006). For adverse action less than discharge, each Service has administrative procedures that can provide relief. *See* Ex. 19 ¶¶ 6-8 (Air Force); Ex. 16 ¶¶ 21-23 (Army); Ex. 14 ¶¶ 15, 20 (Navy); Ex. 15 ¶ 13-14 (Marines). And should any Plaintiffs ultimately be discharged for non-compliance with the DoD directive, they can appeal to the applicable Discharge Review Boards and Boards of Correction of Military Records. *See* Ex. 19 ¶¶ 9–14 (Air Force); Ex. 16 ¶ 23 (Army); Ex. 14 ¶ 22 (Navy); Ex. 15 ¶ 22 (Marines); *see also* 10 U.S.C. §§ 1552, 1553; *Martin v. Donley*, 886 F. Supp. 2d 1 (D.D.C. 2012); *Bates v. Donley*, 935 F. Supp. 2d 15 (D.D.C. 2013). [4]

Until those military procedures and appeals are completely exhausted, the military Plaintiffs cannot seek relief in this Court. *Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003) ("[O]ur respect for coordinate judicial systems and their

---

[4] Plaintiff Craymer alleges that he received a Letter of Reprimand, but that Letter was for not complying with the order to submit the exemption request by a particular deadline. Ex. 25 ¶ 14. Plaintiff Furman alleges that he retired while his religious accommodation request was pending. SAC ¶ 19. His claim was not ripe because he failed to complete available administrative processes related to his exemption request or separation. *See* Ex. 14. His claims related to the vaccination directive and the FDA actions are now moot. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Having voluntarily retired, he is no longer subject to the military vaccine requirements, and he has no further relief available in this court pursuant to his current claims. Other

autonomy, has led us, time and again, to require exhaustion in military cases.")
(cleaned up); *see also, e.g.*, *Shaw v. Austin*, No. 20-2036, 2021 WL 1840397, at *10
(D.D.C. May 1, 2021); *Standage v. Braithwaite*, No. ELH-20-2830, 2021 WL
1060342, at *31 (D. Md. Mar. 18, 2021).  Circuit precedent explains that "this Court
has firmly adhered to the rule that a plaintiff challenging an administrative military
discharge will find the doors of the federal courthouse closed pending exhaustion of
available administrative remedies."  *Hodges v. Callaway*, 499 F.2d 417, 420 (5th
Cir. 1974); *Doe v. Ball*, 725 F. Supp. 1210, 1211 (M.D. Fla. 1989), *aff'd*, 903 F.2d
1455 (11th Cir. 1990) (requiring exhaustion of administrative remedies before
bringing facial challenge to Navy's HIV regulations).

### C. Plaintiffs Lack Standing to Challenge FDA Actions.

Plaintiffs cannot challenge the FDA actions here for the same reasons—that
is, they are not currently suffering any injury because they are not required to take
any vaccine while their exemption requests are pending.  Plaintiffs specifically lack
standing to challenge FDA approval of the Pfizer vaccine because their injury is not
traceable to FDA, nor redressable by an order against FDA.  *See Children's Health
Def. v. FDA*, -- F. Supp. 3d. --, 2021 WL 5756085, at *4-*6 (E.D. Tenn. Nov. 30,
2021) (service members lacked standing to challenge FDA approval), *appeal filed*,
No. 21-6203 (6th Cir. Dec. 17, 2021); *Null v. FDA*, No. 09-1924, 2009 WL
10744069, at *3 (D.D.C. Nov. 10, 2009) (rejecting argument that a state vaccine

mandate was fairly traceable to FDA's approval of a vaccine); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013).  Any alleged "injuries" are not caused by FDA's actions, but by DoD's independent decision to require vaccination. *Children's Health Def.*, 2021 WL 5756085, at *6 ("[E]ven if the FDA's actions may have influenced the decision of the military . . . , the Plaintiffs have not alleged the FDA's actions were a 'motivating factor' in the military's decision to impose vaccine mandates.").  Here, prior to the approval of Comirnaty, the Secretary of Defense indicated an intention to move forward with any necessary steps for a vaccine requirement for the military by mid-September even if the vaccine had not received FDA approval.  *See* Ex. 3.  Plaintiffs' insistence that FDA caused their injury is not only speculative, but contrary to the available evidence.

The Court found sufficient allegations of standing at the preliminary injunction stage, based on the position that a Presidential waiver would be required if the vaccine were not approved.  *See* ECF No. 47, at 17.  But the Secretary of Defense had previously indicated an intent to move forward whether or not a vaccine was approved.  And Plaintiffs have alleged no reason to believe that such a waiver, if required, would be denied.  *See, e.g.*, Compl. ¶ 44 (alleging support for vaccine mandates). Thus, the Court lacks the ability to order any effective relief.

The Court also lacks jurisdiction over the other claims against FDA.  Count 6 of the SAC is cryptic as to the agency action being challenged.  At the preliminary

injunction stage, Plaintiffs purported to challenge the Comirnaty license based on an indisputable finding in the EUA—that Comirnaty and the Pfizer EUA vaccine have the same formulation and can be used interchangeably without presenting any safety or effectiveness concerns.  *See* SAC ¶¶ 135-45; ECF No. 3-2, at 29-30; *see also* *supra* note 2.  To the extent this is a challenge to the EUA itself, the Court correctly found that it lacks subject-matter jurisdiction over such a claim.  *See* ECF No. 47, at 23-24 (citations omitted); 5 U.S.C. § 701(a)(2) (APA does not apply to agency actions "committed to agency discretion by law"); 21 U.S.C. § 360bbb-3(i) (establishing EUA framework and providing that "[a]ctions under the authority of this section . . . are committed to agency discretion."); *see also Animal Legal Def. Fund v. USDA*, 789 F.3d 1206, 1214 (11th Cir. 2015) ("Whether an agency action is reviewable under § 701(a)(2) is a matter of subject matter jurisdiction.").

To the extent Count 6 raises a challenge to the FDA Comirnaty approval, Plaintiffs' stated objection—that the interchangeability determination is invalid—is a separate issue that has no relationship to their requested relief against FDA, invalidation of the license.  Indeed, as the Court noted, "the plaintiffs cannot show that they are harmed by an interchangeability determination that does not purport to grant formal licensure to the EUA vaccines."  ECF No. 47, at 21-22.  Any alleged injury regarding the interchangeability determination is thus not fairly traceable to

FDA, nor redressable by the requested relief.  The Court should dismiss the claims against FDA.

## II.   Plaintiffs Cannot Otherwise Proceed on their Claims.

### A.    The DoD Directive and the Service's Guidance Do Not Contravene AR 40-562.

In Count 1 of the SAC, Plaintiffs assert that "[t]he DOD Mandate and the Armed Services Guidance violates AR 40-562, which expressly provide [*sic*] a presumptive medical exemption for service members with natural immunity gained through previous infections."  SAC ¶ 109.  But no such presumption exists.  Rather, AR 40-562 states that a determination for a medical exemption is "based on the health of the vaccine candidate and *the nature of the immunization under consideration*," Ex. 1, Ch. 2-6(a), and "[f]or *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that *may* eliminate unnecessary immunizations," *id.*, Ch. 2-1(g) (emphases added).  Therefore, service members with previous infections or positive serology are not automatically exempt from full vaccination requirements.  Indeed, the only natural-immunity "presumption" referenced in AR 40-562 pertains to the specific immunization for measles, mumps, and rubella, where the Services are to "[p]resume immunity through infection for persons born in 1957 or earlier."  *Id.*, Ch. 4-9(b).  No similar presumption is granted with respect to persons born after 1957, or with respect any other required immunization regardless

of year of birth, *id.*, Ch. 4, reflecting the basic scientific fact that while some infections or immunizations provide life-long immunity, others such as the flu do not.  Thus, in not including a medical exemption for service members who have previously been infected with COVID-19, the DoD directive and the Services' guidance are wholly in accord with AR 40-562.

Plaintiffs fare no better in claiming that "[t]he DOD and the Armed Services have also violated the Administrative Procedures [*sic*] Act insofar as they have effectively amended, modified, and/or repealed AR 40-562 without following applicable rules and procedures for amending, modifying or repeal[ing] the regulation."  SAC ¶ 109; *see id.* ¶ 110 (similar).  First, DoD did not amend, modify, or repeal AR 40-562—either explicitly or "effectively."  *Id.* ¶ 109.  Second, as explained above, DoD's actions are consistent with AR 40-562.  Third, assuming that Plaintiffs believe that DoD and the Services should have undertaken notice and comment rulemaking procedures, Plaintiffs are incorrect for the reasons already articulated by the Court:  the APA's rulemaking procedures are "inapplicable 'to the extent that there is involved . . . a military or foreign affairs function of the United States[,]'" and "the military's decision to inoculate servicemembers plainly involves a military function."  ECF No. 47, at 9-10 (quoting 5 U.S.C. § 553(a)(1)).  Additionally, the DoD directive and the Services' guidance are exempt from notice and comment rulemaking because they involve "matter[s] relating to agency

management or personnel[,]" 5 U.S.C. § 553(a)(2). *See Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989).

Plaintiffs' claims in Count 1 likewise fail insofar as they argue that DoD and the Services did not "comply with the requirements of DOD Instruction 6205.02 . . . and other applicable laws and regulations for adopting a new vaccination requirement and eliminating existing exemptions." SAC ¶ 110. The Secretary's memorandum incorporates the procedures set out in DoDI 6205.02, stating not only that "[m]andatory vaccination requirements will be implemented consistent with DoD Instruction 6205.02," but also that "[m]andatory vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy." Ex. 4 at 1; *see also, e.g.*, Ex. 5, § 3.D.8.B.6. (allowing soldiers to pursue exemptions in AR 40-562).

Plaintiffs also have failed to adequately allege that the Secretary's decision was arbitrary and capricious. SAC ¶ 111. The Court's review of any agency action under 5 U.S.C. § 706(2)(A) must be "deferential" and "narrow." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019). The Court "may not substitute its own policy judgment for that of the agency," but "simply ensures that the agency has acted within a zone of reasonableness" and "has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Proj.*, 141 S. Ct. 1150, 1158 (2021).

In the present setting, the Court's review must be even more deferential. Judicial review of claims involving the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), is highly constrained.  *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *see also Aktepe v. United States*, 105 F.3d 1400, 1403 (11th Cir. 1997); *Winck*, 327 F.3d at 1302-04.  "This deferential standard is calculated to ensure that the courts do not become a forum for appeals" for every military member, "a result that would destabilize military command and take the judiciary far afield of its area of competence." *Stewart v. Spencer*, 344 F. Supp. 3d 147, 153 (D.D.C. 2018) (applying deferential standard to service member APA claims); *see also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953).  "The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Daniels v. United States*, 947 F. Supp. 2d 11, 19 (D.D.C. 2013) (citation omitted).

Given this standard, Plaintiffs' APA claim easily fails.  Long-established DoD policy is to "make immunization requirement and eligibility determinations for DoD personnel in accordance with recommendations from the [CDC] and its Advisory Committee on Immunization Practices." Ex. 2 at 3.[5]  In accordance with this policy,

---

[5] The challenged policy is incorporated in the SAC and subject to judicial notice, and thus properly considered on a motion to dismiss. *See supra* at 2 n.1 & Part D, *infra*.

military regulations require 9 vaccines for all service members either upon service entry, as part of a routine immunization cycle during service, and an additional eight more vaccinations when service members have certain elevated risk factors. *See* Ex. 1, Table D-1. And here, the decision to add COVID-19 vaccinations to the list of required vaccines cannot be arbitrary or capricious when the "CDC recommends everyone 12 years and older should get a COVID-19 vaccination to help protect against COVID-19."[6] That alone should be sufficient to dismiss Plaintiffs' claim.

In his August 9, 2021 memorandum, the Secretary noted the rise in COVID-19 infection rates due to the Delta variant, and after "consult[ing] closely with the Chairman of the Joint Chiefs of Staff, the Secretaries of the Military Departments, the Service Chiefs, and medical professionals[]," he announced his intention to "seek the President's approval to make the vaccines mandatory no later than mid-September, or immediately upon the [FDA] licensure, whichever comes first." Ex. 3. Then, upon FDA approval of Comirnaty and "[a]fter careful consultation with medical experts and military leadership, and with the support of the President," Secretary Austin "determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people." Ex. 4. Accordingly, the Secretary added the FDA-approved COVID-19

---

[6]https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/adolescents.html?s_cid=11369:cdc%20children%20covid%20vaccine:sem.ga:p:RG:GM:gen:PTN:FY21 last checked Oct. 21, 2021.

vaccine to the list of "[m]andatory vaccinations [] familiar to all of our Service members," *id.*, consistent with DoD policy.  Ex. 2 at 3.  This amply substantiates the Secretary's decision.  *Robert v. Austin*, No. 21-cv-2228 (D. Colo. 2021), Order Denying Temporary Restraining Order, ECF No. 12 (denying a temporary restraining order of the DoD vaccine mandate where plaintiffs made similar arguments); *Mazares v. Dep't of Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002) ("The military has broad authority and discretion in dealing with its personnel, both military and civilian, including the protection of their health.").

Plaintiffs also appear to take issue with the timing of the Secretary's directive, noting that it was issued "the very next day" after FDA approval of Comirnaty.  SAC ¶ 111.  Plaintiffs' baseless speculation that the timing of the Secretary's announcement is suspect should be rejected.  When put into context with the Secretary's August 9, 2021 memorandum, noting the rise in COVID-19 infection rates, and his previously announced intention to institute a vaccination requirement "immediately upon the [FDA] licensure[,]" an order issued the day after licensure should not have been a surprise, much less suspicious.  Ex. 3 (noting that public reporting suggested that the Pfizer-BioNTech vaccine would soon receive full FDA licensure).  *See Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other

public officers, and the military is entitled to substantial deference in the governance of its affairs.").

### B. Plaintiffs Fail to State a Claim with Respect to 10 U.S.C. § 1107a and 21 U.S.C. § 360bbb-3.

Plaintiffs argue that DoD's directive violates 10 U.S.C. § 1107a and 21 U.S.C. § 360bbb-3, which concern notice requirements for drugs authorized pursuant to an EUA. SAC ¶¶ 114-18. Plaintiffs' statutory challenge to the COVID-19 inoculation requirement fails to identify a cause of action. And, in any event, this claim is premised on the mistaken belief that DoD is requiring service members to receive vaccines that have not been approved by FDA as safe and effective for their intended use against COVID-19.

1. Plaintiffs Have Not Identified a Cause of Action.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), and "[t]here must be clear evidence of Congress's intent to create a cause of action," *Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002). Where the necessary intent is absent, "a cause of action does not exist and courts may not create one." *Sandoval*, 532 U.S. at 286-87. Neither § 1107a nor the FDCA provides a waiver of sovereign immunity or a cause of action for these Plaintiffs, SAC ¶¶ 114-18. *See, e.g.*, *Doe v. Franklin Square Union Free Sch. Dist.*, -- F. Supp. 3d --, 2021 WL 4957893, at *20 (E.D.N.Y. Oct. 26, 2021), *appeal filed*, No. 21-2759 (2d Cir. Nov. 2, 2021); *Bridges v. Hous.*

*Methodist Hosp.*, -- F. Supp. 3d --, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021), *appeal filed*, No. 21-20311 (5th Cir. June 14, 2021).  To the contrary, the FDCA reserves exclusive enforcement authority to the United States, with one limited exception for state enforcement.  21 U.S.C. § 337(a); *see Guilfoyle v. Beutner*, No. 2:21-cv-05009-VAP, 2021 WL 4594780, at *26-27 (C.D. Cal. Sept. 14, 2021).  Although the Court explained that relevant agency action could be challenged under the APA, *see* ECF No. 47, at 17 n.12, despite having been amended, the SAC does not attempt to identify or describe an APA claim on this issue.  The Court should therefore dismiss this claim.

### 2.  DoD is Requiring an Approved Vaccine.

Plaintiffs' statutory claim would otherwise fail because, as discussed above, Congress has given the military wide latitude in establishing a vaccination program for the Armed Forces.  10 U.S.C. § 1107a and 21 U.S.C. § 360bbb-3 impose certain notice requirements (and, in the case of § 1107a, the possibility of a waiver of those notice requirements), for products authorized for "emergency use."  DoD's directive does not contravene those statutes because DoD has not required that service members receive COVID-19 vaccines only authorized for emergency use.  As the Secretary's memorandum makes clear, "[m]andatory vaccination against COVID-19 will only use COVID-19 vaccines that receive full licensure . . . in accordance with FDA-approved labeling and guidance."  Ex. 4.  Guidance from the Services

contains similar provisions.  *See* Ex. 5 ¶ 3.D.8.A; Ex. 6 (ALNAV 062/21) ¶ 3; Ex. 8.

FDA approved the Pfizer-BioNTech COVID-19 vaccine under the name Comirnaty for its intended use by people aged 16 years and older.  SAC ¶ 74; Ex. 11 ¶ 6 & Ex. A.  In its contemporaneous reissuance of Pfizer's EUA, FDA determined that "[t]he licensed vaccine has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns."  Ex. 11 ¶ 10 & ECF No. 1-6 at 2n.8.  DoD relied on this determination, as well as FDA guidance that health care providers may "use doses distributed under the EUA to administer the series as if the doses were the licensed vaccine."  Ex. 10 (Acting Assistant Secretary of Defense Memorandum).  This is consistent with the text and purpose of § 1107a.

In addition, according to FDA, vaccines produced at facilities listed in Pfizer's BLA and released in accordance with BLA requirements "are manufactured in compliance with the BLA" and "are not subject to the EUA requirements when used for the approved indication."  Ex. 11 ¶ 13 & Ex. B at 27 (identifying BLA lots); *see also* ECF No. 47 (describing position that these lots are "essentially Comirnaty").  These vaccines are manufactured in compliance with the BLA even though they bear

the EUA label.  *See id*.[7]  "The DoD has received hundreds of thousands of Pfizer-BioNTech BLA-manufactured, EUA-labeled vaccine doses, and continues to use them."  Ex. 12 ¶ 18.  Plaintiffs do not plausibly allege any facts to the contrary.

Accordingly, DoD has both BLA-compliant doses of the Pfizer vaccine and EUA doses that are interchangeable with the licensed vaccine.  DoD's decision to treat the EUA doses interchangeably is consistent with the statutory authority in § 1107a.  The legal distinctions between the EUA and BLA vaccine should not obscure that there are no differences between the two vaccines that affect safety and efficacy.

Perhaps even more importantly, Plaintiffs have not been denied a dose of the BLA-compliant vaccine, and thus have alleged neither standing nor a violation of the statute.  In rejecting the preliminary injunction, the Court noted that "no plaintiff claims he or she was specifically denied a BLA-compliant dose [of vaccine] or offered only a dose from a non-BLA-compliant vial."  ECF No. 47, at 15-16; *see also Navy Seal 1 v. Biden*, -- F. Supp. 3d --, 2021 WL 5448970, at *7-*9 (M.D. Fla. Nov. 22, 2021).  Although DoD maintains that the EUA and BLA products with the

---

[7] The Court stated that "FDA licensure does not retroactively apply to vials shipped before BLA approval." ECF No. 47. That does not reflect the regulatory process.  It is common for vaccines and other medical products to be manufactured in anticipation of regulatory approval.  In the context of public health emergencies, Congress has expressly permitted pre-positioning of medical countermeasures without FDA approval when the product(s) is intended to be held (and not used) for emergency use (section 564B), allowing stakeholders to prepare for rapid deployment and use of medical countermeasures following authorization or approval during an emergency.

same formulation are interchangeable for its purposes, DoD has a supply of BLA-compliant doses, and is using them.    *See* Ex. 12 ¶ 18; Ex. 11 ¶ 13; *cf. Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280-83 (D.C. Cir. 2012) (Kavanaugh, J.) (explaining that availability of vaccines other than the ones to which plaintiffs objected eliminated plaintiffs' standing).  And Plaintiffs may also be able to obtain free, BLA-approved doses from other providers as well, using publicly available information about the compliant lots because the compliant lots have been publicly identified.  *See* https://www.cvdvaccine-us.com/resources (under "important lot information," listing BLA lot numbers) (last visited Jan. 14, 2022).

In rejecting the motion to stay discovery, the Court noted that some of the Plaintiffs now allege that they were denied access to BLA-compliant vaccines.  ECF No. 58, at 1-2.  In the Plaintiff-specific paragraphs of the SAC, only Plaintiffs Karr, Kupper, and Thompson allege that they inquired about BLA-compliant lots, SAC ¶¶ 21, 23, 30, but these Plaintiffs also have pending exemption requests, Exs. 29, 30, 38, and thus are not currently required to take the vaccine.  Plaintiff Thompson further alleges that his base had "expired" lots of the BLA-compliant vaccine at some point, SAC ¶ 30, meaning that if he had taken the doses when ordered, BLA-compliant lots were available.  The same could well be true of the other Plaintiffs.  *Cf. Clapper*, 568 U.S. at 418 (self-inflicted injuries cannot establish standing).  But for now, exemptions remain pending.  Even if these exemptions are ultimately

denied, additional licensed vaccine could become available, or another vaccine could become approved in the interim.  Thus the claim that any individual Plaintiff "would be" unable to take the BLA-compliant vaccine, *see, e.g.*, SAC ¶ 21, is speculative at best because it depends on facts on the ground if and when their exemptions are denied.  Plaintiffs have thus alleged neither standing nor a cause of action with respect to 10 U.S.C. § 1107a and 21 U.S.C. § 360bbb-3. *See Norris v. Stanley*, -- F. Supp. 3d --, 2021 WL 3891615, at *2 (W.D. Mich. Aug. 31, 2021) (no likelihood of success on EUA claim because it "would be moot" if offered the FDA-approved Pfizer vaccine); *Valdez v. Grisham*, -- F. Supp. 3d --, 2021 WL 4145746, at *4 (D.N.M. Sept. 13, 2021) (rejecting claim that state vaccine mandate violated the EUA statute because "the FDA has now given its full approval – not just emergency use authorization – to the Pfizer vaccine"), *appeal filed*, No. 21-2105 (10th Cir. Sept. 15, 2021).  The Court should dismiss Count 2.

### C.   The Services' Guidance Accords with the DoD Directive.

Plaintiffs challenge the Military Services' guidance to carry out the DoD directive as contrary to the directive itself.  SAC ¶¶ 119-22.  According to Plaintiffs, "[w]hile the DOD Mandate itself states that only FDA-licensed vaccines may be mandated, . . . , the Armed Services Guidance expressly states that the EUA BioNTech Vaccine may be administered 'as if' it were the licensed Comirnaty Vaccine pursuant to the DOD Mandate." *Id.* ¶ 120 (citations omitted).

As an initial matter, Plaintiffs have identified no cause of action to raise this challenge.  *See* SAC ¶¶ 119-22.  Rather, Plaintiffs simply assert a standalone claim that the Services violated the DoD Directive.  *Id.*  The Court should thus dismiss this claim at the outset.  *Cf. Fastway Moving & Storage, Inc. v. Ugarte*, No. 13-60832-CIV, 2013 WL 3927687, at *2 (S.D. Fla. July 29, 2013) ("Count I does not state a claim for injunctive relief as Plaintiff does not identify an underlying cause of action entitling Plaintiff to this remedy.").

Count 3 also fails on the merits.  Plaintiffs' theory altogether overlooks the facts that (1) FDA determined that Comirnaty and the EUA-authorized vaccine have the "'same formulation' and [are] 'interchangeabl[e]' for medical purposes[,]" ECF No. 47, at 6-7 (citing ECF No. 1-6 at 3 n.8); and (2) DoD relied on this determination to instruct its health care providers to "use both the Pfizer-BioNTech COVID-19 vaccine and the Comirnaty COVID-19 vaccine interchangeably for the purpose of vaccinating Service members in accordance with Secretary of Defense Memorandum, 'Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members,' August 24, 2021[,]"  Ex. 10 (Acting Assistant Secretary of Defense Memorandum).  Thus, the Armed Services' guidance accords with DoD's directive, and Plaintiffs' claim fails.

### D. Plaintiffs Fail to State a Claim with Respect to the Comirnaty Approval.

Plaintiffs contend, in Count 4, that the Court should set aside FDA's approval of Comirnaty because: (1) FDA was required to "complete" a clinical trial under its own guidance; (2) FDA relied on "invalid" data due to unblinding of some participants; (3) FDA failed to consider specific data as to certain "special populations"; and (4) FDA was required to consult the Advisory Committee but did not. Even accepting Plaintiffs' factual allegations as true, Plaintiffs' arguments still fail to state a claim on their own terms, or based on judicially noticeable portions of the record that are publicly available. *See, e.g.*, *Day*, 400 F.3d at 1276 (taking judicial notice of public documents central to the claims); *Austin v. Metro Dev. Grp., LLC*, No. 8:20-CV-1472-T-60TGW, 2020 WL 5543805, at *2 n.2 (M.D. Fla. Sept. 16, 2020) (collecting cases for the proposition that "federal courts regularly take judicial notice of government documents at the motion to dismiss stage"); *Henderson v. Sun Pharms. Indus.*, *Ltd.*, 809 F. Supp. 2d 1373, 1379 (N.D. Ga. 2011); *cf. Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (holding that the district court "can consult" the administrative record to answer the legal questions before the court even on a motion to dismiss). Here, FDA's final decision and the key analyses supporting it are a matter of public record. *See generally* Ex. 11 (citing and attaching documents available on government websites). And Plaintiffs' complaint relies on many of the same public documents.

*See, e.g.,* SAC ¶¶ 2-7, 73-77, 84, 142 & notes (citing public documents, including SBRA, EUA letters, citizen petitions). Given that some or all of Plaintiffs' arguments may be rejected on purely legal grounds, the Court need not wait for the full administrative record to dismiss them.

<u>Standard of Review</u>.  The Court's review is "at its most deferential" because the challenged actions involve "scientific determination[s]" that are "within [FDA's] area of special expertise." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983); *see also Nat'l Mining Ass'n v. Sec'y, U.S. Dep't of Labor*, 812 F.3d 843, 866 (11th Cir. 2016).  Moreover, "courts owe significant deference to the politically accountable entities with the 'background, competence, and expertise to assess public health.'"  *FDA v. Am. Coll. of Obstetricians & Gynecologists*, 141 S. Ct. 578, 579 (2021) (Roberts, C.J., concurring in grant of application for stay).

The Court should decline to consider any information or argument not presented to FDA, and the SAC does not allege that Plaintiffs presented argument to FDA.  *See* ECF No. 47, at 18-19 (rejecting arguments premised on extra-record evidence).  In reviewing an agency action, the Court is "limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Com.*, 139 S. Ct. at 2573.  Moreover, FDA regulations provide that "[a]n interested person who wishes to rely upon information or views not included in the administrative record shall submit them to the Commissioner with a new

[Citizen Petition] to modify the action."   21 C.F.R. § 10.45(f).   Ordinarily, "a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency."  *Mahon v. USDA*, 485 F.3d 1247, 1254–55 (11th Cir. 2007) (citation omitted).

In addition to ignoring the APA standard of review, the SAC also challenges FDA's action by citing and quoting the wrong statute.  The approval of a BLA under the Public Health Service Act ("PHSA"), 42 U.S.C. § 262(a)(2)(C), is not governed by the standards for a New Drug Application under the FDCA, *see* SAC ¶¶ 125-26 (citing 21 USC § 355(d), (e), (h)).  A product approved pursuant to a BLA need not obtain approval of a New Drug Application.  42 U.S.C. § 262(j); 21 C.F.R. § 310.4. FDA expects similar levels and types of evidence for both kinds of applications, but the applicable standards for a biologics license are provided by the PHSA, and any argument premised on the New Drug Application standards fails as a matter of law.

Plaintiffs' additional arguments based on the clinical data likewise fail.

Incomplete Clinical Trials. Plaintiffs argue that the approval was necessarily arbitrary because Phase III clinical trials were not completed before approval.  SAC ¶ 125. Even accepting as true the allegation that trials were not "complete," the applicant's continued collection of information after approval is not a logical, legal, or scientific basis for denial of the license.  Here, as set forth in the SBRA, FDA reasonably determined that the six months of information collected to support the

BLA was sufficient to support the vaccine's safety and effectiveness. *See* SBRA at 15, 18; *see also Response to Siri Citizen Petition*, at 8-10 (explaining this is a reasonable timeframe based on scientific evidence, past practice, and expected timing of adverse events). Although clinical trials are ongoing for additional uses and safety will be evaluated for the duration of the study, FDA determined that there were adequate data to support approval for this use. *Id*. Plaintiffs have alleged no facts from which the Court could conclude that relying on six months of clinical data was arbitrary.

Unblinding. The SAC notes that some participants in the clinical trial were unblinded while the trial was ongoing. SAC ¶ 125. As set forth in the SBRA, also cited in the Complaint, consistent with medical ethical standards and the clinical study protocol, participants in clinical trial C4591001 who had been assigned to the placebo group could be "unblinded" and offered the vaccine, either when eligible for vaccination under local recommendations or after conclusion of their six-month post–Dose 2 study visit. SBRA at 17. FDA reasonably determined that the data collected during the clinical trial allowed FDA to evaluate the safety and effectiveness of the vaccine, considering the data collected during the blinded stage and the other information submitted supporting safety and effectiveness. *Id*. That decision was reasonable and explicitly considered all relevant factors. Plaintiffs

have alleged no facts that would permit a conclusion that partial, staged unblinding of the clinical trials after two months should invalidate the approval.

Special Populations.   Plaintiffs also argue that FDA permitted Pfizer to "exclude important 'special populations' from clinical trials" including: "(1) individuals with previous COVID-19 infections; (2) women who are pregnant or nursing . . . ; and (3) those with various medical conditions or history that may be subject to differing or heightened risks . . ."  SAC ¶ 126.  Plaintiffs do not have standing to raise categories (2) and (3) as none of them purport to fall in those categories and cannot be injured by FDA's failure to consider a specialized risk to someone else.  But the argument with respect to individuals with previous COVID-19 infections fails as a matter of law as well.  FDA reasonably considered and rejected a similar argument in the context of a Citizen Petition.  *See Response to CAALM Citizen Petition*, at 8n.31.  Some of the populations identified by those petitioners were included in the clinical trials supporting approval and additional information will be obtained from post-marketing studies.  *See* SBRA at 16, 29-30. In response to the petition, FDA concluded that the petitioners had not provided a scientific justification for requiring effectiveness data from clinical trials that are specific to each population group and specifically designed to evaluate disease endpoints of varying severity, and that their argument was not consistent with "scientifically valid methods of assessing safety and effectiveness," such as

37

immuno-bridging or extrapolation across population groups. *See Response to CAALM Citizen Petition*, at 8 n.31   Plaintiffs' allegations do not plausibly allege that these conclusions failed to consider the relevant factors or were otherwise arbitrary.

With respect to individuals with previous cases of COVID-19, FDA's response notes that approximately 3% of the clinical trial participants had evidence of prior infection. *See* FDA, *Clinical Review Memorandum*, at 35, available at https://www.fda.gov/media/152256/download. FDA explained that there was scientific uncertainty about the duration of immunity after infection and that petitioners had not provided sufficient scientific support for the claim that such individuals might be at higher risk of adverse effects from the vaccine. *See Response to CAALM Citizen Petition,* at 8n.31 (also specifically considering evidence submitted by petitioners). FDA reached similar conclusions with respect to another citizen petition. *See Response to Siri Citizen Petition*, at 13-15. Some participants in both the treatment and placebo arms of the trial became pregnant during the trial, and pregnancy outcomes were similar between the vaccine and the placebo groups. *See Clinical Review Memorandum,* at 83-84. FDA reasonably considered all evidence before the decisionmaker, and Plaintiffs' criticisms of FDA's substantive scientific judgment do not plausibly allege that FDA's considered judgment failed to consider the relevant factors.

Advisory Committee. Plaintiffs also allege that FDA did not consult its Advisory Committee about the BLA, *see* SAC ¶ 127, which is accurate but does not state a claim that FDA acted unlawfully.   FDA is not required under any circumstances to consult the Advisory Committee before acting on an application. *See* 21 C.F.R. § 14.171(a).  Rather, the "relevant factors" to consider in approving a vaccine BLA are in the PHSA, and Plaintiffs have not plausibly alleged any failure regarding those factors.   Moreover, as set forth in the SBRA, the Advisory Committee had previously met and discussed the Pfizer EUA request and licensure issues for COVID-19 vaccines in general, including for example, unblinding issues and risk factors.  SBRA at 26–27.  FDA considered whether to refer the application to the Advisory Committee for additional consideration and decided not to do so because "the information submitted to this BLA did not raise concerns or controversial issues that would have benefited from an advisory committee discussion."  *Id*. at 27.  FDA is not required to refer applications to the Advisory Committee and had a rational explanation for not doing so here, where the Advisory Committee had previously commented on key issues.  *See id*.

In short, Plaintiffs identify no relevant factor that FDA failed to consider and no aspect of FDA's decisionmaking that was unreasoned. They therefore state no claim for relief under the APA.

39

### E.  Plaintiffs' "Improper Purpose" Claim Fails.

Plaintiffs also contend, through Count 5 of the SAC, that FDA had an "improper purpose" in approving Comirnaty and was based on "impermissible criteria, namely, the desire to enable federal vaccine mandates for nearly all Americans, rather than on whether Comirnaty is safe and effective under the FDCA and 'safe, pure, and potent' under the PHSA."  SAC ¶ 131 (citations omitted).  As support for their theory, Plaintiffs focus on the "timing" of FDA's decision.  SAC ¶ 133.  Plaintiffs' allegations, however, fail to state a claim.

First, the Court need not accept Plaintiffs' "naked assertion[,] devoid of further factual enhancement[,]" that FDA is somehow trying to mandate vaccinations for everyone.  *See Iqbal*, 556 U.S. at 678.  FDA does not perform such a role, but rather acts to evaluate applications and to approve safe and effective vaccines when the evidence supports doing so.  And FDA officials are presumed to have properly discharged their official duties, unless there is "clear evidence to the contrary."  *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2012).

Further, the Supreme Court has explained that "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons" and that "a court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities."  *Dep't of Com*., 139 S. Ct. at 2573.

40

Thus, even if Plaintiffs had some evidence for the proposition that FDA was motivated in part by a desire to support vaccine mandates—and they do not—that would not state a claim under the APA.

Nor can Plaintiffs advance their argument by noting that the Secretary of Defense "issue[d] the DOD Mandate the very next day[.]"  SAC ¶ 133.  That argument ignores that DoD had *already* announced its intention to move forward with requiring COVID-19 vaccinations by mid-September even if FDA had not yet approved a vaccine.  *See* Ex. 3.  Other agencies or private employers may have considered FDA's approval to support their own decisions to require vaccinations for their workforce, but those decisions are not attributable to FDA.  Plaintiffs' additional complaints about FDA's speed, SAC ¶ 133, are also unavailing, as acting quickly and efficiently during a deadly pandemic that has killed over 840,000 Americans cannot be said to reflect an improper purpose.  *See* ECF No. 47, at 21 ("[T]he timeframe is of course susceptible to other explanations, and it is not itself evidence of bad faith—even if it shows that 'political considerations' influenced the approval[.]" (quoting *Dep't of Com.*, 139 S. Ct. at 2573)).

### F.  Count 6 Should be Dismissed Because Plaintiffs Fail to State a Claim with Respect to Interchangeability.

In its letter reissuing the EUA with respect to the Pfizer vaccine after licensure, FDA determined that "[t]he licensed vaccine has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to

41

provide the vaccination series without presenting any safety or effectiveness concerns." *See* Ex. 11 ¶ 10; ECF No. 1-6 at 2, n.8.  Plaintiffs fail to state a claim with respect to FDA's interchangeability finding.

First, although Plaintiffs purport to bring this claim under the APA, it is not clear what agency action Plaintiffs are challenging.  The sentence above is part of the EUA letter, which is not subject to judicial review.  *See supra*, Part I.C.  In addition, the finding is not a final "agency action" at all because it does not determine Plaintiffs' "rights or obligations." *See Bennett v. Spear*, 520 U.S. 154, 178 (1997). FDA included the interchangeability information in the EUA letter "to avoid the unnecessary operational complications that may have resulted if pharmacies or other healthcare practitioners had believed that individuals who had received Pfizer-BioNTech for the first dose were not authorized to receive Comirnaty for the second dose, or vice versa."  Ex. 11 ¶ 10.  These EUA letters do not determine Plaintiffs' rights.[8]

And on the merits of the claim, Plaintiffs confuse this factual finding with the statutory interchangeability determination under a separate subsection of the PHSA. *See* SAC ¶¶140-43 (citing 42 U.S.C. § 262(k)).  Under § 262(k)(4), FDA may make

---

[8] These findings may determine others' access to vaccines.  If Plaintiffs succeeded in setting aside this finding, Plaintiffs would remain subject to the DoD mandate, but people wishing to be vaccinated may have more difficulty in doing so.  The result might be that a provider could not give the licensed vaccine as a second dose to an EUA vaccine, or vice versa, absent additional FDA action.

a statutory interchangeability determination when reviewing a BLA for a biological product manufactured by one company and comparing it with a product manufactured by another company.   But as the Court previously held, FDA did not make a statutory interchangeability finding under (k)(4).   *See* ECF No. 47, at 22-23; Ex. 11 ¶ 10.   FDA made a scientific determination, based on FDA's technical expertise and consistent with its statutory authority.

And in any event, Plaintiffs have raised no plausible allegation that FDA was incorrect.   As explained above, the EUA and BLA vaccines use the same formulation. *See supra* pp. 4-5.   And although EUA doses are produced at additional facilities, those facilities are subject to the FDA's good manufacturing practices regulations, and other regulatory requirements, and do not present safety and efficacy concerns.   *See* Ex. 11 ¶¶ 10-11.   Defendants have dispelled Plaintiffs' assertion that the approved and authorized vaccine have different formulations, *supra.* n.2; their bald speculation that lifting further redactions in the SBRA might reveal critical differences in manufacturing, SAC ¶ 142, is without basis and insufficient to survive a motion to dismiss.

### G. Count 6 Should Be Dismissed Because a Product May be Both Approved and Subject to an EUA.

In additional paragraphs in Count 6, Plaintiffs continue to insist that FDA acted contrary to law by both approving Comirnaty and maintaining the EUA for the Pfizer vaccine, claiming that the actions are "mutually exclusive" as to the same use.

43

*See* SAC ¶¶ 136-38.  In rejecting this argument at the preliminary injunction stage, the Court noted that even if the EUA were invalid, the license would survive.  ECF No. 47, at 24.  Although Plaintiffs argue as a statutory matter that the EUA cannot be maintained after the BLA is approved because the approved vaccine is now "approved, adequate and available," they illogically seek to invalidate *the license* rather than the EUA, presumably because this Court lacks jurisdiction over a challenge to the EUA.  It does not follow, however, that Plaintiffs can instead seek invalidation of *the license*, which even under their reading of the statute, is perfectly valid.  Under Plaintiffs' reading, the continuation of the EUA would be invalid, not the license.

Plaintiffs are also wrong that the agency has exceeded its statutory authority by not revoking the EUA.  First, even though FDA approved Comirnaty, the agency found that there remains "no adequate, approved, and available alternative" to the EUA vaccines (including Pfizer's) because (1) there is not sufficient approved vaccine available for distribution to [the 16-year-old and older] population in its entirety; and (2) there are not products that are approved to prevent COVID-19 in individuals age 12 through 15, for a third dose in certain populations, and for a "booster" dose in certain circumstances.  ECF No. 1-6 at 6, n.9.  Plaintiffs object to the finding that the Comirnaty vaccine is not sufficiently available for the adult population because, according to Plaintiffs, availability "is a binary requirement

44

[under the statute]; an alternative either is or is not available" and "[t]here is no room in the statute for FDA to add a third option - not available in sufficient quantity." SAC ¶ 70. This puzzling interpretation reduces "available" to meaning "in existence." The existence of a single dose for sale somewhere in the world does not mean that all use of the vaccine authorized under the EUA must immediately cease everywhere else. FDA reasonably found that vaccine doses approved pursuant to the BLA are not available to fill the current need, and the Court has already rejected Plaintiffs' strained interpretation of "availability". ECF No. 47, at 24.

Second, even if the Comirnaty vaccine were an "adequate, approved, and available alternative" to the EUA vaccines, nothing in 21 U.S.C. § 360bbb-3 *requires* FDA to revoke existing EUAs. Indeed, the provision governing "Review and [R]evocation of [A]uthorization" says that, if the criteria justifying the original issuance of an EUA "are no longer met," then FDA "*may* revise or revoke" that EUA. 21 U.S.C. § 360bbb-3(c)(3), (g)(2) (emphasis added). "May" is ordinarily permissive. *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 773–74 (11th Cir. 2020). The statute thus contemplates that an EUA could continue after an approval of an equivalent product. A permissive reading of "may" also accords with the statutory purpose of giving FDA flexibility to "permit rapid distribution of promising new drugs and antidotes in the most urgent circumstances," *see* Statement of Pres. George W. Bush

Signing S.15, 40 Weekly Compilation of Presidential Documents 1346, *reprinted in* 2004 U.S.C.C.A.N. S17, S18 (July 21, 2004), because it removes the need for manufacturers to limit supply or delay seeking approval to exhaust supplies of authorized product.  Thus, even if the EUA were reviewable, and even if Comirnaty were "available," Plaintiffs' challenge would fail because there is no requirement to revoke the existing EUA upon approval of the equivalent vaccine.  It is therefore not "mutually exclusive" with the license, even as to the same use.

Plaintiffs further argue that the extension of the EUA is somehow inconsistent with FDA's determination that the Pfizer EUA vaccine is medically interchangeable with Comirnaty, because FDA regulates the Pfizer vaccines under two regimes.  First, FDA's determination that the vaccines are medically interchangeable—a factual finding that Plaintiffs do not dispute—is consistent with the vaccines being legally distinct, for example, with respect to labeling requirements.  Ex. 11 ¶¶ 10–13.  Second, because *revocation* of an EUA is explicitly discretionary (and nonreviewable), Plaintiffs' notion that FDA cannot simultaneously regulate the vaccine under two distinct legal regimes is wrong as well.  Congress left open the possibility that the same vaccine could be subject to both a license and an EUA.[9]

---

[9] This situation is thus readily distinguishable from the statutory provisions at issue in a case cited by Plaintiffs, SAC ¶ 138, where the court held that "the FDCA's text unambiguously foreclosed" an interpretation under which FDA would have discretion to regulate the same product as either a drug or a device.  *See Genus Med. Techs. LLC v. FDA*, 994 F.3d 631, 637 (D.C. Cir. 2021).  Among other reasons, the court found that both regimes created mandatory, incongruent regulatory

### H. FDA was not Required to Undertake Notice and Comment Rulemaking Procedures.

Finally, Plaintiffs claim that "FDA was required to provide an opportunity for public review of the data and the FDA's policy arguments supporting its decision to grant the BLA through the Advisory Committee, and the consequent opportunity for public notice and comment." SAC ¶ 148. This claim is based on a misunderstanding the APA's requirements and FDA's processes.

The APA provides that "[g]eneral notice of proposed rule making shall be published in the Federal Register," and after such notice "the agency shall give interested persons an opportunity to participate in the rule making[.]" 5 U.S.C. § 553(b), (c). "Notice and comment rulemaking" is not required for all agency action; rather, it is required for "rules," specifically "legislative rules." *See id.*; *see also, e.g.*, *Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 114 (D.C. Cir. 2021) (distinguishing "legislative rules" from "interpretive rules"). The APA defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). Congress distinguished "rules" from "orders," which

---

requirements to which the same product is subject, and that the legislative history supported the specific conclusion that the same product should not be subject to both regimes. *Id.* at 639-41. No such considerations apply here because the EUA statute is discretionary and designed to maximize flexibility.

refer to "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter *other than rule making but including licensing*." *Id.* § 551(6) (emphasis added); *see also id.* § 551(8) (defining "license" as "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission"). Notably, Congress set forth the requirements for license determinations in a statutory section separate from that concerning rulemaking procedures. *See id.* § 558; *see also Underwater Exotics, Ltd. v. Sec'y of Interior*, No. 93-1586, 1994 WL 80878, at *9-10 (D.D.C. Feb. 28, 1994).

At issue here is not a rule, but rather the approval of a license based on an application submitted by Pfizer. Such action is patently outside the scope of the APA's notice and comment rulemaking requirements. *See* 5 U.S.C. §§ 551(5)-(7), 553(b)-(c), 558. Consistent with the statute, FDA will approve a BLA if the agency makes certain determinations based on "information submitted in the application," *see* 42 U.S.C. § 262(a)(2)(C), 262(k)(3), regardless of how third parties might feel about the determination.[10]

Perhaps aware that the APA's statutory definitions and structure, as well as the limits on the Secretary's authority, foreclose their argument, Plaintiffs attempt

---

[10] Additionally, whereas the statute expressly provides that the Secretary "shall establish, by regulation, requirements for the approval" of a vaccine, 42 U.S.C. § 262(a)(2)(A), there is no similar "by regulation" language for the authority to issue approvals themselves.

to characterize FDA's action as a nefarious effort to impose a general vaccine mandate.  SAC ¶ 148.  That conclusory assertion is contrary not only to the presumption of regularity that the Court must grant the agency, *see Latif*, 677 F.3d at 1178, but also to the plain language of FDA's approval, *see FDA, News Release – FDA Approves First COVID-19 Vaccine,* https://perma.cc/C4DD-PWE5 (explaining that FDA had granted a BLA submitted by Pfizer, and making no mention of a vaccine mandate).  And to the extent Plaintiffs complain that FDA did not consult its Advisory Committee about the BLA, SAC ¶¶ 147-49, that claim fails as well for reasons discussed in Part D, above.  SBRA at 26–27.  Accordingly, there is no basis for the Court to require FDA to undertake notice and comment rulemaking in connection with FDA's Comirnaty approval determination.  *See Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524 (1978).

## CONCLUSION

For the foregoing reasons, the court should grant Defendants' motion to dismiss.

Dated:  January 14, 2022

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

</div>

ANTHONY J. COPPOLINO
Deputy Director

/s/ *Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM HOLLAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: Amy.Powell@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this submission contains 11982 words, not including the
case style, signature block, and certificate of service, according to Microsoft Word's
word count function and thus is in compliance with Local Rule 7.1(F).

/s/ *Amy E. Powell*

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470

Email: Amy.Powell@usdoj.gov