# Exhibit 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **BENJAMIN COKER, et al.,** | |
| Plaintiffs, | |
| v. | |
| **LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, et al.,** | Case No. 1:21-cv-01211-AW-HTC |
| Defendants. | |

## DECLARATION OF WILLIAM MERZ

I, William Merz, hereby state and declare as follows:

1.      I am a Vice Admiral in the United States Navy, currently serving as the Deputy Chief of Naval Operations, Operations, Plans and Strategy (OPNAV N3/N5), located in Arlington, Virginia at the Pentagon.  I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

2.      I have been assigned to my current position since August 6, 2021.  Prior to my current assignment, I served as Commander, U.S. SEVENTH Fleet, the Deputy Chief of Naval Operations for Warfighting Requirements, the Director, Undersea Warfare Division, and Commander, Naval Mine & Anti-Submarine Warfare Command. I graduated from the U.S. Naval Academy in 1986, and earned master's degrees from Catholic University and the Naval War College. As part of my duties currently, I am responsible for serving as the principal advisor to the Chief of Naval Operations (CNO) on operational matters, strategy, policy, and plans; international politico-military matters; and the current operational status of naval forces.  As part

1

of my responsibility for the current operational status of naval forces, CNO delegated

responsibility to me for the Navy's COVID-19 policies.  Those responsibilities include tracking

the number of COVID-19 cases across the Navy, implementing Secretary of the Navy COVID-

19 plans and policies, planning for and ensuring the appropriate initial distribution of COVID-19

vaccines, coordinating across the Navy and with the other services on COVID-19 plans and

policy, and providing input to the Secretary of the Navy on proposed COVID-19 plans and

policy.

      3.     On August 24, 2021, the Secretary of Defense directed the Secretaries of the

Military Departments to immediately begin full vaccination of all members of the Armed Forces

under DoD authority on active duty or in the Ready Reserve.  The Secretary of the Navy directed

implementation of SECDEF's COVID-19 vaccination mandate[1] via a Department-wide

administrative message (ALNAV) on August 30, 2021.  The ALNAV applies to both Services

within the Department of the Navy (DON), the United States Navy and the United States Marine

Corps.  The ALNAV requires all active duty DON service members, who are not already

vaccinated, exempted, or currently seeking an exemption, to be fully vaccinated with an FDA-

approved COVID-19 vaccine within 90 days, and all Reserve Component personnel to be fully

vaccinated within 120 days. ALNAV 062/21 ¶ 4.  Active duty service members were therefore

required to become fully vaccinated by November 28, 2021, and Reserve Component service

members were required to become fully vaccinated[2] by December 28, 2021.  The requirement to

obtain full vaccination constitutes a lawful order under Article 92 of the Uniform Code of

---

[1] SECDEF Memo, "Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency, and DoD Field Activity Directors," (August 24, 2021).
[2] Although refusal to receive the vaccine may subject a member to adverse administrative or disciplinary action, the vaccine will not be forcibly administered to any member who refuses.

Military Justice (UCMJ), and failure to comply may result in punitive or adverse administrative action, or both. ALNAV 062/21 ¶ 5.

    4.     The United States Navy issued service-specific guidance via a separate administrative message ("NAVADMIN") on September 1, 2021. NAVADMIN 190/21 outlines Navy policy concerning the mandatory vaccination of Navy service members, vaccination administration and reporting requirements, and general guidance related to logistics and distribution of vaccines. The policy reiterates that COVID-19 vaccination "is mandatory for all DoD service members who are not medically or administratively exempt" under existing Navy policy. NAVADMIN 190/21 ¶ 2, 3.a. Refusal to be fully vaccinated against COVID-19 without an approved or pending exemption constitutes a failure to obey a lawful order and is punishable under Article 92, UCMJ. Ordinarily, any officer with authority to convene courts-martial or administer non-judicial punishment under Article 15 of the UCMJ may dispose of alleged violations of the UCMJ. Manual for Courts-Martial ("MCM"), Part II, Rules for Court Martial, 401. However, authority to initiate courts-martial, non-judicial punishment, or administrative separation processing for failure to become fully vaccinated is withheld to a designated COVID Consolidated Disposition Authority (CCDA). NAVADMIN 190/21 ¶ 3.c., 3.e.(5). Withholding this authority from service members' commanders precludes administrative separation or disciplinary action without elevated review and direction by the CCDA. On October 13, 2021, the Chief of Naval Personnel (CNP) was designated as the CCDA. NAVADMIN 225/21 ¶ 1.

    5.  NAVADMIN 190/21 ¶ 3.d. provides that service members may seek two types of exemptions, medical and administrative. Medical exemptions are governed by Army Regulation (AR) 40-562, which is a consolidated Military Services regulation implemented by the Navy and Marine Corps via Bureau of Medicine (BUMED) Instruction 6230.15B (hereinafter

BUMEDINST 6230.15B).  Medical personnel are responsible for reviewing and granting

medical exemptions, whereas non-medical personnel (sometimes with the assistance of advising

medical personnel) are responsible for reviewing and granting administrative exemptions.

BUMEDINST 6230.15B, 2-6.

> 6.      The policy provides the following with respect to medical exemptions:
>
> a. Medical exemptions. A medical exemption includes any medical contraindication relevant to a specific vaccine or other medication. Health care providers will determine a medical exemption based on the health of the vaccine candidate and the nature of the immunization under consideration. Medical exemptions may be temporary (up to 365 days) or permanent. Standard exemption codes appear in appendix C.
>
> > (1) *General examples* of medical exemptions include the following—
> >
> > > (a) Underlying health condition of the vaccine candidate (for example, based on immune competence, pharmacologic or radiation therapy, pregnancy and/or previous adverse response to immunization).
> > >
> > > (b) *Evidence of immunity* based on serologic tests, documented infection, or similar circumstances.
> > >
> > > (c) An individual's clinical case is not readily definable. In such cases, consult appropriate medical specialists, including specialists in immunization health care.

> AR 40-562, 2-6a.(1), (emphasis added).

As the policy reflects, these are just examples of situations when health care providers may

determine a medical exemption is warranted, but each exemption request is an individual

determination based on the health of the individual and the disease at issue.  Additionally, there

are some diseases for which serologic or other tests may be used to identify pre-existing

immunity.[3]

---

[3] The AR states, *"Screening for immunity.* For *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations." AR 40-562, 2-1.g (emphasis added).

7.      Service members who seek a medical exemption first submit their request to Navy medical providers who follow BUMED policy when processing those requests.  A Navy medical provider is defined as any uniformed, Navy-employed civilian, or contract-licensed independent medical practitioner whose scope of practice encompasses immunization healthcare delivery, and Independent Duty Corpsmen. BUMEDNOTE 6300, ¶ 7.b.  Navy medical providers have the authority to grant temporary medical exemptions for pregnancy or other temporary medical contraindications. BUMED Notice 6150 (Sept. 21, 2021).  For requests for permanent exemptions, Navy medical providers have authority to disapprove temporary or permanent medical exemption requests that do not meet clinical contraindications for the COVID-19 vaccine. BUMEDNOTE 6300, ¶ 6.c.  Service members who are actively participating in COVID-19 clinical trials are exempt from mandatory vaccination until the trial is complete. NAVADMIN 190/21 ¶ 3.d.(2).

8.      For either a temporary or permanent medical exemption request, medical providers evaluate the patient for medical contraindications based on documented medical history and/or clinical evaluation, and an assessment of the benefits and risks to the patient. BUMEDNOTE 6300 of September 3, 2021, *Clinical Consultation Guidance for COVID 19 Vaccine Permanent Exemption* (published September 3, 2021).   Additionally, medical providers are encouraged to request expert consultation by an immunizations specialist, when necessary. Medical contraindications for the COVID-19 vaccine include:

(a)  Anaphylaxis from a previous COVID-19 vaccine or COVID-19 vaccine ingredient;

(b)  Myocarditis or pericarditis after COVID-19 vaccine administration or infection;

(c)  Temporary association of Stevens-Johnson Syndrome or Guillain-Barré

Syndrome that cannot be attributed to another underlying cause within 6 weeks of

COVID-19 vaccine administration or infection;

(d)  Thrombosis with Thrombocytopenia Syndrome (TTS) after COVID-19

vaccine administration;

(e)  Persistent clinical symptoms lasting 4 or more weeks following a COVID-19

infection that cannot be attributed to another underlying cause after evaluation and

focused workup ("Long COVID").  *Id.*

In the *Clinical Consultation Guidance*, providers are also encouraged to consult CDC guidance.[4]

9.      In addition to the procedures in BUMEDINST 6230.15B, authority to approve a

permanent medical exemption for COVID-19 vaccination is the first Navy Medical Department

Flag Officer[5] in the medical provider's chain of command. NAVADMIN 190/21 ¶ 3.d.

BUMEDNOTE 6300 outlines the process for Navy medical providers recommending approval

for a permanent medical exemption for COVID-19 vaccination.  Where a provider recommends

such an exemption, the provider drafts an initial permanent exemption letter and routes the letter

to the appropriate flag officer as well as the member's commanding officer.  BUMED Notice

---

[4] An example of CDC clinical considerations includes:

If you were treated for COVID-19 with monoclonal antibodies or convalescent plasma, you should wait 90 days before getting a COVID-19 vaccine. Talk to your doctor if you are unsure what treatments you received or if you have more questions about getting a COVID-19 vaccine.

If you or your child has a history of multisystem inflammatory syndrome in adults or children (MIS-A or MIS-C), consider delaying vaccination until you or your child have recovered from being sick and for 90 days after the date of diagnosis of MIS-A or MIS-C. Learn more about the clinical considerations for people with a history of multisystem MIS-C or MIS-A.

*See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html

[5] "Flag Officers" comprise the highest ranks in the military. Officer ranks range from O-1 to O-10, with flag officers occupying the ranks between O-7 to O-10. In the Navy, a flag officer is any officer serving in the rank of Rear Admiral (Lower Half) or higher.

6300, ¶ 6.c.  A temporary medical exemption is granted pending the approval or disapproval decision of a permanent medical exemption.[6] BUMED Notice 6300, ¶ 7.b.  If the permanent medical exemption is approved, a formal letter of approval is forwarded to the initial recommending Navy provider.  BUMED Notice 6300, ¶ 7.j.  Vaccinations and vaccine exemptions are entered into the member's Electronic Health Record (EHR), or the Medical Readiness Reporting System (MRRS) where entry in the EHR is impracticable. BUMED Note 6150, ¶ 5.b.  During the pendency of a temporary exemption or once a permanent exemption is approved, a member will not be subject to disciplinary action.

10.     The Navy Reserves is comprised of several categories of reservist, including: (1) Ready Reserve; (2) Standby Reserve, consisting of the Standby Reserve-Active (USNR-S1) and Standby Reserve-Inactive (USNR-S2); or (3) Retired Reserve (USNR-Retired). *See* Bureau of Personnel Instruction (hereinafter BUPERSINST) 1001.39F, Ch. 1, ¶ 101. A reservist's administrative requirements, entitlements, pay, or benefits eligibility is dependent on the status of the reservist. *See generally id.*, Figure 1-2. Navy reservists are required to meet physical qualifications for retention in the Reserve, and all members of the Navy and Marine Corps Reserve annually complete a periodic health assessment. *Id.*, Ch. 2 ¶ 201; U.S. Navy Manual of the Medical Department, Ch. 15, Art. 15-23(2) (hereinafter "MANMED"). Drilling reservists have additional requirements with respect to notifying the chain of command of any physical or dental problem that may delay or preclude their performance of drills, Annual Training (AT), or mobilization eligibility, including their vaccination status. BUPERSINST 1001.39F, Ch. 2, ¶ 201. Unlike active duty service members, reservists are not automatically covered under TRICARE, the military's health care program, unless called to active duty for greater than 30

---

[6] No disciplinary or administrative action will be initiated while a permanent medical exemption request is pending.

days. Reservists do have the option to obtain health insurance through TRICARE Reserve Select, a low-cost premium-based version of TRICARE. *See* TRICARE Reserve Select, https://tricare.mil/TRS (last visited Jan. 12, 2022).

11.     For the annual physical evaluation, the reservist's unit Medical Department Representative (MDR) reviews the service member's periodic health assessment to evaluate all new or materially changed medical conditions.  MANMED 15-23(3). The MDR is encouraged to obtain additional information from reservists via outpatient medical records or other sources as appropriate to develop as complete an understanding as possible of the condition(s). *Id.*  If a potentially disqualifying physical condition is discovered, such as the lack of a required vaccination, the supporting commanding officer will place the member in a Medical Retention Review (MRR) status. In this status, the medical officer or MDR will recommend that either the member be allowed or denied the opportunity to remain in a drill status.  BUPERSINST 1001.39F, Ch. 2 ¶ 203.2.  The commanding officer has the option to retain the member in the unit with or without drill authorization or reassignment of the member to a temporary unit in an authorized absence status. *Id.*, ¶ 203.2.a.

12.     Like active duty service members, reservists are subject to immunization requirements as outlined in BUMEDINST 6230.15B, but must be in a duty status to receive required immunizations. *See* BUMEDINST 6230.15B ¶ 3-2.a.-b.  Reservists recalled to active duty are subject to screening requirements for activation, which includes an assessment of the member's medical condition, including the need for requirement vaccinations. *Id.* Ch. 21 ¶ 2105; Figure 21-1. Reservists may seek a medical exemption for a vaccination from a DoD medical provider. In the event a non-DoD provider recommends a vaccine contraindication, the reservist must request assistance from a Navy medical provider in order to request a permanent medical

exemption. BUMED Notice 6300, ¶ 7.f.-g.   If a reservist is not exempted from the vaccination requirement and is determined to be physically disqualified, that reservist may be subject to discharge or retirement. *Id.* Ch. 2 ¶ 203.2.f.

13.   Medical rationale for disapproval based on serology: Serological test results that show the presence of antibodies from a prior COVID-19 infection, standing alone, will not be a basis for a permanent medical exemption.  Serologic testing, as a means to determine immunity, has not been scientifically validated and evidence suggests that prior infection does not prevent later infection.[7] Although AR 40-562 indicates that serology screening tests for immunity may be warranted, it applies to diseases or conditions where it has been established that serologic tests are able to determine one's immunological status.[8] AR 40-562 contemplates that serologic or other tests might be appropriate to determine immunity for some diseases, but not all vaccine-preventable diseases. AR 40-562 ¶ 2-1.g.  In contrast to a disease such as varicella ("chicken pox"), where prior infection usually provides "immunity for life" and a second occurrence is uncommon, prior COVID-19 infection does not provide similar immunity. *See* CDC, "Chicken Pox for Healthcare Professionals, *available at* https://www.cdc.gov/chickenpox/hcp/index.html; Alyson M. Cavanaugh, et al., *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination*, Morbidity and Mortality Weekly Report, Vol. 70, No. 32 (Aug. 13, 2021).

---

[7] One study found the following: "[A]mong Kentucky residents who were previously infected with SARS-CoV-2 in 2020, those who were unvaccinated against COVID-19 had significantly higher likelihood of reinfection during May and June 2021. This finding supports the CDC recommendation that all eligible persons be offered COVID-19 vaccination, regardless of previous SARS-CoV-2 infection status." Further, the authors noted limited available evidence to determine the extent and duration of immunity from natural infection, and cited the emergence of new variants that might affect infection-acquired immunity. Alyson M. Cavanaugh, et al., *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination*, Morbidity and Mortality Weekly Report, Vol. 70, No. 32 (Aug. 13, 2021), *available at* https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7032e1-H.pdf.
[8] "g. *Screening for immunity.* For *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations."  AR 40-562, 2-1.g (emphasis added).

14.    Administrative exemptions may be granted for various reasons, including pending

separation or retirement, permanent change of station, emergency leave, and religious

accommodation. BUMEDINST ¶ 6230.15B, 2-6.b.  Navy policy concerning requests for the

accommodation of religious practices generally, including immunizations, is outlined in

BUPERSINST 1730.11A (attached as Exhibit A to this declaration), while specific guidance

related to immunization exemptions for religious beliefs is found in the Naval Military Personnel

Manual (MILPERSMAN), Article 1730-020 (attached as Exhibit B to this declaration).

a.  An active duty or reserve service member[9] seeking an exemption of

immunization for religious reasons must submit the request in accordance with

BUPERSINST 1730.11A, ¶ 5.e.  The requirements include: (1) a written request via his

or her commander stating the waiver sought; and (2) an interview with a Navy Chaplain,

who assesses whether the requestor's beliefs appear sincerely held for recommendation to

the commander. BUPERSINST 1730.11A, ¶ 5.e. Templates for the member's request and

Chaplain's assessment and recommendation are found in enclosures (1) through (3) of the

instruction.  The service member must also include a NAVPERS 1070/613,

"Administrative Remarks" form (commonly known as a "Page 13"), which documents

the member has been advised of potential health, travel, and administrative consequences

of their immunization waiver request. MILPERSMAN 1730-020 ¶ 4.c.

b.  The approval authority for requests for immunization exemptions is the

Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education)

---

[9]  "This instruction applies to all active and reserve members of the Navy, including applicants for entry into the
Navy and Navy Reserve, as well as midshipmen at the U.S. Naval Academy (USNA) and in the Naval Reserve
Officers Training Corps (NROTC), and officers and officer candidates in Navy officer accession program."
BUPERSINST 1730.11A ¶ 3.a

(hereinafter CNO N1)[10]. BUPERSINST 1730.11A, ¶ 5.a.(4) Commanders routing

requests to CNO N1 must forward the matter within 7 days from the date of the

member's request in accordance with BUPERSINST 1730.11A, ¶ 5.c. The commander's

endorsement must include information as required under MILPERSMAN 1730-020 ¶ 5,

including: (1) the negative effect (if any) of the requested accommodation on the unit's

military readiness, health, or safety; (2) the number of service members in the command

that have been granted a similar exemption; and (3) when recommending denial, a

determination that the denial furthers a compelling government interest and there is no

less restrictive means of accommodating the request. MILPERSMAN 1730-020 ¶ 5. a.-b.

Commanders are required to ensure the applicant receives counseling related to the

potential health and travel impacts they may incur as a consequence of their waiver, and

the possibility that their waiver may be revoked in the event they are at imminent risk of

disease. MILPERSMAN 1730-020 ¶ 6.[11] Action on a service member's written request

for accommodation must be in a timely manner, generally no later than 60 days from

receipt by the Office of the Secretary concerned.[12] DoD Instruction 1300.17, ¶ 3.2.c.,

Table 1. A member may appeal CNO N1 decisions to the Chief of Naval Operations

(CNO). BUPERSINST 1730.11A, ¶ 5.f. Template letters for approvals and approval

recommendations are found in enclosure (4) of the instruction.

---

[10] CNO N1 is identified by the alternative designation of CNP (Chief of Naval Personnel) in MILPERSMAN 1730-020). CNO N1 and CNP are interchangeable acronyms and refer to the same position and official.
[11] The authority to revoke approved religious accommodation exemptions has been withheld per NAVADMIN 225/21 ¶ 7.g.
[12] No disciplinary or administrative action will be initiated while a request for an exemption for religious accommodations is pending.

c.  Requests for religious accommodation are evaluated using criteria outlined in paragraph 5 of the instruction.  Specifically, each request is evaluated on a case-by-case basis considering the following factors:

(1) applicable operational or regional policies,

(2) importance of the military policy, practice or duty in terms of mission accomplishment, including military readiness, unit cohesion, good order, discipline, health, or safety,

(3) importance of the practice to the requestor,

(4) cumulative impact of repeated accommodations of a similar nature and

(5) alternative means to fulfill the request.

d.  Commanders will not deny or recommend denial of a religious accommodation unless the denial or partial denial furthers a compelling governmental interest and is the least restrictive means of furthering that compelling government interest. Factors for commanders to consider include (but are not limited to) whether approving the accommodation would pose a health or safety hazard, or otherwise impair mission accomplishment, good order, discipline, morale or unit cohesion. BUPERSINST 1730.11A ¶ 5.a.(2).

15.  NAVADMIN 225/21 provides guidance for disposition of offenses involving Navy service members who are not fully vaccinated as required by NAVADMIN 190/21. Navy service members refusing the COVID-19 vaccine, absent a pending or approved exemption, are required to be processed for administrative separation.[13] NAVADMIN 225 ¶ 2.  A Navy service member is considered to be "refusing the vaccine, if: (1) the individual has received a lawful order to be fully vaccinated, (2) is not or will not be fully vaccinated by the date required, and (3)

---

[13] Although processing for separation is required, this does not automatically result in a member actually being separated.  Members processed for separation may ultimately be retained in the service.

does not have a pending or approved exemption request." NAVADMIN 225/21 ¶ 3.c. The

policy designates CNP as the CCDA to ensure fair and consistent administrative processing

across the service. NAVADMIN 225/21 ¶ 5.b. For disciplinary matters, authority to initiate

disciplinary proceedings, either non-judicial punishment or court-martial, is withheld to the Vice

Chief of Naval Operations. *Id.* NAVADMIN 256/21 provides additional guidance on

administrative separation processing for those refusing the vaccine, as well as guidance on other

applicable administrative actions. These other applicable administrative actions include:

cancellation of government travel for training or other official purposes, potential reassignment

within the local area, adverse fitness reports and evaluations, prohibition on executing permanent

change of station orders, potential termination of special duty and incentive pays, potential

recoupment of unearned bonuses, termination of and potential reimbursement for Navy-funded

education and training, promotion delays, and removal of additional qualification designations or

Navy Enlisted Classifications. *See* NAVADMIN 256/21 ¶¶ 4.b.through 13.

16.     Prior to the initiation of administrative or disciplinary action, Navy service

members are formally advised of the order to be fully vaccinated using a NAVPERS 1070/613,

"Administrative Remarks" form (commonly known as a "Page 13"). NAVADMIN 225/21 ¶

7.e.(1). A Page 13 is not a punitive action, but is a manner to document formal counseling of a

Navy service member. The inclusion of this Page 13, by itself, is not considered to be an adverse

matter and will not affect a member's career. The Page 13 provides guidance to the Navy

service member and serves to document that the member has been advised of his or her

acknowledgement of the lawful order to be vaccinated against COVID-19. It also provides the

service member with an opportunity to notify his or her commander of the member's intent to

seek a medical or religious exemption.

17.     Officer administrative separation is initiated by a formal report of misconduct to Navy Personnel Command (NAVPERS), as required by MILPERSMAN 1611-010, and governed by the procedures in SECNAV Instruction 1920.6D (hereinafter SECNAVINST 1920.6D). The CCDA serves as the "show cause authority" under SECNAVINST 1920.6D, and requires mandatory show cause proceedings for all officers who refuse the vaccine. Specifically, officers are processed for separation on the bases of Misconduct, Moral or Professional Dereliction, and Substandard Performance. NAVADMIN 225/21 ¶ 7.a. Officers are processed with the least favorable characterization of service[14] as General (Under Honorable Conditions),[15]

---

[14] A characterization of service is assigned to a service member upon separation from the military and generally reflects the quality of an individual's military service. The highest characterization of service is Honorable, followed by General (Under Honorable Conditions), Other Than Honorable, Bad-Conduct, and Dishonorable. Officers may be awarded a Dismissal, which is akin to a Dishonorable discharge. The first three types of characterization may be awarded using administrative procedures, whereas Bad Conduct and Dishonorable discharges, as well as an officer's Dismissal, are considered "punitive discharges." These types of discharges may only be awarded by a court-martial sentence and imposed after appellate review is complete.

[15] SECNAVINST 1920.6D, Enclosure (8), "Guidelines on Characterization of Service" paragraph 2 describes the administrative discharge characterizations of service applicable to officers being processed for separation:

   a. Honorable. Officers whose quality of service has generally met the standards of acceptable conduct and performance of duty for officers of the naval service, or is otherwise so meritorious that any other characterization would be clearly inappropriate, will have their service characterized as Honorable.

   b. General (Under Honorable Conditions). If an officer's service has been honest and faithful, but negative aspects of the officer's conduct or performance of duty outweigh the positive aspects of his or her conduct or performance of duty as documented in the officer's military record, it is appropriate to characterize that service as General (Under Honorable Conditions).

   c. Under Other Than Honorable Conditions. This characterization is appropriate when the officer's conduct or performance of duty, particularly the acts or omissions that give rise to the reasons for separation, constitute a significant departure from that required of officers of the naval service. Examples of such conduct or performance include acts or omissions which, under military law, are punishable by confinement for six months or more; abuse of a special position of trust; an act or acts which bring discredit upon the armed services; disregard by a superior of customary superior-subordinate relationships; acts or omissions that adversely affect the ability of the military unit or the organization to maintain discipline, good order, and morale or endanger the security of the United States or the health and welfare of other members of the Armed Forces; and deliberate acts or omissions that seriously endanger the capability, security, or safety of the military unit or health and safety of other persons. An officer being separated under Other Than Honorable conditions must be informed, in writing, that he or she may petition the Veterans Benefits Administration of the Department of Veterans Affairs (VA) for certain benefits under the laws administered by the Secretary of VA, despite the characterization of the officer's service.

unless inclusion of another basis for separation warrants a characterization of Other Than Honorable. *Id.*; NAVADMIN 256/21 ¶ 2.a.

      a. The specific procedures involved with processing an officer for misconduct are outlined in SECNAVINST 1920.6D, Enclosure (6), "Policy Governing Involuntary Separation for Cause or Parenthood", and Enclosure (7), "Guidelines on Separations for Cause". The applicable procedures may vary in certain respects depending on the officer's type of appointment, years of service, and record of performance, among other factors.

      b. Probationary officers may be processed without a Board of Inquiry (BOI) when the show cause authority determines that an Honorable, or General (under honorable conditions) characterization of service is appropriate. SECNAVINST 1920.6D, Encl (2), ¶ 25; Encl (7), ¶ 3.a. In the case of COVID-19 vaccine refusals, probationary officers will be given an Honorable characterization of service unless there are extenuating circumstances (*e.g.*, collateral misconduct). NAVADMIN 283/21 ¶ 4.c.(1). Absent extenuating circumstances, probationary officers who are eligible to and voluntarily agree to separate on or before June 1, 2022 will receive an Honorable characterization of service. *Id.*, at ¶ 2.a. Non-probationary officers are entitled to be processed using BOI procedures, which entails a formal administrative hearing before a panel of no fewer than three senior officers who make findings with respect to the bases for separation, and recommendations with respect to retention or separation, and character of service. SECNAVINST 1920.6D, Encl (7) ¶ 4; Encl (11). For COVID-19 vaccine refusals, non-probationary officers will be processed for administrative separation with the least favorable characterization of General (under honorable

conditions) and requests to waive BOIs in exchange for a recommended Honorable characterization of service will generally be favorably endorsed absent additional misconduct or unique circumstances. NAVADMIN 283/21 ¶ 2.b.(2). Absent extenuating circumstances, non-probationary officers who are eligible to and voluntarily agree to separate on or before June 1, 2022 will receive an Honorable characterization of service. *Id.*, at ¶ 2.a.

18.     Administrative separation of enlisted service members is processed under MILPERSMAN 1910-142, "Commission of a Serious Offense." NAVADMIN 225/21 ¶ 7.b. A "serious offense" is one that would warrant a punitive discharge in accordance with the Manual for Courts-Martial (MCM), which includes violations of Article 92, UCMJ. MILPERSMAN 1910-142 ¶ 2.a. The CCDA directs processing with the least favorable characterization of General (under honorable conditions),[16] unless inclusion of another basis for separation warrants other than honorable. NAVADMIN 225/21 ¶ 7.b; NAVADMIN 256/21 ¶ 2.a. In the case of COVID-19 vaccine refusals, enlisted service members with less than six years of service will be

---

[16] MILPERSMAN 1910-304 describes the administrative discharge characterizations of service applicable to enlisted personnel being processed for separation:

Honorable: the quality of the member's service generally met the standard of acceptable conduct and performance for naval personnel, or is otherwise so meritorious that any other characterization of service would be clearly inappropriate.

General (under Honorable Conditions): the quality of the member's service has been honest and faithful; however, significant negative aspects of the member's conduct or performance of duty outweighed positive aspects of the member's service record. In the absence of a specific finding from an administrative board, a characterization of service as GEN may be awarded based on a review of a Sailor's overall service record.

Other than Honorable: Conduct involving one or more acts of omissions that constitute a significant departure from the conduct expected of members of Naval Service. Examples of factors that may be considered include the use of force or violence to produce serious bodily injury or death, abuse of special position of trust, disregard by a superior of customary superior-subordinate relationships, acts or omissions that endanger the security of the United States or the health and welfare of other service members of the military service, those punishable by punitive discharges, extended unauthorized absence, drug abuse and drug distribution (trafficking).

given an Honorable characterization of discharge unless there are extenuating circumstances (*e.g.*, collateral misconduct or poor performance). NAVADMIN 283/21 ¶ 5.c.(1). For COVID-19 vaccine refusals, enlisted service members with six or more years of service will be processed for administrative separation with the least favorable characterization of General (under honorable conditions) and requests to conditionally waive administrative separation boards in exchange for Honorable characterization of service will be granted absent additional misconduct or unique circumstances. *Id.* at ¶¶ 5.d.(1) - 5.d.(2).(b). Absent extenuating circumstances, enlisted service members who are eligible to and voluntarily agree to separate or retire on or before June 1, 2022 will receive an Honorable characterization of service. *Id.* at ¶ 2.a.

     a. Similar to officer administrative separation processing, the applicable procedures may vary in certain respects depending on the service member's specific community (*e.g.*, nuclear-trained Sailors), their years of service, and record of performance, among other factors. Processing of enlisted Navy service members is initiated using a NAVPERS form 1910/31, "Administrative Separation Processing Notice," and those service members may be processed using either notification procedures or administrative board procedures under MILPERSMAN 1910-402.

     b. Notification procedures are appropriate where the least favorable characterization is General (under honorable conditions). *Id.* ¶ 1.a. For Navy service members with fewer than six years of service, notification procedures permit an opportunity to consult with counsel and submit matters for consideration to the separation authority. The CCDA serves as the separation authority for cases involving vaccine refusal, unless a higher separation authority is required by MILPERSMAN 1910-704. NAVADMIN 225/21 ¶ 7.b. Navy service members with more than 6 years of service may

elect an administrative separation board, which is a formal administrative hearing similar to a BOI except with regards to the composition of board membership and post-hearing administrative processing. *See generally* MILPERSMAN 1910-010 through 1910-710.

19.     Timelines to complete administrative processing vary depending on whether the Navy service member is an officer or enlisted Sailor, the efficiency of administrative processing within any given command or unit, and what specific procedures apply to the member's case. For cases involving a Navy service member's vaccine refusal and no other misconduct or basis for separation, the following timelines offer a rough estimate for administrative separation processing:

a. For officers, it generally takes between 6 to 12 months from the time the officer is notified to show cause to the officer's approved separation. It takes approximately 86 days from notification of officer misconduct to NAVPERS before the officer is notified to show cause.  The officer ("respondent") normally has 10 working days to respond to the notice, and an extension of time may be granted for good cause. The commanding officer must forward the case to the Secretary of the Navy via NAVPERS and the Chief of Naval Personnel (CNP).  Review of the case at each level of review takes approximately 50 to 75 days.  In cases where a BOI is required, it typically takes another 120 days to complete all phases of the BOI process.  The respondent is afforded a minimum 30 days' notice prior to when the board convenes, and may request a continuance not to exceed 30 days for good cause.  After review is completed and the officer's separation is approved, the decision is communicated to the command via naval message. The officer is generally required to complete separation requirements within 60 days of the approved separation notice.

b.  Administrative separation of enlisted service members often takes several months, although the range of processing timelines varies more so than with officer processing. Following the notice of administrative separation, the service member generally has two working days to consult with counsel.  For probationary service members, the individual may elect to submit matters to the separation authority and is given a reasonable time to do so, typically 5 working days.  The commander must then route the case file to the CCDA for action as the separation authority.  The approved separation is then forwarded to the command to complete separation processing requirements locally.  Where a service member is entitled to, and thereafter elects an administrative separation board, the command must request qualified counsel be assigned to the member.  The command and the member's counsel then coordinate to set a date for the administrative hearing.  There is no required timeline, but generally the board should occur within 30 days of defense counsel appointment.  Following the board, the command must generate a record of the board's proceedings and forward the case file to the CCDA using a formal letter format, which typically takes between 5-10 working days.  Where a higher separation authority is required by MILPERSMAN 1910-704, such as for members with greater than 18 years of service or who are pending a Physical Evaluation Board (PEB), the review timelines inherent to officer administrative separation processing apply.

20.     While NAVADMIN 225/21 withholds authority to initiate disciplinary either non-judicial punishment or courts-martial for cases involving vaccine refusal, commanders generally possess a wide array of administrative and disciplinary options with which to dispose of service members' offenses under the UCMJ.  Subject to the limits of the commander's authority, the

commander's administrative corrective measures include formal or informal counseling, non-punitive letters of caution or censure,[17] withholding of privileges, and extra-military instruction, as governed by the relevant service policy.  Disciplinary options include non-judicial punishment under Part V of the MCM, disposition of the charges by court-martial where the commander has the authority to do so, or forwarding of charges for trial by court-martial where the commander does not.

   a.  Non-judicial punishment is a forum generally reserved for minor offenses, or those offenses which the maximum sentence would not include a Dishonorable Discharge or confinement for greater than one year if tried by a general court-martial. MCM, Part V ¶ 1.e.  Punishments are limited by the rank and position of the cognizant commander, as well as the rank of the person accused of misconduct.  *Id.* ¶ 2, 5.  Punishments and service limitations are outlined in MCM Part V and the Manual of the Judge Advocate General (JAGMAN), but commonly include some combination of the following: admonishment or reprimand, extra duties, restriction, reduction in rank, or forfeiture of pay. MCM, Part V ¶ 5; JAGMAN, 0111.  Commanders are encouraged to permit the accused to speak with counsel subject to the immediate availability of counsel, the delay involved, and operational commitments or military exigencies.  JAGMAN 0108 ¶ a.(1).  Service members not attached to a vessel have the right to refuse non-judicial punishment and request trial by court-martial. MCM, Part V ¶ 3; JAGMAN 0108 ¶ a.  Following imposition of non-judicial punishment, the service member has five working days to submit an appeal, and may request additional time for good cause. MCM, Part V ¶ 7.

---

[17] Non-punitive letters of caution or censure are matters between the issuing authority and the counseled member and do not become part of the member's official service record.  Manual of the Judge Advocate General (JAGMAN) 105 ¶b.(2).

The member's appeal is forwarded, along with the commander's endorsement, to the cognizant general court-martial convening authority for action. MCM, Part V ¶ 7; JAGMAN, 0117.

     b.  More serious offenses under the UCMJ may be subject to trial by court-martial.  There are three types of courts-martial: summary court-martial, special court-martial, and general court-martial.  Depending on the rank and position of the commander, he or she may or may not be authorized to convene certain types of courts-martial. UCMJ, 10 U.S.C. § 821-24.  Further, the nature of the proceedings and punishments available are limited depending on the forum and rank of the accused. *See* UCMJ, 10 U.S.C. Chapter 47, Subchapters IV, VIII.  The most severe punishments, such as the death penalty, a Dishonorable Discharge, Dismissal, or extended periods of confinement, are only available at general courts-martial, and certain offenses are only permitted to be tried by general courts-martial.  *Id.*  Summary courts-martial are less formal than either special or general courts-martial, which are equivalent in formality and procedure to civilian criminal courts; however, each court-martial forum is governed by the procedures outlined in the MCM, Part II, Rules for Court Martial.  Special courts-martial and general courts-martial, in particular, have substantial legal and procedural requirements with respect to pre-trial, trial, and post-trial judicial proceedings.[18] The adjudication of trials by court-martial generally take months before the court is convened, and may take several months, depending on the matters involved in the case and the

---

[18] Relevant to a charge of violation of Article 92 (disobeying a lawful order) for refusal to receive the COVID-19 vaccination, an accused member could choose to raise all available affirmative defenses, including the lawfulness of the order, at court-martial.

court's docket, prior to the trial date. Upon conclusion of the trial, the member may appeal the findings or sentence as provided in Chapter XI and XII of the MCM.

21.     The administrative and disciplinary options available to commanders are the same for both active duty and reserve component service members; however, the application of such options with respect to reservists is subject to unique jurisdictional and practical considerations. A member of a reserve component on active duty or inactive-duty training is subject to the UCMJ and they may be ordered to active duty for disciplinary proceedings. UCMJ Art. 2, 10 U.S.C. §802; JAGMAN, 0107. Punishments awarded at non-judicial punishment are limited to the duration of the service member's period of active duty or inactive-duty training. *Id.*, 0112. Special procedures apply to recall members of the reserve component to activity duty for purposes of a court-martial, and such members may be retained on active duty to serve a punishment of confinement or restraint on liberty. *Id.*, 0123. Administrative separation procedures are largely the same as those used with active duty service members, with minor variations related to composition of the board and post-board administrative processing. *See, e.g.,* SECNAVINST 1920.6D, Encl. 11, ¶ 3.b., and MILPERSMAN 1910-704 (requiring a reservist member on officer and enlisted administrative separation boards).

22.     Any service member who believes he or she has been wronged by his or her commanding officer may seek redress from the commanding officer's immediate superior in command under UCMJ, Article 138, Complaints of wrongs. 10 U.S.C. § 938. Discharged service members may seek a review of his or her discharge through the cognizant Discharge Review Board (DRB). 10 U.S.C. § 1553. The DRB is empowered to change and issue a new discharge on grounds of equity or propriety. 32 C.F.R. § 70.9. DRBs may consider factors such as the applicant's service history, awards and decorations, letters of commendation or reprimand,

wounds received in action, acts of merit, length of service, convictions by court-martial or civilian convictions, non-judicial punishments, records of unauthorized absence, or records relating to the member's discharge. *Id.* Discharged service members may also seek an upgraded discharge from the appropriate Board for Correction of Military Records (BCMR), which is the Board for Correction of Naval Records (BCNR) for the Navy and Marine Corps personnel. 10 U.S.C. § 1552. The BCNR has more extensive authority than DRBs to upgrade discharges, void discharges, alter reenlistment codes, and remove otherwise inaccurate or adverse documents from a service member's record. Additionally, Navy and Marine Corps personnel who have not yet been discharged may petition the BCNR for relief. The BCNR may correct any military record when it is necessary to correct an error or remove an injustice. *Id.* The BCNR's action may result in a member being reinstated in the Navy. If a Service member is unable to obtain relief through the appropriate DRB or BCMR, the service member may elect to challenge the agency's decision and administrative proceedings in federal court under applicable federal law.

23.    In summary, the Navy is providing its personnel opportunities to seek medical and religious exemptions from the requirement to receive the COVID-19 vaccine. For those Sailors who do not wish to pursue an exemption or have their exemption requests denied after full adjudication including appeals and still refuse to be immunized, the Navy's interest in good order and discipline is best served by adjudicating each refusal on a case-by-case basis. Each Sailor will be afforded all due process to which he or she is entitled while fully exhausting intra-service administrative and disciplinary processes that result in a final agency action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of January, 2022.

W. R. MERZ

Merz Declaration - Exhibit A



**DEPARTMENT OF THE NAVY**
CHIEF OF NAVAL PERSONNEL
701 SOUTH COURTHOUSE ROAD
ARLINGTON VA 22204-2472

BUPERSINST 1730.11A
N13
16 Mar 2020

<u>BUPERS INSTRUCTION 1730.11A</u>

From:  Chief of Naval Personnel

Subj:  STANDARDS AND PROCEDURES GOVERNING THE ACCOMMODATION OF
      RELIGIOUS PRACTICES

Ref:    (a) DoD Instruction 1300.17 of 10 February 2009
      (b) SECNAVINST 1730.8B
      (c) NAVPERS 15665I
      (d) BUMEDINST 6230.15B

Encl:  (1) Sample Request for Waiver of Policy to Accommodate a Religious Practice
         (Template)
      (2) Chaplain Interview Checklist (Template)
      (3) Chaplain Memorandum for the Record (Template)
      (4) Religious Accommodation Approval or Endorsement (Template)

1.  <u>Purpose</u>.  To provide policy, guidance, procedures and responsibilities for the accommodation of practices in support of sincerely held religious beliefs for Sailors and prospective accessions, per references (a) and (b).  Reference (c) provides the Navy's manner of wear policy for the most commonly requested waivers of uniform and grooming standards in support of religious practices, as delineated in paragraph 5.

    a.  This revision updates policy, guidance and procedures for the accommodation of practices in support of sincerely held religious beliefs.

    b.  This is a complete revision and should be reviewed in its entirety.

2.  <u>Cancellation</u>.  BUPERSINST 1730.11.

3.  <u>Scope and Applicability</u>

    a.  This instruction applies to all active and reserve members of the Navy, including applicants for entry into the Navy and Navy Reserve, as well as midshipmen at the U.S. Naval Academy (USNA) and in the Naval Reserve Officers Training Corps (NROTC), and officers and officer candidates in Navy officer accession programs.  Nothing in this instruction precludes disciplinary or administrative action for conduct that is proscribed by the Uniform Code of Military Justice or supporting policies.

BUPERSINST 1730.11A
16 Mar 2020

b.  Conscientious Objectors.  Conscientious objections are not covered under this instruction.  See DoD Instruction 1300.06 (Conscientious Objector) of 12 July 2017.

c.  Peyote Use.  Peyote use is not covered under this instruction.  See Assistant Secretary of Defense for Force Management Policy Memorandum of 25 April 1997, *Sacramental Use of Peyote by Native American Service Members*.

3.  Background.  This policy complies with references (a) and (b) and supports the Navy's culture of diversity, tolerance and inclusion.  In line with section 2000bb-1 of Title 42, United States Code, requests for religious accommodation from a military policy, practice or duty that substantially burdens a Sailor's exercise of religion may be denied only when the military policy, practice or duty furthers a compelling government interest and is the least restrictive means available of furthering that compelling government interest.  Religious liberty is more than freedom to worship.  It includes the freedom to integrate one's religion into every aspect of one's life.  When the policies or procedures of the Navy conflict with a Sailor's religious practices, the Navy works to support the Sailor's religious practices to the broadest extent possible within the bounds of military readiness, unit cohesion, good order, discipline, health and safety.  Many religious practices such as (but not limited to) religious observances and dietary practices do not need a request for waiver of policy and can be accommodated at the command level.

4.  Roles and Responsibilities

a.  Sailors.  Sailors seeking accommodation of a religious practice that requires a waiver of Navy policy ("requestors") must submit a request in writing to their commander, consistent with enclosure (1).  Prospective accessions seeking accommodation of a religious practice that requires a waiver of Navy policy ("requestors") should use the accession source chain of command, consistent with subparagraph 5b, enclosure (1) and Table 2.

(1) A requestor must comply with the applicable policy, practice, direction or duty from which he or she is requesting a religious accommodation until the request is adjudicated.  Additionally, commanders and commanding officers ("commanders") may temporarily modify or suspend a religious accommodation, consistent with subparagraph 5g.

(2) A requestor with an approved religious accommodation must inform his or her chain of command of the approved accommodation upon checking in to a new command or changing duties.  A requestor must retain a copy of the approved accommodation and be able to produce it within five working days.

b.  Chaplains.  Command chaplains are responsible for advising and assisting commands with religious accommodation policy execution.  In line with SECNAVINST 1730.7E, chaplains, assisted by Religious Program Specialists, provide for and facilitate religious requirements of Sailors and authorized users and advise commanders on command religious program matters throughout the Department of the Navy (DON).

BUPERSINST 1730.11A
16 Mar 2020

(1) A Navy chaplain will conduct an administrative interview for each religious accommodation request that requires a waiver of policy.  Local chaplains should be used if available.  Chaplains may use any means available to ensure the interview takes place promptly, such as telephone or video conference.  The chaplain should use enclosure (2) during the interview and must produce a memorandum for the record consistent with enclosure (3).

(2) The chaplain will inform the Sailor or prospective accession that the interview is for the purpose of preparing a memorandum for the record and advising the command, and that the content of the interview is not privileged or confidential as defined in SECNAVINST 1730.9A and the Manual for Courts-Martial Military Rule of Evidence 503.

c.  Commanders and Commanding Officers (CO).  Commanders must process requests according to the timelines, routing and criteria set forth in this instruction.

(1) When forwarding a request for adjudication or appeal, commanders will use enclosure (4).

(2) Commanders must obtain the advice of a judge advocate and a chaplain prior to acting on a request that involves a waiver of Navy policy.

(3) Commanders will include a religious needs assessment upon check-in to the command in line with OPNAVINST 1730.1E to include identification of Sailors who may need previously-approved religious accommodation waivers reviewed.

d.  Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (CNO N1).  CNO N1 is responsible for overseeing this religious accommodation policy and will review and act on religious accommodation requests that require waiver of Department of Navy (DON) policy and are routed to CNO N1 for approval as indicated in Tables 1 and 2.

5.  Policy.  In accordance with Article 0820 of United States Navy Regulations, 1990, commanders will provide maximum opportunity for the free exercise of religion by members of the naval service.

a.  Standards-Based Approach.  The Navy has a compelling governmental interest in mission accomplishment at the individual, unit and organizational levels, including such necessary elements of mission accomplishment as military readiness, unit cohesion, good order, discipline, health and safety. The military is a specialized community within the United States, governed by a discipline separate from the rest of society.  All Navy personnel must expeditiously review and act on requests for religious accommodations.  Many religious practices do not require an exception to Navy policy and can be accommodated at the command level.  The term "religious practice" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief.

BUPERSINST 1730.11A
16 Mar 2020

(1) Each request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request. Requests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied.  The following factors should be considered:

      (a)  applicable operational or regional policies,

      (b)  importance of the military policy, practice or duty in terms of mission accomplishment, including military readiness, unit cohesion, good order, discipline, health, or safety,

      (c)  importance of the practice to the requestor,

      (d)  cumulative impact of repeated accommodations of a similar nature and

      (e)  alternate means to fulfill the request.

(2) To comply with the intent of section 2000bb-1 of Title 42, U.S. Code, commanders and their staffs should remain objective in considering requests to accommodate religious practices.  Commanders will not deny or recommend denial of a religious accommodation unless the denial or partial denial furthers a compelling governmental interest and is the least restrictive means of furthering that compelling government interest.  It is essential that commanders articulate the factual basis underlying any compelling government interest and that they articulate why a recommended denial or partial denial is the least restrictive means available to the commander to protect the compelling government interest over the individual request. Factors to consider include (but are not limited to) whether approving the accommodation would:

      (a)  pose a health or safety hazard (such as flammable materials or loose clothing that could become caught in a piece of equipment),

      (b)  interfere with the wear or proper function of special or protective clothing or equipment (such as a respirator, protective helmet or communication gear) or

      (c)  otherwise impair mission accomplishment, good order, discipline, morale or unit cohesion.

(3) Sometimes it is necessary for commanders to recommend an alternative manner by which the religious requirement may be met.  For example, there may be options and resources not known to the member at the time of his or her request that might be known to the commander.  Those alternatives should be discussed and offered to the member to determine if they might satisfy some or all of the member's religious requirement.  Where appropriate, the chaplain memorandum may discuss alternative means available to address the requested accommodation.

BUPERSINST 1730.11A
16 Mar 2020

(4) Religious practices and corresponding approval authorities are listed in Table 1. Many religious practices, such as (but not limited to) religious observances and dietary practices do not need a request for waiver of policy and can be accommodated at the command level. Other religious accommodations may be approved by the first O-6 in the chain of command, whether the requestor's CO or Immediate Superior in Command (ISIC). Per reference (a), exceptions to Table 1 are not permitted without CNO N1 approval.

| Type of Religious Practice | Authority |
|---|---|
| Religious observances per subparagraph 5d(1) | CO |
| Dietary practices per subparagraph 5d(2) | CO |
| Neat, conservative head covering in line with subparagraph 5d(4)(a), which requires waiver of uniform regulation provisions in reference (c) | Approvals authorized at O-6 CO/ISIC level. O-6 CO/ISIC send recommendation for **disapproval** directly to CNO N1 |
| Unshorn hair on men in line with subparagraph 5d(4)(b), which requires waiver of uniform regulation provisions in reference (c) | O6 CO/ISIC send recommendation directly to CNO N1 |
| Beard, which requires waiver of requirement for male Sailors to be clean shaven found in reference (c), in line with subparagraph 5d(4)(c) | O6 CO/ISIC send recommendation directly to CNO N1 |
| Uniform, grooming or religious apparel waivers not authorized at the CO or O-6 CO/ISIC level in line with reference (c) | O-6 CO/ISIC send recommendation directly to CNO N1 |
| Immunizations per subparagraph 5d(3) | O-6 CO/ISIC send recommendation directly to CNO N1 |
| All other types of religious practices that require a waiver of Navy policy to support | O-6 CO/ISIC send recommendation directly to CNO N1 |

Table 1. Authorities and Religious Practices

Note 1: Pre-accession authority examples are listed below in subparagraph 5b.

5

BUPERSINST 1730.11A
16 Mar 2020

   b. <u>Accessions</u>

   (1) Navy accession sources, Navy Recruiting Command, Naval Service Training Command, USNA and U.S. Navy Bureau of Medicine and Surgery (BUMED), are the designated chains of command for pre-accession requests in line with Table 2.  Accession source headquarters are responsible for ensuring active and reserve enlisted and officer accessions are informed of uniform and grooming standards and policies, as well as procedures for seeking religious accommodations.  Accession source headquarters must document this opportunity in writing and ensure all accession requests for religious accommodation are adjudicated prior to entering service.  The following language should be used to document the applicant understanding of the Navy's religious accommodation policy:

> "I understand that Department of the Navy policy is to accommodate religious practices whenever possible, unless doing so would have an adverse impact on mission accomplishment, including military readiness, unit cohesion, good order, discipline or health and safety.
>
> I understand accommodation of my religious practices cannot be guaranteed at all times.  I understand that determination of military necessity rests entirely with my Navy chain of command, and that I will be expected to comply with the Navy's policy, practice or duty from which I am requesting accommodation unless and until approved by the designated authority.
>
> I do NOT desire to request support for specific religious practices at this time
>
> _____
> (Applicant Signature)
>
> I DO desire to request support for the following religious practice(s):
>
> _____
> (Type of Request)
>
> _____
> (Applicant Signature)
>
> Applicants requesting religious accommodation may not enlist or commission until they receive a final response in writing.  Accession commands must immediately process the request in line with BUPERSINST 1730.11A (Standards and Procedures Governing the Accommodation of Religious Practices).
>
> _____
> (Typed or Printed Name and Signature of Witnessing Recruiting Representative)"

(2)  Additionally, prospective accessions must be given the opportunity to route a religious accommodation request prior to departure for a Military Entrance Processing Station. Many pre-accession religious practices such as (but not limited to) religious observances and dietary practices do not need a request for waiver of policy and can be accommodated at the command level.  Certain requests for religious accommodation may be approved by local commanders as listed in Table 2, below. Per reference (a), exceptions to this table are not permitted without CNO N1 approval.

| Type of Religious Practice | Process | Notes |
|---|---|---|
| Religious observances | Route to RTC/OTCN CO for approval | RTC/OTCN CO send recommendation for disapproval directly to CNO N1 |
| Dietary practices | Route to RTC/OTCN CO for approval | RTC/OTCN CO send recommendation for disapproval directly to CNO N1 |
| Religious head covering during RTC/OTCN | RTC/OTCN CO may approve religious head covering during religious ceremonies/services only | If religious head covering during religious ceremonies/services only is not acceptable by applicant, then send to CNO N1 |
| Unshorn hair on men in line with subparagraph 5d(4)(b), which requires waiver of uniform regulation provisions in reference (c) | RTC/OTCN CO send recommendation directly to CNO N1 | |
| Any request for beards during RTC/OTCN | RTC/OTCN CO send recommendation directly to CNO N1 | |
| Uniform, grooming or religious apparel accommodation that do not require waiver of DON policy | Route to RTC/OTCN CO for approval | Disapproval recommendations must be routed to CNO N1 |
| Immunizations | RTC/OTCN CO may approve use of any available alternative vaccinations | If no alternative vaccines are available, then send recommendation directly to CNO N1 |
| All other requests that require a waiver of Navy policy | Route to CNO N1 | |

BUPERSINST 1730.11A
16 Mar 2020

Table 2.  Authorities and Religious Practices for Pre-Accession and Recruit Training

   c.  Timelines.  For waivers of policy requiring adjudication at the commander or O-6 CO/ISIC level, final review and written notification to the requestor will be completed no later than 7 days from the date the requestor submitted the request to his or her immediate commander.  Extensions for good cause may be granted by the Director, Military Personnel, Plans and Policy (OPNAV N13).  Examples of good cause for an extension include operational necessity or lack of immediate access to a judge advocate or chaplain.  All religious accommodation cases forwarded from an O-6 CO/ISIC or RTC/OTCN to CNO N1 for adjudication must be forwarded within 7 days from the date the requestor submitted the request to his/her immediate commander, and will be expeditiously adjudicated in line with references (a) and (b).  To ensure timely and consistent adjudication of all requests, active and reserve Sailors will not submit a request for a religious accommodation that would require a waiver of Navy policy if they are expected to execute permanent change of station orders within 90 days.  Written notification should be given to the requestor within 5 days upon any decision, modification, suspension or revocation of a waiver of policy.

   d.  Religious Practice Type

      (1)  Observances of Worship and Holy Days.  Worship practices, holy days and Sabbath or similar religious observance requests will be accommodated except by necessity, consistent with mission accomplishment, U.S. Navy Regulations, and Navy Military Personnel Manual (MILPERSMAN) article 1731-010.  These requests do not normally require a waiver of policy.

      (2)  Dietary Practices.  Commanders should support religious dietary observances to the fullest extent possible.  Commanders normally support religious dietary observances through a standard core menu that supports many religious dietary requirements or by issuing Meals Ready to Eat, Religious.  In certain circumstances, commanders may consider other alternative solutions.

      (3)  Immunizations.  The Navy requires immunizations for all Sailors, based on its compelling interest in mission accomplishment, including military readiness, unit cohesion, good order, discipline, health and safety.  Local commanders should make a reasonable effort to acquire alternative vaccinations, when available, that meet both religious needs of Sailors and the Navy's immunization requirements as determined by BUMED.  Refer to MILPERSMAN 1730-020 as needed.  Medical waivers of immunization requirements not associated with religious belief will continue to be adjudicated by the health care provider as addressed in reference (d).

      (4)  Uniform and Grooming.  Pursuant to subparagraph 5a above, to determine whether a religious accommodation might interfere with the accomplishment of the unit or individual mission(s), a commander should consider such factors as the safe and effective operation of weapons, work center equipment and machinery, as well as wear of protective clothing or equipment.  Commanders should also state in the endorsement or approval how the religious accommodation may need to be modified in operational, non-operational or training environments.

BUPERSINST 1730.11A
16 Mar 2020

(a) Head Coverings. As delineated in Table 1, religious accommodations for Sailors on all duty types to wear neat and conservative religious head coverings such as (but not limited to) a hijab, turban, kufi, kippah or yarmulke may be authorized at the O-6 CO/ISIC level based upon the operational environment and in line with reference (c). Except in the case of safety or protective headgear required by a Sailor's duties, position or assignment, Sailors granted a religious accommodation for head coverings are not required to wear military headgear in addition to their religious head covering if such military headgear would violate their sincerely held religious beliefs.

(b) Unshorn/Long Hair. As delineated in Table 1, waivers of Navy policy for male Sailors on all duty types to wear unshorn/long hair must be sent to CNO N1 for decision.

(c) Beards. As delineated in Table 1, waivers of Navy policy for Sailors on all duty types to wear a beard must be sent to CNO N1 for decision. Approved unshorn beards must be worn in a neat and conservative manner. When a Sailor is authorized to wear a beard of greater than 2 inches in length, the beard must be rolled, tied and/or otherwise groomed to achieve a length not to exceed 2 inches when measured from the bottom of the chin.

(5) Deoxyribonucleic Acid (DNA) Specimen Sampling. Waiver requests from participation in DNA specimen collection should be forwarded to CNO N1 for final adjudication. BUMED will be consulted prior to final adjudication.

(6) Other Religious Accommodation Requests. All other religious accommodation requests requiring a policy waiver not specified under this section will be routed to CNO N1 via OPNAV N13 for adjudication.

e. Routing. For those requests that require a waiver of policy:

(1) A requestor seeking a waiver of Navy policy must submit a request in writing through his or her commander using the template at enclosure (1). The requestor must state the waiver sought and may elaborate on the sincerely-held religious beliefs or circumstances motivating the request.

(2) Every requestor seeking religious accommodation requiring a waiver of Navy policy must interview with a Navy chaplain. The chaplain will assess whether the requestor's religious beliefs appear sincerely-held, and will forward an evaluation to the commander using the templates provided in enclosures (2) and (3).

(3) Commanders will take appropriate action on requests to stay within the timelines in subparagraph 5(c). Requests forwarded by a commander to the O-6 CO/ISIC or to CNO N1 must include enclosures (1) through (4). There are no additional requirements.

(4) A copy of all waivers of uniform or grooming policy authorized at the O-6 CO/ISIC level must be forwarded via e-mail to OPNAV N13 for record keeping purposes at

BUPERSINST 1730.11A
16 Mar 2020

ALTN_Navy_Religious_Accommodations@navy.mil.  Requests forwarded from the O-6
CO/ISIC level to CNO N1 for adjudication must also be sent to that email address.  Forwarding
waiver requests to OPNAV N13 via mail is highly discouraged and can potentially delay a
decision for a Sailor.

(5)  For commands that do not have regular Navy/Marine Corps Intranet email accounts
(e.g., overseas, sea duty or joint commands), email OPNAV N13 at
ALTN_Navy_Religious_Accommodations@navy.mil first before sending attachments.

(6)  If the request contains Personally Identifiable Information (PII), the request must be
labelled and encrypted appropriately.

(7)  A requestor who reports directly to another U.S. military service must route religious
accommodation requests to the authority specified in the policies of that military service.  Sailors
assigned to a Joint command will route requests to their respective Navy Element Commander
for approval or recommendation to CNO N1 as delineated in Table 1.  In all circumstances
Sailors will adhere to the provisions set forth in subparagraph 4a.

(8)  Questions from commands and requesters concerning religious accommodation
requests may be referred to ALTN_Navy_Religious_Accommodations@navy.mil.

f.   Appeals

(1)  Appeals of command-level adjudication will be forwarded to the commander's O-6
CO/ISIC for adjudication.  Appeals of O-6 CO/ISIC level adjudication will be forwarded to
CNO N1 for adjudication within 15 days from the date the requestor submits the appeal.
Appeals of CNO N1 adjudication will be forwarded to the Chief of Naval Operations (CNO) for
final adjudication, unless other direction is provided in reference (a) or (b).

(2)  When a religious accommodation request is denied, the requestor may renew the
request upon a change in physical, operational or geographical environment, or at any time in
which there is a change to pertinent policy.

g.   Approval Duration, Withdrawal and Suspension.  Religious accommodations are subject
to review, suspension or revocation, in whole or in part, any time there is a change in the
circumstances upon which the initial religious accommodation was based (e.g., new duty
assignment, temporary duty or other material change in circumstances).  However, an approved
religious accommodation remains in effect until the commander or future commander notifies
the Sailor or candidate in writing that a compelling government interest requires suspension or
revocation of the accommodation.  The written notification must include the nature of the
changed circumstances and specify the reason for the revocation and the length of the
suspension.

BUPERSINST 1730.11A
16 Mar 2020

(1) The authority to temporarily suspend a previously approved religious accommodation resides with the Sailor's CO, while the authority to permanently revoke a previously approved religious accommodation remains with CNO N1.  A commander may suspend or initiate revocation of an approved religious accommodation only upon a determination that a compelling government interest requires such suspension or revocation and that no less restrictive means of furthering that compelling government interest are available.  The decision to suspend or initiate revocation of an approved religious accommodation must be informed by the factors enumerated in this instruction.

(2) A commander may require immediate compliance with suspension of a religious accommodation only if necessary due to an imminent threat to health or safety.  In any case in which there is no imminent threat, the Sailor or candidate must be given five business days to submit an appeal using the process described in subparagraph 5f(1).  The religious accommodation will remain in effect until the appeal process is completed.  When necessary, a Sailor may be assigned to temporary additional duty orders to protect him or her from circumstances that are incompatible with the religious accommodation while the appeal is being adjudicated.

(3) When there is a change in military duties or requirements, a commander may suspend a previously approved religious accommodation if the suspension furthers a compelling government interest and is the least restrictive means available to further that interest.  For example, a Sailor with a grooming waiver authorizing him to wear a beard may be required to shave the beard to deploy to an area in which there is a high risk that the Sailor will have to don a gasmask.  When the conditions that required the suspension are no longer present, the Sailor may resume the religious practice per the original waiver.  There is no requirement for a Sailor to resubmit a request for a religious accommodation that has been suspended.

6.  Records Management

a.   Records created as a result of this instruction, regardless of format or media, must be maintained and dispositioned for the standard subject identification codes (SSIC) 1000 through 13000 series per the records disposition schedules located on the Department of the Navy/Assistant for Administration (DON/AA), Directives and Records Management Division (DRMD) portal page at https://portal.secnav.navy.mil/orgs/DUSNM/DONAA/DRM/Records-and-Information-Management/Approved%20Record%20Schedules/Forms/AllItems.aspx.

b.   For questions concerning the management of records related to this instruction or the records disposition schedules, please contact your local records manager or the DON/AA DRMD program office.

7.  Review and Effective Date.  Per OPNAVINST 5215.17A, OPNAV N13 will review this instruction annually on the anniversary of its issuance date to ensure applicability, currency and consistency with Federal, Department of Defense, SECNAV and Navy policy and statutory authority using OPNAV 5215/40 Review of Instruction.  This instruction will be in effect for 5 years unless revised or cancelled in the interim, and will be reissued by the 5-year anniversary

BUPERSINST 1730.11A
16 Mar 2020

date if it is still required, unless it meets one of the exceptions in OPNAVINST 5215.17A, paragraph 9.  Otherwise, if the instruction is no longer required, it will be processed for cancellation following the guidance in OPNAV Manual 5215.1 of May 2016.


JOHN B. NOWELL, JR
Deputy Chief of Naval Operations
(Manpower, Personnel, Training,
and Education)

Releasability and distribution:
This instruction is cleared for public release and is available electronically only via BUPERS/NAVPERSCOM Web site, https://www.public.navy.mil/bupers-npc/reference/Pages/default.aspx

BUPERSINST 1730.11A
16 Mar 2020

SAMPLE REQUEST FOR WAIVER OF POLICY TO ACCOMMODATE A RELIGIOUS
PRACTICE (TEMPLATE)

(Date)

From:  Rate or rank, as applicable, full name, branch and type of service as applicable
To:      Appropriate authority per Table 1 or Table 2 (i.e., O-6 CO/ISIC or CNO N1)
Via:     Appropriate authority per Table 1 or Table 2 (i.e., CO, O-6 CO/ISIC)

Subj:   REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

Ref:     (a) DoD Instruction 1300.17 of 10 February 2009
           (b) SECNAVINST 1730.8
           (c) BUPERSINST 1730.11
           (d) Other references as needed

Encl:   (1) Photograph or graphic (as needed to show the neat and conservative color, manner of
wear, etc.)
           (2) Optional enclosures (e.g., religious leader endorsement or research in applicable area)

1.   Pursuant to references (a) through (c), I hereby request religious accommodation from Navy
policy (use reference as needed) to ___(describe the specific practice(s)) _____ due to my
religious belief that _____(paraphrase religious basis of the request)__.

2.   My request is based on my religious belief that_____ (provide a detailed explanation
here as desired)_____ and reference enclosure (1) or (2) as needed/desired.

3.   (Required statement) I certify that I understand that any approved or partially approved
waiver may not be appropriate for future duty to which I may be assigned, including operational,
non-operational or training command(s), and may be suspended or withdrawn in accordance with
reference (c).

_____
(Signature)

Enclosure (1)

BUPERSINST 1730.11A
16 Mar 2020

## CHAPLAIN INTERVIEW CHECKLIST TEMPLATE

| Requestor: | | | | Interview Date: |
|---|---|---|---|---|
| Name: | | | | Chaplain Interviewer: |
| Phone: | | | | Phone: |
| Email: | | | | E-mail: |
| Command: | | | | Chaplain's Command: |
| Interview Preliminaries | | | | |
| Yes | No | N/A | | |
| | | | Chaplain reviewed policy and doctrine on religious accommodation and the policy for which the requestor is seeking accommodation. | |
| | | | Applicant was notified that the interview is not confidential and will be used to advise the command. | |
| | | | Chaplain explained to the applicant that confidential support can be received from another chaplain. | |
| | | | Applicant has been granted a waiver for this practice previously. | |
| | | | Applicant's Page 2 (NAVPERS 1070/602) reflects the belief cited in the application. | |
| Type of Waiver Requested | | | | |
| Yes | No | N/A | | |
| | | | Uniform standards | |
| | | | Grooming standards | |
| | | | Immunization requirements | |
| | | | DNA sampling | |
| | | | Other (Please describe): | |
| Interview | | | | |
| Yes | No | N/A | | |
| | | | Requestor's religious beliefs seemed honestly and sincerely held using one or more of the following factors: | |
| | | | 1.   Requestor was credible (consistently keeps tenets, practices, etc.). | |
| | | | 2.   Requestor's demeanor and pattern of conduct are consistent with the request. | |
| | | | 3.   Requestor participates in activities associated with the belief(s). | |
| | | | 4.   Other persons supporting the claim are credible. | |
| | | | 5.   Request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. | |
| | | | Alternate means of accommodating the practice were explored in the interview. | |
| Process Checklist | | | | |
| Yes | No | N/A | | |
| | | | Chaplain has prepared a memorandum documenting the interview. | |
| | | | Chaplain reviewed memorandum with applicant and provided a copy. | |
| | | | Chaplain submitted the memorandum and this document to the commanding officer via chain of command. | |
| | | | Chaplain referred applicant to command to process request. | |

Enclosure (2)

BUPERSINST 1730.11A
16 Mar 2020

<u>CHAPLAIN MEMORANDUM FOR THE RECORD (TEMPLATE)</u>

From: [Chaplain's rank and name], CHC, USN
To:       [Commanding Officer of requestor]

Subj:   REQUEST FOR A WAIVER OF POLICY TO ACCOMMODATE PRACTICE
           BASED ON RELIGIOUS BELIEF ICO [REQUESTOR'S RANK, NAME]

Ref:    (a) SECNAVINST 1730.8
           (b) SECNAVINST 1730.9

1.  (Requestor's rank and name) has submitted a request for accommodation of a religious practice per reference (a).  Per BUPERSINST 1730.11A, I interviewed the requestor on (date).  I explained that this interview would not be a confidential communication as defined by reference (b) and informed the requestor that referral for confidential chaplain support was available.

2.  Nature of the request.  (Provide a narrative summary of the request for religious accommodation and whether or not the requestor has previously had this or any other related request approved or denied)

3.  Basis.  (Identify the religious beliefs on which the accommodation request is based and provide a professional and objective opinion regarding the religious importance of the request to the member.  Include the requestor's religion as listed on NAVPERS 1070/602 (Page 2).

4.  Alternate Means.  (Indicate alternate means of meeting the request)

5.  Sincerity.  (Assess the sincerity of the requestor. The memorandum should focus on the sincerity of the member's personal religious beliefs, including the information provided during the interview.)

6.  My contact information is (telephone number and e-mail address).


[Signature]


Copy to:
(Rank and name of requestor)


Enclosure (3)

BUPERSINST 1730.11A
XX Mar 2020

<u>RELIGIOUS ACCOMMODATION APPROVAL OR ENDORSEMENT (TEMPLATE)</u>

(Date)

From:  Appropriate authority per Table 1 or Table 2
To:      Appropriate authority per Table 1 or Table 2
Via:     As applicable with appropriate authority per Table 1 or Table 2

Subj:  APPROVAL (or) APPROVAL/DISAPPROVAL RECOMMENDATION ICO (INSERT
          NAME HERE) RELIGIOUS ACCOMMODATION

Ref:    (a) DoD Instruction 1300.17
          (b) SECNAVINST 1730.8
          (c) BUPERSINST 1730.11A
          (d) Other references as needed including regional or operational policy

Encl:   (1) Sailor/accession request of DD MMM YY
          (2) Chaplain Memorandum and Interview Checklist
          (3) Other enclosures as needed (e.g., operational or regional policy)

1.  Per references (a) through (c)/(d), I am approving this request or I am forwarding this request
recommending approval/disapproval in full or in part during the following environments (as
applicable to the command):

    a.  Operational recommendation:

    b.  Non-operational recommendation:

    c.  Training environment recommendation:

2.  The following information was considered or is provided for consideration as applicable
(articulate the factual basis underlying any compelling government interest and why the denial or
partial denial is the least restrictive means available to protect the compelling government
interest over the individual request):

    a.  The importance of the military policy, practice or duty from which religious
accommodation is sought in terms of mission accomplishment, including:

        (1) Military readiness:

        (2) Unit cohesion:

        (3) Good order and discipline:

        (4) Health and safety:

Enclosure (4)

BUPERSINST 1730.11A
XX Mar 2020

   b.   The religious importance of the practice to the requestor.

   c.   The cumulative impact of repeated accommodations of religious practices of a similar nature.

   d.  Alternate means available to accommodate the practice in whole or in part.

3.  Other pertinent issues or information associated with this request.

4.  My point of contact (POC) for this matter is _____ (insert POC here) who can be reached at _____(insert e-mail and telephone number  here).

5.  This approval/recommendation will be emailed to OPNAV N131 for review/decision within the timelines in reference (c).  Otherwise, Commander should provide the timeline/waiver of timeline here as applicable.


                                        _____
                                        (Signature)

Copy to:
OPNAV N131
Operational Commander(s),
Requestor, etc.

Merz Declaration - Exhibit B

# MILPERSMAN 1730-020

## IMMUNIZATION EXEMPTIONS FOR RELIGIOUS BELIEFS

| Responsible Office | OPNAV (N131) | Phone: DSN COM | 664-5015 (703) 604-5015 |
|---|---|---|---|
| MyNavy Career Center | | Phone: Toll Free E-mail: MyNavy Portal: | 1-833-330-MNCC (6622) askmncc@navy.mil https://my.navy.mil/ |

_____

| References | (a) DoD Instruction 1300.17 of 10 February 2009 (b) BUPERSINST 1730.11A (c) BUMEDINST 6230.15B (d) SECNAVINST 1730.9A (e) SECNAVINST 1920.6D |
|---|---|

1. **Policy**.  The Navy requires immunizations for all Sailors, based on its compelling interest in the health and safety of the military workforce.  Pursuant to references (a) and (b), religious exemptions of immunization requirements will include the justification and endorsements in paragraphs 4 and 5 of this article prior to routing to the Chief of Naval Personnel (CHNAVPERS) for decision.  Non-religious medical waivers of immunization requirements will be adjudicated by the health care provider as addressed in reference (c).

2. **Authority**.  Authority to grant medical waivers of immunization requirements is vested at the Bureau of Medicine and Surgery (BUMED).  Authority to grant religious exemptions of immunization requirements is vested with CHNAVPERS.

3. **Application Procedure**.  Service members requesting religious exemption of immunization requirements will forward their requests to CHNAVPERS via their commanding officers (CO) or immediate superiors in command.  Submission guidance for commands is provided in reference (b).

4. **Contents of Service Member's Request**.  The request will include the following information:

    a.  Full name and grade,

    b.   Immunization(s) exemption requested and the reason why
the exemption is needed, and

    c.   The following signed NAVPERS 1070/613 Administrative
Remarks, using the following format:

<div style="border:1px solid black; padding:10px;">

"I request a waiver of the (state the type) immunization.  I hereby
state that my request is based upon (religious objection to
immunization or other reasons specifically described).  I acknowledge
having received the following counseling:

1.  Failure to obtain immunization poses additional risk to my health
upon exposure to disease.

2.  In the event of foreign travel, I may be detained during travel
across foreign borders due to international health regulations.

3.  If granted, a waiver may be revoked by my commanding officer if I
am at imminent risk of disease or due to international health
regulations.

4.  If my job duties change, I may need to route a new request.

5.  If I am at my permanent change of station while my waiver is in
effect, I may need to route a new request if my job duties change, my
geographic region exposes me to the aforementioned disease, or other
factors exist that could put me at imminent risk of disease.


                                Service Member's Signature

Witnessed:

</div>

5.   **Content of Commander's Endorsement**.   In line with reference
(b), COs must endorse every request for religious accommodation
through waiver of immunization requirements.  The content of the
endorsement must include:

    a.   An endorsement from a military chaplain in line with
reference (d),

    b.   A recommendation to approve or disapprove the request,

    c.   Relevant information concerning the applicable
operational or regional policies,

d.  Negative effect (if any) on mission accomplishment
(i.e., military readiness, unit cohesion, good order,
discipline, health, and safety),

e.  The number of Service members in the command that have
been granted a similar exemption for non-religious purposes, and

f.  When recommending denial of the request, a determination
that the denial furthers a compelling governmental interest
(such as those identified in subparagraph 5d above), and that
there is no less restrictive means of accommodating the request,
such as an available alternative vaccination that meets both the
religious need and the Navy's immunization requirements as
determined by BUMED.

6.  **Applicant Counseling**.  COs will ensure applicants are
counseled concerning the following, in line with subparagraph 4c
above:

a.  The additional risk to health on exposure to disease
against which the applicant will not be protected by a military
physician who informs Service member of diseases concerned, and
benefits and risks of vaccine;

b.  The possibility that the applicant may be detained
during travel across international borders due to international
health regulations; and

c.  The possibility that individuals granted such exemptions
may have their waivers revoked if they are at imminent risk of
disease (e.g., exposure to anthrax, measles, cholera, etc.) or
due to international health regulations.

7.  **Revocation of Waiver by CO**.  COs may, without prior
approval, revoke a Service member's authorized immunization
waiver in the event of imminent risk of disease due to exposure
or as a result of international health regulations incident to
foreign travel.  If a Service member's immunization waiver is
revoked, such action must be reported to CHNAVPERS and BUMED
Public Health and Safety Division (M44) by message as soon as
possible.

8.  **Administrative and Disciplinary Actions**

a.  In line with reference (a), Service members submitting
requests for religious accommodations will comply with the

policy, practice, or duty from which they are requesting accommodation, unless or until the request is approved.

b.  Service members whose waivers have been disapproved, or those who refuse to take immunizations without approved waivers, may be subject to administrative and or disciplinary actions, as deemed appropriate by COs, for violation of a lawful order.

c.  Actions include:

(1) Formal counseling and warning recorded on NAVPERS 1070/613,

(2) Nonjudicial punishment,

(3) Court-martial, or

(4) Processing for administrative separation.

d.  See MILPERSMAN 1910-120, 1910-142, 1910-164, and 1910-402 for guidance on enlisted separations.  See reference (d) for officer separations.