# Exhibit 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA**

BENJAMIN COKER, *et al.*,      )
                                    )
      Plaintiff,            )
                                    )
          v.              )       No. 3:21-cv-01211
                                    )
LLOYD AUSTIN, III, in his official   )
capacity as Secretary of Defense, *et al.*,  )
                                    )
      Defendants.      )
                                    )

## DECLARATION OF COLONEL ELIZABETH M. HERNANDEZ

I, Elizabeth M. Hernandez, hereby state and declare as follows:

1.      I am a Colonel in the United States Air Force currently assigned as the Chief of the Military Justice Law and Policy Division in the Military Justice and Discipline Directorate at Joint Base Andrews, Maryland.  I have been in this position since July 2021.  As a part of my duties, I am responsible for providing counsel on military justice matters to senior leaders, as well as guidance on military justice policy and processes to legal offices at every level of command.  The Division also represents the Air Force on the Joint Service Committee on Military Justice: an inter-agency, joint body dedicated to ensuring the Manual for Courts-Martial and Uniform Code of Military Justice constitute a comprehensive body of criminal law and procedure.

2.      I make this declaration in my official capacity as the Chief of the Military Justice Law and Policy Division and based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

3.      Department of the Air Force commanders approach every instance of a military member's refusal to obey a lawful order to receive the COVID-19 vaccination on a case-by-case basis.  This is the same as it would be for allegations of misconduct or issues in work performance.  In the case of COVID-19 vaccine refusals, the Secretary of the Air Force withheld authority to take action in order to ensure consistency and uniformity in disposition. Accordingly, before any administrative or disciplinary action can be taken based on a COVID-19 vaccine refusal, the case must be reviewed by a Colonel (O-6) with special court-martial convening authority, or higher.

4.      If the member has failed to obey a lawful order, disciplinary action may be appropriate. Each commander must look at all the facts and circumstances and evaluate each case individually to determine the appropriate disposition.  Generally, more minor misconduct should be addressed at the lowest possible level, as soon as possible, to ensure a service member's career is not negatively affected unnecessarily.  More serious misconduct is typically addressed by more serious disciplinary action.

5.      Potential dispositions for failing to obey a lawful order to receive the COVID-19 vaccination include adverse administrative actions, nonjudicial punishment, administrative demotions, administrative discharges, and courts-martial.  Each action follows its own timeline, specific to the needs of the Department of the Air Force, the member, and the commander.

6.      Administrative actions are non-punitive tools, intended to improve, correct, and instruct service members who violate established Department of Air Force standards.[1] These actions include, from least severe to most severe: Records of Individual Counseling, Letters of Counseling, Letters of Admonishment, and Letters of Reprimand.  Each of these actions are

---

[1] Air Force Instruction (AFI) 36-2907, *Adverse Administrative Actions*, dated May 22, 2020 (certified current January 15, 2021).

administered in a manner to protect the service member's due process rights.  These protections include an ability to consult with a free defense counsel, provide a response, and provide other relevant information to the decision authority.  If the administrative paperwork is filed in the service member's personnel record, the service member may appeal to the issuing authority for removal.  There is no available data on the average processing time for these actions, but normally, the process could be expected to take anywhere from two to three weeks.

7.      Nonjudicial punishment provides commanders with a means of maintaining good order and discipline.  It is intended to promote positive behavior changes in service members without subjecting the service member to a criminal (i.e., court-martial) conviction.  This type of action has significant due process protections and an appeal process.  As always, the service member has access to free defense counsel services to assist in responding to these actions.  For calendar year 2021, the average processing time for cases involving service members on Active Duty was 60 days.  The average processing time for cases involving Reserve service members was 173 days.

8.      Adverse administrative action (e.g., Letter of Reprimand), nonjudicial punishment, or court-martial convictions may be placed in an unfavorable information file (UIF).  Depending on the rank of the service member and the type of action, placing the document in the UIF may be mandatory in accordance with AFI 36-2907.

9.      An administrative demotion is a quality force management tool available to Department of the Air Force commanders to help ensure a quality enlisted force.  This process does not apply to commissioned officers.  Administrative demotions are intended to place service members at a rank commensurate with their skill level and ability; they are not intended to be punitive.  The process starts when the service member's immediate commander notifies the service member of

a recommendation for demotion.  The service member has an opportunity to access free defense services and respond to the demotion recommendation before it goes to the demotion authority (a commander senior to the initiating commander) for decision.  The service member can appeal the demotion authority's decision to the commander senior to the demotion authority.  There is no available data on the average processing time for these actions.

10.    Administrative discharges are appropriate when a service member does not show potential for further service.  In the case of a refusal to comply with the COVID-19 vaccination mandate, absent an exemption, members will be subject to initiation of administrative discharge proceedings.  The characterization of an administrative discharge is dependent upon many factors, to include duty performance, prior misconduct, and basis of the discharge.  Although there are different processes for enlisted and officer members, the service characterizations and bases for discharge are generally the same.  The process starts when the service member's immediate commander notifies the service member of a recommendation for administrative discharge.  The service member has an opportunity to access free defense services and respond before the discharge recommendation goes to the separation authority, often the senior commander in the unit (O-6/Colonel) for decision.  Depending on the characterization of the service separation, the decision may move to a higher level review (General Officer). Additionally, depending on the service member's time in service, they may be entitled to a formal administrative hearing before a decision is made regarding their discharge from the service.  For calendar year 2021, the average discharge processing time for cases involving Active Duty enlisted members not entitled to a board was 38 days. The average discharge processing time for cases involving Reserve enlisted members not entitled to a board is longer than that of Active Duty cases. For both Active Duty and Reserve enlisted members entitled to a

board, the average discharge processing time is longer than that of non-board cases. Finally, the average discharge processing time for all forms of officer discharges is longer than that of enlisted discharge cases.

11.     A court-martial is a criminal trial for military members and is reserved for serious criminal offenses. There are three levels of courts-martial – general, special, and summary. If a service member were to face a court-martial for failing to obey a lawful order, the service member would be able to challenge the lawfulness of the order during the proceedings.

12.     Possible sentences in a court-martial include confinement, reduction in grade (enlisted only), and punitive discharges. For enlisted members, punitive discharges include bad conduct or dishonorable discharges. For commissioned officers, the punitive discharge available is a dismissal (the equivalent of a dishonorable discharge). Punitive discharges are adjudged in cases where a service member has committed serious misconduct.

13.     A service member who receives a punitive discharge and/or at least two years of confinement automatically receives appellate review of the conviction and/or sentence by the Air Force Court of Criminal Appeals. If the service member does not receive a punitive discharge and/or at least two years of confinement, the service member receives appellate review of the conviction and/or sentence by the Office of The Judge Advocate General of the Air Force. For calendar year 2021, the average processing time from offense to trial for a special court-martial was 270 days. For calendar year 2021, the average processing time from offense to trial for a general court-martial was 526 days.

14.     Air Force Review Boards Agency (AFRBA) is responsible for the adjudication of military personnel matters through a number of statutory and secretarial boards. There are two subsets of the AFRBA. First, the Secretary of the Air Force Personnel Council (SAFPC) acts

for, recommends to, and announces decisions on behalf of the Secretary of the Air Force for a variety of military personnel issues.  SAFPC is comprised of five boards, one of which is the Air Force Discharge Review Board (AFDRB), which has discretionary authority to review administrative discharges.  A service member who received an administrative discharge or a bad conduct discharge from a special court-martial may appeal the characterization of the discharge to the AFDRB.  The AFDRB estimates a records review decision will take six to 12 months to process.

15.     A second subset of the AFRBA includes the Air Force Board for Correction of Military Records (AFBCMR), which is a statutory board of civilians considering applications for correction of military records submitted by Air Force members, former Air Force members, or persons with a proper interest in the correction of a person's military record.  The AFBCMR is the highest level of administrative review within the Department of the Air Force.  Its decisions are final and binding on all Department of Air Force officials and other government agencies. The AFBCMR determines whether the service member has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief.  Prior to applying to the AFBCMR, a service member must exhaust all other available administrative remedies.  This means any service member seeking relief from an administrative discharge or a bad conduct discharge from a special court-martial first must have applied to the AFDRB and been denied relief.  Service members with punitive discharges from a general court-martial may apply directly to the AFBCMR.  Administrative applications take about three months to complete.  Cases involving formal AFBCMR consideration take an average of 12 months.

16.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct. Executed this 13th day of January 2022.

HERNANDEZ.ELIZA
BETH.MARIE.12796
06660

Digitally signed by
HERNANDEZ.ELIZABETH.MARI
E.1279606660
Date: 2022.01.13 14:15:05 -05'00'

ELIZABETH M. HERNANDEZ, Colonel, USAF
Chief, Military Justice Law and Policy Division

Attachment:
AFI 36-2907, *Adverse Administrative Actions*, dated May 22, 2020 (certified current
January 15, 2021)

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**



*AIR FORCE INSTRUCTION 36-2907*

*22 MAY 2020*
*Incorporating Change 1, 15 January 2021*
Certified Current 15 January 2021

*Personnel*

*ADVERSE ADMINISTRATIVE*
*ACTIONS*

## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

**ACCESSIBILITY:** Publications and forms are available for downloading and ordering on the e-publishing website at **www.e-Publishing.af.mil**.

**RELEASABILITY:** There are no releasability restrictions on this publication.

OPR: AF/A1P

Supersedes: AFI36-2907, 26 November 2014

Certified by: SAF/MR
(Mr. John A. Fedrigo)
Pages: 51

This publication implements Air Force Policy Directive (AFPD) 36-29, *Military Standards,* establishes instruction of the management of Unfavorable Information File (UIF) program, Control Rosters, Letters of Reprimand (LOR), Letters of Admonishment (LOA), and Letters of Counseling (LOC). It has been developed in collaboration between the Deputy Chief of Staff for Manpower, Personnel and Services (AF/A1), the Chief of the Air Force Reserve (AF/RE) and the Director of the Air National Guard (NGB/CF). This instruction applies to all Regular Air Force (RegAF) military members, military members of Air Force Reserve (AFR), and Air National Guard (ANG) on Title 10 orders. ANG personnel on Title 32 status must utilize the following guidance unless otherwise directed by state law. This instruction requires the collection and or maintenance of information protected by the Privacy Act of 1974 authorized by Title 10 United States Code (USC), Section 9013, *Secretary of the Air Force*. The applicable System of Records Notices F036 AFPC L, *Unfavorable Information Files*, and F036 AF PC C, *Military Personnel Records System* are available at: **http://dpclo.defense.gov/Privacy/SORNs.aspx**. Ensure all records generated as a result of processes prescribed in this publication adhere to Air Force Instruction 33-322, *Records Management and Information Governance Program*, and are disposed in accordance with the Air Force Records Disposition Schedule, which is located in the Air Force Records Information Management System. Refer recommended changes and questions about this publication to the Office of Primary Responsibility using Air Force (AF) Form 847, *Recommendation for Change of Publication*; route AF Forms 847 from the field through the appropriate functional chain of command. This publication may be supplemented at any level, but all supplements that directly implement this publication must be routed to the office of responsibility for coordination. All

Major Command (MAJCOM)-level supplements must be approved by the Human Resource Management Strategic Board prior to certification and approval. The authorities to waive wing/unit level requirements in this publication are identified with a Tier ("T-0, T-1, T-2, T-3") number following the compliance statement. See Air Force Instruction (AFI) 33-360, *Publications and Forms Management*, for a description of the authorities associated with the Tier numbers. Submit requests for waivers through the chain of command to the appropriate Tier waiver approval authority, or alternately, to the requestor's commander for non-tiered compliance items. The use of the name or mark of any specific manufacturer, commercial product, commodity, or service in this publication does not imply endorsement by the Air Force.

## SUMMARY OF CHANGES

This interim change revises AFI 36-2907 by adding an additional **Chapter 5** that discusses how to report demographic information on adverse administrative actions against service members. A margin bar (|) indicates newly revised material.

**Chapter 1—OVERVIEW AND ROLES AND RESPONSIBILITIES**                          **4**

    1.1.    Overview.................................................................................................    4

    1.2.    Roles and Responsibilities. ....................................................................    4

**Chapter 2—ADMINISTRATIVE COUNSELING, ADMONISHMENT, AND
            REPRIMAND**                                                                          **7**

    2.1.    Use of Administrative Counselings, Admonishments, and Reprimands. ...............    7

    2.2.    Standard of Proof. ..................................................................................    7

    2.3.    Verbal Counseling, Records of Individual Counseling and Letters of Counseling
            (LOC)....................................................................................................    7

    2.4.    Administering Records of Individual Counseling, Letters of Counseling, Letters
            of Admonishment, or Letters of Reprimand. ............................................    8

**Chapter 3—UNFAVORABLE INFORMATION FILE (UIF)**                               **12**

    3.1.    UIF Authorities to Establish, Destroy or Remove. ...................................    12

    3.2.    Initiating a UIF......................................................................................    12

    3.3.    Processing Actions in Establishing or Maintaining a UIF:.........................    14

    3.4.    Removal of UIFs or their Documents. ......................................................    15

    3.5.    Transferring and Disposing of UIFs. ........................................................    17

    3.6.    Updating UIF Documents. .......................................................................    18

    3.7.    Accessing UIFs. .....................................................................................    18

|  |  |  |  |
|---|---|---|---|
|  | 3.8. | Reviewing UIFs: ................................................................ | 19 |
|  | 3.9. | Commander's Management Roster. ...................................... | 19 |
|  | 3.10. | Making Recommendations to the Commander.......................... | 20 |
|  | 3.11. | UIFs on General Officers and General Officer Selects................. | 20 |
| Table | 3.1. | Adverse Administrative Actions Manager for AFR and ANG. ......... | 20 |
| Table | 3.2. | Unfavorable Information File Establishment and Military Personnel Data System Update Procedures (Officer and Enlisted). .................. | 21 |
| Table | 3.3. | Annotating and Disposing of UIF Summary (AF Form 1137). ........ | 23 |

**Chapter 4—CONTROL ROSTER**                                                                              **31**

|  |  |  |  |
|---|---|---|---|
|  | 4.1. | Who Uses the Control Roster. .............................................. | 31 |
|  | 4.2. | Use of a Control Roster. ..................................................... | 31 |
|  | 4.3. | Initiating and Maintaining the Control Roster. .......................... | 32 |
|  | 4.4. | Who Can Add or Remove Individuals to or from the Control Roster. .... | 33 |

**Chapter 5—(Added) *REPORTING DEMOGRAPHIC INFORMATION ON ADVERSE ADMINISTRATIVEACTIONS AGAINST SERVICE MEMBERS**                              **34**

|  |  |  |  |
|---|---|---|---|
|  | 5.1. | Issuers of Administrative Action. ........................................... | 34 |
|  | 5.2. | Commander's Responsibilities. ............................................. | 34 |
|  | 5.3. | Office of the Servicing Staff Judge Advocate (SJA) Responsibilities..... | 35 |
| Table | 5.1. | AF/JA Demographic Tracker Example. .................................... | 35 |

**Attachment 1—GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**          **37**

**Attachment 2—ADMINISTRATIVE ACTION PROGRAM SELF-INSPECTION CHECKLIST**                                                                                                         **41**

**Attachment 3—UIF LEGAL REVIEW CHECKLIST**                                                       **43**

**Attachment 4—SAMPLE GUIDANCE FOR RELEASE OF REPORT MEMORANDUM**         **48**

**Attachment 5—SAMPLE ADMINISTRATIVE LETTER**                                                **49**

## Chapter 1

## OVERVIEW AND ROLES AND RESPONSIBILITIES

**1.1. Overview.** Adverse administrative actions are intended to improve, correct, and instruct subordinates who violate established Air Force standards whether on or off duty.  Misconduct generally should be addressed at the lowest possible level, as soon as possible, to ensure an Airman's career is not negatively affected unnecessarily.  The decision to utilize these quality force management tools should be based primarily on two factors:  the nature of the incident, and the previous disciplinary record of the Airman.  In deciding what type of action to take, consider the seriousness of the Airman's departure from established standards.    Additionally, adverse administrative action should be used as part of a progressive discipline process; however, there is no requirement to issue a lower level action to address an Airman's first instance of misconduct.  Some misconduct warrants a more severe form of action or action from higher in the chain of command.

1.1.1. Administrative counseling, admonishment, and reprimand are quality force management tools available to supervisors, superiors, and commanders.  These tools are corrective in nature, not punitive.

1.1.2. The UIF is an official record of unfavorable information about an individual.  It documents administrative, judicial, and nonjudicial actions.

1.1.3. The Control Roster is a rehabilitative tool commanders may use to establish a 6-month observation period.

1.1.4. Article 15 of the Uniform Code of Military Justice is nonjudicial punishment that allows commanders to administratively discipline Airmen without a court-martial.

1.1.5. A civilian director filling a position equivalent to that of a commander has the same authorities regarding UIFs and Control Rosters as a commander on G-Series orders.  (See AFI 51-509, *Appointment to and Assumption of Command,* **Attachment 2**)

1.1.6. Raters should consider making comments on performance reports when the ratee receives a Letter of Counseling, Admonishment, or Reprimand.  See AFI 36-2406, *Officer and Enlisted Evaluation Systems*, for additional guidance regarding appropriate performance report comments.

1.1.7. Written administrative counselings, admonishments, and reprimands are subject to the rules of access, protection, and disclosure outlined in The Privacy Act of 1974.  The same rules apply to copies kept by supervisors and commanders and those filed in an individual's UIF or the unit's Personnel Information File (PIF) on the particular member.

**1.2. Roles and Responsibilities.**

1.2.1. Air Force Deputy Chief of Staff, Manpower, Personnel and Services (AF/A1).  Establishes personnel guidance in collaboration with AF/RE and NGB/CF, develops Air Force Instructions and submits to SAF/MR for coordination and concurrence prior to AF/A1 publication.  **(T-1).**

1.2.2. Air Force Directorate of Military Force Management Policy (AF/A1P). Provides oversight for Adverse Administrative Actions addressed in this instruction and collaborates with the ANG and AFR on all policy changes. **(T-1).**

1.2.3. Air Force Personnel Center (AFPC) and Air Reserve Personnel Center (ARPC) Promotions, Reenlistments, and Assignment Offices will monitor UIF, Control Roster, and Code 2 updates and reconcile Military Personnel Data System (MilPDS) mismatches, as necessary. **(T-1).**

1.2.4. Headquarters Individual Reservist Readiness & Integration Organization (HQ RIO) Promotions, Reenlistments, and Assignments Offices will monitor UIF, Control Roster, and Code 2 updates, complete required Promotion Eligibility Status and Reenlistment Eligibility code updates, and reconcile MilPDS mismatches, as necessary. **(T-1)**

1.2.5. The Military Personnel Flight (MPF) will:

1.2.5.1. Manage adverse administrative actions for units without a Commander's Support Staff (CSS). **(T-1).**

1.2.5.2. Monitor all transaction register (TR) remarks associated with adverse actions and take appropriate actions. **(T-2).**

1.2.5.3. Maintain a copy of all appointment letters for current unit Adverse Administrative Actions Managers. **(T-2).**

1.2.5.4. Consult **Table 3.1** to identify the appropriate Adverse Administrative Actions Manager for members of the AFR and ANG. **(T-2).**

1.2.6. The Unit Commander will:

1.2.6.1. Confer with the base legal office or Staff Judge Advocate to determine appropriate actions. **(T-2).**

1.2.6.2. Ensure Airmen are informed of the right to consult with the servicing Area Defense Counsel. **(T-1).**

1.2.6.3. Unless granting an extension, provide members three duty days to submit rebuttal documents in response to adverse administrative actions. Commanders will afford all ARC members not in an active duty status 45 calendar days to submit rebuttal documents. **(T-1)**.

1.2.6.4. Review rebuttal responses for LOCs, LOAs and LORs, if submitted, and make final decisions. **(T-2).**

1.2.6.5. If making the determination to place the action in a UIF, complete the AF Form 1058, *Unfavorable Information File Actions,* and have the Airman acknowledge receipt and understanding of the action(s) being taken. **(T-2).**

1.2.6.6. Review the Force Support Squadron (FSS) audit and self-inspection checklist in **Attachment 2**. **(T-3).**

1.2.6.7. Appoint an Adverse Administrative Actions Manager in writing and forward the letter to the appropriate MPF within 30 calendar days of taking command. **(T-2).**

1.2.6.8.  Review all UIFs under their authority within 90 days for their permanent assumption or appointment to command.  **(T-2)**

1.2.7.  The Commander's Support Staff (CSS) will:

1.2.7.1.  Manage the unit adverse administrative action program. **(T-1)**.

1.2.7.2.  Update UIF Codes 1, 2, and 3. **(T-1)**.

1.2.7.3.  Utilize the Self-Inspection Checklist (**Attachment 2**) to manage the program. **(T-1)**.

1.2.7.4.  Conduct a semi-annual audit to purge expired action(s) and destroy files upon expiration. **(T-1)**.

1.2.7.5.  Review source documents such as LORs and Article 15s prior to updating UIF and Control Roster codes, maintain paper or electronic UIF case files and document entries. **(T-1)**.

1.2.7.6.  Maintain unit PIF, as a minimum, for officers who received a LOA or LOC which are not filed in an officer's UIF. **(T-2)**.

1.2.7.7.  Process unit administrative actions (for example, Records of Individual Counseling, LOCs, LOAs, LORs, or Control Roster actions). **(T-1).**

1.2.8.  Adverse Administrative Actions Managers comprise both Base-level Adverse Administrative Actions Manager(s) and Unit-level Adverse Administrative Actions Manager(s).

1.2.8.1.  The Base-level Adverse Administrative Actions Manager(s) will:

1.2.8.1.1.  Audit UIFs at least twice a year by comparing data in MilPDS to UIFs on file. **(T-2)**.

1.2.8.1.2.  Sign the audit list or self-inspection checklist (**Attachment 2**) and file it in general correspondence. **(T-2)**.

1.2.8.1.3.  Conduct unit training at least annually, within 60 days of notification of appointment of a new unit Adverse Administrative Actions monitor, upon request from a unit commander, or when needed. **(T-3)**.

1.2.8.1.4.  Coordinate with the base legal office to ensure UIFs receive an annual legal review. **(T-2)**.

1.2.8.2.  Unit-level Adverse Administrative Actions Manager(s) will:

1.2.8.2.1.  Audit UIFs at least twice a year.  Compare data in MilPDS to UIFs on file. **(T-2)**.

1.2.8.2.2.  Sign the audit list or self-inspection checklist (**Attachment 2**) and file it in general correspondence. **(T-2)**.

1.2.9.  Installation Legal Office will:

1.2.9.1.  Conduct annual review of UIFs.  **(T-2)**.

1.2.9.2.  Provide a legal review when an UIF is established and when documents are added. **(T-2)**.  The legal review does not need to be in writing.

## Chapter 2

## ADMINISTRATIVE COUNSELING, ADMONISHMENT, AND REPRIMAND

**2.1.  Use of Administrative Counselings, Admonishments, and Reprimands.**  General officers, commanders, first sergeants, supervisors, and other individuals in the member's administrative or operational chain of command can issue administrative actions.   This includes issuing administrative counseling, admonishment, and reprimands to ARC Airmen who commit an offense while in civilian status.

**2.2.  Standard of Proof.** The Standard of Proof for adverse administrative actions is the "preponderance of the evidence."  This standard will be used when evaluating the evidence and every element of the alleged offenses.  **(T-1).**

2.2.1.  A preponderance of the evidence exists when it is more likely than not that events have occurred as alleged.  Preponderance of the evidence is not determined by the number of witnesses or exhibits, but by all the evidence and evaluating factors such as a witness' behavior, opportunity for knowledge, information possessed, ability to recall, as well as related events and relationship to the matter being considered.

2.2.2.  Consider whether such proof is available before initiating the administrative action. If such proof is lacking, administrative action may be determined legally insufficient and, as a result, could be set aside.  There is no requirement to prove any allegation beyond a reasonable doubt.

**2.3.  Verbal Counseling, Records of Individual Counseling and Letters of Counseling (LOC).** Commanders, first sergeants, supervisors, and other individuals in the member's administrative or operational chain of command will assist Airmen in developing skills, attitudes, and behaviors that are consistent with Air Force standards.  Members of the administrative or operational chain of command will routinely counsel Airmen either verbally or in writing. **(T-3).**

2.3.1.  Verbal Counseling.  A verbal counseling is the lowest level corrective tool.  It is not required to formally record this type of counseling unless the issuer finds the Airman failed to follow his or her direction.

2.3.2.  Record of Individual Counseling (RIC).  The AF Form 174, *Record of Individual Counseling*, is used either to record a verbal counseling session or as written counseling.  It is used to document a record of positive or negative counseling and is useful when completing performance evaluations.  It is the least severe form of written administrative actions.

2.3.3.  Letter of Counseling (LOC).  Administrative censure for violation of standards.  The intended outcome of an LOC is to help Airmen use good judgment, assume responsibility, understand and maintain standards, and face and solve problems.  Generally, this is a form of corrective action appropriate for correcting habits or shortcomings not necessarily criminal or illegal, but which can ultimately affect job performance, work center morale, and discipline.

2.3.4.  Letter of Admonishment (LOA).  Administrative censure for violation of standards which is more severe than a RIC and LOC.  It could be used to document a first offense or address behaviors not corrected through counseling.  Do not use it when a reprimand is more appropriate. For officers, if not filed in the UIF, an LOA must be filed in the individual's PIF. **(T-2).**

2.3.5.  Letter of Reprimand (LOR). Administrative censure for violation of standards which is more severe than a RIC, LOC, and LOA and indicates a stronger degree of official censure.  It may also be issued when other, less severe methods have failed to correct behavior.

2.3.5.1. For officers only:  Only supervisors and members of the officer's current administrative or operational chain of command may issue an LOR to an officer.  If the person who issues the LOR is not the officer's unit commander, the person who issued the reprimand must send it to the administrative unit commander.  **(T-1)**.  The administrative unit commander acknowledges and endorses the AF Form 1058, establishing the UIF or, if the member has an existing UIF, adds the document to the member's UIF.  **(T-1)**.  Include the member's written acknowledgment and any documents submitted by the member in response to the administrative action taken.  **(T-2)**.

2.3.5.2. The AF Form 1058 does not need to be referred to the officer for a response because LORs for officers are mandatory UIF filings.  The AF Form 1058 is used only to obtain the commander's acknowledgment of the action (for LOR administered by personnel other than the commander) and to refer the LOR for file in the UIF.

**2.4. Administering Records of Individual Counseling, Letters of Counseling, Letters of Admonishment, or Letters of Reprimand.**

2.4.1. For enlisted Airmen:  Issuing authorities, especially first-time supervisors, are encouraged to seek assistance from the supervisory chain, senior enlisted leader, first sergeant, and/or legal office prior to administering RICs, LOCs, LOAs, or LORs to the member.

2.4.2. Document a counseling, admonishment, or reprimand in writing.  Record all written actions on bond paper or letterhead and state **(T-1)**:

2.4.2.1. The reasons for the action, including what the member did or failed to do, citing specific incidents and their dates. **(T-3).** While citation to a specific Uniform Code of Military Justice or Air Force Instruction violation provides clarity, it is not required.

2.4.2.2. Identify expected improvements to member, if appropriate.

2.4.2.3. Inform member that further deviation may result in more severe action. **(T-3).**

2.4.2.4. RegAF, AGR, ARC Statutory Tour members, and ANG members in Title 10 active duty status will be allocated 3 duty days (current date plus 3 duty days) to acknowledge the intended actions and provide pertinent information before the issuing authority makes the final decision.  ARC members not in an active duty status, who depart the duty area prior to the 3 duty days allowed for acknowledging intended actions, have 45 calendar days from the date of receipt to acknowledge the intended actions and provide pertinent information before the commander makes the final decision.  In calculating the time to respond, the date of receipt is not counted, and if the individual mails their acknowledgment, the date of the postmark on the envelope will serve as the date of acknowledgment.  The individual is presumed to be in receipt of official correspondence if it is delivered by certified mail to the individual's address or best available address. See **Attachment 5** for the recommended format and required statements. **(T-2)**.

2.4.2.5. The member's written response will become part of the record. **(T-1)**.

2.4.2.6.  LOCs, LOAs and LORs will include and list as attachments:  relevant statements, portions of investigations, and reports, and other documents that serve, in part or in whole, as the basis for the letter.  Redact Privacy Act material and Personally Identifiable Information and mark, "For Official Use Only."  **(T-1)**.

2.4.2.6.1. Documents released from investigations, reports, etc., should be accompanied by a cover memorandum indicating that the documents are "For Official Use Only" and specify any handling requirements (see **Attachment 4** for a sample memorandum).  The issuer of a LOC, LOA or LOR is not required to create statements or other documentary evidence that does not exist otherwise to support the basis of an adverse administrative action.

2.4.2.6.2.  Documents should not be released to the member without authorization from the issuing authority.  Release approval should be obtained before the letter is issued.  When impractical to obtain release before the letter is issued, obtain such approval as soon as possible after service of the letter on the member but do not release the documents until approval is received.

2.4.2.7.  Individual counseling sessions documented on AF Form 174 do not require the issuer to provide the member written statements or other documentary evidence.  However, the issuing authority may include such documents, if relevant.

2.4.3.  The LOC, LOA, or LOR issuing authority, after considering any comments submitted by the individual, should inform the member within 3 duty days of their decision as to the final disposition of the action.  For ARC members not in an active duty status, the issuing authority has 45 calendar days from the date of personal delivery or date of receipt of the certified letter to reply to the member (see **Attachment 5** for a sample administrative letter).  **(T-2)**.

2.4.4.  Contents of Record.  The record of the action consists of the finalized RIC, LOC, LOA or LOR and written response thereto submitted by the member and/or the member's defense counsel.  Additional materials submitted by the member in mitigation, extenuation, or defense are not part of the record.  Evidence and any other written materials considered as a basis for imposing the administrative letter are not part of the record.  **(T-1).**

2.4.5.  Actions After Administering a RIC, LOC, LOA or LOR.

2.4.5.1.  The RIC, LOC, LOA, LOR issuing authority may send the finalized record to the member's commander or superiors for information, action, or for their approval to file in the member's UIF or PIF.  When forwarding the action to the member's commander, include the member's written acknowledgment and any documents submitted by the member; however, as provided in **paragraph 2.4.4**, only the original action and the member's and/or member's defense counsel's written response will become part of the record. **(T-1)**. For officers, LORs must be filed in the UIF, and any LOCs or LOAs not filed in the UIF, must be filed in the officer's PIF. **(T-2).**

2.4.5.2.  The issuing authorities for LOCs, LOAs, or LORs for a general officer or general officer select will forward the original document and attachments to Air Force General Officer Management (AF/A1LG), AFR Senior Leader Management (AF/REG) or the National Guard Bureau Senior Leader Management Office (NGB-SL) for distribution to the member's commander.  **(T-1).**

2.4.5.3. See AFI 90-301, *Inspector General Complaints Resolution*, for processing requirements associated with command actions taken against officers.

2.4.6. Rescinding RICs, LOCs, LOAs or LORs documents contained in a PIF or a UIF. The individuals listed in **paragraphs 2.1** and **4.4.1** through **4.4.6** of this instruction, if equal to or senior in grade to the initial imposing authority, may rescind RICs, LOCs, LOAs or LORs upon his or her own initiative or upon a request from the member if the member is within their command. For example, if an E-7 issues a LOR to a subordinate E-3, the E-3 petitions the squadron commander to rescind the LOR.

2.4.6.1. These individuals may rescind RICs, LOCs, LOAs or LORs only in the following circumstances:

2.4.6.1.1. In the rare situation in which new evidence shows, by a preponderance of the evidence, that the member did not commit the act underlying the original administrative action;

2.4.6.1.2. If the issuing authority issued the administrative action in a way that violated the member's due process rights; or

2.4.6.1.3. If the appropriate authority determines more or less severe action is warranted.

2.4.6.2. RICs, LOCs, LOAs or LORs contained in UIFs.

2.4.6.2.1. For enlisted, the member's current unit commander or individuals listed in **paragraphs 2.1** and **4.4.1** through **4.4.6** in the current chain of command and equal or senior in grade to the initial imposing authority, may rescind RICs, LOCs, LOAs or LORs in the member's UIFs.

2.4.6.2.2. For officers, the member's current wing commander, or individuals listed in **paragraphs 2.1** and **4.4.1** through **4.4.6** in the current chain of command and equal or senior in grade to the initial imposing authority, may rescind RICs, LOCs, LOAs or LORs contained in the member's UIFs.

2.4.6.3. RICs, LOCs, LOAs or LORs contained in PIFs.

2.4.6.3.1. The individuals listed in **paragraphs 2.1** and **4.4.1** through **4.4.6** and of this Instruction, if in the current chain of command and equal to or senior in grade to the initial imposing authority, may rescind RICs, LOCs, LOAs or LORs contained in the member's PIF. Commanders at a higher level in the current chain of command (or civilian equivalent) may also rescind these administrative actions. In accordance with AFI 90-301, commanders or civilian equivalents must report rescission of such documents to the Secretary of the Air Force, Office of the Inspector General, Complaints Resolution Directorate (SAF/IGQ) or to the Secretary of the Air Force, Office of the Inspector General, Senior Officials Directorate (SAF/IGS), as appropriate.

2.4.6.3.2. Rescinding a RIC, LOC, LOA or LOR removes the rescinded action from the UIF or PIF. However, it does not automatically remove it from historical documents or actions collaterally impacted by the rescinded document, such as a referral Officer or Enlisted Performance Report or promotion withhold. Airmen seeking relief from the collateral consequences of a later-rescinded administrative

action must apply to the appropriate forum, to include, for example, the Air Force Board for Corrections of Military Records.

2.4.6.3.3.  For both officers and enlisted members, if previously reported, commanders or civilian equivalents must report rescission of such documents to SAF/IGQ or SAF/IGS.  **(T-1).** For ANG only:  if a member in Title 10 status receives an adverse administrative action while on Title 10 orders from a Title 10 superior, and then returns to Title 32 status, the member's Title 32 superior with authority to rescind any adverse action may not do so without coordinating the action with the imposing Title 10 commander and sending the proper rescission to the 201st Mission Support Squadron. **(T-1).**

2.4.6.4.  RICs, LOCs, LOAs or LORs no longer contained in a PIF or UIF.  Air Force records contained in other Air Force records systems, not a unit PIF or UIF (for example, senior officer UIFs), may not be rescinded by a commander or civilian director.  After the disposition date of the record (in either a PIF or UIF) has passed, members may apply to the Air Force Board for Corrections of Military Records to have their records of RICs, LOCs, LOAs, or LORs removed from other Air Force records systems.

## Chapter 3

## UNFAVORABLE INFORMATION FILE (UIF)

**3.1.  UIF Authorities to Establish, Destroy or Remove.**  UIFs may be established, destroyed or removed by the following individuals:

3.1.1.  Commanders and equivalent civilian directors at all levels.  Commanders must be on G-series orders and senior to the member.  **(T-1).**

3.1.2.  The commander, deputy commander, staff director and directors at MAJCOM or MAJCOM commander directed designee, Field Operating Agencies (FOAs), and Direct Reporting Units (DRUs) and The Adjutant General (TAG), Commanding General (CG) or directed designee at the applicable State, District, or Territory Headquarters for Title 32 members.

3.1.3.  Chief of Staff, Vice Chief of Staff, Assistant Vice Chief of Staff, Deputy Chiefs of Staff, Assistant Chiefs of Staff, other heads, and Directors (military or civilian) of Deputy Chiefs of Staff or other staff agencies.

3.1.4.  Civilian leaders and military officers in positions comparable to those listed in **paragraph 3.1.3** within the Office of the SAF, Office of the Joint Chiefs of Staff, and Office of the Secretary of Defense.

3.1.5.  The senior Air Force officer assigned to a joint command.

3.1.6.  The HQ RIO Detachment Commanders for Civil Air Patrol Reserve Assistance Program and the Admissions Liaison Officer Program.

3.1.7.  When a commander in a joint command, assigned to a different service, imposes nonjudicial punishment on an Air Force enlisted member, the senior Air Force officer or commander must decide whether to establish an UIF.  (See AFI 51-202, *Nonjudicial Punishment*).  **(T-1).**

3.1.7.1.  If the senior Air Force officer or commander of the enlisted member's element is not available or is junior to the commander who imposed the punishment, the General Court-Martial Convening Authority of the Air Force host command decides whether to establish an UIF.

3.1.7.2.  If the Air Force host command does not have a General Court-Martial Convening Authority who is senior to the commander who imposed punishment, the Air Force host command's MAJCOM commander will designate an Air Force General Court-Martial Convening Authority senior to the commander who imposed punishment to decide whether to establish a UIF. **(T-1)**.

**3.2.  Initiating a UIF.** The appropriate UIF authority initiates a UIF by referring applicable documents to the member using an AF Form 1058.  **(T-1).**

3.2.1.  Officer UIFs.  Optional documents for officers are referred to the offending member with an AF Form 1058 before establishing a UIF.  For mandatory documents, the AF Form 1058 does not need to be referred to the officer for a response.  **Note:**  AFI 36-2608, *Military Personnel Records System*, provides procedures for Officer Selection Record determinations for officers who receive a LOR.

3.2.2.  Enlisted UIFs.  The appropriate UIF authority refers optional and mandatory documents for enlisted members using an AF Form 1058 before establishing a UIF.  For mandatory documents, enlisted members are simply acknowledging the commander's action and do not provide matters in response to the action.  **Note**:  AFI 36-2608 provides procedures for Senior Noncommissioned Officer Selection Record determinations for enlisted members who receive an LOR.

3.2.3.  Notifying ARC Members Not in a Duty Status of UIF action.  The appropriate UIF authority may refer documents they intend to file in the UIF to the member in person or by certified letter.

3.2.4.  Members will be allocated three duty days to acknowledge the intended actions and provide pertinent information before the commander makes the final decision on placing optional documents in the UIF.  ARC members not in active duty status, who depart the duty area prior to the 3 duty days allowed for acknowledging intended actions, will have 45 calendar days from the date of receipt to acknowledge the notification, intended actions, and provide pertinent information before the issuing authority makes the final decision.  In calculating the time to respond, the date of receipt is not counted, and if the individual mails their acknowledgment, the date of the postmark on the envelope will serve as the date of acknowledgment.  The individual is presumed to be in receipt of official correspondence if it is delivered by certified mail to the individual's address or the address included in Defense Enrollment Eligibility Reporting System (DEERS).  **(T-1).**

3.2.4.1.  The commander ensures the Airman is notified of the final decision.  For ARC members not in a duty status, this may be accomplished in person or by certified mail.  **(T-1).**

3.2.4.2.  The commander forwards copies of adverse administrative actions, LORs, AF Form 1137s, *Unfavorable Information File Summary*, and AF Form 1058:  **(T-1).**

3.2.4.2.1.  For RegAF general officers and general officer selects to the Air Force General Officer Management at AF/A1LG, 1040 Air Force Pentagon, Washington, DC 20330-1140 and for colonels and colonel selects to the Air Force Colonels Management Office (AF/A1LO) at AF/A1LO, 1040 Air Force Pentagon, Washington, DC 20330-1140.  **(T-1).**

3.2.4.2.2.  For RegAF chief master sergeants (CMSgts) and CMSgt selects to the Chief Master Sergeant Management Office (AF/A1LE) at AF/A1LE, 1040 Air Force Pentagon, Washington, DC 20330-1140.  **(T-1).**

3.2.4.2.3.  For AFR colonels and colonel selects to AF/REG, 1150 Air Force Pentagon, Washington, DC 20330-1150.

3.2.4.2.4.  For AFR CMSgts and CMSgt selects to AF/REG Senior Enlisted Management, 1150 Air Force Pentagon, Washington, DC 20330-1150.

3.2.4.2.5.  For AFR general officers and general officer selects to AF/REG, 1150 Air Force Pentagon, Washington, DC 20330-1150.

3.2.4.2.6.  For ANG general officers and colonels with or pending a certificate of eligibility, send to NGB/SL, 111 South George Mason Drive, Arlington, VA 22204-1373.

3.2.4.2.7.  For ANG statutory tour members, send to NGB/HR, 3501 Fetchet Ave, Joint Base Andrews, MD 20762-5157.

3.2.4.2.8.  For ANG members route documents to the applicable Commander's Support Staff (CSS) or servicing FSS.

3.2.4.3.  For officers in the grade of colonel and above.  A commander's decision to place adverse information in a UIF or Officer Selection Record is unrelated to the SAF's decision to place this information in the Senior Officer UIF.  Commanders will forward copies of all adverse information to SAF/IG, 1140 Air Force Pentagon, Washington D.C. 20330, in accordance with AFI 90-301.  The Senior Official UIF process is described in AFI 90-301 and AFI 36-2501, *Officer Promotions and Selective Continuation*.

3.2.4.4.  For officers in the grade of lieutenant colonel and below: Send a copy of the initial and updated AF Form 1137 to the officer's servicing and gaining MAJCOM.  Consult with the servicing Staff Judge Advocate to determine if the information should be forwarded to SAF/IGQ in accordance with AFI 90-301.  For ANG only:  Once established, send a copy of the initial and any updated AF Form 1137 to the officer's installation Inspector General for forwarding to SAF/IGQ in accordance with AFI 90-301, as applicable.

3.2.4.5.  For all Individual Reservists, send a copy of the initial and any updated AF Form 1058s to the HQ RIO Detachment and Air Reserve Personnel Center, Total Force Services – Directorate of Personnel & Total Force Services (ARPC/DPT).

3.2.4.6.  For Air Force Reservists in Personnel Accounting Symbol (PAS) S7XXXXXX (Non-participating, Stand-by and Inactive AFR status) send a copy of the initial and any updated AF Form 1058s to Air Reserve Personnel Center, Reserve Services Program, Directorate of Assignments, Reserve Service Programs (ARPC/DPAMR).

**3.3.  Processing Actions in Establishing or Maintaining a UIF:**

3.3.1.  The Adverse Administrative Actions Manager will receive documents from the unit commander, base Staff Judge Advocate, Equal Opportunity Director or substance abuse clinic. Some documents require mandatory establishment of a UIF while others are at the commander's discretion.  Refer to **Table 3.2** to determine whether the UIF establishing authority is required to file the following documents in the member's UIF or whether filing the documents in the UIF is optional.  If not already established, create a UIF folder and an AF Form 1137. Then, refer the documents to the servicing base legal office for a legal review (see **Attachment 3**). **(T-1).**

3.3.2.  The commander ensures the UIF contains only substantiated unfavorable information about events that occurred.  The Commander, Air Reserve Personnel Center (ARPC/CC) will be the establishing authority for Reservists in PAS S7XXXXXX (Non-participating, Stand-by and Inactive AFR status). **(T-1).**

3.3.3.  If the UIF establishing authority decides not to file an administrative action in a UIF when issued, the UIF establishing authority may elect to file the administrative action in a UIF within six months of issuing the action.  Within the six-month window, the UIF establishing authority may file the administrative action in an existing UIF, or in a newly established UIF. The decision must be properly documented in accordance with **paragraph 3.3.1** of this instruction. **(T-1)**

3.3.4.  Mark the UIF folder with the individual's name on the front and FOR OFFICIAL USE ONLY on the front and back.  **(T-2).**

3.3.5.  If the member is performing or selected for assignment to Personnel Reliability Program duties or is a student attending a Personnel Reliability Program-related course as defined by Department of Defense Manual (DoDM) 5210.42_AFMAN13-501, *Nuclear Weapons Personnel Reliability Program,* mark the folder in the upper right hand corner reflecting the member's assignment to Personnel Reliability Program.  The Personnel Reliability Program marking should be visible when the folder is closed and filed.  **(T-2).**

3.3.6.  Prepare an AF Form 1137 for each UIF summarizing the incident, the disposition date, the commander's evaluation of the incident, and what administrative action was taken.  Be specific.  Ensure the commander, First Sergeant, or Unit Adverse Administrative Actions Manager sign each entry on the AF Form 1137.  **(T-1).**

3.3.7.  Remove the AF Form 1137 entry when a portion of the supporting documents are removed, as appropriate; the original AF Form 1137 remains in the UIF.  **(T-1).**

3.3.8.  Coordinate and distribute AF Form 1137 as appropriate.  When distributing an AF Form 1137 for an Individual Reservist, forward one copy to the HQ RIO Detachment.  For ANG members, distribute to the Military Personnel Management Office at the appropriate State Headquarters (see **Table 3.3**).  **(T-1).**

3.3.9.  Update MilPDS in accordance with **Table 3.2** when a commander establishes a UIF or adds/removes documents from a member's UIF.  **(T-1).**

3.3.10.  File any statement provided by the Airman or the Airman's defense counsel in response to an administrative action in the UIF.  See **paragraph 2.4.4** for contents of a record. Article 15 supporting documentation such as evidence or other written materials, to include the member's response to the Article 15 action, considered as a basis for imposing punishment, vacating a suspended punishment, submitted by the offender in mitigation, extenuation, defense or an appeal is not part of the record.  File these materials at the office of the servicing Staff Judge Advocate of the commander who initiated the Article 15 as attachments to that office's copy of the action.  **(T-1).**

**3.4.  Removal of UIFs or their Documents.**

3.4.1.  The UIF and all of its contents are maintained until the final disposition date unless early removal of the UIF or document(s) is clearly warranted.  UIF establishing authorities initiate removal action via AF Form 1058 or memorandum, and notify the member.  An officer's current wing commander (or equivalent) or UIF establishing authority (if still in the member's chain-of-command), whichever is higher may remove a UIF or individual entries. For enlisted members, the unit commander (or civilian equivalent) or higher authority may remove a UIF or individual entries.

3.4.2.  UIF establishing authorities may initiate early removal action for adverse administrative actions in the following circumstances:

3.4.2.1.  When punishment under Article 15 is set aside or a civilian conviction is overturned.

3.4.2.2.  When the UIF establishing authority, after consulting with the servicing Staff Judge Advocate and reviewing the member's rebuttal, determines by a preponderance of the evidence the member did not commit the offense listed in the LOC, LOA or LOR.

3.4.2.3.  Upon completion of punishment resulting from a court-martial or Article 15.  For courts-martial, only the court-martial convening authority may remove documents early. **(T-2)**.

3.4.2.4.  Officer UIFs may be removed early if the following document(s) used to establish the UIF are removed:

> 3.4.2.4.1.  Court-Martial Order or Entry of Judgment.  The removal authority is the member's current wing commander (or equivalent) or convening authority, whichever is higher, and the punishment must be completed prior to early removal. **(T-1).**

> 3.4.2.4.2.  Article 15.   The removing authority is the member's current wing commander (or equivalent) or imposing commander, whichever is higher, and the punishment must be completed prior to early removal. **(T-1).**

> 3.4.2.4.3.  LOC, LOA, LOR, or Control Roster placement.  The removal authority is the member's current wing commander (or equivalent) or issuing authority, whichever is higher. **(T-1).**

3.4.3.  Early removal of all other UIF entries. Early removal is discretionary with the UIF establishing authority.

> 3.4.3.1.  The member's current wing commander (or equivalent), imposing or issuing authority, whichever is higher, may direct removal of derogatory data from the Officer Selection Record at any time; an officer may appeal to have the derogatory data removed after one In the Promotion Zone or Above the Promotion Zone consideration.  (See AFI 36-2608).  **Note**:  Removing an officer's UIF early does not remove the derogatory data (if filed) from the Officer Selection Record.  For instructions on removing derogatory data from an officer or enlisted selection record, see AFI 36-2608.

> 3.4.3.2.  The MAJCOM and FOA's Records Custodian removes the documents from the Officer Command Selection Record Group upon receipt of their copy of the approved early removal decision memorandum and destroys all related documents.

3.4.4.  To remove the UIF or UIF documents prior to the final disposition date:

> 3.4.4.1.  Destroy the UIF or UIF document and update MilPDS.

> 3.4.4.2.  Sanitize the AF Form 1137 by redacting, erasing, whiting/blacking out comments pertaining to the removed document. For Individual Reservists, forward a copy of AF Form 1137 to the HQ RIO Detachment.

> 3.4.4.3.  Coordinate the updated AF Form 1137 in accordance with **Table 3.3** when other documents remain in the UIF.

> 3.4.4.4.  File AF Form 1058 in the digital file plan if no further documents exist in the UIF. Send a copy of the AF Form 1058 to:

>> 3.4.4.4.1.  AF/A1LG for RegAF general officers and general officer selects.

>> 3.4.4.4.2.  AF/A1LO for RegAF colonels and colonel selects.

3.4.4.4.3.  AF/A1LE for RegAF CMSgts and CMSgt selects.

3.4.4.4.4.  AF/REG for AFR general officers, colonels, and colonel selects.

3.4.4.4.5.  AF/REG, Senior Enlisted Management, for AFR CMSgts and CMSgt selects.

3.4.4.4.6.  The member's servicing FSS for Non-Extended Active Duty members.

3.4.4.4.7.  ARPC/DPT for all Individual Reservists Lt Col and below.

3.4.4.4.8.  NGB/SL for ANG general officers and colonels with or pending a certificate of eligibility.

3.4.4.4.9.  NGB/HR for ANG Statutory Tour members.

3.4.4.5.  For Reservists in PAS S7XXXXXX (Non-participating, Stand-by and Inactive AFR status), send a copy of the AF Form 1058 and adjusted AF Form 1137 to ARPC/DPAMR.

3.4.4.6.  For ANG Drill Status Guardsmen, send a copy of the AF Form 1058 and adjusted AF Form 1137 to the member's servicing FSS.

3.4.5.  UIF establishing authorities are prohibited from removing any documents or adjusting disposition dates for Article 15 actions or courts-martial before punishment, sentence, judgment, or action is complete. (For example:  If an Article 15 punishment calls for 45 days extra duty or the punishment is suspended for 5 months, the Article 15 cannot be removed from an individual's UIF until the 45 days extra duty is performed or the suspension is complete or remitted.)

**3.5.  Transferring and Disposing of UIFs.**  When releasing UIF information through the mail do not use Standard Forms 65B or 65C, *U.S. Government Messenger Envelopes*. The Adverse Administrative Actions Manager marks the front and back of the envelope containing UIF information FOR OFFICIAL USE ONLY. **(T-1).**

3.5.1.  See **Table 3.3** for when and how to dispose of UIFs.  Unexpired UIFs are transferred between the RegAF, ANG, and AFC components on all personnel (officer and enlisted) separating or transferring between the RegAF, AFR or ANG member.

3.5.2.  For Temporary Duty (TDY) en route Permanent Change of Station (PCS).  The TDY commander sends a completed copy of AF Forms 1058 and 1137 and the individual's PCS special orders to the gaining MPF after each UIF entry.  If the individual's eligibility or suitability for the pending assignment is in doubt, the gaining commander contacts the MPF for guidance.  If the individual is on TDY and will return to their permanent unit, the TDY commander sends the completed package to the individual's unit commander.

3.5.3.  If the individual is absent without leave or in deserter status before or on the UIF expiration date, the UIF establishing authority notifies the Adverse Administrative Actions Manager in writing of the individual's status.  The notification letter serves as a source document for MilPDS update.  The Adverse Administrative Actions Manager retains the UIF and updates the UIF disposition date to "8 Aug 3888" (indefinite).  Do not annotate the AF Form 1137 (see **Table 3.3**).  If the individual returns from Absent Without Leave or deserter status, the unit commander advises the Adverse Administrative Actions Manager to destroy the UIF or establishes a new UIF disposition date.  This date is no more than 3 months from

the date the commander signs the UIF notice advising the Adverse Administrative Actions Manager of the member's change in status.  If a document is added to the UIF before the end of the three months, the UIF disposition date is extended.  If a document is not added, the UIF is destroyed at the end of the three months. See **Table 3.3**  **(T-1).**

3.5.4.  The Adverse Administrative Actions Manager maintains the UIF for members in dropped-from-rolls status (see **Attachment 1**).  When the UIF expires, the manager annotates the AF Form 1137 to show the date the member entered dropped-from-rolls status, has it signed by the commander, and forwards it to the MPF.  If the member is returned to duty at a later date, the unit commander advises the Adverse Administrative Actions Manager to destroy the UIF or establishes a new UIF disposition date.  This date is no more than 3 months from the date the commander signs the UIF notice advising the Adverse Administrative Actions Manager of the member's change in status.  If documentation of adverse action is added to the UIF before the end of the 3 months, the UIF disposition date is extended.  If no other documents are added, the file is destroyed at the end of the three months. See **Table 3.3** **(T-1).**

**3.6.  Updating UIF Documents.**

3.6.1.  The Unit Adverse Administrative Actions Manager will update UIF codes 1, 2, and 3 in MilPDS. **(T-1)**.

3.6.2.  The Military Personnel Flight (MPF) will manage the adverse administrative actions for units without a Commander's Support Staff. **(T-1)**.

**3.7.  Accessing UIFs.**

3.7.1.  The Adverse Administrative Actions Manager ensures access to UIFs is limited to:

3.7.1.1.  The member who has the UIF.

3.7.1.2.  Individuals listed in **paragraph 3.1** reviewing UIFs on personnel assigned or attached to their command.

3.7.1.3.  First Sergeants reviewing UIFs on enlisted members assigned or attached to their units.

3.7.1.4.  Performance report rating officials, when preparing to write or endorse an Officer or Enlisted Performance Report, Promotion Recommendation Form or recommending an enlisted member for reenlistment**.**

3.7.1.5.  The senior Air Force officer or commander of an Air Force element in a joint command reviewing UIFs on individuals in the element.

3.7.1.6.  The Air Force element section commander in a joint command reviewing UIFs on enlisted personnel.  The section commander must have written approval from the senior Air Force officer or commander of the element to review UIFs on the element's officers. **(T-3)**.

3.7.1.7.  MPF personnel, inspector general, inspection team members, judge advocates, paralegals, Office of Special Investigations personnel, Security Forces, other investigators, Military Equal Opportunity personnel, and substance abuse counselors in the course of their official Air Force duties.  These personnel must obtain authorization from the member's commander prior to accessing the UIF; this includes the legal office performing the annual review as stated in **paragraph 1.2.9**  **(T-3).**

3.7.1.8.  HQ RIO Detachment Commander for AFR Individual Reservists.

3.7.1.9.  NGB/HR and the RegAF servicing Force Support Squadron for ANG Statutory Tour members, NGB/SL for general officers and colonels with or pending a certificate of eligibility, and servicing Force Support Squadrons for all other ANG members.

3.7.2.  AF/A1LG will resolve questions regarding access to UIFs on RegAF general officers and general officer selects.

3.7.3.  NGB/SL will resolve questions regarding access to UIFs on ANG general officers and colonels with or pending a certificate of eligibility.

3.7.4.  AF/REG will resolve questions regarding access to UIFs on AFR general officers, colonels in general officer billets and colonels.

3.7.5.  AF/REG, Senior Enlisted Management will resolve questions regarding to access to UIFs on AFR CMSgts and CMSgt selects.

**3.8.  Reviewing UIFs:**

3.8.1.  At a minimum, unit commanders, senior Air Force officers or commanders of an Air Force element in a joint command, will review all UIFs under their authority within 90 calendar days of their permanent assumption or appointment to command. The commander will sign the review (see **Attachment 3**).  Geographically Separated Unit (GSU) commanders use a computer listing of UIFs to acknowledge existence of UIFs.  After the review is complete, the GSU commander signs the list and files it in the general correspondence file. **(T-2).**

3.8.2.  Review when individuals are considered for promotion, reenlistment, permanent change of station/assignment, retraining, reclassification, selective continuation/reenlistment, Personnel Reliability Program, or a specified period of time contract.

3.8.2.1.  Review prior to completion of performance reports.  **Note**:  When an officer is convicted by a court-martial, comments are mandatory on the next Officer Performance Report (the Officer Performance Report must be a Referral Report) and the next Promotion Recommendation Form for below and in-the-promotion-zone consideration.  Comments on Officer Performance Reports and Enlisted Performance Reports relating to Article 15 punishment and Control Roster actions are strongly recommended for officers and senior non-commissioned officers, and must be considered in all cases.

3.8.2.2.  AFR or ANG:  Review when considering applications for in-residence developmental education or short courses and all AFR assignments.

3.8.2.3.  AFR or ANG: Review when considering a Statutory Tour assignment, AGR assignment, or when a member is being considered for an Active Duty tour exceeding 30 calendar days.

3.8.2.4.  Review when considering an Appointment or enlistment in a different component of the Air Force.

**3.9.  Commander's Management Roster.** Listings of personnel assigned within the unit possessing a quality indicator (e.g. UIF, Control Roster, Article 15).  It also lists personnel possessing Enlisted Performance Report ratings which might indicate observation of their performance is warranted.  The rosters can be retrieved for RegAF members from the Base Level Service Delivery Module (BLSDM) dashboard and no certification or suspense of either roster is

required. For ANG members, FSSs can utilize Command Human Resources Intelligence System (CHRIS) or Oracle Business Intelligence Enterprise Edition® to retrieve pertinent listings.  All entries should be reviewed to ensure appropriate action was taken. This includes determining appropriateness of an upcoming promotion, qualification for Personnel Reliability Program duties, assignment, reenlistment, etc., some which are identified under the "projected for" area.

**3.10.  Making Recommendations to the Commander.** The adverse action issuing authority, (when not the commander or director), the Staff Judge Advocate or Military Personnel Flight Chief may recommend action to the commander.  Use the AF Form 1058 or memorandum and file it in the individual's UIF along with the commander's reply.  AF Form 1137 is not required to be annotated.

**3.11.  UIFs on General Officers and General Officer Selects.**  AF/A1LG and AF/REG function as the sole Adverse Administrative Actions Manager and repository and maintain the original UIF. For ANG general officers, SAF/IG functions as the sole UIF monitor and repository and maintains the original UIF.  Copies of general officer and general officer select UIFs will not be maintained at or by any organization other than AF/A1LG for RegAF officers, AF/REG for AFR officers, or NGB/SL for ANG officers.  UIF information will not be updated in MilPDS for general officer or general officer selects. **(T-1).**

**Table 3.1.  Adverse Administrative Actions Manager for AFR and ANG.**

| R U L E | A | B |
|---|---|---|
| | Reservist or Guardsman assigned to: | Adverse Administrative Actions Manager will be: |
| 1 | PAS S7XXXXXX | ARPC/DPAMR |
| 2 | Selective Service, Ready Reinforcement Personnel Section, and Individual Reservist | ARPC/DPT, RegAF Force Management or HQ RIO Detachment Commander |
| 3 | Non-Affiliated Reserve Section | ARPC/DPAMR |
| 4 | Central Managers (Chaplain/Judge Advocate/Surgeon General) | Unit of Attachment |
| 5 | Active Guard Reserve | Unit of Assignment |
| 6 | AFR and ANG Unit | Unit of Assignment |
| 7 | MAJCOMs | Unit of Assignment |
| 8 | Air Force Elements | Unit of Assignment |
| 9 | Health Professionals Scholarship Program and Chaplain Candidates | ARPC/DPAMR |
| 10 | ANG Statutory Tour Program | NGB/HR |

| 11 | ANG General Officers | NGB/SL |
|----|----------------------|--------|
| 12 | 201st Mission Support Squadron (ANG of the United States (ANGUS) members | Either unit of attachment for training or operational support if capable of supporting or member's Title 32 home station with consent of the unit commander. (see Note) |

**Note**: 201 MSS delegates the establishment of UIFs for Title 10 adverse actions to the ANGUS member's home station when the action cannot otherwise be supported by the unit of attachment.  Home station unit commander should approve the establishment of UIFs if due to a transfer request by a Title 10 Adverse Administrative Actions Manager at the conclusion of an ANGUS member's activation or if requested by a Title 10 commander for an adverse action against an ANGUS member on a Title 10 Active Duty Operational Support tour.  Home station unit commanders will consult with the 201 MSS before denying a Title 10 commander's request to establish a UIF.

**Table 3.2.  Unfavorable Information File Establishment and Military Personnel Data System Update Procedures (Officer and Enlisted).**

| Rule | Document | Received From | Code/Disposition *(Subtract 1 day on all disposition dates)* | Filing | Notes |
|------|----------|---------------|-------------------------------------------------------------|--------|-------|
| 1 | • Article 15:<br>   o Punishment or suspension 31 days or more<br>   o Suspended or unsuspended<br><br>• Court Martial Conviction<br><br>• Civilian Court Conviction<br>   o Foreign or Domestic<br>   o Includes pending charges with sentence of more than 1 year, or death) | Staff Judge Advocate, Commander, and/or First Sergeant | (INTERIM – Code 3)<br>Date punishment/suspension is complete not to exceed:<br><br>Enlisted: 2 years from date sentence adjudged<br><br>Officers: 4 years from date sentence adjudged<br><br>(FINAL – Code 1)<br>Upon completion of INTERIM and<br><br>Enlisted: 2 years from date<br>   • Commander signs item 4 of AF Form 3070, *Record of Nonjudicial Punishment Proceedings* (Article 15 Only)<br>   • Sentence adjudged<br><br>Officers: 4 years from date | Mandatory | 1, 2, 3, 4, 5 |

| | | | • Commander signs item 4 of AF Form 3070 (Article 15 Only)<br>• Sentence adjudged | | |
|---|---|---|---|---|---|
| 2 | • Control Roster | Commander | (INTERIM – Code 2)<br>6 months from date the commander signs Section V of AF Form 1058<br><br>(FINAL – Code 1)<br>Upon completion of INTERIM and 1 year from date the commander signs Section V of AF Form 1058 | Mandatory | 6 |
| 3 | • Civilian Court Conviction<br>   o Foreign or Domestic<br>   o Sentence of 1 year or less<br><br>• Substantiated allegations of<br>   o Unlawful discrimination<br>   o Sexual harassment | Staff Judge Advocate, Commander and/or First Sergeant | (FINAL – Code 1)<br>Date punishment is due to be completed or 1 year from approval of commander directed investigation, whichever is earlier. | Mandatory | 2 |
| 4 | • LOC/LOA/LOR | UIF establishing authority | (FINAL – Code 1)<br>Enlisted:  1 year from date the commander signs section V of AF Form 1058<br><br>Officer:  2 years from date the commander signs section V of AF Form 1058 | Mandatory for Officer Letter Of Reprimand | 7, 8 |
| 5 | • Other documents containing adverse information not referred using an AF Form 1058 | UIF establishing authority | N/A | Optional | 8 |

**Note:**

1.  Also applies to Article 15 punishment imposed on an Air Force member of a joint command by a commander of a different service when processed in accordance with AFI 51-202.  Includes any suspended punishment longer than a month (31 days or more).  Air Force Reserve Command (AFRC), ARPC, HQ RIO or The Adjutant General may establish longer observation periods, not to exceed 12 months for AFR or ANG personnel, if deemed appropriate.

2.  The servicing Staff Judge Advocate specifies in writing whether the action is mandatory or optional for file in the UIF.  The determination accompanies the record of court action (conviction or judgment) or is written and signed on the record itself.  If mandatory for file, the Staff Judge Advocate sends the record and determination directly to the servicing CSS (or MPF in lieu) with a copy to the member's commander for action.

3.  If the Article 15 punishment is a Reprimand only, then INTERIM disposition does not apply.  Update record in accordance with FINAL disposition.

4.  A record of suspended punishment under Article 15, or unsuspended Article 15 punishment, which is 30 days or less.  Commanders may establish UIF in the same manner as rule 1.

5.  UIFs are mandatory for officers who receive punishment under Article 15, which is noted in item 9 of the AF Form 3070C, *Record of Nonjudicial Punishment Proceedings (Officer)*.  This is true regardless of whether the punishment is suspended.

6.  HQ AFRC, ARPC, HQ RIO, or The Adjutant General may establish longer observation periods, not to exceed 12 months for AFR or ANG personnel, if deemed appropriate.

7.  If there are more than 14 calendar days between the date the UIF establishing authority signed the AF Form 1058 and the date of the LOR/LOA/LOC, annotate the discrepancy in a Memorandum for Record and use the date of the LOR/LOA/LOC when determining the disposition date.  File the Memorandum For Record in the UIF with the AF Form 1058.

8.  If it is not mandatory to establish a UIF, the UIF establishing authority still has the discretion and authority to establish a UIF with the instrument or record in question.

**Table 3.3.  Annotating and Disposing of UIF Summary (AF Form 1137).**

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|------|-------------------------------------------|------------------|-----|-----|
| 1 | Documents for file in the UIF according to **Table 3.2.** | Prepares or updates the UIF summary to record and summarize the incident files the document in the | Gives copy of AF Form 1137 to member's unit UIF establishing authority. When necessary, coordinate with | Sends an additional copy of AF Form 1137 to the appropriate office for medical, dental, chaplain, legal officers in the grade of colonel and colonel select (for AFR and |

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|------|------|------|------|------|
|  |  | UIF, updates system | Personnel Reliability Program monitor and send a copy of initial and updated AF Form 1137 to officers' servicing/gaining A1 (For unit Reservist to Air Force Reserve Command and for individual Reservist to the HQ RIO Detachment).  For ANG send to the members servicing CSS or FSS | ANG officers in the grade of colonel and colonel select, see **paragraph 3.2.4.2.3 and 3.2.4.2.6**).  Send an additional copy to the appropriate state office (State Headquarters/Military Personnel Management Office) |
| 2 | An approved or pending involuntary separation action, including an approved period of probation and rehabilitation under AFI 36-3208, *Administrative Separation of Airmen*.  For AFR and ANG personnel reference AFI 36-3209, *Separation and Retirement Procedures for ANG and AFR Members* | Annotates the original AF Form 1137 Involuntary Discharge initiated under AFI 36-3206, *Administrative Discharge Procedures for Commissioned Officers* or AFI 36-3208.  Probation and rehabilitation granted under AFI 36-3208.  For AFR and ANG personnel: probation of member with lengthy service granted under AFI | Gives copy of AF Form 1137 to member's unit UIF establishing authority. When necessary, coordinate with Personnel Reliability Program monitor and send a copy of initial and updated AF Form 1137 to officers' servicing/gaining A1 (For unit Reservist to Air Force Reserve Command and for individual Reservist to the HQ RIO | Sends an additional copy of AF Form 1137 to the appropriate office as noted in **paragraph 3.2.4.2** (for AFR and ANG officers in the grade of colonel and colonel select, see **paragraph 3.2.4.2.3 and 3.2.4.2.6**).  Send an additional copy to the appropriate state office (State Headquarters/Military Personnel Management Office) |

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|------|------|------|------|------|
|  |  | 36-3209 (see note 1) | Detachment).  For ANG send to the members servicing CSS or FSS |  |
| 3 | A notice to send a copy of an AF Form 1137 for pending PCS  (see notes 2,3, and 11) | Mails two copies of the notice and AF Form 1137 to the gaining unit | The gaining FSS sends a copy of notice &amp; AF Form 1137 to the gaining CC. The remaining copies are retained in FSS pending receipt of the UIF | The gaining commander reviews the AF Form 1137 and files |
| 4 | A notice to send a copy of an AF Form 1137 for member being reassigned Permanent Change of Assignment (PCA) (see notes 4 and 11) | Sends notice with a copy of the members AF Form 1137 to the gaining commander | The gaining CC reviews the AF Form 1137 and files it at the unit |  |
| 5 | A notice to send a UIF when MilPDS | Sends notice with the UIF to the | The gaining unit /FSS, reviews the | Contacts the losing unit/FSS when |

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|------|---------------------|------------------|-----|-----|
| | confirms PCS departure (see notes 5,6, and 7) | gaining unit/FSS (for Individual Reservist send to unit of assignment) | UIF for accuracy, verifies data system, and makes required corrections, files the UIF | documentation is not complete |
| 6 | A Transaction Register notice that a member's UIF has expired | Verifies the accuracy of the disposition date, makes required changes | Determines there is no information that extends the UIF disposition date | Destroys the UIF |
| 7 | A Transaction Register notice that a member's UIF has expired | Verifies the accuracy of the disposition date, makes required changes | Discovers new information that extends the UIF disposition date | Retains the UIF for 10 duty days pending receipt of the new information, or adds the new information and updates UIF data |
| 8 | A notice when a member enters dropped from rolls status (see note 8) | Gives UIF to FSS/Force Management personnel | Force Management personnel places the documents in Automated Records Management System and forwards to AFPC | AFPC destroys UIF if duty status changing to deceased |
| 9 | A notice that a member in dropped-from-the-rolls status has been returned to duty (see note 8) | Contacts FSS/Force Management and requests UIF | FSS/Force Management coordinates the return of the UIF | AFPC returns UIF |
| 10 | A UIF or UIF document on a person not serviced now or in the foreseeable future by the FSS (see note 9) | Verifies the member's status (TDY, TDY en route, PCS, pending assignment canceled or changed, or the | Returns the documents to the appropriate FSS or the member's last unit of assignment for processing | |

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|------|-------------------------------------------|------------------|-----|-----|
| | | documents misrouted) | | |
| 11 | A notice that a member is within 120 days of Report No Later than Date (see note 11) | Verifies receipt of the AF Form 1137 | Requests that the losing unit or MPF, forward copies of AF Form 1137 according to rule 3, if they do not arrive as expected | |
| 12 | A notice that a member is in confinement as a result of court-martial punishment (see note 10) | | CSS or servicing FSS retains UIF with the following exceptions:  For Individual Reservists, Selective Service forward UIF to HQ RIO Detachment; for personnel assigned to S7/S8 PAS Codes, forward to ARPC at ARPC/DPAMR 18420 E Silver Creek Ave, Bldg 390 MS 68, Buckley Air Force Base, CO 80011 | |
| 13 | A notice that a member is in appellate leave status | Scans UIF with Field Personnel Record Group awaiting appellate decision | FSS/Force Management retains UIF in Automated Record Management System | On receipt of decision by appellate authority, disposes of UIF accordingly |

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|------|------|------|------|------|
| 14 | A notice that a member is in Absent Without Leave or deserter status and UIF is due to expire | Verifies that the member is in Absent Without Leave or deserter status and that the UIF expiration date is accurate | When appropriate, updates UIF expiration date to 8 Aug 3888 and files notice in UIF (see **paragraph 3.5.3**) | Retains UIF awaiting further information |
| 15 | A notice that an officer is being separated and transferred to the AFR | Forwards the UIF to the appropriate Adverse Administrative Actions Manager of new assignment (reference **Table 3.1**) | | |
| 16 | A notice that a member is released from an AFR or ANG unit and transferred to AFPC nonparticipating status (officer or enlisted) | Forward the UIF to ARPC/ DPAMR,18420 E. Silver Creek Ave, Bldg 390 MS 68, Buckley Air Force Base, CO 80011 | | |
| 17 | A notice that a regular officer is discharged (not for cause) and records are being sent to ARPC | Forwards the UIF to ARPC/ DPAMR, 18420 E. Silver Creek Ave, Bldg 390 MS 68, Buckley Air Force Base, CO 80011 | | |
| 18 | A notice that an AFR or ANG officer is discharged (without immediate reentry or continuation on | Destroys the UIF | | |

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|---|---|---|---|---|
| | active duty) or dies | | | |
| 19 | A notice that an enlisted member is separated or dies | Destroys the UIF | | |
| 20 | A notice that a member is reassigned to the retired AFR | Destroys the UIF | | |
| 21 | A notice that a member (officer or enlisted) is discharged for cause) | Destroys the UIF | | |
| 22 | A notice that a member is being transferred from non-participating (S7XXXXXX) status to participating assignment | Forwards UIF to the gaining United States AFR assignment | | |
| 23 | A notice that an AFR or ANG member (officer or enlisted) is being reassigned within the United States AFR or ANG | Forwards the UIF to the gaining AFRC or ANG assignment | | |
| 24 | A notice that an officer of the United States AFR is being transferred to active duty | Forwards the UIF to the gaining active duty unit | | |

**Note:**
1.  This is an AF Form 1137 annotation only.  Commanders do not have to maintain documentation in the UIF.

2.  The data system generates a transmittal notice for the AF Form 1137 before the Report No Later than Date when a member's end assignment changes, and on short-notice assignments if the member

| Rule | If Adverse Admin Actions Manager receives | Then the manager | And | And |
|------|-------------------------------------------|------------------|-----|-----|
| | | | | |

is within 120 days of Report No Later than Date.  When a member's end assignment changes or is canceled, MilPDS generates a Transaction Register remark, and the gaining unit destroys the advance copies of the AF Form 1137.

3.  Keep a copy of the advance transmittal notice in the UIF folder until mailed.  Destroy it afterwards.

4.  If the member is projected for a Personnel Reliability Program position, coordinate UIFs on gains with the unit Personnel Reliability Program monitor.

5.  File retained transmittal notices in the general correspondence file.

6.  Before sending the UIF electronically (encrypted), ensure its contents are complete and accurately recorded.  Sign and date the AF Form 1137 (reviewer's remarks, signature, date), certifying that you have reviewed it.  Do not send electronically until you receive MilPDS confirmation.

7.  MilPDS produces a notice once it confirms a member's reassignment.  Remove the pencil entries on the AF Form 1137 before scanning and sending the UIF to the new unit.

8.  When a member enters or returns from dropped-from-the-rolls status, code or decode the UIF disposition.

9.  To determine the member's status, consult the worldwide personnel listing, Commander's Support Staff, MPF, or the losing Adverse Actions office.

10.  Upon receipt, before giving a UIF to the FSS, HQ RIO Organization or ARPC/DPAMR, the Adverse Administrative Actions Manager:

10.1.  Signs and dates the Air Force Form 1137 (reviewer's remarks, signature, date), certifying he or she reviewed it.

10.2.  For a member reassigned as a prisoner (confinement) with or without discharge because of a court-martial conviction, the Adverse Administrative Actions Manager records the court-martial conviction on AF Form 1137 and includes it in the UIF before forwarding the UIF to the Personnel Employment Element. For ANG only:  the UIF will not be forwarded as the servicing FSS retains the UIF.

10.3.  Delays forwarding and takes timely follow-up action pending receipt of the court-martial conviction and then gives the MPF the UIF for placement in Personnel Records Display Application.

11.  Does not apply to the AFR.

## Chapter 4

## CONTROL ROSTER

**4.1. Who Uses the Control Roster.**  Commanders (or civilian equivalents) use the Control Roster to establish a six-month observation period. AFRC, ARPC, HQ RIO, or The Adjutant General may establish longer observation periods, not to exceed twelve-months, for Reserve and Guard personnel, if deemed appropriate.

**4.2. Use of a Control Roster.**  Consideration should be given to prior incidents, acts, failures, counseling, and rehabilitative efforts.  A brief incident of substandard performance or an isolated breach of standards, not likely to be repeated, should not usually result in an individual's placement on the Control Roster.  UIF establishing authorities inform members on the Control Roster their performance and behavior must improve or they may face more severe administrative action or punishment. **(T-1).**

4.2.1. Commanders may direct an Officer Performance Report or Enlisted Performance Report before entering or removing an individual from the Control Roster.  The UIF establishing authority must periodically counsel personnel on the Control Roster about their improvement or failure to improve **(T-2)**.

4.2.2.  When placing an officer on the Control Roster who is eligible or selected for promotion, or a selective continuation appointment, a commander must decide if the officer is mentally, physically, morally, or professionally qualified.  **(T-1)**.  If not, initiate action to find the officer not qualified, delay the projected promotion, or remove the officer from the list (see AFI 36-2501 or AFI 36-2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force*).  **(T-1)**.

4.2.3.  The UIF establishing authority should not place an individual on the Control Roster as a substitute for more appropriate administrative, judicial, or nonjudicial action.  Placement on the Control Roster does not shield an individual from other appropriate actions.

4.2.4.  The Control Roster is cleared at 2359 hours on the last day of the observation period or on the date a member separates, retires, or dies.  UIF establishing authorities may take subsequent Control Roster action only if a new incident or failure occurs. **(T-1).**

4.2.5.  PCS or PCA reassignment procedures for personnel on the Control Roster are:

4.2.5.1.  If the member is put on the Control Roster, and will leave an overseas area before the end of the observation period, and is otherwise eligible, the commander may extend the member's Date Eligible to Return from Overseas a maximum of 120 days (long tour area only).  A commander who decides to involuntarily extend the Date Eligible to Return from Overseas should advise the MPF as soon as possible.

4.2.5.2. If the PCS is mandatory (does not include PCS without PCA for separation processing), the losing base Adverse Administrative Actions Manager removes the UIF code 2.  The manager then notes on the individual's AF Form 1137 that "Control Roster action expired due to mandatory Permanent Change of Station" before transferring the UIF to the gaining unit.  Control Roster action expires on the date the member departs.  **Note:** This does not apply to unit moves when the member retains the same leadership.

4.2.5.3.  If the PCS is not mandatory, the person remains eligible for PCS if the observation period expires before the report no later than date. The UIF establishing authority advises the MPF of the person's Control Roster status; the MPF notifies AFPC.  AFPC determines the individual's assignment eligibility (AFI 36-2110, *Total Force Assignments*).

4.2.5.4.  For AFR assignments, individuals remain eligible for permanent change of station while on the Control Roster.  The losing commander, or equivalent advises the MPF (for unit program) or the losing HQ RIO Detachment Commander (for the Individual Reservist program) by indicating on the AF Form 1288, *Application for Ready Reserve Assignment,* that the member is on the Control Roster and annotating the UIF disposition date in the remarks section.  After reviewing the AF Form 1288, the gaining unit commander (in coordination with the HQ RIO Detachment Commander) will decide if the assignment is appropriate and will approve or disapprove the assignment. **(T-1).**

4.2.5.4.1.  Delay PCA when an individual is on the Control Roster.  If the PCA is essential to the mission and the losing and gaining commanders concur, the person may be reassigned, but remains on the Control Roster.

4.2.5.4.2.  For colonel and colonel select AFR assignments, do not use the AF Form 1288.  For colonel and colonel select assignments, the member annotates they are on a Control Roster on the application coversheet.  AF/REG will process the application and annotate Control Roster status during approval process and provide to hiring authority during selection process.

4.2.5.5.  For ANG Statutory Tour Assignments, individuals will not normally be eligible for PCS/PCA while on the Control Roster.  Any requests for PCS/PCA movement while members are on a Control Roster should be forwarded to NGB/HR for staffing to the appropriate approval authority.

4.2.5.6.  For ANG members in Title 32 assignments, individuals remain eligible for PCS while on the Control Roster.  The losing commander advises the MPF Career Development section (for unit program) or the gaining unit by indicating on the AF Form 1288**,** that the member is on the Control Roster and annotating the UIF disposition date in the remarks section.  After reviewing the AF Form 1288, the gaining commander will decide if the assignment is appropriate and will approve or disapprove the assignment. **(T-3)**.

4.2.6.  For RegAF, AFR and ANG, the commander, or equivalent cancels all formal training for members during the period they are on the Control Roster.  **(T-1)**.

4.2.7.  The commander, or equivalent may not put individuals on the Control Roster who are in TDY or PCS status, to include en route.

4.2.8.  An individual's time on the Control Roster does not stop and start for periods of TDY, ordinary leave, or change in immediate supervisor.  For example, if an individual on the Control Roster requests 2 weeks leave, the Control Roster time does not stop for the 2 weeks the individual is on leave and then start again.  The six-months is continuous regardless of the individual's leave or TDY status.

**4.3.  Initiating and Maintaining the Control Roster.** The Adverse Administrative Actions Manager shall retrieve and maintain the Control Roster for the commander. **(T-1).**  Commanders will use the AF Form 1058 to initiate Control Roster action.  RegAF members must acknowledge

the action and have 3 duty days to submit a statement on their behalf before the AF Form 1058 is finalized.  If the member refuses or fails to acknowledge the action, the commander will sign the AF Form 1058 indicating, "Member refused to acknowledge."  **(T-2)**.  The commander advises the individual of their final decision.  File any statement or document provided by the individual in response to the Control Roster in the UIF.  Additional materials submitted by the member in mitigation, extenuation, or defense are not part of the record.  Evidence and any other written materials considered as a basis for imposing the Control Roster are not part of the record.  Placement on the Control Roster is a mandatory UIF entry.  **(T-2)**.

4.3.1.  A member not in a duty status, who departs the duty area prior to the 3 duty days allowed for acknowledging intended actions, has 45 calendar days from the date of receipt of the certified letter to acknowledge the notification, intended actions, and provide pertinent information before the commander makes the final decision.  In calculating the time to respond, the date of receipt is not counted, and if the individual mails their acknowledgment, the date of the postmark on the envelope serves as the date of acknowledgment.  The individual is presumed to be in receipt of official correspondence if it is hand delivered or delivered by certified mail to the individual's address or best available address.

4.3.2.  A Control Roster will not be created or maintained on members assigned to the non-participating AFR status (PAS S7XXXXXX). **(T-1).**

**4.4. Who Can Add or Remove Individuals to or from the Control Roster.** The below individuals have authority to add or remove any assigned or attached officer and enlisted member to or from the Control Roster.  Upon receipt of an AF Form 1058, or memorandum signed by the member's current wing commander (or equivalent) or issuing authority, whichever is higher, remove member from Control Roster.  This removal option applies regardless of how long the action was on file.

4.4.1.  Commanders on G-series orders at all levels for members assigned or attached to their units.  Commanders must be senior to the member. Qualified civilian directors who qualified may also add or remove individuals to/from control rosters.

4.4.2.  The commander, deputy commander, staff director and directors at MAJCOM, FOAs, and DRUs.

4.4.3.  Chief of Staff, Deputy Chiefs of Staff, Assistant Chiefs of Staff, other heads of staff agencies, and Directors assigned to Headquarters, United States Air Force.

4.4.4.  Comparable officers within the Office of the SAF, Office of the Joint Chiefs of Staff, and Office of the Secretary of Defense.

4.4.5.  The senior Air Force officer assigned to a joint command.

4.4.6.  The HQ RIO Detachment Commanders for Civil Air Patrol Reserve Assistance Program and the Admissions Liaison Officer Program.

## Chapter 5 (Added)

## *REPORTING DEMOGRAPHIC INFORMATION ON ADVERSE ADMINISTRATIVEACTIONS AGAINST SERVICE MEMBERS

**5.1. Issuers of Administrative Action.**  Any individual who issues a LOC, LOA, or LOR will:

5.1.1.  Ensure the recipient acknowledges the final disposition of the action.  Once the recipient acknowledges receipt of the final disposition, the record becomes a finalized record. **(T-1).** Annotate on the administrative action if the member fails to acknowledge receipt or provide a response.

5.1.2.  Within three (3) duty days of completion, route the finalized record and supporting documentation to the immediate commander of the person issuing the administrative action. **(T-1).**  Members of the Air Force Reserve will provide this information within 45 calendar days of the completed action. **(T-1).**   When the recipient is an ANG member, an electronic copy of the finalized record, supporting documentation, and issuer's required demographic information will be provided within five (5) duty days as follows: to the appropriate ANG Title 10 Statutory Tour commander if the recipient is on a Title 10 Statutory Tour order; to the 201 MSS/CC if the recipient is on a Title 10 orders and assigned to the 201 MSS for administrative control; to the wing commander at the recipient's home station if the Airman is in a Title 32 status. **(T-1).**

**5.2. Commander's Responsibilities.**

5.2.1.  Upon receipt of the finalized record, the issuer's immediate commander will review the rank, age, gender, race, and ethnicity of both the issuer and the recipient as it is listed in their official Department of the Air Force record. **(T-1).**

5.2.2.  The issuer's commander will report the following information, providing the finalized record, and substantiating documentation on completed actions, to their servicing Staff Judge Advocate (SJA) within five (5) duty days for Regular Air Force, 45 calendar days for members of the Air Force Reserve, and in accordance with **paragraph 5.1.2** for the ANG, using the AF/JA demographic tracker in **Table 5.1**: **(T-1)**

5.2.2.1.  Type of Administrative Action issued, final Administrative Action, underlying offense(s), rank, age, gender, race, and ethnicity of issuer.

5.2.2.2.  Type of Administrative Action issued, number of prior Administrative Actions received, underlying offense(s), final Administrative action, rank, age, gender, race, and ethnicity of recipient.

5.2.3.  The requirement to provide data to the servicing SJA is triggered based on when the administrative action becomes a finalized record in accordance with **paragraph 5.1.1** Commanders will report the required demographic information regardless of whether the action is later rescinded, downgraded, or not otherwise filed in the recipient's PIF or UIF. **(T-1).**  The requirement is not triggered if the Administrative action is fully withdrawn during the Administrative Action process.

5.2.4.  When the recipient is an ANG member, the issuer or issuer's commander will send the required information to the appropriate ANG commander identified in **paragraph 5.1.2 (T-1)**.

5.2.5.  Commanders should contact their servicing SJA's office for implementation guidance.

5.2.6.  The Automated Military Justice Analysis and Management System (AMJAMS) will not be used to report Administrative Action demographic information pursuant to this Chapter.

**5.3.  Office of the Servicing Staff Judge Advocate (SJA) Responsibilities.**

5.3.1.  The servicing SJA will ensure demographic information for completed administrative actions is reported in accordance with this instruction. **(T-1).**

5.3.2.  The SJA may use demographic information collected pursuant to this Instruction for purposes of Status of Discipline.  The SJA should refer to AFI 51-201, *Administration of Military Justice*, for status of discipline briefing requirements. **(T-1).**

**Table 5.1.  AF/JA Demographic Tracker Example.**

| R U L E | A | B |
|---|---|---|
| | **Reservist or Guardsman assigned to:** | **Adverse Administrative Actions Manager will be:** |
| 1 | PAS S7XXXXXX | ARPC/DPAMR |
| 2 | Selective Service, Ready Reinforcement Personnel Section, and Individual Reservist | ARPC/DPT, RegAF Force Management or HQ RIO Detachment Commander |
| 3 | Non-Affiliated Reserve Section | ARPC/DPAMR |
| 4 | Central Managers (Chaplain/Judge Advocate/Surgeon General) | Unit of Attachment |
| 5 | Active Guard Reserve | Unit of Assignment |
| 6 | AFR and ANG Unit | Unit of Assignment |
| 7 | MAJCOMs | Unit of Assignment |
| 8 | Air Force Elements | Unit of Assignment |
| 9 | Health Professionals Scholarship Program and Chaplain Candidates | ARPC/DPAMR |
| 10 | ANG Statutory Tour Program | NGB/HR |
| 11 | ANG General Officers | NGB/SL |
| 12 | 201st Mission Support Squadron (ANG of the United States (ANGUS) members | Either unit of attachment for training or operational support if capable of supporting or member's Title 32 home station with consent of the unit commander. (see Note) |

**Note**: 201 MSS delegates the establishment of UIFs for Title 10 adverse actions to the ANGUS member's home station when the action cannot otherwise be supported by the unit of attachment. Home station unit commander should approve the establishment of UIFs if due to a transfer request by a Title 10 Adverse Administrative Actions Manager at the conclusion of an ANGUS member's activation or if requested by a Title 10 commander for an adverse action against an ANGUS member on a Title 10 Active Duty Operational Support tour.  Home station unit commanders will consult with the 201 MSS before denying a Title 10 commander's request to establish a UIF.

JOHN A. FEDRIGO, SES
Performing the Duties of the Assistant Secretary of
the Air Force
(Manpower and Reserve Affairs)

**Attachment 1**

**GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**

*References*

5 USC, Government Organization and Employees § 552a, *Records Maintained on Individuals*

10 USC*,* Armed Forces, § 9013*, Secretary of the Air Force*

AFPD 36-29, *Military Standards,* 11 April 2019

AFI 33-360, *Publications and Forms Management,* 01 December 2015

AFI 33-322, *Records Management and Information Governance Program,* 23 March 2020

AFI 36-2110, *Total Force Assignments*, 05 October 2018

AFI 36-2501, *Officer Promotions and Selective Continuation*, 16 June 2004

AFI 36-2406, *Officer and Enlisted Evaluation Systems*, 14 November 2019

AFI 36-2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force*, 9 January 2003

AFI 36-2608, *Military Personnel Records System*, 26 October 2015

AFI 36-3206, *Administrative Discharge Procedures for Commissioned Officers,* 9 June 2013

AFI 36-3208, *Administrative Separation of Airmen*, 9 July 2004

AFI 36-3209, *Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members,* 14 April 2005

AFI 51-202, *Nonjudicial Punishment,* 6 March 2019

AFI 51-509, *Appointment to and Assumption of Command*, 14 January 2019

AFI 90-301, *Inspector General Complaints Resolution,* 28 December 2018

DoDM5210.42_AFMAN13-501, *Nuclear Weapons Personnel Reliability Program,* 19 September 2018

*Prescribed Forms*

AF Form 174, *Record of Individual Counseling*

AF Form 1058, *Unfavorable Information File Actions*

AF Form 1137, *Unfavorable Information File Summary*

*Adopted Forms*

AF Form 847, *Recommendation for Change of Publication*

AF Form 1288, *Application for Ready Reserve Assignment*

AF Form 3070A, *Record of Nonjudicial Punishment Proceedings (AB thru SSgt)*

AF Form 3070B, *Record of Nonjudicial Punishment Proceedings (TSgt thru CMSgt)*

AF Form 3070C, *Record of Nonjudicial Punishment Proceedings (Officer)*

AF Form 3070D, *Record of Nonjudicial Punishment Proceedings (TSgt thru CMSgt) – Air National Guard Only*

AF Form 3070E, *Record of Nonjudicial Punishment Proceedings (Officer) – Air National Guard Only*

Standard Forms 65B or 65C, *U.S. Government Messenger Envelopes*

***Abbreviations and Acronyms***

**AF**—Air Force

**AFI**—Air Force Instruction

**AFMAN**—Air Force Manual

**AFPC**—Air Force Personnel Center

**AFPD**—Air Force Policy Directive

**AFR**—Air Force Reserve

**AFRC**—Air Force Reserve Command

**AGR**—Active Guard and Reserve

**ANG**—Air National Guard

**ANGUS**—Air National Guard of the United States

**ARC**—Air Reserve Component

**BLSDM**—Base Level Service Delivery Module

**CHRIS**—Command Human Resources Intelligence System

**CMSgt**—Chief Master Sergeant

**CSS**—Commander's Support Staff

**DEERS**—Defense Enrollment Eligibility Reporting System

**DoD**—Department of Defense

**DRU**—Direct Reporting Unit

**EO**—Executive Order

**FOA**—Field Operating Agency

**FSS**—Force Support Squadron

**GSU**—Geographically Separated Unit

**HQ RIO**—Headquarters Individual Reservist Readiness & Integration Organization

**LOA**—Letter of Admonishment

**LOC**—Letter of Counseling

**LOR**—Letter of Reprimand

**MAJCOM**—Major Command

**MPF**—Military Personnel Flight

**NGB**—National Guard Bureau

**OPR**—Office of Primary Responsibility

**PAS**—Personnel Accounting Symbol

**PCA**—Permanent Change of Assignment

**PCS**—Permanent Change of Station

**PIF**—Personnel Information File

**RegAF**—Regular Air Force

**RIC**—Record of Individual Counseling

**TDY**—Temporary Duty

**TR**—Transaction register

**UIF**—Unfavorable Information File

**U.S.**—United States

**USC**—United States Code

*Terms*

**Absent Without Authority/Leave**—Consider member absent without authority if he or she is voluntarily absent without leave for more than 24 hours, or was voluntarily absent from a scheduled duty or formation, a restriction or an arrest.  Scheduled duty or formation means doing a specified task at a specified time and place for a specified purpose.  It is not the same as regularly scheduled duty.  Consider the member absent without authority if not excused and absent from duty in civil confinement for more than 24 hours.  The term absent without authority means the same as unauthorized absence.

**Active Duty** —Full-time duty in the active military service of the United States, including active duty or full-time training duty in the Reserve Component.  The term active duty for a period of more than 30 days means active duty under a call or order that does not specify a period of 30 days or less.

**Active Guard and Reserve (AGR) Duty** —Active Duty performed by a member of the Reserve Component of the Air Force or full-time National Guard for a period of 180 consecutive days or more for organizing, administering, recruiting, instructing, or training the Reserve components.

**Air Reserve Component**—The component of the United States Air Force that includes the AFR and ANG.

**Control Roster**—A rehabilitative tool for commanders to use for individuals whose duty performance is substandard or who fail to meet or maintain Air Force standards of conduct, bearing, and integrity, on or off duty.

**Commander** —A commissioned officer who, by virtue of rank and assignment, exercises command authority over a military organization or prescribed territorial area, which under

pertinent official directives is recognized as a 'command.'  This designation is used in all Air Force organizations authorized to be led by a commander, except the US Air Force Academy, which is commanded by a superintendent, and school/academic organizations, which may be commanded by commandants.  (See AFI 51-509)

**Commander's Management Rosters**—Listings of personnel assigned within the unit possessing a quality indicator (UIF, Control Roster, Article 15, etc.).  The Commander's Enlisted Management Roster also lists personnel possessing Enlisted Performance Report ratings which might indicate close observation of their performance is appropriate.

**Duty Status**—A member is considered to be in a duty status during any period of Active Duty, funeral honors duty or Inactive Duty Training; while traveling directly to or from the place at which funeral honors duty or inactive duty is performed; while remaining overnight immediately before the commencement of inactive duty training or between successive periods of inactive duty training, at or in the vicinity of the site of the Inactive Duty Training, if the site is outside reasonable commuting distance of the member's residence; and while remaining overnight at or in the vicinity of the place the funeral honors duty is to be performed immediately before serving such duty, if the place is outside of a reasonable commuting distance from the member's residence.

**Dropped-from-Rolls Status**—An administrative procedure that removes a member from the unit of assignment and reduces the unit's strength.  It does not end the member's military status.

**Misconduct**—Intentional conduct that is wrongful or improper.

**Personally Identifiable Information**—Includes the person's name, other particularly identifying descriptions (e.g., physical characteristics or identity by position, rank or organization) or other information about the person or the facts and circumstances involved that could reasonably be understood to identify the person (e.g., a female in a particular squadron or barracks when there is only one female assigned).

**Personnel Information File** —Are used in the handling of commander's or supervisor's assigned personnel.  These files are maintained and kept under authority of Title 10, U.S.C., Section 9013 and prescribed in AFI 36-2608, *Military Personnel Records System*.

**Preponderance of Evidence** —The preponderance standard means:  When it is more likely than not events have occurred as alleged.

**Separate(d)/Separation**—Severance of military affiliation as opposed to released from active duty.  For the purposes of this Air Force Instruction, separate(d)/separation refers to discharge from the Air Force (either Regular or ARC).

**UIF Establishing Authority**—The person with the authority to establish a UIF.  See **paragraph 3.1** for a complete list.

**Wing Commander (or equivalent)**—An officer in the grade of colonel or above who is a senior rater in the officer's chain of command.

## Attachment 2

## ADMINISTRATIVE ACTION PROGRAM SELF-INSPECTION CHECKLIST

**Self-Inspection Checklist:**

**A2.1.**  The proper authority is administering the UIF action.

**A2.2.**  All mandatory documents are filed in the UIF.

**A2.3.**  The UIF establishing authority refers optional UIF documents to the member before putting them in the UIF.

**A2.4.**  The UIF establishing authority allows the member 3 duty days to acknowledge the intended UIF action before the commander completes the action, for ARC members not in an active duty status the individual has 45 calendar days from the date of receipt of the certified letter.  (See **paragraph 3.2.4** of this instruction.)

**A2.5.**  The UIF establishing authority advises the member about the decision regarding the UIF within the required time limit.

**A2.6.**  The UIF establishing authority considers filing disciplinary actions completed before the UIF was established in a UIF.

**A2.7.**  The unit receives a copy of Air Force Form 1137 from the Adverse Administrative Actions Manager when a UIF is established or changed.  The UIF establishing authority reviews UIFs before a Permanent Change of Station or Permanent Change of Assignment.

**A2.8.**  The UIF establishing authority and Staff Judge Advocate review UIFs on an annual basis.

**A2.9.**  The UIF establishing authority or UIF establishing authority's representative replies to UIF recommendations made by the Force Support Squadron or Staff Judge Advocate.

**A2.10.**  The UIF establishing authority discusses early removal of a UIF document with the Staff Judge Advocate.

**A2.11.**  The UIF establishing authority uses AF Form 1058 to remove documents from the UIF, citing the specific document

**A2.12.**  The Adverse Administrative Actions Manager marks the front and back of envelopes containing UIF information FOR OFFICIAL USE ONLY.

**A2.13.**  The commander decides what happens to the UIF once the member returns from Absent Without Leave, deserter, or non-participant status.

**A2.14.**  The commander considers a Control Roster observation period for members who demonstrate substandard duty performance or fail to maintain Air Force standards.

**A2.15.**  The commander periodically (at least every 60 days) counsels personnel on the Control Roster about their improvement.

**A2.16.**  The commander considers directing an Officer or Enlisted Performance Report before entering or removing a member from the Control Roster.

**A2.17.**  The commander considers the member's service and overseas retainability before putting the member on the Control Roster.

**A2.18.**  The commander removes the member from formal training during the Control Roster observation period.

**A2.19.**  The proper authority places the member on the Control Roster using Air Force Form 1058.

**A2.20.**  The letter of reprimand, admonition, counseling, or RIC is prepared correctly.

**A2.21.**  The member replied to a letter of reprimand, admonition, or counseling within 3 duty days. For ARC members not in a duty status, the individual has 45 calendar days from the date of receipt of the certified letter.  (See **paragraph 3.2.4**)

**A2.22.**  Documentation of adverse administrative actions officers receive while TDY or deployed is forwarded to the unit commander for file in the UIF, PIF, and Officer Selection Record as applicable.

**A2.23.**  The commander is aware that once the Control Roster expires the individual will not be placed back on the Control Roster unless a separate incident occurs.

**Attachment 3**

**UIF LEGAL REVIEW CHECKLIST**

| Name: | Rank: | Unit: |
|-------|-------|-------|
|       |       |       |

**All references are to AFI 90-301, *Inspector General Complaints Resolution*.**

1. _____ _____ _____ Is the UIF folder marked with the individual's correct name?
   Yes   No    N/A

2. _____ _____ _____ Is the UIF folder marked front and back with "For Official Use Only"?
   Yes   No    N/A

3. _____ _____ _____ Was an automated listing (Commander Enlisted/Officer Management
   Yes   No    N/A Roster) of all current UIFs provided, AND did the listing for this UIF match the documents contained in this UIF?

4. _____ _____ _____ Is the proper UIF establishing authority (see paras. 2.1 and 2.2) making the
   Yes   No    N/A decision to file the records in the UIF?

5. _____ _____ _____ Are documents filed in the UIF with an entry on the Air Force Form 1137,
   Yes   No    N/A with associated AF Form 1058s AND with appropriate disposition date(s) on the AF Form 1137?

   **Note**: Mandatory documents for enlisted members are Article 15s with punishment exceeding 1 month (enlisted), court-martial or civilian court convictions; all Article 15s and LORs for officers.

6. _____ _____ _____ Did the AF Form 1058 indicate the member was served copies of the
   Yes   No    N/A optional UIF documents before they were put in the UIF?

7. _____ _____ _____ Was the member given 3 duty days (45 calendar days for Air Reserve
   Yes   No    N/A Component members not in a duty status) to acknowledge the intended UIF action on the AF Form 1058?

8. _____ _____ _____ Did the UIF establishing authority advise the member about the UIF
   Yes   No    N/A decision on the AF Form 1058?

9. _____ _____ _____ Does the AF Form 1137 contain the incident summary, disposition date, the
   Yes   No    N/A UIF establishing authority's evaluation of the incident, the commander's dated signature, AND the administrative action taken?

10. _____ _____ _____ Did the Adverse Administrative Actions Manager (or First Sergeant, if the
    Yes   No    N/A member is enlisted) sign and date each entry?

11. \_\_\_\_  \_\_\_\_  \_\_\_\_  Is the LOC/LOA/LOR prepared properly and correctly, giving the member 3
    Yes   No   N/A   duty days (or 45 calendar days) to submit additional matters?

    Does the letter state:
    1. What the member did or failed to do, citing specific incidents and
       their dates?
    2. What improvement is expected?
    3. That further deviation may result in more severe action.
    4. The evidentiary documents used to support the action?
    5. Member has 3 duty days (or 45 calendar days) to submit rebuttal
       documents for consideration by the initiator.
    6. Any written response provided by the member and/or his or her
       counsel will become part of the record.
    7. The initiator of the letter has 3 duty days (or 45 calendar days) to
       advise the individual of the final decision regarding any comments
       submitted.
    8. Does the letter contain a Privacy Act statement?

12. \_\_\_\_  \_\_\_\_  \_\_\_\_  If document(s) have been removed, has the AF Form 1137 been sanitized by
    Yes   No   N/A   erasing/whiting out comments about the removed document(s)?

13. \_\_\_\_  \_\_\_\_  \_\_\_\_  Is there an AF Form 1058 or memorandum for each time a document was
    Yes   No   N/A   removed early from the UIF, citing the specific document?  Member should
                     also acknowledge early removal.

14. \_\_\_\_  \_\_\_\_  \_\_\_\_  Did the UIF establishing authority decide to establish a UIF within 6 months
    Yes   No   N/A   of the date of the document/action, <u>AND</u> is the member still within the same
                     enlistment?

15. \_\_\_\_  \_\_\_\_  \_\_\_\_  Is any Control Roster correctly initiated with an AF Form 1058?
    Yes   No   N/A   1. Did the member acknowledge the action in Block III of the form?
                     2. Was the UIF establishing authority's action at least 3 duty days (or 45
                        calendar days) after acknowledgement?
                     3. Does the time period of any Control Roster action exceed 6 months
                        minus one day (or 12-months for a member of the Air Reserve
                        Component)?  It may not.

16. \_\_\_\_  \_\_\_\_  \_\_\_\_  Does the UIF contain matters submitted by the member in response to the
    Yes   No   N/A   RIC/LOC/LOA/LOR?  The answer should be yes.

17. \_\_\_\_  \_\_\_\_  \_\_\_\_  Does the UIF contain matters submitted by the member in response to an
    Yes   No   N/A   Article 15?  The answer should be no.

18. \_\_\_\_  \_\_\_\_  \_\_\_\_  Did the commander or equivalent forward copies of all adverse information
    Yes   No   N/A   to SAF/IG for officers in the grade of Colonel (O-6) and above?  The answer
                     should be yes. (see AFI 90-301 and AFI 36-2501)

19. ____ ____ ____   Did the commander or equivalent forward copies of the initial and updated
       Yes  No  N/A   AF Form 1137 for officers in the grade of Lieutenant Colonel and below to
the officer's servicing and gaining Major Command (para. 2.4.2.4.4)
(Regular Air Force and Air Force Reserve only)?  Did the commander
forward copies of the initial and updated AF Form 1137 for officers in the
grade of Lieutenant Colonel and below to the officer's installation Inspector
General for forwarding to SAF/IGQ in accordance with AFI 90-301 as
applicable (Air National Guard only)?

20. ____ ____ ____   Did the commander or equivalent forward copies of all adverse information
       Yes  No  N/A   to SAF/IGQ for officers in the grade of Major (O-4) and Lieutenant Colonel
(O-5)?  The answer should be yes. (see AFI 90-301)

21. ____ ____ ____   Are there any adverse actions contained in the UIF that were implemented
       Yes  No  N/A   without coordination with the legal office?  The answer should be no.
          1. If yes, was the level of censure (i.e., administrative or nonjudicial)
             appropriate for the alleged offense(s)?

22. ____ ____ ____   Has the correct expiration date been entered in the UIF for the document(s)
       Yes  No  N/A   referenced above?
If not, what is the correct expiration date?  _____

Disposition dates for common situations are as follows:

1. LOC/LOA/LOR (enlisted): 1 year from the date the UIF establishing
authority signs section V of AF Form 1058 (enlisted).  **Note**:  If there
are more than 14 days between the date on the AF Form 1058 and the
date of the LOC/LOA/LOR, create a Memorandum for Record
documenting the discrepancy and use the date of the LOC/LOA/LOR.

2. LOC/LOA/LOR (officer):  Two years from the date the commander
signs section V of AF Form 1058.  Only the member's current wing
commander (or equivalent), imposing or issuing authority, whichever
is higher, may authorize early removal.  **Note:**  If there are more than
14 days between the date on the AF Form 1058 and the date of the
LOC/LOA/LOR, create a Memorandum for Record documenting the
discrepancy and use the date of the LOC/LOA/LOR.

3. Article 15s (enlisted) with punishment of 31 days or more: date the
punishment or suspension was complete or the date the judgment was
vacated (minimum); two years from the date of the commander's
punishment decision (maximum).

4.  Article 15s (officer):  Four years from the date the commander's punishment decision, or Permanent Change of Station, transfer to another component, or separation plus one year, whichever is later.

5.  Court-martial convictions:  Two years from the date the sentence was adjudged (enlisted); four years from the date the sentence was adjudged or Permanent Change of Station, transfer to another component, or separation plus one year, or completion of sentence, whichever is later (officer).

6.  Civilian convictions with possible sentence greater than one year or death: two years from the date the sentence was final.

7.  Control Roster Action:  Member can only be on a Control Roster for six-months minus one-day (up to 12 months for Reservists) after the commander signs Section V on the Air Force Form 1058; record of a Control Roster action can remain in a UIF for up to 1 year after the commander or equivalent signs Section V on the Air Force Form 1058

23.  ____   ____   ____   Does the UIF establishing authority have the authority to remove the
      Yes    No    N/A    document(s) earlier than the expiration date?


**In accordance with AFI 36-2907, *Adverse Administrative Actions*, we have completed the legal review of the UIF on the member indicated on the top of this form and find it:**

____ Legally Sufficient        ____ Legally Insufficient;        ____ Legally sufficient, subject to
                                    see attached                      the attached comments being
                                    comments                          appropriately addressed
                                                                                Date


                                            Assistant Staff Judge Advocate,
                                            Unit

Attachment:
Legal Comments


I compared the automated listing for this UIF to the actual documents in this UIF folder to ensure database integrity.  **Note:** *The commander should respond to the legal review and state what was resolved and what still needs resolution. A commander may attach a "Legal Comments Resolution" document but must reference the attachment in the response.*

Date

Commander, _____
Unit
Attachment:  Legal Comments Resolution

**Attachment 4**

**SAMPLE GUIDANCE FOR RELEASE OF REPORT MEMORANDUM**

*Letterhead*

MEMORANDUM FOR [Respondent's Name]

FROM: [Insert Office]

SUBJECT: Guidance for the Release of [Name of Report/Investigation]

      The attached Report of Investigation is provided to you FOR OFFICIAL USE ONLY in responding to your [command action, such as Letter of Reprimand].  As these are protected documents, you and your attorney must comply with the provisions of the Privacy Act and (AFI 90-301, *Inspector General Complaints Resolution*).  Furthermore, you should be aware that improper release of information contained therein may constitute a violation of the Privacy Act, with potential civil and criminal penalties.

      Although you may utilize and/or attach these documents in your response to the [command action], you may not otherwise copy or distribute this Report of Investigation, or allow any other party to gain access to this Report of Investigation without prior consultation with [owner of the Report of Investigation/i.e., SAF/IGS] and prior approval of [owner of the report].  Furthermore, you are instructed to destroy these records upon completion of this action or return them to this office.

      Please do not hesitate to contact [Point of Contact's name] at [contact information] with any questions or concerns you may have on the proper release or disposal of this record.

                                   Signature Block

Attachment:
Report

**Attachment 5**

**SAMPLE ADMINISTRATIVE LETTER**

Date

MEMORANDUM FOR  [RANK FIRST M. LAST]
FROM:  Organization/Office Symbol [Issuer's organization and office symbol]
SUBJECT:  Letter of [Counseling/Admonition/Reprimand]

1.  Investigation has disclosed [the basis for the action, including what the member did or failed to do, citing specific incident(s) and their date(s)].

2.  You are hereby [counseled/admonished/reprimanded]!  [Discuss the impact of what the member did or failed to do].  [What improvement is expected].  Your conduct is unacceptable and further deviation may result in more severe action.

3.  The following information required by the Privacy Act is provided for your information. AUTHORITY: 10 USC § 9013.  PURPOSE:  To obtain any comments or documents you desire to submit (on a voluntary basis) for consideration concerning this action.  ROUTINE USES:  Provides you an opportunity to submit comments or documents for consideration. If provided, the response you submit becomes a part of the record.  DISCLOSURE:  Your written acknowledgment of receipt and signature are mandatory.  Any other comments or documents you provide are voluntary.

4.  [For Regular Air Force, Active Guard and Reserve, Air Reserve Component Statutory Tour members. or Air National Guard members in Title 10 status (officer and enlisted)]:  You will acknowledge receipt of this Letter of [Counseling/Admonishment/Reprimand] immediately by signing the first indorsement.  Within 3 duty days from the day you received this letter, you will provide your response by signing the second indorsement below. Any comments or documents you wish to be considered concerning this letter must be submitted at that time, and will become part of the record, consistent with AFI 36-2907, *Adverse Administrative Actions*, **paragraph 2.4.2.5.**  After receiving your response, I intend to notify you of my final disposition of this action within 3 duty days.

5.  [For Air Reserve Component members not in a duty status]:  You will acknowledge receipt of this Letter of [Counseling/Admonishment/Reprimand] immediately by signing the first indorsement.  Within 45 calendar days from the day you received this letter, you will provide your response by signing the second indorsement below.  Any comments or documents you wish to be considered concerning this letter must be submitted at that time, and will become part of the record, consistent with AFI 36-2907, *Adverse Administrative Actions*, **paragraph 2.4.2.5.** After receiving your response, you will be notified of my final decision regarding any comments submitted by you within 45 calendar days.

6.  [For officer Letters of Reprimand]:  If this Letter of Reprimand is sustained, it will be placed in an UIF.  Submit any comments or documents you wish to be considered concerning the UIF when you respond to the Letter of Reprimand.

Signature
Issuing Authority's Duty Title, Organization


[Attachment(s):
Enumerated documents as appropriate]

1st Ind to Organization/Office Symbol [of issuer], date, Letter of
[Counseling/Admonishment/Reprimand]
Recipient's Rank First M. Last                                              Date
MEMORANDUM FOR  Organization/Office Symbol [Issuer's organization and office symbol]
I acknowledge receipt and understanding of this letter on _____ at _____
hours.  I understand that I have [3 duty days][45 calendar days] from the date I received this
letter to provide a response and that I must include in my response any comments or documents I
wish to be considered concerning this Letter of [Counseling/Admonishment/ Reprimand].

Signature
Letter Recipient

2nd Ind, Recipient's Rank First M. Last                                        Date

MEMORANDUM FOR  Organization/Office Symbol [Issuer's organization and office symbol]

I have reviewed the allegations contained in this Letter of [Counseling/Admonishment/
Reprimand].  (I am submitting the attached documents in response) (I hereby waive my right to
respond).



                                             Signature
Letter Recipient

3d Ind, Organization/Office Symbol [Issuer's organization and office symbol]
        Date



MEMORANDUM FOR RECIPIENT RANK FIRST M. LAST

(I have considered the response you submitted on _____.) (You waived your right to
submit a response to this action).  I have decided to [withdraw the Letter of
[Counseling/Admonishment/Reprimand] [sustain the Letter of
Counseling/Admonishment/Reprimand] [reduce the action to a Letter of
Admonishment/Counseling].   [For officers only:  This Letter of Reprimand will be placed into

an UIF.]  [For officers only:  Issuing authority should forward the Letter of Reprimand to the officer's senior rater who will determine whether to file the Letter of Reprimand in the member's Officer Selection Record.  If done so, member gets three duty days to provide information for the senior rater to consider.]

Signature
Issuing Authority's Duty Title, Organization

4th Ind to Organization/Office Symbol [of issuer], date, Letter of [Counseling/Admonishment/Reprimand]

Recipient's Rank First M. Last                                                                          Date

MEMORANDUM FOR  Organization/Office Symbol [Issuer's organization and office symbol]

I acknowledge receipt of the final decision regarding disposition of this Letter of [Counseling/Admonishment/Reprimand] on _____ at _____ hours.

Signature
Letter Recipient

**Note:**  The 1st Indorsement (Ind) is dated the same day the member receives the letter; the 2d Ind is dated within 3 duty days (or 45 calendar days for Air Reserve Component members not in a duty status);  the 3d Ind should be dated within 3 duty days (or 45 calendar days) of the 2d Ind.  When the first indorsement occurs on any page other than the letterhead page, it must include the citation line for the letter.  In this example, the 1st Ind is the first indorsement to occur on a new page.  The citation line for the indorsement memorandum consists of the indorsement number followed by the Organization/Office Symbol, SUBJECT, and date of the original memorandum.  The citation line ends with the indorsement date:  for administrative actions this should be the same as the Letter of Reprimand date.