# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

| | |
|---|---|
| **BEN COKER**, *et al.*                 ) | |
|          **Plaintiffs,**       ) | |
|          ) | |
|     **vs.**                   ) | **CIVIL ACTION NO.** |
|          ) | **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III,** *et al.*,      ) | |
|          **Defendants.**      ) | |

# DECLARATION OF SEAN COTHRAN
# IN SUPPORT OF PLAINTIFFS' COMPLAINT AND MOTIONS

1. I am over 18 years of age and am competent to testify in this matter.

2. All of the statements made in this declaration are true to the beset of my own personal knowledge.

3. I am Sean Cothran, and I make this declaration in support of the Plaintiffs' complaint and the motions for stay, declaratory and injunctive relief filed in the above captioned proceeding.

4. I am filing this declaration under seal, and pursuant to the protective order adopted in this proceeding, due to credible concerns regarding retaliation, adverse employment actions and disciplinary actions.

5. I am a Captain in the United States Air Force and have served for over 5.5 years.

6. I am currently stationed at Hurlburt Field, and I am domiciled in Fort Walton Beach, FL.

7. I have served the United States of America on two deployments overseas to Iraq and Afghanistan since March 2020 lasting a combined six months. I have earned five Air Medals under Combat conditions, the Inherent Resolve Campaign Medal, the Afghanistan Campaign Medal, the Aerial Achievement Medal, the Air Force Achievement Medal, the Combat Readiness Medal, the Air Force Expeditionary Service Ribbon, and the Non-Article 5 NATO Medal among other

medals and ribbons I have earned over the past 5 years.

8.  I received an order on September 10, 2021 to receive the first dose of the Pfizer-BioNTech COVID-19 Vaccine by September 28, 2021 to meet a fully vaccinated deadline of November 2, 2021.  If I do not comply with this order, I have been told through written memorandums and by my chain of command administrative action will be taken against me in accordance with Article 92 of the UCMJ.

9.  I have been told by my chain of command that even if my religious exemption was approved, per the new Air Force memorandum from September 24, 2021 regarding official travel attached to this declaration, I will no longer be eligible to go on official travel either domestically or on deployments overseas unless I am deemed "mission critical".  Since my next crew position upgrade is considered official travel on Temporary Duty Travel (TDY), I am ineligible to attend the upgrade training because of my unvaccinated status.  As such, I cannot upgrade to my next crew position nor could I attend any official training in the United States or deploy overseas because of the vaccine mandate.

10. I pursued a medical exemption from the COVID-19 vaccine on September 16, 2021 because of my natural immunity from prior infection.  However, I was promptly denied by a flight doctor because I do not qualify for an exemption according to the questionnaire I filled out at the 1st Special Operations Medical Group (SOMDG).  Additionally, I applied for a religious exemption from the COVID-19 vaccine and was reviewed by the Religious Review Team (RRT) at the 1st Special Operations Wing before being sent to Air Force Special Operations Command. My chain of command has communicated to me if my Religious Exemption request is denied, the "lawful" order still stands and I must comply to avoid the administrative action mentioned previously being taken against me.

11. I was infected with COVID-19 on October 16, 2020 with symptoms and tested positive at the 1 SOMDG 4 days later on October 20, 2020 as shown in the attached pdf.  I was quarantined for 10 days until I had no symptoms and was fully recovered from COVID-19 which allowed me to return to work on October 30, 2020.  Approximately 11 months later on September 13, 2021, I went to Quest Diagnostics to test myself for COVID-19 antibodies. The test results came back positive, which means I currently have natural immunity to COVID-19.

12. I have a documented waiver on my medical flight record for an irregular heartbeat.  It does not affect me physically nor does it prevent me from flying airplanes.  However, one of the potential medical risks of taking the vaccine is

myocarditis of the heart. I mentioned this to the flight doctor at the 1st SOMDG and they did not believe it was a high-risk condition in relation to the vaccine. They are only concerned if I've had prior myocarditis, pericarditis, or myocarditis as a result from the first shot of COVID-19. As such, I wish to not take the vaccine and put myself at greater risk of a heart condition in the future.

13. I also face the loss of retirement, veterans and other governmental benefits.

14. On December 14, 2021, I received notice from my squadron commander that my initial Religious Accommodation Request to not get the COVID vaccine was denied by Lieutenant General Slife, Commander of Air Force Special Operations Command. His denial letter was not personalized and seems to be a duplicate denial letter sent to everyone under his command as seen in the attached pdf.

15. On December 21, 2021, I sent my written appeal addressed to the Air Force Surgeon General advising my disagreement with Lieutenant General Slife's decision to deny my religious accommodation request. I inquired to my squadron commander about the contradiction between the Secretary of the Air Force's memorandum stating the appeal process on December 7, 2021 versus what the DoDI 1300.17 says about who religious accommodations get sent to in the chain of command, but got no response.

16. On January 28, 2022, I received notice that my appeal to the Air Force Surgeon General of the previous denial by the Commander of Air Force Special Operations Command was also denied. I was given five calendar days from January 31, 2022 when I returned from personal leave to either "receive an initial dose of a COVID-19 vaccine with full licensure approval from the FDA" or apply for voluntary separation. If I do not do either of these things, I will be punished for disobeying a lawful order.

17. On January 21, 2022, I received a response from the 1st Special Operations Medical Group on Hurlburt Field, FL that one of the COVID vaccine lots available to active duty servicemembers on base is 30145BA. This lot number is exclusively labeled as Pfizer-BioNTech under Emergency Use Authorization, and therefore not a BLA-compliant lot under the Secretary of Defense's vaccine mandate dated August 24, 2021. Therefore, I am being ordered to get an EUA vaccine.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 1, 2022.

/s/Sean P. Cothran

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| **BENJAMIN COKER,** *et al.* )  | |
| **Plaintiffs,** ) | |
| **vs.** ) | **CIVIL ACTION NO.** |
| ) | **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III,** *et al.*, ) | |
| **Defendants.** ) | |

**DECLARATION OF SAM CRAYMER**

1. I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the beset of my own personal knowledge.

2. My religious accommodation request is still pending.

3. I have a PCS restriction against me and I have been removed from the latest Temporary Duty location. I believe this is because of my vaccinated status.

4. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 3, 2022.


_____/s/_____
Sam Craymer

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **BENJAMIN COKER, *et al.*** | ) |
| **Plaintiffs,** | ) |
| **vs.** | ) |
| | ) **CIVIL ACTION NO.** |
| **LLOYD AUSTIN, III, *et al.*,** | ) |
| **Defendants** | ) |

### DECLARATION OF KACY DIXON

1. I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the best of my own personal knowledge.

2. I am a Major in the United States Air Force and have served for nearly 13 years. My primary Air Force Specialty Code (AFSC) is 51J, Judge Advocate and my secondary AFSC is 14N, Intelligence Officer.

3. I am currently stationed at The Judge Advocate General's Legal Center and School in Charlottesville, Virginia, and I am domiciled in Wyoming.

4. On September 20, 2021 I received a written order from my Commander, Colonel Paul K. Harmer, to receive the COVID-19 vaccine.  The order stated that mandatory vaccination would only use vaccines with full licensure approval from the Food and Drug Administration (FDA).

5. The order further stated that failure to comply could result in administrative and/or punitive action under Article 92, Uniform Code of Military Justice. Punitive actions authorized under this article include discharge and accompanying loss of veterans' benefits, total forfeiture of pay and allowances, and imprisonment.

6. On September 27, 2021, I was granted a temporary medical exemption from the COVID-19 vaccine due to pregnancy. This exemption had an expiration date of November 24, 2021.

7. On November 2, 2021, in advance of the expiration of my pregnancy waiver, I emailed Col Harmer to seek clarification on his COVID-19 vaccine order. I inquired about my obligations to receive a COVID-19 vaccine if I was unable to locate a product that was fully licensed by the FDA. In my email I attached information from the FDA listing Comirnaty as the only FDA approved (licensed) COVID-19 vaccine, the FDA letter reissuing the EUA for the Pfizer BioNTech vaccine which was current as of October 29, 2021, and the Vaccine Information Fact Sheet for the Pfizer COVID-19 vaccines which noted a distinction in ingredients between Comirnaty and BioNTech. Specifically, the document stated that some doses of BioNTech ingredients would mirror Comirnaty while others may include the following "additional ingredients": tromethamine, tromethamine hydrochloride, and sucrose. These ingredients were

1

not listed for any doses of Comirnaty. (The Vaccine Fact Sheet has since been changed current as of January 3, 2022 to state that some doses of Comirnaty may include these ingredients as well and that individuals receiving COVID-19 vaccination should ask the vaccination provider which version is being administered.)

8. In addition to the information from the FDA website, I also provided my Commander information I received from seven local pharmacies, all of which indicated they did not have the FDA licensed COVID-19 vaccine, Comirnaty. Some did not have any Pfizer COVID-19 vaccines and some stated that the Pfizer COVID-19 vaccines they carried were the Pfizer BioNTech vaccines issued under Emergency Use Authorization (EUA). I also emailed the nearest military medical treatment facility (MTF) to ask which vaccine product(s) they had available but did not receive a response.

9. On November 2, 2021, Col Harmer responded stating that any of the aforementioned vaccines would be acceptable to receive to carry out his order. He further stated that regarding the licensed Pfizer Comirnaty and the EUA Pfizer BioNTech vaccines it was the "same juice in the shot".

10. On November 3, 2021, I emailed Col Harmer stating that I interpreted his order requiring vaccination with vaccines that received "full licensure" as not requiring me to receive an EUA vaccine and to the extent that was an accurate interpretation, I would decline any EUA vaccines. I also noted that I was especially averse to taking an unlicensed product while nursing my newborn son. I again iterated that while the products were "interchangeable", I believed this to be from a medical perspective, not a legal one, noting that Pfizer and the FDA had explicitly referred to the products as "legally distinct". I then asked him to clarify if he considered Pfizer BioNTech to be a licensed product or an EUA product. Further, I asked if, in the event he considered it to be EUA, was it a mandated product under his order regardless of its EUA status.

11. On November 22, 2021 I still had not received a response from Col Harmer so I re-sent the email, again requesting clarity on the status of the Pfizer BioNTech vaccine and if it was a mandated product. The same day I received a reply 1) reiterating I was ordered to receive a COVID-19 vaccine with "full licensure", 2) stating that the DOD had directed DOD healthcare providers to "use both the Emergency Use Authorized (EUA) Pfizer-BioNTech COVID-19 vaccine and the Comirnaty COVID-19 vaccine interchangeably for the purpose of complying with the 24 Aug 21 SecDef memorandum", and 3) stating that my interpretation of "interchangeability" as meaning a medical interchangeability was "not consistent with the stated position of the DOD".

12. The November 22, 2021 email from Col Harmer concluded that unavailability of Comirnaty alone was not adequate grounds for failing to comply with his order.

13. On November 22, 2021 I responded asking him to confirm that his last email was ordering me to receive the EUA Pfizer BioNTech COVID-19 vaccine.

14. On November 23, 2021 I received a call from Col Harmer's Staff Judge Advocate (SJA), Major Timothy Bennett. The phone call lasted for approximately one hour, however, no direct answer

was given on whether or not the Pfizer BioNTech vaccine was licensed or under EUA. I was again told Comirnaty and BioNTech are "interchangeable". When I asserted that "interchangeable" was a medical reference indicating an individual could, for example, take a dose of Comirnaty, then a dose of BioNTech, in a two dose shot series Maj Bennett told me that it was Department of the Air Force interpretation that the "interchangeability" included legal interchangeability and Col Harmer could lawfully order me to receive the EUA Pfizer BioNTech vaccine.

15.  Col Harmer emailed me shortly after stating that I had been informed of the status of the product and the lawfulness of his order, though did not indicate what the status of the product was (i.e. EUA or licensed).

16.  On November 24, 2021 I submitted a request for medical exemption under code "MS" of the DOD immunization regulation. Code MS is a medical exemption for "lack of vaccine supply". In my request I provided a letter from Pfizer to healthcare professionals directing them not to throw away doses of vaccine issued under EUA since "some" met the requirements under the biologics licensing application (BLA). The letter contained a QR code that, when scanned, displayed a list of the lot numbers of EUA Pfizer BioNTech vaccine that met BLA requirements. I also provided the lot number of the Pfizer BioNTech product located at my servicing pharmacy. The lot number of the product I had access to was not on the list. It was not fully licensed, nor did it meet the BLA requirements.

17. On November 29, 2021 after reading the November 12, 2021 judge's order in the above captioned case I forwarded the order to Col Harmer and Lt Col Don Salvatore. I asked them to include it in their consideration of my medical exemption request for lack of vaccine supply.

18. On December 1, 2021 I had a telephonic medical appointment with Captain Thomas Vaughn to discuss my request for medical exemption from the COVID-19 vaccine. I asked for medical exemption under code MS, as well as a medical exemption while nursing. I explained that nursing women were explicitly excluded from the testing of the COVID-19 vaccines. The FDA website and the Pfizer product insert stated there was insufficient information to know how the vaccine effected nursing women and their babies and directed them to consult with their physicians. Captain Vaughn was sympathetic but notified me during our call that his memo would recommend denial of both of my requests because my requests were not "approved" reasons for which to grant exemption. When I inquired what he meant he stated that other than pregnancy, there were only two things for which he could grant exemption. One was a medical condition with which I was unfamiliar and the other was if an individual had an adverse reaction to the first dose of the COVID-19 vaccine they could be exempted from the second. He indicated he did not have independent discretion to approve requests. He was also required to read me a script about the COVID-19 vaccine.

19. On or about December 2, 2021 my requests for medical exemption under code MS for lack of vaccine supply and for nursing were denied. I appealed this decision and my appeal was also denied.

20. On or about December 1, 2021, in anticipation of my medical exemption request being denied, I submitted a request for religious accommodation from the COVID-19 vaccine mandate. This

request was submitted to Lt Col Salvatore. He and I previously discussed, via telephone on November 8, 2021, that I had a religious accommodation request package prepared, however, I preferred to wait to submit it until my medical exemption requests were exhausted.

21.   On November 29, 2021 I was notified by my JAG Corps assignments team that I had been selected for an assignment at Hurlburt Field, Florida. On December 1, 2021 I received an email from Lt Col Salvatore notifying all unvaccinated personnel that we are ineligible to receive orders or progress to new assignments while unvaccinated unless we have an approved medical or religious exemption. I am currently barred from progressing to my follow on assignment since I am unvaccinated and my request for medical exemption due to lack of licensed vaccine supply was denied. Unvaccinated personnel were also informed that upon denial of exemption requests we would either have to "accept the vaccination or face disciplinary action".

22.   After my requests for medical exemption were denied I contacted Plaintiffs' counsel in the above captioned case and joined as a Plaintiff. On December 10, 2021, I notified my chain of command of my status as a Plaintiff and submitted a request for temporary administrative exemption from the COVID-19 vaccine mandate. This request was made under code "AT" of the immunization regulation for "legal action pending". This request was denied.

23.   On January 20, 2022, I received an email from my chain of command notifying me that voluntary separation, if requested, is likely to be denied. Instead, I was informed that "Upon denial of the sep[aration]/ret[irement] request [you] will have five days to get vaccinated or find [yourself] in violation of the SECDEF's vaccination order and will be subject to administrative (disciplinary) discharge actions." My chain of command was awaiting guidance to see if they'd be told to issue letters of counseling that would lead to a recommendation to discharge or if the disciplinary action would "follow the [letter of counseling], [letter of reprimand], Art[icle] 15, Court Martial route."

24.   I am still nursing my three-month old son and he exclusively consumes breastmilk either from nursing or that I pump and feed him via bottle.

25.   I am required to report for duty thirty minutes early on the first day of each work week to undergo COVID-19 testing via nasal swab due to being unvaccinated against COVID-19. This testing is conducted even though I have experienced no COVID-19 symptoms and have had no known contact with any COVID-19 positive individual since the vaccine was mandated in August of 2021.

26.   I previously had COVID-19 in September of 2020. My daughter was sent home from the base child development center due to her teacher testing positive for COVID-19. I was instructed to quarantine at home with her. Within days I became ill with Covid-like symptoms for approximately 48 hours. I continued to have one symptom – complete loss of taste and smell – for nearly three weeks. When I contacted the base Covid hotline number to inquire if I needed to come in for testing, I was directed that based on the circumstances I had a presumptive positive case. I was informed I did not need to come in for testing unless I felt ill enough that I needed to seek medical care. I did not require medical treatment so was directed to continue to quarantine.

27.  In addition to being a nursing mother I am also a woman of child bearing potential. I was previously diagnosed with unexplained secondary infertility and had to seek medical intervention to conceive my second child. Specifically, I took Clomid via oral pill, Ovidrel via monthly injection, and underwent three rounds of intrauterine insemination. It is my understanding, based on documents from Pfizer's clinical trials of the Pfizer COVID-19 vaccines, that the clinical trials expressly excluded women who are breastfeeding, pregnant, or trying to become pregnant (whether naturally or through fertility treatments). Furthermore, I am concerned about potential unknown negative impacts on my fertility due to Pfizer's study stating that "human reproductive safety data are not available for BNT162 RNA-based COVID-19 vaccines", which include both the Comirnaty and BioNTech Pfizer vaccines.

28.  I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February _4th_, 2022.


Kacy Dixon

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BENJAMIN COKER, *et al.*          )
                                  )
           Plaintiffs,            )
                                  )
vs.                               )       CIVIL ACTION NO.
                                  )       3:21-cv-01211-AW-HTC
LLOYD AUSTIN, III, *et al.*,      )
                                  )
           Defendants.            )

### DECLARATION OF NICHOLAS HARWOOD

1. I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the beset of my own personal knowledge.

2. My religious accommodation appeal was denied by the Assistant Commandant of the Marine Corps on 7 December 2021. Even though my military Chaplain and my church supported my sincerely held religious beliefs – the Marine Corps, in my denial letter, stated 'I have determined that the COVID-19 vaccination requirement does not substantially burden my sincerely held religious belief because fetal stem cells are not used in the manufacture of the Pfizer COVID-19 vaccine, nor are they present in the vaccine itself.'

3. In making the determination for my appeal, my Commanding Officer, LtCol Joseph Petkus, was solicited by the Marine Corps to fill out a document which accompanied my Religious Accommodation Appeal. This document asked questions about the type of office I worked in, did I go to the field, did I live on base, how many people did I usually interact with, etc – all of this was used against my religious accommodation appeal without my input.

4. On 8 December 2021, I was given a written order to receive, within 48hrs, the very same vaccine that I professed my religious convictions against. At 1201, on 10 December 2021, I was given an IRAM 3005 negative counseling document for Article 92 violation of the UCMJ for 'violation to follow a lawful order' and I was removed from my position as Executive Officer (2nd in command) for 1st Maintenance Battalion due to my disobedience. My removal was for the 'loss of trust and confidence in my ability to lead.' Executive Officer is one of the premier billets for someone of my rank, so by removing me, the Marine Corps is purposely hindering any chances I have at future promotion and longevity.

5. Both of these actions are punitive and career damaging. By receiving the negative counseling document, which permanently goes on my professional military record, future service with the Marine Corps is irrevocably marred. This is the first negative piece of paperwork I have received. I was humiliatingly removed from my job in front of my co-workers and peers and within two hours of my 'firing' my replacement was already at my

unit and checking in to take my position.  This tells me that the decision to relieve me was pre-meditated.

6.  10 December 2021, I was moved to a different unit and a new position while I wait out my fate in the military.  I was told that I could no longer serve with 1st Maintenance Battalion because it is a deployable unit and I was a risk to the health and safety of others.  I was moved to another deployable unit in which I work around more people and interact with many more different units than I did before.  It is clear that the military did not move me to protect me or others.  But rather it was a retaliatory move to 'punish' me for standing up for my religious beliefs against the military's desires.

7.  On 8 December 2021, the day after my appeal came back denied, I submitted a request through my Commanding Officer for consideration for early retirement.  The Marine Corps has a Temporary Early Retirement Authority Program (TERA) for those with 15 years or more to retire early.  I hit 15 years in May 2022.  I submitted under the hardship paragraph that I qualify for this program since my appeal was denied and my religious beliefs and the service are at an impasse.  My command has stalled and delayed on endorsing this, at present they still have not endorsed nor have they forwarded my request to Headquarters Marine Corps as required.  The G-1, Administration Operations Officer, for 1st Marine Logistics Group confirmed with Headquarters Marine Corps that my request for TERA must be forwarded.  Yet, 52 days later, my command is still sitting on my request in what can only be assumed as a retaliatory measure.  (To qualify for TERA, you cannot be facing legal action – to date I am not facing legal action because I haven't been notified of a Board of Inquiry.  I believe my command is holding onto the request until I am officially pending legal and then I will be ineligible to submit for TERA).

8.  After I was given the order to receive the vaccine, I called medical to set up an appointment with the 13 Area medical clinic and asked to make an appointment to receive Comirnaty.  The Navy Corpsman had no idea what I was talking about and said they do not have Comirnaty but only Pfizer.

9.  My Commanding Officer, LtCol Joseph Petkus, gave me a written order to receive the FDA approved COVID-19 vaccine, even though the FDA-approved vaccine, as of this date, does not exist on Camp Pendleton, CA.

10.  Marine Corps guidance to Commanders states Comirnaty and Pfizer BioNtech are "same formulation' and 'commanders may order an unvaccinated Marine to receive the Pfizer produced vaccine whether the particular dose was produced before or after FDA licensure."

11.  I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 4, 2022.

Nicholas Harwood

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| BENJAMIN COKER, *et al.* ) | |
| Plaintiffs, ) | |
| vs. ) | CIVIL ACTION NO. |
| ) | 3:21-cv-01211-AW-HTC |
| LLOYD AUSTIN, III, *et al.*, ) | |
| Defendants. ) | |

## DECLARATION OF ERIC KALTRIDER

1. I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the best of my own personal knowledge.

2. My religious accommodation request, submitted on 10 September 2021, was denied. My appeal was submitted 15 November 2021. It is still pending.

3. I provided evidence (positive serological test results) of natural immunity against COVID-19 to my commanding officer with my religious exemption package (on 10 Sep 2021), and I sent the same evidence separately to my unit's medical officer on 1 Oct 2021 as grounds for permanent medical exemption per BUMEDINST 6230.15B.   Simultaneously, I informed the medical officer that per the SECDEF's mandatory COVID-19 vaccination memo of 24 Aug 2021 (and per MARADMIN 462/21), I am supposed to be administratively exempt from the mandate because I am actively participating in a clinical trial.  To my knowledge, the medical officer has taken no action to process the medical exemption, or the administrative exemption.  The same medical officer told another, similarly situated service member in my unit, that despite his positive antibody test and his ongoing participation in clinical trials, he will be required to get the COVID-19 vaccination.

4. On 17 Sep 2021, my commanding officer issued me a formal Page 11 counseling regarding mandatory COVID-19 vaccination, requiring me to acknowledge warnings of potential punitive action or adverse administrative action or both.  At that time, my commanding officer asked me sternly, "Are you willing to resign over this?"

5. There is no Comirnaty available, nor are there BLA-compliant lots of Pfizer's EUA BioNTech vaccine available, at Camp Lejeune medical facilities.

6. On 17 Sep 2021, my commanding officer (CO) warned me that should my exemption request be disapproved by DC, M&RA, I could expect to receive a direct order to get vaccinated with a deadline--and, per his continuing discussions with the commanding general, quickly:  potentially without waiting for my appeal to be answered by CMC.

Although my commander has not yet done so, other commanders at Camp Lejeune are issuing such orders while FDA-approved vaccines are not available.

7. Certain medical officers aboard Camp Lejeune acknowledge nonavailability of FDA-approved COVID-19 vaccines (i.e., Comirnaty), but simultaneously call Pfizer's EUA drug BioNTech "generic" and "approved in the DoD mandate," as if the law did not require (as it does) that a distinction be observed between fully licensed products (so labeled) and anything else, which may not legally be mandated.

8. Colonel Brian E. Russell's assertions about cancelling TAD orders in my case are not factually accurate. I was the only one in my unit both trained and ready to go. The Italian government's policy did not preclude my entry. The CO wanted me nearby in anticipation of potential punitive/adverse action over the shot. I was informed on 14 September 2021 that "just about all commands are discouraging or even restricting travel for unvaccinated individuals."

9. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 4, 2022.

_Eric Kaltrider_

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| **BENJAMIN COKER,** *et al.* | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III,** *et al.,* | ) | |
| **Defendants.** | ) | |

**DECLARATION OF NICKOLAS KUPPER**
**IN SUPPORT OF PLAINTIFFS' COMPLAINT AND MOTIONS**

1. I am over 18 years of age and am competent to testify in this matter.

2. All of the statements made in this declaration are true to the beset of my own personal knowledge.

3. I am Nickolas S. Kupper, and I make this declaration in support of the Plaintiffs' complaint and the motions for stay, declaratory and injunctive relief filed in the above captioned proceeding.

4. I am a Master Sergeant in the United States Air Force and have served for 18.5 years.

5. I am currently stationed at Luke Air Force Base, Arizona and I am domiciled in Surprise, Arizona.

6. Since 2003 I have served in 13 positions at five bases in four major commands across three states and two countries. I have deployed twice and earned 16 medals including two Meritorious Service Medals, three Commendation Medals and one Navy Achievement Medal.

7. The vaccination deadline for Active Duty members in the Air Force was 2 November 2021. On 7 September 2021 my squadron commander, Major Johnathan D. Marburger, sent an email directing that I be vaccinated per the SECAF's order. On 22 September 2021 I filed a religious accommodation request

to be exempted from COVID-19 vaccination. In September 2021 I was verbally told by my squadron chief, squadron commander, group chief and group deputy commander that even if I were to get my religious accommodation approved that I would be discharged anyway due to military readiness. The Air Force has sent out guidance that says members seeking a religious accommodation are temporarily exempt from vaccination while their request is being considered. If my request is denied I have been told that I will have five calendar days to either take the vaccine or submit an appeal to the Air Force Surgeon General. If that appeal is denied then I have been informed that I will have five calendar days to take the vaccine. I have been directed to only file an appeal to the Air Force Surgeon General (AF/SG) although the DoD Instruction states that appeals will go to a member in the chain of command above the approval authority. The AF/SG is not in the chain of command above the approval authority. I notified my command and base legal team that this order from the SECAF is an unlawful order since it contradicts a superior order, but they have completely ignored the DoD Instruction and repeatedly said that the AF/SG will be the only appeal option.

8. On 25 January 2022 I was denied the opportunity for a week-long temporary duty due to being unvaccinated. I was initially told by my Lieutenant that I could not go because I was unvaccinated and that after discussing it with the First Sergeant it was determined that I would need a waiver that would likely not be approved so I was removed from the trip. The following day my commander, who was quarantined at home with COVID-19, called me to clarify that I could go on the trip and that the Lieutenant had misspoken. He informed me that I would require a waiver that was from such a high level that it likely wouldn't get approved. Additionally my base Staff Judge Advocate, Lt Colonel Dustin Tipling, called my acting commander on 15 December 2021 to inform her that I was not longer allowed to speak directly with the base Legal, Medical and Chaplain offices about religious accommodations due to my lawsuit. I filed an Inspector General complaint against Lt Colonel Tipling for infringing on my right to speak with a chaplain. The complaint has not resolved yet.

9. On 24 June 2021 I had an appointment with my base Immunologist, Major Geoffrey Carlson, to request a medical exemption for having antibodies to COVID-19 already. He informed me that he couldn't give me that exemption until the vaccine was actually mandated and to come back when it became mandated. Before the COVID-19 mandate the Air Force had already granted me natural immunity exemptions to every vaccine with the exception of the Flu and Tetanus vaccines. After the COVID-19 mandate went into effect I was granted a

natural immunity exemption for the Tetanus vaccine as well based on my positive antibody test. On 5 August 2021 I emailed Major Carlson requesting a natural immunity medical exemption to the COVID-19 vaccine. I highlighted the scientific reasoning and regulations (AFIs) supporting this exemption. He acknowledged that my "handle on the science and AFIs" was correct. He again said that we needed to wait to see what the wording of the mandate would be. On 30 August 2021 I had an appointment with Major Carlson to request a natural immunity exemption to the COVID-19 vaccine. I demonstrated to Major Carlson that I had three positive antibody tests for COVID-19 showing that I had immunity to the virus. The tests showing that I had natural immunity were taken at one, four and five months after my January 2021 COVID-19 infection. Major Carlson acknowledged that I was, according to my results and the scientific data available, more immune than a person who had a 2-shot mRNA series, but who had never been infected. Once again Major Carlson said that he could not give me a natural immunity exemption at that time. On 22 September 2021 I submitted a request for a religious accommodation to the COVID-19 vaccine. Although it has not returned yet from the Major Command Commander it was found that I do have a sincerely held belief and was recommended for approval by the Chaplain whom I interviewed with, but was recommended for denial by the Religious Resolution Team (RRT), my squadron commander, group commander, the Staff Judge Advocate (Lt Colonel Tipling) and my wing commander. Additionally my squadron commander wrote two separate denial recommendations for me. On 8 October 2021 he wrote and signed the first and it was indorsed by the group commander. That recommendation was a template that was rife with errors and in no way accurately described my specific situation. On 8 December 2021 he wrote another denial recommendation which was also indorsed by the group commander. This one was more specific than the first, but also had inaccuracies and the justification for the denial recommendation did not meet the intent and direction of our regulations. Furthermore, on 14 January 2022 my commander filed a declaration with this court that was inaccurate. First he said that I share "an approximately 15 ft by 15 ft work-space." I measured my work-space and it is 16 ft 10 in by 19 ft 4 in. Additionally he stated; "our facilities do not offer seclusion supportive of social distancing." Four days before he wrote that I sent an email to my command team where I wrote down the actual measurements between each desk/sitting space in my office. Those measurements showed that I sat 10ft, 13ft and 18ft away from the others in my office. The CDC and DoD standard for social distancing is 6ft; social distancing is not an issue in my office. As for our facilities not offering social distancing; I have measured and the room directly outside of my office would offer me the opportunity to sit a minimum of 24 ft away from anyone if need be.

10. I was infected with COVID-19 at the end of January 2021. I was practically asymptomatic and as such I did not take a COVID-19 test. On 28 Feb 2021 I donated blood with the Red Cross and they tested my blood for COVID-19 antibodies. That test came back positive which informed me that I previously had a COVID-19 infection. I took four more antibody tests at four, five, eight and 12 months post infection. Each came back positive for COVID-19 antibodies. The most recent test, 26 January 2022, showed an antibody count of >2,500 U/ml which was the highest that the test could measure. As an unvaccinated member of the Air Force I have been required to take a COVID test every week even without symptoms. I have tested negative every time for the two months I've been taking them weekly. During this period the three fully-vaccinated members of my office (one of whom is boosted) have all tested positive for COVID-19. Additionally in the month of January 2022 my commander, both Lieutenants, both First Sergeants, Chief and 17% of my vaccinated airmen under my leadership have all tested positive. Only one of my unvaccinated members has tested positive for COVID-19 which accounts for 7% of my unvaccinated members.

11. On 20 October 2021 I emailed Major Carlson to ask if our base had any vaccine labeled as Comirnaty or if we had any of the, at that time seven, lot numbers that Pfizer considered BLA-approved. He responded that we did not have any Comirnaty nor any of the BLA-approved lot numbers. On 25 January 2022 I emailed Major Carlson again and asked if we had any of the nine BLA-approved lot numbers at our base. He responded that the current lots we had were FE3590 and FL3209. Neither of those lot numbers are the BLA-approved lot numbers. On 27 January 2022 1st Lieutenant Lightfoot, stationed at my base, emailed Major Carlson and asked which lot numbers we had available and was told the same two lot numbers that I had been told.

12. On 28 January 2022 Lt Lightfoot again emailed Major Carlson and requested a medical exemption (code MS) as outlined in the immunizations regulation due to a lack of vaccine supply since our base did not have any approved vaccines available. Major Carlson responded and said "I can tell you the FDA considers them interchangeable." Major Carlson denied Lt Lightfoot his exemption and directed him to speak with Legal. On 31 January 2022 Lt Lightfoot emailed Legal, Major Carlson and his Squadron Commander about the lack of vaccine supply exemption and requested that Legal allow Major Carlson to grant the exemption since we have no approved vaccine supply on our base. Legal has not responded. Even though the SECDEF's order only mandates "COVID-19 vaccines that receive full licensure from the Food and Drug Administration" his

squadron commander still issued Lt Lightfoot a Letter of Reprimand on 31 January 2022 for refusing "to be vaccinated IAW [In Accordance With] the Secretary of Defense's order."

13. Under current guidance if I am discharged for not taking a COVID-19 vaccine then I could be discharged as General under Honorable conditions which would preclude me from using my GI Bill benefits. Additionally if I am discharged before 1 September 2023 I will lose my retirement.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on 2 February 2022.

KUPPER.NICKOL
AS.SCOTT.1266
938078

Digitally signed by
KUPPER.NICKOLAS.SCOTT.
1266938078
Date: 2022.02.02 14:56:54
-07'00'

NICKOLAS S. KUPPER

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| **BENJAMIN COKER**, *et al.* | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION NO.** |
| | ) **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III,** *et al.*, | ) |
| **Defendants.** | ) |
| | ) |

**DECLARATION OF BLAKE MORGAN**

1. I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the beset of my own personal knowledge.

2. My RA request is still pending. I officially submitted the RA request on 4 Oct 2021. The Religious Request Team (RRT) met around 5 Nov 2021, and the consensus was to NOT recommend approval of my request. On 5 Nov 2021, my Squadron Commander called me into his office to provide me an update on the request. He stated that he and the Chaplain dissented with the other RRT members, and those opinions were documented. He also said that he wrote a memo to accompany my package stating that he was able to accommodate my request and believes it should be approved, particularly because of my niche skill set (USAF Test Pilot School Graduate). When I asked if I could see the RRT documents, he said he wasn't able to provide them to me. He did show me the memo he wrote on my behalf, but said he would not provide me with a digital copy. I have not heard anything about my request since this conversation in November 2021.

3. On 10 Aug 21, I took an antibody test through LabCorp, and the results indicated I had a large quantity of antibodies. The week of 15 Aug 21, I scheduled an appointment with my Primary Care Manager and began pursuing a medical exemption to the Covid-19 vaccine based on guidance outlined in AFI 48-110 which allowed permanent medical exemption based on natural immunity as documented by a serological test. I was told by the doctor that since the vaccine wasn't mandated at this time, I couldn't apply for an exemption - I would need to wait until it was mandated. On 24 Aug 21, the SECDEF mandated the Covid-19 vaccine, and I reengaged with my doctor. He referred me to the immunization clinic for a consultation, but they denied his referral and said that they would not be issuing medical exemptions to the Covid-19 vaccine based on the language in the SECDEF memo which stated "previous infection does not count as vaccination".

4. Around 15 Nov 2021, I was informed that I was no longer able to travel for work due to my unvaccinated status. I was informed that this guidance was coming down from the DepSecDef, and was applicable for all military, civilians, and federal contractors (at the time). When told this, I asked to see the source documentation, and the documentation

provided to me was explicitly stated to apply to civilians. However, I was told that the Air Force Materiel Command was interpreting the guidance to cover everyone who was unvaccinated, not just civilians. The inability to travel has already resulted in me being pulled from test programs that require extensive travel, as well has denied me the opportunity to attend working groups and conferences regularly attended by members of the Flight Test Community. The interpretation of the guidance preventing me from traveling is coming from levels much higher, and my commander is only following the guidance.

5.  I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 04, 2022.


*Blake Morgan*
Blake Morgan

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| **BENJAMIN COKER,** *et al.* | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION NO.** |
| | ) **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## SUPPLEMENTAL DECLARATION OF TAYLOR
## M. ROBERTS IN SUPPORT OF PLAINTIFFS'
## COMPLAINT AND MOTIONS

1. I am over 18 years of age and am competent to testify in this matter.

2. All of the statements made in this declaration are true to the best of my own personal knowledge.

3. I am Taylor M. Roberts, and I make this declaration in support of the Plaintiffs' complaint and the motions for stay, declaratory and injunctive relief filed in the above captioned proceeding.

4. I am a Captain in the U.S. Air Force and have served for 9.6 years.

5. I am currently stationed at Holloman Air Force Base (AFB), and I am domiciled in Alamogordo, New Mexico.

6. I commissioned into the U.S. Air Force in 2012, and went on to attend Undergraduate Pilot Training (UPT) at Laughlin Air Force Base. Following UPT, I attended the Basic-Course for F-16 training at Holloman AFB. Since graduating the B-Course, I have served in three Major Commands, and three Contingency Deployments. I have 76 combat flights, accruing 341.7 combat hours. I am qualified as an F-16 Instructor Pilot, Mission Commander, and Flight Examiner. In my nearly 10 years of service I have earned a total of 22 various medals, commendations, and citations to include three Air Medals, an Aerial Achievement Medal, two Air Force Commendation Medals, and an Air

Force Achievement Medal. I have also received awards for : 31st Fighter Wing (FW) Flight Lead of the Year, 56th FW Flight Safety Award, 8th Fighter Squadron (FS) Company Grade Officer Instructor Pilot of the Year, 510th FS Flight Lead of the Year, 510th FS Flight Commander of the Quarter, and the Outstanding Officer of my UPT class. I also received the 49th FW nomination for The Jabara Award for Airmanship, an Air Force level award.

7. On 16 September 2021, I received an order to receive "an initial dose of a COVID-19 vaccine with full licensure approval from the FDA AND provide proof by 21 September 2021. Additionally, you are ordered to receive the second dose of the same vaccine AND provide proof by 15 October 2021." The order also stated that any religious accommodation request must be submitted by 21 September 2021, or proof of a medical exemption by that same date. I was told that failure to comply with the order could lead to administrative action and/or punitive action. I was informed verbally by my commander that the most likely course of action would be a Letter of Reprimand (LOR), a Letter of Counseling (LOC), and ultimately administrative separation from the Air Force. The order further stated that I could receive either the FDA approved vaccine or an EUA vaccine (Moderna or Johnson & Johnson). I received an email from my commander on 15 September 2021, which stated "although only the Comirnaty and the Pfizer-BioNTech vaccines can be required, the member can choose to receive the Moderna or the Johnson and Johnson vaccine instead."

8. Due to my pending Religious Accommodation Request (RAR), I have not yet had any disciplinary action taken against me. However, I have been informed that upon receipt of my RAR appeal denial, that if I do not comply with the order, that in accordance with the aforementioned guidance, I will receive paperwork that will most likely end in administrative discharge. Regarding adverse employment, prior to the vaccine mandate (June 2021), I was denied the opportunity to go on a temporary duty (TDY) training deployment with my squadron because of my vaccination status. Since that time, I have not received any updated guidance that would allow for me to go TDY. Additionally, I have a restriction in my Assignment Availability Code: HAF/A1 PCS RESTRICTION, which prevents me from being available to any permanent change of station.

9. On 15 September 2021, I received a temporary medical exemption to the COVID-19 vaccine based on potential genetic pre-disposition to an adverse reaction, and that exemption was filed in my Individual Medical Readiness record. The medical exemption was to be temporary and would be re-assessed

upon further testing. However, by 20 September 2021, the medical exemption was denied by medical leadership at Holloman Air Force Base and subsequently revoked. When I asked one of the commanders in the Medical Group why my medical exemption had been originally approved and subsequently denied, he informed me that my case did not meet the guidance criteria to approve a medical exemption. I then submitted a Religious Accommodation Request on 21 September 2021. The chaplain that conducted the interview with me found my beliefs to be sincere and that receiving the COVID-19 vaccine would place a substantial burden on my faith. While the chaplain recommended approval of my RAR, my chain of command recommended disapproval. In the weeks leading up to the deadline to submit a RAR, my commander verbally informed me that he supported the decision to pursue a religious request and saw no reason not to recommend approval based on the fact that he did not see how me being unvaccinated would affect my ability to work in the squadron, nor would it jeopardize the health and safety of the unit. However, around the time of the submission of my RAR, my commander had changed his perspective and informed me that he would be recommending disapproval. I am currently awaiting the response to my initial RAR but have been told to expect it very shortly. I was told to expect a denial of the initial request and to prepare my appeal, which would also likely be denied. Upon receiving my initial denial, I will have just five days to submit an appeal. I have requested the documents contained within my RAR, as they fall under the Privacy Act of 1974, System of Record Notice F036 AF PC C. Despite a thorough request explaining how all records derived from the RAR process are to be maintained in accordance with AFI 33-322, and are subject to the Privacy Act, I was informed that the documents contained within my RAR package would not be released to me, and that I would have to make a Freedom of Information Act request. I have been told that there is a directive from the Air Force legal office to not release the records of an RAR to individuals.

10. I have contracted a COVID-19 infection only once over the past two years on Friday, 7 Jan 2022. I have the lab results from the test taken at Holloman AFB, showing a critical high positive test. In accordance with Department of Defense guidance, I was placed on Restriction of Movement (ROM) for five days. That is the same amount of ROM that fully vaccinated members were placed on if they were positive for COVID-19. My symptoms resembled that of a seasonal cold, with roughly a one day fever/fatigue. I received clearance to return to flight status on 12 Jan 2022, after passing both the pulse-ox and EKG test. The 7 Jan 2022 incident is the only time that I have experienced COVID-19 symptoms. There were multiple other individuals in my unit, all fully

vaccinated, who tested positive for COVID-19 prior the same week. Additionally, there have been approximately 10-15 fully vaccinated members of my unit who have been tested and been placed on ROM for COVID-19 in the past year. I sought a medical exemption to the vaccine, due to a family history of heart and blood conditions. The appointed medical examiner that granted me the initial temporary exemption thought that I could have a genetic predisposition to an increased chance of known serious adverse reactions to the COVID-19 vaccines (i.e., myocarditis, blood clotting). Without specific testing having been completed to see how the vaccine affects those with genetic predisposition to heart and blood issues, the medical examiner determined that an exemption was appropriate, given the known adverse reactions that could result from the vaccine. I have also been informed by multiple members of the medical group that prior infection would not be sufficient to receive a medical exemption from the vaccine, despite AFI 48-110 stating that positive results of prior infection through serological testing is valid for exemption to a vaccine. As a result, I have not yet requested a medical exemption based upon prior infection.

11. On 8 November 2021, I asked the 49th Wing Medical Group for verification of what COVID-19 vaccines were available at Holloman AFB. I was informed by one of the commanders that the only COVID-19 vaccine available at Holloman AFB was the Pfizer-BioNTech COVID-19 Vaccine (EUA labeled), lot number 30155BA. That particular lot number is not labeled as the FDA approved and licensed Comirnaty, nor is it listed on the Dear HCP letter as a "BLA-Compliant" lot. When I asked if the vaccine was EUA or FDA approved, she said that the vaccines were the same formulation and therefore interchangeable. I have an email from the medical commander with this information. I also presented my commander with a binder explaining the legal distinction between EUA and FDA approved vaccines and requested that he share that information up the chain of command, including base legal, to inform them that we did not have any FDA approved vaccines on the base. The ultimate response was that because the Assistant Secretary of Defense for Health Affairs issued a *guidance* memorandum saying that medical providers "should" use the vaccines interchangeably, that what was available at Holloman AFB could be mandated.

12. On 12 October 2021, in response to my informal Article 138, my commander stated that his original 16 September 2021 order to receive a vaccine was not impossible to comply with based upon the Pfizer-BioNTech COVID-19 Vaccine being readily available. I informed him that there was no Comirnaty available and that the vaccines were legally distinct. Upon receipt of the

available COVID-19 vaccine lot number on 8 November 2021, I informed my commander that there were also no "BLA-Compliant" lots available. Despite this information, the order to receive a COVID-19 vaccine stood, and I filed a Formal Article 138 on 9 November 2021. The complaint was dismissed by the 19th Air Force Commander as a non-discretionary command act. I requested clarification on this matter, as I believed that the act of ordering a member to receive an EUA vaccine was discretionary, as it went against the SECDEF mandate. I then attempted to resubmit the complaint, as it had been dismissed and not denied, detailing how the complaint did in fact fall under Article 138 review. I was informed that nothing was final with my formal Article 138 until HAF/JA and the SECAF had reviewed the complaint. I am still awaiting a response on the status of that review. I have a copy of the informal Article 138, Respondent Commanders Response, Formal Article 138 with supplemental data, and 19th Air Force Commander response.

13. I have wanted to serve in the U.S. Air Force as an F-16 pilot since childhood and have always set myself up to achieve that dream. It has always been my intent to serve for 20 years in the military and make it my career based upon the love and devotion that I have for this great country. If I were to be separated from the Air Force, I would have real harm done to myself and my family. First, I am the sole working parent of the household, with a wife, 11-year-old, and newborn who depend on me for our livelihood. Second, as I have not served my full active-duty service commitment, I would be at risk of having to pay back the Air Force for any cost of training that it views is appropriate. My service commitment is through February 2024. Third, based upon the separations that I have seen at my base and across the military, if I were to be separated, the characterization of discharge would most likely be General, Under Honorable Conditions for misconduct. That characterization of discharge would lose the education benefits that I have transferred to my family members and could potentially affect future job applications. Finally, as I had planned on making the Air Force my career and serving for 20 years, I would lose my retirement benefits.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 3, 2022.

_____

Taylor M. Roberts

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| **BENJAMIN COKER,** *et al.* ) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **CIVIL ACTION NO.** |
| ) | **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III,** *et al.*, ) | |
| **Defendants.** ) | |

**DECLARATION OF ANDREW SNOW**

1.  I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the beset of my own personal knowledge.

2.  My religious accommodation request was denied on November 16, 2021. I submitted my appeal in mid-November 2021. I have not been informed of any decision regarding my appeal.

3.  I had a documented COVID-19 case in November of 2021.

4.  Due to my unvaccinated status, I am not allowed to perform duties outside Dover Air Force Base unless they are mission critical. According to a "Memorandum for AFRC Commanders and Directors" issued on September 30, 2021, "[m]ission critical is defined as deployments/deployment training, contingency response missions, attending promotion boards, and TDY's in support of domestic response such as hurricane, aerial firefighting, and spray missions."

5.  I have been informed that Dover Air Force Base does not have Comirnaty.

6.  I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 4, 2022.

**Andrew Snow**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

BENJAMIN COKER, *et al.*           )

      **Plaintiffs,**         )

    **vs.**                )    **CIVIL ACTION NO.**

                       )    **3:21-cv-01211-AW-HTC**

LLOYD AUSTIN, III, *et al.*,      )

      **Defendants.**       )

## DECLARATION OF BRIAN STERMER

1. I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the beset of my own personal knowledge.

2. My religious accommodation request has been submitted and is currently pending.

3. The Army Reserve started administrative action against all soldiers that didn't have the full dosage early December.

4. I have seen coercive measures instituted against service members who were not vaccinated. In order to relieve the pressure, they took an EUA product.

5. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 4, 2022.

Brian Stermer

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| **BENJAMIN COKER, *et al.*** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION NO.** |
| **vs.** ) | **3:21-cv-01211-AW-HTC** |
| ) | |
| **LLOYD AUSTIN, III, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

**SUPPLEMENTAL DECLARATION OF MICHAEL
R THOMPSON JR IN SUPPORT OF PLAINTIFFS'
COMPLAINT AND MOTIONS**

1. I am over 18 years of age and am competent to testify in this matter.

2. All of the statements made in this declaration are true to the best of my own personal knowledge.

3. I am Michael Ray Thompson Jr, and I make this declaration in support of the Plaintiffs' complaint and the motions for stay, declaratory and injunctive relief filed in the above captioned proceeding.

4. I am a Master Sergeant on active duty in the United States Marine Corps, currently assigned to Marine Wing Headquarters Squadron Two stationed aboard Marine Corps Air Station Cherry Point, North Carolina. I was assigned to my current billett in August 2018 and I am one of three counterintelligence specialists currently assigned to support the 2d Marine Aircraft Wing.

5. I have served in the USMC for 19 years and 9 months; in approximately September 2021, Headquarters Marine Corps approved my request for retirement currently set for 31 December 2022. Upon retirement, I will have a total of 20 years and 8 months of active service. I am domiciled in New Bern, North Carolina.

6. From 2002 to 2008 my primary occupational specialty was Nuclear, Biological

and Chemical Defense Specialist. In 2009 I changed career fields to my current occupation as a Counterintelligence/Human Intelligence Specialist. Over the course of my active service I have five combat deployments; three to Iraq, one to Afghanistan and one Joint Special Operations Task Force - Philippines. My personal awards include a Joint Service Commendation Medal, two Navy/Marine Corps Commendation Medals, four Navy and Marine Corps Achievement Medals, Combat Action Ribbon, six Marine Corps Good Conduct Medals, and numerous Letters of Appreciation for outstanding conduct and off-duty volunteer service.

7. Marine Administrative Message (MARADMIN) 462/21, effective 1 September 2021, is a military order issued by the Commandant of the Marine Corps. Paragraph 3.a of MARADMIN 462/21 ordered all Marine Corps active and reserve component personnel shall be fully vaccinated against COVID-19 not unless medically or administratively exempt. All non-exempt active component personnel were required to achieve full vaccination no later than 28 November whereas the deadline for reserve component personnel was 28 December, 2021. Paragraph 3.b of MARADMIN 462/21 mandates the use of only COVID-19 vaccines that have received Food and Drug Administration licensure in accordance with the Secretary of Defense Memorandum dated 24 August, 2021. MARADMIN 462/21 goes on to reiterate that FDA licensed vaccines are the only vaccines that can be mandated for DoD personnel. MARADMIN 462/21 does not identify the specific FDA licensed COVID-19 vaccine Marine Corps personnel were required to take.

8. On 10 September 2021, the 2d MAW Senior Medical officer, Commander Janet West, provided official guidance in response to an inquiry regarding the availability of FDA licensed COMIRNATY. In response, CDR West affirmed the EUA Pfizer BioNTech and FDA licensed COMIRNATY "are for all practical purposes identical." In the same response, CDR West included guidance from the 2d MAW Staff Judge Advocate, LtCol Joseph Jennings, sent to all command leadership teams regarding the "interchangeability" of EUA Pfizer BioNTech and COMIRNATY. The SJA guidance referenced ASN (M&RA) Memorandum dated 3 September, 2021 and stated "there is only one Pfizer vaccine, which is fully FDA approved…in accordance with MARADMIN 462/21, all 2d MAW service members can be ordered to receive that vaccine regardless of whether COMIRNATY or Pfizer BioNTech is written on the label."

9. On 15 September 2021, the 2d MAW Staff Judge Advocate disseminated the 2d MAW Playbook for Handling Mandatory COVID-19 Vaccinations. The playbook contains step-by-step instructions for command leadership teams to

handle enforcement of the mandate and has been implemented throughout the entirety of II Marine Expeditionary Force. As part of the playbook, command leadership teams are encouraged to take prompt action, issuing Page 11 counseling forms in order to establish a document trail that would serve as a basis for disciplinary action and separation from active service.

10. On 16 September, 2021 I submitted my initial request for an exemption from the COVID-19 vaccine mandate based on a sincerely held religious belief. On 20 October, 2021, the Deputy Commandant of Manpower and Reserve Affairs denied my request using a form denial letter nearly identical to hundreds of other denial letters indicating a lack of individual review. On 4 November, 2021 I appealed my denial directly to the Commandant of the Marine Corps which is still pending adjudication. In accordance with the 2d MAW legal playbook produced by the staff judge advocate, once my appeal has been denied, my commander will issue me a written order to be fully vaccinated with COMIRNATY/Pfizer BioNTech within 40 days. Failure to comply constitutes a violation of Article 92 of the Uniformed Code of Military Justice and may subject me to punitive and/or administrative actions.

11. I affirm that two senior officers, a Colonel and LtCol respectively, whose appeals for Religious Accommodation were denied and subsequently issued written orders to be vaccinated within 40 days using the "COMIRNATY/Pfizer BioNTech" vaccine and/or any available EUA vaccine. It is possible for these officers to submit a request for administrative exemption, code MS, based on lack of available FDA licensed vaccine supply except that II MEF/2d MAW has operated under the legal premise provided by the SJA that "the Department of Defense and Secretary of the Navy have made clear that the order to receive the vaccine is valid and lawful regardless of whether the label reads 'Pfizer–BioNtech' or 'Comirnaty.'" Ultimately, Marines within 2d MAW whose religious accommodation requests are denied are left with a binary choice; take an EUA vaccine shot or face punitive actions.

12. In 2d MAW alone, approximately 266 Marines have sought a religious accommodation. As of 06 January 2022, approximately 261 requests had been denied with 5 pending adjudication or "other status", approximately 97 were appealed and 2 appeals denied. As of 31 January, at least two more appeals have been denied but the total number of final appeal denials is unknown.

13. On 25 October, 2021, the Immunizations Program Manager aboard MCAS Cherry Point confirmed their clinic was not in possession of any FDA licensed COVID-19 vaccine not under EUA. On 08 December, 2021 I confirmed the

treatment facility only had Moderna EUA vaccine lot 032H21A and Pfizer BioNTech EUA lot FF8839 in their inventory. On 28 January, 2022 I confirmed a third time the treatment facility only had Modern EUA vaccine 007J21-2A and Pfizer BioNTech EUA lot 33036BD in their inventory. While at the immunization clinic, three Marines told me they were ordered by their supervisors to receive booster shots in order to deploy for a military exercise taking place outside the continental United States.

14.  I have direct knowledge/evidence of (1) Marine who completed the vaccination series on Camp Lejeune, NC, having received the Pfizer BioNTech EUA series. The issued CDC card also reflects the shot series was Pfizer BioNTech yet the electronic immunization record shows medical providers identified Pfizer BioNTech as COMIRNATY and documented the medical record as such. I also have direct knowledge of a Marine who also received their vaccination series aboard Camp Lejeune, NC and was administered a mix-and-match of Pfizer BioNTech EUA for the first shot and Moderna EUA for the second shot.

15.  I am currently in a "non-deployable" status as a result of the Marine Corps' self-imposed restrictions placed on unvaccinated members. In spite of my unvaccinated status throughout the duration of the pandemic, I have steadfastly executed all functions of my billet responsibilities and have been the subject of commendatory material by my commanding officer.

16.  I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed this 4th day of February  2022.


/s/ *Michael Ray Thompson Jr*
Michael R Thompson Jr

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| BENJAMIN COKER, *et al.* ) | |
| **Plaintiffs,** ) | |
| vs. ) | **CIVIL ACTION NO.** |
| ) | **3:21-cv-01211-AW-HTC** |
| LLOYD AUSTIN, III, *et al.*, ) | |
| **Defendants.** ) | |

**DECLARATION OF JORDAN KARR**

1. I am over 18 years of age and am competent to testify in this matter. All of the statements made in this declaration are true to the beset of my own personal knowledge.

2. I am Jordan Karr, a commissioned officer in the United States Air Force stationed at Hurlburt field Florida, Air Force Special Operations Command (AFSOC), and domiciled in Pensacola Florida.

3. On 12 October 2021, the Department of the Air Force (DAF) issued guidance stating that "In order to retire or separate in lieu of taking the COVID-19 vaccine, regular Active Duty Airmen and Guardians must have a commander-approved submission prior to 1 November 2021, and the approved retirement or separation date must be no later than 1 April 2022 (the first day of the fifth month following the COVID-19 mandatory vaccination date of 2 November 2021). If a member does not have an approved effective retirement or separation date in line with the aforementioned timelines, they are required to be vaccinated."

4. I submitted a separation request in November IAW DAF FAQ guidance, in order to provide myself with options and time. One of the stipulations of my request was that if I receive an approved religious exemption that I would retract my separation. I still have not received a response to my initial religious exemption request. I currently have separation orders that state "honorable" discharge. I informed my Commander on 13 December of my intent to retract my approved separation if I have not received a response to my Religious Exemption by March 5, 2022, in accordance with the guidance below, to allow me the due process I deserve.

5. On 8 December 2021, new guidance was issued to the command regarding separation timelines for unvaccinated personnel. "Service members who receive a denial of their medical, religious, or administrative exemption request have five (5) calendar days from that denial to do one of the following: Submit an appeal to the Final Appeal Authority or request a second opinion (medical). If a final appeal or exemption is denied, the service member will have five (5) calendar days from notice of denial to begin the COVID-19 vaccination regimen; If able, based upon the absence of or a limited Military Service Obligation (MSO), and consistent with opportunities afforded service members prior to 2 November 2021, request to separate or retire

1

on or before 1 April 2022, <u>or no later than the first day of the fifth month following initial or final appeal denial.</u>"

6. On 8 December 2021, I met with my new Commander Lt Col Lowry. He recommended I reach out to the Wing Surgeon since my reasoning for not getting the vaccine is due to a medical condition. Both Lt Col Lowry (my new Commander) and Lt Col Hamel (my previous Commander) expressed that they thought I had a good case for receiving a medical exemption. I spoke with Maj Salinas, the 492nd Special Operations Wing Surgeon, on 13 December 2021. He expressed that he remembered my religious exemption request because the team had discussed my medical condition and the possibility of me getting a medical exemption. On 13 December Maj Salinas stated that he spoke with the 1 Special Operations Medical Group (1 SOMDG) and that they could not grant me a medical exemption because my condition of a fertility disorder did not meet the three criteria for granting a medical exemption.

7. On 22 December 2021, Major General Eric Hill sent a memorandum to AFSOC Commanders and Directors. It stated that only personnel who are fully vaccinated will be authorized to attend AFSOC training courses. I am an AFSOC Intelligence Flight Training Unit (IFTU) Flight Commander. Me and one of my non-commissioned officer's (NCO) are not vaccinated. We are authorized to teach and lead these training courses that unvaccinated personnel are not permitted to attend.

8. As of 27 January 2022, Hurlburt Field has these vaccine lots:
   - 30145BA
   - FF2587- manufactured before 23 August 2021
   - 30155BA

9. I face administrative action, reprisal, and/or dishonorable discharge for refusing to take the vaccine for violating an "order" that my command believes is lawful. In addition, I stand to lose my career, all retirement, veterans and other benefits.

10. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 4, 2022.

KARR.JORDAN .L.1009306150
Digitally signed by KARR.JORDAN.L.1009306150
Date: 2022.02.04 20:19:13 -06'00'

Jordan Karr

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| **BENJAMIN COKER**, *et al.*         ) | |
|      **Plaintiffs,**            ) | |
|      **vs.**                ) | **CIVIL ACTION NO.** |
|                       ) | **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III**, *et al.*,     ) | |
|      **Defendants.**           ) | |


## SUPPLEMENTAL DECLARATION OF SAMUEL N SIGOLOFF
## IN SUPPORT OF PLAINTIFFS' COMPLAINT AND MOTIONS

1. I am over 18 years of age and am competent to testify in this matter.

2. All of the statements made in this declaration are true to the best of my own personal knowledge.

3. I am SAMUEL N SIGOLOFF, and I make this declaration in support of the Plaintiffs' complaint and the motions for stay, declaratory and injunctive relief filed in the above captioned proceeding.

4. I am a MAJ in UNITED STATES ARMY, MEDICAL CORPS and have served for 9 years.

5. I am currently stationed at FORT HUACHUCA, AZ, and I am domiciled in SIERRA VISTA, AZ.

6. I am competent to testify to the facts and matters set forth herein. A true and accurate copy of my *curriculum vitae* is attached hereto as Exhibit A.  After receiving a bachelor's degree from Saint Mary's University in San Antonio, Texas in 2007, I completed a medical degree from Heritage College of Osteopathic Medicine in Athens, Ohio in 2012.  I went on to complete a Family Medicine Residency at Martin Army Community Hospital at Fort Benning, Georgia in June 2015. I have been board certified in Family Medicine since July, 2015.

I was interviewed and was selected to serve as the Medical Director for Raymond W. Bliss Army Health Clinic at Fort Huachuca, Arizona. I reported to Fort Huachuca in July 2021. I was responsible for supervising all Physician Assistants, all Nurse Practitioners and all Physicians on post. I held this position from August 2021 and was removed September 13, 2021. I have held this similar position previously at Fort Sill, Oklahoma from 2016-2017 and at Camp Buehring Kuwait from 2017-2018. I received outstanding remarks from my supervisors when I held those positions of leadership.

7. By mid-August I was given a verbal counseling by my supervisor, LTC Rodriguez (Deputy Commander for Clinical Services, DCCS), where I was encouraged, but not given an order, that I should stop using the terms "gene/genetic therapy." I was also encouraged, but not given an order, to stop using the term "Wuhan SARS-CoV-2 (COVID19)" in my charting as it could make people think that I am sinophobic. I did not want to potentially be accused of sinophobia so I stopped using the term "Wuhan."

8. On August 30, 2021, my supervisor (LTC Rodriguez) sent an email (exhibit B) to all healthcare providers that stated "*BLUF-we are still awaiting official guidance regarding the way ahead for medical exemptions for the COVID Vaccine from MEDCOM/Region. These will likely require General Officer review and approval unless there is a documented anaphylactic adverse reactions to prior dose of the COVID vaccine.*" The medical exemption process is outlined in AR40-562; there is no place for a commander to comment on or direct or invalidate an order a physician makes. It would be significant deviation from the normal administrative process for a General Officer to make this decision, unless that General Officer is also the healthcare provider for that patient. This is the start of the shadow policy[1].

On September 9, 2021, I was alerted by one of my patients that there is a problem with his medical exemption (Exhibit C and D). The clinic Commander, LTC Marie Carmona, RN, gave me a military order that all the medical exceptions that I had provided for soldiers are now considered invalid. I was given a military order that I must notify all patients that the medical exemptions are no longer valid. I complied with this order. This is a significant deviation from the normal process; however, it does further push the shadow policy. Due to LTC Carmona, RN, "invalidation" of a physician's medical opinion, she has started to practice

---

[1] Shadow policy in this context it defined as any unofficial policy that is de facto followed and is in contradiction of Official Policy that is published to the public.

medicine without a license[2].

On September 10, 2021, LTC Carmona banned the off label use of Ivermectin, exhibit E. This is a new part of the shadow policy and an expansion of LTC Carmona's unlicensed practice of medicine.  Off label use of Ivermectin was still a Tricare covered benefit at that time.  On or about September 20, 2021, Tricare required a prior authorization form to be completed for insurance to cover the cost of Ivermectin, exhibit Y.  Insurance companies do not practice medicine. If Tricare does not "approve," or more appropriately stated as 'will not pay for,' the physician ability to prescribe a medication is unchanged. When an insurance company says that the medication is 'not approved' it merely means that the patient will have to pay out of pocket.  To allow an insurance company to 'practice medicine' would make physicians irrelevant and make medical care rest in the hands of bureaucrats.

On September 13, 2021, I was placed in summary suspension by LTC Carmona for alleged: unprofessional conduct, dissemination of misleading information to patients and distribution of vaccine exemption letters characterizing vaccines as "genetic therapy."  Exhibit F.  The main reason I was suspended was due to the fact that I was 'going against Secretary of Defense (SECDEF) guidance.'

On September 14, 2021, the SECDEF officially published policy on medical exemptions, see exhibits G, H, I.  Everything I provided for patients followed this policy which mirrors the policy from AR40-562. I was removed from patient care for going against the shadow policy.

On September 16, 2021, LTC Carmona published an order that is in direct conflict with SECDEF official policy and AR40-562.  LTC Carmona appointed herself to be the approval authority for temporary medical exemptions, exhibit J; thereby putting into writing the shadow policy.

On September 17, 2021 LTC Rodriguez sent an email, Exhibit K, which notified all healthcare providers of the now established shadow policy that is in conflict with SECDEF policy for temporary medical exemptions.

9.  I have been placed in summary suspension which prevents me from seeing patients.  I have been ORDERED not to discuss COVID19 virus or vaccine in uniform and during the duty day, exhibit L. This is an infringement on my first

---

[2] Practice of medicine means the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts. https://www.lawinsider.com/dictionary/practice-of-medicine

amendment rights.

On 20 September 2021, I was 'flagged,' which is a report to suspend favorable personnel actions, exhibit M.  The 'flag' was due to the 15-6 commanders investigation started by LTC Carmona, exhibit N.   The investigation substantiated the findings of: conduct unbecoming an officer, failure to obey lawful orders, and unprofessional comments that undermine the medical command when notifying patients that their medical exemptions are now invalid, see exhibit O.  On January 31, 2022, I was given a General Officer Memorandum of Reprimand that was placed in my permanent Human Resources record, exhibit Z.  Then the 'flag' was removed within the hour, exhibit AA. The 'flag' being removed evidence that the 15-6 investigation could not adequately substantiate any of the claims against me when I refuted them.

I have had my practice of medicine investigated by an Army physician and his findings demonstrate the investigator's gross negligence or willful defamation of my character, exhibit R.  My response to this investigation is exhibit S.  The recommendations proposed by LTC Carmona following the clinical investigation are: will not see patients 17 years old or below for six months, will undergo 100% medical chart audits and have patient encounters with supervision for six months. I have been removed from the position of Medical Director.  LTC Carmona states "*You will not have discussion of, make recommendations for, or care for COVID related patients or topics for a period of one year. If patients have COVID related questions, they are to be referred to another provider with an appropriate patient handoff*." Exhibit P.  This statement has no qualifiers (i.e. in uniform, during duty day, in clinic) and completely limits my speech in all areas of my life.

Due to DHA laws, I was reported to the National Practitioner Data Bank (NPDB) after 30 days of suspension.  The NPDB report generated a complaint against my Texas Medical license. I am now under investigation by the Texas Medical Board, Exhibit Q.

On or about September 17, 2021, I was given a formal counseling for not submitting to coerced medical treatment, exhibit T, LTC Carmona and LTC Rodriguez were present. LTC Rodriguez informed me that he will place a request for a permanent medical exemption.  I asked LTC Rodriguez why he did not place a temporary medical exemption request. At that time I had approximately 21 months of active duty service obligation.  LTC Carmona, RN, responded that that question saying "it won't be approved." I asked LTC Carmona why it would not be approved and she said "I will not approve it."

My medical exemption has been denied by COL Vu Nguyen, MD (TX license #95436) even though this doctor has not established a patient-physician relationship and therefor is acting unethically. I have not received any updates on my religious accommodation that I submitted on September 22, 2021, exhibit U.

10. On November 12, 2021 I was symptomatic and had a positive SARS-CoV-2 PCR, exhibit V. I am applying for a permanent medical exemption for prior immunity that has been rejected once and I am awaiting response from appeal.

11. On September 14, 2021 at or about 07:50 (UTC-7), I spoke with LTC Rodriguez and informed him that Pfizer-BioNTech is not FDA approved and not the same as Comirnaty. I asked him to go look at the vials in the freezer so that he could see for himself. LTC Rodriguez did not go look. He did email me that same day at 10:58:26 (UTC-7)with attached memorandum that was signed on September 14, 2021 at 11:02:05EDT (UTC-4 or 08:02:05 local time) stating that Pfizer-BioNTech and Comirnaty are "interchangeable," see exhibit X.

On or about September 15, 2021 I was given an order to take Comirnaty, exhibit T. There was no Comirnaty available that day and I took pictures of the vials, exhibit W.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. I executed this declaration on February 3, 2022.

SIGOLOFF.SAMU
EL.N.1276362689
Digitally signed by
SIGOLOFF.SAMUEL.N.1276362689
Date: 2022.02.03 10:29:24 -07'00'

MAJ Samuel N. Sigoloff, DO FM

# EXHIBIT A

# Samuel N. Sigoloff, DO

████████████████
████████████████████

**Employment**

| | |
|---|---|
| Raymond W. Bliss Army Health Clinic, Ft Huachuca | 2021-presnt |
| Bassett Army Community Hospital, Ft Wainwright, AK | 2018-2021 |
| Adjunct professor for Basic EMT course with Central Texas College, At Camp Buehring, Kuwait | 2017 |
| Reynolds Army Health Clinic, Ft Sill, OK | 2015-2018 |

**Education**

| | |
|---|---|
| Family Medicine Residency at Martin Army Community Hospital, Ft Benning, GA | 2012-2015 |
| Ohio University Heritage College of Osteopathic Medicine | 2007-2012 |
| Saint Mary's University - San Antonio, Texas | 2003-2007 |
| Bachelor of Arts Degree in Biology and Minor in Military Science | |

**Licensure and Certification**

| | |
|---|---|
| American Board of Family Medicine, Diplomate | 2015-present |
| ABFM ID: 164257 | |
| Medical License, Nebraska | 2013-2021 |
| License number 1149 | |
| Medical License, Texas | 2019-present |
| License number S3747 | |

**Publication**

Adams, J.R & Layton, M.C. & Sigoloff, S.N.. (2015). "Folliculitis". In F. Domino (Ed.), *The 5-Minute Clinical Consult Standard 2016*. Philadelphia, PA: Wolters Kulwer.

**Leadership**

| | |
|---|---|
| Medical Director, Raymond W. Bliss Army Health Clinic, Ft Huachuca | 2021-2021 |
| Medical Director, Camp Buehring, Kuwait | 2017-2018 |
| Chief of Patient Centered Medical Home, Ft Sill OK | 2016-2017 |
| Clinical Pharm D OIC, Ft Sill OK | 2015-2016 |
| Association of Military Osteopathic Physicians and Surgeons (AMOPS) | 2008-2010 |
| Ohio University Heritage College of Medicine Chapter President | |
| Medical Students for Life OMSI Liaison | 2007-2008 |
| College Cadet Battalion Training Officer for ROTC | 2007 |
| College Cadet Battalion Commander for Reserve Officer Training Corps | 2006 |
| ROTC Saint Mary's University | |
| College Cadet Sergeant Major for ROTC | 2005 |
| College Ranger Challenge Team Captain | 2005 |
| Eagle Scout Project | 2002 |

**Community Service**

| | |
|---|---|
| Men's Health Fair, Camp Buehring, Kuwait | 2017 |
| TCCC training of swat team in La Grange GA | 2015 |
| Shaw High School physical, Columbus GA | 2015 |
| Health Fair, Ft Benning GA | 2014 |
| EFMP Olympics, Ft Benning GA | 2014 |
| Shaw High school physical, Columbus GA | 2013 |
| No smoking campaign at Faith Middle School, Ft Benning GA | 2012 |

**Military Training**

| | |
|---|---|
| Joint Forces Combat Trauma Management Course | 2017 |
| Basic Airborne Course, Class 21-14 | 2014 |
| Combat Casualty Care Course | 2012 |
| Medical Corps Officer Basic Course | 2008 |

# EXHIBIT B

| From: | Rodriguez, Norberto Jr LTC USARMY MEDCOM RWBACH (USA) |
|---|---|
| To: | Dempster, Katrina A CPT USARMY MEDCOM RWBACH (USA); Ruble, Mamie S CIV USARMY MEDCOM RWBACH (USA); Rau, Randy J LTC USARMY MEDCOM RWBACH (USA); Simmons, Douglas A CIV USARMY MEDCOM RWBACH (USA); Staggs, Robert Joseph CIV USARMY MEDCOM RWBACH (USA); Harris, Thomas Alcott CIV (USA); Kasper, Joseph F CIV USARMY MEDCOM RWBACH (USA); Patrick, Stefanie M CIV USARMY MEDCOM RWBACH (USA); Matheson, Ryan J CPT USARMY MEDCOM RWBACH (USA); Guinan, Taylor F CPT USARMY 1 CD CAVN BDE (USA); Mitchell, James A CIV USARMY MEDCOM RWBACH (USA); Dunn, William D Jr CIV USARMY MEDCOM RWBACH (USA); Armstead, Tatyana CTR USARMY MEDCOM RWBACH (USA) |
| Cc: | Sigoloff, Samuel N MAJ USARMY MEDCOM RWBACH (USA); Alvarez, Alfonso J MAJ USARMY MEDCOM RWBACH (USA); Walkup, Isaac D CPT USARMY MEDCOM RWBACH (USA) |
| Subject: | Medical/Religious Exemptions for COVID Vaccine |
| Date: | Monday, August 30, 2021 10:38:08 AM |

Team,

Good morning and I hope everyone had a great weekend!!!  With the recent FDA approval of the Pfizer COVID Vaccine (16y/o and up) and guidance from the Secretary of Defense to start pushing this out, we are anticipating there will be a plethora of inquiries regarding exemptions against this. We anticipate receiving the Pfizer COVID Vaccine no later than 10 September 2021 here at RWBAHC.  We have scheduled tentative vaccine rodeos from September 15 through September 18.  At this time, MEDCOM and Regional Health Command-Central (RHC-C) (where RWBAHC is aligned) recommend "supporting your Units on the installation by giving vaccine to the Soldiers as they show up (which we are already prepping).  If a Soldier refuses, plan to discuss the vaccine with them to see if you can answer their concerns. Do not get into a heated confrontation with the Soldier. If they still refuse, keep a log for the Unit and try again later when the detailed guidance does come down." BLUF-we are still awaiting official guidance regarding the way ahead for medical exemptions for the COVID Vaccine from MEDCOM/Region.  These will likely require General Officer review and approval unless there is a documented anaphylactic adverse reaction to a prior dose of the COVID vaccine.  Information is evolving and I appreciate everyone's flexibility.  If you have any questions, please let me know.  Have a great day and week!

v/r,

Beto

Norberto A. Rodriguez
LTC, MC
Deputy Commander for Clinical Services
Raymond W. Bliss Army Health Center
Ft. Huachuca, AZ 85613
520-533-9026 (O)
520-208-5866 (Work Cell)
210-978-6097 (C)
Norberto.rodriguez40.mil@mail.mil

Army Medicine....Army Strong!

# EXHIBIT C

| From: | Wolf, Matthew R SFC USARMY ICOE (USA) |
|-------|----------------------------------------|
| To: | Sigoloff, Samuel N MAJ USARMY MEDCOM RWBACH (USA) |
| Subject: | FW: Vac Exemption (UNCLASSIFIED) |
| Date: | Thursday, September 9, 2021 11:15:45 AM |

**From:** Kilby, Demes S 1SG USARMY ICOE (USA) <demes.s.kilby.mil@mail.mil>
**Sent:** Thursday, September 9, 2021 9:25 AM
**To:** Wolf, Matthew R SFC USARMY ICOE (USA) <matthew.r.wolf.mil@mail.mil>
**Subject:** FW: Vac Exemption (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

SFC Wolf,

As per our phone call. Please see the traffic below.

Respectfully,
Demes S. Kilby
1SG, USA
HHC, 111th MI BDE
Fort Huachuca, AZ
-------------------------------
☎ Cell: (603) 321-8534
☎ Work Cell: (520) 220-9314
☎ Office: (520) 533-2089
demes.s.kilby.mil@mail.mil

"On the Way"

**From:** Traugutt, Loren G COL USARMY ICOE (USA) <loren.g.traugutt.mil@mail.mil>
**Sent:** Wednesday, September 8, 2021 5:21 PM
**To:** Barnes, Jamieson L CPT USARMY ICOE (USA) <jamieson.l.barnes.mil@mail.mil>
**Cc:** Kilby, Demes S 1SG USARMY ICOE (USA) <demes.s.kilby.mil@mail.mil>; Eldredge, John D CSM USARMY ICOE (USA) <john.d.eldredge.mil@mail.mil>; Harty, Jared B LTC USARMY ICOE (USA) <jared.b.harty.mil@mail.mil>
**Subject:** Fwd: Vac Exemption

Jamieson,
Vaccination memo is invalid, see below. MEDDAC will reach out to the NCO and let him know, but you can give the NCO a heads up.

P6

LOREN G. TRAUGUTT
COL, MI
Commander, 111th MI BDE

Office: 520-533-1154
Cell: 571-758-7800
NIPR: loren.g.traugutt.mil@mail.mil

**From:** "Carmona, Marie E LTC USARMY MEDCOM RWBACH (USA)"
<marie.e.carmona.mil@mail.mil>
**Date:** Wednesday, September 8, 2021 at 17:06:01
**To:** "Traugutt, Loren G COL USARMY ICOE (USA)" <loren.g.traugutt.mil@mail.mil>
**Subject:** Re: Vac Exemption

The reasoning in the memo is not valid. It is not based in data but the misguided feelings of
my provider. The NCO will need to see an objective provider and request a medical
exemption. I will have someone from my team reach out to him and explain he will need to be
seen by a different provider. Once again sorry for this.

LTC Carmona

**From:** "Traugutt, Loren G COL USARMY ICOE (USA)" <loren.g.traugutt.mil@mail.mil>
**Date:** Wednesday, September 8, 2021 at 5:00:38 PM
**To:** "Carmona, Marie E LTC USARMY MEDCOM RWBACH (USA)"
<marie.e.carmona.mil@mail.mil>
**Subject:** RE: Vac Exemption

OK, can I consider this particular vaccination exemption letter null and void? What do I do now that
this NCO is in possession of a memo signed by a medical person?

LOREN G. TRAUGUTT
COL, MI
Commander, 111th MI BDE

Office: 520-533-1154
Cell: 571-758-7800
NIPR: loren.g.traugutt.mil@mail.mil

**From:** Carmona, Marie E LTC USARMY MEDCOM RWBACH (USA) <marie.e.carmona.mil@mail.mil>
**Sent:** Wednesday, September 8, 2021 4:59 PM
**To:** Traugutt, Loren G COL USARMY ICOE (USA) <loren.g.traugutt.mil@mail.mil>
**Subject:** Re: Vac Exemption

Sir,

  Thank you bringing this to my attention. This provider should not be writing exemptions for the vaccine. I will make sure he understands. All of the exemptions are to be reviewed by me before being signed. Once again I apologize this provider is the one who does not believe in the vaccine thus his verbiage of gene therapy which he has been instructed not to use. Very aggravating.

LTC Carmona

---

**From:** "Traugutt, Loren G COL USARMY ICOE (USA)" <loren.g.traugutt.mil@mail.mil>
**Date:** Wednesday, September 8, 2021 at 4:52:20 PM
**To:** "Carmona, Marie E LTC USARMY MEDCOM RWBACH (USA)" <marie.e.carmona.mil@mail.mil>
**Cc:** "Bahm, Michael Eric LTC USARMY ICOE (USA)" <michael.e.bahm.mil@mail.mil>
**Subject:** FW: Vac Exemption

Marie,

Can you verify this vaccination exemption please. I didn't think we were processing medical exemptions yet for the vaccine, but attached is an exemption one of my NCOs brought in.

Thanks!

LOREN G. TRAUGUTT
COL, MI
Commander, 111th MI BDE

Office: 520-533-1154
Cell: 571-758-7800
NIPR: loren.g.traugutt mil@mail.mil


-----Original Message-----
From: Barnes, Jamieson L CPT USARMY ICOE (USA) <jamieson.l.barnes mil@mail.mil>
Sent: Wednesday, September 8, 2021 4:43 PM
To: Traugutt, Loren G COL USARMY ICOE (USA) <loren.g.traugutt mil@mail.mil>; Eldredge, John D CSM USARMY ICOE (USA) <john.d.eldredge mil@mail.mil>
Cc: Kilby, Demes S 1SG USARMY ICOE (USA) <demes.s kilby.mil@mail.mil>
Subject: Vac Exemption

Sir, CSM,

     The VAC exemption form for SFC Wolf is attached.


Jamieson L. Barnes
CPT, MI
Commander, HHC, 111th MI BDE
"H Company! On the way!"

Office: 520-533-3993

# EXHIBIT D

| | |
|---|---|
| **From:** | ███████████ USARMY ICOE (USA) |
| **To:** | Sigoloff, Samuel N MAJ USARMY MEDCOM RWBACH (USA) |
| **Subject:** | Sir |
| **Date:** | Thursday, September 9, 2021 10:43:19 AM |
| **Importance:** | High |

Sir,

I am sorry if I have caused you any strife with your command in ANY way.
I was trying to take care of my physical being to the best of my ability and I thank you for trying to help me.
Please take care of yourself and I will pray that leadership realizes that you were following an oath:

*I swear to fulfill, to the best of my ability and judgment, this covenant:*
*I will respect the hard-won scientific gains of those physicians in whose steps I walk, and gladly share such knowledge as is mine with those who are to follow.*
*I will apply, for the benefit of the sick, all measures [that] are required, avoiding those twin traps of overtreatment and therapeutic nihilism.*
*I will remember that there is art to medicine as well as science, and that warmth, sympathy, and understanding may outweigh the surgeon's knife or the chemist's drug.*
*I will not be ashamed to say "I know not," nor will I fail to call in my colleagues when the skills of another are needed for a patient's recovery.*
*I will respect the privacy of my patients, for their problems are not disclosed to me that the world may know. Most especially must I tread with care in matters of life and death. If it is given me to save a life, all thanks. But it may also be within my power to take a life; this awesome responsibility must be faced with great humbleness and awareness of my own frailty. Above all, I must not play at God.*
*I will remember that I do not treat a fever chart, a cancerous growth, but a sick human being, whose illness may affect the person's family and economic stability. My responsibility includes these related problems, if I am to care adequately for the sick.*
*I will prevent disease whenever I can, for prevention is preferable to cure.*

*I will remember that I remain a member of society, with special obligations to all my fellow human beings, those sound of mind and body as well as the infirm. If I do not violate this oath, may I enjoy life and art, respected while I live and remembered with affection thereafter. May I always act so as to preserve the finest traditions of my calling and may I long experience the joy of healing those who seek my help.*

V/R

SFC ███████████

███ th MI BDE MPDC

███████████████████████

███████████████

Fort Huachuca AZ 85613

████████████

██████████ @mail.mil

██████ mail.com



# EXHIBIT E

**DEPARTMENT OF THE ARMY**
U.S. ARMY MEDICAL DEPARTMENT ACTIVITY
2240 EAST WINROW AVENUE
FORT HUACHUCA, AZ 85613-7079

MCXJ-CDR (1oo)                                    10 September 2021

MEMORANDUM FOR

SUBJECT: Prescribing of Ivermectin at Raymond W. Bliss Army Health Center

1.  As COVID-19 continues to attack our nation many providers and consumers are using medication not approved or authorized by the Food and Drug Administration (FDA) for treatment of viral illnesses. One of these medications is Ivermectin.

2.  Ivermectin is FDA approved at very specific doses to treat some parasitic worms, head lice, and skin conditions like rosacea.

3.  The current available data does not show Ivermectin being effective against COVID-19.  There are currently clinical trials assessing Ivermectin tablets for the treatment of COVD-19 however, these are ongoing with no actionable data at this time.

4.  Ivermectin will NOT be prescribed to treat COVID-19.  This is a practice that at present is NOT supported by the data.  If new data presents itself and the FDA approves the use of Ivermectin for the treatment of COVID-19 this memo will be rescinded.

5.  The point of contact for the memorandum is LTC Marie Carmona at marie.e.carmona.mil@mail.mil.

Marie Carmona
MARIE E. CARMONA
LTC, AN
Commanding

# EXHIBIT F



**DEFENSE HEALTH AGENCY**
RAYMOND W. BLISS ARMY HEALTH CENTER
2240 E. WINROW AVE
FORT HUACHUCA, AZ 85613-7079

MCXJ-DCP-CR                                                    13 September 2021

MEMORANDUM FOR: Major Samuel N. Sigoloff, Raymond W. Bliss Army Health Center (RWBAHC), Fort Huachuca, AZ  85613-7079

SUBJECT: Notice of Summary Suspension of Clinical Privileges

1.  In accordance with Defense Health Agency (DHA-PM 6025.13), effective immediately, your clinical privileges as a family practice provider at Raymond W. Bliss Army Health Center have been placed in Summary Suspension. This action results from concerns of unprofessional conduct, dissemination of misleading information to patients, and distribution of vaccine exemption letters characterizing vaccines as "genetic therapy." These issues have had (or could potentially have) adverse effects on patient safety and healthcare delivery.

2.  During this period of summary suspension, you are relieved of all clinical duties.  You may not participate in any patient care duties. You will be assigned administrative duties in the Department of Clinical Services under the direction of LTC Norberto Rodriguez, Chief Medical Officer.

3. A summary suspension is a removal of your clinical privileges. If the summary suspension of your privileges last longer than 30 calendar days it is potentially reportable to the National Practitioner Data Bank (NPDB), state(s) of licensure, and other applicable certifying/regulatory agencies. Depending on the final action decision, a revision-to-action will be submitted upon completion of the matter.

4. You are also notified that a Clinical Quality Management (CQM) Quality Assurance Investigation (QAI) will be conducted regarding the allegations specified above. You will receive a redacted copy of the report and given 15 calendar days to submit a written statement to the Credentials Committee. The Credentials Committee will review both the QAI report and your statement in order to remake a recommendation to the MTF Privileging Authority regarding your clinical privileges. You do not have the right to attend the Credentials Committee meeting.

5. Privileged providers who separate, retire, are discharged, or end affiliation with the MHS while a clinical adverse action review is taking place may be reported to the NPDB, state licensing agencies, and other regulatory agencies, as appropriate, after the allegations are fully investigated. You may request the due process review of your clinical privileges continue following your separation, retirement, discharge, termination of employment. If you request continuation of the due process, a report will not be made (if indicated) until completion of the due process.  If you desire a continuation, you must

This document is confidential and privileged under 10 U.S.C. §1102.  In addition, this document may contain information protected by the Privacy Act of 1974.  Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with applicable law and regulations.

MCXJ-DCP-CR
SUBJECT:  Notice of Summary Suspension of Clinical Privileges

request it in writing to the MTF Privileging Authority within five calendar days following your knowledge of the change in employment affiliation status.

6.  Any previous permission to engage in off-duty employment involving patient care is hereby withdrawn until completion of all due process procedures.  Notification of this summary suspension will also be given to any other military and/or civilian medical treatment facilities where you maintain privileges.

7.  Points of contact for this memorandum are LTC Dawn M. Blanchard at (520) 533-3533 or Ms. Julie Martin, Credentials Coordinator at (520) 533-2460, julie.a.martin.civ@mail.mil.


CARMONA.MARI   Digitally signed by
E.ELIZABETH.125   CARMONA.MARIE.ELIZABET
6662031   H.1256662031
Date: 2021.09.13 09:23:21
-07'00'

MARIE E. CARMONA
Lieutenant Colonel, AN
Commander

This document is confidential and privileged under 10 U.S.C. §1102.  In addition, this document may contain information protected by the Privacy Act of 1974.  Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with applicable law and regulations.

MCXJ-DCP-CR
SUBJECT:  Acknowledgement of Notice of Summary Suspension of Clinical Privileges

I acknowledge receipt of the Notice of Summary Suspension of Clinical Privileges and the change of duty during the period of summary suspension.

I confirm that the below address is the address of record for all notifications to be made during this period of summary suspension. I understand that it is my responsibility to change or update this address of record.


This is my permanent mailing address and contact information.

Address: ~~PO~~ 4290 S. Silva

Sierra Vista, AZ  85650

_____

Email: Samuel.n.Sigoloff.mil@mail.mil  & Samuel.Sigoloff@1791.com

Phone: ~~2108722 8~~ 210-872-1357

I do not ~~concur~~ concur

Samuel N. Sigoloff                        13SEP2021
                                            Date

Copy to:
RWBAHC Medical Staff Professional (Credentials)
RWBAHC Chief Medical Officer
RWBAHC Healthcare Risk Manager
Office of The Surgeon General
DHA SSO Healthcare Risk Management Office
DHA Headquarters Healthcare Risk Management Office

This document is confidential and privileged under 10 U.S.C. §1102.  In addition, this document may contain information protected by the Privacy Act of 1974.  Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with applicable law and regulations.

# EXHIBIT G

# UNCLAS CUI

EXEMPTIONS INCLUDE RELIGIOUS ACCOMMODATIONS, AS WELL AS OTHERS ENUMERATED IN AR 40-562, TABLE C-2 (IMMUNIZATIONS AND CHEMOPROPHYLAXIS FOR THE PREVENTION OF INFECTIOUS DISEASES). COMMANDERS WILL REFER TO AR 40-562, PARAGRAPH 2-6, AND AR 600-20, APPENDIX P-2, WHEN PROCESSING IMMUNIZATION EXEMPTION REQUESTS. SERVICE MEMBERS WITH PREVIOUS INFECTIONS OR POSITIVE SEROLOGY ARE NOT AUTOMATICALLY EXEMPT FROM FULL VACCINATION REQUIREMENTS AND SHOULD CONSULT WITH THEIR PRIMARY CARE MANAGER (PCM).

3.D.8.B.6.A. (U) [ADD] MEDICAL EXEMPTION. SOLDIERS WHO BELIEVE THEY REQUIRE A MEDICAL EXEMPTION SHOULD CONSULT WITH THEIR PCM. THE PCM WILL DETERMINE A MEDICAL EXEMPTION BASED ON THE HEALTH OF THE VACCINE CANDIDATE AND THE NATURE OF THE IMMUNIZATION UNDER CONSIDERATION. MEDICAL EXEMPTIONS MAY BE TEMPORARY (UP TO 365 DAYS) OR PERMANENT. IF THE PCM INDICATES A TEMPORARY EXEMPTION IS VALID, THE PCM WILL APPROVE THE TEMPORARY EXEMPTION. HOWEVER, IF NO EXEMPTION IS IDENTIFIED, THE PCM WILL DISAPPROVE THE REQUEST, ADMINISTER THE VACCINE TO THE SERVICE MEMBER IF THE SERVICE MEMBER AGREES TO VOLUNTARILY RECEIVE IT, AND DOCUMENT INTO MEDPROS. IF THE SERVICE MEMBER DECLINES TO BE VACCINATED BY THE PCM, THE SERVICE MEMBER WILL BE REFERRED BACK TO THEIR COMMANDER FOR ACTION.

3.D.8.B.6.A.1. (U) [ADD] THE APPROVAL AUTHORITY FOR PERMANENT MEDICAL EXEMPTIONS IS THE SURGEON GENERAL (TSG). ALL REQUESTS FOR PERMANENT MEDICAL EXEMPTIONS MUST BE STAFFED TO THE OFFICE OF THE SURGEON GENERAL (OTSG). TSG HAS DELEGATED THE APPROVAL AUTHORITY FOR PERMANENT MEDICAL EXEMPTIONS TO THE REGIONAL HEALTH COMMAND-COMMANDING GENERALS (RHC-CG). NO FURTHER DELEGATIONS BELOW TSG'S DESIGNEE ARE PERMITTED.

3.D.8.B.6.A.2. (U) [ADD] ONCE A PCM REVIEWS A REQUEST FOR A PERMANENT MEDICAL EXEMPTION, THE PCM WILL FORWARD THEIR RECOMMENDATION EITHER TO APPROVE OR DENY TO THE RHC-CG. IF THE RHC-CG APPROVES THE EXEMPTION, THE PCM WILL DOCUMENT IN MEDPROS. IF THE RHC-CG DISAPPROVES THE EXEMPTION, THE SERVICE MEMBER CAN ELECT TO APPEAL TO TSG. TSG IS THE FINAL APPEAL AUTHORITY. IF TSG APPROVES THE EXEMPTION, THE PCM WILL DOCUMENT THE EXEMPTION IN MEDPROS. IF TSG DISAPPROVES THE EXEMPTION AND THE SERVICE MEMBER STILL REFUSES VACCINATION, THE COMMANDER WILL CONSULT WITH THEIR SERVICING JUDGE ADVOCATE.

3.D.8.B.6.B. (U) [ADD] RELIGIOUS EXEMPTION. PURSUANT TO AR 600-20, APPENDIX P-2B, SOLDIERS WITH RELIGIOUS PRACTICES IN CONFLICT WITH IMMUNIZATION REQUIREMENTS MAY REQUEST AN EXEMPTION THROUGH COMMAND CHANNELS. TSG IS THE ONLY APPROVAL OR DISAPPROVAL AUTHORITY FOR IMMUNIZATION ACCOMMODATION REQUESTS. THE ASSISTANT SECRETARY OF THE ARMY FOR MANPOWER AND RESERVE AFFAIRS (ASA(M&RA)) IS THE FINAL APPEAL AUTHORITY. ANY RELIGIOUS ACCOMMODATION REQUEST FOR AN IMMUNIZATION EXEMPTION MUST COMPLY WITH THE REQUIREMENTS DESCRIBED IN AR 600-20, APPENDIX P-2B, AND DODI 1300.17, "RELIGIOUS LIBERTY IN THE MILITARY SERVICES," SEPTEMBER 1, 2020.

3.D.8.B.6.B.1. (U) [ADD] THE COMMANDER MUST COUNSEL THE SOLDIER THAT NONCOMPLIANCE WITH IMMUNIZATION REQUIREMENTS MAY ADVERSELY IMPACT DEPLOYABILITY, ASSIGNMENT, OR INTERNATIONAL TRAVEL, AND THAT THE EXEMPTION MAY BE REVOKED UNDER IMMINENT RISK CONDITIONS. IAW AR 600-20, APPENDIX P-2B, COMMANDERS WILL ARRANGE FOR AN IN-PERSON OR TELEPHONIC INTERVIEW BETWEEN A SOLDIER REQUESTING A RELIGIOUS ACCOMMODATION AND THE UNIT OR OTHER ASSIGNED CHAPLAIN. THE CHAPLAIN ASSESSES THE BASIS AND SINCERITY OF THE BELIEF AND MUST PROVIDE A WRITTEN MEMORANDUM TO THE CHAIN OF COMMAND PURSUANT TO THE REQUIREMENTS OF AR 600-20, APPENDIX P-2B(2). A LICENSED HEALTH CARE

# UNCLAS CUI

# EXHIBIT H

# ANNEX XX Refusals and Medical/Religious Exemptions Process

## Mandatory Vaccination Declination

Soldier Declines Immunization

Commander counsels Soldier using Annex NN or OO to HQDA EXORD 225-21, FRAGO 5

Soldier views mandatory educational video

Following the mandatory video, the Soldier's immediate commander directs Soldier to comply with the order to receive the vaccination

Soldier Declines Immunization

Immediate commander directs Soldier to meet with designated medical professional (Physician, Physician Assistant, or Nurse Practitioner) to discuss vaccine and concerns

Immediate commander orders Soldier to receive vaccination

Soldier Declines Immunization

Commander contacts SJA regarding steps to issue GOMOR

## Medical Exemption

Soldier Declines Immunization

Commander counsels Soldier using Annex NN or OO to HQDA EXORD 225-21, FRAGO 5

PCM (or equivalent) assess the Soldier

If temporary exemption (up to 365 days) indicated, PCM will document in MEDPROS
**Approved**

If temporary exemption is denied, PCM administers vaccine if Soldier agrees and documents in MEDPROS; if Soldier declines, PCM refers Soldier back to Commander
**Disapproved**

PCM recommendation for approval or disapproval of permanent exemption is forwarded to RHC-CG for action
**Recommended**

RHC-CG approves permanent exemption (document in MEDPROS)
**Approved**

RHC-CG disapproves permanent exemption
**Disapproved**

Soldier elects to appeal to TSG

TSG approves appeal (document in MEDPROS)
**Approved**

TSG disapproves appeal
**Disapproved**

Commander is notified, orders Soldier to take vaccine, and if Soldier refuses, contacts SJA regarding steps to issue GOMOR

## Religious Exemption
### (subset of Administrative Exemptions)

Soldier Declines Immunization

Commander counsels Soldier using Annex NN or OO to HQDA EXORD 225-21, FRAGO 5

Chaplain interviews Soldier; assess the basis and sincerity of belief; provides input (memo) for CoC

PCM (or equivalent) counsels Soldier to ensure that they are making an informed decision on risk

Commanders (CO/BN/BDE) provide CoC recommendations of approval or disapproval to GCMCA

OSJA conducts legal review, drafts recommendations for GCMCA

GCMCA recommends approval or disapproval and upload the request into TMT to TSG

TSG approves exemption (document in MEDPROS)
**Approved**

TSG disapproves exemption
**Disapproved**

Soldier elects to appeal to ASA(M&RA)

ASA(M&RA) approves appeal (document in MEDPROS)
**Approved**

ASA(M&RA) disapproves appeal
**Disapproved**

Commander is notified, orders Soldier to take vaccine, and if Soldier refuses, contacts SJA regarding steps to issue GOMOR

*ARNG see paragraph 3.D.8.B.8



# EXHIBIT I



**SECRETARY OF THE ARMY**
WASHINGTON

2 4 SEP 2021

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Army Directive 2021-33 (Approval and Appeal Authorities for Military Medical and Administrative Immunization Exemptions)

1. References.

   a. Department of Defense Instruction 1300.17 (Religious Liberty in the Military Services), 1 September 2020

   b. Army Regulation (AR) 40–562 (Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases), 7 October 2013

   c. AR 600–20 (Army Command Policy), 24 July 2020

2. Purpose. To establish approval and appeal authorities for requests for medical exemptions (temporary or permanent) and administrative exemptions (including religious accommodations) from mandatory immunizations submitted pursuant to references 1b and 1c.

3. Applicability. This policy applies to the Regular Army, Army National Guard/Army National Guard of the United States, and U.S. Army Reserve.

4. Policy.

   a. Medical Exemption Requests.

   (1)  Temporary Medical Exemption Requests (up to 365 days). Healthcare providers are the approval and denial authorities for all temporary medical exemption requests. The term "healthcare providers" refers to physicians, physician assistants, and nurse practitioners.

   (2)  Permanent Medical Exemption Requests.

   (a)  The initial approval and denial authority for COVID-19 vaccine permanent medical exemption requests is the commanding general of the regional health command where the Soldier is assigned.

   (b)  The appeal authority for COVID-19 vaccine permanent medical exemption requests is The Surgeon General, whose decisions are final.

SUBJECT: Army Directive 2021-33 (Approval and Appeal Authorities for Military Medical and Administrative Immunization Exemptions)

(c)  Healthcare providers (as defined in paragraph 4a(1)) are the approval and denial authority for all other required vaccines.

b.  Administrative Exemptions.

(1)  Religious Accommodation Requests.

(a)  Pursuant to AR 600–20, The Surgeon General is the initial approval and denial authority for religious accommodation requests for all immunization exemptions.

(b)  The appeal authority is the Assistant Secretary of the Army for Manpower and Reserve Affairs, whose decision is final.

(2)  Other Administrative Exemption Requests (other than a religious accommodation request). The approval and denial authority for an administrative exemption request as enumerated in reference 1b, table C–2, is the Soldier's commander at O-6 level or above unless withheld by other law, policy, or regulation. For units without a commander at that level, the first general officer in the chain of command will serve as the approval authority. This decision is final.

5.  Supplemental Procedures. Follow the procedures outlined in references 1b and 1c for immunization exemption requests. As necessary, The Surgeon General will facilitate publication of supplemental procedures implementing this guidance within 30 days of its issuance.

6.  Proponent. The Surgeon General is the proponent for this policy, responsible for coordinating with the Deputy Chief of Staff, G-1 to ensure its provisions are incorporated in AR 40–562 and AR 600–20 within 2 years from the date of this directive.

7.  Duration. This directive is rescinded on publication of the revised regulations.

Christine E. Wormuth

DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
    U.S. Army Forces Command
(CONT)

2

SUBJECT: Army Directive 2021-33 (Approval and Appeal Authorities for Military Medical and Administrative Immunization Exemptions)


DISTRIBUTION: (CONT)
    U.S. Army Training and Doctrine Command
    U.S. Army Materiel Command
    U.S. Army Futures Command
    U.S. Army Pacific
    U.S. Army Europe and Africa
    U.S. Army Central
    U.S. Army North
    U.S. Army South
    U.S. Army Special Operations Command
    Military Surface Deployment and Distribution Command
    U.S. Army Space and Missile Defense Command/Army Strategic Command
    U.S. Army Cyber Command
    U.S. Army Medical Command
    U.S. Army Intelligence and Security Command
    U.S. Army Criminal Investigation Command
    U.S. Army Corps of Engineers
    U.S. Army Military District of Washington
    U.S. Army Test and Evaluation Command
    U.S. Army Human Resources Command
Superintendent, U.S. Military Academy
Director, U.S. Army Acquisition Support Center
Superintendent, Arlington National Cemetery
Commandant, U.S. Army War College
Director, U.S. Army Civilian Human Resources Agency


CF:
Director of Business Transformation
Commander, Eighth Army

# EXHIBIT J



**DEPARTMENT OF THE ARMY**
U.S. ARMY MEDICAL DEPARTMENT ACTIVITY
2240 EAST WINROW AVENUE
FORT HUACHUCA, ARIZONA 85613-7079

MCXJ-CDR                                                           16 September 2021

MEMORANDUM FOR All Personnel assigned and/or attached to the Medical Company,
U.S. Army Medical Department Activity (USA MEDDAC), Fort Huachuca, Arizona
85650-7079

SUBJECT: Commander's Policy Letter Regarding COVID19 Medical Exemptions

1. REFERENCE: FRAGO 5 to HQDA EXORD 225-21, COVID19 Steady State
Operations, dtd 14 SEP 21.

2. EXPECTATIONS AND STANDARDS: The situation regarding exemptions for the
COVID19 vaccine mandate to US Military and federal employees remains fluid.  Senior
Commanders are currently assessing how to process these exemptions, where
appropriate.  Until further notice, the authority to approve temporary medical exemptions
to persons affected by the COVID vaccine mandate resides with the Commander of
RWBAHC solely.  This policy letter will be amended as refined guidance is issued by
senior Command Authorities.

3. PROPONENT: The proponent of this policy is the Deputy Commander for Clinical
Services, LTC Norberto Rodriguez.

CARMONA.MARI   Digitally signed by
E.ELIZABETH.12   CARMONA.MARIE.ELIZABET
56662031   H.1256662031
Date:2021.09.16 16:50:59
-07'00'

MARIE E. CARMONA
LTC, AN
Commanding

# EXHIBIT K

| | |
|---|---|
| **From:** | Rodriguez, Norberto Jr LTC USARMY MEDCOM RWBACH (USA) |
| **To:** | Dunn, William D Jr CIV USARMY MEDCOM RWBACH (USA); Mitchell, James A CIV USARMY MEDCOM RWBACH (USA); Armstead, Tatyana CTR USARMY MEDCOM RWBACH (USA); Harris, Thomas Alcott CIV (USA); Staggs, Robert Joseph CIV USARMY MEDCOM RWBACH (USA); Kasper, Joseph F CIV USARMY MEDCOM RWBACH (USA); Ruble, Mamie S CIV USARMY MEDCOM RWBACH (USA); Dempster, Katrina A CPT USARMY MEDCOM RWBACH (USA); Simmons, Douglas A CIV USARMY MEDCOM RWBACH (USA); Patrick, Stefanie M CIV USARMY MEDCOM RWBACH (USA); Guinan, Taylor F CPT USARMY 1 CD CAVN BDE (USA); Matheson, Ryan J CPT USARMY MEDCOM RWBACH (USA) |
| **Cc:** | Sigoloff, Samuel N MAJ USARMY MEDCOM RWBACH (USA); Rau, Randy J LTC USARMY MEDCOM RWBACH (USA) |
| **Subject:** | Guidance Regarding Medical Exemptions for Mandatory COVID-19 Vaccine |
| **Date:** | Friday, September 17, 2021 9:19:17 AM |
| **Attachments:** | Policy Letter RWBAHC COVID Medical Exemption Guidance.pdf |

Team,

Good morning. This week has absolutely been a blur.  I wanted to ensure we have a shared understanding of the process regarding Medical Exemption Request for individuals who refuse the COVID-19 mandatory vaccine.   At this time, ALL Medical Exemptions will be processed through the Commander and myself.  You should NOT be processing Medical Exemptions and the request you are getting through the message center will need to be pushed to CPT Ryan Matheson or myself (within the message center in GENESIS).  In addition, please send CPT Matheson and myself an encrypted email with the soldier's information or screenshot their request from the message center (then email this to us for redundancy).  I attached the Policy Letter outlining the Commander's guidance.  Also, our higher Command is currently reviewing and refining processes related to this.
 Lastly, we do not get involved with Religious Exemptions.  These will be handled administratively outside of medical channels.  I hope this makes sense and is straight forward.  If you have any questions, please let me know.  Thank you and have a great weekend!!!

v/r,

Beto

Norberto A. Rodriguez
LTC, MC
Deputy Commander for Clinical Services
Raymond W. Bliss Army Health Center
Ft. Huachuca, AZ 85613
520-533-9026 (O)
520-208-5866 (Work Cell)
210-978-6097 (C)
Norberto.rodriguez40.mil@mail.mil

Army Medicine….Army Strong!

# EXHIBIT L

## DEVELOPMENTAL COUNSELING FORM
For use of this form, see ATP 6-22.1; the proponent agency is TRADOC.

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| **AUTHORITY:** | 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army. |
| **PRINCIPAL PURPOSE:** | To assist leaders in conducting and recording counseling data pertaining to subordinates. |
| **ROUTINE USES:** | The DoD Blanket Routine Uses set forth at the beginning of the Army's compilation of systems or records notices also apply to this system. |
| **DISCLOSURE:** | Disclosure is voluntary. |

### PART I - ADMINISTRATIVE DATA

| Name *(Last, First, MI)* | Rank/Grade | Date of Counseling |
|---|---|---|
| SIGOLOFF, SAMUEL,N | MAJ/O4 | 17SEPTEMBER2021 |

| Organization | Name and Title of Counselor |
|---|---|
| RAYMOND W. BLISS ARMY HEALTH CENTER | LTC MARIE CARMONA, MEDDAC COMMANDER |

### PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** *(Leader states the reason for the counseling, e.g. Performance/Professional or Event-Oriented counseling, and includes the leader's facts and observations prior to the counseling.)*

Event-Oriented counseling

### PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

On 16 September 2021 you were overheard at the COVID-19 vaccine rodeo telling people around you not to get vaccinated and that the COVID-19 vaccine is harmful. You are hereby ordered to stop discussing the COVID-19 vaccine or COVID-19 virus while in uniform and/or during the duty day. You are promoting misinformation and not abiding by the guidance of the FDA and/or CDC. If you need to discuss the COVID-19 vaccine or COVID-19 virus while in uniform and/or during the duty day you must request permission in writing from the MEDDAC Commander. This is a lawful order.

I am counseling you for the conduct noted above. Be advised that continued conduct of this nature may result in administrative action to include your separation from the service, and/or punitive action under the UCMJ. If this conduct continues, action may be initiated to involuntarily separate you from the service under AR 600-8-24. If you are involuntarily separated, you could receive an Honorable, General Under Honorable Conditions, or Other Than Honorable discharge. If you receive an Honorable discharge, you will be qualified for most benefits resulting from your military service. If you receive a General Under Honorable Conditions discharge or an Other Than Honorable discharge, you may be ineligible for many, if not all, veterans benefits. If you receive a General Under Honorable Conditions or Other Than Honorable Discharge, you may face difficulty in obtaining civilian employment as employers may have a low regard for less than Honorable discharges.

### OTHER INSTRUCTIONS

This form will be destroyed upon: reassignment *(other than rehabilitative transfers)*, separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

**Plan of Action** *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below)*

MAJ Sigoloff will not discuss the COVID-19 vaccine or COVID-19 virus while in uniform and during the duty day.

If the need arises MAJ Sigoloff will request in writing to the MEDDAC Commander permission to discuss the COVID-19 vaccine and/or COVID-19 virus while in uniform and/or during the duty day.

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: ☒ I agree ☐ disagree with the information above.

Individual counseled remarks:

*I did not tell people to not get it I encourged them to do what they want as they retain autonomy*

Signature of Individual Counseled: *Samuel Sigoloff D.O.*                  Date: *17 SEP 2021*

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

Respond within 1 duty day to any written request for approval to discuss discuss the COVID-19 vaccine and/or COVID-19 virus while in uniform and/or during the duty day.

Signature of Counselor: *Marie Carmona LTC AN*                  Date: *17 Sep 21*

### PART IV - ASSESSMENT OF THE PLAN OF ACTION

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor: _____     Individual Counseled: _____     Date of Assessment: _____

**Note: Both the counselor and the individual counseled should retain a record of the counseling.**

# EXHIBIT M

# REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (Flag)

For use of this form, see AR 600-8-2; the proponent agency is DCS, G-1.

## SECTION I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. DoD ID No. | c. RANK | d. DATE OF RANK | e. SPECIALTY/PMOSC | f. COMPONENT |
|---|---|---|---|---|---|
| SIGOLOFF, SAMUEL, N | 1276362689 | MAJ | 06/02/2018 | 61H9C | RA |

| g. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | h. UIC | i. FLAGGED SOLDIER'S EMAIL ADDRESS (.gov or .mil) |
|---|---|---|
| USA MEDDAC, FORT HUACHUCA, AZ 85613, DHA | W0XNAA | SAMUEL.N.SIGOLOFF.MIL@MAIL.MIL |

| j. HR OFFICE CONTROLLING FLAGGING ACTION | k. TELEPHONE NUMBER | l. THIS ACTION IS TO: |
|---|---|---|
| RAYMOND W. BLISS ARMY HEALTH CENTER | (520) 533-5672 | ☑ INITIATE A FLAG (Sections II and IV only) <br> ☐ REMOVE A FLAG (Sections III and IV only) |

## SECTION II - INITIATE A FLAG

**a. NON-TRANSFERABLE FLAG**

☑ A FLAG IS INITIATED, EFFECTIVE   20210920   FOR THE FOLLOWING REASON:

☐ Adverse Action (A)

☐ Involuntary Separation - field initiated (B)

☐ Referred OER, AER, or Relief for Cause NCOER (D)

☐ Security Violation or Loss of Security Clearance (E)

☐ HQDA - Delay of Promotion or Removal from a Selection List (F)

☐ AMEDD Lack of License or Certification (I)

☑ Commander's Investigation (L)

☐ Law Enforcement Investigation (M)

☐ Reserve Components Non-compliance with 10 USC §10206 (N)

☐ JAG Lack of License or Certification (O)

☐ Deny Auto Promotion to PV2/PFC/SPC (P)

☐ Lautenberg Amendment (Q)

☐ Administratively Non-deployable for Retention (R)

☐ No Family Care Plan (S)

☐ Deny Auto Promotion to 1LT/CW2 (T)

☐ Drug Abuse (U)

☐ Alcohol Abuse (V)

☐ HQDA - Involuntary Separation (W)

**b. TRANSFERABLE FLAG**

☐ ACFT Failure (J)          ☐ Army Body Composition Program (K)          ☐ Punishment Phase (H) <br> Date Punishment Complete: _____

## SECTION III - REMOVE A FLAG

**a. FLAG TO REMOVE**

☐ A FLAG (Two-Digit Flag Code) _____ , WITH AN EFFECTIVE DATE OF _____ ) IS HEREBY REMOVED.

EFFECTIVE DATE OF THIS FLAG REMOVAL IS _____ , FOR THE FOLLOWING REASON:

**b. DISPOSITION**

☐ Final Action Favorable (C)          ☐ Final Action Unfavorable (D)          ☐ Final Action Specified (E)          ☐ Erroneous (Z)

## SECTION IV - AUTHENTICATION

| a. UNIT COMMANDER'S NAME (Last, First, Middle Initial) | b. DoD ID No. | c. RANK | d. UIC | e. COMPONENT |
|---|---|---|---|---|
| LAFALCE, JENNIFER | 1522261838 | 1LT | W0XNT0 | RA |

| f. UNIT, ORG., STATION, ZIP CODE/APO, MAJOR COMMAND | g. UNIT COMMANDER'S EMAIL ADDRESS (.gov or .mil) | | |
|---|---|---|---|
| | JENNIFER.LAFALCE.MIL@MAIL.MIL | | |
| USA MEDDAC, FT. HUACHUCA, AZ 85613, DHA | h. UNIT COMMANDER'S SIGNATURE | | i. DATE |
| | LAFALCE.JENNIFER.1522261838 Digitally signed by LAFALCE.JENNIFER.1522261838 Date: 2021.09.20 07:23:30 -07'00' | | 20210920 |

## SECTION V - VALIDATION (Required for any Flag over 6 months old)

| a. BN COMMANDER'S NAME (Last, First, Middle Initial) | b. DoD ID No. | c. RANK | d. UIC | e. COMPONENT |
|---|---|---|---|---|
| | | | | |

| f. UNIT, ORG., STATION, ZIP CODE/APO, MAJOR COMMAND | g. BN COMMANDER'S EMAIL ADDRESS (.gov or .mil) | |
|---|---|---|
| | | |
| | h. BN COMMANDER'S SIGNATURE | i. DATE |

DA FORM 268, APR 2021          PREVIOUS EDITIONS ARE OBSOLETE.          Page 1 of 2 <br> APD AEM v1.01ES

## INSTRUCTIONS FOR COMPLETING DA FORM 268 (REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (*Flag*)

**SECTION I - Administrative Data.**
a. Name:  Enter the Soldier's full name (last, first, middle initial) - All capital letters.
b. DOD ID No:  Enter the Soldier's 10-digit DOD ID number (located on the reverse side of the CAC).
c. Rank:  Enter the Soldier's three-character rank (for example, MAJ, CPT, WO1, CW3, SFC, or SPC).
d. Date of Rank:  Enter the Soldier's current DOR (YYYYMMDD).
e. Specialty/MOSC:  Enter the AOC codes for commissioned officers (for example, 12A/42H) (see DA Pam 611-21). For warrant officers and enlisted personnel, enter the PMOS (see section I, DA Form 4037 (ORB) and enlisted record brief appropriately).
f. Component:  Enter the Soldier's component "RA," "USAR" or "ARNG".
g. Unit Information:  Enter the Soldier's complete unit address, organization, station, zip code or APO, and major command.
h. UIC:  Enter the Soldier's six-character unit identification code.
i. Flagged Soldier's e-mail address:  Enter the official .gov or .mil only.
j. HR office controlling flagging action:  Enter the office information that is initiating or removing the Flag.
k. Telephone number:  Enter the complete office phone number, DSN or commercial, for the office listed in block j.
l. Check the corresponding box to either initiate a new Flag or close an existing Flag.

**SECTION II - Initiate a Flag.**
a. Non-Transferable Flag initiation:  Select the box for "this action is to initiate a Flag" (Section I, I), enter the effective date (YYYYMMDD) of the Flag (Section II, a), and select the corresponding box to identify what type of non-transferable Flag is being initiated.
b. Transferable Flag initiation:  Select the box for "this action is to initiate a Flag" (Section I, I), enter the effective date (YYYYMMDD) of the Flag (Section II, a), and select the corresponding box to identify what type of transferable Flag is being initiated.  If selection is for Flag code H - Punishment phase, indicate the punishment completion date (YYYYMMDD) in the space provided.

**SECTION III - Remove a Flag.**
a. Select the box for this action is to remove a Flag (Section I, I).  Enter the two-character Flag code that is being removed (for example, AA, KA, UA) along with it's effective date (YYYYMMDD).  Enter the effective date (YYYYMMDD) for this Flag removal.
b. Disposition:  Select the box for the appropriate report type code removing the Flag as:

    **C - Final Report - Favorable**.  Prepare this report when -
        1. An investigation results in no substantiated findings or charges are dropped.
        2. Soldier is exonerated, or when absolutely no disciplinary action is taken.
        3. Do not use this report code for ACFT or ABCP flag removals.

    **D - Final Report - Unfavorable**. Prepare this report when -
        1. The investigation finds substantiated charges or allegations; or -
        2. The punishment is completed.  Punishment includes locally filed GOMOR or LOR.
        3. Do not use this report code for ACFT or ABCP flag removals.

    **E - Final Report - Specified**.  Prepare this report when -
        1. The Soldier with an active Flag for ACFT failure passes a record ACFT (Flag code J).
        2. The Soldier with an active Flag for ABCP non-compliance subsequently meets the Army body composition standard (Flag code K).
        3. The Commander's decision to block an automatic promotion is removed (Flag codes P and T).
        4. The Soldier's conviction is expunged, pardoned, or set aside by competent authority (Flag code Q).
        5. The Soldier receives an approved waiver, from the appropriate HQ, for the administrative reason for nondeployability (Flag code R).
        6. The Soldier's Family care plan is certified (Flag code S).
        7. The Soldier's license or certification is restored for AMEDD or JAG (Flag codes I, O).
        8. The Reserve Component Soldier completes a periodic health assessment IAW 10 USC §10206 (Flag code N).

    **Z - Erroneous Report.**  Prepare this report to remove a Flag that has been deemed to have been emplaced erroneously.

**SECTION IV - Authentication.**
a.-i.  Commander's information, date, and digital signature.

**SECTION V - Validation.**
a-i.  Battalion level or higher commander validation is required for any Flag over 6 months old.  Enter the information, date, and digital signature.

**General Notes:**
1. Flags are input into the appropriate HR system of record (SOR) within 3 working days of the Flag initiation.  Failure to update the SOR within 3 working days does not invalidate the Flag.
2. Flagged Soldiers will be counseled, in writing, within 3 working days of the Flag initiation and provided a copy of the DA Form 268. Failure to counsel within 3 working days does not invalidate the Flag.
3. Transferable Flags on PCSing Soldiers must be uploaded to the AMHRR temporary administrative folder IAW AR 600-8-104, para 1-6b.
4. Documentation showing the successful completion of and removal from the ABCP must be uploaded to the Soldier's AMHRR temporary administrative folder IAW AR 600-8-104 para 1-6b.

# EXHIBIT N

**DEPARTMENT OF THE ARMY**
Raymond W. Bliss Army Health Center
2240 EAST WINROW AVENUE
FORT HUACHUCA, ARIZONA 85613-7002

MCXO-CDR                                                                17 September 2021

MEMORANDUM FOR LTC Kenneth Strauss, Fort Huachuca, Arizona  85613

SUBJECT: Appointment as AR 15-6 Investigating Officer

1. **Appointment**. You are hereby appointed as an Investigating Officer (IO) pursuant to Army Regulation (AR) 15-6, *Procedures for Administrative Investigations and Boards of Officers*, to conduct an administrative investigation into the matters specified in paragraph 3b below. **You have 14 calendar days from the date of this appointment to conduct this investigation**. Coordinate any requests for extensions through your legal advisor.

2. **General Instructions**.

   a. The purpose of an AR 15-6 investigation is to elicit facts. You are directed to conduct an investigation into the matters set forth in paragraph 3, below. Your investigation should explore any issues or deficiencies with policy, procedures, resources, doctrine, training, and leadership that might have contributed to this incident. Upon completion of this investigation, you will complete a report of investigation that conforms to the requirements in paragraph 5 of this memorandum and AR 15-6. You will provide your report to your legal advisor, who will arrange for a legal review.

   b. If, at any time in the conduct of your investigation, something happens that could cause me to consider enlarging, restricting, or terminating your investigation, or otherwise modifying any instruction in this memorandum of appointment, immediately report this situation to me, together with your recommendations as to the action I should take in response.

3. **Scope of Investigation/Specific Instructions**.

   a. You are hereby directed to conduct an investigation into the matters listed below. Such review should include a thorough analysis of whether the circumstances alleged are accurate and merit correction. You also should report whether any personnel should be held accountable for any shortcomings or failures.

   b. During your investigation you will, at a minimum, ascertain the following:

      (1) Did LTC Rodriguez order Major Sigoloff to not use the terms "gene therapy" or "genetic therapy"? Did Major Sigoloff violate the order?

Exhibit III

MCXO-CDR
SUBJECT: Appointment as AR 15-6 Investigating Officer

(2) Did the email Major Sigoloff sent on Thursday, September 9, 2021 meet the guidance/order Major Sigoloff received pertaining to informing his patients that the Army was awaiting guidance on medial exemptions for the COVID vaccine?

(3) Has Major Sigoloff acted in any manner which would constitute conduct unbecoming an officer or failure to obey lawful orders?

4. **Conduct of the Investigation**.

a. Mr. Joseph A. McCloskey, or his designee, is your legal advisor and can be reached at (520) 533-5712. You will consult with your legal advisor before making substantive efforts regarding your investigation. You may request that additional individuals or subject matter experts be appointed, in writing, to accompany you and assist you in your investigation. Coordinate such requests with your legal advisor.

b. Evidence Collection.

(1) You are to conduct this investigation using the procedures outlined in Chapter 5 and the general guidance provided in Chapter 3 of AR 15-6.

(2) To the extent possible, witness statements will be written and sworn. You should record witness statements on a DA Form 2823 (*Sworn Statement*). If it is impracticable to obtain a written and/or sworn statement from a particular witness, you will attest to the accuracy of any transcription or summary of such witness testimony in whatever form it appears within your report of the investigation. In accordance with AR 340-1, provide a Privacy Act statement to witnesses you receive information from. No U.S. military or civilian witness can be ordered to provide information that may incriminate him or herself. You may order a military or Federal Government civilian employee witness to provide a statement if you believe that they have relevant information that would not incriminate themselves. If, in the course of your investigation you come to suspect a person may have engaged in criminal conduct, you will consult with your legal advisor and inform me. Under no circumstances should you attempt to elicit any information from a suspect without first advising that person of his/her rights under Article 31, UCMJ, or the Fifth Amendment of the U.S. Constitution, as appropriate. Document your rights advisement and witness waivers of their Article 31 or Fifth Amendment rights on a DA Form 3881 (*Rights Warning Procedure/Waiver Certificate*).

(3) Where a civilian employee is a member of a bargaining unit and reasonably believes that the inquiry could lead to disciplinary action against him or her, the employee may have a representative from the bargaining unit present during questioning. You will consult your legal advisor if you have any questions regarding these procedures.

(4) Should you determine in the context of your investigation that a Soldier's

2

MCXO-CDR
SUBJECT: Appointment as AR 15-6 Investigating Officer

status has changed from favorable to unfavorable, as defined in AR 600-8-2, *Suspension of Favorable Personnel Actions*, you must notify me immediately and consult with your legal advisor, to ensure that a flag is initiated against that Soldier.

5. **Report of Investigation**.

   a. General.  Your report of investigation will be written.  Use a DA Form 1574-1, *Report of Proceedings by Investigating Officer*, and attached all required enclosures and exhibits.

   b. Assembly.  Your completed AR 15-6 investigation will include:

      (1)  This memorandum of appointment;

      (2)  A completed DA Form 1574-1, *Report of Proceedings by Investigating Officer;*

      (3)  A detailed chronology of the daily actions you took during the investigation;

      (4)  An index of all attached exhibits;

      (5)  All exhibits, labeled and numbered;

      (6)  A list of the witnesses you interviewed;

      (7)  If applicable, proper classification markings for each paragraph, page, and exhibit included within your report of investigation; and

      (8)  A memorandum with your findings and recommendations.

      (a)  Findings.  You will reach your findings by a preponderance of the evidence that you gather.  A finding is a clear and concise statement of facts that can be readily deduced from the evidence in the record.  In your report, develop specific findings and cite the evidence that supports your findings.  If evidence conflicts (*e.g.*, conflicting witness statements), make a finding as to which evidence is more credible and why you believe it to be more credible.

      (b)  Recommendations.  Based on your findings, make recommendations as to what changes, in any, are needed in terms of policy, procedures, resources, doctrine, training, and leadership to avoid incidents of this nature in the future, as well as recommendations consistent with your findings concerning other items your investigation revealed.  Each recommendation will cite to the finding that supports it, and should comport with the guidance in AR 15-6.

   c. Submission.  Submit your report of investigation in hard copy and an electronic

3

MCXO-CDR
SUBJECT: Appointment as AR 15-6 Investigating Officer


form to your legal advisor. A written legal review must be obtained and included with
your investigation before providing me with a hard copy of your investigation. You may
not release any information related to this investigation to anyone, other than your legal
advisor, without my prior approval.

6. Pursuant to USAICoE Policy 20-14, the Office of the Staff Judge Advocate is the
custodian for all completed AR 15-6 investigation reports. Appointing Authorities are
authorized to retain a copy of completed investigation reports; however, originals of
investigation reports must be forwarded to the Office of the Staff Judge Advocate within
five days of Appointing Authority action.


CARMONA MARIE.EL Digitally signed by
IZABETH.125666203 CARMONA.MARIE.ELIZABETH.125
1 666203
Date: 2021.09.17 12:07:26 -07'00'

MARIE E. CARMONA
LTC, AN
Commanding

4

# EXHIBIT O



**DEPARTMENT OF THE ARMY**
U.S. ARMY INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON- FORT HUACHUCA
2837 BOYD AVENUE
FORT HUACHUCA, ARIZONA 85613-7000

AMIM-HUG-AO

01 October 2021

MEMORANDUM FOR Commander, Raymond W. Bliss Army Health Center, Fort Huachuca, Arizona, 85613-7002

SUBJECT: Findings and Recommendations, possible conduct unbecoming an officer and failure to obey lawful orders by MAJ Samuel N. Sigoloff

1. **References**.

    **a.** Memorandum of Appointment, dated 17 September 2021.

    **b.** Army Regulation (AR) 15-6, *Procedures for Administrative Investigations and Boards of Officers*, 1 April 2016.

    **c.** AR 600-20, *Army Command Policy*, 24 July 2020.

2. **Background**. On 17 September 2021, I was appointed as an investigating officer (IO) to look into allegations of a possible conduct unbecoming an officer and failure to obey lawful orders. The accused is MAJ Samuel Sigoloff, a Family Physician and Medical Director stationed at Fort Huachuca's Raymond W. Bliss Army Health Center (RWBAHC).

3. **Summary.** I find that the allegations of conduct unbecoming an officer and failure to obey lawful orders against MAJ Sigoloff are substantiated. The comments and behaviors of MAJ Sigoloff display a disregard for orders/guidance coming from the Department of Defense (DoD) and the Department of the Army (DA) (See Exhibit XIII) regarding COVID vaccinations. Furthermore, his prescribing of Ivermectin (which has not been approved by the FDA for COVID and has no Emergency Use Authorization (EAU)) for COVID is potentially dangerous to patients. The preponderance of evidence as shown in statements (Exhibits VIIa, VIIc, VIId, VIIe, VIIf, VIIg, XI and Exhibit XX) all support that the MAJ Sigoloff's conduct has been unbecoming of an officer and has been failing to obey lawful orders. Finally, MAJ Sigoloff's email rescinding his exemptions was unprofessional and undermined the Medical Command.

4. **Facts**:

    **a.** In the months and weeks leading up to the DoD's published guidance directing the vaccine for all DoD personnel, MAJ Sigoloff was telling coworkers he would issue

Exhibit I

AMIM-HUG-AO
SUBJECT: Findings and Recommendations, possible conduct unbecoming an officer
and failure to obey lawful orders by MAJ Samuel N. Sigoloff

medical exemptions to patients of other doctors, that the COVID vaccine was unsafe
and that he would not get it himself. These comments were heard by peers,
subordinates and civilians as well as select patients. (See Exhibits VIIa thru VIIg and
XI).

   b.  On 30 August 2021, LTC Rodriguez sent out initial guidance for the COVID
vaccine implementation. MAJ Sigoloff has already been issuing medical exemptions
(see Exhibits VIIa and XV) MAJ Sigoloff stated he continued issuing exemption since
the guidance did not clearly state to stop and FRAGO 5 stated that the patient's
primary physician can issue a temporary exemption (See Exhibit VIII). A reasonable
person would have interpreted the email from LTC Rodriguez and stopped issuing
exemptions until detailed guidance was published. In the absence of clarity, MAJ
Sigoloff should have sought out clarification.

   c.  LTC Rodriguez gave MAJ Sigoloff a verbal order during the week of 23 August
2021 to "...not use the terms "Gene Therapy" or "Genetic Therapy"". According to LTC
Rodriguez's electronic medical record review, MAJ Sigoloff did not discuss, but
documented "Patient denies any recent COVID illness and denies any coated genetic
therapy vaccines." This contradicts LTC Rodriguez's guidance. MAJ Sigoloff stated he
did continue to use the term "Genetic Therapy" but stopped using "Gene Therapy" after
the conversation (See Exhibit XX). According to MAJ Sigoloff, this was not an order,
but a recommendation from LTC Rodriguez.

   d.  On 9 September 2021, MAJ Sigoloff was ordered to rescind all COVID medical
exemptions he issued. There is no evidence showing he continued to issue
Exemptions after the order. On 9 September 2021, MAJ Sigoloff asked Nurse
Chapman to contact the patients he gave exemptions to and notify them that the
exemptions are not valid. Ms. Chapman refused due to the unprofessional nature of
the email (see Exhibits IV and VIIe). Nurse Chapman also did not want to get involved
due to his controversial stance on the COVID vaccine. This unprofessional situation
made her uncomfortable enough to report it to the nursing chain of command (See
Exhibits VIIc, VIId, and VIIe).

   **5. Findings.** Based on the facts presented above, I make the following findings based
on the preponderance of credible evidence:

   **a. Question 1:** Did LTC Rodriguez order Major Sigoloff to not use the terms "gene
therapy" or "genetic therapy"? Did Major Sigoloff violate the order?

   **b. Answer 1:** I find that LTC Rodriguez Noberto did order Major Sigoloff "...not to
use the terms "gene therapy" or "genetic therapy"". (See Exhibit VIIa). MAJ Sigoloff did
violate that order on 3 September 2021. According to LTC Rodriguez's electronic
medical record review, MAJ Sigoloff did not discuss, but documented "Patient denies

## Exhibit I

AMIM-HUG-AO
SUBJECT:  Findings and Recommendations, possible conduct unbecoming an officer and failure to obey lawful orders by MAJ Samuel N. Sigoloff

any recent COVID illness and denies any coated genetic therapy vaccines". (See Exhibit VIIa).

   c. **Question 2:** Did the email Major Sigoloff sent on Thursday, September 9, 2021 meet the guidance/order Major Sigoloff received pertaining to informing his patients that the Army was awaiting guidance on medial exemptions for the COVID vaccine?

   d. **Answer 2:** I find that the email that MAJ Sigoloff sent on Thursday, September 9, 2021 did not meet the intent of LTC Rodriguez's order. LTC Rodriguez's intent was to informing his patients that the RWBAHC was awaiting formal guidance on medical exemptions for the COVID vaccine and that the exemptions issued by MAJ Sigoloff were premature due to lack of published guidance. MAJ Sigoloff's email was unprofessional to the point that one of his nurses refused to send it to patients. It presented a division and lack of unity from the medical command at the RWBAHC.

   e. **Question 3:** Has Major Sigoloff acted in any manner which would constitute conduct unbecoming an officer or failure to obey lawful orders?

   f. **Answer 3:** I find that MAJ Sigoloff's behavior is unbecoming of an officer. He has vocally spoken out against COVID guidance coming from as high as the DoD. He was advocating against getting the vaccine to patients, subordinate and fellow staff. (See Exhibits VIIa, VIIc, VIId VIIe, VIIf, VIIg and XI). This defiance constitutes failure to obey lawful orders for all DoD personnel to receive the vaccine and to stop using the terms "Gene Therapy and "Genetic Therapy". MAJ Sigoloff gave guidance to his team that all patients who want vaccine exemptions need to go to him despite who their assigned primary medical provider was. This guidance gave his staff and nurses the appearance that he intended to undermine the DoD vaccine mandate and give exemptions out freely. This impression was based on his vocal advocacy against the vaccine. (See Exhibits VIIe and VIIi).

   g. **Additional findings:** None.

6. **Recommendations**. I recommend the command take whatever adverse administrative or punitive action they deem appropriate for conduct unbecoming of an officer. MAJ Sigoloff's personal beliefs regarding the COVID vaccine undermine the DoD mandates and Army Orders to vaccinate the force. The vaccine requirement is put in place to protect people and to provide a ready and deployable force. Finally, I recommend an immediate qualified medical review of his patients to ensure prescriptions of Ivermectin do not pose a risk to patient safety.

Exhibit I

AMIM-HUG-AO
SUBJECT: Findings and Recommendations, possible conduct unbecoming an officer
and failure to obey lawful orders by MAJ Samuel N. Sigoloff

7. The point of contact for this memorandum is the undersigned at (502) 533-6385 or
kenneth.j.strauss.mil@mail.mil.

KENNETH J. STRAUSS
LTC, MP
Executive Officer

Exhibit I

# EXHIBIT P



**DEFENSE HEALTH AGENCY**
RAYMOND W. BLISS ARMY HEALTH CENTER
2240 E. WINROW AVE
FORT HUACHUCA, AZ 85613-7079

17 December 2021

MEMORANDUM FOR MAJ SAMUEL N. SIGOLFF, DO

SUBJECT: Notice of Proposed Restriction of Clinical Privileges

1. After reviewing the Clinical Quality Management Quality Assurance Investigation Report, your statement, and the Raymond W. Bliss Army Health Center Credentials Committee's/Function's recommendations, in accordance with Defense Health Agency Procedures Manual (DHA-PM) 6025.13, I propose to restrict your clinical privileges as follows:

   a. Age Groups you will not see patients 17 years old and below for a period of six months, and you will complete and show documentation of continuing medical education specific to well-care child appointments before reinstatement of pediatric privileges.

   b. You will not have discussion of, make recommendations for, or care for COVID related patients or topics for a period of one year. If patients have COVID related questions, they are to be referred to another provider with an appropriate patient handoff.

   c. You will undergo a focused 100 percent review of patient encounters with supervision and co-signatures for a period of six months.

   d. I am removing you from the position of Medical Director, Raymond W. Bliss Army Health Center.

2. The above actions are being taken in response to the following allegations:

   a. Dissemination of misleading information to your patients.

      1. You disseminated one-sided and misleading information about the COVID-19 vaccine that only supported your personal beliefs, which contradicted and/or were not reflective of current evidence based data sources, standards, recommendations, and guidelines.

      2. You misleadingly referred to the COVID-19 vaccine as "gene therapy" or "genetic therapy" using this characterization to counsel that patients eligible for the COVID-19 vaccine not receive it.

      3. On at least one occasion you instructed parents of a pediatric patient not to feed their child vegetables or to focus on an animal-based diet.

This document is confidential and privileged under 10 U.S.C. §1102. In addition, this document may contain information protected by the Privacy Act of 1974. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with applicable law and regulations.

b. Inappropriate distribution of vaccine exemptions.

1. You provided multiple COVID-19 vaccination exemptions where your documentation showed no individual clinical basis for them, such as for young healthy Soldiers without relevant vaccine-related special risks.

2. Your documentation for vaccine exemptions attempted to support your belief that the COVID-19 vaccination in general was harmful due to gene therapy and vaccine components rather than based upon limited contraindications or medical cautions properly justifying exemptions. Your exemptions contained false or misleading information, included low-level evidence, and deprived patients of appropriate information to make informed decisions about vaccination.

c. Professional misconduct

1. You used your trusted position as an officer and physician to provide patients with misinformation and one-sided data regarding COVID-19 vaccinations that was not standard of care. Your persuasiveness directly put patients at increased harm associated with forgoing or delaying immunizations both by omission and commission.

2. You continued to disseminate COVID-19 vaccination exemption letters to patients after being informed to discontinue absent appropriate criteria.

These clinical deficiencies and misconduct had or could have adverse effects on patient care and safety due to the lack of current evidence-based practice, along with issuance of exemption letters which were construed with misinformation and were clinically inappropriate.

3. You are advised that you have a right to have a formal peer review hearing panel review this proposed action. To invoke this right, you must make a written request to me within 30 calendar days from the date you receive this notification. Failure to make a written request within this time period, or failure to appear for the scheduled hearing, will result in a waiver of your right to a hearing and waiver of the right to appeal this adverse privileging/practice action to the Director, DHA. In addition, if no written hearing request is received within the allotted time, my proposed decision will become final and this adverse action will be forwarded to the Director, DHA for reporting to the National Practitioner Data Bank, your current state(s) of licensure (Texas and Nebraska), and appropriate professional organizations. Written requests may be submitted to julie.a.martin.civ@mail.mil.

4. During this time while due process procedures are ongoing and until a final decision on your privileges is reached, your clinical privileges/practice will remain in summary suspension.

5. If you separate, retire, are discharged, or end affiliation with the Military Health System while an adverse privileging/practice action is taking place, you may be reported to the National

This document is confidential and privileged under 10 U.S.C. §1102. In addition, this document may contain information protected by the Privacy Act of 1974. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with applicable law and regulations.

Practitioner Data Bank, state(s) of licensure, and appropriate professional organizations. You may request the continuation of the review of your clinical privileges/practice following your separation, retirement, discharge, or end of employment. If you request continuation of the due process, a report will not be made, if indicated, until completion of the due process. If you desire a continuation, you must submit a request in writing to me within five calendar days prior to your ending affiliation with the Military Health System. Written requests may be submitted to julie.a.martin.civ@mail

6. Any previous permission to engage in off-duty employment involving patient care is hereby withdrawn until further notice.

7. If you have any questions please contact Julie Martin, Credentials Manager in the Clinical Quality Management Office at 520-533-2460 or julie.a.martin.civ@mail.mil.

FR:

Marie P. Carmona
LTC, AN
Director

Copy to:
MTF Credentials Manager
DHA Market/SSO

This document is confidential and privileged under 10 U.S.C. §1102. In addition, this document may contain information protected by the Privacy Act of 1974. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with applicable law and regulations.

TO: Chairperson, Credentials Committee/Function

I acknowledge receipt of the Notice of Proposed Restriction of my Clinical Privileges/Practice, dated 16 December 2021. I understand I must make a written request for a peer review hearing panel within 30 calendar days from the date I received this notification. I further understand that failure to make a written request for a peer review hearing panel within this time period, or if I fail to appear for the scheduled Peer Review Hearing, I waive my right to a Peer Review Hearing and the right to appeal this adverse privileging/practice action to the Director, DHA. In addition, if no written Peer Review Hearing request is received within the allotted time, I understand that the proposed decision will become final and this adverse action will be forwarded to the Director, DHA for reporting to the National Practitioner Data Bank, state(s) of licensure, and appropriate professional organizations.

SAMUEL N. SIGOLOFF
MAJ, MC

This document is confidential and privileged under 10 U.S.C. §1102. In addition, this document may contain information protected by the Privacy Act of 1974. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with applicable law and regulations.



**DEPARTMENT OF THE ARMY**
U.S. ARMY MEDICAL DEPARTMENT ACTIVITY
2240 EAST WINROW AVENUE
FORT HUACHUCA, ARIZONA  85613-7079

MCXJ-CDR (1oo)                                              20 December 2021

MEMORANDUM FOR DISTRIBUTION

SUBJECT: Assumption of Command

1.  Effective 20 December 2021, the undersigned assumes command of USA MEDDAC (W0XNAA), Fort Huachuca, Arizona 85613-7079.

2.  Reference: Army Regulation (AR) 600-20, paragraph 2-7, (Army Command Policy), and AR 40-1 (Composition, Mission, and Functions of the Army Medical Department).

3.  Period: 20-29 December 2021.


                                        BRENT B. HAYWARD
                                        LTC, MS
                                        Acting Commander


DISTRIBUTION:
RHC-C POC
Cdr, RWBAHC
Cdr, Medical Company
RWBAHC Division Chiefs

# EXHIBIT Q



# Texas Medical Board

Mailing Address: P.O. Box 2018 MC-263 Austin, TX 78768-2018 Location Address: 333 Guadalupe Tower 3 Suite 610 MC-263 Austin TX 78701
Phone (512) 305-7100 Fax (888) 859-6336   Website: WWW.TMB.STATE.TX.US

December 21, 2021

SAMUEL NELSON SIGOLOFF, DO
4290 S. SANDY
SIERRA VISTA, AZ 85650

Re:   File # 22-2034 (please refer to this number in future correspondence)

Dear Doctor SIGOLOFF:

The Texas Medical Board (TMB) has initiated a formal investigation concerning File# 22-2034 to determine
if a violation of the Medical Practice Act has occurred. The general statutory allegation is:

164.051(a)(7) DISCIPLINARY ACTION BY PEERS
164.052(A)(5) UNPROFESSIONAL CONDUCT
and more specifically relates to:

It has been alleged that on 09-13-2021, the Defense Health Agency ("DHA") summarily suspended your clinical
privileges at Raymond W. Bliss Army Health Center, Sierra Vista, Arizona, based upon allegations of unprofessional
conduct including dissemination of misleading information to patients. Please furnish a narrative to include the patient
names, DOB, and DOS at issue.

Please complete the enclosed Medical Practice Questionnaire (MPQ) and return it on or before 1/8/2022.
If you have not previously provided a detailed narrative explaining the circumstances surrounding this matter,
you are encouraged to do so at this time. **Please know that TMB is HIPAA exempt, so you may legally
provide information without patient consent.**

This investigation has been assigned to FARRAH HOFFMAN, INVESTIGATOR. Ms. Hoffman can be
contacted at (512) 354-0065. Unless directed to do otherwise, **please forward all correspondence to
mail drop MC-263 at the above address.**

For information regarding the complaint process, please visit our website at www.tmb.state.tx.us

Sincerely,

Texas Medical Board

Enclosure: MPQ

xc: DAVID WILSON

J9U802.doc

# EXHIBIT R



**DEPARTMENT OF THE ARMY**
TROOP COMMAND, U.S. ARMY MEDICAL DEPARTMENT ACTIVITY
1650 COCHRANE CIRCLE
FORT CARSON, COLORADO 80913-4604

MCXE-TRP                                                          7 OCT 2021

MEMORANDUM FOR: Credentials Committee, Raymond W. Bliss Army Health Center, Fort Huachuca, Arizona 85613-7079

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

1. My name is ▮▮▮▮▮▮▮▮▮▮▮, DO. I am a Family Physician who graduated from ▮▮▮▮▮▮ Family Medicine Residency ▮▮▮▮. I have maintained Board Certification in Family Medicine ▮▮▮▮▮▮. I currently still practice ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Primary Care Clinic. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. I have been appointed to investigate the allegations of unprofessional conduct by Dr. Samuel Sigoloff, DO. Specifically I have been asked to investigate allegations that Dr. Sigoloff disseminated misleading information to patients, and distributed vaccine exemption letters to patients, characterizing vaccines as "genetic therapy".

3. As a provider in a different treatment facility, I have not met Dr. Sigoloff. Per review of provided credentials information by the RWBAHC Credentials Office, Dr. Sigoloff's professional background summary is as follows:
- Graduate of Ohio University of Osteopathic Medicine, 2 Aug 2002 to June 2012
- Martin Army Community Hospital, Ft. Benning, Family Medicine Internship, 1 July 2012-30 June 2013
- Martin Army Community Hospital, Ft. Benning, Family Medicine Residency, 1 July 2012-30 June 2015
- ABFM Certification: 1 July 2015-current.
- TX Doctor of Osteopathy Licensure, Initial Licensure: 27 Sep 19, Expires: 30 Nov 21 (No Disciplinary Action on file)
- NE DO Licensure, Initial Licensure: 29 Jan 14, Expires: 31 Oct 21 (No Disciplinary Action)
- BLS Certification, Expires 18 Mar 22
- In review of MAJ Sigoloff's previous Performance Assessments and Evaluation of Clinical Privileges in JCCQAS, there is not any derogatory information noted in his file prior to working at RWBAHC

It has been noted that Dr. Sigoloff recently moved to Fort Huachuca under Permanent Change of Station (PCS) orders this past summer and that he has only seen patients at RWBAHC since August. This timeline is demonstrated as there are only observable

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

outpatient notes from Dr. Sigoloff in the MHS Genesis electronic health record from 3 August 2021 through mid-September 2021.

4. Resources used to complete this investigation, in order of collection, included:

a) A chart review of MAJ Sigoloff's documented clinical encounters since 3 AUG 2021, which are listed with minimal personally identifiable information in spreadsheet format named QAI Chart Review Worksheet (Attachment 1). A total of 80 charts were reviewed with a patient demographic breakdown as follows:
- 4 x charts for patients under 2 years of age
- 32 x charts for children ages 2 to 11 years, with 27 appointed as well visits, school or sports physicals
- 15 x charts for adolescents ages 12 to 17 years, with 14 appointed as well visits, school or sports physicals
- 27 x charts for adults ages 18-65 years
- 2 charts for adults over age 65 years

b) Clinical practice references, guidelines, position papers, and Department of Defense/military orders found on open-source websites listed as attachments 2 through 29:

- Advisory Committee on Immunization Practice's (ACIP) Recommendation for Use of PBNT COVID19 Vaccine December 2020
- ACIP Recommendation for Use of Moderna COVID19 Vaccine December 2020
- ACIP Recommendation for Use of PBNT COVID19 Vaccine in Adolescents Aged 12-15 May 2021
- Centers for Disease Control (CDC) Myths and Facts about COVID-19 Vaccines
- CDC How to Address COVID-19 Vaccine Misinformation
- CDC About mRNA COVID-19 Vaccines Information page
- CDC Understanding Viral Vector COVID-19 Vaccines page
- CDC How to Talk with Parents about COVID-19 Vaccination
- CDC and National Institute for Health's Communicator's Tip Sheet for COVID-19 Vaccines
- CDC Special COVID-19 State of Vaccine Confidence Insights Report
- Infectious Disease Society of America (IDSA) COVID-19 FAQ page
- IDSA COVID-19 Vaccine Educating Patients and the Public
- Johns Hopkins Medicine COVID-19 Vaccines Myths Versus Fact Page
- American Academy of Pediatrics (AAP) Recommendations for COVID 9 Vaccination
- Department of Defense December 2020 COVID-19 Vaccine Guidance
- Military Health System/Defense Health Agency (MHS/DHA) COVID-19 Vaccine Efforts
- MHS/DHA Myths and Facts about the Fax: Debunking Common COVID-9 Vaccine Myths

2

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

- MHS/DHA Provider Vaccine Conversation Guide
- American Board of Pediatrics (ABP), American Board of Family Physicians (ABFM), American Board of Internal Medicine (ABIM) Combined Press Release Statement About Dissemination of COVID-19 Misinformation
- Federation of State Medical Boards (FSMB) Press Release: Spreading COVID-19 COVID Vaccine Misinformation May Put Medical License at Risk
- U.S. Surgeon General Issues Advisory During COVID-19 Vaccination Push Warning American Public About Threat of Health Misinformation July 15, 2021
- PUBMED Database Search Results for "Wuhan COVID-19 Virus"
- PUBMED Database Search Results for "COVID-19 Virus"
- American Family Physician Journal Article: Peripheral Vascular Disease Diagnosis and Treatment
- 2016 American Heart Association/American College of Cardiology (AHA/ACC) Guidelines on Management of Patients with Lower Extremity Peripheral Artery Disease
- Healthy Children.org Feeding & Nutrition Tips Your 1-Year-Old
- American Family Physician Article: Nutrition in Toddlers
- OPORD 21-53 COVID-19 Steady-State Operations, Annex C (Clinical Considerations), FRAGO 1, TAB A_MEDCOM Medical Exemption Process Map for HCPs Final

4. As it pertains to the allegation that MAJ Sigoloff disseminated misleading information to patients, I find it to be **substantiated** through my investigation. In 8 charts, identified in the attached QAI Worksheet (Attachment 1), a documented statement was annotated as follows:

> "Discussed risks and benefits associated with genetic therapy vaccines. Parent given recommendation that due to limited long-term data and risk/benefit ratio, no child under the age of 18 should receive genetic therapy vaccines for the Wuhan SARS-CoV-2 (COVID19) virus nor other genetic therapy vaccines."

It is also observed that upon 20 AUG 2021 and afterward, the above statement was included in 26 charts, identified in the attached QAI Worksheet (Attachment 1), in a modified form that removes the descriptive word "Wuhan" as follows:

> "Discussed risks and benefits associated with genetic therapy vaccines. Parent given recommendation that due to limited long-term data and risk/benefit ratio, no child under the age of 18 should receive genetic therapy vaccines for the SARS-CoV-2 (COVID19) virus nor other genetic therapy vaccines."

The above counseling statements directly oppose the overarching clinical guidance for the COVID vaccines by the ACIP, CDC, IDSA, and AAP (Attachments 2 through 15). Furthermore, it is noted that the provider's statements are not congruent with guidance from the Department of Defense and Military Health System/Defense Health Agency (MHS/DHA) who subscribe to and promote the above CDC and ACIP guidance as standard practice for military providers (Attachments 16-19).

3

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

There are additional concerns with Dr. Sigoloff's counseling statements against the COVID Vaccines. First is the use of the descriptive phrase "genetic therapy vaccines" that implies that the vaccine is a form of gene therapy and has potential to alter a person's genes. This is a well-documented form of misinformation that the CDC includes and dispels in their Myths and Facts webpage about COVID 19 vaccines (see attachments 5, 7-11). The misinformation of altering genes is also addressed and refuted by the IDSA, John's Hopkins Medicine, AAP, and the Military Health System/Defense Health Agency (see attachments 12-14, 18, and 19).

Secondly, Dr. Sigoloff states that "no child under age 18 should receive genetic therapy vaccines…". This statement is inaccurate from guidance associated to the teenage population for the Pfizer vaccine which was originally approved under EUA for age 16 and older (see attachment 2). At the time of the documentation in August, the Pfizer vaccine was approved under EUA for children 12 and over (see attachment 4). It should be noted that Dr. Sigoloff used the above statements and negatively counseled against vaccination in 8 adolescent charts, identified in the attached QAI Worksheet (Attachment 1), who were eligible for vaccination against COVID-19 based on CDC criteria and EUA approval. These acts aided the missed opportunity to lower these patients' risk of contracting the COVID-19 illness in the future. Moreover, the above statements were used in 25 charts, identified in the attached QAI Worksheet (Attachment 1), of children who did not meet the age eligibility criteria for receiving a COVID vaccine.  This suggests he purposefully provided negative vaccine counseling and disinformation to parents for avoiding future COVID immunizations for their children.

Of further concern regarding Dr. Sigoloff's documentation in charts, is the use of the descriptive word "Wuhan".  Between the above noted vaccine counseling statements and a separate documentation statement of Personal Protective Equipment utilization, Dr. Sigoloff refers to COVID-19 as the "Wuhan SARS-CoV-2 (COVID-19) virus in 13 patient charts, identified in the attached QAI Worksheet (Attachment 1), from 3 AUG to 20 AUG. When referencing medical databases to include the CDC, the World Health Organization (WHO), or the IDSA, the term "Wuhan" is not used in the title to describe the COVID-19 virus. Avoidance to the reference to the COVID-19 Virus as the "Wuhan COVID-19 Virus" is also true when searching the term "COVID-19 Virus" in the PUBMED database which returns with over 816 titles, compared to the PUBMED search for "Wuhan COVID-19 Virus" which displays only 8 results. Notably, only 1 title refers to the illness at the Wuhan COVID-19 Virus (see attachments 23 and 24). Of note, in the same search, one of the 8 articles is titled, "COVID-19, Coronavirus, Wuhan Virus or China Virus? Understanding How to "Do No Harm" When Naming an Infectious Disease." The article discusses the potential for an unintentional geographical association to an illness causing judgmental language that alienates certain populations; in this case increasing sinophobia (attachment 23). In the contexts used, Dr. Sigoloff's terminology is at risk of projecting a derogatory and judgmental tone about the COVID-19 virus and the associated vaccines, which is not recommended in the CDC/NIH recommendations for discussing vaccines (see attachment 10).

4

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

While the above statements were the most substantial concerns that I noted, other chart observations that I made in my review are as follows:

-11 patient charts, identified in the attached QAI Worksheet (Attachment 1), were opened and charted with HPIs by nursing staff at the time of encounter without a provider note to follow (missing note).

- 2 adult patient charts (Chart #13 and 15), identified in the attached QAI Worksheet (Attachment 1), have H&P and A/P section documentation inferring that a patient's complaint was potentially secondary to a COVID vaccine given prior.

- 3 adolescent charts (Charts #3, 6, and 7), identified in the attached QAI Worksheet (Attachment 1), had counseling against COVID-19 vaccination despite other age-specific vaccinations given at the time of visit.

- In one adult chart, (chart #9 in Attachment 1 QAI Worksheet) it was clinically concerning that on a first time meeting with a 68 y/o female with intermittent claudication from peripheral vascular disease, uncontrolled diabetes, and hypertension Dr. Sigoloff recommended to wean her off her diabetes medications and recommended that she stop one of her three blood pressure medications. Both of these recommendations are in direct conflict with treating her PVD and claudication which is what she was seen for on her next healthcare visits. Attachments 25 and 26 are clinical practice guidelines that discuss the importance of Diabetes and Hypertension control for the management of peripheral vascular disease.

- In one pediatric chart of a 12 month old infant, (chart #16 in Attachment 1 QAI Worksheet) Dr. Sigoloff makes the statement regarding dietary recommendations for a 12 month old with documented weight loss:

"Reviewed anticipatory guidance to include weaning foods and advised mother to have a wide variety of foods in the diet but to focus more on animal-based products."

This recommendation contains an unorthodox message of focusing on animal-based products. This does not follow AAP or AFP reviewed guidance for dietary recommendations in children under the age of two years, which encourages a variety of foods from the different food groups (see attachments 27 and 28). Of note in the chart review, approximately two and a half weeks later, the child's mother left a message with the clinic requesting an appointment with a Pediatrician for evaluation.

5. As it pertains to the allegation that MAJ Sigoloff inappropriately distributed vaccine exemption letters to patients, I find it to be **substantiated** through my investigation. Information regarding medical conditions that warrant consideration for use of the COVID vaccine is open-source, being found on the CDC and ACIP websites. The

5

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

contraindications for administering the COVID vaccine is limited to a history of allergy or anaphylaxis to a prior dose of COVID vaccine or the components within the vaccine which is predominately polyethylene glycol (PEG). The list of medical considerations or cautions for use of the COVID vaccines in patients is short and limited to persons with an active COVID infection, those with recent monoclonal antibody treatment for COVID within 90 days, a history of myocarditis during COVID or after a dose COVID vaccine, or prior case of Guillen Barre Syndrome. The MEDCOM guidance to healthcare providers in military treatment facilities, which follows CDC recommendations, is published and outlined in OPORD 21-53 COVID-19 Steady-State Operations, Annex C (Clinical Considerations), FRAGO 1, TAB A_MEDCOM Medical Exemption Process Map for HCPs (see attachment 29).

Upon chart review, Dr Sigoloff documented that he provided a temporary medical exemption memorandum to three patients. In one chart (Chart #60), there is no record or discussion of the medical rationale for the exemption other than the patient's request. A second chart (Chart #74) notes an exemption for a patient's family history of heart disease. A third chart (Chart #76) documents that an exemption was provided due to an active case of shingles, which could be considered reasonable decision making. However, there was no documentation in any of the three charts about the length of the exemption or process for request of a permanent exemption. In Chart #74, there is amendment made on a subsequent date that explains that the exemption was revoked because the provider's chain of command required him to do so.

6. The relevant documents for this investigation include the 80 patient charts and the respective documented clinical encounters assigned to Dr. Sigoloff. A summary of these charts and investigation observations are attached in Attachment 1.

7. Due to the short suspense of the investigation, no persons were interviewed. All evidence provided in attachments is from subject matter expert, official government organizations, or subject matter expert boards and organizations within medical specialties. The CDC, the IDSA, the AAFP, the AAP, and the DHA websites were a few of these resources. The rationale for using these resources is twofold. First, vaccine guidance and standards of practice is not a topic that would warrant a consult from any specialty group, such as an infectious disease specialist. Second, these resources referred to, are the same resources that Dr. Sigoloff or any Family Physician would have available and be expected to utilize for education of the topic along with correlating standards for practice.

8. Per the observations and rationale above, there is a preponderance of evidence to find that the allegations against Dr. Sigoloff of professional misconduct, with respect to disseminating and promoting false information as it relates to the COVID-19 virus and vaccine, as well as providing inappropriate medical exemption grants, are **substantiated**. The observations made are concerning for medical practice outside well established and clearly published clinical standards of care and increases patient and public health risk as it pertains to the COVID-19 virus. The risks and potential harm for patients, with respect to vaccine misinformation, is outlined by the US Surgeon General, and the CDC, is listed as increasing the risk for patient illness or death, increasing

6

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

public confusion and mistrust, prolonging the COVID-19 pandemic, and posing a serious threat to public health (see attachments 6 and 22).

Specifically in this investigation, Dr. Sigoloff counseled against vaccination in 8 adolescent patient encounters, of which each patient was eligible to receive the COVID vaccination at the time. This is directly contrary to the guidance of the CDC and the AAP. This type of counseling and missed opportunity to vaccinate these 8 patients, at best delayed a medical intervention that has proven risk reduction for serious illness, hospitalization, or even death from the COVID-19 virus. At worst, this negative counseling and missed opportunity increased these patients risk on a more permanent timeline, as he may have been effective in discouraging these patients and parents from ever receiving this intervention in the future. Additionally, while the vaccine was not yet approved for children under the age of 12, Dr. Sigoloff's negative counseling of the vaccine in his encounters with this age population may have also led to future vaccine hesitancy in these families, which in turn puts these patients at the same increased risks in the future.  From the public health perspective, although there is not a good way to measure, is the potential risk to other patients as Dr. Sigoloff's misinformation has potential to be spread to others within the community through the patients he counseled.

The use of derogatory descriptive words and phrases also suggest personal biases and oppositional intent, that have impeded the delivery of evidence based care.  This conduct is significant and egregious as outlined by the American Boards of Pediatrics, Family Medicine, and Internal Medicine, as well as the Federation of State Medical Boards (see attachments 20 and 21).

9. Based on these findings in the outpatient charts reviewed, it appears that Dr. Sigoloff has not followed standards of care that is expected for his specialty and experience level. The clinical practice displayed is not congruent with independent medical practice for a Family Physician based on the potential risks and harm to patients. The potential for rehabilitation of Dr. Sigoloff's behaviors is unknown given that the behavior appears to be based on attitudes and personal beliefs. Thus, the following recommendations are made:

a. Restriction in Clinical Privilege(s)/Practice: Assuming this is the first incident of practice outside known standards of care, it is recommended that the provider be restricted in practice and outlined on a Formal Practice Performance Evaluation to protect patient safety, preserve the quality and safety of healthcare, and protect the integrity of the Military Health System. Considerations for limiting scope of ages seen should be considered given the specific misinformation provided to nearly 30 families of pediatric patients. Consideration for complete supervision or complete chart review is recommended.

b. Revocation of Clinical Privileges/Practice: In the event that these identified concerns have previously been observed and addressed prior, or if the medical facility is without sufficient resources or means to provide increased levels of supervision, limitations in scope, or provide rehabilitative oversight, a revocation

7

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

of privileges should be considered in order to to protect patient safety, preserve the quality and safety of healthcare, and protect the integrity of the Military Health System.



Family Medicine Physician

Attachments:
1. QAI Chart Review Worksheet
2. Advisory Committee on Immunization Practice's (ACIP) Recommendation for Use of PBNT COVID19 Vaccine December 2020
3. ACIP Recommendation for Use of Moderna COVID19 Vaccine December 2020
4. ACIP Recommendation for Use of PBNT COVID19 Vaccine in Adolescents Aged 12-15 May 2021
5. Centers for Disease Control (CDC) Myths and Facts about COVID-19 Vaccines
6. CDC How to Address COVID-19 Vaccine Misinformation
7. CDC About mRNA COVID-19 Vaccines Information page
8. CDC Understanding Viral Vector COVID-19 Vaccines page
9. CDC How to Talk with Parents about COVID-19 Vaccination
10. CDC and National Institute for Health's Communicator's Tip Sheet for COVID-19 Vaccines
11. CDC Special COVID-19 State of Vaccine Confidence Insights Report
12. Infectious Disease Society of America (IDSA) COVID-19 FAQ page
13. IDSA COVID-19 Vaccine Educating Patients and the Public
14. Johns Hopkins Medicine COVID-19 Vaccines Myths Versus Fact Page
15. American Academy of Pediatrics (AAP) Recommendations for COVID 9 Vaccination
16. Department of Defense December 2020 COVID-19 Vaccine Guidance
17. Military Health System/Defense Health Agency (MHS/DHA) COVID-19 Vaccine Efforts
18. MHS/DHA Myths and Facts about the Fax: Debunking Common COVID-9 Vaccine Myths
19. MHS/DHA Provider Vaccine Conversation Guide
20. American Board of Pediatrics (ABP), American Board of Family Physicians (ABFM), American Board of Internal Medicine (ABIM) Combined Press Release Statement About Dissemination of COVID-19 Misinformation
21. Federation of State Medical Boards (FSMB) Press Release: Spreading COVID-19 COVID Vaccine Misinformation May Put Medical License at Risk
22. U.S. Surgeon General Issues Advisory During COVID-19Vaccination Push Warning American Public About Threat of Health Misinformation July 15, 2021
23. PUBMED Database Search Results for "Wuhan COVID-19 Virus"
24. PUBMED Database Search Results for "COVID-19 Virus"

8

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

SUBJECT: Quality Assurance Investigation Regarding MAJ Samuel N, Sigoloff, DO

25. American Family Physician Journal Article: Peripheral Vascular Disease Diagnosis and Treatment
26. 2016 American Heart Association/American College of Cardiology (AHA/ACC) Guidelines on Management of Patients with Lower Extremity Peripheral Artery Disease
27. Healthy Children.org Feeding & Nutrition Tips Your 1-Year-Old
28. American Family Physician Article: Nutrition in Toddlers
29. OPORD 21-53 COVID-19 Steady-State Operations, Annex C (Clinical Considerations), FRAGO 1, TAB A_MEDCOM Medical Exemption Process Map for HCPs Final

*Medical Quality Assurance Program Document, protected pursuant to 10 U.S.C. 1102. Copies of this document, enclosures thereto, and information therefrom will only be released in accordance with the law.*

# EXHIBIT S

**DEFENSE HEALTH AGENCY**
RAYMOND W. BLISS ARMY HEALTH CENTER
2240 E. WINROW AVE
FORT HUACHUCA, AZ 85613-7079

MCXJ-DCC-FM                                                                    5 November 2021

MEMORANDUM FOR Credentials Committee, Raymond W. Bliss Army Heath Center, Fort Huachuca, Arizona 85613-7079

SUBJECT: Response to the Quality Assurance Investigation – MAJ Sigoloff

Ref:

    (a) Defense Health Agency Procedures Manual (DHA-PM) 6025.13 (dtd 2019)

    (b) Government Accountability Office (GAO) Military Health Care: Defense Health Agency
        Processes for Responding to Provider Quality and Safety Concerns (dtd Dec. 1, 2020)

1. This memorandum is in response to the findings of the Quality Assurance Investigation (QAI), conducted by the Quality Assurance Investigating Officer (QAIO) LTC Jason Ferguson, D.O., regarding allegations of unprofessional conduct.

2. It is important to note that the references cited above refer to and ensure that due process will be a part of the QAI and any decision made. There is evidence that due process has already been violated in the following instances:

    a. MAJ Sigoloff was not provided a copy of the QAIO appointment orders even after asking and was not provided with a regulation that states that he is prohibited from acquiring the QAIO appointment orders. How is MAJ Sigoloff to determine the scope of this QAI?

    b. DHA-PM 602.25.13, Vol.3 enclosure 3, page 33, paragraph (i) clearly states "*the QAI report must contain the following:*" (i)1. the first paragraph must contain "*...scope of the investigation (e.g., what allegations and subsequent evidence was reviewed) and difficulties in completing the investigation or obtaining information.*" If any of the **required** information was present as directed, it was redacted in the last 3 lines of paragraph 1 of the QAI.

    c. DHA-PM 602.25.13, Vol.3 enclosure 3, page 33, paragraph (i)2. Clearly states "*... and origin of the allegation(s) under investigation.*" The origin of the allegations are NOT stated. The Privileging Authority, LTC Carmona, was the originator of these allegations and she is the one that placed MAJ Sigoloff into summary suspension. LTC Carmona has significant conflict of interest, which violates MAJ Sigoloff's due process. LTC Carmona was not following DHA policy. LTC Carmon placed MAJ Sigoloff into summary suspension on 13SEP2021, as he was following DHA policy. MAJ Sigoloff reported LTC Carmona to the Investigator General and he was given whistleblower status on 14SEP2021. LTC Carmona placed a limited gag order on MAJ Sigfoloff, via a counseling on DA Form 4856 which further suppressed his voice over injustices. MAJ Sigoloff filed an Equal Opportunity complaint for discrimination based on gender and national origin against LTC Carmona; the investigation is underway. MAJ Sigoloff has also filed a complaint against LTC Carmona to the Texas Board of Nursing (complaint # 2021100557) for practicing medicine without a license. Also see email from LTC Carmona to local commander, exhibit 15, to show further bias against MAJ Sigoloff by LTC Carmona.

    d. DHA-PM 602.25.13, Vol.3 enclosure 3, page 34 paragraph 10, states that "*..will redact the report presented to the healthcare provider (e.g., witness names, patient privacy information).*" The only portion redacted was the name of QAIO, of which was discerned since the QAIO's letterhead was not redacted. Both references a) and b) above state that the QAIO will be unbiased. How can any lack of bias or bias be determined of the name of the QAIO is not revealed?

e. DHA-PM 602.25.13, Vol.3 enclosure 3, page 36, paragraph (b) states the privileging authority, LTC Carmona, "*is not bound by the recommendations of the credentials committee.*" Due process is not possible if LTC Carmona remains the decision authority, as MAJ Sigoloff has leveled significant allegation against her.

f. DHA-PM 602.25.13, Vol.3 enclosure 3, page 33, (i)3 requires "*a separate statement for each allegation with recitation of relevant facts and analysis of the evidence related to that allegation. Based on the evidence discovered during the investigation, a QAIO may amend, or add to, the allegation investigated but clearly document so in the investigation report.*" Is it not possible to know the investigative requirements of the QAIO and whether he has expanded his investigation without access to the QAI appointment letter.

3. Each of the findings by the QAIO will be addressed below, but it is somewhat speculative without having seen the allegations, the appointment orders, or the origin of the complaint. Are his findings based on the allegations and direction in his orders? Or his own personal bias? The QAIO claims to have substantiated only the following: 1. dissemination of misleading information and 2. inappropriately distributed vaccine exemption letters to patients. In reading the QAI it appears that these are the sole allegations that have been substantiated, but again, without seeing the allegations and/or the appointment orders of the QAIO, it is difficult to determine as other allegations may not have been substantiated.

a. Alleged "substantiated" charge of disseminating misleading information:

1. Only sources used by QAIO are the calcified sources of ACIP, CDC, IDSA and AAP (ACIP is CDC and ISDA and AAP all follow what the CDC publishes). The QAIO is advocating for using only one source of information. When has one source been right 100% of the time? The QAIO does not use other more agile information sources like VAERS reports, ongoing trials in Israel, case reports with very concerning adverse reaction, and interviews/articles of experts in their respective fields.

2. QAIO has been in the DOD system so long that he believes doctors should not use their intellect to determine if the guidelines put forth by Department of Defense and Military Health System/Defense Health Agency (MHS/DHA, all of which is based on CDC) are the best guidance for preserving the fighting force. The QAIO seems to think that 'guidance' is the same as 'prescribed law' or 'standard of care.'

b. Alleged "substantiated" charge of inappropriately distribution of vaccine exemption letters to patients:

1. The QAIO and the originator of the allegations (LTC Carmona) make the assumption that MAJ Sigoloff does not have the liberty to practice medicine and provide informed consent to patients as required by the Nuremburg code which is prescribed law and standard of care. The QAIO uses the CDC and ACIP to imply that if MAJ Sigoloff does not participate in bullying the patient to get an Investigational New Drug (IND), then MAJ Sigoloff is somehow causing harm.

2. The QAIO and LTC Carmona make the assumption that MAJ Sigoloff is not medically nor legally allowed to do a risk assessment with his patient and then provide them with a letter allowing them to become exempt from an IND that could potentially cause more harm than what is intended to prevent. The IND is not 100% effective in preventing COVID-19 infection nor transmission[1].

3. Guidance was published on 14SEP2021 by the Secretary of Defense (SECDEF) for medical exemptions. See exhibit 2. LTC Carmona placed MAJ Sigoloff in summary suspension on 13SEP2021, before the guidance was

---

[1] https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7031e2-H.pdf; https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3897733; https://www.medrxiv.org/content/10.1101/2021.08.18.21262237v1; https://childrenshealthdefense.org/wp-content/uploads/Pierpont-Why-mandated-vaccines-are-pointless-final-1.pdf

published. The medical exemptions MAJ Sigoloff provided did follow the guidance that was published.

4. LTC Carmona officially appointed herself to make medical decisions (practicing medicine) on 16SEP2021. See exhibit 1. LTC Carmona does not have a medical license and her self-appointment goes against SECDEF guidance stated above.

4. The QAIO states additional findings in his QAI that seem to be led by his personal bias   against MAJ Sigoloff. MAJ Sigoloff has become a pariah in MEDCOM due to his inquiries concerning myocarditis and other concerning reactions to the IND. MAJ Sigoloff was in a Facebook group called 'U.S. Army Medical Corps.' MAJ Sigoloff was silenced by COL Elizabeth Duque for one week. The QAIO is also a member of this small group. COL Duque is an administrator for this army physician group and works at HQDA OTSG. COL Duque is Facebook friends with LTC Carmona. See exhibits 3-5. Below are unsubstantiated claims by the QAIO.

a. QAIO claims that "genetic therapy" is considered misinformation by the CDC.  The QAIO did not mention that in 2018 the FDA defines gene therapy as "Human gene therapy  seeks to modify or manipulate the expression of a gene or alter the biological properties of living cell for therapeutic use." See exhibit 6. It does not say to change the chromosomes or change DNA, it says to change expression of a gene (could be gene for s-spike protein) or alter biological properties of a living cell for therapeutic use (produce pathologic spike protein with intent to prevent infection). This is what the IND does.

b. QAIO claims that "eligibility" for a minor to receive an IND that is under Emergency Use Authorization (EUA) should be an opportunity used to pressure patients and parents into taking the IND.

c. QAIO also makes the assumption that "eligible" is defined as "required" and if MAJ Sigoloff did not coerce his patients, he could be charged with malpractice.

d. QAIO makes the claim that MAJ Sigoloff is sinophobic (biased against Chinese individuals). The article the QAIO uses to support his claim, see exhibit 7, comes to the exact **opposite conclusion**. Exhibit 7 states that "the present study found **NO evidence** that the use of a place-specific names leads to negative attitudes toward individuals from this location (i.e. sinophobia)." The QAIO has further demonstrated his bias against MAJ Sigoloff by completely misinterpreting the article. The QAIO is at risk of committing gross negligence or an attempt at defamation of character and either are grounds to have this entire QAI repeated by someone that is not biased against MAJ Sigoloff.

e. QAIO claims that MAJ Sigoloff lowered the medications of a 68 year old patient and that doing so was not what the patient desired and requested. The QAIO did not interview the patient to see what her wishes were nor does the QAIO seem to have any knowledge on how to reduce the burden of illness on patients.

1. Getrude Mphwanthe, Dave Weatherspoon, Wei Li, Lorraine Weatherspoon. (2020) Dietary Association with Glycemic Status Among Adults Clinically Diagnosed with Type 2 Diabetes in Malawi. *Journal of Community Health Nursing* 37:4, pages 233-243. (exhibit 11)

2. Thorning TK, Raziani F, Bendsen NT, Astrup A, Tholstrup T, Raben A. Diets with high-fat cheese, high-fat meat, or carbohydrate on cardiovascular risk markers in overweight postmenopausal women: a randomized crossover trial. Am J Clin Nutr. 2015 Sep;102(3):573-81. doi: 10.3945/ajcn.115.109116. Epub 2015 Jul 15. PMID: 26178720. (exhibit 12)

3. Livesey G, Livesey H. Coronary Heart Disease and Dietary Carbohydrate, Glycemic Index, and Glycemic Load: Dose-Response Meta-analyses of Prospective Cohort Studies. *Mayo Clin Proc Innov Qual Outcomes*. 2019;3(1):52-69. Published 2019 Feb 26. doi:10.1016/j.mayocpiqo.2018.12.007 (exhibit 13)

4. Behar S, Graff E, Reicher-Reiss H, Boyko V, Benderly M, Shotan A, Brunner D. Low total cholesterol is associated with high total mortality in patients with coronary heart disease. The Bezafibrate Infarction Prevention (BIP) Study Group. Eur Heart J. 1997 Jan;18(1):52-9. doi: 10.1093/oxfordjournals.eurheartj.a015117. PMID: 9049515. (exhibit 14)

f. QAIO claims MAJ Sigoloff has an unorthodox message for dietary guidance of a one year old child, which the QAIO calls an "infant." MAJ Sigoloff counseled the parents to give **"wide**

**variety of foods** in the diet but to focus more on animal-based products." QAIO states the AAP and AAFP say MAJ Sigoloff should encourage a "**variety of food** from different food groups." The QAIO either has a reading comprehension problem or is showing more bias   against MAJ Sigoloff. The QAIO also gives misleading information about the mother of the patient requesting a consult with a pediatrician.  The QAIO also fails to mention that MAJ Sigoloff's plan included ordering a consultation for the child to see a pediatrician and the mother was merely following up on the processing of the consultation. MAJ Sigoloff ordered the consultation for the pediatrician because the child had lost a significant amount of weight that was not  addressed prior to the first time that patient was seen by MAJ Sigoloff.

1. T A Sanders, Growth and development of British vegan children, *The American Journal of Clinical Nutrition*, Volume 48, Issue 3, September 1988, Pages 822–825, https://doi.org/10.1093/ajcn/48.3.822 (exhibit8)

2. Heys M, Jiang C, Schooling CM, et al. Is childhood meat eating associated with better later adulthood cognition in a developing population?. *Eur J Epidemiol*. 2010;25(7):507-516. doi:10.1007/s10654-010-9466-0 (exhibit 9)

3. Krebs NF, Mazariegos M, Tshefu A, Bose C, Sami N, Chomba E, Carlo W, Goco N, Kindem M, Wright LL, Hambidge KM; Complementary Feeding Study Group. Meat consumption is associated with less stunting among toddlers in four diverse low-income settings. Food Nutr Bull. 2011 Sep;32(3):185-91. doi: 10.1177/156482651103200301. PMID: 22073791; PMCID: PMC3918945. (exhibit 10)

g. QAIO claims MAJ Sigoloff documented in two patient charts that the "patient's complaint was potentially secondary to a COVID vaccine given prior." The QAIO considers the IND to be 100% and absolutely safe or he consider it heresy to entertain the idea that a IND could cause a side effect.

5. It is also of concern that the QAIO failed at the basic tenant of any investigation, he **did not interview any witnesses**. His excuse, in his own words, is as follows: "Due to the short suspense of the investigation, no persons were interviewed." Without the appointment orders, it cannot be determined what the timeline was, if one existed, and why there was such a rush. If any physician was conducting an investigation that could lead to action against licensure of another physician, the QAIO is duty is bound to be thorough and unbiased. Instead, this QAIO gives excuses and repeatedly demonstrates bias against MAJ Sigoloff. It would seem that an investigation of such importance, an Army doctor's livelihood and career, would not be rushed, especially since MAJ Sigoloff has already been suspended and removed from patient care. Potentially, the patients MAJ Sigoloff provided medical exemptions to may have a different view of what happened, what was said, in what context, and for what reason. But we do not know because of a "short suspense."

6. In the closing paragraph, the QAIO charges MAJ Sigoloff with not following "standard of care." The phrase "failure to meet standard of care" or even that concept is nowhere else in the entire QAI that LTC Ferguson prepared. It would seem that the QAIO is fabricating his own charges which is either gross negligence or defamation of character. The QAIO states he only substantiates the claims: 1. dissemination of misleading information and 2. distribution of  vaccine exemption letters. The QAIO does not state MAJ Sigoloff spread "DISinformation" but claims only 'misleading information' and the QAIO's only source can be boiled down to the CDC. The QAIO is taking the role of so called "fact-checkers" (i.e. Facebook) that give warnings for 'misleading information'. However, instead of putting a warning banner on a social media post, the QAIO is making negligent or defaming claims against MAJ Sigoloff that could affect his medical license. It is easy to think all differing ideas are wrong if one is too arrogant to look beyond only one source for **all information** on a topic. The QAIO seems to believe there is a legal stature that prohibits the use of medical exemptions. Assurance is given that no such statute would be legal under the U.S. Constitution.

The QAIO then opines, "The potential for rehabilitation of Dr. Sigoloff's behaviors is unknown given that the behavior appears to be based on attitudes and personal beliefs." The QAIO is saying that MAJ Sigoloff's personal belief of honest questioning and lifelong learning combined with his oath "to do no harm", should be interpreted as pathologic. The QAIO, believing that MAJ Sigoloff's "behavior" is pathologic, presents the following recommendation of: 1. MAJ Sigoloff's clinical privileges are restricted and consideration for complete supervision or complete chart review is recommend OR 2. if this is a repeat offense or the **clinic does not have sufficient resources to provide oversight**, then MAJ Sigoloff's privileges should just be revoked. The recommendations set for this QAIO are evidence of character assassination as they are based on his opinions that

are formed out of gross negligence or defamation of character and due to his admitted flippant remarks in this QAI.

The facts are, MAJ Sigoloff has been in good standing for nine years of medical practice with no complaints against his license nor has he been previously suspended from clinical practice. MAJ Sigoloff has also served honorably for nine years and will continue to do so. MAJ Sigoloff has been described in Officer Evaluation Reports as follows: "CPT Sigoloff is in the top 5% of physicians I have served with during my 12 years on active duty," "CPT Sigoloff is among the top five Family Physicians I have served with in my 36 years in the army," "Great judgment during patient care. Multiple chart audits were completed with no deficiencies found." "Consistently provides exceptional care to the patients on his panel," and "MAJ Sigoloff provided compassionate and empathetic health care to beneficiaries during a turbulent COVID environment."

Finally, this QAI should be thrown out and MAJ Sigoloff's clinical privileges should be reinstated immediately as this report has presented clear and convincing evidence that LTC Carmona has used her military appointment, given to her with special trust and confidence, to persecute MAJ Sigoloff. LTC Carmona is the privileging authority that makes the decision to revoke or restore MAJ Sigoloff's privileges, which will have a lifelong impact on his ability to work when he exits the military. This report has also presented clear and convincing evidence that the QAIO is incapable of presenting an unbiased option due to his deeply held personal beliefs and has participated in character assassination. Thank you for your time and consideration in regards to the injustice that has befallen MAJ Sigoloff.

SIGOLOFF.SAMU
EL.N.127636268
9

Digitally signed by
SIGOLOFF.SAMUEL.N.12763
62689
Date: 2021.11.05 10:44:55
-07'00'

Samuel N Sigoloff, D.O.
MAJ, MC
Medical Director
Raymond W. Bliss Army Health Center
Ft. Huachuca, AZ 85613
Office 520-533-0283

Attachments:

1.  MEMORANDUM FOR All Personnel assigned and/or attached to the Medical Company, U.S. Army Medical Department Activity (USA MEDDAC), Fort Huachuca, Arizona 85650-7079
2.  ANNEX XX Refusals and Medical/Religious Exemptions Process
3.  Screen shot of 'U.S. Army Medical Corps' Facebook group showing LTC Jason Ferguson is member
4.  Screen shot of Facebook messenger showing COL Elisabeth Rorick Duque suppressing MAJ Sigoloff
5.  Screen shot LTC Marie Elizabeth Carmona's Facebook friends showing COL Elizabeth Rorick Duque
6.  "What is Gene Therapy?| FDA"  Content current as of: 07/25/2018 (must go to website to see content current date, https://www.fda.gov/vaccines-blood-biologics/cellular-gene-therapy-products/what-gene-therapy).
7.  Masters-Waage TC, Jha N, Reb J. COVID-19, Coronavirus, Wuhan Virus, or China Virus? Understanding How to "Do No Harm" When Naming an Infectious Disease. *Front Psychol*. 2020;11:561270. Published 2020 Dec 9. doi:10.3389/fpsyg.2020.561270.
8.  T A Sanders, Growth and development of British vegan children, *The American Journal of Clinical Nutrition*, Volume 48, Issue 3, September 1988, Pages 822–825, https://doi.org/10.1093/ajcn/48.3.822.
9.  Heys M, Jiang C, Schooling CM, et al. Is childhood meat eating associated with better later adulthood cognition in a developing population?. *Eur J Epidemiol*. 2010;25(7):507-516. doi:10.1007/s10654-010-9466-0.
10. Krebs NF, Mazariegos M, Tshefu A, et al. Meat consumption is associated with less stunting among toddlers in four diverse low-income settings. *Food Nutr Bull*. 2011;32(3):185-191. doi:10.1177/156482651103200301.
11. Feinman RD, Volek JS. Carbohydrate restriction as the default treatment for type 2 diabetes and metabolic syndrome. *Scand Cardiovasc J*. 2008;42(4):256-263. doi:10.1080/14017430802014838.
12. Thorning TK, Raziani F, Bendsen NT, Astrup A, Tholstrup T, Raben A. Diets with high-fat cheese, high-fat meat, or carbohydrate on cardiovascular risk markers in overweight postmenopausal women: a randomized crossover

trial. Am J Clin Nutr. 2015 Sep;102(3):573-81. doi: 10.3945/ajcn.115.109116. Epub 2015 Jul 15. PMID: 26178720.

13. Livesey G, Livesey H. Coronary Heart Disease and Dietary Carbohydrate, Glycemic Index, and Glycemic Load: Dose- Response Meta-analyses of Prospective Cohort Studies. *Mayo Clin Proc Innov Qual Outcomes*. 2019;3(1):52-69. Published 2019 Feb 26. doi:10.1016/j.mayocpiqo.2018.12.007.

14. Behar S, Graff E, Reicher-Reiss H, Boyko V, Benderly M, Shotan A, Brunner D. Low total cholesterol is associated with high total mortality in patients with coronary heart disease. The Bezafibrate Infarction Prevention (BIP) Study Group. Eur Heart J. 1997 Jan;18(1):52-9. doi: 10.1093/oxfordjournals.eurheartj.a015117. PMID: 9049515.

15. LTC Carmona email traffic.

6

# EXHIBIT T

## DEVELOPMENTAL COUNSELING FORM
For use of this form, see ATP 6-22.1; the proponent agency is TRADOC.

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army. |
| PRINCIPAL PURPOSE: | To assist leaders in conducting and recording counseling data pertaining to subordinates. |
| ROUTINE USES: | The DoD Blanket Routine Uses set forth at the beginning of the Army's compilation of systems or records notices also apply to this system. |
| DISCLOSURE: | Disclosure is voluntary. |

### PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) | Rank/Grade | Date of Counseling |
|---|---|---|
| SIGOLOFF, SAMUEL, N | MAJ/O4 | 17SEP21 |

| Organization | Name and Title of Counselor |
|---|---|
| MEDDAC, FORT HUACHUCA, AZ | LTC MARIE CARMONA, MEDDAC COMMANDER |

### PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** *(Leader states the reason for the counseling, e.g. Performance/Professional or Event-Oriented counseling, and includes the leader's facts and observations prior to the counseling.)*

On 24 August 2021, the Secretary of Defense directed the Secretary of the Army to begin full vaccination of the U.S. Army against the COVID-19 disease.

On ⎯17 Sept 21⎯, you declined to receive the COVID-19 vaccine.

### PART III - SUMMARY OF COUNSELING
**Complete this section during or immediately subsequent to counseling.**

**Key Points of Discussion:**

1. The purpose of the COVID-19 vaccines is to prevent the spread of the COVID-19 disease.

2. The COVID-19 disease may be present in a possible area of operation.

3. The COVID-19 vaccines are safe and effective at preventing the COVID-19 disease and reducing the risk of severe illness and death. COVID-19 vaccines reduce the risk of people spreading the virus that causes COVID-19. While you may have side effects after your vaccination, these are normal and should go away within a few days. It typically takes 2 weeks after vaccination for the body to build protection (immunity) against the virus that causes COVID-19. You are not fully vaccinated until 2 weeks after the second dose of a 2-dose vaccine or 2 weeks after a single dose vaccine. You can learn more about the COVID-19 vaccine at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/index.html. Additionally, you may discuss any concerns you have about receiving the vaccine with medical professionals.

4. You are hereby ordered to become fully vaccinated with a COVID-19 vaccine that has received full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance NLT ⎯15 Dec 21⎯, subject to the availability of vaccines. This is a lawful order. Failure to obey this order may result in punitive or adverse administrative action. Voluntary immunization with a COVID-19 vaccine under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dose requirements prior to, or after receiving this order, constitutes compliance with this order.

5. If you believe you should be granted a medical exemption, then discuss this with your health care provider. If you have already been vaccinated, you must provide valid proof of vaccination for inclusion in your medical records. If you wish to submit an administrative exemption request under AR 40-562, including a request for a religious accommodation, you must request it through your chain-of-command. Soldiers with active pending immunization exemption requests will not be immunized or subjected to adverse action for refusal to receive the vaccine, pending the outcome of their request or any appeal of a denied request. If you continue to refuse to be immunized after final denial of your exemption request/appeal, you will be in violation of my order in paragraph 4 above. You are further advised IAW AR 600-20, Appendix P-2b(4) that noncompliance with immunization requirements may adversely impact deployability, assignment, or international travel and that exemptions may be revoked under imminent risk conditions.

I am counseling you for the conduct noted above. Be advised that continued conduct of this nature may result in administrative action to include your separation from the service, and/or punitive action under the UCMJ. If this conduct continues, action may be initiated to involuntarily separate you from the service under AR 600-8-24. If you are involuntarily separated, you could receive an Honorable, General Under Honorable Conditions, or Other Than Honorable discharge. If you receive an Honorable discharge, you will be qualified for most benefits resulting from your military service. If you receive a General Under Honorable Conditions discharge or an Other Than Honorable discharge, you may be ineligible for many, if not all, veterans benefits. If you receive a General Under Honorable Conditions or Other Than Honorable Discharge, you may face difficulty in obtaining civilian employment as employers may have a low regard for less than Honorable discharges.

### OTHER INSTRUCTIONS

This form will be destroyed upon: reassignment *(other than rehabilitative transfers)*, separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

**Plan of Action** *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below)*

MANDATORY VACCINATION DECLINATION:
(1) NLT 3 duty days after receipt of this counseling, the Service member will watch an educational video on the benefits of vaccination. The video is available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html. _____ (SM initial when complete) __ML__ (CDR initial when complete)
(2) NLT 3 duty days after the Service member watches the mandatory video, the immediate commander directs the Service member to comply with the order on page 1, paragraph 4. _____ (SM initial when complete) _____ (CDR initial when complete)
(3) If the SM continues to refuse immunization, the commander directs the Soldier to meet with a medical professional (physician, physician assistant, or nurse practitioner) to discuss the vaccine and any concerns. _____ (SM initial when complete) __ML__ (CDR initial when complete)
(4) NLT 3 duty days after the Service member consults with a medical professional, the immediate commander directs the Service member to comply with the order on page 1, paragraph 4. _____ (SM initial when complete) _____ (CDR initial when complete)
TEMPORARY OR PERMANENT MEDICAL EXEMPTION REQUESTS:
(1) If requesting a temporary or permanent medical exemption, the Service member will contact the Service member's Primary Care Manager (PCM) or equivalent (physician, physician assistant, or nurse practitioner) NLT 3 duty days after receipt of this counseling. The Service member will schedule the next available appointment with the PCM or equivalent. _____ (SM initial when complete) __ML__ (CDR initial when complete) The appointment is __TBD__
(2) If the request for a temporary medical exemption is denied, the Service member may request a second opinion NLT 3 duty days after notification of the denial. The denial authority will provide information on requesting a second opinion. _____ (SM initial when complete) _____ (CDR initial when complete)
(3) If the Commanding General, Regional Health Command denies the permanent medical exemption request, the Service member may appeal to The Surgeon General (TSG) through command channels NLT 3 duty days after notification of the denial. _____ (SM initial when complete) _____ (CDR initial when complete)
RELIGIOUS EXEMPTION REQUESTS:
(1) If requesting a religious exemption, the Service member will submit a written request for a religious exemption IAW AR 600-20, Appendix P-2b(1) to the immediate commander NLT 3 duty days after receipt of this counseling. _____ (SM initial when complete) _____ (CDR initial when complete)
(2) The commander will arrange an interview with the assigned unit Chaplain or other Chaplain determined by the senior Chaplain present, NLT 3 duty days after the commander receives the Service member's request for a religious exemption. _____ (SM initial when complete) _____ (CDR initial when complete)
(3) The commander will arrange for a PCM or equivalent to counsel the Service member to ensure the Service member is making an informed decision IAW AR 600-20, Appendix P-2b(3) _____ (SM initial when complete) _____ (CDR initial when complete)
(4) If TSG denies the request, the Service member may appeal to the Assistant Secretary of the Army (Manpower and Reserve Affairs) through command channels NLT 3 duty days after notification of the denial. _____ (SM initial when complete) _____ (CDR initial when complete)

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: ☐ I agree ☒ I disagree with the information above.

Individual counseled remarks:

I do will not comply
Not A Lawful order

Signature of Individual Counseled: _____  Date: 17 SEP 2021

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

Leaders will ensure Service member has the opportunity to discuss any request for an administrative or medical exemption with the chain-of-command, medical, Chaplain, and/or legal professionals, as appropriate.

Signature of Counselor: Marie Carmona 1 JEAN  Date: 17 Sept 21

**PART IV - ASSESSMENT OF THE PLAN OF ACTION**

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor: _____  Individual Counseled: _____  Date of Assessment: _____

**Note: Both the counselor and the individual counseled should retain a record of the counseling.**

# EXHIBIT U

| | |
|---|---|
| **From:** | Carmona, Marie E LTC USARMY MEDCOM RWBACH (USA) |
| **To:** | Sigoloff, Samuel N MAJ USARMY MEDCOM RWBACH (USA) |
| **Cc:** | Rodriguez, Norberto Jr LTC USARMY MEDCOM RWBACH (USA); Lynn, Paul MAJ USARMY USAG (USA) |
| **Subject:** | RE: Religious Exemption (UNCLASSIFIED) |
| **Date:** | Wednesday, September 22, 2021 2:01:42 PM |

CLASSIFICATION: UNCLASSIFIED

MAJ Sigoloff,

 I acknowledge receipt of your religious exemption.  Thank you


V/R

Marie E. Carmona
LTC/AN
Commanding
Raymond W. Bliss Army Health Center
Fort Huachuca, Arizona

Office: 520-533-9026
Cell: 520-450-3233
Marie.e.carmona.mil@mail.mil


Army Medicine, Army Strong



---

**From:** Sigoloff, Samuel N MAJ USARMY MEDCOM RWBACH (USA) <samuel.n.sigoloff.mil@mail.mil>
**Sent:** Wednesday, September 22, 2021 1:52 PM
**To:** Carmona, Marie E LTC USARMY MEDCOM RWBACH (USA) <marie.e.carmona.mil@mail.mil>
**Cc:** Rodriguez, Norberto Jr LTC USARMY MEDCOM RWBACH (USA)
<norberto.rodriguez40.mil@mail.mil>; Lynn, Paul MAJ USARMY USAG (USA)
<paul.lynn.mil@mail.mil>
**Subject:** Religious Exemption

Ma'am,

I would like to formally make a request for Religious Exemption to any vaccines.
Needed info:
Name:  Sigoloff, Samuel, N.
Rank: MAJ
MOS/Branch: 61H/MC
Description of religious tenet:
For further details see MFR from Chaplin Lynn that will be provided as soon as it is available.

Due to Deuteronomy 5:17 which states "You must not Murder," I find it morally reprehensible to be coerced to inject a product that was produced using (in part or in whole) any portion of an aborted fetal cell. I will not participate in this action. Zephaniah 1:9 says "Yes, I will punish those who participate in pagan worship ceremonies and those who fill their masters' houses with violence and deceit." Also in Levitcus 18:21 " Do not permit any of your children to be offered as a sacrifice to Molech, for you must not bring shame on the name of your God. I am the LORD." And Exodus 20:7 "Thou shalt not take the name of Jehovah thy God in vain; for Jehovah will not hold him guiltless that has taken his name in vain."

This means that, as a Christian (non-denominational), when I was baptized I "took the name of God" there by becoming a representative of the LORD on earth. It is a daily struggle to carry the Name honorably, that is leading to me becoming a better man. Even the very definition my name in Hebrew shows that I am the LORDS precious possession. Samuel is interpreted as either "name of God" or "God has heard." My last name, Sigoloff, is a combination of the Hebrew word "Segullah" and Russian "off." Segullah means treasured possession (i.e. For the LORD has chosen Jacob for himself, Israel as his own possession (segullah) Psalms 135:4 ESV) and "off" or more appropriately "ov" means "son of" in Russian. Next as one who carries the name of the LORD I must not participate in murder nor must I allow my children to be given to Molech. In spiritual/ religious terms abortion is sacrifice to Molech (aka Baal). Therefor getting a biologic treatment and/or vaccine would put me in a place where I am participating in worship of Molech (aka Baal). Jesus said " the world would love you as one of its own if you belonged to it, but you are no longer part of the world. I chose you to come out of the world, so it hates you (John 15:19). It was not enough that Lot (Abrahams nephew) lived in Sodom and Gomorrah and said nothing but the towns people tried to pull the people out of Lots home and force them to participate in that which goes against the LORDS law (and natures law). This led to the destruction of Sodom and Gomorrah.

I will not be forced nor coerced to participate in acts which I find morally reprehensible and to me Molech/Baal worship is taking them name of one true God , the God of Abraham, Isaac and Jacob, in vain.

Very Respectfully,

Samuel N Sigoloff, D.O.
MAJ, MC
Medical Director
Raymond W. Bliss Army Health Center
Ft. Huachuca, AZ 85613
Office 520-533-0283


'its all about the patient'

# EXHIBIT V

# ❮ Results & Measurements History

The information provided below is in the electronic medical record. If you believe any data is incorrect, please notify the office.

**Sigoloff, Samuel N**

### SARS-CoV-2 PCR    Learn more about this ⬀

**Positive** (Critical)

Date: Nov 12, 2021 06:20 a.m. PST        Reference Range: Negative

**Ordered By:** RAU, RANDY JOSEPH, NP

**Note:** Nov 12, 2021 08:36 a.m. PST
Positive critical reported and readback performed to/by RN Beth @ 0939. 11/12/21 09:41:00 MST - CB

### Negative

Date: Sep 02, 2021 07:45 a.m. PDT        Reference Range: Negative

**Ordered By:** RODRIGUEZ, NORBERTO, MD

### Negative

Date: Jun 25, 2021 09:42 a.m. PDT

**Ordered By:** NEWMAN-HILL, LORNA DAWN, NP

# EXHIBIT W





LOT/EXP

PAA173696

**Pfizer-BioNTech C**
After dilution, vial con
For intramuscular use. Ca
For use under Emergen
DILUTE BEFORE USE. D
dilution when stored at
Dilution date and time:





# EXHIBIT X

| From: | Rodriguez, Norberto Jr LTC USARMY MEDCOM RWBACH (USA) |
|---|---|
| To: | Dunn, William D Jr CIV USARMY MEDCOM RWBACH (USA); Mitchell, James A CIV USARMY MEDCOM RWBACH (USA); Armstead, Tatyana CTR USARMY MEDCOM RWBACH (USA); Harris, Thomas Alcott CIV (USA); Staggs, Robert Joseph CIV USARMY MEDCOM RWBACH (USA); Kasper, Joseph F CIV USARMY MEDCOM RWBACH (USA); Ruble, Mamie S CIV USARMY MEDCOM RWBACH (USA); Dempster, Katrina A CPT USARMY MEDCOM RWBACH (USA); Simmons, Douglas A CIV USARMY MEDCOM RWBACH (USA); Patrick, Stefanie M CIV USARMY MEDCOM RWBACH (USA); Guinan, Taylor F CPT USARMY 1 CD CAVN BDE (USA); Matheson, Ryan J CPT USARMY MEDCOM RWBACH (USA) |
| Cc: | Sigoloff, Samuel N MAJ USARMY MEDCOM RWBACH (USA); Rau, Randy J LTC USARMY MEDCOM RWBACH (USA) |
| Subject: | FW: Interchangeability of Comirnaty and Pfizer (UNCLASSIFIED//FOUO) |
| Date: | Tuesday, September 14, 2021 10:58:26 AM |
| Attachments: | COVID-19 COMIRNATY EUA-BLA equivalent memo_v3.1 clean (DIGITAL).pdf |

Team,

Good morning and See below.

LTC Rodriguez

---

**From:** Wang, Chin C Jr CIV DHA PUB HLTH (USA) <chin.c.wang.civ@mail.mil>
**Sent:** Tuesday, September 14, 2021 10:43 AM
**To:** Gramlich, Bruce Alan CIV USARMY MEDCOM WBAMC (USA) <bruce.a.gramlich.civ@mail.mil>; Venable, Brett H COL USARMY MEDCOM WBAMC (USA) <brett.h.venable.mil@mail.mil>; Mendoza, David COL USARMY MEDCOM WBAMC (USA) <david.mendoza7.mil@mail.mil>; Scully, Shawna E COL USARMY MEDCOM WBAMC (USA) <shawna.e.scully.mil@mail.mil>; Aponte, Omar CPT USARMY 1 MED BDE (USA) <omar.aponte1.mil@mail.mil>; Rahim, Renzie R CPT USARMY MEDCOM KACH (USA) <renzie.r.rahim.mil@mail.mil>; Estrada, Elizabeth CIV (USA) < @mail.mil>; Doxey, Alexis M CIV USARMY MEDCOM WACH (USA) <alexis.m.doxey.civ@mail.mil>; Rivero, Luis Raul COL USARMY MEDCOM WACH (USA) <luis.r.rivero.mil@mail.mil>; Parson, Nancy E COL USARMY MEDCOM WACH ore, Kimberly J MAJ USARMY MEDCOM IACH (USA) <kimberly.j.moore41.mil@mail.mil>; Green, Jeremy G 1SG USARMY MEDCOM MAMC (USA) <jeremy.g.green.mil@mail.mil>; Johnson, Jason T SSG

FYI

EUA-Pfizer and Comirnaty are equivalent and can be used to meet DoD requirement.

Chin C. Wang, Jr
Immunization Healthcare Specialist
Defense Health Agency
Immunization Healthcare Branch
Building 38801, Academy Drive, Room 101
Fort Gordon, Georgia 30905
Telephone: 706-787-2726 ☎
iPhone:  706-589-4157 ☎
Email:  chin.c.wang.civ@mail.mil
Website:  www.health.mil/vaccines
GET VACC Line: 877-438-8222 ☎

This document may contain information covered under the Privacy Act of 1974, 5 USC 552(a), and or the Health

Insurance Portability and Accountability Act (PL104-191) and its various implementing regulations, therefore, it must be protected in accordance to these provisions.  This document was produced for the purpose of medical quality assurance and is protected under 10 USC, Section 1102.  Do not release without proper authority. Unauthorized release or failure to maintain confidentiality subjects you to appropriate sanctions. If you have received this correspondence in error, please notify the sender immediately and destroy this document.



**ASSISTANT SECRETARY OF DEFENSE**

**1200 DEFENSE PENTAGON**
**WASHINGTON, DC  20301-1200**

**HEALTH AFFAIRS**

MEMORANDUM FOR ASSISTANT SECRETARY OF THE ARMY (MANPOWER AND
        RESERVE AFFAIRS
       ASSISTANT SECRETARY OF THE NAVY (MANPOWER AND
        RESERVE AFFAIRS
       ASSISTANT SECRETARY OF THE AIR FORCE (MANPOWER
        AND RESERVE AFFAIRS
       DIRECTOR, DEFENSE HEALTH AGENCY

SUBJECT:  Mandatory Vaccination of Service Members using the Pfizer-BioNTech COVID-19
    and Comirnaty COVID-19 Vaccines

   On August 23, 2021, the U.S. Food and Drug Administration (FDA) approved the
biologics license application for the Comirnaty vaccine, made by Pfizer-BioNTech, as a two-
dose series for prevention of coronavirus disease 2019 (COVID-19) in persons aged 16 years or
older.  Previously, on December 11, 2020, the FDA issued an Emergency Use Authorization
(EUA) for the Pfizer-BioNTech COVID-19 vaccine, which has the same formulation as the
Comirnaty vaccine.  Per FDA guidance, these two vaccines are "interchangeable" and DoD
health care providers should "use doses distributed under the EUA to administer the vaccination
series as if the doses were the licensed vaccine."[1]

   Consistent with FDA guidance, DoD health care providers will use both the Pfizer-
BioNTech COVID-19 vaccine and the Comirnaty COVID-19 vaccine interchangeably for the
purpose of vaccinating Service members in accordance with Secretary of Defense Memorandum,
"Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service
Members," August 24, 2021.

   My point of contact for this guidance is Colonel Michael J. Berecz, who may be reached
at (703) 681-8463 or michael.j.berecz.mil@mail.mil.

             ADIRIM.TERR  Digitally signed by
                    ADIRIM.TERRY.A.152384
             Y.A.152384712  7127
                    Date: 2021.09.14 11:02:05
             7           -04'00'

             Terry Adirim, M.D., M.P.H., M.B.A.
             Acting

cc:
Surgeon General of the Army
Surgeon General of the Navy
Surgeon General of the Air Force
Joint Staff Surgeon

---

[1] FDA, "Q&A for Comirnaty (COVID-19 Vaccine mRNA)," https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna, accessed September 10, 2021.

# EXHIBIT Y



6646

To be completed and signed by the prescriber. To be used only for prescriptions which are to be filled through the Department of Defense (DoD) TRICARE pharmacy program (TPHARM).  Express Scripts is the TPHARM contractor for DoD.

- The provider may **call**: **1-866-684-4488**
or the completed form may be **faxed** to:
**1-866-684-4477**

- The patient may attach the completed form
to the prescription and **mail** it to: **Express Scripts, P.O. Box 52150, Phoenix, AZ 85072-9954**
or **email** the form only to:
**TpharmPA@express-scripts.com**

*Prior authorization expires in 6 months. Note: PA would only apply to outpatient use, and would not impact any investigational protocols.*

**Step 1**   **Please complete patient and physician information (please print):**

| Patient Name: | | Physician Name: | |
| Address: | | Address: | |
| Sponsor ID # | | Phone #: | |
| Date of Birth | | Secure Fax #: | |

**Step 2**   **Please complete the clinical assessment:**

| | | | |
|---|---|---|---|
| 1. | Is ivermectin being used for an FDA-approved indication including intestinal strongyloidiasis or onchocerciasis (river blindness)? | ☐ Yes<br>**Sign and date below** | ☐ No<br>Proceed to Question **2** |
| 2. | Is ivermectin being used to treat or prevent COVID-19? | ☐ Yes<br>**STOP**<br>**Coverage not approved** | ☐ No<br>Proceed to Question **3** |
| 3. | Is the requested medication prescribed for ascariasis (roundworm), demodicosis, gnathostomiasis, cutaneous larva migrans (dog and cat hookworm), pediculosis (lice), Mansonella ozzardi infection, Mansonella streptocerca infection, scabies, trichuriasis (whipworm), or Wucheria bancrofti infection? | ☐ Yes<br>**Sign and date below** | ☐ No<br>Proceed to Question **4** |
| 4. | Is ivermectin prescribed by or in consultation with an infectious disease provider? | ☐ Yes<br>**Sign and date below** | ☐ No<br>**STOP**<br>**Coverage not approved** |

**Step 3**   I certify the above is true to the best of my knowledge. Please sign and date.

| Prescriber Signature | Date |
|---|---|

[20 September 2021]

# EXHIBIT Z



**DEPARTMENT OF THE ARMY**
REGIONAL HEALTH COMMAND CENTRAL
4070 STANLEY ROAD
JOINT BASE SAN ANTONIO, FORT SAM HOUSON TX 78234-2715

MCCR-CG                                                10 January 2022

MEMORANDUM FOR Major Samuel N. Sigoloff, Raymond W. Bliss Army Health Center, Fort Huachuca, Arizona  85613

SUBJECT:  General Officer Memorandum of Reprimand

1. On 16 September 2021, you were at the Eifler Gym on Fort Huachuca for a COVID vaccine. You made statements that were unbecoming an officer. You stated to another officer that "you are making a wise choice," by declining the shot and that the officer should "get with [you] after this is over and [you'll] explain to me why this is all illegal," in the presence of Soldiers. Further, you stated to another officer that "no one in here [Eifler Gym] should [receive the COVID vaccine] either." Your actions are not with what I expect of an officer. Your actions are service discrediting.

2. You are hereby reprimanded. Your decision to encourage others to disobey a lawful order from your superior commissioned officer to vaccinate against COVID-19 fell significantly below the standards of good order & discipline expected of Soldiers in the U.S. Army and demonstrates a total disregard for your safety and the safety of others. Your lack of discipline causes me to question your potential in the U.S. Army.

3. This reprimand is imposed as an administrative measure and not as punishment under the Uniform Code of Military Justice. You are advised that in accordance with Army Regulation 600-37, Unfavorable Information, paragraph 3-4, I am considering whether to file this reprimand permanently in your Army Military Human Resource Record. Prior to making my filing decision, I will consider any matters you submit in extenuation, mitigation, or rebuttal, should you elect to do so. Such matters shall be submitted through the Regional Health Command Central Office of the Command Judge Advocate no later than seven (7) calendar days from the receipt of this memorandum of reprimand. The legal office can be reached at usarmy.jbsa.medcom-rhc-c.list.staff-judge-advocate-dl@mail.mil, or (210) 595-5780, if you have further questions or concerns. You will immediately acknowledge receipt of this reprimand by executing the enclosed acknowledgement. You also will be provided, by separate cover, a copy of the evidence which forms the basis for this reprimand.

BAGBY.SHAN.KE    Digitally signed by
VIN.1027797322   BAGBY.SHAN.KEVIN.1027797322
2                Date: 2022.01.11 21:42:50 -06'00'

SHAN K. BAGBY
Brigadier General, USA
Commanding

MCCR-CG                                         10 January 2022

MEMORANDUM FOR Commander, Regional Health Command - Central, JBSA Fort Sam Houston, Texas 78234

SUBJECT:  Acknowledgment of Memorandum of Reprimand & Evidence

1.  I acknowledge that I have read and understand the unfavorable information presented against me in the Memorandum of Reprimand.

2.  I acknowledge the evidence to accompany the Memorandum of Reprimand is enclosed.

3.  I understand that I have seven (7) calendar days in which to exercise my right to submit statements in my behalf, which if submitted, will be considered by you before this memorandum is placed in either my Army Military Human Resource Record or my local military personnel file.

4.  I understand that I may contact the Army Soldier Services Office located in building 158 for assistance in preparing a statement in my behalf.

5.  Having read the rights available to me, my decision is to (initial):

   [X] Submit a statement and/or documents in my behalf in the next seven calendar days. I understand that if I select this option, but do not submit written matters within seven calendar days, I waive my right to respond.


   [     ] Not to make a statement.


4 encls
1.  DA Form 4856, dtd 17 Sep 21
2.  CPT Rainsberger Sworn Statement        SAMUEL N. SIGOLOFF
3.  CPT Barnes Sworn Statement             MAJ, MC
4.  Ms. Chapman Sworn Statement            DATE: 14 JAN 2022


Building 51102

**DEFENSE HEALTH AGENCY**
RAYMOND W. BLISS ARMY HEALTH CENTER
2240 E. WINROW AVE
FORT HUACHUCA, AZ 85613-7079

MCXJ-DCC-FM                                                    17 January 2022

MEMORANDUM FOR Commander, Regional Health Commander – JBSA Fort Sam Houston, Texas 78234

SUBJECT: Response to General Officer Memorandum of Reprimand Issued to MAJ Samuel N. Sigoloff

1. Sir, I understand the purpose of this GOMOR is that I am accused of "disobeying a lawful order" and "encouraging others to disobey lawful a lawful order" by refusing to be vaccinated for COVID-19. I respectively disagree that I have violated a lawful order as the order I was given was impossible to follow. In FM2-22.3, page 5-23 (dtd 6SEP2006 on treatment interrogation of detainees) it states: "Every soldier must know how to respond to orders that he perceives to be unlawful.  If a soldier receives an order that he knows to be unlawful…he should follow the steps [last step is] If there appears to be no other recourse, refuse to obey the unlawful order." (encl. 1)

2. First, I refuse to be vaccinated with a vaccine that has only received Emergency Use Authorization (EUA) status. This includes the Johnson and Johnson, Moderna and Pfizer BioNTech vaccines. They are all EUA. In fact, BioNTech had its EUA status extended in August of 2021. By law informed consent is required when utilizing an EUA product which allows service members the absolute right refuse them. (See 10 USC §1107 and 1107a).

3. The SECDEF Memo, dtd 24 AUG. 2021, specifically states, "Mandatory vaccination against COVID-19 will only use COVID-19 vaccines that receive **full licensure** from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance." It goes on to state that service members may voluntarily become immunized with a COVID-19 vaccine under FDA Emergency Use Authorization.

4. The order and counseling I received, dtd 17SEP. 2021, from LTC Carmona, references the SECDEF memo, and specifically states, "4. You are hereby ordered to become fully vaccinated with a COVID-19 vaccine that has received full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance NLT 15 DEC 2021, subject to the availability of vaccines." (see encl. 2)

5. Comirnaty is currently the only vaccine that is alleged "full licensure." Comirnaty was not present the day LTC Carmona issued the order to take the injection and Comirnaty is not available[1] (see encl. 3). There have been claims and memorandums stating that BioNTech is, "interchangeable." The Secretary of Defense and my commander did not order me to become

---

[1] Emergency Use Authorization, at: https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization.

vaccinated with an interchangeable vaccine but a "fully licensed" vaccine unless I choose to receive an EUA vaccine. I do not choose to be injected with an EUA vaccine.  Even the CDC has said BioNTech and Comirnaty are "legally distinct." To claim BioNTech is "approved" does not mean licensed. The Pfizer BioNTech vaccine is not fully licensed but is still under EUA. In fact, as stated, its EUA status was extended in August. To claim BioNTech is approved is like someone being granted their driver's license but also having their driver's permit extended. Additionally, by law, if a fully licensed vaccine is available then all vaccines with an EUA status **may not** legally be used, and the pharmaceutical companies lose their immunity from negative reactions to the vaccine. It would appear that in order to continue to push the EUA vaccines, and not put Johnson and Johnson and Moderna out of business, as well as not open liability to the pharmaceutical companies, Comirnaty would continue to not be available as a fully licensed vaccine.

6. In an order issued Nov. 12 in Doe et al. v. Austin[2], U.S. Federal District Judge Allen Winsor stated that "the DOD cannot mandate vaccines that only have an EUA." One reason for his ruling is the difference in ingredients and manufacturing process between Pfizer's EUA vaccine and the approved Comirnaty. The Judge also stated, "The DOD's interpretation of §1107a is unconvincing.  FDA licensure does not retroactively apply to vials shipped before BLA (Biologics License Application) approval. See 21 U.S.C. §355(a). Thus, as a legal matter, vaccines sent before August 23—and vaccines produced after August 23 in unapproved facilities—remain "product[s] authorized for emergency use under section 564 of the Federal Food, Drug, and Cosmetic Act.' §1107a(a)(1). Section 1107a's explicit cross-reference to the EUA provisions suggests a concern that drugs mandated for military personnel be BLA-approved, not merely chemically similar to a BLA-approved drug. And the distinction is more than mere labeling . . .. Moreover, the DOD concedes that some of its current vials are not BLA-compliant, and that there is no policy to ensure that servicemembers get only BLA-compliant vaccines."

7. Per the FDA:

   a) **FDA Fact Sheet**: "WHAT IF I DECIDE NOT TO GET COMIRNATY (COVID-19 VACCINE, mRNA) OR THE PFIZER-BIONTECH COVID-19 VACCINE? Under the EUA, it is your choice to receive or not receive the vaccine. Should you decide not to receive it, it will not change your standard medical care."

   b) Informed Consent. Additionally, per the EUA law (§1107a), if there is an approved vaccine, experimental vaccines are unlawful to use. Under the EUA, they must provide informed consent, which allows you to refuse the vaccine (See, 21 U.S. Code §360bbb–3(e)(1)(a)(ii)):
      (ii) Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—
      (I) that the Secretary has authorized the emergency use of the product;
      (II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

---

[2] Now the case is named Cocker et al v Austin et al. Please see court documents attached showing I am a named plaintiff in this case.

(III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

8. As such, at no time should the DOD nor any other agency presume that BioNTech is an approved drug; it is not, and therefore it continues to carry the characterization of an Investigational New Drug (IND) for Emergency Use only.[3]

9. For the injections to be mandatory with an EUA vaccine, as mentioned above, the President himself must sign an Executive Order (EO) mandating the shot for service members. Absent that EO, service members have the absolute right to refuse.  There is currently no EO that waives the right of the military to informed consent.

10. Sir, as stated, the "fully licensed" vaccine is not available and was never made available to me. Based on reports I have read, heard, as well as entries in the Vaccine Adverse Event Reporting System (VAERS) with the many severe negative reactions to include thousands of deaths presumably associated with the vaccines, I respectfully refuse any EUA vaccine.

11. As a Field Grade Officer and Army Family Physician it is my duty to conserve the fighting force and to ensure that my fellow soldiers are not deceived into following unlawful orders.  This demonstrates living out the words of LTG Frederick "Ben" Hodges, when speaking to field grade officers, "Shame on you if you're not willing to stick your neck out there[4]."

12. In addition, I would like to point out my nine years of stellar and unblemished service and commitment to the Army and my commands and their leadership. Here are some excerpts from previous OERs: been described in Officer Evaluation Reports as follows: LTC Rodriguez commented, "CPT Sigoloff is in the top 5% of physicians I have served with during my 12 years on active duty." Other comments include: "CPT Sigoloff is among the top five Family Physicians I have served with in my 36 years in the army," "Great judgment during patient care. Multiple chart audits were completed with no deficiencies found." "Consistently provides exceptional care to the patients on his panel," and "MAJ Sigoloff provided compassionate and empathetic health care to beneficiaries during a turbulent COVID environment."

Encls  
1. FM2-22.3 exerpt  
2. Order to get vaccine  
3. Pictures of Pfizer Vial  

Samuel N Sigoloff, D.O.  
MAJ, MC  
Raymond W. Bliss Army Health Center  
Ft. Huachuca, AZ 85613  
Office 520-533-0283  

---

[3] *See*, "FDA Does a Bait and Switch with COVID Shots," https://lc.org/newsroom/details/082721-fda-does-a-bait-and-switch-with-covid-shots.

[4] https://www.army.mil/article/100849/general_offers_advice_to_field_grade_officers



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, REGIONAL HEALTH COMMAND–CENTRAL
4070 STANLEY ROAD, SUITE 121
JBSA FORT SAM HOUSTON TX  78234-7697

MCCR-CG

MEMORANDUM FOR Major Samuel N. Sigoloff, Raymond W. Bliss Army Health Center, Fort Huachuca, Arizona  85613

SUBJECT: Filing Determination of General Officer Memorandum of Reprimand

1.  The subject reprimand focused on MAJ Samuel N. Sigoloff's conduct at Eifler Gym on 16 September 2021, not vaccine refusal. I have considered the reprimand, the circumstances of the misconduct, and all matters submitted by the Soldier in defense, extenuation or mitigation, along with recommendations of subordinate commanders.

2.  I direct that this reprimand be:

☐   **Withdrawn and destroyed.**

☐   **Placed temporarily in the Soldier's local unit file with all enclosures.**  In accordance with AR 600-37, paragraph 3-5, the reprimand will remain in the local unit file for 18 months or until the Soldier is reassigned to another general court-martial jurisdiction, whichever is sooner.  The Soldier may contact their immediate commander to ensure removal, after the expiration date.

☑   **Placed permanently in the Soldier's Army Military Human Resource Record (AMHRR).**  The Office of the Command Judge Advocate (OCJA) will forward a copy of the reprimand and this filing determination to the Soldier's Chain of Command, who will ensure that the Soldier is informed of the filing determination.  I further direct the OCJA send the reprimand, the filing determination, and any allied papers to the Commander, United States Army Human Resources Command, ATTN: Army Soldier Records Branch (AHRC-PDR-R), 1600 Spearhead Division Avenue, Department 420, Fort Knox, Kentucky 40121-5402, for filing in accordance with AR 600-37, paragraph 3-5.

3.  The point of contact for this memorandum is SGT Dallas A. Calhoun at (210) 295-1599 or email at dallas.a.calhoun.mil@mail.mil.

BAGBY.SHAN.KE Digitally signed by
BAGBY.SHAN.KEVIN.102779732
VIN.1027797322  2
Date: 2022.01.30 15:11:32 -06'00'

2 Encls
1. GOMOR
2. Supporting Documents

SHAN K. BAGBY
Brigadier General, USA
Commanding

CF:
MAJ Samuel N. Sigoloff (w/ encls)



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, REGIONAL HEALTH COMMAND–CENTRAL
4070 STANLEY ROAD, SUITE 121
JBSA FORT SAM HOUSTON, TEXAS 78234-7697

MCCR-OCJA-NCOIC

MEMORANDUM FOR Commander, Headquarters, Regional Health Command-Central, Joint Base San Antonio, Texas  78234-7697

SUBJECT: Acknowledgement of Filing Determination of Reprimand

I have been served with the filing determination on a General Officer Memorandum of Reprimand (GOMOR), dated 30 January 2022. I understand that this GOMOR has been placed in my Army Military Human Resources Record (AMHRR) and will be sent to The Army Soldier Records Branch (AHRC-PDR-R) for filing in accordance with AR 600-37, paragraph 3-5.

SAMUEL N. SIGOLOFF
MAJ, MC
Respondent

# EXHIBIT AA

**INSTRUCTIONS FOR COMPLETING DA FORM 268 (REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (Flag)**

**SECTION I - Administrative Data.**
a.  Name:  Enter the Soldier's full name (last, first, middle initial) - All capital letters.
b.  DOD ID No:  Enter the Soldier's 10-digit DOD ID number (located on the reverse side of the CAC).
c.  Rank:  Enter the Soldier's three-character rank (for example, MAJ, CPT, WO1, CW3, SFC, or SPC).
d.  Date of Rank:  Enter the Soldier's current DOR (YYYYMMDD).
e.  Specialty/MOSC:  Enter the AOC codes for commissioned officers (for example, 12A/42H) (see DA Pam 611-21). For warrant officers
    and enlisted personnel, enter the PMOS (see section I, DA Form 4037 (ORB) and enlisted record brief appropriately).
f.  Component:  Enter the Soldier's component "RA," "USAR" or "ARNG".
g.  Unit Information:  Enter the Soldier's complete unit address, organization, station, zip code or APO, and major command.
h.  UIC:  Enter the Soldier's six-character unit identification code.
i.  Flagged Soldier's e-mail address:  Enter the official .gov or .mil only.
j.  HR office controlling flagging action:  Enter the office information that is initiating or removing the Flag.
k.  Telephone number:  Enter the complete office phone number, DSN or commercial, for the office listed in block j.
l.  Check the corresponding box to either initiate a new Flag or close an existing Flag.

**SECTION II - Initiate a Flag.**
a.  Non-Transferable Flag initiation:  Select the box for "this action is to initiate a Flag" (Section I, I), enter the effective date (YYYYMMDD)
    of the Flag (Section II, a), and select the corresponding box to identify what type of non-transferable Flag is being initiated.
b.  Transferable Flag initiation:  Select the box for "this action is to initiate a Flag" (Section I, I), enter the effective date (YYYYMMDD) of the
    Flag (Section II,  a), and select the corresponding box to identify what type of transferable Flag is being initiated.  If selection is for Flag
    code H - Punishment phase, indicate the punishment completion date (YYYYMMDD) in the space provided.

**SECTION III - Remove a Flag.**
a.  Select the box for this action is to remove a Flag (Section I, I).  Enter the two-character Flag code that is being removed (for example,
    AA, KA, UA) along with it's effective date (YYYYMMDD).  Enter the effective date (YYYYMMDD) for this Flag removal.
b.  Disposition:  Select the box for the appropriate report type code removing the Flag as:

   **C - Final Report - Favorable**.  Prepare this report when -
      1. An investigation results in no substantiated findings or charges are dropped.
      2. Soldier is exonerated, or when absolutely no disciplinary action is taken.
      3. Do not use this report code for ACFT or ABCP flag removals.

   **D - Final Report - Unfavorable**. Prepare this report when -
      1. The investigation finds substantiated charges or allegations; or -
      2. The punishment is completed.  Punishment includes locally filed GOMOR or LOR.
      3. Do not use this report code for ACFT or ABCP flag removals.

   **E - Final Report - Specified**.  Prepare this report when -
      1. The Soldier with an active Flag for ACFT failure passes a record ACFT (Flag code J).
      2. The Soldier with an active Flag for ABCP non-compliance subsequently meets the Army body composition standard (Flag code K).
      3. The Commander's decision to block an automatic promotion is removed (Flag codes P and T).
      4. The Soldier's conviction is expunged, pardoned, or set aside by competent authority (Flag code Q).
      5. The Soldier receives an approved waiver, from the appropriate HQ, for the administrative reason for nondeployability (Flag code R).
      6. The Soldier's Family care plan is certified (Flag code S).
      7. The Soldier's license or certification is restored for AMEDD or JAG (Flag codes I, O).
      8. The Reserve Component Soldier completes a periodic health assessment IAW 10 USC §10206 (Flag code N).

   **Z - Erroneous Report.**  Prepare this report to remove a Flag that has been deemed to have been emplaced erroneously.

**SECTION IV - Authentication.**
a.-i.  Commander's information, date, and digital signature.

**SECTION V - Validation.**
a-i.  Battalion level or higher commander validation is required for any Flag over 6 months old.  Enter the information, date, and digital signature.

**General Notes:**
1.  Flags are input into the appropriate HR system of record (SOR) within 3 working days of the Flag initiation.  Failure to update the SOR
    within 3 working days does not invalidate the Flag.
2.  Flagged Soldiers will be counseled, in writing, within 3 working days of the Flag initiation and provided a copy of the DA Form 268.
    Failure to counsel within 3 working days does not invalidate the Flag.
3.  Transferable Flags on PCSing Soldiers must be uploaded to the AMHRR temporary administrative folder IAW AR 600-8-104, para 1-6b.
4.  Documentation showing the successful completion of and removal from the ABCP must be uploaded to the Soldier's AMHRR temporary
    administrative folder IAW AR 600-8-104 para 1-6b.

# REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (Flag)

For use of this form, see AR 600-8-2; the proponent agency is DCS, G-1.

## SECTION I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. DoD ID No. | c. RANK | d. DATE OF RANK | e. SPECIALTY/PMOSC | f. COMPONENT |
|---|---|---|---|---|---|
| SIGOLOFF, SAMUEL, N | 1276362689 | MAJ | 06/02/2018 | 61H9C | RA |

| g. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | h. UIC | i. FLAGGED SOLDIER'S EMAIL ADDRESS (.gov or .mil) |
|---|---|---|
| USA MEDDAC, FORT HUACHUCA, AZ 85613, DHA | W0XNAA | SAMUEL.N.SIGOLOFF.MIL@MAIL.MIL |

| j. HR OFFICE CONTROLLING FLAGGING ACTION | k. TELEPHONE NUMBER | l. THIS ACTION IS TO: |
|---|---|---|
| RAYMOND W. BLISS ARMY HEALTH CENTER | (520) 533-5672 | ☐ INITIATE A FLAG (Sections II and IV only)  ☑ REMOVE A FLAG (Sections III and IV only) |

## SECTION II - INITIATE A FLAG

### a. NON-TRANSFERABLE FLAG

☐ A FLAG IS INITIATED, EFFECTIVE _____ FOR THE FOLLOWING REASON:

☐ Adverse Action (A)
☐ Involuntary Separation - field initiated (B)
☐ Referred OER, AER, or Relief for Cause NCOER (D)
☐ Security Violation or Loss of Security Clearance (E)
☐ HQDA - Delay of Promotion or Removal from a Selection List (F)
☐ AMEDD Lack of License or Certification (I)
☐ Commander's Investigation (L)
☐ Law Enforcement Investigation (M)
☐ Reserve Components Non-compliance with 10 USC §10206 (N)

☐ JAG Lack of License or Certification (O)
☐ Deny Auto Promotion to PV2/PFC/SPC (P)
☐ Lautenberg Amendment (Q)
☐ Administratively Non-deployable for Retention (R)
☐ No Family Care Plan (S)
☐ Deny Auto Promotion to 1LT/CW2 (T)
☐ Drug Abuse (U)
☐ Alcohol Abuse (V)
☐ HQDA - Involuntary Separation (W)

### b. TRANSFERABLE FLAG

☐ ACFT Failure (J)   ☐ Army Body Composition Program (K)   ☐ Punishment Phase (H)
Date Punishment Complete: _____

## SECTION III - REMOVE A FLAG

### a. FLAG TO REMOVE

☑ A FLAG (Two-Digit Flag Code) LA , WITH AN EFFECTIVE DATE OF 20210920 ) IS HEREBY REMOVED.

EFFECTIVE DATE OF THIS FLAG REMOVAL IS 20220131 , FOR THE FOLLOWING REASON:

### b. DISPOSITION

☐ Final Action Favorable (C)   ☑ Final Action Unfavorable (D)   ☐ Final Action Specified (E)   ☐ Erroneous (Z)

## SECTION IV - AUTHENTICATION

| a. UNIT COMMANDER'S NAME (Last, First, Middle Initial) | b. DoD ID No. | c. RANK | d. UIC | e. COMPONENT |
|---|---|---|---|---|
| LAFALCE, JENNIFER | 1522261838 | CPT | W0XNT0 | |

| f. UNIT, ORG., STATION, ZIP CODE/APO, MAJOR COMMAND | g. UNIT COMMANDER'S EMAIL ADDRESS (.gov or .mil) |
|---|---|
| USA MEDDAC, FT. HUACHUCA, AZ 85613, DHA | JENNIFER.LAFALCE.MIL@MAIL.MIL |

| | h. UNIT COMMANDER'S SIGNATURE | i. DATE |
|---|---|---|
| | LAFALCE.JENNIFER.1522261838 Digitally signed by LAFALCE.JENNIFER.1522261838 Date: 2022.01.31 16:05:32 -07'00' | 20220131 |

## SECTION V - VALIDATION (Required for any Flag over 6 months old)

| a. BN COMMANDER'S NAME (Last, First, Middle Initial) | b. DoD ID No. | c. RANK | d. UIC | e. COMPONENT |
|---|---|---|---|---|
| | | | | |

| f. UNIT, ORG., STATION, ZIP CODE/APO, MAJOR COMMAND | g. BN COMMANDER'S EMAIL ADDRESS (.gov or .mil) |
|---|---|
| | |
| | h. BN COMMANDER'S SIGNATURE | i. DATE |

DA FORM 268, APR 2021    PREVIOUS EDITIONS ARE OBSOLETE.