## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**BENJAMIN COKER, *et al.*,**

**Plaintiffs,**

**v.**                                                   **Case No. 3:21-cv-01211-AW-HTC**

**LLOYD AUSTIN, III, *et al.*,**

**Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION FOR PROTECTIVE ORDER</u>

Counsel for Plaintiff Master Sergeant ("MSgt") Nickolas Kupper, U.S. Air Force, along with the other Plaintiffs in this proceeding, move this Honorable Court for a Protective Order to prohibit attorneys from the Department of Justice ("DoJ") or other Defendants, either directly or indirectly, from soliciting written statements, interrogatory responses, or requests for admissions from, or making offers of settlement to, him or other Plaintiffs on contested matters that are the subject of the instant litigation. Besides bumping up against the ethical rules regarding communications with represented parties, the DoJ's efforts appear to be attempts at offers of compromise to settle individual or potential class action claims, to compromise the represented Plaintiffs' legal positions, or to cause them to be dismissed from this action.[1] This appears to have happened in other cases involving

---

[1] Neither Plaintiff Kupper nor Plaintiffs' counsel know the identity of the attorney(s) for the DoJ or other Defendants involved in these improper communications and

different military plaintiffs challenging the legality of the Department of Defense's ("DoD") mandatory COVID-19 shot program ("DoD Mandate").

At least 28 cases have been filed in U.S. district courts challenging the DoD Mandate, and MSgt Kupper is a potential class member in at least four such actions.[2] Plaintiffs' counsel respectfully submits that this Court should apply the framework in Rule 23(d) of the Federal Rules of Civil Procedure ("FRCP") for analyzing the instant motion for protective order because: (1) these communications occur in the context of pending, pre-certification class action cases; and (2) rely on the inherently coercive military superior-subordinate relationship, which is even more coercive than the employer-employee coercive relationship typically addressed by Rule 23(d) protective orders.

As "vaccine refusers," MSgt Kupper and other Plaintiffs face severe, adverse employment and disciplinary actions, up to and including disciplinary actions under

---

directives. Nor do they allege herein that any member of the DoJ trial team who has appeared in this proceeding has engaged in the conduct described herein.

[2] *See* Ex. 4 (list of related actions). MSgt Kupper is a potential class member for three pending class actions for Air Force members who have sought religious accommodation. *See Air Force Officer v. Austin*, No. 5:22-cv-9 (M.D. Ga.) (filed Jan. 3, 2022); *Doster v. Kendall*, No: 1:22-CV-84 (N.D. Ohio) (filed Feb. 16, 2022); *Spence v. Austin*, No. 4:22-cv-453 (N.D. Tex.) (filed May 27, 2022). He is also a potential class member in *Wilson v. Austin*, No. 4:22-cv-438 (E.D. Tex.) (filed May 23, 2022), which raises both statutory and constitutional challenges to the DoD Mandate that do not implicate the religious liberties. Undersigned counsel have appeared in or advised on *Wilson v. Austin.*

the Uniform Code of Military Justice ("UCMJ"). Accordingly, the proposed protective order should prohibit both direct and indirect communications with represented Plaintiffs by DoJ attorneys, and other Defendants' attorneys, down through the plaintiffs' chain of command. This is necessary to prevent Plaintiffs and Plaintiffs' counsel from having cases compromised by such coercive tactics.

In the instant case, MSgt Kupper's Commanding Officer directed him to provide, by May 20, 2022, a written statement that mirrors the responses to Defendants' interrogatory requests that Defendants seek through a Motion to Compel filed that same day. *See* ECF 88. MSgt Kupper was also repeatedly questioned on the same subject on May 19 and May 20, 2022, by his Commanding Officer, who acknowledged that the directive to provide the written statement did not come from him or "base legal," but rather was an "offering" that came from "DoJ and DoD." Ex. 2, Kupper Decl., ¶ 12.

In light of these unequivocal statements, it appears that the DoJ attorneys are using MSgt Kupper's chain of command to go around his attorneys to seek interrogatory responses and admissions, and to make settlement offers, while the litigation is pending, in an apparent attempt to get Plaintiffs to abandon or compromise legal positions already taken by their counsel.[3] These are exactly the

---

[3] Plaintiffs' counsel have conferred with Defendants' counsel, who have provided a written explanation insisting that no such improper communications occurred and suggesting that this is a misunderstanding. *See* Ex. 3. Given the unequivocal

kinds of "coercive circumstances" envisioned by federal courts in implementing protective orders under FRCP Rule 23(d) between defendants' counsel and putative – and named – class members. *See, e.g., Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 668 (E.D.Tex. 2003) ("[W]here the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive.") The threat of disciplinary action under the UCMJ makes the military superior-subordinate relationship more coercive than in the typical employer-employee relationship. Accordingly, the FRCP Rule 23(d) framework is appropriate to prevent such coercive and improper communications with represented Plaintiffs.

## STATEMENT OF FACTS

## I.   DEFENDANTS' INTERROGATORIES AND MOTION TO COMPEL

The factual background of the dispute between the Defendants and Plaintiffs are set forth in detail in Defendants' May 20, 2022 Motion to Compel, *see* ECF 83, and Plaintiffs' June 3, 2022 response thereto. *See* ECF 89. As relevant here,

---

statements from Plaintiff's chain of command, the outstanding discovery dispute, the timing, and the other circumstances surrounding the "offering," Plaintiffs' counsel are not persuaded by Defendants' explanation, nor are they obligated to accept such explanations. Plaintiffs' counsel have carefully considered and researched the issue. Accordingly, Plaintiffs' counsel believes that it is appropriate to bring this matter to the Court's attention and to let the Court decide the matter. Further it is possible that other DoJ attorneys not on the trial team made these communications without the awareness of the DoJ trial team.

Defendants propounded interrogatories and document requests to Plaintiffs on March 25, 2022. While styled as interrogatories, Defendant Interrogatories 3-8 appear to seek admissions from each Plaintiff as to whether they would or would not take Comirnaty or Spikevax—which are not defined terms, but that Plaintiffs understand to mean the FDA-approved vaccines labeled with the proprietary name and license number as required by 42 U.S.C. § 262(a)(1)—or "BLA-compliant" vaccines, which are defined as a "EUA-labeled" vaccines that have the "same formulation" as Comirnaty or Spikevax.[4]

---

[4] Plaintiffs note that Defendants' definitions incorporate Defendants' positions on two of the central factual and legal issues disputed by Plaintiffs in this proceeding. First, Plaintiffs contend that there are only two types of COVID-19 treatments: (1) those subject to an Emergency Use Authorization ("EUA"); and (2) those licensed by the Food and Drug Administration ("FDA") and labeled in accordance with 42 U.S.C. § 262(a)(1), *i.e.*, with the proprietary name and license number, rather than an EUA label. There is no legal basis for a third category of EUA-labeled, "BLA-compliant" vaccines. Plaintiffs' position has always been that this is a category created by Defendants' counsel for litigation purposes with no basis in law or the administrative record. Second, Plaintiffs have disputed from the outset that EUA and FDA-licensed vaccines have the "same formulation." In its November 12, 2021 order, this Court discussed the differences between the two. *See* ECF 47 at 7 n.5. In any case, the FDA itself no longer applies the "same formulation" standard for interchangeability. The FDA now considers products that are both legally distinct and that it acknowledges to have different formulations to be interchangeable if they are "analytically comparable." *See generally* ECF 68 at 45-47. Accordingly, it is entirely appropriate for Plaintiffs to object to an interrogatory that requires them to agree to Defendants' factual and legal premises that they reject, and that if accepted could be dispositive for the outcome of this case, cause them to be dismissed from the case, and/or subject them to discipline under the UCMJ.

In their responses, Plaintiffs objected to the interrogatories as speculative. In response to Interrogatories 4 (Comirnaty) & 6 (Spikevax), Plaintiffs responded as follows:

> Plaintiffs object because this interrogatory is speculative. Defendants ask Plaintiffs whether they would take Comirnaty[/Spikevax] 'if available,' although Comirnaty[/Spikevax] is not available and Defendants admit they are not in possession of Comirnaty. Plaintiffs are thus required to guess whether they will receive a vac-cine that may *never* be available to Plaintiffs. In other words, Plaintiffs must respond to a hypothetical that cannot occur right now and may never occur. Furthermore, this interrogatory requires Plaintiffs to speculate and provide answers without knowing whether or not the Department of Defense COVID-19 vaccine mandate will still be in effect when Comirnaty[/Spikevax] is 'available.' And for those Plaintiffs who have pending religious accommodation requests or appeals, they are improperly asked to guess whether they would take Comirnaty[/Spikevax] without knowing how Defendants might rule on their religious objections.

> Considering these objections and without waiving same, Plaintiffs respond that they are committed to following lawful orders, subject to their religious beliefs, their rights of refusal, their medical needs, and whether the recommended medical treatments have received lawful and appropriate approval.

ECF 88-9 at 3-5. Plaintiffs responded as follows to Interrogatory #8 requesting the identity of any Plaintiff "who would not take a BLA-compliant vaccine."

> Plaintiffs respond that they are committed to following lawful orders, subject to their religious beliefs, medical needs, their rights of refusal, and whether the recommended medical treatments have received lawful and appropriate approval. BLA-compliant vaccines – which Defendants defined as 'an EUA-labeled vaccine' are not FDA approved and are thus not subject to the DOD Mandate.

*Id.* at 5. On May 20, 2022, Defendants filed the motion to compel responses to these specific interrogatories. *See* ECF 88. On June 3, 2022, Plaintiffs submitted their response to Defendants' motion to compel. *See* ECF 90.

## II.   DIRECTIVE TO PLAINTIFF KUPPER TO PROVIDE A WRITTEN STATEMENT MIRRORING DISPUTED INTERROGATORY

At the same time that counsel for Plaintiffs and Defendants were discussing the responses to these interrogatories and the need for a motion to compel, MSgt Kupper's chain of command directed him to provide a signed, written statement addressing the same matters and seeking the same admissions. Below is the timeline of events and summary of the conversations between MSGT Kupper and his chain of command at Luke Air Force Base ("AFB"), Arizona, including his Commanding Officer, Major Marburger:

- On May 12, 2022, MSgt Kupper was ordered to take a vaccine or apply for separation. Ex. 2, Kupper Decl., ¶ 4.[5]

- From May 12-16, 2022, MSgt Kupper had a series of email exchanges with his chain of command seeking clarification as to which vaccine he was being required to take, *i.e.*, the "FDA-approved" Comirnaty or Spikevax or an EUA-

---

[5] Plaintiffs' counsel would also note that the day before, on May 11, 2022, MSgt Kupper and other service members had a series of exchanges on Twitter with Terry Adirim, the Assistant Secretary of Defense for Health Affairs and the author of the September 14, 2021 memorandum directing that all Pfizer/BioNTech COVID-19 vaccines should be treated as interchangeable and used "as if" they were FDA-licensed vaccines. *See* ECF 31-3. In this exchange, Dr. Adirim indicated that all Pfizer and Moderna vaccines (*i.e.*, without regard to EUA status) are "licensed" and then blocked MSgt Kupper after directing him to "stop promoting garbage."

labeled vaccine. *See* Ex. 2, Kupper Decl., Attach. 1 (May 12-16, 2022 email exchange).

- On May 13, 2022, MSgt Kupper received an email from Lt. Austin, quoting a statement from base legal, that he "could only be compelled to take a [FDA]-licensed vaccine," and that the base medical group in fact had "FDA-approved vaccines." *See id.* at 3.

- On May 16, 2022, MSgt Kupper confirmed both by email and in an in-person meeting with Major Carlson that: (1) Luke AFB did not have Comirnaty or Spikevax; (2) the only vaccines available at Luke AFB were EUA vaccines; and (3) these EUA vaccines were not "BLA-compliant" based on their CDC NDC Codes and Lot numbers (FL3209). *See id.* at 2 & Kupper Decl., ¶ 6. Major Carlson further stated that the EUA-labeled, non-BLA-compliant vaccines from lot FL 3209 "is medically interchangeable with the FDA labeled Comirnaty." *Id.*

- On May 17, 2022, MSgt Kupper was informed by his CO, Major Marburger, that "'they' (someone other than him) were offering" him to travel to an undisclosed DoD location to take a "BLA-compliant" vaccine. Ex. 1, Kupper Decl., ¶ 7. Further, "'they' were requiring that [he] first sign a memo" agreeing that he would take the vaccine. *Id.*, ¶ 8.

- On May 19, 2022, MSgt Kupper inquired as to the source of this request. Major Marburger confirmed that the directive to provide the written statement was not coming from him, but rather was "an 'offering' from 'DoJ' and 'DoD.'" *Id.*, ¶ 12. Major Marburger further emphasized that he was "regurgitating what I'm being told." *Id.*, ¶ 12. Finally, Major Marburger directed him that he must provide the written statement by the next day, *i.e.*, May 20, 2022. *See id.*, ¶ 11.

- On May 20, 2022, MSgt Kupper had another conversation with Major Marburger, where he once again confirmed that the directive came for DoJ and DoD rather than himself or base legal. *Id.*, ¶ 13. Major Marburger also described himself as a "parrot." *Id.*

- On May 24, 2022, Major Marburger issued MSGT Kupper a letter of counseling ("LOC") regarding vaccine refusal. This letter clearly indicates that MSGT Kupper faces discipline under Article 92 of the UCMJ. *Id.*, ¶ 16.[6]

---

[6] Out of an abundance of caution, Plaintiff has not included the LOC with this motion because it is marked CUI (Controlled Unclassified Information). Among other

- On May 31, 2022, MSgt Kupper sent his response to the LOC stating that he had not refused to obey the order, but that he had only refused to take an EUA vaccine, as his right under the law. *Id.*, ¶ 17.

- On June 2, 2022, MSgt Kupper had a meeting with his commander in his office, with the first sergeant present, to discuss why Plaintiff had still received the LOC even though he hadn't refused a fully licensed vaccine. During that meeting, Major Marburger again asserted that he was not the entity that had "offered" the vaccine if MSgt Kupper would sign the memo agreeing to take it. *Id.*, ¶ 18.

## **ARGUMENT**

Plaintiffs wish to begin with first principles and proceed to where we are, given the nature and seriousness of the issues and claims being made. As far as Plaintiffs' counsel is aware, all State bars have adopted a rule similar to Florida's Rules of Professional Conduct Rule 4-4., which prohibits attorneys from communicating with a person represented by counsel on the matter in which they are represented, without prior consent of their counsel or pursuant to court rules or statute. This rule is central to the "proper functioning of the legal system" because it prevents "interference … with the client-lawyer relationship, and the uncounseled disclosure of information related to the representation." Fla. R. Prof. Conduct R. 4-4.2, comt.

---

things, this designation is used to restrict distribution of information protected by the Privacy Act. The only protected information in the LOC is that of the Plaintiff, and he should be able to make his own information public. Counseling letters are not typically marked as CUI, but MSgt has been informed that "legal" now requires all COVID-related adverse paperwork to be marked as CUI. *See id.*, ¶ 19.

Additional requirements apply where, as here, the represented person is also a potential party to pending, pre-certification class actions. The class action rules provide the appropriate framework for considering Plaintiff's motion due to the inherently coercive nature of the military superior-subordinate relationship in which the communications at issue here were made.

As a general rule, each party to a potential class action may communicate with putative class members. *E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.,* 102 F.3d 869, 870 (7th Cir. 1996). But putative class members are not the same as actual class members already involved in litigation, as MSgt Kupper is in the instant case. Actual class members involved in federal litigation are already represented by counsel and therefore ethical rules regarding communications with represented counsel are at issue.

FRCP Rule 23(d) allows a court to limit communications between parties and putative class members in certain situations if the order is "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential for interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). Federal courts have limited communications between defendants and putative class members, in both FRCP Rule 23(d) and Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), settings where, as here, there is an inherently coercive relationship, such as attends employer/employee

relationships, or a sufficient showing of possible misleading or abusive attempts by employers to prevent employees from adjudicating their rights in the courts. *See, e.g.*, *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N. D.Tex.1994)(finding coercion and prohibiting further contact after defendant warned putative class members of the potential cost to them, specifically advised not the participate in the lawsuit and told them that by participating in the suit, they would be "suing themselves"). Here, the DoJ attorneys appear too be trying to get written statements from a plaintiff represented by counsel in the case at bar. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir.1985) ("If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.")(citation and internal quotation marks omitted).

*Longcrier v. Hl-a Co., Inc.*, 595 F.Supp.2d 1218 (S.D. Ala. 2008) and *Ojeda-Sanchez v. Bland Farms,* 600 F.Supp.2d 1373 (S.D. Ga. 2009) both provide instructive examples on the contours of the FRCP Rule 23(d) analysis where both plaintiffs' and defendants' counsel produce competing declarations or explanations regarding coercion of putative class members. What makes this case require a protective order are two specific considerations that courts have noted will justify such limitations on defendants' counsel communicating with actual and putative class members: (1) protecting the attorney-client relationship of already-represented

members; or (2) a significantly coercive relationship between the attorneys representing the Defendant. Both are present here.

In this case, it appears that the DoJ attorneys are indirectly communicating with a represented Plaintiff and seeking discovery, admissions, and/or settlement through the Plaintiff's direct supervisor. MSgt Kupper's Commanding Officer directed him to provide a written statement providing interrogatory responses or admissions almost identical to what Defendants' counsel has already requested and now ask this Court to compel the Plaintiff to answer. Moreover, the response requires Plaintiff to answer a hypothetical question and requires him either to concede the central factual and legal issues under dispute in this litigation, or to state that he will refuse to obey a lawful order in violation of Article 92 of the UCMJ.

The coercion could not be more plain. Plaintiff is not simply an employee of the DoD. He is subject to both administrative censure and punishment under the UCMJ for his refusal to take the shots. Plaintiff's LOC explicitly states this exact fact, noting that he is "being counseled for failure to obey Art. 92," 10 U.S.C. § 892, one of the punitive articles of the UCMJ. In 1966, the Supreme Court published its famous opinion regarding the requirement for people to be advised of their rights when placed in custody. *See Miranda v. Arizona*, 384 U.S. 436 (1966). But more than 15 years earlier, in 1950, Congress adopted UCMJ Article 31(b), which has consistently been interpreted as being more expansive than *Miranda v. Arizona* in

large part because of the inherently coercive nature of the military environment and superior-subordinate relationships. *See, e.g.,* Fredric I. Lederer, *Rights Warnings in the Armed Services*, 72 MILITARY L. REV. 1 (1976).

Plaintiffs' counsel have carefully considered the explanation provided by Defendants' counsel pursuant to the obligation to confer, *see* Ex. 3, and they do not take this action lightly. Defendants' counsel claims that there were no such communications by DoJ attorneys, and the communications that did occur are an appropriate exercise command authority. Their explanation is not persuasive, for the following reasons. First, there is an unequivocal statement by Plaintiff's Commanding Officer that he was directed by the DoJ to require MSgt Kupper to provide a written statement that is nearly identical to an outstanding and disputed discovery request to which DoJ asks this Court to compel a response. Why must the Plaintiff provide written statements mirroring a disputed discovery request if the Command merely wants to see he is given an FDA-licensed product? Second, the desired response forces MSgt Kupper either to concede to Defendants' position on the central disputed legal and factual issues before this Court, or to state that he will disobey a lawful order in violation of Article 92 of the UCMJ. If Plaintiff had provided the requested statement, it would have amounted to a settlement or could have resulted in dismissal of his claims in this litigation. Third, the deadline for his response was Friday, May 20, 2022, the same date as the date that the DoJ filed the

instant motion to compel his response to the disputed interrogatory. Fourth, MSgt Kupper was punished for his refusal to provide the desired statement on May 24, 2022.[7] Finally, the explanation does not exclude the possibility that other DoJ attorneys made the communications without the awareness of the DoJ trial team. Given these facts and the surrounding circumstances, Plaintiffs' counsel have an obligation to bring this matter to the Court's attention.

Defendants' counsel will have an opportunity to respond and explain why they believe these communications were an appropriate exercise of command authority made pursuant to the "routine business of the military." *See* Ex. 3 at 1. If the directive had come solely from DoD lawyers, then this would be a harder case. But it did not. Instead, the instruction came directly from the DoJ. The DoJ is not part of the military at all, and its attorneys are not under, over, or in the military's chain of command. They are outside defense counsel, and they have no business giving orders or directives to commanding officers, whether directly or indirectly. In this context, they are in the same position, and should be subject to the same obligations, as law firm lawyers representing Walmart in employment litigation.

---

[7] It appears that DoJ attorneys have asked for similar statements or commitments from plaintiffs in other cases challenging the lawfulness of the DoD Mandate, including that of Major Thomas Short, USMC (*Short v. Berger*, C.D. Cal. Case No. 2:22-cv-1151, filed Feb. 18, 2022) and 1stLt Mark Short, USMC (*Short v. Berger*, D. Ariz. Case No. 2:22-cv-444, filed Mar. 21, 2022).

The relief sought by Plaintiff does not require the Court to intrude into military affairs as Defendants will surely claim. There is no military judgment to which this Court could defer, because the challenged actions and communications are not military matters. They are matters of legal ethics governed by professional rules and the Federal Rules of Civil Procedure.

## CONCLUSION

Plaintiffs respectfully request that this Court grant the motion for protective order and any other additional relief as this court deems equitable and proper.

Dated: June 6, 2022.                    Respectfully submitted,

*/s/ Brandon Johnson*
DC Bar No. 491370
*/s/ Travis Miller*
TX Bar No. 24072952
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org
Email: twm@defendingtherepublic.org
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this submission contains 3.958 words according to Microsoft Word's word count function, and is in compliance with L.R. 7.1(F).

Dated: June 6, 2022.                    Respectfully submitted,

*/s/ Brandon Johnson*

15