# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**BENJAMIN COKER,** *et al.,*

　　*Plaintiffs,*

v.　　　　　　　　　　　　　　　　　NO. 3:21-CV-01211-AW-HTC

**LLOYD AUSTIN, III,** *et al.*

　　*Defendants.*

### [PROPOSED] ORDER GRANTING PROTECTIVE ORDER

1.　On June 6, 2022, Plaintiff Master Sergeant ("MSgt") Nickolas Kupper, U.S. Air Force, and other Plaintiffs in this proceeding filed a motion seeking a protective order to prohibit improper *ex parte* communications by Defendants' counsel with Plaintiffs, who are represented by counsel and are potential members of multiple pending class actions, whether such communications are made directly or indirectly through Plaintiff military service members' chains of command.

2.　The Court GRANTS Plaintiff's motion for an order prohibiting Defendants' counsel from directly or indirectly contacting Plaintiffs without prior approval of the Court.

### FINDINGS OF FACT

The Court finds the following facts:

1

3. On March 25, 2022, Defendants propounded a series of interrogatories and document requests to Plaintiffs, including interrogatories as to whether Plaintiffs would or would not take Comirnaty or Spikevax, COVID-19 vaccines licensed by the Food and Drug Administration ("FDA"), and if they would or would not take "BLA-compliant" versions of these vaccines labeled as "Emergency Use Authorization" ("EUA") products that are not labeled as FDA-licensed products.

4. On April 24, 2022, Plaintiffs submitted their initial responses to these requests, which were supplemented on multiple occasions. Plaintiffs' responses were not satisfactory to Defendants, and counsel for Defendants and Plaintiffs conferred on multiple occasions to address outstanding discovery disputes. *See generally* ECF 88 (Defendants' May 20, 2022 motion to compel) & ECF 90 (Plaintiffs' June 3, 2022 response).

5. On May 12, 2022, MSgt Nicholas Kupper, a plaintiff in the instant action stationed at Luke Air Force Base ("AFB") in Arizona, was ordered by his immediate supervisor, Major Marburger, to take a COVID-19 vaccine or apply for separation. Plaintiff Kupper sent an email to Lt Austin asking to clarify if he was being ordered to take only a "fully licensed" vaccine or an EUA vaccine.

6. On May 13, 2022, Lt Austin emailed plaintiff back and quoted base legal as stating that service members may only be compelled to take an FDA-licensed vaccine and that he could choose to wait if there was not any on base. Lt

2

Austin's email also stated that the base medical group (56th Medical Group or "56 MDG") had "FDA-approved vaccines" available on base.

7. Plaintiff checked with the base immunologist, Major Carlson, to query if the base had any vaccine labeled as Comirnaty or SpikeVax. Subsequently, on May 16, 2022, Plaintiff spoke with Major Carlson in person, and Major Carlson said that she "had just emailed" and "visually confirmed that the only vaccine we had on base said 'For use under Emergency Use Authorization' on the label." By email, Major Carlson confirmed that there was no Comirnaty or Spikevax labeled vaccines available on base.

8. The only lot available (Lot FL3209) at Luke AFB is listed on the Center for Disease Control and Prevention ("CDC") website as Emergency Use Authorization ("EUA") only and has an EUA National Drug Code ("NDC") Code. Major Carlson asserted that "The EUA approved Pfizer vaccine including lot 3209 is medically interchangeable with FDA labeled Comirnaty."

9. Plaintiff Kupper forwarded that email to Lt Austin, his commander, Major Marburger, and his Chief (CMSgt Perkins) to inform them of what Major Carlson had said. Plaintiff also asserted that he would choose to wait until a fully FDA-licensed vaccine was available as base legal had previously allowed.

10. On May 17, 2022, Plaintiff's Commanding Officer, Major Marburger, with the first sergeant present, told MSgt Kupper that "they" (someone other than

him) were offering him a temporary duty ("TDY") to an undisclosed DoD location where Plaintiff would have the opportunity to take a "BLA-compliant vaccine." Plaintiff did not ascertain and Major Marburger did not define what "BLA-compliant" meant. Major Marburger further stated that "they" were requiring that MSgt Kupper to sign a written statement that he was agreeing to take the "BLA-compliant" vaccine.

11.   On May 18 or 19, 2022, Major Marburger clarified that he was not the person who was asking for the written statement, but that it was someone above him.

12.   On May 19, 2022, Major Marburger called Plaintiff to discuss the written statement. Major Marburger confirmed that it was not an order from him, but rather an "offering" from "DOJ [the Department of Justice ("DOJ")] and DoD [the Department of Defense ("DoD")]." He repeatedly used the term "they" and near the end of the call he said "I'm regurgitating what I'm being told." Major Marburger directed Plaintiff to provide the written statement by May 20, 2022.

13.   On May 20, 2022, Plaintiff had an in-person meeting with Major Marburger and Chief Perkins present, who was telling the Commander to have Plaintiff write a memo. Chief Perkins said it was coming from "above base legal" and from "above the base commander." Plaintiff asked if he meant DOJ and DoD and he responded said "yeah." Additionally, during that conversation, Major Marburger said "I am a parrot" when he was speaking of how he was just passing

4

information about the memo request from someone above him. At the end of the day, Plaintiff Kupper sent his commander an email saying that on the advice of counsel he was declining to comment on any memo.

14. On May 20, 2022, Defendants filed a motion to compel responses to certain requests for production and interrogatories, including those asking whether Plaintiffs would or would not take Comirnaty or Spikevax, and whether they would or would not take EUA-labeled, "BLA-compliant" versions of those vaccines.

15. On May 24, 2022, Major Marburger issued Plaintiff a letter of counseling (LOC) for disobeying the order to take the COVID-19 vaccine. The LOC said, in part, "Your vaccination refusal despite verbal and written acknowledgment is in direct violation of Article 92, *Failure to Obey Order or Regulation* of the UCMJ."

16. On May 31, 2022 Plaintiff sent his response to the LOC stating that he had not refused to obey the order, but that he had only refused to take an EUA vaccine, as his right under the law.

17. On June 2, 2022, Plaintiff Kupper had a meeting with his commander in his office, with the first sergeant present, to discuss why Plaintiff had still received the LOC even though he had not refused a fully licensed vaccine. During that meeting, Major Marburger again asserted that he was not entity that had "offered" a "BLA-compliant" vaccine.

5

## ANALYSIS

> Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules.

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981) (footnotes omitted).

When exercising its authority under Rule 23(d) to limit a defendant's communications to class members, a court need not find that actual misconduct has occurred; it is enough for a court to find that there is a threat of abuse or other potential for interference with the rights of the parties. *Id*. at 10. Regardless of whether the interactions with Plaintiff Kupper are governed by Rule 23(d) of the Federal Rules of Civil Procedure ("FRCP"), there is also the issue that Plaintiff is a represented party in this lawsuit. All lawyers know – or should know – that speaking to represented parties, even through an intermediary, immediately broaches the Rules of Professional Conduct (in every state) and dealing with represented parties. Regardless of motive or need, Defendants counsel seeking admissions or conveying any manner of offer through Plaintiff's chain of command is absolutely rife with bad outcomes.

In light of the coercive environment that military courts themselves have long

6

recognized as inherent in the superior-subordinate relationship,[1] which far exceeds the kinds of coercion that courts routinely regard with suspicion in the normal employer-employee relationship, it is, hereby,

**ORDERED, that:**

A. For the duration of this lawsuit, Defendants' counsel, including any attorney from the Department of Justice, are prohibited from communicating, directly or indirectly, with any Plaintiff without prior consent of Plaintiffs' Counsel or leave of Court.

B. For the duration of this lawsuit, if Defendants' counsel, including any Department of Justice attorney, desires to initiate any communication, whether directly or indirectly, to any Plaintiff regarding or referring to this lawsuit, its claims or defenses, Defendants' counsel must first obtain the written prior consent of Plaintiffs' Counsel or the Court.

C. After conferring with the opposing party, any party may ask the Court to modify any provision of this Order.

Dated: June __, 2022

_____
**Judge Allen Winsor**

---

[1] *See, e.g.*, *U.S. v. Gipson*, 3 C.M.A. 746, 752 (1956)("Because of the effect of superior rank or official position upon one subject to military law, the mere asking of a question under certain circumstances is the equivalent of a command. A person subjected to these pressures may rightly be regarded as deprived of his freedom to answer or to remain silent.").