# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

**BENJAMIN COKER,** *et al.* **,**

                         Plaintiffs,

     v

**LLOYD AUSTIN, III, in his official capacity as Secretary of Defense,** *et al.* **,**

                       Defendants.

Case No. 3:21-cv-01211-AW-HTC

# DEFENDANTS' OPPOSITION TO
# PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

**INTRODUCTION**

Neither Department of Justice ("DOJ") nor Department of Defense ("DoD") lawyers have had improper contact, directly or indirectly, with a represented party. Plaintiff Master Sergeant Nickolas Kupper was ordered to be vaccinated for COVID-19, consistent with the DoD and Air Force policies requiring such vaccination.   By his own admission, Plaintiff Kupper directly approached his medical group and his chain of command, without going through counsel, to ask about the availability of FDA-approved vaccines.   He repeatedly followed up; requesting additional details and answers to his questions.   In response to Plaintiff's inquiries, his command notified him that the BLA-compliant vaccine was available and of the commitment DoD previously made to his counsel to provide those doses, and advised him to speak with his counsel.   Such straightforward party-to-party communications are clearly permissible under the rules governing attorney conduct.

The existence of litigation does not prohibit commanding officers from giving orders and instructions on how to comply with lawful orders, even orders related to mandatory vaccination. The routine business of the military continues, and such party-to-party contact regarding how to comply with orders does not violate the Rules of Professional Responsibility. Here, Plaintiff initiated the contact with his chain of command, from whom he repeatedly and directly sought information about complying with those lawful orders.   Plaintiff's chain of command then consulted with counsel and provided the requested information.   That, too, is also permitted

1

under the Rules of Professional Responsibility.

Given that the contact here was entirely permissible, there is no arguable need for a protective order, which could only serve to interfere with good order and discipline. Plaintiffs' commanding officers are charged with implementing and enforcing the vaccine mandate, which will require routine contact with people under their command about compliance with that order. Nevertheless, Government counsel, in an abundance of caution, have advised the Defendants not to discuss claims in litigation with the Plaintiffs.

## BACKGROUND

On November 12, 2021, this Court denied Plaintiffs' motion for a preliminary injunction to enjoin enforcement of the DoD vaccine mandate. ECF No. 47. In considering the Plaintiffs' argument that they did not have access to an FDA-approved vaccine, the Court explained that "no plaintiff claims he or she was specifically denied a BLA-compliant dose [of vaccine] or offered only a dose from a non-BLA-compliant vial." *Id*. at 16. Plaintiffs subsequently amended their complaint to attempt to make allegations related to their access to BLA-compliant doses. ECF No. 56.[1]

On September 7, 2021, Major Marburger directed Plaintiff Kupper to receive

---

[1] Plaintiffs' motion misstates the definition of the BLA-compliant vaccines, which do not include all EUA-labelled vaccines with the same formulation as Comirnaty or Spikevax. *Compare* Pl.'s Mot. at 5 (incorrect definition), *with* DEX2 (offer of BLA doses, defining "BLA-compliant" or "BLA-manufactured" with reference to a sworn declaration describing the requirements, a public FDA document, and a public listing of the BLA-compliant lot numbers).

a first dose of a COVID-19 vaccine by September 23, 2021. DEX1, Decl. of Maj. Johnathan D. Marburger ¶ 4 ("Marburger Decl."). The order also specified that Plaintiff Kupper could alternatively submit a Religious Accommodation Request ("RAR") or proof of a medical exemption. *Id.* ¶ 5. Plaintiff Kupper filed an RAR; following denial and appeal, that RAR was finally denied by the Air Force Surgeon General on May 7, 2022. *Id.* ¶¶ 6-7. Major Marburger therefore ordered Plaintiff Kupper on May 12, 2022 to receive the COVID-19 vaccine or apply for separation by May 17, 2022. *Id.* ¶¶ 8, 13. He did not do so. *Id.* ¶ 8.

On or about May 16, 2022, the day before his deadline lapsed, Plaintiff Kupper requested information on the specific types of vaccines available from the medical clinic on base and from his command. Marburger Decl. ¶ 9; Kupper Decl. ¶¶ 4-13 & Att. 1 (Email thread beginning May 12, 2022, documenting that Plaintiff repeatedly initiated contact on legal and factual questions about the availability of vaccine), ECF 91-3.[2]

---

[2] Plaintiff Kupper's mid-May requests for information about the specific doses available at his location mirror Plaintiffs' discovery demands in this litigation that counsel were actively conferring about at the time, and on which Plaintiffs filed motions to compel on May 5, 2022 and June 3, 2022. *See* ECF Nos. 83 (MTC1), 86 (withdrawal) 89 (MTC2), 96 (Opp'n), 96-3 (conferral emails). For example, Plaintiffs are currently seeking information about whether "BLA-compliant vaccines . . . . [were] not available to Plaintiffs . . . during the time or at the location when they received their vaccination order." Pls.' MTC, at 4, ECF 89-1. Plaintiff Kupper has previously sought information related to this litigation directly from parties to this litigation. For example, in January, Plaintiff Kupper sought legal positions and factual statements directly from FDA about the nature of the interchangeability finding. *See* DEX3. Plaintiff Kupper also recently reached out directly to DoD officials on social media, an exchange that still has not been provided in discovery. Pl.'s Mot. at 7 n.5. Plaintiff has repeatedly attempted to obtain information and legal positions directly from Defendants, as parties to the litigation, and there is no improper contact

Around the same time, on May 17, 2022, Defendants' counsel informed Plaintiffs' counsel that DoD was committing in writing to providing BLA-compliant doses if any Plaintiff was willing to take one, and described how Plaintiffs could obtain one:

> any of the Plaintiffs still subject to the mandate may receive a dose of a BLA-manufactured COVID-19 vaccine described in paragraph 18 of Colonel Rans's Declaration (ECF 65-15). These are the same doses discussed in the Marks Declaration (ECF 65-14) and the Summary Basis for Regulatory Action (also available on FDA website). See Marks Decl. paragraph 13 & Ex B, pdf pp 51 ("identification of BLA lots"); *see also* HCP Lot Letter & Additional Lot Details, https://www.cvdvaccine-us.com/16-up-yearsold/resources (under "Important Lot Information"). If any of the Plaintiffs wish to do so, please prepare a memorandum for the individual's commanding officer committing to taking one of these BLA doses, and we will ensure the request is appropriately transmitted. Defendants can ensure that the Plaintiff be administered one of those doses. . . . If not, please let us know that as well. This is not intended as an offer of compromise and we anticipate informing the Court of the offer and any response. (If you wish to initiate separate settlement discussions, we would be willing to consider that as well).

*See* DEX2 (Email from A. Powell). The purpose of the written commitment to provide the BLA-compliant doses was to make sure that any Plaintiff who was willing to be vaccinated with these specific doses could be vaccinated and hopefully remain in the military.[3]

---

with a represented party when those Defendants answered those questions consistently with their publicly stated positions in litigation.

[3] DoD now has doses of Comirnaty-labelled vaccine, and has made a similar offer with respect to those doses. *See* ECF No. 96-6 (offering BLA-labeled Comirnaty). Plaintiff Kupper's access to Comirnaty-labelled, FDA-approved vaccine plainly moots any claim he, or any of the

Also on May 17, 2022, a Staff Judge Advocate notified Major Marburger of the DoD offer to provide BLA-compliant doses so that he would be aware in case Plaintiff approached him directly instead of going through counsel as requested. Marburger Decl. ¶ 10.   In light of Plaintiff Kupper's recent attempts to obtain information about the available vaccine doses, Major Marburger sought additional counsel. *Id.* With the understanding that "MSgt Kupper was attempting to ascertain what vaccines were available to him," Major Marburger responded to Plaintiff Kupper by notifying him that the BLA-compliant doses were available to him, in accordance with the offer being made by DoD, through counsel, and advised him to discuss it with his counsel. *Id.* ¶ 11.  In response to multiple follow-up questions, Major Marburger confirmed that he was not being ordered to complete the memorandum and referred him again to his counsel. *Id.* ¶ 12.

In light of the new offer, even though the deadline to receive the first dose of the vaccine was lapsing the same day (May 17, 2022), Major Marburger extended the deadline in order to give Plaintiff "every available opportunity to continue service in the Air Force" and "withheld taking any administrative action for failure to vaccinate to ensure he had sufficient time to request the BLA-compliant dose." *Id.*   ¶ 13.  Major Marburger's intent "was to address MSgt Kupper's questions about what vaccines were available to him and to provide him time to request a BLA-

---

other Plaintiffs, had with respect to the use of EUA-labelled doses, without regard to whether Plaintiff has actually complied with the lawful order.

compliant dose." *Id*. Plaintiff Kupper still refused to comply with the order to be vaccinated and received a Letter of Counseling on May 24, 2022. *Id*. ¶ 14.

DoD counsel sought legal advice from DOJ counsel with respect to Plaintiff Kupper's efforts to obtain information. The substance of those conversations is privileged, but counsel does not provide "orders or directives to commanding officers."

## LEGAL STANDARDS

Under Florida Rules of Professional Conduct 4.4-2, "a *lawyer* must not communicate about the subject of the representation with a person the *lawyer* knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." Fla. R. Pro. Conduct 4.4-2(a).[4] The Rule "applies even though the represented person initiates or consents to the communication." Fla. R. Pro. Conduct 4.4-2, comment. Notably, the Rule does not prohibit the *parties* to a matter from communicating. *Farias Matos v. Bus. Law Group, P.A.*, No. 6:18-CV-1105-GAP-DCI, 2021 WL 4312593, at *1 (M.D. Fla. Aug. 18, 2021) ("Parties to a matter may communicate directly with each other.") (quoting Fla. R. Pro. Conduct 4.4-2, comment); *see also Miller v. RelationServe, Inc.*, No. 05-61944-CIV, 2006 WL 5849318, at *8 (S.D. Fla. Dec. 1, 2006); *Mathis v. Leggett & Platt*, No. 1:04-CV-3703-HTW-CCH, 2006 WL 8431959, at *3 (N.D. Ga. Apr. 5, 2006). Nor does it

---

[4] *See also* AFI 52-110, *Professional Responsibility Program*, Ch 2, RPC 4.2 (Air Force Rule of Professional Conduct on same matter).

prohibit lawyers from providing advice about party-to-party communications. The Comment to the Rules confirms that "a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make, provided that the client is not used to indirectly violate the Rules of Professional Conduct." Fla. R. Pro. Conduct 4.4-2, comment. This general rule and the comments conform to the Model Rules of Professional Conduct. *See* Model Rules of Pro. Conduct, R. 4.2, (Am. Bar Assn 2020).

While a "court may impose sanctions for litigation misconduct under its inherent power," use of that power requires "a finding of bad faith." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009); *Farias Matos*, 2021 WL 4312593, at *1.

Under Fed. R. Civ. P. 23(d) a court may issue certain orders in conducting a class action, such as orders that (i) require providing appropriate notice to some or all class members of any step in the action; (ii) "impose conditions on the representative parties or on intervenors"; or (iii) "deal with similar procedural matters." Fed. R. Civ. 23(d)(1); *Taaffe v. Robinhood Mkts., Inc.*, No. 8:20-CV-513-T-36SPF, 2020 WL 1531127, at *2 (M.D. Fla. Mar. 31, 2020).

## ARGUMENT

There was no improper attorney contact with a represented party, and the proposed protective order is unwarranted, unwise, and a dangerous intrusion into military affairs.

I. **Defendants' Counsel Did Not Violate the Rules of Professional Conduct.**

Neither DOJ nor DoD counsel engaged in improper contact with a represented party. Rather, the undisputed record shows that after Plaintiff Kupper was ordered to be vaccinated in accordance with the vaccine mandate, he repeatedly approached his command and medical clinic, parties to this litigation, with questions about what vaccine was available. *See* Marburger Decl. ¶¶ 9-12; Kupper Decl. ¶¶ 4-13 & Att. 1. Plaintiff Kupper notified his commander, Maj Marburger, that he would not comply with the order "until a fully FDA-licensed vaccine was available." Kupper Decl. ¶ 6. In response, his command notified him of the availability of the BLA-compliant vaccine and the commitment DoD made to his counsel, and advised him to speak with his counsel. *See* Marburger Decl. ¶ 11; Kupper Decl. ¶¶ 7-13. A party representative thus answered his questions (and answered them consistently with Defendants' positions in Court). This is a straightforward party-to-party communication that is specifically allowed under the rules governing attorney conduct. Comment to Fla. R. Pro. Conduct 4.4-2 ("Parties to a matter may communicate directly with each other…."); *Farias Matos*, 2021 WL 4312593, at *1.

Plaintiff Kupper's declaration is generally not to the contrary, although he omits important details. For example, he does not mention that the commitment to provide BLA-compliant vaccine had already been made to him through counsel, *see*

DEX2, though perhaps he was unaware of the option for some reason. And Plaintiff Kupper does not mention that his commanding officer repeatedly advised him to speak with his attorney about his questions. Marburger Decl. ¶¶ 11-12. Plaintiff Kupper admits that he initiated the contact with a representative of Defendant and repeatedly followed up to demand answers and details. Kupper Decl. ¶¶ 4-13 & Att. 1. That, too, is likely a permissible party-to-party communication, given Plaintiff's obligation to comply with the vaccination order. It was not improper under the Rules of Professional Responsibility for Defendants, parties to this litigation, to respond and appropriately instruct him regarding how to comply with a lawful order.[5]

Plaintiff Kupper's primary argument that the offer came from DOJ rather than from Defendants is that Kupper alleges being told that the offer of BLA-compliant vaccine came from "DOJ and DoD" and from "above the base commander." *See* Kupper Decl. ¶¶ 12-13. Plaintiffs' counsel therefore conclude that the offer was "directed by DOJ" and that DOJ is "indirectly communicating" with Plaintiff Kupper. *See* Pls.' Mot. at 13, ECF No. 91-1. As Plaintiffs are aware, DoD had recently made the offer regarding BLA-compliant vaccines through DOJ counsel to Plaintiffs' counsel; so in that sense, the mention of DOJ counsel is accurate, *see*

---

[5] It bears noting that Plaintiff was in no way harmed by the offer of BLA-compliant vaccines. At the time, his deadline to receive the first dose of the vaccine was on the same day and failure to do so could result in adverse administrative action or discipline; he was given additional information and time to consider coming into compliance. Marburger Decl. ¶ 13. Even with the additional time, Plaintiff Kupper refused to comply with the order to vaccinate. Accordingly, Plaintiff Kupper was not punished for failing to provide a memorandum, he was punished for failing to comply with a lawful order to be vaccinated. *Id*. ¶ 14.

DEX2, but Plaintiff's declaration does not even imply the conclusion from Plaintiffs' brief—that DOJ was "giving orders or directives to commanding officers," Pls.' Mot. at 14. It is also true that the DoD offer came from "above the base commander" because it applied not just to Plaintiff Kupper, but was an offer generally available to Plaintiffs across multiple Services. *Id*. Accordingly, Kupper's allegations are consistent with Defendants' obvious and lawful explanation. DoD made the commitment to provide BLA-compliant vaccine to Plaintiffs through counsel, DEX2, and after Plaintiff Kupper's specific inquiry about the vaccines available to him, Plaintiff's commanding officer reiterated that commitment directly to the Plaintiff, consistent with the statements made to counsel, Marburger Decl. ¶ 11. However, at no time, either through counsel or directly, was Plaintiff asked to settle claims in litigation or "concede . . . disputed legal and factual issues," Pl.'s Mot. at 13; instead, this was an effort to implement the vaccine mandate and answer Plaintiff Kupper's questions. Marburger Decl. ¶ 13.

To the extent Plaintiffs assert that it was improper for parties, DoD officials in the chain of command, to consult with *their* counsel about Plaintiff Kupper's inquiry, Plaintiffs are clearly wrong. DoD officials, as parties to this litigation, also have the right to legal counsel, and DoD or DOJ may provide legal advice to clients in response to party contact like the kind initiated by Plaintiff Kupper. Indeed, the Rules of Professional Conduct expressly state, in the context of party-to-party communication, that "a lawyer is *not prohibited* from advising a client concerning a

communication that the client is legally entitled to make, provided that the client is not used to indirectly violate the Rules of Professional Conduct." *See* Fla. R. Pro. Conduct, 4-4.2, comment (emphasis added).

Here, Major Marburger is not just legally *entitled* to communicate with his subordinates about the vaccine mandate; he is legally *required* to implement and enforce the DoD COVID-19 vaccine mandate for those service members under his command. *See* ECF Nos. 65-7 (SecDef Mem); 65-11 (Mem. for AF Commanders) ("Commanders in the Department of the Air Force shall take all steps necessary to ensure all uniformed Airmen and Guardians receive the COVID-19 vaccine, which includes issuing unit-wide and individual orders to their military members."). The Court refused Plaintiffs' demand to enjoin implementation of that mandate, and Major Marburger is legally responsible for implementing it.[6]   While Major Marburger perhaps could have chosen to ignore or refuse to answer Kupper's inquiries in light of pending litigation, an Air Force commanding officer's responsibilities include "maintain[ing] effective communication processes" and "ensur[ing] unit members are well disciplined, trained and developed." *See* AFI 1-2 §3.2, available at https://www.af.mil/Portals/1/documents/csaf/afi1_2.pdf.[7]   A

---

[6] Plaintiffs' focus on the supposedly "coercive" nature of the military environment is therefore beside the point.  The military is in fact enforcing a mandate—a lawful order that this Court has already held may be enforced at this stage of the litigation.  That does not somehow transform routine business of implementing the mandate into an attorney communication with a represented party.

[7] Plaintiffs have created a catch-22, accusing the Defendants of improper communication for responding to the questions, but previously asserting Defendants have not responded to such

major charged with implementing this mandate at this command is surely entitled as a matter of law to communicate the Department's expectations and orders to all service members under his command, including Plaintiff Kupper.

DOJ and DoD attorneys who provided legal advice thus fall easily within the comment to the Rule that explicitly permits legal advice on such communications. Plaintiffs present no evidence or logic that would suggest that the client was "used to indirectly violate the Rules of Professional Conduct." *See* Fla. R. Pro. Conduct, 4-4.2, comment.   Indeed, Plaintiff initiated the contact, Defendants provided accurate information in response, and Plaintiff was explicitly and repeatedly directed to his counsel for answers to his questions.  Marburger Decl. ¶¶ 9-12.  Courts have rejected similar speculation about improper attorney communications where the parties were communicating directly.  *See, e.g., Farias Matos*, 2021 WL 4312593, at *1; *Katz v. Fifield Realty Corp.*, No. 07-61626-CIV, 2008 WL 11330731, at *2 (S.D. Fla. Oct. 14, 2008); *HTC Corp. v. Tech. Properties Ltd.*, 715 F. Supp. 2d 968, 974 (N.D. Cal. 2010).

Plaintiffs' argument appears to hinge on the requirement that a Plaintiff requesting a BLA-compliant vaccine write a memorandum.   Plaintiffs seem to suggest that this is proof that Defendants' counsel were simply using an Air Force

---

questions. *See e.g.,* Second Amended Complaint, ECF 56, ¶ 16 ("He has inquired regarding the availability of Comirnaty or BLA-compliant lots, but he has not received an answer from his base's immunology department.").

commanding officer to seek discovery.  Pls.' Mot. at 13.  Plaintiffs ask, "why must the Plaintiff provide written statements . . . if the Command merely wants to see he is given an FDA-licensed product?"  *Id.*  Plaintiff Kupper's declaration answers that question.  Kupper explains that he was told that he would be sent on temporary duty to another location to receive the vaccine if he agreed to take it.  Kupper Decl. ¶¶ 7-8.  As Plaintiffs are aware, BLA-compliant doses were not on hand at every DoD facility, *see* ECF No. 89-5 ¶ 9 & Ex. E (current locations), and Defendants are not going to redistribute vaccine vials, or execute travel orders to send an unvaccinated service member on temporary duty, or thaw specific vaccine doses absent a commitment to actually take the dose.[8]   To do so would waste valuable time and resources and benefit no one.

Plaintiffs insist, despite Kupper's own explanation, that this must be an end-run around discovery motions about Plaintiffs' willingness to accept BLA-compliant vaccines.  Outstanding discovery motions on similar but not identical issues do not eliminate the need to actually implement the vaccine mandate.[9]  Given the nature of Plaintiffs' claims, it is curious that Plaintiffs now cry foul that DoD has implemented

---

[8] Plaintiff also complains that Major Marburger did not offer a full definition of BLA-compliant vaccine.  Kupper Decl. ¶ 7.  A full explanation was provided in writing to his counsel, with citations to the record, and he was specifically referred to his counsel.  DEX2.

[9] Nor does the timing somehow cast doubt on Defendants' motives.  The direct offer of BLA doses was provided to Plaintiff *in response to his own questions* as his deadline to be vaccinated was fast approaching, and thus the timing was triggered by Plaintiff Kupper.  Marburger Decl. ¶¶ 9-11.  Major Marburger explains that he delayed taking disciplinary action beyond when he would have otherwise in order to give Kupper time to consider and request the compliant dose, giving him every opportunity to continue serving.  *Id.* ¶ 13.

a mechanism to make sure that the BLA-compliant (and now BLA-labelled) vaccines are available to them.

## II.    Rule 23(d) Provides No Basis to Enter a Protective Order.

Plaintiffs ask this Court to enter a protective order under Federal Rule of Civil Procedure 23(d), but it is plainly inapplicable. Rule 23(d) applies only to class actions. Not only is this matter not a class action, *see generally* ECF No. 56, Plaintiffs have not moved to certify a class. Nor is Plaintiff Kupper currently a member of any other certified class.[10] Accordingly, Rule 23(d) is inapposite, and Plaintiffs cannot demand that this Court enter an order protecting potential class litigation in other cases (much less cases in other circuits).[11]

This case is thus readily distinguishable from the class action cases cited by Plaintiffs, which presented issues about class membership unique to class actions. *See, e.g., Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1230 (S.D. Ala. 2008)

---

[10] Although a district court in Texas certified a nationwide class of Navy service members who have submitted a religious accommodation request, *see U.S. Navy SEALs 1-26 v. Austin*, ---F. Supp. 3d---, 2022 WL 1025144, at *9 (N.D. Tex. Mar. 28, 2022), *appeal filed*, *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10534 (5th Cir. May 31, 2022), and a few other class action complaints have been filed, no other class actions related to the DoD vaccine mandate have been certified.

[11] If the Court were to consider the application of Fed. R. Civ. P. 23, counsel generally are not required to obtain leave of court before communicating with potential class members before certification, absent special circumstances and a court order. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-102 (1981). As the Manual for Complex Litigation explains, citing *Gulf Oil*, "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification." Manual for Complex Litigation (Fourth) § 21.12 at 249 (2004). According to the Supreme Court, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101; *Taaffe*, 2020 WL 1531127, at *3. Plaintiffs here have shown no need for such a limitation and no harm to Plaintiffs.

(imposing limited protective order where defendants' counsel directly obtained declarations from potential class action plaintiffs without mentioning their rights in the litigation); *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1381 (S.D. Ga. 2009) (where facts were in dispute, imposing limited protective order preventing in-person or telephone contact with potential plaintiffs about the lawsuit itself). In none of the cited cases were Defendants or their counsel enjoined from implementing a legal requirement, and none resulted in a protective order like that sought here. Class actions present different issues than those here, and the standards governing class actions are not applicable.

## III.   The Proposed Protective Order is Unwarranted and Unwise.

The requested Protective Order potentially compromises Defendants' ability to obtain legal advice and is an unwarranted intrusion into military affairs.

Plaintiffs' requested relief seeks to "prohibit both direct and indirect communications with represented Plaintiffs by DOJ attorneys, and other Defendants' attorneys, down through the plaintiffs' chain of command." Pl.'s Mot. at 3. Plaintiffs appear to interpret that broadly to include any matter on which DoD components seek legal advice, suggesting the Court should, in the midst of complex litigation, constrain DoD from seeking legal advice about how to interact with Plaintiff service members or on any other subject touching on Plaintiffs.[12]   That is

---

[12] Notably, the same proposed restriction would not apply to the Plaintiffs' ability to communicate with represented parties after consulting with their counsel and would not prevent

an exceedingly unwise and overbroad demand that would not benefit any party to this litigation, or the orderly management of litigation. Inhibiting legal advice to the Government client here will not improve litigation. To the extent Plaintiffs are seeking more narrowly to prevent DOJ from authoritatively directing commanding officers' conversations with Plaintiffs about the vaccine mandate, the order is still unwarranted because there is no evidence that DOJ ever has directed such a communication, or that DOJ could for that matter.

Moreover, as the Supreme Court has recognized, "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment." *Chappell v. Wallace*, 462 U.S. 296, 300 (1983); *Farmer v. Mabus*, 940 F.2d 921, 923 (5th Cir. 1991) ("We are keenly aware that judicial intrusion into military matters is to be most cautiously and charily approached."). As the Supreme Court has repeatedly emphasized, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see also Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Plaintiffs ask the Court to step

---

Plaintiffs from requesting additional information from represented parties that parallels their counsels' discovery requests.

in between commanding officer and service member, and micromanage the day-to-day communications between current service members and their commanding officers to determine whether the communication was somehow inappropriately influenced.   The Court should decline "to tamper with the established relationship between enlisted military personnel and their superior officers." *Chappell*, 462 U.S. at 300.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for a protective order

Dated: June 24, 2022                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney
                                        General

                                        ALEXANDER K. HAAS
                                        Director, Federal Programs Branch

                                        ANTHONY J. COPPOLINO
                                        Deputy Director

                                        /s/ Andrew E. Carmichael
                                        ANDREW E. CARMICHAEL
                                        AMY E. POWELL
                                        Senior Trial Counsel
                                        ZACHARY A. AVALLONE
                                        CATHERINE M. YANG
                                        Trial Attorneys
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, N.W.
                                        Washington, DC 20005
                                        Tel: (202) 514-3346
                                        Fax: (202) 616-8470
                                        Email: Andrew.e.carmichael@usdoj.gov

                                        Counsel for Defendants

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this submission contains 4513 words, not including case style, signature block, and certificate of service, according to Microsoft Word's word count function and thus is in compliance with Local Rule 7.1(F).

/s/ *Andrew E. Carmichael*
ANDREW E. CARMICHAEL