**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**BENJAMIN COKER, *et al.*,**

**Plaintiffs,**

**v.** **Case No. 3:21-cv-01211-AW-HTC**

**LLOYD AUSTIN, III, *et al.*,**

**Defendants.**

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF

Pursuant to the Court's directive at the August 29, 2022 hearing and the Defendants' September 12, 2022 supplemental brief ("September 12 Brief"), ECF 118, Plaintiffs submit this supplemental brief to address the exhaustion requirements under the Administrative Procedure Act ("APA") for challenging a generally applicable military regulation like the Department of Defense's ("DOD") COVID-19 vaccine mandate ("DOD Mandate"). First, the APA does not impose any specific exhaustion requirements. Second, there are no military administrative procedures for challenging generally applicable rules or regulations issued by Secretary Austin or a Service Secretary. Third, Plaintiffs have attempted to utilize military procedures, namely, religious and medical exemption requests, complaints to the DOD Inspector General, and complaints under Article 138 of the Uniform Code of Military Justice ("UCMJ"). Fourth, Plaintiffs' requests have been uniformly denied or ignored, and several courts have found that the military procedures that are available are futile "theater" that provides no possibility of relief.

**I. The APA Does Not Impose Any Exhaustion Requirement.**

Defendants have not identified any specific statutory provision requiring exhaustion for a very simple reason: it is not there. The Supreme Court confirmed that the APA means what it says (or rather does not say) in *Darby v. Cisneros*, 509 U.S. 137, 145 (1993) ("*Darby*"), namely, that the APA does not impose an exhaustion requirement and instead "incorporates exhaustion requirements established by statute or agency rule." Plaintiffs bring challenges under the APA and 10 U.S.C. § 1107a, which also does not impose a specific exhaustion requirement.

Notwithstanding Defendants' assertions to the contrary, there is "no military exception to *Darby*." *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 84 (D. Md. 2021) (*quoting Brezler v. Mills*, 220 F. Supp. 3d 303, 323 (E.D.N.Y. 2016). *See also Ostrow v. Sec'y of Air Force*, 48 F.3d 562 (D.C. Cir. 1995) (per curiam); *Crane v. Sec'y of Army*, 92 F.Supp.2d 155, 161 (W.D.N.Y. 2000) ("Almost without exception, federal courts throughout this country have also declined to create a military exception to the Court's decision in *Darby*.").

Defendants complain that Plaintiffs have not previously briefed *Darby* and cases that have followed it. *See* ECF 118, DF Sept. 12 Br., at 2. This is because Defendants have not previously raised the issue, which appears to have first been raised by the Court at the August 29, 2022 hearing. Defendants then go on to raise for the first time the justiciability tests in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.

1971) ("*Mindes*"), after conceding repeatedly that *Speigner v. Alexander*, 248 F.3d 1292, 1296-98 (11th Cir.2001) governs the justiciability of challenges to generally applicable military regulations. Defendants "eleventh-hour assertion is too late and should be deemed waived." ECF 118, DF Sept. 12 Br., at 2 (citation and quotation marks omitted).

In any case, Plaintiffs addressed *Mindes* in their Opposition to Defendants' Motion to Dismiss. *See* ECF 68, PL Opp., at 17-18. Plaintiffs' claims easily satisfy *Mindes*. First, Plaintiffs have pursued and exhausted all available military remedies as discussed in Section III below. Second, several courts have found that available military remedies are futile and inadequate and that service members are therefore exempt from the exhaustion requirement, as discussed in Section IV of this brief.

Plaintiffs also satisfy the four *Mindes* factors. First, Plaintiffs' claims are strong as they largely mirror the mandate of unlicensed vaccines that was enjoined in the *Doe v. Rumsfeld* cases, and Plaintiffs have identified Defendants' violation of express statutory prohibitions.[1] Second, Plaintiffs face severe and irreparable harm, in particular, by being forced into retirement or involuntarily separated; several Plaintiffs have started the separation and discharge process and would have been

---

[1] *See generally John Doe No. 1 v. Rumsfeld*, 297 F. Supp. 2d 119, 135 (D.D.C. 2003) ("*Rumsfeld I*"), *modified sub nom. John Doe No. 1 v Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004) ("*Rumsfeld II*"), *modified sub nom. John Doe No. 1 v. Rumsfeld*, 2005 WL 774857 (D.D.C. Feb. 6, 2005) (*"Rumsfeld III*").

separated if not for the class-wide injunctions for systemic violations against the Air Force, Navy and Marine Corps. *See* ECF 106, PL Aug. 22 Br., at 8-9. Third, judicial review would not interfere with military functions. Plaintiffs' claims largely seek to require DoD to follow its own regulations and "stated policies and make nonarbitrary, individualized determinations about each service members fitness for service." *Roe v. Shanahan*, 359 F.Supp.3d 382 (E.D. Va. 2019) ("*Roe I*"), *aff'd sub nom.*, *Roe v. Dept. of Defense*, 947 F.3d 207, 218 (4th Cir. 2020) ("*Roe II*"). "Requiring the military to follow its own policies does not interfere with its functions." *Id.* Fourth, the issues raised by Plaintiffs do not implicate military discretion. Instead, their claims are "purely a legal matter" appropriate for judicial review. *Air Force Officer v. Austin,* 2022 WL 468799, at *8 (M.D. Ga. Feb. 15, 2022) ("*Air Force Officer*") (*quoting Mindes*, 453 F.2d at 201).

Defendants also erroneously claim that Plaintiffs have not cited any prior case where an APA-based challenge to internal military policies was successful. ECF 118 at 6. This ignores the seminal *Doe v. Rumsfeld* cases where the D.C. District Court issued a preliminary injunction (*Rumsfeld I*), a permanent injunction (*Rumsfeld II*), and a modified consent decree (at the Defendants' request) (*Rumsfeld III*) for APA-based claims nearly identical to Plaintiffs (*i.e.*, unlawful mandate of an Emergency Use Authorization ("EUA") anthrax vaccine). Several courts have found that internal military policies banning HIV-positive and transgender service members

violated the APA, that the claims survived *Mindes*, and enjoined those practices.[2]

## II. The Board of Correction of Military Records Cannot Overturn a Generally Applicable Military Rule or Regulation.

Military Defendants have erroneously claimed that service members must exhaust remedies up to and through the applicable Board of Correction of Military Records ("BCMR"). *See* ECF 118, DF Sept. 12 Br., at 3-4. BCMRs may "interpret the content and effect of military regulations and decide whether [a] military tribunal's decision was in error or unjust," but "it cannot adjudicate a claim that the [Armed Service's] policies and regulations *themselves* are unconstitutional or otherwise unlawful." *Roe I*, 359 F.Supp.3d at 403; *see also Adair v. England*, 183 F.Supp.2d 31, 55 (D.D.C. 2002). Of equal importance, BCMR decisions are merely recommendations to the Service Secretaries executing the DOD Mandate, and the Service Secretary may disregard or overrule the BCMR's recommendation.[3] The

---

[2] *See generally Roe I*, 359 F.Supp.3d 382, *aff'd sub nom.*, *Roe II*, 947 F.3d 207 (HIV-positive service member ban); *Stone v. Trump*, 280 F.Supp.3d 747 (D. Md. 2017), *stay denied pending appeal* 2017 WL 9732004 (4th Cir. Dec. 21, 2017) (transgender ban); *Doe 1 v. Trump*, 275 F.Supp.3d 167, 206 (D.D.C. 2017), *stay denied pending appeal* 2017 WL 6553389 (D.C. Cir. Dec. 22, 2017) (same).

[3] *See* 10 U.S.C. § 552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department."). *See also Hodges v. Callaway*, 499 F.2d, 423 (5th Cir. 1974) ("the Service Secretary always has the final say over decisions by … the BCMR[.]").

final appeal authorities whose decisions the BCMRs are reviewing are three-star or four-star flag officers who report directly to the Service Secretary. "Nothing suggests that the [BCMRs] would depart from the conclusions" of the Service Secretaries or other senior decisionmakers "and conclude that [their] determinations contained an 'error' to 'correct' or an 'injustice' to 'remove.'" *Roe I*, 359 F.Supp.3d at 403. Accordingly, exhaustion does not require a further appeal to a BCMR before seeking relief in federal court. *See Roe I*, 359 F.Supp.3d at 404; *see also Standage*, 526 F.Supp.3d at 84 (same).

## III. Plaintiffs Have Pursued All Available Military Remedies.

Each Plaintiffs has pursued military remedies by submitting a Religious Accommodation Request, nearly all of which have been denied, and half have submitted medical exemption requests. *See* ECF 106, PL Aug. 22 Brief, at 9 & ECF 106-3 (table summarizing Plaintiffs exemption requests). Further, as set forth in Exhibit 1, Plaintiffs have pursued other remedies such as complaints to the Department of Defense's Inspector General ("IG") (Kupper and Craymer) and submitting complaints under Article 138 of the UCMJ (Cossette, Kupper, Roberts, Stermer, Sigoloff). These complaints have been denied or ignored.

## IV. Military Procedures Are Futile and Inadequate.

Several courts have found that military remedies are futile or inadequate

"theater" and therefore exempt from exhaustion under *Mindes*.[4] While these courts address the military RAR process, the same conclusion should apply to direct challenges to the DOD Mandate itself given the uniform denial of all challenges and the near certainty that Secretary Austin will not overrule himself and will not allow a Service Secretary to deviate from his clear directive.

These processes are also inadequate because they cannot provide the relief that Plaintiffs seek, namely, a determination that the DOD Mandate itself is unlawful, as is the interchangeability directive that permits Emergency Use Authorization products to be mandated. A BCMR is not empowered to declare a regulation unlawful and can only make recommendations to the Service Secretary that the Secretary is free to ignore. Article 138 permits a service member to challenge the lawfulness of command from the service member's commanding officer. It does not, however, permit challenges to the lawfulness of an order from the Secretary of Defense or Service Secretary or others higher up in the chain of command. The DOD IG can at most make findings and recommendations to Secretary Austin, but the DOD IG cannot overturn a generally applicable regulation.

---

[4] *U.S. Navy SEALs 1-26 v. Biden*, 2022 WL 34443, at *1 (N.D. Tex. Jan. 3, 2022), *stay denied*, 27 F.4th 346 (5th Cir. Feb. 28, 2022); *Air Force Officer*, 2022 WL 468799, at *1. *See also Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-CV-1275-SDM-TGW, 2022 WL 3643512, at *9 (M.D. Fla. Aug. 18, 2022); *Roe I*, 359 F.Supp.3d at 403 (remedies are futile when no exemptions actually granted).

Dated: September 26, 2022

Respectfully submitted,

*s/ Brandon Johnson*
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing via CM/ECF on September 26, 2022, which notifies counsel of record of the filing.

*/s/ Brandon Johnson*