# EXHIBIT 6

**Declaration of Joshua Hoppe, U.S. Marine Corps**

I, Captain Joshua Hoppe, do hereby declare as follows:

1. I am over the age of 18 years, have personal knowledge of the matters set forth in this Declaration, and if called upon to testify to them, I would and could do so competently.

2. I am currently domiciled in Pensacola, Escambia County, Florida.

3. I am a 7532/MV-22B Naval Aviator and Aviation Safety Officer in the United States Marine Corps currently serving at Marine Operational Test and Evaluation Squadron One (VMX-1) at Marine Corps Air Station (MCAS) Yuma, AZ.

4. Mid-June, 2022 the Comirnaty-labeled products were reportedly arriving at Military Treatment Facilities (MTF) for the first time since the beginning of the DoD Mandate.

5. On June 13, 2022 my Commanding Officer (CO) sent me an email informing me that "The Marine Corps has the COMINARTY (FDA-approved) vaccine available at Camp Pendleton." In the previous email from the Staff Judge Advocate (SJA) to my CO on June 10, he advised "Please inform Capt Hoppe he has the option to get the Pfizer COMINARTY (FDA-approved) vaccine at Camp Pendleton and offer him this opportunity. If he refuses the shot, please document that in writing." In the previous email from the Preventative Medicine Department Head at Camp Pendleton to the SJA on June 9, she stated:

    "I wanted to let you know that we have received in stock a small amount of
    COVID vaccine that is the specific brand name "COMINARTY"-labeled product.

    I know some commands had Marines objecting to the vaccine mandate based
    upon the labeling of the vials for EUA vs fully licensed product.

    These doses should help alleviate that concern."

6. On June 14, 2022 I called Pfizer and asked about these newly arrived Comirnaty-labeled products to try and authenticate them. The Pfizer representative informed me that she did not have any information as to when Comirnaty would be available and told me that "as far as having a Comirnaty label on it, there is no information for when it will be available so therefore it's not available." The Pfizer employee told me that the Purple and Grey Cap Comirnaty was NOT available at that time.

7. On June 15, 2022 I was ordered to sign a document titled "OFFER TO RECEIVE THE FDA-APPROVED PFIZER COMIRNATY COVID-19 VACCINE" by my Commanding Officer. I requested time to consult with legal counsel and was given until June 22, 2022. Due to this being the first time that a product labeled Comirnaty was being offered to any service member and referred to as "THE FDA-APPROVED" product by my Command, I had reservations that this was in fact a legitimate product and began to attempt to verify if it was or not. I had previously demonstrated to my Command that there were no FDA-

approved products available and the enforcement of the DoD Mandate with EUA products was illegal. I had also requested trial by Courts-Martial to have the opportunity to demonstrate the same before a military judge who could then rule against the DoD Mandate as being unlawful. My request has been denied twice now.

8. From June 15 to 22, 2022 I conducted phone and email inquiries with Pfizer, MTF, the FDA Center for Biologics Evaluation and Research (CBER), and the Defense Health Agency (DHA) with requests for information (RFIs) to confirm the "Comirnaty-labeled" product is the "FDA-Approved" product in accordance with the BLA-Approval and Supplement letters. The majority of my requests have received non-answers or been told that they could not answer, would not answer, or to submit the RFIs via a FOIA request. The following is a list of some of the RFIs I attempted unsuccessfully to obtain which I included in my response to my Command's offer and requested a ceasing of any further enforcement for anyone until these questions could be fully addressed. This pause did not happen.

   a. A copy of the Notification of lot release from the Director, Center for Biologies Evaluation and Research (CBER) required by the Approval letter.
   b. Proof of the location and date of manufacture of this Lot number and NDCs.
   c. How many and which lots were released?
   d. A copy of the list of differences from what is currently in large circulation (EUA Pfizer-BioNTech) and the Comirnaty products.
   e. If this is the FDA-approved version, when will all the EUA in circulation be required to be pulled from the shelves?
   f. A copy of the Vaccine Information Statement (VIS) for this Comirnaty product that should replace the EUA Fact sheets once there is an FDA-approved product available.
   g. Photos of the vials of Comirnaty (just wanting to verify the labeling on the actual vials as well with the License #, NDC, Lot, and expiry info).
   h. Photos of the packaging and storage instructions (should be the insert in the boxes - just wanting to verify if there is any other amplifying information on this product about EUA vs Approval).
   i. A copy of the EUA Fact sheets or Approved Vaccine Information Sheets that came with the shipment of the "Comirnaty-labeled" product.
   j. Current Storage Temperature? Was there an internal alarm going off when the package arrived from shipping? (There have been reports at other facilities that the internal alarm was going off upon arrival indicating that the vials were not shipped appropriately - just wanting to verify if there were any peculiarities from this shipment as well).

9. On June 16, 2022 I sent an email to the DHA about some of these concerns requesting clarification. This email was then forwarded from DHA Public Health to the Director of Public Health for HQMC Health Services where the Navy's Bureau of Medicine (BUMED), HQMC Judge Advocate Division (JAD), and Marine Corps COVID Cell were all included. All my questions were either pushed off to FOIA or redirected to other entities despite informing them that I had already engaged through my local MTFs, Command, Pfizer, and the FDA – all of which referred me to the DHA for my questions due to them

being responsible for the distribution of the products. I continued to send weekly emails for the next month requesting answers, but my RFIs were ignored.

10. On July 7, 8 and a few other days in mid-July, 2022 I called and spoke with several Pfizer representatives and left messages with the FDA CBER with questions about the manufacturing location and updated Expiry documentation for Comirnaty. I was told that no location could be provided and they knew the Comirnaty lots had been granted 3-month extensions, but could not provide me an Expiry document besides the January, 2022 version that was for EUA specific lot numbers.

11. On July 22, 2022 I sent an email to the FDA's CBER and Office of Communications, Outreach and Development (OCOD), "CBER OCOD Consumer Account <cberocod@fda.hhs.gov>", to request the Lot Release Letters for FW1330, FW1331, and FW1333.

12. On July 25, 2022 I received the following reply from the FDA's CBER OCOD office:

    "Vaccine lot release information is considered commercial confidential information (CCI), therefore, FDA cannot comment on such information. We suggest that you contact Pfizer for further information on their product."

13. On July 25, 2022 I then responded to the FDA's email to make them aware of the potential violation of Pfizer by manufacturing Comirnaty in "France" vice an approved location and requested an investigation into this since I could not confirm it myself:

    "I would like to make you aware of a potential violation of the BLA-approval/supplemental letters of the Product named Comirnaty. From phone conversations with Pfizer staff, one of the employees confirmed that the manufacture location of this Comirnaty Product (that is now in circulation at military treatment facilities) was from "France" which is not in compliance with the BLA licensing requirements. I just requested the FDA-lot release letters to try and confirm this, but was unable to acquire them. Please look into this as you are the regulating agency that should be made aware of this violation and let me know if this is in fact true and what the proper remedies will be. Thank you for your time."

14. On July 25, 2022 I submitted a FOIA request to the FDA for the Lot Release Letters and manufacturing locations of these Comirnaty-labeled products.

    "Good afternoon, I'm requesting the following: 1. FDA Lot Release Letter and 2. The manufactured locations of the below lot numbers from Comirnaty labeled vials: FW1330 FW1331 FW1333 Please let me know if you have any questions and thank you for your time and attention to this matter."

15. On July 26, 2022 I received an "FDA FOIA Acknowledgement Letter" from the FDA via email.

3

16. On July 26, 2022 I received a response from the FDA CBER OCOD office letting me know they had received my report, but I have not heard anything further on the status of this investigation.

    "The information you provided was forwarded to the appropriate compliance individuals within CBER. Should there be the need for follow up on the information you provided, someone may contact you to obtain further information… If an investigation is conducted, you may be able to obtain copies of the completed investigational report by submitting a Freedom of Information Act (FOIA) request to FDA."

17. On August 1, 2022 I received an "Expedited Processing Denial" letter from the FDA. Per the FOIA.gov FDA page, the average processing time in 2021 was 52 days for a simple request and 186 days for a complex request.

18. On August 15, 2022 I was one of 9 military service members who signed the "Whistleblower Report of Illegal DoD Activity" and sent to Congress which addressed the illegal use of EUA products to enforce the DoD's COVID-19 inoculation mandate as well as the potentially fraudulent labeling and misrepresentation of the Comirnaty-labeled product.

19. On August 25, 2022 I received a call from Elizabeth Sly at the FDA Access Litigation and Freedom of Information Branch (ALFOIB) to let me know that the Lot Release Letters and Lot Release Protocol for FW1331 was already being released for another project and would be available to send to me soon as well.

20. On August 30, 2022 I received a partial response with the Lot Release Letters for FW1330, FW1331, and FW1333 as well as pages 2 and 3 of the Lot Release Protocol for FW1331. I examined the documents and began conducting some more research into them before accepting the Lot Release Protocol format for the other lot numbers to finalize the FOIA request.

21. On September 8, 2022 I received a call back from Ms. Sly in regards to my FOIA request I had made with the FDA CBER. During the call, I inquired about the disparity of manufacturing locations listed on the BLA approval and supplemental letters and noted that the December 16, 2021 BLA referenced by the FW1331 Lot Release Protocol [STN 125742/36] listed only Puurs, Belgium. Ms. Sly pulled up the BLA letters to reference during the call which included the original August 23, and supplemental letters December 16, July 8, and August 25. There was no mention of any BLAs that were hidden from the public. The recently revealed supplement BLA letter from January 14, 2022 [STN 125742/44] was not listed or referred to on the lot release protocol even though the protocol was signed on April 7, 2022 well after the BLA supplement.

22. On September 13, 2022, Ms. Sly emailed to check and see if the format was acceptable for the other lot numbers which would allow the request to be fulfilled quickly.

23. On September 13, 2022 I emailed Ms. Sly back to let her know the format would work for the remainder lot release protocols and addressed the concerns we discussed in more detail and asked the following two questions:

"Do you have any documentation that would demonstrate that Kalamazoo could also manufacture this lot number with the updated formula? It seems that if ONLY Belgium was listed for this formula, that this would be the only place where an approved and fully licensed product could be manufactured with this formulation."

"The July 8 BLA Supplemental Approval Letter lists: Belgium, Kalamazoo, and McPherson, Kansas. The Aug 25 BLA Supplemental Approval Letter also lists all 3 of these sites as approved manufacturing sites. However, these letters were released after these Lot Numbers were released which would put them under the Dec 16 BLA that only lists Belgium. Are these Lot #s still EUA and not the fully licensed products then?"

24. On September 14, 2022 Ms. Sly replied to my email to let me know she would be providing the other lot release protocols and addressed my questions I had with the following response which deferred from the question about these products being EUA or not:

"Regarding your questions, **please note that interpretation of the documents provided to you in response to request falls outside of the scope of a FOIA request response**. However, with that said, **please be aware that not all approval letters are posted to the FDA website.** If you would like to obtain the approval letter which specifies the Kalamazoo, MI location as a manufacturing location for the Tris formulation, please submit a new FOIA request." (Emphasis added)

25. On September 15, 2022 I submitted a follow up FOIA request for all BLA letters with a STN 125742/0-175 with the original and verifiable signatures, documentation showing the BLA timelines, proof of compliance with BLA letters for FW1331, documentation to certify that the current Comirnaty products in circulation are in fact the FDA-approved and fully licensed products, and any documentation certifying if these Comirnaty lots are actually still EUA products:

"This is a follow-up to FOIA Request # 2022-5411. 1) Please provide all Approval Letters for with STN #'s 125742/0-175 (or whatever is the most current update to the STN) with the original and verifiable signatures. The only STN Approval Letters that are available on the FDA page (https://www.fda.gov/vaccines-blood- biologics/comirnaty) currently are 125742/0 (23 Aug 21), 125742/36 (16 Dec 21), 125742/45 (8 Jul 22), and 125742/175 (25 Aug 22). It has been recently revealed in the Coker v. Austin case that there are more Approval Letters not made public - namely 125742/ 44 (14 Jan 22). 2) Please also provide any emails, memos, and/or documentation used to

5

      process these STN #s that demonstrate the timelines of each STN from start to finish (similar to the Summary Basis for Regulatory Action, but with any other memos or emails used to forward the approval letters). 3) Please provide any documentation demonstrating that the Comirnaty Lot Release letter for FW1331 is in compliance with the appropriate Approval Letters. The Lot Release Letter provided to FOIA Request # 2022-5411 only references STN 125742/36 [Puurs, Belgium] not /44 [Kalamazoo, MI]. 4) Please provide any documentation that will certify the Comirnaty lot numbers in circulation are fully compliant with all FDA/BLA- Approval Letters and are fully licensed. 5) If these Comirnaty lot numbers are not fully licensed, but are under EUA please provide the certifying documentation for this as well. Thank you."

26. On September 15, 2022 I received an "FDA FOIA Acknowledgement Letter" from the FDA via email.

27. On September 22, 2022 I received an "Expedited Processing Denial" letter from the FDA. I also received a call from Ms. Sly who informed me that my request would have to be triaged to the "complex track" and would take "at least two years" to process. This is much longer than even the average complex request was in 2021 of 186 days.

I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Executed this September 26, 2022.

                                                      */s/ Joshua Hoppe*
                                                      Joshua Hoppe, Capt USMC

# Transcript of September 8, 2022 FDA FOIA Call

Joshua Hoppe (JH): Yes ma'am, are you still there?

Elizabeth Sly (ES): Oh, yes, I'm still here. So, I'm calling regarding, um, we sent a partial response to you at the end of August, which included the lot release letters for the three lots you were asking about, and two pages from a release protocol for one of the lots which included, um, manufacturing location information. And I was calling to see if the format of that document, um, fulfilled your needs. And if so, we can do that for you for the other two.

JH: Yeah, I believe I. Yeah, let me look at it one more time, and I might have like, a couple more questions and I'll send you an email. I've just been so busy lately, I haven't really been able to sit down and like, look, look over at all.

ES: Oh, that's no problem.

JH: Yeah, I will. I will look at it real quick, and then I'll get back with you and I'll just send you an email and either say, like, yep if that works for the other two as well, or if I just have a couple other questions or whatever, if I have them.

ES: That's no problem. And if you, if it, I don't know if it helps the decision process, but if you were, if the format does work for you and you're willing to narrow to that that format.

JH: Okay.

ES: We have those available right now for the other two lots because they were, um, we already have them redacted. However, if you were seeking like the full lot release protocol, um, that would all need to be reviewed for public disclosure like all over again because the whole document had not been reviewed, just the those selected.

JH: Okay, so they would have to re redact a lot more and whatever.

ES: That, yes. And they there would be a wait time for you to even come up and to keep it processing. So, an option would be if you wanted to obtain those couple of pages, if you, um, you get your FOIA response, you're not satisfied with those couple of pages, you could resubmit to obtain the full record; but there would be a wait time in queue to obtain them.

JH: Okay. And then what were those three like individual letters that you released as well? Those weren't the lot released lot letters. Those are just, like the, they had the signatures on them and then they had the reference number at the top.

ES: Yeah. Those are the lot release letters.

JH: Those are the lot release letters. And then like they, the, the last document that you sent that was the full lot release letter. Correct? Or like that's a…

ES: That's the couple of pages from the lot release protocol. Which protocol of the, um, and then these are the tables in the lot release protocol which contain that the manufacturing location information, which is why we said all we, um, **there's been high interest in this document** and that's why we've been providing these pages. We've provided them to a few different FOIA requesters. Um, but if the format is the information that you're seeking, we have it available for the other two lots that you're asking about.

JH: Okay, alright.

ES: That we can give it to you. But if you'd like the full lot release protocol, which is a much lengthier document, not only will it need to be reviewed and redacted for public disclosure, but there would be a wait time for you to even come up in queue.

JH: Okay, alright. Perfect.

ES: As opposed to being processed now.

JH: Yeah. And then for the lot release letters, I'm probably going to have a couple of follow up questions with those as well. Just because, like the release letters, I don't know if you noticed that the top left-hand side, like in the numbers, like they refer to the BLA approval letters that they're in

1

reference to. And so, I believe they, they link up with the BLA approval letter for Comirnaty that was released in, or updated the **supplemental letter from December timeframe where it lists that Puurs, Belgium was supposed to be the manufacturing site** and then in the lot release letter and it says that they were manufactured, or **in the protocol there, it said they were manufactured in Kalamazoo, Michigan.** So, I guess that's going to be my, kind of my follow up question is like, **how come those two don't jive?**

ES: Oh the, I'm not sure if, for the lot release letter, if the, where they're being sent to in the Kalamazoo, Michigan location. If that's like an administrative process, I, I can't really speak to that in the, let me look at these lot release protocol pages. I believe in the, um, the approval letters there's multiple locations that are listed and I know the Puurs, Belgium is one of the sites that was inspected. That's something that we've disclosed in those published records.

JH: Yeah. So, I think…

ES: Um, the, the approval letter itself, I, I believe that this location is there.

JH: So, it's, it's, there in the June or July, uh, I forget what date when it came out, the most recent one that came out, it was added back into there, like Kalamazoo. But **in the referenced BLA supplemental letter that was released on December 16th, it only listed Puurs, Belgium as being the approved manufacturing site.**

ES: And then I guess these letters are dated at a time frame of March and April of this year. You have that December timeframe?

JH: Yes. Yes. So then, so, and they're all referencing back to that December BLA letter because then the updated BLA letter didn't come out until June or July, whichever it was, and that's when they added Kalamazoo. But at the time that the lot release letters came out. So that's going to be kind of my follow up questions like.

ES: Okay.

JH: At the time that those came out and just for your own, you know, heads up and then just asking questions about that. And I don't know if there's anything else that could be provided that would clarify that. But, from what I'm looking at, I mean it looks, **the BLA letter that came out in December only lists the one, but it doesn't list Kalamazoo**. So, I'm just kind of curious.

ES: Um, did the original approval letter have redactions on it?

JH: Uh, it probably did, but I don't see…

ES: Sometimes at the time of original approval, sometimes there are just locations that cannot be acknowledged, which is why they are redacted, especially if it's, um, locations of components. As opposed to the final packaging and labeling of a product. But let's take a quick look… [inaudible] the December 16th approval letter… The computer is a little slow today… [1-minute pause while searching for the BLA letters] Let's see… Yes, this December 16th letter says for a new formulation that they were adding this facility, but I don't think it's negating any previous facilities. So that's from the December 16th, 2021, which is not the original. It's a supplemental. And if I can find the original in August of 2021… Oh, yes, **I see Kalamazoo, Michigan mentioned in the, um, August 23rd original approval letter**. And that supplement and a letter you referencing from December, they were adding a facility.

JH: Adding or just replacing?

ES: No, it just says this, it just says that for this new formulation that they were adding, that's what the letter, I believe, let's see the exact wording… So, the December letter… Says that they were going to, um, they're approving the supplement to include a new formulation made at the Puurs, Belgium facility.

JH: Okay. So, and then so.

ES: [Inaudible] negating the previous facilities mentioned in the August 2021 letter, which among them the Kalamazoo, Michigan.

JH: So, you said it is negating those ones?

ES: No, it's not negating. It's just saying that they were, they've, the company submitted a supplement and were approving them adding this, this Puurs, Belgium facility.

JH: Well, but adding that Puurs, Belgium to, to manufacture the one, the updated formulation. Correct?

ES: The, the context of this letter, it says, um, we've approved your request submitted and received November 18th, 2021 as a supplement to include a new 30 microgram dose formulation of Comirnaty manufactured at the Pfizer-Belgium, Puurs, Belgium location. So, it's just saying that they have approved a supplement specifically for that.

JH: Okay, well.

ES: Then if you want to make a change of the manufacturing process, add a facility, um, do anything like that, that would have to come in as a supplement and then be individually looked at and approved. But it's not negating other supplements.

JH: Okay. Yeah, I guess I'll just, like on my, on my reply, I'll just ask for like something in writing that states something to the effect that it, you know, it is in addition and not like negating or you know. From what it looks like, because then on that most recent one they added back in Kalamazoo. So, if it's not negating, why would they list on the newest one Kalamazoo?

ES: …On the newest one from August 25, August 25th?

JH: Or I think it was in, or is it maybe there was another one.

ES: July.

JH: Yeah. I think July,

ES: July 8th?

JH: Yeah, July 8th. Yeah.

ES: Oh… That was, the July 8th one was specifically in the context of vaccines formulated for the 12 to 15 age group.

JH: Okay.

ES: So that's what that, that supplement, that's what that supplement was about was the 12 to 15 age group. And it's listing the manufacturing, um, locations for the 12 to 15 age group.

JH: Okay.

ES: So that's specifically the context of that entire supplement was just the 12 to 15. And the August 25th one is I believe it's regarding the, um, the booster maybe. Let's see. Maybe not. That's, that was the end of August. Um. This is for the. In the introduction of the monovalent 30 microgram single dose vial in the .48 mil fill volume. **It's about location and labeling changes**. That's what the supplement, the, each supplement approval letter gives you the context of what that supplement was about.

JH: Mm hmm.

ES: And it's listing some locations. So, it's not that they're fully adding and removing from facilities being involved with the product. **It's whatever the context was of that very particular supplement**.

JH: Okay. Yeah, I guess, I guess just for my own clarification, it's just, you know, for the newest one where they say, like, we're adding that ingredient and it looks like adding that ingredient and adding, or clarifying, that that new formulation will be manufactured in Puurs, Belgium. From a reader's point of view at least that's what it looks like.

ES: Yes, I think this is the difference, I believe, between the gray cap and purple cap because they have a bunch of different color caps and they have different package inserts for the different color caps. Yeah, yeah, yeah. Please let me know, uh, by email whether or not the format of that lot release protocol works for you, cause we're happy to do that for the other two products to fulfill all of your request. And if you have any follow up questions, we're happy to address those as well.

JH: Okay. All right, cool. Thank you.

3

ES: All right. Thank you. By bye.

JH: All right. Bye.