IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**BENJAMIN COKER, JOSEPH CONNELL, et al.,**

    Plaintiffs,

v.                                      Case No. 3:21-cv-1211-AW-HTC

**LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, et al.,**

    Defendants.

_____/

**ORDER GRANTING IN PART MOTION TO DISMISS
AND ADDRESSING OTHER PENDING MOTIONS**

Plaintiffs—members of the United States Armed Forces—initiated this case to challenge the military's vaccine mandate. The defendants are Lloyd Austin, III, in his official capacity as the Secretary of Defense; Xavier Becerra, in his official capacity as the Secretary of Health and Human Services; Robert Califf, in his official capacity as FDA Commissioner[1]; and the Secretaries of the Air Force, Navy, and Army (collectively, the "government"). ECF No. 56. Plaintiffs moved for a preliminary injunction, which was denied. ECF No. 47. They then filed their Second Amended Complaint, ECF No. 56 (SAC), and the government moved to dismiss,

---

[1] The Second Amended Complaint listed Janet Woodcock, in her official capacity as Acting FDA Commissioner. Robert Califf became FDA Commissioner this February, and he is automatically substituted as a Defendant. *See* Fed. R. Civ. P. 25(d).

1

ECF No. 65 (MTD). Along the way, the administrative record was gathered, and each side filed several supplemental memoranda.

## I.

The basics are simple enough. The military has directed that all service members take the COVID-19 vaccine, and Plaintiffs do not want to. Plaintiffs believe—as do many others—that COVID vaccines have risks exceeding their benefits (particularly for young healthy people).

Vaccine mandates have been controversial generally, and this one is no exception. Other courts have considered the military's vaccine mandate, and more than one have enjoined its enforcement at least in part. *See, e.g.*, *Navy Seal 1 v. Austin*, 586 F. Supp. 3d 1180, 1205 (M.D. Fla. 2022) (preliminarily enjoining enforcement on RFRA grounds); *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d. 822, 826 (N.D. Tex. 2022) (same).

Plaintiffs' principal claim is that the military has no authority to require the COVID-19 vaccine at all. In Plaintiffs' view, the mandate is arbitrary and capricious, and therefore unlawful. Their secondary claim is that even if the military can require COVID-19 vaccines as a general matter, that authority is limited to mandating fully FDA-approved vaccines, not the vaccines (like Johnson & Johnson's) that have only a limited Emergency Use Authorization (EUA).

As to this secondary issue, the parties agree that the Pfizer vaccine has received full FDA approval and that this approved product is marketed under the name Comirnaty. They also agree that the Pfizer vaccine is still used under its EUA for certain applications that the full FDA approval does not reach. Much of this background is set out in the earlier order denying preliminary injunctive relief. *See* ECF No. 47 at 6 ("In short, what people think of as the Pfizer vaccine has two distinct FDA-approval statuses. It is licensed—that is, fully approved—for the two-dose application in those 16 and older. But it is unlicensed and operating under an EUA— that is, an emergency use authorization—for other applications . . . ."). After the government moved to dismiss, a second vaccine—the Moderna vaccine—secured full FDA approval under the "Spikevax" mark.

The parties are in agreement as to certain aspects of the legal framework. Congress enacted an informed-consent requirement for EUA products to "ensure that individuals to whom the product is administered are informed" know they have "the option to accept or refuse administration of the product." 21 U.SC. § 360bbb-3(e)(1)(A)(ii)(III). This informed-consent requirement applies even to military service members, unless the President waives it after "determin[ing], in writing, that obtaining consent is not in the interests of national security." *See* 10 U.S.C. § 1107a(a)(1). Thus, generally speaking, the parties agree that absent a presidential waiver—and there is none—the military cannot mandate EUA vaccines.

The rub is that the FDA and the military determined that an EUA vaccine—or at least the Pfizer EUA vaccine—is essentially the same as the FDA-approved version. The government acknowledges that the two are "legally distinct" but insists nonetheless that they are close enough such that the EUA version can be mandated without a presidential waiver.

At the preliminary injunction stage, I concluded that the government's interpretation of § 1107a was unpersuasive. ECF No. 47 at 14. A fully approved FDA-compliant vaccine is not always the same as its EUA counterpart. There are restrictions on the manner and location of FDA-approved vaccines, for example, that do not apply to EUA products, which have more relaxed manufacturing specifications. *See, e.g.,* 21 C.F.R. §§ 600.11, 600.20-.21. It is one thing to *allow* service members to comply with the vaccine mandate by voluntarily taking a non-FDA-approved vaccine (like the Johnson & Johnson vaccine or the Pfizer EUA version). It is another to force them to take a non-FDA-approved vaccine. Nonetheless, I concluded then that Plaintiffs had not shown a likelihood of success on the merits because they had not shown that any was forced to take an EUA version. The government contended that there was plenty of Comirnaty to go around, and Plaintiffs—who had the burden of proof—had not shown otherwise.

In their Second Amended Complaint, Plaintiffs allege that the government is using the policy to force Plaintiffs to take EUA vaccines. They further allege that

4

some have faced discipline for refusing to take an EUA vaccine when no approved vaccine was made available to them. Plaintiffs contend the mandate is unlawful, and they seek injunctive and declaratory relief.

The government challenges Plaintiffs' claims on the merits, but it also asserts that the court lacks jurisdiction to consider those claims. Because the court must ensure it has jurisdiction before turning to the merits—"no matter how weighty or interesting," *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc)—I will start with jurisdiction.

## II.

"[T]here are three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (quotations omitted). The government raises all three strands.

To have standing, a plaintiff must have an injury in fact that the defendant caused and that is redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Without showing those elements, a plaintiff lacks standing, and the court lacks jurisdiction. Relatedly, ripeness deals with "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Digital Props., Inc. v.*

*City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). Last, the doctrine of mootness presents another jurisdictional limitation. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Id.* at 1336.

### A.

The government contends that Plaintiffs lack standing for their claims against HHS. MTD at 24-25.[2] At this stage, all Plaintiffs have to do is allege facts that would support standing. *Lujan,* 504 U.S. at 561. But they have not done that. As the government correctly notes, Plaintiffs have not alleged facts showing traceability or redressability as to HHS. Indeed, Plaintiffs do not meaningfully argue otherwise. The claims against HHS, then, will be dismissed for lack of jurisdiction.

The government also contends that Plaintiffs lack standing to sue the FDA. MTD at 29. As with HHS, the government argues traceability and redressability; it contends Plaintiffs' injury is not traceable to the FDA's decision to approve the Pfizer vaccine and that an order invalidating FDA's approval would not remedy the harm. More specifically, the government argues, the injury (if any) is caused "by DoD's independent decision to require vaccination." MTD at 30. But Plaintiffs'

---

[2] References are to page numbers CM/ECF assigns at the top of each page.

allegations—accepted at this stage as true—show that the military's decision to impose the vaccine mandate was hardly "independent" of the FDA's decision. Indeed, the government's counsel acknowledged at the preliminary injunction hearing that without the FDA's approval there would have been no military vaccine mandate and that if the FDA mandate became ineffective, the military vaccine mandate would fall too. *See* ECF No. 47 at 17. Plaintiffs' asserted injury (forced vaccination) was therefore traceable to the FDA's Comirnaty approval and its invalidation would—by the government's own admission—have redressed that injury. Plaintiffs thus alleged enough to show that when they first sued, they had standing to challenge the FDA's decisions.

**B.**

Ripeness is a separate issue but with some "doctrinal overlap." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006). Ripeness deals more with the suit's timing, while standing addresses who can sue. *Id.* "Thus, there may be standing without ripeness, as when a party alleges a concrete injury but has not exhausted prescribed administrative remedies . . . ." *Id.* "But in cases involving pre-enforcement review, the standing and ripeness inquiries may tend to converge . . . because claims for pre-enforcement review involve the possibility of wholly prospective future injury, not a prayer for relief from damages already sustained." *Id.*

The government argues that Plaintiffs' claims are not ripe until they have exhausted all administrative remedies. Plaintiffs' principal claims are under the APA, and the government has not identified any administrative APA exhaustion remedies. *See Darby v. Cisneros*, 509 U.S. 137, 146-47 (1993) (noting that APA challenges to final agency actions do not require exhaustion unless the underlying law being challenged has its own exhaustion requirement). Instead, the government relies on the general proposition that claims cannot be ripe until available administrative remedies are exhausted. They also argue that the claims are not ripe until there is some final action or discipline.

Plaintiffs have alleged enough to show ripeness. First, "[i]n the context of a facial challenge, a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009). Second, to the extent the government argues that some Plaintiffs have not heard back on their various exemption requests, the fact remains that some have. *E.g.*, SAC ¶¶ 13, 14, 16, 18, 20, 22, 25, 26. And Plaintiffs have alleged that some have already faced adverse actions and had restrictions imposed upon them. *E.g. id.* ¶¶ 13, 14, 25. Moreover, even if Plaintiffs had not alleged enforcement, that is not a prerequisite for ripeness. "Ripeness analysis involves the evaluation of two factors: the hardship that a plaintiff might suffer without court redress and the fitness of the case for judicial

8

decision." *Elend*, 471 F.3d at 1211 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). "Hardship can sometimes be established if a plaintiff demonstrates that he would have to choose between violating an allegedly unconstitutional statute or regulation and risking criminal or severe civil sanctions." *Id.* Plaintiffs have alleged enough to show that. They have also alleged enough to show that the dispute is sufficiently concrete for resolution. *Cf. Doster v. Kendall*, --- F. Supp. 3d ---, 2022 WL 2760097, at *3 (S.D. Ohio July 14, 2022) (finding claims against military vaccine mandate to be ripe).³

---

³ Finally, the government argues that Plaintiffs could always litigate the mandate's validity after they are punished—after, for example, they are discharged from the United States military for refusing the vaccine. The government insists that a full range of remedies would then be available and that this court could order their reinstatement if it concluded the mandate was unlawful. I am not convinced the government is correct on that point, but even assuming it is, that would not make the present dispute unripe. *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (quoted parenthetically in *Elend*) (explaining that limiting relief to *after* statute's enforcement would put "the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding").

To the extent the government argues exhaustion separate from ripeness, this is not a jurisdictional issue. *Santiago-Lugo v. Warden*, 785 F.3d 467, 472 (11th Cir. 2015). And although the government asserts there is a general exhaustion requirement for military affairs, there are exceptions for when "no genuine opportunity for adequate relief exists," and when "irreparable injury will result if the complaining party is compelled to pursue administrative remedies," and when "an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982). The government has not shown (at this stage) that these exceptions would not apply. It has not shown any authority for anyone in any administrative

## C.

For its next jurisdictional argument, the government contends that Plaintiffs' claims against FDA have become moot. Standing is evaluated at the time the complaint is filed. *Cook v. Bennett*, 792 F.3d 1294, 1298 (11th Cir. 2015). Mootness, on the other hand, deals with events that arise later. *Id.* at 1299 n.3; *Strickland v. Alexander*, 772 F.3d 876, 887 (11th Cir. 2014) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))). As noted above, FDA approved the Moderna vaccine (marketed as "Spikevax") after this case began. Thus, if the court invalidated the FDA's Comirnaty approval, there would still be an FDA-approved vaccine. And that means invalidating the FDA's Comirnaty approval would not be likely to end the mandate. Nor would invalidating the FDA's interchangeability determinations about Comirnaty help Plaintiffs. As to the FDA, Plaintiffs "no longer present[] a live controversy with respect to which the court can give meaningful relief." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health*

---

review chain to undo the policy at issue, and it seems undisputed that the military is rejecting substantially all exemption requests. *Cf. Navy Seal 1*, 586 F. Supp. 3d at 1183 (detailing how hundreds of servicemen have applied for religious exemptions but all except twelve had been denied); *U.S. Navy SEALs 1-26*, 578 F. Supp. at 828 (detailing how dozens of the plaintiffs' requests had been denied to that point and none had been granted).

10

*& Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir.1993)).

Plaintiffs have stated that they may wish to amend to challenge Spikevax's approval too. But as of now—and as the claims are currently pleaded—the claims against FDA are moot.

Finally, Plaintiffs argued an exception to the mootness doctrine that applies "when the action being challenged by the lawsuit is capable of being repeated *and* evading review." *Al Najjar*, 273 F.3d at 1336. This is a "narrow" exception, applicable "only in 'exceptional situations.'" *Id.* (quoting *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1256 (11th Cir. 2001)). Plaintiffs have not shown it applies here. Plaintiffs' papers did not make clear just what was likely to reoccur, but they said at the hearing that the argument was that some other vaccine might receive approval without adequate time for a challenge. The problem is that there must be "a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party," *id.* (quoting *Sierra Club v. Martin*, 110 F.3d 1551, 1554 (11th Cir. 1997) (emphasis removed)), and Plaintiffs have not shown that there is. Plaintiffs have also not shown that there would be insufficient time for review if there were some reoccurrence.

Plaintiffs' claims against the FDA will be dismissed for lack of jurisdiction.

11

**D.**

The government also contends that any as-applied challenges to military policies are not justiciable. MTD at 25. And indeed, that is the law of this Circuit. *See Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001). This is consistent with the fact that "civilian courts have traditionally deferred to the superior experience of the military in matters of duty orders, promotions, demotions, and retentions." *Id.* (quoting *Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765, 771 (7th Cir. 1993)). This, though, does not preclude "facial challenges to military regulations." *Id.* "There is a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision." *Id.* (parenthetical quotation to *Watson v. Arkansas Nat'l Guard*, 886 F.2d 1004, 1010 (8th Cir. 1989)).

Plaintiffs frame their claims as facial, and the government does not dispute that facial relief is available.[4] To the extent Plaintiffs present any as-applied challenges, those claims are dismissed.

At times, the parties have presented evidence about Plaintiffs' individual circumstances, the availability of licensed vaccines at various bases, offers made to Plaintiffs, and so on. They presented much of this in the context of the jurisdictional

---

[4] As a general matter, that is. The government contends the court lacks jurisdiction (addressed above) and that the claims fail on the merits (addressed below).

disputes. But to the extent either side considers any aspect of Plaintiffs' claims to be as-applied, this order clarifies that the court lacks jurisdiction to address any as-applied claim. To the extent Plaintiffs present any, such claims must be dismissed.

* * *

To summarize, the court lacks jurisdiction over Plaintiffs' claims against HHS and FDA, so those claims will be dismissed. The court also lacks jurisdiction over any as-applied claims against the military defendants, so those claims will be dismissed. Plaintiffs do have standing to present facial claims against the mandate, and those claims are ripe. The court has jurisdiction to entertain those claims, so I will now turn to their merits.

### III.

Plaintiffs bring seven causes of action. I will address each in turn.

### A.

For their first claim, Plaintiffs allege "DOD Violations of Administrative Procedures Act and DOD Rules and Procedural Requirements." SAC at 57. There are two basic components to this claim. First, Plaintiffs claim that the Mandate effectively amended another regulation—AR 40-562—without first going through proper procedural steps for implementing that change. Second, Plaintiffs claim that the Mandate violates the APA because it was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." SAC ¶ 111 (quoting 5 U.S.C. § 706(2)(A)).

Plaintiffs have not plausibly alleged that the Mandate does, in fact, amend (or violate) AR 40-562. They say AR 40-562 "expressly provide[s] a presumptive medical exemption for service members with natural immunity gained through previous infections." SAC ¶ 109. But that relies on a flawed reading of AR 40-562, which provides no such "presumptive exemptions," but which says that "[h]ealth care providers will determine a medical exemption" based on certain factors and that a "[g]eneral example of medical emptions include . . [e]vidence of immunity based on serologic tests, documented infection, or similar circumstances." *See* AR 40-562, Ch. 2-6a(1)(b). Nor have Plaintiffs plausibly alleged any claim based on DOD Instruction 6205.02, which they contend the military did not follow. SAC ¶ 110.

More importantly, Plaintiffs have not plausibly alleged that any conflict between the Mandate and AR 40-562 would render the mandate invalid. Plaintiffs point to no authority suggesting that the military cannot implement policies that conflict with other policies. Most of Plaintiffs' argument seems to be that the military did not follow notice and comment rulemaking procedures, but as explained earlier in the case, APA notice-and-comment rulemaking does not apply to military operations. ECF No. 47 at 9 ("The problem for the plaintiffs is that the statute they rely on—5 U.S.C. § 553—is inapplicable 'to the extent that there is involved . . . a

14

military or foreign affairs function of the United States.'" (quoting § 553(a)(1))). Plaintiffs' current complaint omits any citation to § 553, but it seems to present the same claim. At any rate, Plaintiffs cite no authority showing that the military had other procedural obligations before changing policies.

Likewise, while Plaintiffs go on to allege that the actions "were made 'without observance of procedure required by law.," SAC ¶ 110 (quoting 5 U.S.C. § 706(2)(D)), they do not further detail what those procedures are. In short, Plaintiffs have not alleged any plausible claim relating to the procedural aspect of the mandate.

The other component of Plaintiffs' claim, though, is a different matter. In that claim, Plaintiffs contend that the mandate is arbitrary and capricious and thus invalid under the APA. Here Plaintiffs argue that the mandate is unwise and not in the military's best interest. They point out that the vaccines do not prevent transmission as originally promised. And they note there are health risks associated with the vaccines. They also contend that the military undermines any suggestion that it was simply following CDC guidance when it declined to mandate multiple boosters, which CDC suggests. *See* ECF No. 68 at 40; ECF No. 106 at 6.

As the government argues, the court's review is quite deferential. The APA does not require agencies to demonstrate "to a court's satisfaction" that new policies—or changes in policies—are based on reasons that "are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute,

that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). It is therefore too little to argue that the policy is a bad one—or even a harmful one.

The military's administrative record was filed after the motion to dismiss. Although the parties have filed supplemental arguments, I have determined that it will be prudent to subject this narrow issue—whether the record shows the mandate was arbitrary and capricious under the APA—to further briefing. The issue is a purely legal one. *Cf. Univ. Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) ("[T]he question whether HHS acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record— regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment (or in any other Rule 12 motion under the Federal Rules of Civil Procedure.")).

Accordingly, while the government's motion to dismiss is now denied as to this issue, this is without prejudice to the government's filing a standalone motion on this issue, complete with appropriate citations to the administrative record. Also, the claim (as presented) is that the decision was arbitrary and capricious *when made*. Thus, it is not clear that subsequent events (or subsequent scientific understandings) make a difference. If Plaintiffs contend they do, Plaintiffs must set out in detail why,

with proper citations to authority. Plaintiffs must do so in response to the government's motion on this topic, if the government files one.

B.

In Count Two, Plaintiffs allege that the mandate and related guidance violate their § 1107's informed-consent rights "to the extent [they] mandate the EUA BioNTech Vaccine, or permit the administration of the EUA vaccine." SAC ¶ 114. The mandate is not facially invalid under § 1107 because, as Plaintiffs acknowledge, "the DOD Mandate itself states that only FDA-licensed vaccines may be mandated." *Id.* ¶ 115. And as noted above, the court has jurisdiction to consider only facial challenges here. To the extent Plaintiffs contend the military is misapplying the mandate—or requiring EUA vaccines that the mandate says it may not—those would be as-applied claims beyond this court's jurisdiction.

The same is not true for Plaintiffs' challenge to the Armed Services Guidance. Plaintiffs have alleged that these are policies that authorize forced administration of EUA vaccines. They have alleged sufficient facts to state a plausible claim that the policies are therefore facially invalid under § 1107. Count Two will not be dismissed.

### C.

The third cause of action alleges that the Armed Services Guidance violates the mandate. But Plaintiffs have identified no authority that would suggest a cause of action. This claim will be dismissed.

### D.

The fourth, fifth, sixth, and seventh causes of action allege claims against the FDA. As explained above, the court lacks jurisdiction over these claims.[5]

## CONCLUSION

The motion to dismiss (ECF No. 65) is GRANTED in part. The claims against HHS and FDA are dismissed for lack of jurisdiction. Counts Four, Five, and Six are also dismissed for lack of jurisdiction. And as-applied claims against the military defendants are dismissed for lack of jurisdiction. Counts One is dismissed, as set out above. And Count Three is dismissed.

---

[5] The sixth cause of action primarily targets FDA's decisions relating to interchangeability, but it alleges in a single paragraph that "[t]he DOD and the Armed Services are similarly violating these statutes insofar as they mandate, or permit pursuant to the mandate, providers to administer the EUA BioNTech Vaccine 'as if' it were the licensed Comirnaty Vaccine." SAC ¶ 144. To the extent this allegation includes a claim that the DOD is *permitting* certain things the policies do not facially require, it is an as-applied challenge over which the court lacks jurisdiction. See above. And to the extent Plaintiffs allege that the military violated § 706(2)(C) of the APA (*see* SAC ¶ 136), they have not provided facts to support a plausible claim. At any rate, although not a separate basis to dismiss as to the military, I note that the claim that military policies required forced-EUA vaccines is captured in Count Two, which is not dismissed.

If Plaintiffs seek leave to amend, they must do so within 14 days. If they do not move for leave to amend within 14 days, then Defendants must file an answer within 21 days of the date of this order. If Plaintiffs timely move to amend, Defendants need not answer the current complaint until the motion to amend is resolved.

The motions for leave to file amicus briefs (ECF Nos. 66, 84, 99) are GRANTED, and the amicus briefs are accepted.

The motion for joinder (ECF No. 72) is DENIED without prejudice. Plaintiffs may refile a joinder motion addressing any changed circumstances.

The clerk will terminate ECF Nos. 88 and 91, which were resolved at the September 2 hearing. The motion to compel (ECF No. 89) is DENIED.

The motion for an evidentiary hearing (ECF No. 120) is DENIED. The motion for leave to file a reply (ECF No. 125) is DENIED as moot.

SO ORDERED on November 7, 2022.

s/ *Allen Winsor*  
United States District Judge
