**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| **BENJAMIN COKER, *et al.*** ) | |
| **_Plaintiffs_,** ) | |
| **vs.** ) | **CIVIL ACTION NO.** |
| ) | **3:21-cv-01211-AW-HTC** |
| **LLOYD AUSTIN, III, *et al.*,** ) | |
| **_Defendants_.** ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED AND**
**SUPPLEMENTAL COMPLAINT AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 15(a) and 15(d), Local Rule 15.1,

and this Court's November 8, 2022 order ("November 8 Order"), ECF 126, Plaintiffs

move for leave of the Court to file the attached Third Amended and Supplemental

Complaint ("TAC"), to replace the operative Second Amended Complaint ("SAC"),

ECF 56, which was accepted for filing effective December 10, 2021. ECF 55. Today,

Plaintiffs withdrew their pending November 29, 2022 motion to file. ECF 136.

The legal landscape and public policy consensus have shifted dramatically in

Plaintiffs' favor in the fifteen months since the SAC was filed. The most significant

events occurred after the issuance of the November 8 Order and all occurred after

the March 31, 2022 deadline for amendments set by the Court's February 23, 2022

scheduling order, ECF 70 (though some pre-SAC facts were discovered prior to the

deadline). These subsequent events provide good cause for, and the interests of

justice require, this Court to grant Plaintiffs' motion to file the TAC.

<u>**STATEMENT OF FACTS**</u>

## I.   RESCISSION OF THE MILITARY VACCINE MANDATE

On December 23, 2023, President and Commander-in-Chief Joseph R. Biden signed the Fiscal Year 2023 National Defense Authorization Act ("2023 NDAA"), which was enacted by over 80% in the House and Senate, that "rescind[ed]" the August 24, 2021 Department of Defense ("DOD") COVID-19 vaccine mandate ("DOD Mandate"). By rescinding the DOD Mandate, Congress instructed Courts and Defendants that the 2023 NDAA should be applied retroactively to render the DOD Mandate, and any orders issued pursuant thereto, null and void *ab initio*. "A rescission is a restoration of the status quo—an attempt to put the parties in the same place they were before the transaction occurred." *Davenport v. Thor Motor Coach, Inc.*, 661 Fed. Appx. 997, 999 (11th Cir. 2016). Military Defendants must therefore remedy all adverse actions taken against Plaintiffs and service members and "completely and irrevocably eradicate[] the effects of the" rescinded mandates. *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). This has not occurred.

Congress' action was surely motivated, at least in part, by factual and legal developments that turned the tide of public and elite opinion against the mandates and were highlighted by members in debating the 2023 NDAA. *First,* the scientific and public policy consensus shifted nearly 180 degrees from where they were in August 2021. The manufacturers and the expert public health agencies have

acknowledged that the FDA-licensed vaccines long ago became obsolete and ineffective; the manufacturers ceased production of FDA-licensed products nearly a year ago. In August 2022 the CDC recommended no longer differentiating between the vaccinated and unvaccinated, while, the U.S. government, the sole customer and payor, ceased all purchases of the mandated, monovalent vaccines. *See* TAC, Section III.A. *Second*, Military Defendants suffered a string of legal defeats, with district courts issuing nation-wide injunctions against three of the four Armed Services that remain in effect to this day based on findings that the Services' mandates were likely unlawful due to systematic violations of service members' religious liberties. *Third*, the DOD Mandate has had disastrous effects on military readiness, retention, and recruiting, resulting in the loss of up to 100,000 service members and disqualifying 40-50% of likely recruits. *See* TAC, Section III.B.

In the SAC, Plaintiffs challenged the legal and rational basis for the Military Mandates and asked this Court to find that these orders were arbitrary, capricious and contrary to law. In the 2023 NDAA, Congress answered these questions. The August 24, 2021 DOD Mandate is not only unlawful, but a legal nullity that must be undone from the beginning to restore the pre-Mandate *status quo*. Despite Congress' clear directive, the pre-Rescission mandates live on and continues to have adverse legal effects. The TAC challenges Defendants' post-Rescission orders and policies that defy Congress' directive in the 2023 NDAA and other federal laws.

## II.    DEFENDANTS' FAILURE TO FULLY RESCIND MANDATES AND TO RESTORE PRE-MANDATE *STATUS QUO*

On January 10, 2023, Secretary Austin issued a memorandum formally rescinding the August 24, 2021 DOD Mandate. *See* TAC, Ex. 1. Each of the Armed Services subsequently issued their respective rescission orders. *See* TAC, Section III. D. & ECF 135-1 – ECF 135-5 (Armed Services Rescission Orders). But they have not fully rescinded the mandates or complied with Congress' directive to restore the pre-Mandate *status quo*. *See generally* TAC, Section III.E.

*First*, Secretary Austin's January 10, 2023 rescission memo retains other pre-Rescission restrictions and retains or reenacts a substantially similar *de facto* mandate that permits commands to take vaccination status into account in making assignment, deployment and operational decisions. Such broad, sweeping language "allow[s] the [military] to do just about anything it wants short of punishing [Plaintiffs] and drumming them out of service," *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305–06 (2022) (Alito, J., dissenting), while asserting that any such decisions are immune from judicial review.

Subsequent guidance issued February 24, 2023 purports to eliminate this *de facto* mandate, but the Air Force, Army and National Guard have not implemented this guidance. The Navy is the only Service that has addressed the issue, and in NAVADMIN 038/23, *see* ECF 135-2, unequivocally directs commanders to take vaccination status into account in making deployment and operational decisions. The

DOD has not issued the revisions to DOD Instruction 6205.02 requiring formal DOD approval for commands to take vaccination status into account in making assignment, deployment and operational decisions. The *de facto* mandates authorized by Secretary Austin largely remain in place. *See* TAC, Section III.E.

*Second*, Defendants continue to maintain that despite rescission, the DOD Mandate and all orders issued pursuant thereto were and remain lawful orders; that service members like Plaintiffs who did not take the vaccines disobeyed a lawful order in violation of the Uniform Code of Military Justice ("UCMJ"); and that their unvaccinated status may be the basis for denial of promotions, assignments or deployments, involuntary discharge, or even prosecution under the UCMJ. *See* TAC Section III.E; Ex. 10, Partial Transcript of Feb. 28, 2023 House Armed Services Committee ("HASC") Hearing; Ex. 11, DOD Under-Secretary Cisneros Feb. 27, 2023 Response to HASC.

*Third*, while Defendants have stated that they will take corrective actions, they have not taken any actions whatsoever for most Plaintiffs or restored anyone to where they were pre-Mandate. Nor is there is any reason to believe that Defendants will take corrective actions in the future because Defendants have insisted throughout this litigation that "no Plaintiff has been subject to final disciplinary action for non-compliance," ECF 107, Aug. 22, 2022 DF Supp. Br., at 9, and that no

Plaintiff has suffered any "final adverse actions" at all. *See* ECF 115, Aug. 29, 2022 Hearing Tr., at 71:1. In their view, there is nothing to correct.

But all Plaintiffs have in fact suffered adverse employment or disciplinary actions, up to and including involuntary separation, forced retirement or constructive discharge; removal from command or reassignment; denial of promotions, assignments, training, or permanent change of station ("PCS"); negative evaluations or fitness reports, letters of reprimand or counseling, or other negative paperwork; non-judicial punishment under the UCMJ; severe travel and personal liberty restrictions; discriminatory, arbitrary, and hostile treatment; and denial of fundamental religious liberties. Many have suffered permanent damage to their careers and reputations. *See generally* TAC, Section VI; Ex. 2, Plaintiffs' March 2023 Status Chart; and Ex. 3, March 2023 Plaintiff Declarations. Moreover, all currently serving Plaintiffs remain subject to separation or discharge, or prosecution under the UCMJ, for non-compliance with a rescinded order.

Further, so long as they are deemed to be "refusers" who have disobeyed a lawful order, their commands may take their vaccination status into account to penalize them in assignment, deployment, and operational decisions. The COVID-19 mRNA treatments are no longer on the list of required shots for members of the military in Appendix D of AR 40-562. Congress' action removed them as if they had

never been put there in the first place. There should no longer be any adverse actions or consideration of whether they taken a vaccine stricken from the list.

## III.   AMENDED AND SUPPLEMENTAL FACTS IN THE TAC

Below Plaintiffs have set forth a summary and timeline of the events that occurred and facts discovered after the December 10, 2021 SAC filing date, the March 31, 2022 Amendment Deadline, the August 29, 2022 hearing and supplemental briefing, or the November 8, 2022 Order that are included in the TAC.

### December 10, 2021 SAC Filing – March 31, 2022 Amendment Deadline

1. **Obsolescence & Ineffectiveness of mRNA Products Against Omicron.** On January 10, 2022, Pfizer's CEO acknowledged that the mandated two-dose regimen of COMIRNATY® provided little, if any, protection against the dominant Omicron variant and that Pfizer/BioNTech were developing a new Omicron-specific formulation. *See* TAC, Section III.A. & ECF 68, PL Opp'n to DF Mot. to Dismiss, at 41.

2. **FDA Waivers & "Enforcement Discretion."** Plaintiffs first learned that Defendant FDA purported to exercise its "enforcement discretion" to waive mandatory, statutory requirements or prohibitions regarding product labeling, including informed consent requirements in the EUA factsheet, in Defendants January 14, 2022 Motion to Dismiss, ECF 65, and the attached declaration of FDA official Peter Marks. *See* TAC, Section V.B. & ECF 65-14, Marks Decl., ¶¶ 11-13.

### March 31, 2022 Amendment Deadline – August 29, 2022 Hearing

3. **Mandate of Moderna EUA Product & Interchangeability Directive.** The Military Defendants could not mandate the Moderna EUA product until at the earliest May 3, 2022, when the Moderna Interchangeability Directive was issued directing that the Moderna EUA product should be used "interchangeably" with, and mandated "as if", it were the FDA-licensed SPIKEVAX®. *See* TAC, Ex. 4. It is undisputed that the Military Defendants did not have any "Spikevax-labeled" products at this time and that only EUA-labeled Moderna products were available. *See* TAC, Section II.C. Accordingly, any challenge to the mandate of

Moderna products prior to May 3, 2023 would have been premature and unripe, so that Plaintiffs could not have shown good cause to amend the SAC.

4. **Mandate of "Comirnaty-labeled" Pfizer/BioNTech Products.** It is undisputed that Military Defendants did not obtain any "Comirnaty-labeled" product (the "FW Lots") until June 2022 at the earliest and that they mandated EUA-labeled products continuously from the issuance through the rescission of the mandates. Beginning in June 2022, Military Defendants directed all unvaccinated service members who, like Plaintiffs, objected to taking an unlicensed product, to take the new "Comirnaty-labeled" products. *See generally* TAC, Section II.D.

5. **Evidence "Comirnaty-labeled" Pfizer/BioNTech Product Unlicensed.** Because Military Defendants did not have any "Comirnaty-labeled" products until June 2022, Plaintiffs could not have obtained any evidence regarding these products until after that date. Plaintiffs and Plaintiffs' counsel expended significant time and effort, from June 2022 through September 2022, to determine whether these products were in fact FDA-licensed. Plaintiffs obtained official records and other evidence that these products were not manufactured in an FDA-approved facility, which rendered them unlicensed and misbranded. Plaintiffs' claims are supported by publicly available records; review of the access-restricted CDC website; Freedom of Information Act ("FOIA") requests; information from and correspondence with military whistleblowers; and the previously non-public, official records filed by Defendants themselves, in particular, the declarations of FDA official Suzanne Burk. *See generally* TAC, Section II.D. & record materials cited therein.

6. **Manufacturer Abandonment of "Monovalent" mRNA Products.** Based on a review of the CDC website, Pfizer/BioNTech manufactured its last lot of COMIRNATY® in February 2022, and Moderna manufactured its last lot of SPIKEVAX® in April 2022. These facts combined with the decision by the U.S. Government to no longer purchase these products suggest that these products will never be produced or purchased again, and thus is no longer available in any quantity now that the FW Lots have expired. *See* TAC, Section III.A.

7. **CDC Admission That "Monovalent" mRNA Products Obsolete and Ineffective Against Omicron.** On August 11, 2022, the CDC finally caught up with Pfizer and acknowledged that the mRNA Products provided little, if any, protection from Omicron and that, because these products could not prevent infection or transmission, COVID-19 mitigation strategies should not differentiate based on vaccination status. *See* TAC, Section III.A. & ECF 106-6, Aug. 11, 2022 CDC Summary of Guidance.

8. **U.S. Government Abandonment of Monovalent mRNA Products.** On August 16, 2022, the U.S. Government, which is the sole customer and payor for COVID-19 vaccines, announced that it would no longer purchase or provide reimbursement for the "monovalent" mRNA Products, including COMIRNATY® and SPIKEVAX®, and going forward would purchase only "bivalent" mRNA Products. *See* TAC, Section III.A. & ECF 117, Sept. 9, 2022 PL Response to DF Mot., at 4 & ECF 117-2.

9. **Defense Counsel Admissions at August 29, 2022 Hearing.** Defendants' counsel made several significant admissions in the hearings, in particular, confirming that: (1) Defendants' policy has from the outset been to mandate EUA-labeled vaccines, which contradicted their statements at the November 3, 2021 hearing on which this Court's November 12, 2021 Order, ECF 47, was based; (2) Defendants have in fact punished service members for refusing to take an EUA vaccine; and (3) abandoning their previous defense that the Military Mandates were limited to so-called "BLA-compliant" doses. *See* ECF 115, Aug. 29, 2022 Hearing Tr., at 27:20-21 & 31:11-12.

### August 29, 2022 Hearing – November 8, 2022 Order

10. **Availability of "Spikevax-labeled" Vaccines.** As of the date of the August 29, 2022 hearing and related briefing, Military Defendants claimed only that SPIKEVAX® was "available to order", ECF 107-16, Rans Decl., ¶ 4, but did not assert that they had any in their possession. It was not until the October 18, 2022 filing that Military Defendants stated that they had SPIKEVAX® in their possession that could have been administered to service members. *See* ECF 124-1, Oct. 18, 2022 Rans Decl., Ex. A.

11. **Misbranded "Bivalent" EUA Products.** Defendants' October 18, 2022 response revealed for the first time, in official records and sworn testimony, that Military Defendants had obtained "bivalent" EUA products (the "G Lots"), which they described such unlicensed, EUA products as "Comirnaty-labeled, BLA-approved" products. *See* ECF 124-1, Oct. 18, 2022 Rans Decl., ¶ 4 & Ex. A. The bivalent products have never been licensed, use a different formulation, cannot be labeled as FDA-licensed COMIRNATY®, and therefore cannot be mandated. Defendants' counsel did not dispute these points and dismissed Plaintiffs' concerns that they would nevertheless be mandated as "pure speculation" at the September 2, 2022 Hearing. *See* ECF 116, Sept. 2, 2022 Hearing Tr., at 48:22-49:6. (On November 28, 2022, Defendants submitted a declaration from Colonel Rans in a related proceeding, *Bazzrea v. Austin*, No. 3:22-cv-265 (S.D. Tex.), where she stated that the G Lots were "incorrectly listed

… as Comirnaty," and are instead "lots of other COVID-19 vaccines." Defendants have not brought Colonel Rans' material misstatement in her October 18, 2022 declaration to this Court's attention in the nearly five months since it was filed.)

12. **Misbranding of All FW Lots.** After the September 2, 2022 Hearing, Plaintiffs obtained additional official records and other information confirming that all of the FW Lots of "Comirnaty-labeled" products were unlicensed and misbranded because they were manufactured at a facility that was not FDA-approved at the time of manufacture, lot release, or delivery to Military Defendants. Plaintiffs discovered this information through their own independent investigation and sought to bring this evidence before the Court as expeditiously as possible. Plaintiffs sought leave to file this information in reply to Defendant October 18, 2022 Response, *see* ECF 125, but the Court denied this request as moot in the November 8, 2022 Order.

13. **Mandate of Expired or Adulterated FW Lots.** All FW Lots expired no later than October 31, 2022, yet Defendants sought to mandate these expired and likely adulterated products up until the mandates were rescinded. Plaintiffs included some of this information in their September 26, 2022 motion for evidentiary hearing and sought to submit the evidence of systematic violations in the reply. They have provided this information in the TAC and the declaration of the Plaintiff Nickolas Kupper. *See* TAC, Section II.D. & Ex. 6, MSGT Nickolas Kupper Nov. 29, 2022 Declaration.

### November 8, 2022 Order – March 17, 2023

14. **December 23, 2023 Enactment of NDAA 2023 Rescinding Mandate.** On December 23, 2022, President Biden signed into law the 2023 NDAA, which was enacted into law by veto-proof majorities in the House of Representatives (350-80) and the Senate (83-11). Section 525 of the 2023 NDAA directed Secretary of Defense Lloyd Austin, III to "rescind" the August 24, 2021 DOD Mandate. H.R. 7776, Pub. L. No. 117-263, 136 Stat. 2395 (2022).

15. **January 10, 2023 Formal Rescission of DOD Mandate.** Secretary Austin's Rescission Memo formally rescinded the August 24, 2021 DOD Mandate. Secretary Austin further directed that existing restrictions should be retained or adopts a substantially similar *de facto* mandate, directing that "[o]ther standing Departmental policies, procedures, and processes regarding immunization remain in effect," which includes "the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making

deployment, assignment, and other operational decisions …" TAC, Ex. 1, Jan. 10, 2023 Secretary Austin Rescission Memo, at 2.

16. **January 2023 Formal Rescission of Armed Services Mandates.** Each of the Armed Services issued an order or memorandum rescinding their own mandates and otherwise implementing Secretary Austin's January 10, 2023 Rescission Memo. *See* TAC, Section III.D.

17. **February 28, 2023 HASC Hearing and Testimony.** The Under-Secretaries for the DOD and the Armed Services testified in a February 28, 2023 hearing before the House Armed Services Committee that the military deems the service members who did not comply with the now-rescinded mandate to have disobeyed a lawful order for which they may be involuntarily discharged, without regard to their sincerely held religious objections; refused to rule out criminal prosecutions under the UCMJ for such refusal; and that the Services will not require and have not established any specific procedures for reinstating or compensating service members who have been discharged. *See* TAC, Section III.E., Ex. 10, Partial Transcript of Feb. 28, 2023 Hearing; Ex. 11, Feb. 27, 2023 DOD Under-Secretary Cisneros HASC Response.

18. **January 10, 2023 – Present: Failure To Take Any Corrective Actions.** As set forth in TAC Exhibit 2, March 2023 Plaintiff Status Chart, and Exhibit 3, Plaintiffs' March 2023 Declarations, Defendants have not corrected previous adverse actions, restored the pre-Mandate *status quo*, or returned Plaintiffs to the position in which they would have been absent the unlawful mandates.

## LEGAL STANDARD

**Rule 15(a) Amendments.** Rule 15(a)(2) permits a party to amend its pleading with the Court's leave, which should be "freely give[n] … when justice so requires." Leave should be granted unless there is "a justifying reason … for denial," *Moore v. Baker,* 989 F.2d 1129, 1131 (11th Cir.1993), such as "undue delay, bad faith, or dilatory motive on the part of the movant...." *Datastrip Int'l. Ltd. v. Intacta Techs., Inc.*, 253 F.Supp.2d 1308, 1318 (N.D. Ga. 2003) ("*Datastrip*"). "[L]eave to amend should only be denied on the ground of futility when the proposed amendment is

clearly insufficient or frivolous on its face." *Taylor v. Fla. State Fair Auth.,* 875 F.Supp. 812, 815 (M.D.Fla.1995).

**Rule 15(d) Supplements.** Under FRCP Rule 15(d) "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "[C]courts customarily have treated requests to supplement under Rule 15(d) liberally" because they enable:

> a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay, and waste of separate actions which must be separately tried and prosecuted. … [Amendments] ought to be allowed as of course, unless some particular reason for disallowing them appears....

*W. Ala. Women's Ctr. V. Miller,* 318 F.R.D. 143, 148 (M.D. Ala. 2016) (citations omitted). *See also Harris v. Garner*, 216 F.3d 970, 984 (11th Cir.2000) (noting "the liberal allowance of amendments or supplements to ... pleading under Rule 15").

The Rule "is intended to give the court broad discretion in allowing a supplemental pleading," Fed. R. Civ. P. 15(d) Advisory Committee's Note to 1963 Amendment, provided that the supplemental facts occurred after the filing date and there is "some relation" with pleading being supplemented. *Miller*, 318 F.R.D. at 147 (citation omitted). Supplementation may include not only new facts, but new claims and new parties. *See, e.g., Griffin v. Cty. Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 227 (1964) ("*Griffin*").

Where a Court has dismissed claims or parties based on jurisdictional defects, it should freely grant leave to amend or supplement to address those jurisdictional defects. "Only when the affidavits show that the pleader cannot truthfully amend to allege subject matter jurisdiction should the court dismiss without leave to replead." Charles Alan Wright et al., 5B Fed. Prac. & Proc., § 1350. Motion to Dismiss— Lack of Jurisdiction Over the Subject Matter nn.55-58 (3d ed. Mar. 2023 Update) (collecting cases) ("Wright & Miller").

**Rule 16(b) Good Cause Showing.** Where a motion to amend or supplement is filed after the deadline for amendments set forth in the Court's Rule 16 Scheduling Order, a party must demonstrate good cause under Rule 16(b). *See Smith v. Sch. Bd. of Orange County*, 487 F.3d 1361, 1366 (11th Cir. 2007) (Rule 15(a) amendment); *McGrotha v. Fed Ex Ground Package Sys., Inc.*, No. 5:05-CV-391(CAR), 2007 WL 640457, at *6 (M.D. Ga. Feb. 24, 2007) (Rule 15(d) supplement).

"Rule 16(b) does not define good cause, but the advisory committee note indicates that good cause exists if the schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Green Island Holdings, LLC v. Brit. Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 800 (11th Cir. 2013) (citation omitted). "[G]ood cause exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." *Donahay v. Palm Beach Tours & Transp.,*

*Inc.,* 243 F.R.D. 697, 699 (S.D. Fla. 2007) ("*Donahay*"). "[T]he Eleventh Circuit and other district courts have held that potential prejudice to an opposing party bears little weight in the good cause analysis …" *Walsh v. Chubb*, No. 4:20-CV-00510-HNJ, 2020 WL 8175594, at \*6 (N.D. Ala. Oct. 21, 2020) (collecting cases). *See also Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000) ("*Moyer*") ("prejudice ... is immaterial" in determining whether good cause has been established under Rule 16).

## **ARGUMENT**

### I.   **JUSTICE REQUIRES AND GOOD CAUSE SUPPORTS GRANTING PLAINTIFFS' MOTION TO FILE THE TAC.**

Justice requires and good cause supports granting Plaintiffs' motion to amend and supplement their claims to comply with the Court's November 8 Order and to address events that occurred long after the SAC was filed.

All of the transactions, occurrences and events underlying Plaintiffs' amended and supplemental claims against Military Defendants happened after the March 31, 2022 deadline and the most significant occurred after the issuance of the November 8 Order, namely: the January 10, 2023 formal rescission of the mandate; Military Defendants' post-Rescission retention of pre-existing restrictions and (re)enactment of a substantially similar *de facto* mandate; Military Defendants' defiance of Congress' rescission by continuing to insist that non-compliance with the rescinded mandate constitutes disobeying a lawful order; that the military may involuntarily

discharge or prosecute unvaccinated service members under the UCMJ; and their failure to take corrective actions to remedy harms suffered by Plaintiffs to restore the pre-Mandate *status quo ante*. *See* TAC Section III.C-III.E & *supra* Facts 14-18. Plaintiffs' challenges to these post-Rescission policies and orders are set forth in TAC Counts 1, 2, and 5, all of which stem from SAC Count 1.

### TAC Count 1: Post-Rescission Orders & Policies Violate 2023 NDAA

TAC Count 1 is a post-Rescission supplemental claim stemming from SAC Claim 1, which challenged the lawfulness of the rescinded August 24, 2021 mandate. TAC Count 1 arises from Military Defendants' violations Congress' express directive in the 2023 NDAA to fully rescind the August 24, 2021 mandate and their generally applicable post-Rescission orders and policies.

Congress' rescission directive requires that: (1) the August 24, 2021 mandate and all orders issued thereto are rendered null and void *ab initio*; (2) Defendants restore the pre-Mandate *status quo* and return Plaintiffs and other service members to the position in which they would have been absent the unlawful mandate; and (3) Defendants, consistent with their mootness arguments, "completely and irrevocably eradicate[] the effects of the" mandates, *Cty. of Los Angeles*, 440 U.S. at 631.

As set forth in the TAC, Military Defendants' post-Rescission orders and policies violate the 2023 NDAA insofar as they retain pre-Rescission restrictions (or reenact substantially similar restrictions); insist that the mandates and all orders

issued and adverse actions taken thereto were and remain lawful orders; that service members who failed to comply with such orders had disobeyed a lawful order in violation of the UCMJ; that such service members may still be involuntarily discharged and/or prosecuted under the UCMJ; and refuse to restore Plaintiffs and other service members to the position in which they would have been absent the unlawful mandates.

### TAC Count 2: Post-Rescission Orders & Policies Violate APA

TAC Count 2 closely tracks SAC Count 1, which facially challenged the August 24, 2021 DOD mandate and Armed Services implementation thereof under the APA, supplemented by facts discovered and events that occurred after the March 31, 2022 Amendment Deadline. SAC Count 1 requested that this Court determine whether the August 24, 2021 DOD Mandate and Armed Services Guidance were lawful. Congress has answered that question: they are not and must be undone from the beginning.

TAC Count 2 challenges as arbitrary, capricious, and otherwise contrary to law Military Defendants' post-Rescission orders and policies that continue to give legal effect to an order that Congress rendered a legal nullity.

*First,* the post-Rescission orders and policies are contrary to law because they violate Congress' directive in the 2023 NDAA, as well as the military's own

vaccination regulations by mandating a product that cannot be a "vaccine" as defined in DODI 6205.02.

*Second*, Military Defendants' continued enforcement of and threatened punishment for non-compliance with the pre-Rescission requirements is arbitrary and capricious because it is contrary to the current scientific and public policy consensus that the mandated, FDA-licensed products are now obsolete and ineffective. *See* TAC, Section III.A. & *supra* Facts 1 (January 2022 evidence of obsolescence against Omicron) & 6-8 (public health agency and manufacturer consensus).

*Third*, Military Defendants have enforced and punished service members where compliance with the mandate was not possible due to the unavailability of FDA-licensed products and the mislabeling, misbranding, misidentification and/or expiration of the limited inventory of "Comirnaty-labeled" products. *See* TAC Section II.C.-II.D. & *supra* Facts 4-5 (June 2022 availability and evidence that FW Lots misbranded) & Facts 11-13 (misbranding/misidentification of FW and G Lots and expiration of FW Lots).

**TAC Count 3: Armed Services EUA Mandate Violates 10 U.S.C. § 1107a**

TAC Count 3 amends and supplements SAC Count 2, in accordance with the Court's findings in the November 8 Order that the August 24, 2021 DOD Mandate itself did not mandate EUA products. TAC Count 3 alleges that the Armed Services'

implementation of the DOD Mandate, in conjunction with the DOD Interchangeability Directives, "authorize[d] the forced administration of EUA vaccines", ECF 126, November 8 Order, at 17. TAC Count 3 supplements SAC Count 2 to reflect the Military Defendants' administrative record materials (which had not been fully reviewed or not been made until after the amendment deadline); admissions by Defendants' counsel that Defendants in fact mandated all EUA vaccines as if they were FDA-licensed; and Defendants' abandonment of the previously asserted defense that the mandate was limited to EUA-labeled, "BLA-compliant" doses. *See* Fact 9.

### TAC Count 4: Armed Services EUA Mandates Are *Ultra Vires*

TAC Count 4 alleges that DOD and Armed Services officials and officers of the United States acted *ultra vires* by issuing the September 14, 2022 Pfizer/BioNTech Interchangeability Directive, *see* TAC, Ex. 4, and the May 3, 2022 Moderna Interchangeability Directive. *See* TAC, Ex. 5, and by relying on these directives to treat EUA products as legally interchangeable with FDA-licensed products that could be mandated "as if" they were FDA-licensed products.

TAC Count 4 mirrors TAC Claim 3 and SAC Claim 2, alleging that the same conduct violated the same statutory violations (*i.e.*, violations of 10 U.S.C. § 1107a, FDCA, PHSA, and FDA regulations). These actions were necessarily *ultra vires* because no statute authorized DOD Assistant Secretaries of Defense Adirim and

Mullen to override Secretary Austin's directive and 10 U.S.C. § 1107a to mandate EUA products.

TAC Count 4 seeks non-statutory review of Defendant officials' *ultra vires* actions, rather than APA review, in the event that the Court determines that one or more of the challenged actions are not "final" agency actions. *See also* ECF 68, Feb. 4, 2022 PL Opp'n, at 37-38. Claims seeking review of non-final *ultra vires* actions by agency officials and officers of the United States are reviewable and are not barred by sovereign immunity where, as here, these federal officers have acted outside the scope of their authority. *See, e.g., Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 & n.11 (1949).

**TAC Count 5: Armed Services EUA Mandate Violates APA**

TAC Count 5 also stems from SAC Claim 1, which alleged that the DOD Mandate and the Armed Services implementation are arbitrary and capricious insofar as they mandate EUA products. Consistent with the Court's finding in the November 8, 2022 Order that the DOD Mandate did not mandate EUA products, TAC Count 4 challenges the Armed Services implementation of the DOD Mandate, in conjunction with the DOD Interchangeability Directives. Defendants' actions are arbitrary and capricious post-Rescission for the same reasons as they were pre-Rescission, namely, that they constitute an unexplained and unannounced departure from long-standing policy not to mandate EUA products without Presidential

authorization that has been in place continuously since the 2005 nation-wide injunction and consent decree adopted in *John Doe No. 1 v. Rumsfeld*, 2005 WL 774857 (D.D.C. Feb. 6, 2005) through at least July 2021. The EUA Mandate is also contrary to law because it violates the express requirements of DOD's currently effective EUA regulation, DOD Instruction 6200.02, which guarantees service members' right to refuse EUA products and has been in place continuously since 2008. *See generally* TAC, Section I.

**TAC Count 6: FDA Interchangeability Guidance Violates Federal Law**

TAC Count 6 is largely the same as SAC Count 6. The principal difference is that Plaintiffs have cured the jurisdictional effect that caused the Court to dismiss as moot all Plaintiffs' claims in the SAC against the FDA, *i.e.*, because Plaintiffs did not challenge the approval of SPIKEVAX®. *See* ECF 126, November 8 Order, at 10-11. In the TAC, Plaintiffs have dropped their challenge to the FDA's improper approval of COMIRNATY® and do not challenge FDA's SPIKEVAX® approval.

Instead, Plaintiffs challenge the FDA's Interchangeability Guidance for the two products, *i.e.*, the August 23, 2021 guidance that the Pfizer/BioNTech EUA product is interchangeable with FDA-licensed COMIRNATY® and the January 31, 2022 guidance that the Moderna EUA product is interchangeable with the FDA-licensed SPIKEVAX®. *See* TAC, Section V.A.

While the FDA first issued the Moderna interchangeability guidance on January 31, 2022, Military Defendants could not have attempted to mandate the Moderna EUA product until at the earliest May 3, 2022, the date when a DOD official issued the Moderna Interchangeability Directive, *see* TAC, Ex. 5, several weeks after the March 31, 2022 Amendment Deadline.

Plaintiffs could not have been required to take any Moderna EUA product (or any FDA-licensed SPIKEVAX®, which was not available until September 2022) until that date. Accordingly, any challenge to the FDA's action would have been dismissed as unripe. Accordingly, the supplement to SAC Claim 6 to challenge the FDA's Interchangeability Guidance arises from events that did not occur until after the March 31, 2022 Amendment Deadline and cures the jurisdictional defect identified in the Court's November 8, 2022 Order.

**TAC Count 7: FDA Waivers Violate Mandatory Statutory Requirements**

TAC Count 7 supplements SAC Count 6, which challenged both the FDA's interchangeability guidance and related violations of federal laws governing labeling and informed consent. Plaintiffs have broken out these distinct statutory violations into a separate TAC Count 7 for the sake of clarity and to reflect the post-SAC admissions by FDA official Peter Marks that the FDA's actions regarding the Pfizer/BioNTech EUA product were not authorized by federal law and that the FDA had exercised its "enforcement discretion" to waive of statutory labeling and

21

informed consent requirements. *See* TAC, Section V.B. & *supra* Fact 2 (discussing Peter Marks January 14, 2022 testimony).

TAC Count 7 supplements and clarifies the allegations in SAC Count 6 and the Plaintiffs' February 4, 2022 response to Defendants' motion to dismiss, *see* ECF 68 at 48-49 ("Plaintiffs Challenge FDA Labeling Non-Enforcement"), by: (1) clarifying Plaintiffs' allegations regarding the FDA's violation of mandatory statutory requirements regarding product labeling, including the mandatory EUA factsheet informing service members of their informed consent rights; (2) refuting the FDA's defense that it was authorized to take these actions through the exercise of "enforcement discretion," ECF 65-14, Marks Decl., ¶¶ 11-13; and (3) alleging that the FDA Waiver and related actions also render the product labeling false and misleading in violation of federal laws prohibiting misbranding.

**TAC Count 8: FDA Interchangeability Guidance & Waivers *Ultra Vires***

TAC Count 8 restates the non-statutory *ultra vires* claims made in the SAC, which was elaborated in more detail in Plaintiffs' February 4, 2022 opposition to Defendants' motion to dismiss. *See* ECF 68 at 44-49. TAC Count 8 alleges that this conduct violates the same statutes as the FDA Interchangeability Guidance and FDA Waivers. Plaintiffs have plead this claim in the alternative, alleging *ultra vires* actions by specific FDA officials and officers of the United States, in particular,

FDA official Peter Marks, in the event that the Court determines that these actions are not "final" agency actions reviewable under the APA.

### SAC Claims Dismissed as Required by November 8 Order

Consistent with the Court's November 8, 2022 Order, the TAC does not include any "as-applied" claims against DOD from SAC Count 1, and drops altogether SAC Count 3 against the Armed Services, and Counts 4, 5, and 7 against the FDA. *See* November 8 Order at 17-18.

## II.   ALL POLICY CONSIDERATIONS FAVOR GRANTING LEAVE TO FILE THIRD AMENDED AND SUPPLEMENTAL COMPLAINT.

### A.   Granting Leave to File Permits the Court to Completely Adjudicate Claims and Provide Complete Relief in One Action.

The purpose of Rule 15(d) "is to promote as complete an adjudication of the dispute between the parties as is possible", Wright & Miller § 1504, because it permits the court "to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay, and waste of separate actions which must be separately tried and prosecuted." *Miller,* 318 F.R.D. at 148 (citation omitted).

Granting Plaintiffs' motion to file the TAC furthers these goals by supplementing the SAC with the transactions, occurrences, and events that happened after the filing of the SAC and modifying or adding claims against Defendants in light of these subsequent facts and avoid filing a new complaint. All of Plaintiffs' supplemental facts and claims concern or arise from events that occurred after the

SAC was filed, the most significant of which occurred after the November 8 Order was issued, and provide additional evidence in support of existing claims or address post-Rescission events.

### B.  Justice Requires Granting Plaintiffs Leave to File TAC.

In Section I above, Plaintiffs have demonstrated that there is good cause to permit Plaintiffs' proposed amendments to address pre-SAC facts that were discovered after the March 31 Deadline. The Eleventh Circuit "expresses a strong preference that cases be heard on the merits, and strives to afford a litigant his or her day in court, if possible." *Perez v. Wells Fargo NA*, 774 F.3d 1329, 1342 (11th Cir. 2014) (citations omitted) (cleaned up). Granting Plaintiffs' motion to file the TAC would achieve that purpose.

### C.  Granting Leave Required to Cure Jurisdictional Defects.

In the November 8 Order, this Court dismissed as moot all claims against the FDA based on events that occurred after the filing of the SAC. Plaintiffs have amended SAC Count 6 to cure this jurisdictional defect by challenging the May 3, 2022 Moderna Interchangeability Directive, which provided the legal basis for Defendants to mandate EUA Moderna products and could not have been challenged prior to that date.

Where there are jurisdictional defects, "leave to amend should be freely given" unless it would be "futile", *i.e.*, where even an amended complaint would not

survive motion to dismiss. *U.S. ex rel. Schubert v. All Children's Health System, Inc.*, 941 F.Supp.2d 1332, 1334 (M.D. Fla. 2013). *See also Mimbs v. Commercial Life Ins. Co.*, 818 F.Supp. 1556, 1559 (N.D. Ga. 1993) (the court "may grant leave to amend a complaint to cure jurisdictional defects"); Wright & Miller § 1350 nn.55-58 (collecting cases). Good cause supports permitting to supplement their claim to address the May 3, 2022 Moderna Interchangeability Guidance and FDA Waivers, and they meet the lower standards required under Rule 15(a) and Rule 15(d).

### D.   Granting Leave Would Not Result in Undue Prejudice or Delay.

Defendants would not face undue prejudice or delay by virtue of granting leave to file the TAC. *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) (discussing undue prejudice being a factor in whether to grant a motion to amend). Defendants have not filed an answer; the deadline for dispositive motions has not passed; nor have they even begun to produce the FDA administrative record. Discovery is similarly not a factor because Defendants have not provided any, and the Court has not required them to do so. Nor would granting Plaintiffs' motion result in undue prejudice or delay. But even if did, such "prejudice ... is immaterial" in determining whether good cause has been established under Rule 16. *Moyer*, 146 F. Supp. 2d at 1252

## III.   THE COURT SHOULD NOT ADDRESS OR RULE ON MOOTNESS BEFORE RULING ON THE INSTANT MOTION.

### A.   Plaintiffs' Claims Are Not Moot.

Defendants' position is that Rescission has rendered this entire case moot. *See* ECF 134, Mar. 17, 2023 Joint Status Report, at 2. In the TAC, Plaintiffs have demonstrated that it is not because Defendants have defied Congress' directive by refusing to fully rescind the August 24, 2021 DOD Mandate, and the orders issued pursuant thereto, by retaining existing restrictions or reenacting substantially similar *de facto* mandates; adopting generally applicable policies to continue enforcing and punishing pre-Rescission non-compliance; threatening future punishment and prosecution under the UCMJ for violations of the rescinded mandate; and refusing to restore the pre-Mandate *status quo*. Moreover, Plaintiffs have presented sworn declarations demonstrating their ongoing injuries and Defendants' failure to correct the adverse actions taken against them or to return them to the position in which they would have been absent the unlawful mandates.

Accordingly, there is still a live controversy between the parties. Plaintiffs continue to have a legally cognizable interest in judicial resolution of the dispute, and this Court may still grant meaningful injunctive and declaratory relief as set forth in the TAC. *See* TAC, Relief Requested. Moreover, this Court's declaratory judgments finding that Defendants' actions unlawful would have preclusive effect for subsequent claims in the Court of Federal Claims for backpay, financial

compensation, reinstatement, correction of military records, or denied promotions. Finally, Defendants' actions are not moot because they are capable of repetition, yet evading review, and under the voluntary cessation exception to mootness because Defendants have failed to "completely and irrevocably eradicate[] the effects of their" violations. *Cty. of Los Angeles*, 440 U.S. at 631.

## B. Mootness Must Be Addressed Separately from Instant Motion, and Court Cannot Dismiss Without a Hearing or Permit Discovery.

The standards for amending or supplementing a complaint under Rule 15 are distinct from those for mootness. Accordingly, Plaintiffs' motion to file the SAC must first be addressed and briefed separately from any motion to dismiss for mootness that Defendants intend to file, based on the facts alleged in the operative complaint (*i.e.*, the TAC if accepted, rather than the SAC). Fairness and due process further require that Plaintiffs at a minimum be given the opportunity to see and respond to the mootness arguments Defendants may present and for the Court to consider Plaintifffs' response.

Here, Plaintiffs' theory of the case is predicated on allegations, supported by record evidence, that Defendants' have unlawfully taken (and will continue to take) adverse actions against them on the basis of their COVID-19 vaccination status. Defendants attempt to refute these critical, merits-based allegations by submitting ever-changing and contradictory departmental-level orders that formally rescind vaccination requirements, without any evidence that they have in fact done so. *See*

ECF 135, Mar. 17, 2023 DF Notice. Defendants' promises to take corrective actions are meaningless because, in their view, no Plaintiff has suffered any final adverse actions, so there is nothing to correct. Plaintiffs, by contrast, have repeatedly submitted actual evidence of their injuries and Defendants' ongoing discriminatory actions in sworn testimony by competent witnesses who experienced it.

Plaintiffs should be afforded an opportunity for a hearing or limited discovery before the Court simply accepts Defendants' factually unsupported view of these central and disputed merits questions. *See, e.g., Williamson v. Tucker*, 645 F.2d 404, 412-414 (5th Cir. 1981). Defendants' mootness arguments require the Court to rule on the merits of Plaintiffs' claims; fundamental fairness dictates Plaintiffs have some opportunity to discovery or hearing, even if limited to jurisdictional issues, to test Defendants' factual contentions. *Williamson*, 645 F.2d at 414.

## **<u>CONCLUSION</u>**

Plaintiffs respectfully move for the Court to accept for filing Plaintiffs' Third Amended and Supplemental Complaint, effective March 27, 2023.

Dated: March 24, 2023                    Respectfully submitted,

*s/ Brandon Johnson*
Brandon Johnson
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
Tel. 214-707-1775
Email: bcj@defendingtherepublic.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion and memorandum is 7,100 words or less according to Microsoft Word's word count function.

*/s/ Brandon Johnson*

## CERTIFICATE OF CONFERENCE

The undersigned conferred with Defendants' counsel by email on March 16-17, 2023, and shared a near final draft of the amended complaint on March 23, 2023. Defendants have not taken a position on the motion.

*/s/ Brandon Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing via CM/ECF on March 24, 2023, which notifies counsel of record of the filing.

*/s/ Brandon Johnson*