## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

**BENJAMIN COKER,** *et al.***,**

                         Plaintiffs,

    v.

**LLOYD AUSTIN, III, in his official
capacity as Secretary of Defense,** *et al.***,**

                         Defendants.

Case No. 3:21-cv-01211-AW-HTC

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................ 1

BACKGROUND ................................................................ 3

I.      DoD's Former COVID-19 Vaccination Requirement. ................................3

II.     Federal Regulation of and Guidance Concerning COVID-19
        Vaccines, and DoD Acquisition of COVID-19 Vaccines. ...........................4

III.    The Rescission. .............................................................7

IV.     Plaintiffs' Status..........................................................10

V.      Procedural History .........................................................12

LEGAL STANDARDS ........................................................14

ARGUMENT...................................................................15

I.      Plaintiffs have Failed to Demonstrate the Court's Subject-Matter
        Jurisdiction over their Claims. ..............................................15

        A.      Plaintiffs Lack Standing to Challenge "Post-Rescission
                Vaccination Orders," and the Court should Dismiss Claims 1-2. ......18

        B.      The Court Should Dismiss Plaintiffs' Challenges to the
                Rescinded Vaccination Requirement as Moot.................................21

        C.      Plaintiffs Lack Standing to Raise Informed Consent Claims for
                Additional Reasons. .........................................................26

        D.      Challenges to FDA Actions Should be Dismissed For Lack of
                Jurisdiction. ...............................................................29

                1.      Interchangeability............................................29

                2.      Enforcement Discretion. ...................................31

II.     Plaintiffs' Claims for Equitable Relief Interfere with Internal Military
        Affairs and Fail to Survive Mindes Scrutiny. .............................34

A.    Plaintiffs' Claims for Discretionary Relief are Not Appropriate Because Plaintiffs Have Not Exhausted Adequate Alternative Intraservice Remedies. .......................................................35

B.    The Mindes Factors Weigh Against Review. ...................................38

    i.    First Mindes Factor: Nature and Weakness of Plaintiffs' Claims ..............................................................................39

    ii.    Second Mindes Factor: Potential Injury ...........................41

    iii.    Third and Fourth Mindes Factors: Interference with Military Discretion and Expertise.....................................42

III.    Plaintiffs Cannot Otherwise Proceed on their Claims.................................43

A.    Counts 1-3 and 5-7 Should Be Dismissed Because the APA Does Not Authorize Plaintiffs' Programmatic Attacks......................43

B.    Counts 4 and 8 Should be Dismissed Because Nonstatutory Review is Unavailable. ...................................................................48

C.    The Court Should Dismiss the NDAA Claims for Additional Reasons.........................................................................................53

D.    Informed Consent Claims Should Be Dismissed for Additional Reasons.........................................................................................55

E.    Claims Against FDA Should be Dismissed For Additional Reasons.........................................................................................59

CONCLUSION ..............................................................................................62

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*A.L. Pharma, Inc. v. Shalala*,
   62 F.3d 1484 (D.C. Cir. 1995)............................................................61

*Adler v. Duval Cnty. Sch. Bd.*,
   112 F.3d 1475 (11th Cir. 1997) ......................................................17

*Al Najjar v. Ashcroft*,
   273 F.3d 1330 (11th Cir. 2001) .................................................17, 22

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ......................................................................43

*Allen v. Wright*,
   468 U.S. 737 (1984) ......................................................................50

*Alvarado v. Austin*,
   No. 1:22-cv-876 (AJT/JFA), 2022 WL 18587373 (E.D. Va. Nov. 23, 2022),
   *appeal filed*, No. 23-1419 (4th Cir. Apr. 7, 2023) ...............................39

*Alvarado v. Austin*,
   No. 1:22-cv-876 (AJT-JFA),
   2023 WL 2089246 (E.D. Va. Feb. 17, 2023) .............................23, 37

*Alvarez v. Lackland Area Mass Transit Dist.*,
   2019 WL 2868943 (M.D. Fla. July 3, 2019)......................................53

*Andrews v. HHS*,
   No. 04-0307 (JR), 2005 WL 4826342 (D.D.C. Apr. 13, 2005) .........................47

*Animal Legal Def. Fund v. USDA*,
   789 F.3d 1206 (11th Cir. 2015) ......................................................30

*Antunes v. Rector & Visitors of Univ. of Va.*,
   No. 3:21-CV-00042, 2022 WL 4213031 (W.D. Va. Sept. 12, 2022)..................31

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................15

*Ass'n of Am. Physicians & Surgeons v. FDA*,
   2020 WL 5745974 (6th Cir. Sept. 24, 2020) .....................................................31

*Ass'n of Flight Attendants-CWA v. Chao*,
   493 F.3d 155 (D.C. Cir. 2007) ...............................................................37, 49

*Austin v. Metro Dev. Grp., LLC*,
   No. 8:20-cv-1472-T-60TGW,
   2020 WL 5543805 n.2 (M.D. Fla. Sept. 16, 2020) .............................................15

*Austin v. U.S. Navy SEALs 1-26*,
   142 S. Ct. 1301 (2022)............................................................................26, 37

*Barr v. Matteo*,
   360 U.S. 564 (1959) ......................................................................................60

*Bates v. Donley*,
   935 F. Supp. 2d 14 (D.D.C. 2013) .......................................................57, 58, 59

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp. Fin., Inc.*,
   502 U.S. 32 (1991) ................................................................................48, 49

*Bennett v. Spear*,
   520 U.S. 154 (1997) ......................................................................................44

*Biden v. Texas*,
   142 S. Ct. 2528 (2022)....................................................................................46

*Bishop v. Reno*,
   210 F.3d 1295 (11th Cir. 2000) .......................................................................14

*Changji Esquel Textile Co. v. Raimondo*,
   40 F.4th 716 (D.C. Cir. 2022)....................................... 48, 49, 51, 52.53,  passim

*Chappell v. Wallace*,
   462 U.S. 296 (1983) ................................................................................37, 49

iv

*Children's Health Def. v. FDA*,
No. 21-6203, 2022 WL 2704554 (6th Cir. July 12, 2022),
*cert. denied*, 143 S. Ct. 784 (2023) ................................................................30

*Christoffersen v. Wash. State Air Nat'l Guard*,
855 F.2d 1437 (9th Cir. 1988) ...............................................................41, 42

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ..............................................................................33

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...............................................................................17

*City of Oxford v. FAA*,
428 F.3d 1346 (11th Cir. 2005) ...............................................................61

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................18, 19, 20

*Clark Est. Co. v. Gentry*,
240 S.W.2d 124 (Mo. 1951) ..................................................................55

*Coal. for Mercury-Free Drugs v. Sebelius*,
671 F.3d 1275 (D.C. Cir. 2012) ...............................................................28

*Col. Fin. Mgmt. Off. v. Austin*,
--- F. Supp. 3d ---, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022),
*appeal filed sub nom.*, *Chief Warrant Off. 4 v. Sec'y of the U.S. Dep't of Def.*,
No. 22-13522 (11th Cir. Oct. 18, 2022) ....................................................39

*Common Cause v. Biden*,
748 F.3d 1280 (D.C. Cir. 2014) ...............................................................16

*Cook v. FDA*,
733 F.3d 1 (D.C. Cir. 2013) ....................................................................34

*Coral Springs St. Sys., Inc. v. City of Sunrise*,
371 F.3d 1320 (11th Cir. 2004) ...............................................................17

*Cotterall v. Paul*,
  755 F.2d 777 (11th Cir. 1985) ..........................................................................17

*Cousins v. Sec'y of the U.S. Dep't of Transp.*,
  880 F.2d 603 (1st Cir. 1989)............................................................................47

*Crosby v. Austin*,
  No. 8:21-cv-2730, 2022 WL 2291244 (M.D. Fla. June 24, 2022).....................40

*Crosby v. Austin*,
  No. 8:21-cv-2730-TPB-CPT,
  2022 WL 603784 (M.D. Fla. Mar. 1, 2022)..................................................28, 40

*Darby v. Cisneros*,
  509 U.S. 137 (1993) .........................................................................................37

*Doe #1–#14 v. Austin*,
  572 F. Supp. 3d 1224 (N.D. Fla. 2021)..................................................28, 30, 31

*Doe v. Rumsfeld ("Rumsfeld I")*,
  297 F. Supp. 2d 119 (D.D.C. 2003) ..............................................................57, 58

*Doe v. Rumsfeld ("Rumsfeld II")*,
  341 F. Supp. 2d 1 (D.D.C. 2004) ......................................................................57

*Doe v. Rumsfeld ("Rumsfeld III")*,
  No. CIV.A. 03-707 (EGS), 2005 WL 774857 (D.D.C. Feb. 6, 2005)................58

*Doe v. Rumsfeld ("Rumsfeld IV")*,
  172 F. App'x 327 (D.C. Cir. 2006)....................................................................58

*Doster v. Kendall*,
  54 F.4th 398 (6th Cir. 2022), *denying reh'g*,
  2023 WL 2966353 (6th Cir. Apr. 17, 2023)......................................................39

*Fisher v. United States*,
  402 F.3d 1167 (Fed. Cir. 2005)..........................................................................43

*Florida v. Dep't of Health & Hum. Servs.*,
  19 F.4th 1271 (11th Cir. 2021) ..........................................................................40

*Focus on the Family v. Pinella Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) ........................................................16

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ........................................................................46

*Griffith v. Fed. Labor Rels. Auth.*,
    842 F.2d 487 (D.C. Cir. 1988)........................................................51

*Guthrie v. Transamerica Life Insurance Co.*,
    561 F. Supp. 3d 869 (N.D. Cal. 2021) ..........................................36

*Hand v. Desantis*,
    946 F.3d 1272 (11th Cir. 2020) ......................................................17

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ................................................................33, 46

*Henley v. FDA*,
    77 F.3d 616 (2d Cir. 1996) .............................................................61

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) ....................................................35, 36

*Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*,
    641 F.3d 1259 (11th Cir. 2011) ......................................................16

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) ......................................................15

*Hoxsey Cancer Clinic v. Folsom*,
    155 F. Supp. 376 (D.D.C. 1957) ....................................................60

*Hyatt v. Austin*,
    No. 8:22-cv-1188, 2022 WL 2291660 (M.D. Fla. June 24, 2022)....................40

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004) .......................................................47

*Jaimes v. United States*,
   168 F. App'x 356 (11th Cir. 2006) ....................................................36

*Kawa Orthodontics, LLP v. U.S. Dep't of the Treasury*,
   773 F.3d 243 (11th Cir. 2014) .........................................................16

*Keister v. Bell*,
   29 F.4th 1239 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1020 (2023) ...............17

*Kreis v. Sec'y of Air Force*,
   866 F.2d 1508 (D.C. Cir. 1989) .......................................................43

*Kuang v. U.S. Dep't of Def.*,
   778 F. App'x 418 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 2565 (2021) ...........40

*Langston v. Tex. Cap. Bank, Nat'l Ass'n*,
   No. 8:20-cv-2954-VMC-AAS,
   2021 WL 698171 (M.D. Fla. Feb. 23, 2021).......................................14

*Las Americas Immigrant Adoc. Ctr. v. Biden*,
   571 F. Supp. 3d 1173 (D. Or. 2021)...................................................50

*Log Cabin Republicans v. United States*,
   658 F.3d 1162 (9th Cir. 2011) .........................................................22

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................16

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .....................................................43, 44, 47, 50

*M.T.V. v. DeKalb Cnty Sch. Dist.*,
   446 F.3d 1153 (11th Cir. 2006) .......................................................36

*Mark Short v. Berger*,
   593 F. Supp. 3d 944 (C.D. Cal. 2022),
   *appeal dismissed*, 2022 WL 2421096 (9th Cir. May 17, 2022).........................41

*McCurdy v. Zuckert*,
   359 F.2d 491 (5th Cir. 1966) .........................................................36

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ................................................................34, 35, 38

*Morrison v. Amway Corp.*,
    323 F.3d 920 (11th Cir. 2003) ........................................................................14

*N.H. Fire Ins. Co. v. Virgil & Frank's Locker Serv., Inc.*,
    302 F.2d 780 (8th Cir. 1962) ..........................................................................55

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*,
    437 F.3d 1256 (D.C. Cir. 2006) ......................................................................51

*Navy SEAL 1 v. Austin*,
    Nos. 22-5114, 22-5135, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023) .............22

*NeSmith v. Fulton*,
    615 F.2d 196 (5th Cir. 1980) ..........................................................................41

*Norris v. Stanley*,
    558 F. Supp. 3d 556 (W.D. Mich. 2021) ..........................................................28

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ...................................................................................43, 45

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ...................................................................48, 49

*Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11*,
    393 U.S. 233 (1968) .......................................................................................51

*Oklahoma v. Biden*,
    577 F. Supp. 3d 1245 (W.D. Okla. 2021) ........................................................40

*Orloff v. Willoughby*,
    345 U.S. 83 (1953) .........................................................................................26

*Pac. Maritime Ass'n v. NLRB*,
    827 F.3d 1203 (9th Cir. 2016) ........................................................................49

*Pinnacle Armor Inc. v. United States*,
   648 F.3d 708 (9th Cir. 2011) ............................................................................33

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
   87 F.3d 1242 (11th Cir. 1996) .........................................................................47

*Puerto Rico v. United States*,
   490 F.3d 50 (1st Cir. 2007).............................................................48, 49, 50

*Reaves v. Ainsworth*,
   219 U.S. 296 (1911) ..........................................................................................41

*Rendon v. U.S. Att'y Gen.*,
   972 F.3d 1252 (11th Cir. 2020) ......................................................................54

*Rich v. Sec'y, Fla. Dep't of Corr.*,
   716 F.3d 525 (11th Cir. 2013) ................................................................17, 21

*Roth v. Austin*,
   62 F.4th 1114 (8th Cir. 2023) .........................................................................22

*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) .....................................................................37

*Shurtleff v. City of Boston*,
   142 S. Ct. 1583 (2022).....................................................................................60

*Sierra Club v. Van Antwerp*,
   526 F.3d 1353 (11th Cir. 2008) ......................................................................41

*Speigner v. Alexander*,
   248 F.3d 1292 (11th Cir. 2001) ...............................................................*passim*

*Stanley v. Broward Cnty. Sheriff*,
   773 F. App'x 1065 (11th Cir. 2019) ..............................................................17

*Stinson v. Hornsby*,
   821 F.2d 1537 (11th Cir. 1987) ......................................................................35

*Tinnerman v. United States*,
    No. 21-14023, 2022 WL 3654844 (11th Cir. Aug. 25, 2022),
    *cert. denied*, ---S. Ct.---, 2023 WL 3046157 (U.S. Apr. 24, 2023) ....................17

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).................................................................................16

*U.S. ex rel. Hunt v. Cochise Consultancy, Inc.*,
    887 F.3d 1081 (11th Cir. 2018), *aff'd*, 139 S. Ct. 1507 (2019). ........................55

*United States v. Schwarzbaum*,
    24 F.4th 1355 (11th Cir. 2022) .............................................................47

*United States v. Stanley*,
    483 U.S. 669 (1987) ...........................................................................34

*Vartelas v. Holder*,
    566 U.S. 257 (2012) ...........................................................................54

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
    714 F.3d 186 (4th Cir. 2013) ..............................................................45

*Webster v. Doe*,
    486 U.S. 592 (1988) ...........................................................................33

*Weiland v. Palm Beach Cnty Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ......................................................48, 53

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ...........................................................................34

*West v. Brown*,
    558 F.2d 757 (5th Cir. 1977) ..............................................................41

*Wilt v. Gilmore*,
    62 F. App'x 484 (4th Cir. 2003) .........................................................38

*Winck v. England*,
    327 F.3d 1296 (11th Cir. 2003) ..........................................35, 36, 37, 38

*Wise v. Inslee*,
No. 2:21-cv-0288, 2022 WL 1243662 (E.D. Wash. Apr. 27, 2022),
*appeal dismissed* No. 22-35426, 2022 WL 17254335 (9th Cir. Oct. 7, 2022)....31

*Woodard v. Marsh*,
658 F.2d 989 (5th Cir. 1981) ...........................................................................41

## CONSTITUTION

U.S. Const. art. II, § 2, cl. 2....................................................................................43

## STATUTES

5 U.S.C. § 551(13) ..................................................................................................43

5 U.S.C. § 701(a)(2) ................................................................................................30

5 U.S.C. § 706 .........................................................................................43, 45, 47

10 U.S.C. § 1107a ...................................................................................................13

10 U.S.C. § 1552 .....................................................................................................36

10 U.S.C. § 1552(a)(1)......................................................................................36, 37

21 U.S.C. § 360bbb-3 .....................................................................................*passim*

21 U.S.C. § 375(b) ..................................................................................................60

21 U.S.C. § 381(a) ..................................................................................................34

42 U.S.C. § 242*o*(b) ...............................................................................................60

42 U.S.C. § 262 ...........................................................................................4, 59, 60

Pub. L. No. 117-263, § 525, 136 Stat. 2395 (2022) ............................................. 7

## LEGISLATIVE

168 Cong. Rec. H9425, H9441 (daily ed. Dec. 8, 2022) ......................................55

## RULES

Federal Rule of Civil Procedure 12 ............................................................14, 15, 36

## REGULATIONS

*Amended Determination of a Public Health Emergency or Significant Potential for a Public Health Emergency Pursuant to Section 564(b) of the Federal Food, Drug, and Cosmetic Act*, 21 U.S.C. § 360bbb-3(b)
    88 Fed. Reg. 16644 (March 20, 2023) ............................................................... 5

Biological Products; Bacterial Vaccines & Toxins;
    Implementation of Efficacy Review,
    69 Fed. Reg. 255, 260 (Jan. 5, 2004) ...............................................................57

EUA Declaration, 85 Fed. Reg. 18,250 (Apr. 1, 2020)........................................... 5

## OTHER AUTHORITIES

CDC, *Expiration Dating Extensions, COVID-19 Vaccines,*
    https://perma.cc/VJ3C-V2V5....................................................................27

Charles A. Wright & Arthur R. Miller,
    33 Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.)......................................50

Consolidated Department of Defense Coronavirus Disease 2019 Force Health
    Protection Guidance – Revision 1 (June 29, 2022),
    https://perma.cc/UK6U-5CF6...................................................................25

COVID-19 vaccines by BioNTech & Pfizer Expiry Tool
    https://lotexpiry.cvdvaccine.com/...............................................................27

FDA, Comirnaty Approved Prescribing Information (revised Aug. 2021),
    https://perma.cc/P87N-YGX2................................................................... 5

FDA, *COVID-19 Vaccines*,
  https://perma.cc/V7MR-E358 .............................................................................. 5

FDA, *News Release- Coronavirus (COVID-19) Update: FDA Authorizes
  Emergency Use of Novavax COVID-19 Vaccine, Adjuvanted*
  https://perma.cc/AV9E-DJFZ (Novavax vaccine EUA) (July 13, 2022) ............. 5

FDA, *News Release – FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021),
  https://perma.cc/C4DD-PWE5.............................................................................. 5

FDA, *News Release-FDA Issues Emergency Use Authorization for Third COVID-
  19 Vaccine,*
  https://perma.cc/U2BJ-TR8S (Jannsen vaccine EUA) (Feb. 27, 2021) ............... 5

FDA, *News Release- FDA takes Additional Action in Fight Against COVID-19 By
  Issuing Emergency Use Authorization for Second COVID-19 Vaccine,*
  https://perma.cc/9A9L-RYMV (Moderna vaccine EUA) (Dec. 18, 2020) .......... 5

*FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use
  Authorization for First COVID-19 Vaccine*,
  https://perma.cc/6HEG-C6VV (Dec. 11, 2021) ................................................... 5

*Press Release: FDA Takes Key Action by Approving Second COVID-19 Vaccine*
  (Jan. 31, 2022), https://perma.cc/A72Z-FPFF .................................................... 6

*Product Details for Comirnaty*,
  https://purplebooksearch.fda.gov/ productdetails?query=125742 ....................... 6

RESCIND, Black's Law Dictionary (11th ed. 2019)..............................................54

RESCIND, Merriam-Webster Dictionary,
  https://www.merriam-webster.com/dictionary/rescind......................................54

RESCIND, Merriam-Webster Thesaurus,
  https://www.merriam-webster.com/thesaurus/rescind......................................54

RESCISSION, Black's Law Dictionary (11th ed. 2019) ......................................55

Sec'y of Def. Mem. (Aug. 24, 2021),
  https://perma.cc/N759-S758 .............................................................................. 4

# INTRODUCTION

Plaintiffs originally brought this action to prevent the Armed Services from discharging them for failing to be vaccinated against COVID-19 because they believed any order to vaccinate would be unlawful. Congress has now afforded Plaintiffs the very relief they sought. Congress directed the rescission of the COVID-19 vaccination requirement for the Armed Services, and the Department of Defense ("DoD") and the Services have faithfully implemented that directive. Defendants promptly rescinded the vaccination requirement and are removing adverse actions from the files of those service members who previously sought exemptions from the requirement. In light of the rescission and the evolving pandemic, Defendants have also issued updated guidance regarding COVID-19 mitigation that does not differentiate based on COVID-19 vaccination status.  Not a single Plaintiff is subject to a COVID-19 vaccination requirement and not a single Plaintiff will have a record of adverse action based on violation of the former requirement; nor can any Plaintiff show that such action is certainly impending. The few Plaintiffs who have previously voluntarily separated from the military are free to apply to rejoin and their vaccination status has no bearing on their ability to do so.

Accordingly, Plaintiffs lack standing to challenge the now-defunct vaccination directive and lack standing to challenge some imaginary future vaccination directive that they posit could be directed at them. There is no further

relief the Court could order with respect to the defunct vaccination directive, with respect to the prior DoD implementing guidance that previously permitted use of "emergency use authorization" ("EUA") labelled vaccines for mandatory vaccination, or with respect to hypothetical future vaccination directives. Scrambling to maintain a lawsuit after receiving all of the relief they originally sought, Plaintiffs now claim they suffer various consequences related to their vaccination status, but there are no consequences plausibly caused by the vaccination requirement or redressable by this Court.

Plaintiffs lack standing to sue the Food and Drug Administration ("FDA") for the same reasons and more.   Plaintiffs challenge FDA statements that health care providers could use certain EUA-authorized vaccines interchangeably with the corresponding approved vaccines made by the same manufacturer.  But that factually and medically true statement from FDA never caused the injury allegedly imposed by the DoD vaccination requirement, and certainly does not continue to cause any injury.  A court order vacating that statement would not redress any injury either. Similarly, Plaintiffs purport to challenge FDA's exercise of enforcement discretion regarding lots of EUA-labelled vaccine that were manufactured in conformance with the approved Biologics License Application for Comirnaty ("BLA-compliant" doses). That is not an action subject to judicial review, and those doses, long since used or expired, are not plausibly causing any injury redressable by this Court.

Plaintiffs' claims for equitable relief — particularly demands to be awarded specific military assignments or promotions — are not justiciable claims in this Circuit.

Plaintiffs fail to state a claim for relief for additional reasons. First, Plaintiffs' claims under the Administrative Procedure Act ("APA") fail to identify discrete, final agency action being challenged and instead launch broadside, programmatic attacks against whole swaths of agency action, like unidentified "post-rescission orders" or general "implementation" of the mandate. The APA does not permit such claims. Second, Plaintiffs cannot evade APA requirements by pleading nonstatutory "*ultra vires*" claims. Each of the claims as pled fails to state a claim on the merits as well.

The Court should grant Defendants' motion to dismiss this action.

## BACKGROUND

### I.   DoD's Former COVID-19 Vaccination Requirement.

The deadly viral disease COVID-19 began spreading in the United States in early 2020 and rapidly wrought disruptions on the armed forces and caused the deaths of many unvaccinated service members. *See* ECF No. 65-16 ¶¶ 3–13. Following the development of safe and effective COVID-19 vaccines, and to protect service members' health and operational readiness, on August 24, 2021, the Secretary of Defense directed the military departments to ensure that service

members were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758; 3d Am. Compl. ¶ 56, ECF No. 141 ("TAC"). Only vaccines that have received licensure from FDA were required, in accordance with FDA guidance. TAC ¶ 56. The Services implemented that directive by, among other things, requiring commanders to initiate separation proceedings for soldiers who refused to be vaccinated. *See* ECF Nos. 65-8 through 65-12 (Service policies), 65-17 through 65-24 (declarations); TAC ¶ 57. Consistent with existing policies, each Service issued implementing guidance, and permitted service members to seek medical, religious, or administrative exemptions from the vaccination requirement based on individual circumstances. *Id.*

## II.   Federal Regulation of and Guidance Concerning COVID-19 Vaccines, and DoD Acquisition of COVID-19 Vaccines.

FDA has authority to review and approve "biological products," including vaccines. *See* 42 U.S.C. § 262(a)(1), (i)(1). In an emergency, FDA may issue an EUA, which authorizes the marketing of vaccines (and other FDA-regulated products) "intended for use" in responding to the emergency, provided certain statutory criteria are met. 21 U.S.C. § 360bbb-3.

In March 2020, the Secretary of the Department of Health and Human Services ("HHS") determined that "circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19

pandemic." EUA Declaration, 85 Fed. Reg. 18,250, 18,250-51 (Apr. 1, 2020).[1] Based on that determination, FDA issued an EUA for a COVID-19 vaccine developed by Pfizer, as well as later EUAs for COVID-19 vaccines developed by other manufacturers.[2] These EUAs have been updated multiple times to adjust approved uses and formulations. *See generally* FDA, *COVID-19 Vaccines*, https://perma.cc/V7MR-E358.

On August 23, 2021, Pfizer's COVID-19 vaccine, under the name Comirnaty, obtained FDA approval for active immunization to prevent COVID-19 in individuals 16 years of age and older. FDA, *News Release – FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021), https://perma.cc/C4DD-PWE5; *see* FDA, Comirnaty Approved Prescribing Information at 12 (revised Aug. 2021), https://perma.cc/P87N-YGX2; *see also* ECF No. 65-14 ¶ 6 & Ex. A. The monovalent Pfizer vaccine approved on August 23, 2021 had the same formulation as the Pfizer vaccine previously authorized under the EUA. *Compare* Summary Basis for Regulatory Action ("SBRA") at 7-8, https://perma.cc/RR7W-QKNC, *with* EUA

---

[1] This declaration was recently amended. *Amended Determination of a Public Health Emergency or Significant Potential for a Public Health Emergency Pursuant to Section 564(b) of the Federal Food, Drug, and Cosmetic Act*, 21 U.S.C. § 360bbb-3(b). March 15, 2023. 88 Fed. Reg. 16644 (March 20, 2023).

[2] *See FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine*, https://perma.cc/6HEG-C6VV (Dec. 11, 2021); *see also* https://perma.cc/9A9L-RYMV (Moderna vaccine EUA) (Dec. 18, 2020); https://perma.cc/U2BJ-TR8S (Jannsen vaccine EUA) (Feb. 27, 2021); https://perma.cc/AV9E-DJFZ (Novavax vaccine EUA) (July 13, 2022).

Letter; ECF No. 1-6.  FDA determined that "[t]he licensed vaccine has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns."  ECF No. 1-6 at 2 n.8; TAC ¶ 136.  At the time of approval, FDA worked with Pfizer to identify those lots manufactured in compliance with the BLA; these "BLA-compliant" doses met the BLA manufacturing requirements, and were not subject to certain requirements under the EUA.  ECF No. 65-14 ¶ 13; SBRA at 27.

FDA later approved the Moderna vaccine as well.  *See Press Release: FDA Takes Key Action by Approving Second COVID-19 Vaccine* (Jan. 31, 2022), https://perma.cc/A72Z-FPFF.  It was likewise deemed interchangeable with the EUA product.  ECF No. 137-13; TAC ¶¶ 137-38.  The "monovalent" formulas of the Pfizer and Moderna vaccines remain licensed but are no longer authorized for use in the United States under an EUA, nor clinically recommended; the newer "bivalent" formulas are the subject of an EUA. *See* Ex. 4 ¶ 4 (describing current status); *see also Product Details for Comirnaty*, https://purplebooksearch.fda.gov/productdetails?query=125742.

While the August 24 memorandum only required licensed vaccine, DoD permitted service members to use any WHO-listed vaccine from any provider.  *See* Sec'y of Def. Mem.; *see also* ECF No. 89-5 ¶ 12. DoD previously had a supply of

both "BLA-compliant" and EUA vaccines. *Id*. ¶¶ 7-8. In accordance with FDA statements, DoD also determined it could use the EUA vaccines with same formulation interchangeably with the corresponding licensed vaccine. *See* ECF Nos. 137-5, 137-6. DoD's supply of the BLA-compliant and EUA-labelled monovalent vaccines have now expired. *See* ECF No. 107-16 ¶ 3. Nearly a year ago, DoD obtained a supply of the licensed, BLA-labelled vaccines. *See* ECF No. 89-5 ¶ 11; ECF No. 107-16 ¶¶ 3-4.[3] As of April 24, 2023, DoD maintains a small supply of un-expired, licensed, labelled Comirnaty (over 17,000 doses), which is currently anticipated to be used or expire by July 2023. Ex. 4 ¶¶ 4, 7. During the course of the litigation, counsel offered Plaintiffs both the BLA-compliant vaccines and BLA-labeled vaccines, both of which they were unwilling to take. *See* ECF No. 107 at 7-9 (describing offer and attaching emails).

## III. The Rescission.

On December 23, 2022, the President signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). A provision of that Act directs the Secretary of Defense to rescind the August 2021 COVID-19

---

[3] Defendants filed another declaration last fall that contained an inadvertent error, overcounting the number of licensed vaccines available. *See* ECF No. 124-1. Plaintiffs complain that Defendants failed to correct the error. *See* TAC ¶¶ 80-81. As Plaintiffs note, Defendants corrected the clerical error in another case where the same declaration was referenced, but forgot to do so here. Fortunately, Plaintiffs' counsel here are counsel in the other case and were aware of the correction, and the Court did not rely on the error in the declaration, or on the declaration at all. The error has now been corrected by Plaintiffs' filing of Col. Rans's correction and explanation, *see* ECF No. 137-8, and counsel apologizes for the oversight. *See also* Ex. 4 ¶ 12.

vaccination requirement. *See* Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022); TAC ¶¶ 95-96. In compliance with Congress's directive, on January 10, 2023, the Secretary of Defense rescinded the August 2021 COVID-19 vaccination requirement. Ex. 1; TAC ¶ 99. The rescission memorandum states that current service members who requested an exemption from the vaccination requirement may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the military Services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests" for exemption. Ex. 1. Former service members who were discharged on the sole basis that they failed to obey an order to receive a COVID-19 vaccine "may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction to their personnel records, including records regarding the characterization of their discharge." *Id*. The memorandum noted that commanders retained the ability "to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions." *Id*.

DoD has issued further guidance implementing the rescission and updating other vaccination related policies. On February 24, 2023, the Deputy Secretary of Defense issued guidance making clear that the January 10, 2023, rescission memorandum "rendered all [DoD] Component policies, directives, and guidance

implementing [the] vaccination mandates as no longer in effect as of January 10, 2023." Ex. 2; TAC ¶ 100. This includes, but is not limited to, "any COVID-19 vaccination requirements or related theater entry requirements and any limitations on deployability of Service members who are not vaccinated against COVID-19." Ex. 2.  The Deputy Secretary directed commanders to comply with foreign nation entry requirements, but has otherwise prohibited individual commanders from requiring vaccination against COVID-19 or considering a member's COVID-19 immunization status when making "deployment, assignment, and other operational decisions, absent establishment of a new immunization requirement" to be approved at the level of the Assistant Secretary of Defense for Health Affairs, which will occur "only when justified by compelling operational needs and . . . as narrowly tailored as possible." *Id*.  On January 30, 2023, the Under Secretary of Defense also updated the military's Force Health Protection Guidance to, among other things, eliminate the provision restricting travel for those not fully vaccinated to "mission-critical official travel." *See* Ex. 3 (Force Health Protection Guidance Rev. 4).

Each of the Services at issue in this case has likewise issued implementing policies, rescinding their COVID-19 vaccination requirements, halting ongoing enforcement actions, and removing adverse actions for current service members. *See* TAC ¶ 101 (incorporating by reference the Service policies); *see also* ECF No.

135 (attaching policy documents); Exs. 6-7 (USAF); Exs. 8A-8E (Navy); Exs. 8F-8G (USMC); Exs. 11-13 (Army).

## IV.   Plaintiffs' Status

No Plaintiff is subject to a COVID-19 vaccination requirement. The few Plaintiffs who had a record of adverse action based on refusal to be vaccinated have had or will have that adverse action removed from their records. Several Plaintiffs have also voluntarily left the Service or are about to leave, and none is now subject to any discipline or enforcement based on the former vaccination requirement. Similarly, none is now subject to any travel or deployment-related restrictions based on the current Force Health Protection Guidance.

Among the ten Air Force (USAF) Plaintiffs, only four (Craymer, Kupper, Snow, Cothran) had a record of adverse action for refusal to be vaccinated, and those actions have been rescinded and removed from their records in accordance with USAF policy.  *See* Ex. 5 ¶ 3-14.  Three USAF Plaintiffs (Lund, Karr, Connell) separated from the Service prior to rescission without adverse action. *See id*. ¶¶ 7-9. Lund (who was fully vaccinated) and Karr both separated voluntarily,[4] and Connell separated for medical reasons unrelated to the vaccination requirement.  No Plaintiff

---

[4] While Karr alleges that her separation was "involuntary," TAC ¶ 27, she appears to be referring to her belated attempt to push her separation to a later date, a request that was partially granted. She nonetheless requested and was granted a voluntary separation.  Ex. 5 ¶ 8.  The TAC does not allege that she has sought to re-join the Air Force.

remaining in service faces any current limitation from the Air Force on their assignment or deployability.  *See id.; see also* Exs. 2, 6-7.

Neither Navy Plaintiff has a record of adverse action. Furman retired while his religious accommodation request ("RAR") was pending, and was never required to be vaccinated. Ex. 8 ¶ 5.  Coker was counselled on the applicability of the COVID-19 requirement, but those counselling statements were removed from his file, and he has chosen to retire notwithstanding the rescission.  *See id.* ¶ 4; *see also* Exs.  8D, 8E (regarding removal of records).

Of the four Marine Corps Plaintiffs, two (Cossette, Thompson) still had pending appeals at the time of the rescission and thus were never required to be vaccinated.  *See* Ex. 8 ¶¶ 6, 9.  Thompson retired at the end of December 2022.  *Id*. Harwood and Kaltrider were subject to proceedings, but all such actions have been ended and adverse actions removed from their files.  *See id.* ¶¶7-8; *see also* Exs. 8D, 8G (regarding removal of records).[5]

Of the Army Plaintiffs, the Army reservist (Stermer) had an RAR pending at the time of rescission, and thus has no record of adverse action based on his vaccination status.  *See* Ex. 9; TAC¶ 35.  The active-duty Army Plaintiff (Sigoloff) has been subject to a number of investigations or actions not based on his vaccination

---

[5] Harwood was subject to a promotion hold, which is under review with the Secretary of the Navy. If the Secretary determines that the hold should be removed as a result of the rescission, he will promote and receive backpay.  Ex. 8 ¶ 7.

status or the now-defunct vaccination requirement, *see* Ex. 10 ¶¶ 3-21; TAC ¶33, but he has never been subject to discipline or adverse action based on his vaccination status, *see* Ex. 10 ¶ 2.  He is not currently subject to any COVID-19 vaccination requirement and is not subject to potential enforcement action for his violation of the vaccination requirement. *See id*. ¶ 2.  Sigoloff nonetheless has chosen to resign from the Army, and anticipates separation no later than August 2023. *Id.* ¶ 22.[6]  *See also* Ex. 12.

## V.    Procedural History

On October 6, 2021, sixteen service members filed suit against DoD, the Military Services, HHS, and FDA.  *See* ECF No. 1; Corrected Compl., ECF No. 6. Plaintiffs subsequently filed emergency motions for preliminary relief, requesting that the Court "stay and preliminarily enjoin Defendants from implementing the DOD's vaccine mandate." ECF No. 10 at 1; *see also* ECF No. 3.  The Court denied the motions on November 12, 2021.  ECF No. 47.  On December 10, 2021, Plaintiffs filed their Second Amended Complaint, ECF No. 56, naming 18 service members as plaintiffs.

On November 7, 2022, the Court granted in part Defendants' Motion to Dismiss.  *See generally* ECF No. 126 ("Op.").  The Court held that Plaintiffs had

---

[6] Plaintiff Sigoloff is separately pursuing claims against the Army based on the employment actions alleged in the TAC, and also in the same action seeking an injunction against the now-defunct vaccine requirement.  *See generally Sigoloff v. Austin*, 1:23-cv-00230-PTG-LRV (E.D. Va.).

alleged sufficient injury to sue FDA, but that the claims against FDA (related to the Pfizer vaccine) were moot in light of the approval of another COVID-19 vaccine. With respect to DoD, the Court dismissed any as-applied challenge to the vaccination requirement as non-justiciable, but held that Plaintiffs had standing to pursue a facial challenge to the mandate and DoD's interchangeability policy. On the merits of such claims, the Court dismissed claims that the mandate violated DoD regulations or was procedurally deficient but indicated that the claim that the mandate was arbitrary and capricious should be reviewed at summary judgment on the basis of an administrative record. And the Court did not dismiss a facial claim that the existing interchangeability guidance violated statutory informed consent requirements.

The Third Amended Complaint ("TAC") now raises eight claims (five against DoD and three against FDA). ECF No. 141. Count 1 argues that DoD's alleged "Post-Rescission Vaccination Orders" violate the statute rescinding the vaccination requirement, and Count 2 argues that such orders are "arbitrary and capricious" in violation of the APA. Count 3 argues that the now-defunct DoD vaccination requirements violated the informed consent requirements of 10 U.S.C. § 1107a by mandating an "EUA vaccine," and Count 4 argues that the vaccination requirements were "*ultra vires*" for the same reason. Count 5 argues that the now-defunct vaccination requirements were arbitrary and capricious in violation of the APA.

13

Count 6 argues that FDA's statement regarding interchangeability of certain EUA and BLA vaccines violates various statutes. Count 7 argues that FDA's alleged "waivers" – apparently referring to the exercise of enforcement discretion with respect to labelling of BLA-compliant vaccines – violate statutory requirements. Count 8 alleges that both the FDA interchangeability statements and the FDA "waivers" are *ultra vires*.

## LEGAL STANDARDS

"'Federal courts are courts of limited jurisdiction' and 'possess only that power authorized by Constitution and statute.'" *Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000) (citation omitted). Where plaintiffs fail to demonstrate a court's subject-matter jurisdiction, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1). *Langston v. Tex. Cap. Bank, Nat'l Ass'n*, No. 8:20-cv-2954-VMC-AAS, 2021 WL 698171, at *2 (M.D. Fla. Feb. 23, 2021).  Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Id.* By contrast, "[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings," and "[i]n resolving a factual

attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Id.*

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Mere "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (citation omitted). Rather, a court must disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.[7]

## ARGUMENT

**I.    Plaintiffs have Failed to Demonstrate the Court's Subject-Matter Jurisdiction over their Claims.**

The Court previously dismissed as-applied claims, leaving only facial challenges to the DoD vaccine mandate and the DoD interchangeability policy. *See* Op. at 12 (citing *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001)). Plaintiffs continue to press the challenges to the mandate and related policies, but the mandate has been rescinded, and they lack standing or such claims are moot.

---

[7] The Court may consider documents incorporated by reference into the pleading, *see Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002), and may consider government documents appropriate for judicial notice, *see Austin v. Metro Dev. Grp., LLC*, No. 8:20-cv-1472-T-60TGW, 2020 WL 5543805, at *2 n.2 (M.D. Fla. Sept. 16, 2020) (collecting cases for the proposition that "federal courts regularly take judicial notice of government documents at the motion to dismiss stage").

Plaintiffs also press challenges to what they call "post-rescission" orders, but cannot show that any plaintiff is subject to such an order.

"[T]he 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability." *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The second element of standing requires that a plaintiff allege a "causal connection between the [alleged] injury and the conduct complained of," meaning "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (citation omitted).  Even if a plaintiff adequately alleges an injury in fact, the plaintiff lacks standing if he attributes that injury to the wrong defendant.  *Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014).  As to the third element of standing, "[t]o establish redressability, 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Kawa Orthodontics, LLP v. U.S. Dep't of the Treasury*, 773 F.3d 243, 247 (11th Cir. 2014) (quoting *Lujan*, 504 U.S. at 561).  Standing is assessed as of the time of the amended complaint. *See Focus on the Family v. Pinella Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).

Moreover, "[p]laintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

"The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)).

"If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Id.* at 1336; *see also Tinnerman v. United States*, No. 21-14023, 2022 WL 3654844, at *3 (11th Cir. Aug. 25, 2022), *cert. denied*, ---S. Ct.---, 2023 WL 3046157 (U.S. Apr. 24, 2023); *Hand v. Desantis*, 946 F.3d 1272, 1275 (11th Cir. 2020); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004). Moreover, "government actors carry a lesser burden than others when they have unambiguously terminated the challenged policy." *See Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013); *Coral Springs*, 371 F.3d at 1328-29. "[W]hen a government fully repeals a challenged law, a case challenging that law is almost surely moot." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1020 (2023) (mem.). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by a continuing, present injury or real and immediate threat of repeated injury." *See Stanley v. Broward Cnty. Sheriff*, 773 F. App'x 1065, 1069 (11th Cir. 2019) (citing *Cotterall v. Paul*, 755 F.2d

777, 780 (11th Cir. 1985); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (alleged "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy"). To obtain prospective relief, a plaintiff must show a "certainly impending" future injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

### A. Plaintiffs Lack Standing to Challenge "Post-Rescission Vaccination Orders," and the Court should Dismiss Claims 1-2.

Plaintiffs assert two claims against alleged "post-rescission" actions. *See* TAC ¶¶ 102-119, 155-87. Plaintiffs lack standing to bring such claims because they have not plausibly alleged that they are subject to these hypothetical "post rescission vaccination orders," and in fact Defendants have established that they are not. Accordingly, Plaintiffs are not suffering any injury-in-fact, traceable to Defendants' "post-rescission vaccination orders" and redressable by this Court.

As explained above, DoD has rescinded the COVID-19 vaccination requirement and directed that any future COVID-19 vaccination requirements meet specific procedural and substantive conditions. *See* Exs. 1-2; *see also* TAC ¶¶ 99-103.[8]   The Services have carried that out. *See* Exs. 11-13 (Army), 8A-8E (Navy), 8F-8G (Marine Corps), 6-7 (Air Force). Plaintiffs do not allege that any Defendant

---

[8] Plaintiffs appear to believe that the February 24, 2023 memorandum promised a future revision that has not occurred with respect to future operational vaccination requirements. *See* TAC ¶ 109. In fact, the February 24 memorandum itself contained the relevant revision. *See* Ex. 2 (directing that "effective immediately" the relevant paragraph of DoDI 6205.02 "is revised.").

has imposed such a requirement in general, much less imposed it on a Plaintiff. Plaintiffs' assertion that there is a blanket "de facto" mandate caused by the discretion of individual commanders is belied by the text of the February 24 memorandum: "Other than to comply with DoD Foreign Clearance Guidance, DoD Component heads and commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions, absent establishment of a new immunization requirement in accordance with the process described below." Ex. 2. Plaintiffs do not cite a single example to the contrary.[9]

Most importantly, not a single Plaintiff claims to be injured by a "post-rescission vaccination order" or "de facto mandate". Several Plaintiffs have left the military voluntarily with clean records. Others are about to leave. They are not potentially subject to these hypothetical future vaccination orders. Those remaining in service are not subject to a COVID-19 vaccination requirement. Standing cannot

---

[9] To the extent Plaintiffs are arguing that there is a conflict between the February 24 memorandum and the earlier Secretary memorandum, *see* TAC ¶¶ 102, 110, they are mistaken. While the Secretary's January 10, 2023 memorandum permitted commanders to consider vaccination requirements in making operational decisions "as appropriate", the February 24 memorandum further restricted the circumstances in which it would be appropriate to do so. Even if Plaintiffs were correct, however, they have not plausibly alleged standing regarding hypothetical future operational decisions in which a commander could under their theory be permitted to consider vaccination status. In any event, individualized consideration of vaccination status in making operational decisions is not even arguably a "mandate" or "directive" to be vaccinated, and is not challenged in this action.

rest on a "speculative chain of possibilities," *Clapper*, 568 U.S. at 414, such as speculation that one of Plaintiffs' commands could find a "compelling operational need" for vaccination of a Plaintiff and apply to the Assistant Secretary, that the command would then receive approval to require vaccination of a Plaintiff, and then that no accommodation would be granted, and then that the other alleged defects Plaintiffs complain about would attend to such a requirement. Plaintiffs cannot show "certainly impending" future injury. *Id.*

The TAC citations to Navy guidance, TAC ¶¶ 107-08, fail to establish that any injury is certainly impending, traceable to a "post-rescission" order, or redressable by this Court. As an initial matter, there are only two Navy Plaintiffs – Coker and Furman. Furman retired before ever being required to be vaccinated (because he had a pending exemption request), and Coker is retiring effective April 30.  Ex. 8. Neither is plausibly subject to either of the cited policies or any post-rescission order to be vaccinated, and they lack standing to seek any relief whatsoever.

But even if Plaintiffs included some current Navy service member, they have misread the Navy policies. Both NAVADMIN 038/23 and NAVADMIN 065/23 expressly prohibit the consideration of vaccination status in assessing deployability. Exs. 8C, 8E. Plaintiffs claim that the "Operational Risk Management Matrix" gives commanders the option to consider vaccination status when making deployment

decisions. TAC ¶ 108. But that is contrary to the express directives of NAVADMIN 038/23, NAVADMIN 065/23, and the February 24 DoD memorandum. *See* Exs. 8C-8E. On its face, the matrix is a tool to help commanders evaluate deployment risk factors based on characteristics such as location, medical care available, and the number of unvaccinated crew members. Based on such factors, a commander may take mitigation measures: for example, additional masking, testing, and movement restrictions, or carrying additional medical supplies such as COVID-19 boosters (for voluntary use) or anti-viral medication. Thus, the matrix is not a "mandate" for vaccination, and does not cause any injury.

And again, there is no indication that the matrix or any other "post-rescission" order applies to any Plaintiff in this action, or caused them any injury, and there is no relief the Court can order.

## B. The Court Should Dismiss Plaintiffs' Challenges to the Rescinded Vaccination Requirement as Moot.

Counts 3 through 5 all purport to challenge the now-defunct DoD vaccine requirement. The military no longer has a COVID-19 vaccination requirement and, consequently, all of Plaintiffs' claims are moot. No Plaintiff is required to receive a COVID-19 vaccine (EUA, BLA, or otherwise); any request for prospective relief is moot. Moreover, Plaintiffs lack standing to seek retroactive relief because all members who submitted accommodation requests already have had any adverse actions based on vaccination status removed from their records (or will be removed

soon). *See supra* pp. 10-12; Ex. 1. The challenged August 2021 vaccine requirement has been "unambiguously terminated" at the direction of Congress, *see Rich*, 716 F.3d at 531, and no "meaningful relief" is available, *see Al Najjar*, 273 F.3d at 1336. The requests for declaratory relief are also moot. A declaration that "DOD Interchangeability Directives" or the "FDA Interchangeability Determination" or "FDA Waivers of mandatory statutory labeling" are unlawful would have no practical effect because there is no longer any COVID-19 vaccination requirement.[10] Accordingly, a judicial ruling as to whether the now-rescinded policy violated the EUA statute, the APA, or some other obligation would be an impermissible advisory opinion. *Cf. Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166–68 (9th Cir. 2011) (finding moot a challenge to the military's don't-ask-don't-tell policy when the policy was repealed by statute after judgment).

Numerous courts have already held that requests for injunctive relief are moot. Three Courts of Appeal, including the D.C. Circuit, the Eighth Circuit and two panels of the Ninth Circuit Court of Appeals, dismissed Service members' appeals from the denial of preliminary injunctions prohibiting enforcement of the military's COVID-19 vaccination requirement, finding moot those requests for injunctive

---

[10] Plaintiffs claim the interchangeability guidance remains in effect. *See* TAC ¶ 119. But the memoranda attached to the TAC state that vaccines should be used interchangeably "for the purpose of vaccinating Service members in accordance with" the August 24 Memorandum. *See* ECF Nos. 137-5, 137-6. The rescission states unequivocally that the August 24 memorandum is rescinded, and that "DoD Component policies, directives, and guidance implementing those vaccination mandates" were "no longer in effect as of January 10, 2023." *See* Ex. 2.

relief. *See Roth v. Austin*, 62 F.4th 1114 (8th Cir. 2023); *Navy SEAL 1 v. Austin*, Nos. 22-5114, 22-5135, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023) (per curiam); *Short v. Berger*, Nos. 22-15755, 22-16607 (9th Cir. Feb. 24, 2023); *Dunn v. Austin*, No. 22-15286 (9th Cir. Feb. 27, 2023). Several district courts have likewise noted that challenges to the COVID-19 vaccination requirement are moot. *See Col. Fin. Management Officer v. Austin,* No. 8:22-cv-01275-SDM-TGW (M.D. Fla. April 3, 2023) (indicative ruling that classwide claims were moot and case should be dismissed); *Alvarado v. Austin*, No. 1:22-cv-876 (AJT-JFA), 2023 WL 2089246, at *3 (E.D. Va. Feb. 17, 2023); *Chancey v. Biden*, No. 1:22-cv-110-MW/ZCB, ECF No. 32 (N.D. Fla. Feb. 14, 2023); *Clements v. Austin*, No. 2:22-2069-RMG, ECF No. 57 (D.S.C. Mar. 7, 2023).

The TAC points to involuntary separation actions, reprimands, and other adverse actions that were at one time pending with respect to some Plaintiffs, *see* TAC ¶¶ 142-45, but all separation proceedings related to Plaintiffs were halted without adverse action after the rescission, and the handful of Plaintiffs with adverse actions based on the mandate had those removed or will have them removed. *See supra* pp. 10-12; Ex. 1.  There is no further injury traceable to the mandate, and no further relief the Court can order.

The TAC argues that the military has retained the right to discipline service members who refused orders, but that reservation specifically applies only to those

service members who never sought an exemption from the vaccine directive (i.e., who disobeyed an order without excuse). *See* ECF No. 137-11; Ex. 1 ("No individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds.") All of the Plaintiffs in this action sought such an exemption. Most received no final adverse action (and now cannot); the few who had adverse action have had it removed (or will soon). No Plaintiff claims to be facing disciplinary action now. Accordingly, they lack standing to make such a claim entirely, and the claim is unripe as well.

The TAC identifies a handful of Plaintiffs as "constructively discharged," TAC ¶ 143, but all voluntarily separated or retired, and none have adverse actions in their records. *See* Ex. 8 ¶ 5 (Furman retired while exemption request was pending); *id*. ¶ 6 (Coker plans to retire April 30, 2023); *id*. ¶ 9 (Thompson retired Dec. 31, 2022, after NDAA); Ex. 5 ¶ 9 (Lund retired even though vaccinated); *id*. ¶ 8 (Karr voluntarily resigned without appealing initial RAR denial); *id*. ¶ 7 (Connell was medically retired in March 2023 for reasons unrelated to the mandate); Ex. 10 ¶ 22 (Sigoloff plans to retire in August 2023).[11] Moreover, none claims she has asked to be reinstated and been denied.

---

[11] The TAC also identifies Snow as subject to constructive discharge but he remains in service. Ex. 5 ¶ 12; TAC ¶ 143.

In addition to alleging adverse actions, Plaintiffs allege that they were previously subject to a number of travel/deployment restrictions that affected their assignments. *See* TAC ¶ 144. DoD, the Services, and individual commands previously implemented a variety of force health protection measures and COVID-19 mitigation guidance during the pandemic that imposed specific mitigation measures or restricted deployment, assignments, or travel based on vaccination status. *See, e.g.,* Consolidated Department of Defense Coronavirus Disease 2019 Force Health Protection Guidance – Revision 1 (June 29, 2022), available at https://perma.cc/UK6U-5CF6; *see e.g.*, ECF No. 65-26 (Connell was previously unable to travel due to vaccination status); Ex. 5 ¶ 6 (Dixon was temporarily re-assigned but is now back on track). These defunct mitigation measures, updated over the course of the pandemic, were not disciplinary and were not adverse. They also are not arguably vaccination requirements, and thus Plaintiffs have not even claimed they are unlawful. Thus, even if not receiving one's preferred military assignment constituted an injury, that injury is not traceable to the challenged mandate or interchangeability guidance, not redressable by the relief sought here, and wholly moot now that such deployment/travel restrictions are no longer in place. *See* Exs. 2-3. No Plaintiff faces any such restriction on their assignments related to their COVID-19 vaccination status now. *Id.*

The alleged assignment injuries are not redressable for an additional reason as well: assignment/deployment/operational decisions are not justiciable, and the Court lacks authority to order Plaintiffs into particular military billets. *See infra* Part II; *see e.g., Orloff v. Willoughby*, 345 U.S. 83, 93 (1953); *Speigner*, 248 F.3d at 1296–98; *Austin v. Navy SEALs 1-26*, 142 S. Ct. 131, 1302 (2022) (mem.) (Kavanaugh, J., concurring); *Navy SEAL 1*, No. 22-10645 (11th Cir. Mar. 30, 2022).

### C. Plaintiffs Lack Standing to Raise Informed Consent Claims for Additional Reasons.

Additional standing defects attach to the claims based on Plaintiffs' position that the mandate was unlawful in light of the unavailability of licensed vaccine. To the extent Plaintiffs allege that they were required to receive an EUA vaccine, undisputed facts show that Plaintiffs lack standing to raise this claim.  While this is a facial challenge, Plaintiffs still have to show that the Plaintiffs were actually injured by the interchangeability guidance. They are not injured by DoD guidance if they had access to licensed vaccine and chose not to receive it.

Plaintiffs were never injured by the DoD guidance because they were never refused BLA-compliant vaccine.  Plaintiffs allege that the Armed Services had only EUA COVID-19 vaccines and that BLA vaccines (*i.e.*, "Comirnaty" or "Spikevax") were not available at the time they were subject to the mandate. As previously explained, at the time of the preliminary injunction briefing in late 2021, DoD had received hundreds of thousands of BLA-compliant vaccines. *See* ECF No. 31-14. To

the extent Plaintiffs claim those doses were not at specific locations on specific dates, they also have not shown that they were unable to obtain them prior to discipline. As of May 20, 2022, DoD continued to have BLA-compliant doses available at multiple locations, and confirmed that they could be redistributed. ECF No. 89-5 ¶¶ 7-9, & Exs. C & E.  And in fact, Plaintiffs were offered BLA-compliant vaccine. ECF Nos. 96-5; 107.  In addition to the BLA-compliant vaccines, DoD previously deemed other EUA-labelled doses (of the monovalent Pfizer and Moderna vaccines) interchangeable with the corresponding licensed monovalent vaccine, but there is no plausible allegation that Plaintiffs ever sought and were refused BLA-compliant vaccine.

Even if they had previously been subject to some injury, the claims raised with respect to either the interchangeable EUA doses or the "BLA-compliant" doses are now moot because (1) those have all expired, and (2) DoD has had licensed, labelled vaccine available for nearly a year.  *See supra* pp. 6-7; Ex. 4 ¶ 4.  And of course, Plaintiffs could have obtained licensed vaccine from non-DoD sources during the last year as well.  Colonel Rans confirms that DoD has consistently had a supply of licensed vaccine since May 2022.[12] Ex. 4 ¶ 4; *see also* ECF No. 89-5 ¶ 11 (ordering

---

[12] The TAC contains confusing allegations reflecting Plaintiffs' mistaken belief that there must be something wrong with the BLA-labelled doses.  For example, Plaintiffs claim that the vaccine must have expired (apparently based on a layperson's understanding of DoD storage conditions). *See* TAC ¶¶ 72-77; ECF No. 137-7.  But the license letter permits extension of expiration dates, which have been granted in many instances. CDC, *Expiration Dating Extensions, COVID-19*

in May 2022); ECF No. 96-6 (offer to Plaintiffs in June 2022); ECF No. 107-16 ¶ 3 (availability in August 2022).

Plaintiffs were offered licensed vaccine. *See* ECF No. 107, at 7-9 (describing offer and attaching emails). The offer and refusal of licensed Comirnaty show that any harm Plaintiffs faced for non-compliance with the now-defunct vaccine requirement was not caused by the alleged unavailability of doses of BLA-licensed products in vials with BLA-approved labels. Plaintiffs ask the Court to declare that DoD should have offered a BLA-licensed vaccine from a vial with a BLA-approved label—but *they were already offered exactly that* and still refused. There is no standing under these circumstances. *See Norris v. Stanley*, 558 F. Supp. 3d 556, 559 (W.D. Mich. 2021) (no likelihood of success on EUA claim because it "would be moot" if offered the BLA-approved Pfizer vaccine); *Doe #1–#14 v. Austin*, 572 F. Supp. 3d 1224, 1234 (N.D. Fla. 2021) ("If the DOD is, in fact, administering Comirnaty . . . plaintiffs' § 1107a issue disappears."); *accord Crosby v. Austin*, No. 8:21-cv-2730-TPB-CPT, 2022 WL 603784, at *2 (M.D. Fla. Mar. 1, 2022); *cf. Coal.*

---

*Vaccines,* https://perma.cc/VJ3C-V2V5.  Lot expiration dates are publicly available, and easily confirm that these lots are not expired. *See* https://lotexpiry.cvdvaccine.com/.  DoD confirms that it tracks storage requirements for these doses, maintains ultra low temperature storage at multiple locations, and ensures that expired doses are not used. Ex. 4 ¶¶ 4-11.  In any case, Plaintiffs' allegations cannot not salvage their claims that no licensed vaccine was available for them during the mandate; Plaintiffs cannot support a facial violation of 1107a based on allegedly inadequate storage conditions. Similarly, Plaintiffs' claim that certain lots were not manufactured at an approved facility has been authoritatively refuted by Defendants on the basis of public record documents. *See* ECF No. 118-1.

*for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275 (D.C. Cir. 2012) (Kavanaugh,

J.) (explaining that availability of vaccines other than the ones to which plaintiffs

objected eliminated plaintiffs' standing).

### D. Challenges to FDA Actions Should be Dismissed For Lack of Jurisdiction.

Beyond the fact that Plaintiffs are not currently suffering any injury because

they are not required to take any COVID-19 vaccine, there are additional problems

with Counts 6-8, which purport to challenge both FDA's statement regarding

interchangeability and FDA's exercise of enforcement discretion with respect to

BLA-compliant vaccine. Even if Plaintiffs had plausibly alleged some continuing

injury caused by DoD, the DoD vaccine mandate and DoD interchangeability

guidance are not "fairly traceable" to either FDA "action," and review of either claim

is precluded.

1.    **Interchangeability**. On August 23, 2021, FDA issued a letter

authorizing emergency use of the Pfizer-BioNTech COVID-19 vaccine under

Section 564(c) of the Federal Food, Drug, and Cosmetic Act ("FDCA") (21 U.S.C.

§ 360bbb-3).  ECF No. 1-6 at 5.  FDA reissued the letter authorizing emergency use

of Moderna COVID-19 vaccine under the same statutory authority.  ECF No. 137-

13 at 8.  Count 6 challenges a few sentences in these authorization letters under the

APA. TAC ¶ 239.  Specifically, Plaintiffs challenge FDA's statements that indicated

that the EUA products could be used interchangeably with their approved

counterparts (Comirnaty or Spikevax) without presenting safety or effectiveness concerns.  *See, e.g.* ECF No. 137-13 at 3.

First, Plaintiffs lack standing to challenge this action because their alleged injuries are not fairly traceable to these statements in the EUA letters, or to any other FDA statement.  This Court previously noted at the preliminary injunction stage that "the plaintiffs cannot show that they are harmed by an interchangeability determination that does not purport to grant formal licensure to the EUA vaccines." *Doe #1-#14*, 572 F. Supp. 3d at 1237; *see also Children's Health Def. v. FDA*, No. 21-6203, 2022 WL 2704554 (6th Cir. July 12, 2022), *cert. denied*, 143 S. Ct. 784 (2023) (mem.) (rejecting argument that service member injuries were redressable because DoD "relied on" FDA's "interchangeability" determination).  DoD's reliance on FDA's statements does not give Plaintiffs standing to sue FDA. Plaintiffs were not injured by FDA's statements, and a judgment against FDA would afford them no relief from the injuries supposedly caused by DoD.[13]

Second, Plaintiffs' challenges to these statements in the EUA letters are not reviewable.  *See* 5 U.S.C. § 701(a)(2) (exempting from review matters committed to agency discretion); *Animal Legal Def. Fund v. USDA*, 789 F.3d 1206, 1214 (11th

---

[13] To the extent Plaintiffs' challenge to "FDA waivers" is intended to encompass this interchangeability determination, that is facially incorrect.  Nothing in the interchangeability findings waived or purported to waive anything.  And Plaintiffs' "waiver" challenge would suffer from the same standing defects as any other challenge to the interchangeability determination.

Cir. 2015).  The challenged statements described the products and the scope of authorization—an action explicitly authorized by 21 U.S.C. § 360bbb-3. They made clear to healthcare practitioners that certain EUA and approved vaccine could be used interchangeably for the primary vaccination series without raising safety or effectiveness concerns.  *See* ECF No. 65-14 ¶ 10 (cited at TAC ¶ 243).  As this Court has already recognized, *see* 572 F. Supp. 3d 1224, 1237-38, Congress has directed that all "[a]ctions under the authority of [21 U.S.C. § 360bbb-3] by the Secretary . . . are committed to agency discretion." 21 U.S.C. § 360bbb-3(i).  Accordingly, these statements in the authorization letters regarding the scope of authorization of the EUA vaccines are "exempt from review under the APA."  *See Ass'n of Am. Physicians & Surgeons v. FDA*, 2020 WL 5745974, at *3 (6th Cir. Sept. 24, 2020); *see also Wise v. Inslee*, No. 2:21-cv-0288, 2022 WL 1243662, at *2 (E.D. Wash. Apr. 27, 2022) *appeal dismissed* No. 22-35426, 2022 WL 17254335, at *1 (9th Cir. Oct. 7, 2022); *Antunes v. Rector & Visitors of Univ. of Va.*, No. 3:21-CV-00042, 2022 WL 4213031, at *5 (W.D. Va. Sept. 12, 2022).

2.    **Enforcement Discretion.**    Plaintiffs allege, incorrectly, that FDA "waived" certain non-waivable requirements with respect to the "BLA compliant" doses described in the SBRA.  *See* TAC ¶¶ 139-41, 257-70; *compare with* SBRA at 27.  Specifically, Plaintiffs point to the declaration of Dr. Marks, where he stated that Pfizer and FDA identified "available lots of vaccine that were manufactured at

facilities listed in the BLA that had undergone lot release." Such lots were "manufactured in compliance with the BLA" and FDA exercised "its enforcement discretion with respect to certain labeling requirements, in that FDA is not taking enforcement with respect to vials that bear the EUA label." *See* ECF No. 65-14 ¶ 13; *see also* SBRA, at 27 (describing the same). The "enforcement discretion" was thus exercised with respect to the *labeling*, as these doses met all other requirements of the BLA approval. As an initial matter, Plaintiffs mischaracterize the declaration, which does not indicate that any "waivers" were granted.  Rather, in exercising enforcement discretion, FDA essentially confirmed that it would not require Pfizer to relabel those lots and instead worked with the manufacturer to identify to providers which doses complied with the BLA.

First, Plaintiffs cannot show that they were injured by FDA's failure to initiate an enforcement proceeding with respect to each BLA-manufactured lot that would have required a BLA label on those specific lots.  Indeed, if the BLA-compliant lots were relabeled consistent with applicable manufacturing requirements, Plaintiffs could have been required to be vaccinated with them even under Plaintiffs' reading of the law. And if FDA had done nothing, stayed silent, and treated the "BLA-compliant" vaccines as EUA vaccines, DoD still would have required vaccination under its interchangeability guidance, or when it had licensed vaccines to offer, or otherwise. Plaintiffs are unclear as to exactly what actions FDA should have taken

32

instead, but it is plain that Plaintiffs are not injured by FDA's exercise of enforcement discretion.

Second, any such claim is moot because the "BLA-compliant," EUA-labeled doses are expired, and there is no reasonable likelihood that any such injury could recur.

Finally, the Court lacks jurisdiction over the exercise of enforcement discretion described here. The exception to APA review in Section 701(a)(2) applies "in 'those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply,' *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)) (internal quotation marks omitted), thereby leaving the court with 'no meaningful standard against which to judge the agency's exercise of discretion[,]' *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)." *Pinnacle Armor Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011).

In *Heckler v. Chaney*, the FDA refused to pursue enforcement action with respect to the use of drugs used to administer the death penalty in alleged violation of the FDCA. The Court opined that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler*, 470 U.S. at 831. And the Court found neither misbranding prohibitions nor other elements of the FDCA purported to

constrain FDA's enforcement discretion.  *Id*. at 835-38.  Plaintiffs cite a case about a different provision of the FDCA, which the court found did circumscribe FDA's enforcement authority, where the statute specifically required FDA to take an action by stating certain drugs "shall be refused admission" by FDA.  *See Cook v. FDA*, 733 F.3d 1, 3 (D.C. Cir. 2013) (distinguishing 21 U.S.C. § 381(a) from the provisions at issue in *Heckler*).  By contrast, there is no similar mandatory FDCA provision that would constrain FDA's enforcement discretion here; indeed, Plaintiffs appear to rely on many of the exact same provisions that the Supreme Court rejected in *Heckler*.  The Court should dismiss these claims because the question of whether FDA should enforce labeling requirements is committed to agency discretion.

## II.     Plaintiffs' Claims for Equitable Relief Interfere with Internal Military Affairs and Fail to Survive *Mindes* Scrutiny.

"The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982).  Where Plaintiffs are seeking only discretionary relief, the Court must apply a multi-pronged test to determine whether to entertain claims challenging an internal military decision.  *See Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).[14]  Under this test, an internal military decision is unreviewable unless the plaintiff alleges: (a) "the deprivation of a constitutional right, or an

---

[14] *Mindes* only applies to determine justiciability if the Court determines that any "broader test for nonjusticiability" courts have applied since *United States v. Stanley*, 483 U.S. 669 (1987) does not independently preclude the suit.  *See Speigner*, 248 F.3d at 1295 n.5.

allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Winck v. England*, 327 F.3d 1296, 1303 (11th Cir. 2003) (quoting *Mindes*, 453 F.2d at 201). Even if a plaintiff meets these two prerequisites, the court must weigh four factors to determine whether review is appropriate. *Id*. at 1303 n.4 (quoting *Mindes*, 453 F.2d at 201); *see also Stinson v. Hornsby*, 821 F.2d 1537, 1540 (11th Cir. 1987). Plaintiffs' claims do not survive the requisite scrutiny.

### A. Plaintiffs' Claims for Discretionary Relief are Not Appropriate Because Plaintiffs Have Not Exhausted Adequate Alternative Intraservice Remedies.

This Circuit "has firmly adhered to the rule that a plaintiff challenging an administrative military discharge will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies." *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). Plaintiffs complain that they "were involuntarily separated, constructively discharged, or forced into early retirement."  TAC ¶ 143. And they seek a mandatory injunction requiring the military "to restore [them] to the pre-Mandate *status quo ante* and to return them to the position in which they would have been absent the unlawful mandates." *Id*. Relief Requested. Assuming Plaintiffs' claims are not "nonjusticable across-the-board" they must exhaust "all available military remedies." *Winck*, 327 F.3d at 1303 n.4, 1303 n.5.

In *Hodges*, the Fifth Circuit explained that a remedy must be sought from the applicable "Board for Correction of Military Records." 499 F.2d at 420.[15] "[I]f the suit was filed after discharge, the court may not retain [equitable[16]] jurisdiction while the plaintiff resorts to administrative review" and "if the suit was filed before discharge, the court may not stay the discharge pending exhaustion of administrative remedies." *Id.* at 421; *see also Winck*, 327 F.3d at 1307 n.10; *McCurdy v. Zuckert*, 359 F.2d 491, 495 (5th Cir. 1966).

Here, Plaintiffs do not allege that they have petitioned the BCMR to remedy their discharges or correct their records. *See Winck*, 327 F.3d at 1304 n.6 ("burden of proving exhaustion is on the petitioner"); *see also M.T.V. v. DeKalb Cnty Sch. Dist.*, 446 F.3d 1153, 1159 (11th Cir. 2006) ("burden of demonstrating [exceptions to exhaustion] is on the party seeking" one); *Jaimes v. United States*, 168 F. App'x

---

[15] Under 10 U.S.C. § 1552, Congress has established a Board for Correction of Military Records ("BCMR") in each military department composed of high-ranking civilian employees. The Secretary of each military department, acting through the appropriate BCMR, possesses plenary authority to afford relief to service members injured by adverse personnel actions, including but not limited to reversing involuntary separations, removing adverse information from personnel files, and awarding back pay and allowances. 10 U.S.C. § 1552(a)(1).

[16] Although "this is not a jurisdictional issue" as far as subject matter jurisdiction under Rule 12(b)(1) is concerned, *see* Op. at 9 n.3, "even when a court has subject matter jurisdiction over the suit '[t]here remains the question of equitable jurisdiction.'" *Guthrie v. Transamerica Life Insurance Co.*, 561 F. Supp. 3d 869, 873 (N.D. Cal. 2021) (citation omitted). "[T]o say that a court lacks equitable jurisdiction is to say that traditional equitable principles bar the court from entertaining the claim or granting relief." *Id.* at 874.

356, 359 (11th Cir. 2006) (same).  Accordingly, Plaintiffs' claims fail to establish *Hodges* exhaustion and must be dismissed.

Although this Court invoked *Darby v. Cisneros*, 509 U.S. 137 (1993), when it previously found some claims in a prior complaint to be ripe,[17] *Darby* does not impact this Circuit's military exhaustion rule.  The APA includes plain language intended for courts to invoke when refusing "to decide issues about . . . military policy."  *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 & n.1 (D.C. Cir. 1999) (citation omitted).  Those provisions apply here because military exhaustion "serves to maintain the balance between military authority and the power of federal courts," *Winck*, 327 F.3d at 1303 (citation omitted), by permitting review of a decision on Plaintiffs' grievance from a "board[] of civilians," 10 U.S.C. § 1552(a)(1), that "can be set aside" if invalid, *see Chappell v. Wallace*, 462 U.S. 296, 303 (1983), without the court "in effect insert[ing] itself into [a Service Member's] chain of command," *U.S. Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring).  *See also Alvarado*, 2023 WL 2089246, at *4 n.7 (questioning *Darby*'s application in military context).

---

[17] Ripeness and exhaustion do not always overlap.  "Lack of ripeness suggests that [a plaintiff's] *claims* are merely premature.  In contrast, dismissal for failure to exhaust administrative remedies emphasizes the appropriate *forum* for [a plaintiff's] request for relief."  *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 160 (D.C. Cir. 2007).

But the Court "need not address *Darby's* impact (if any)" on the military exhaustion rule. *See Wilt v. Gilmore*, 62 F. App'x 484, 488 (4th Cir. 2003). *Darby* has no impact on this Circuit's caselaw requiring exhaustion before Plaintiffs' nonstatutory claims can be adjudicated. *See* TAC ¶¶ 213-28. Because "a result favorable to [Plaintiffs]" before the BCMR based on Plaintiffs' alleged failure to find an FDA-approved dose of a COVID-19 vaccine (addressed in Count 4, *see* TAC ¶¶ 66-67, 213) "could render [their] APA claim[s] largely moot, consideration of the [APA] claim[s] in federal court at this point would be imprudent." *See Wilt*, 62 F. App'x at 488.

**B. The Mindes Factors Weigh Against Review.**

Even if the Court concludes that Plaintiffs are excused from exhaustion, the Court stills need to balance four factors before reviewing their claims. Specifically, the Court must consider (1) "[t]he nature and strength of the plaintiff's challenge to the military determination"; (2) "[t]he potential injury to the plaintiff if review is refused"; (3) "[t]he type and degree of anticipated interference with the military function"; and (4) "[t]he extent to which the exercise of military expertise or discretion is involved." *Winck*, 327 F.3d at 1303 n.4 (quoting *Mindes*, 453 F.2d at 201). Each factor weighs against equitable jurisdiction.

i.    First *Mindes* Factor: Nature and Weakness of Plaintiffs' Claims

The nature of Plaintiffs' claims cautions against review. While the military COVID-19 vaccination requirement was in effect, the "vast majority of courts" denied relief. *Alvarado v. Austin*, No. 1:22-cv-876 (AJT/JFA), 2022 WL 18587373, at *3 (E.D. Va. Nov. 23, 2022) (and cases cited), *appeal filed*, No. 23-1419 (4th Cir. Apr. 7, 2023). A minority of courts addressing religious causes of action granted preliminary relief. *See, e.g., Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022), *denying reh'g*, 2023 WL 2966353 (6th Cir. Apr. 17, 2023); *Col. Fin. Mgmt. Off. v. Austin*, --- F. Supp. 3d ---, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022), *appeal filed sub nom.*, *Chief Warrant Off. 4 v. Sec'y of the U.S. Dep't of Def.*, No. 22-13522 (11th Cir. Oct. 18, 2022). But Plaintiffs do not raise religious claims here. Especially after the COVID-19 vaccine mandate rescission, there is ample reason to conclude Plaintiffs' claims are strikingly weak even beyond those discussed below in Part III.

With respect to Plaintiffs' claims related to forced administration of EUA vaccines, the reality is that several COVID-19 vaccines received FDA approval. Op. at 3. And the record includes overwhelming evidence that these FDA-approved vaccines—with proper labeling—existed before any Plaintiff was separated for failing to receive a COVID-19 vaccine. *See, e.g.*, Ex. 4 ¶ 4; ECF No. 89-5 ¶ 11; ECF No. 107-16 ¶¶ 3-4. In fact, Plaintiffs refused licensed, labelled vaccines when they were available. *See* ECF No. 107-18. Even if Plaintiffs have plausibly alleged a

claim, *see* Op. at 17-18, they have not shown a substantial likelihood of success on it.   ECF No. 47 at 15-16.   *See* TAC ¶¶ 188-228.   This conclusion is relevant to whether Plaintiffs' claims survive *Mindes* scrutiny given the parallel between the *Mindes* framework and the preliminary injunction factors.   Indeed, one court in this circuit has summarily dismissed as nonjusticiable claims that mirror those in this case.   *Crosby v. Austin*, No. 8:21-cv-2730, 2022 WL 2291244, at *1 (M.D. Fla. June 24, 2022); *Hyatt v. Austin*, No. 8:22-cv-1188, 2022 WL 2291660, at *1 (M.D. Fla. June 24, 2022); *see also Crosby*, 2022 WL 603784, at *2 (denying preliminary injunction).

Second, while the TAC claims that the military has violated the APA because (uncircumscribed) actions were arbitrary and capricious, TAC ¶¶ 172-187, 229-237, they have failed to challenge discrete agency actions, *see* Part III.A, and cannot avoid the APA requirements by bringing nonstatutory claims, *see* Part III.B.   Even if they had properly pled an APA cause of action, similar claims have been rejected, *see, e.g., Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1262 n.29 (W.D. Okla. 2021); *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1290-91 (11th Cir. 2021).   Importantly, the TAC unsurprisingly "point[s] to no prior case in which an APA-based challenge to an internal military policy survived *Mindes* scrutiny."   *See Kuang v. U.S. Dep't of Def.*, 778 F. App'x 418, 420 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 2565 (2021).   Courts have similarly "denied review" involving "arbitrary and

capricious" claims. *NeSmith v. Fulton*, 615 F.2d 196, 202 (5th Cir. 1980); *see also Woodard v. Marsh*, 658 F.2d 989, 994-95 (5th Cir. 1981); *West v. Brown*, 558 F.2d 757, 760 (5th Cir. 1977). The APA arbitrary and capricious "standard is exceedingly deferential." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (citation omitted).

   ii.   <u>Second *Mindes* Factor: Potential Injury</u>

Plaintiffs face no certain injury if review is refused. Again, the military has already rescinded the vaccination requirement and is removing adverse actions from the files of those service members who previously sought exemptions from the requirement. No Plaintiffs were involuntarily discharged. For those Plaintiffs who claim to have lost employment (by voluntarily leaving military service), their injury "is primarily economic." *Christoffersen v. Wash. State Air Nat'l Guard*, 855 F.2d 1437, 1444 (9th Cir. 1988). And they "still will be able to seek review before the [BCMR]," which may "reinstate each [Plaintiff] in active federal [ ] status, restore his pay, and order back pay." *Id*. "The harm inflicted on [Plaintiffs] by dismissal is certainly no greater than that at issue in *Reaves v. Ainsworth* [219 U.S. 296, 306-07 (1911).]" *See NeSmith*, 615 F.2d at 202. Because any harms Plaintiffs describe "are not irreparable . . . [t]he second factor weighs against judicial review." *Mark Short v. Berger*, 593 F. Supp. 3d 944, 950 (C.D. Cal. 2022), *appeal dismissed*, 2022 WL 2421096 (9th Cir. May 17, 2022).

### iii. Third and Fourth *Mindes* Factors: Interference with Military Discretion and Expertise

The third and fourth *Mindes* factors weigh against review. Plaintiffs' requests for relief represent a substantial interference with military discretion. Plaintiffs seek to set aside military orders and interfere in the chain of command unnecessarily. *See* TAC, Relief Requested (seeking, e.g., a declaration that "Plaintiffs' non-compliance . . . cannot constitute disobeying a lawful order or be used as the basis for discharge, punishment, or other adverse actions"). Even more problematically, Plaintiffs seek an order "to restore Plaintiffs to the pre-Mandate status quo ante and to return them to the position in which they would have been absent the unlawful mandates," *id.*, apparently seeking particular assignments, promotions, reinstatement or similar relief, *see* TAC ¶¶ 143-44 (identifying alleged injuries). These requests would insert the Court into the chain of command. Because "there are a limited number of positions available at the higher levels of command," the Court particularly should not "dictate to the military which officers should be considered competent" via mandatory injunctive orders. *See Speigner*, 248 F.3d at 1298; *see also Christoffersen*, 855 F.2d at 1444 (discussing harms from claims challenging retention decisions). Insofar as Plaintiffs are seeking court-ordered promotions and similar internal personnel actions, "civilian courts have traditionally deferred to the

superior experience of the military in matters of duty orders, promotions, demotions, and retentions." *Speigner*, 248 F.3d at 1298. (citation omitted).[18]

## III.   Plaintiffs Cannot Otherwise Proceed on their Claims.

### A.   Counts 1-3 and 5-7 Should Be Dismissed Because the APA Does Not Authorize Plaintiffs' Programmatic Attacks.

The Court should dismiss Counts 1-3 and 5-7, TAC ¶¶ 155-212, 229-70, because they fail to identify the "circumscribed, discrete agency action[]" or actions at issue. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("*SUWA*"). "Under the terms of the APA, [Plaintiffs] must direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).[19] The APA authorizes review of "final agency action," 5 U.S.C. § 706, and defines "agency action" to mean a "rule, order, license, sanction, relief, or equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An "agency action" is "final" only when it (1) "mark[s] the consummation of the agency's decision-making process" and (2) is an action "by which rights or

---

[18] This Court may not order the commissioning or promotion of an individual to officer. Article II of the Constitution specifies the exclusive mechanisms for the appointment of officers of the United States, including military officers. *See* U.S. Const. art. II, § 2, cl. 2. The Constitution does not vest the judiciary with any power to order the commissioning of new military officers. U.S. Const. art. II, § 2, cl. 2; *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989); *Fisher v. United States*, 402 F.3d 1167, 1180-81 (Fed. Cir. 2005). Therefore, Plaintiffs' claim for such relief must be dismissed.

[19] Although confusingly pleaded, Count 1 must be brought under the APA. *See* TAC ¶ 156 (citing 5 U.S.C. § 706(2)(C)). Insofar as Plaintiffs are not contending that Count 1 presents an APA claim, it must be dismissed because the 2023 NDAA does not provide a cause of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

obligations have been determined, or from which legal consequences will flow."

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted)

Here, Counts 1 and 2 seek review of the military's "post-Rescission orders and policies retaining existing restrictions (or reenacting substantially similar, a *de facto* mandate or restrictions), continuing to enforce pre-Rescission requirements and punish past violations, and refusal to restore the pre-Mandate *status quo*"— whatever that means.  TAC ¶ 156; *see also* TAC ¶¶ 9, 102-19, 173.  But a plaintiff cannot use the APA to bring a collective challenge to such a sweeping group of alleged actions.  Plaintiffs may not challenge "the continuing (and thus constantly changing) operations of the" military as it carries out its policies.  *See Lujan*, 497 U.S. at 890.  In *Lujan*, the Supreme Court dispelled any notion that the existence of one or two identified agency actions permits a claim that nonetheless raises a programmatic challenge to proceed:

> [I]t is at least entirely certain that the flaws in the entire "program"— consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects [a plaintiff].

*See id*. at 892-93.  It is, in any event, wholly unclear what "post-rescission orders" Plaintiffs are describing, and vague references to a "de facto mandate" seem to reflect Plaintiffs' ideas about the collective effects of various non-actions or actions. The pleading does not permit identification of the relevant agency action or

compiling or certifying the administrative record.[20] The programmatic attack should be dismissed.

Similarly, Counts 3 and 5 seek to review "[t]he Armed Services['] implementation of the [vaccine] Mandate." TAC ¶¶ 190, 230. But "implementation," *id.*, is not the type of "circumscribed, discrete agency action," *SUWA*, 542 U.S. at 62, that is reviewable under the APA. *See, e.g., Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 194 (4th Cir. 2013) (concluding that agency's "implementation" of a project "does not constitute 'agency action' within the meaning of the APA"). Indeed, the TAC explains that the referenced "implementation" is not limited to any number of particular orders. TAC ¶ 57 (identifying several implementing orders but explaining that "[e]ach of the Armed Services have issued subsequent orders implementing and modifying the initial Armed Services Mandates").

Count 6 seeks review of language in EUA letters describing when EUA and BLA vaccines may be used interchangeably without safety or effectiveness

---

[20] Insofar as Plaintiffs intended to challenge not "action" but agency action "unlawfully withheld" under 5 U.S.C. § 706(1), such a claim is not clearly pled, and would, in any event, fail. Section 706(1) permits judicial review of agency inaction, but only within strict limits. Courts can only compel "*discrete* agency action that it is *required to take.*" *SUWA*, 542 U.S. at 64. This standard reflects the common-law writ of mandamus, which the APA "carried forward" in § 706(1), and applies only if a federal agency has a "ministerial or non-discretionary" duty amounting to "a specific, unequivocal command." *Id.* at 63-64 (citation omitted). Plaintiff has made no such showing here. Nothing in the statutory or regulatory language constitutes a "specific, unequivocal command" to "restore the status quo ante." *Id.* (citation omitted).

concerns.   As set forth above, these statements are authorized by 21 U.S.C. § 360bbb-3 and are expressly not reviewable under the statute.   The statements are also unreviewable because they are not agency action that determines legal rights or responsibilities. The cited FDA statements "carrie[d] no direct consequences" for Plaintiffs, but instead provided nonbinding permissive information for providers about safe and effective use of EUA vaccine. *See Franklin v. Massachusetts,* 505 U.S. 788, 797-98 (1992).

Finally, Count 7 seeks to review purported "FDA Waivers."   TAC ¶ 258. While the TAC is far from clear with respect to that term's meaning, paragraph 141 of the TAC indicates that the "FDA Waivers" at issue do not refer to a circumscribed agency action or actions, but instead to FDA's general implementation of its statutory duties in the context of any number of informal adjudications. Although enforcement discretion decisions are presumptively committed to agency discretion, *see supra* pp. 33-34, the TAC does not provide even the opportunity to consider whether a particular enforcement decision is committed to FDA's discretion because Plaintiffs do not allege that they have "petitioned the [FDA]" and "request[ed] that the FDA take [one or] various enforcement actions to prevent [the alleged] violations" and received a determination that can now be reviewed.   *See Heckler*, 470 U.S. at 823; *see also Biden v. Texas*, 142 S. Ct. 2528, 2545 (2022) ("[A]n abstract decision apart from specific agency action, as defined in the APA," is

unreviewable.). A witness declaration prepared by an FDA official for litigation, *see* TAC ¶¶ 140-41, 260*,* is not an agency action as defined by the APA.  *See Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427-28 (D.C. Cir. 2004) (Roberts, J.); *Andrews v. HHS*, No. 04-0307 (JR), 2005 WL 4826342, at *3 (D.D.C. Apr. 13, 2005).

The requirement that Plaintiffs "must identify some 'agency action' that affects [them] in the specified fashion," *Lujan*, 497 U.S. at 882, serves important practical purposes as well.  "When a party challenges agency action under the APA, 'the district court . . . sits as an appellate tribunal.'"  *United States v. Schwarzbaum*, 24 F.4th 1355, 1364 (11th Cir. 2022) (citation omitted).  Accordingly, "APA review typically takes place on the basis of a record compiled by the agency in making the challenged decision."  *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 610 (1st Cir. 1989).  Where a plaintiff fails to identify the agency action at issue, it is impossible for the agency to "compil[e] and organiz[e] the complete administrative record" for the agency action, *see Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.2 (11th Cir. 1996), as necessary for the parties to proceed to summary judgment.  Nor is it possible for the Court to apply the applicable standard of review, *see* 5 U.S.C. § 706,

to the agency action.[21]   In sum, Counts 1-3 and 5-7 should be dismissed for failure to state a claim under the APA.

### B. Counts 4 and 8 Should be Dismissed Because Nonstatutory Review is Unavailable.

Counts 4 and 8 should be dismissed because Plaintiffs cannot establish the criteria necessary to invoke nonstatutory review.   These counts do not invoke a statutory cause of action but seek to directly invoke this Court's equitable jurisdiction outside of the APA.   "[P]arties occasionally invoke the principles of 'nonstatutory review.'" *Puerto Rico v. United States*, 490 F.3d 50, 59 (1st Cir. 2007). But it "has 'extremely limited scope,'" *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721-22 (D.C. Cir. 2022) (citation omitted), and is "essentially a Hail Mary pass," *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).

Nonstatutory review requires certain "critical factors" that "must be present." *Puerto Rico*, 490 F.3d at 59 (citation omitted); *see also Bd. of Governors of Fed. Rsrv. Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 43 (1991).   First, Plaintiffs must be "wholly deprive[d]" of an alternative "adequate means of vindicating [their] rights."

---

[21] The TAC's failure to give Defendants adequate notice of the discrete agency action or actions challenged may also be analyzed through this circuit's "shotgun pleading" jurisprudence. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."   *Weiland v. Palm Beach Cnty Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

*Puerto Rico*, 490 F.3d at 59 (cleaned up); *see also Nyunt*, 589 F.3d at 449 (requiring "no alternative procedure for review of the statutory claim"). "Second, 'Congress must not have clearly intended to preclude review.'" *Puerto Rico*, 490 F.3d at 59 (citation omitted). Moreover, the agency must have "plainly act[ed]" beyond "its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Changji Esquel Textile*, 40 F.4th at 722 (citation omitted); *see also Pac. Maritime Ass'n v. NLRB*, 827 F.3d 1203, 1208 (9th Cir. 2016). Here, Plaintiffs fail to satisfy any requirement.

First, Plaintiffs cannot show that they have been "wholly deprive[d]" of a adequate alternative remedy for at least two reasons. *Puerto Rico*, 490 F.3d at 59 (citation omitted). Again, Plaintiffs may seek reinstatement or other meaningful relief from the applicable BCMR. *See supra* pp. 35-38. If the Board finds that Plaintiffs are not entitled to relief, Plaintiffs then have a "right to review" of the challenged military policies. *See Bd. of Governors of Fed. Rsrv. Sys.*, 502 U.S. at 43-44 (If "the Board finds the [plaintiff] has violated the regulation, [it] will have, in the Court of Appeals, an unquestioned right to review of both the regulation and its application."); *see also Chappell*, 462 U.S. at 303 ("Board decisions are subject to judicial review and can be set aside."); *Chao*, 493 F.3d at 160 (Without exhausting "administrative remedies, [plaintiffs] cannot show that they" lack an "adequate remedy.").

Moreover, a party may not invoke nonstatutory review "to circumvent certain of the APA's procedural requirements." *Puerto Rico*, 490 F.3d at 60.; *see also* Charles A. Wright & Arthur R. Miller, 33 Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.) (If "adequate relief" under APA available, "an equitable remedy via nonstatutory review ought not be available."); *see also Las Americas Immigrant Adoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1185 (D. Or. 2021) (similar). The TAC's nonstatutory claims are mirror images of several APA claims. Insofar as the APA claims fail because the TAC does not identify a discrete agency action, *see supra* Part III.A, the solution is not to permit a programmatic attack to proceed under a nonstatutory review theory, particularly where the agency has not been given the opportunity to pass upon Plaintiffs' theories in the first instance.

Second, *ultra vires* review is unavailable because the APA reflects Congress's clear intent to preclude review of programmatic agency decisionmaking. Judicial intervention at that "level of generality" is unavailable "[e]xcept where Congress explicitly provides for" it. *Lujan*, 497 U.S. at 894. Indeed, the notion that nonstatutory review permits general oversight of the military or FDA—rather than review of a particular administrative decision that harms Plaintiff—is inconsistent with Article III principles: "Such suits, even when premised on allegations of several instances of violations of law, are rarely if ever appropriate for federal-court adjudication." *Allen v. Wright*, 468 U.S. 737, 759-60 (1984).

Finally, Plaintiffs' claims do not present the type of patent misconstruction of an authorizing statute required satisfy the "especially demanding" third requirement. *See Changji Esquel Textile Co.*, 40 F.4th at 722.  The issue for nonstatutory claims is whether the administrative order, on its face, is extraordinarily and unquestionably invalid.  *Id.* at 726.  Because nonstatutory review is reserved for "blatantly lawless" action, *Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11*, 393 U.S. 233, 238 (1968), not "[g]arden-variety errors of law or fact," *Griffith v. Fed. Labor Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see also Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1264 (D.C. Cir. 2006) (nonstatutory review unavailable if both parties present "compelling arguments regarding the proper interpretation of the disputed statutory provisions"), Counts 4 and 8 do not describe blatantly lawlessness action.

First, while Count 4 remains ambiguous with respect to the order being challenged, *see* TAC ¶ 214, "[t]he mandate is not facially invalid under § 1107[a] because, as Plaintiffs acknowledge, 'the DOD Mandate itself states that only FDA-licensed vaccines may be mandated.'"  Op. at 17 (citation omitted); *see also* ECF No. 1-3; TAC ¶ 56.  Plaintiffs cannot use *ultra vires* review to build a record in this Court about the availability of certain types of vaccines in DoD stockpiles and in the community when the memorandum never required them to take EUA vaccines and they can seek statutory review of any formal military decision addressing their claim

that they could not find the required vaccine.  "Considering the adequacy of the agency's explanation, or the degree of support for its factual findings, would contravene [nonstatutory review] basic principles."  *See Changji Esquel Textile*, 40 F.4th at 726.

Similarly, while Count 8 is unclear with respect to the particular FDA agency action(s) being challenged, *see supra* Part III.A, the pleading indicates that Plaintiffs take issue with "a finding" made within the EUA letters, TAC ¶ 276, that the licensed and EUA versions of the COVID-19 vaccines could "be used interchangeably to provide the vaccination series without presenting any safety of effectiveness concerns."  *See, e.g.,* ECF No. 137-13 at 3 n.9; TAC ¶ 276.  But "*[u]ltra vires* review presents no occasion to flyspeck an order's factual findings." *See Changji Esquel Textile*, 40 F.4th at 726.  So FDA's statements about interchangeability, *see* ECF No. 47 at 7 n.5, are not subject to *ultra vires* review. Indeed, the letter notes explicitly that the EUA and BLA-licensed vaccines "are legally distinct."  *E.g.* ECF No. 137-13 at 3 n.9.  There is no basis to conclude that FDA lacked authority to make this scientific finding and provide information to the public how the EUA products could be used at the time.  *See* 21 U.S.C. § 360bbb-3.

Plaintiffs also take issue with alleged FDA "waivers," invoking a hodgepodge of alleged statutory violations.[22] Again, the statutory provisions that they cite apply to regulated entities; they do not inform FDA as to when and how they should be enforced. There is no "unambiguous statutory directive," *see Changji Esquel Textile Co.*, 40 F.4th at 722, that would require FDA to demand that those lots be relabeled with the BLA-approved labeling. Part III.E further explains the defects in Plaintiffs' allegations in these sections, and the demanding *ultra vires* standard is far from met.

In sum, Counts 4 and 8 should be dismissed because Plaintiffs cannot establish that they are entitled to nonstatutory review.

### C. The Court Should Dismiss the NDAA Claims for Additional Reasons.

Count 1 claims that Section 525 of the 2023 NDAA 525 applies "with full retroactive effect," that "post-rescission orders" are therefore unlawful, and that Congress required restoration of the status quo ante. TAC ¶¶ 156-71. Count 2 claims that "post-rescission orders" are arbitrary and capricious for the same reason (among others). *Id.* ¶¶ 173-77. As set forth above, Plaintiffs have not identified a discrete agency action subject to challenge under the APA, but even if they had, their interpretation of the NDAA is wrong. Congress did not direct that the rescission was

---

[22] The TAC "commits the sin of not separating into a different count each cause of action or claim for relief" presented in Count 8. *See Weiland*, 792 F.3d at 1323. Count 8 in particular improperly "combine[s] claims under different statutes into one count." *See, e.g., Alvarez v. Lackland Area Mass Transit Dist.*, 2019 WL 2868943, at *3 (M.D. Fla. July 3, 2019). Count 8 appears to allege a multitude of alleged statutory violations with respect to multiple alleged acts or failure to act.

required to apply retroactively to unwind all prior actions taken by the military in applying and enforcing the mandate, or the consequences of those actions.

Plaintiffs' interpretation of the NDAA violates "the principle against retroactive legislation, under which courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012). Section 525 provides no indication that Congress intended it to apply retroactively, let alone the type of "statutory language that [is] so clear that it could sustain only one interpretation" required. *See Rendon v. U.S. Att'y Gen.*, 972 F.3d 1252, 1258 (11th Cir. 2020) (citation omitted).

Plaintiffs here argue that a single word—"rescind"—shows clear intent to apply retroactively and restore the status quo ante, *see* TAC ¶¶ 158-61. Black's Law Dictionary defines "rescind" when used in the phrase to "rescind the legislation" as to "make void; to repeal or annul." RESCIND, Black's Law Dictionary (11th ed. 2019). Merriam-Webster defines "rescind" as "to take away," to "remove," to "take back," to "cancel," or "to make void." RESCIND, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/rescind. The words "rescind" and "repeal" are synonyms. https://www.merriam-webster.com/thesaurus/rescind.[23]

---

[23] Plaintiffs press a novel interpretation of the word "rescind" based on how a related term "rescission" is sometimes used in contract law. TAC ¶¶ 98, 158. But even in contract law, the "term 'rescission' is often used by lawyers, courts, and businessmen in many different senses." RESCISSION, Black's Law Dictionary (11th ed. 2019). In some cases, "rescission" means "[a]n agreement by contracting parties to discharge all remaining duties of performance and terminate

That is exactly what the Secretary of Defense did when he rescinded the COVID-19 vaccination requirement—he repealed the requirement. The plain meaning of rescind, when used to discuss a rule or legislation, does not imply retroactive application; the NDAA simply ended the policy and left to the military to determine how to apply that rescission to prior actions.[24] *See, e.g., N.H. Fire Ins. Co. v. Virgil & Frank's Locker Serv., Inc.*, 302 F.2d 780, 784 (8th Cir. 1962) (citing *Clark Est. Co. v. Gentry*, 240 S.W.2d 124, 129 (Mo. 1951)) (same statutory language applied only prospectively).

### D. Informed Consent Claims Should Be Dismissed for Additional Reasons.

The Court previously dismissed as-applied claims related to informed consent, including disagreements about whether Plaintiffs had access to licensed

---

the contract." *Id.* In other situations, "rescission" means a "unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach, or a judgment rescinding the contract." *Id.* And "rescission" can also refer to "a remedy or defense for a nondefaulting party and is accompanied by restitution of any partial performance, thus restoring the parties to their precontractual positions." *Id.*

[24] The legislative history confirms this reading of the statute. *U.S. ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1089 (11th Cir. 2018) ("Legislative history may prove helpful when the statutory language remains ambiguous . . . .), *aff'd*, 139 S. Ct. 1507 (2019). Here, an explanatory statement in the Congressional Record notes that DoD "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9425, H9441 (daily ed. Dec. 8, 2022). This indicates Congress understood the rescission did not extend to retrospective relief that would involve such things as the correction of military records and discharges.

vaccine.  *See* Op. at 12-13, 17.  To the extent the TAC is intended to revive any as-applied claims, they should be dismissed for the same reasons.

Similarly, the Court previously held that the mandate itself was not subject to facial challenge on "informed consent" grounds because on its face, the mandate only required a licensed vaccine.  *See* Op. at 17. Counts 3-5 all appear to challenge the "EUA mandates."  As the Court previously held, "[t]he mandate is not facially invalid under § 1107[a] because, as Plaintiffs acknowledge, 'the DOD Mandate itself states that only FDA-licensed vaccines may be mandated.'"  Op. at 17 (citation omitted).

The Court previously permitted a facial challenge to the DoD interchangeability guidance itself to proceed.  *See* Op. at 17.  Defendants disagree, for the reasons previously given, *see* ECF Nos. 65-1, 82, 107, 118, but will not re-brief those issues here.  It is not clear, however, that Plaintiffs continue to raise such a claim.  Counts 3-5 are explicitly directed to the "EUA mandates" although they also encompass generally the "implementation" of the mandate.

The TAC newly frames one legal issue related to informed consent in Count 5 that is subject to dismissal. Specifically, Plaintiffs argue that the mandates are "arbitrary and capricious" in light of the supposed "*Rumsfeld III* consent decree" and Plaintiffs ask the Court to "estop[]" Defendants from taking an unspecified "contrary position" in this litigation.  *See* TAC ¶ 236.  Plaintiffs' request should be denied for

several reasons, including that *Rumsfeld* did not involve a consent decree, the injunction from *Rumsfeld* dissolved on its own terms, that case is distinguishable, and the court's decision is not binding.

There was no consent decree in the *Doe v. Rumsfeld* anthrax cases. That case involved allegations that Service members were required to take an anthrax vaccine to protect against inhalation anthrax when it was unclear whether the available FDA-licensed anthrax vaccine at that time (AVA) was approved to prevent inhalation anthrax. *Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 124 (D.D.C. 2003) ("*Rumsfeld I*"). The court ultimately granted a preliminary injunction preventing the military from requiring AVA to prevent inhalation anthrax. *Id.* at 135. "Shortly after the [*Rumsfeld I*] injunction, the FDA issued a final rule and order finding that AVA was safe and effective 'independent of the route of exposure,'" inherently approving its use for inhalation anthrax. *Bates v. Donley*, 935 F. Supp. 2d 14, 19 (D.D.C. 2013) (quoting Biological Products; Bacterial Vaccines & Toxins; Implementation of Efficacy Review, 69 Fed. Reg. 255, 260 (Jan. 5, 2004). "Judge Sullivan, nonetheless, vacated the FDA's rule and order because the FDA failed to follow the required notice and comment procedures." *Id.* The court granted plaintiffs' motion for summary judgment and issued an injunction "[u]nless and until FDA properly classifies AVA [the anthrax vaccine in question] as a safe and effective drug for its intended use." *Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004) ("*Rumsfeld II*"). The court

later clarified its injunction that Service members could continue to voluntarily receive the anthrax vaccine. *Doe v. Rumsfeld*, No. CIV.A. 03-707 (EGS), 2005 WL 774857 (D.D.C. Feb. 6, 2005) ("*Rumsfeld III*"). The *Rumsfeld III* injunction ultimately dissolved on its own terms on December 19, 2005, when FDA explicitly "classified AVA as safe and effective and not misbranded" for inhalation anthrax. *Doe v. Rumsfeld*, 172 F. App'x 327, 327 (D.C. Cir. 2006) ("*Rumsfeld IV*") (citation omitted). The D.C. Circuit explained that "[b]y its own terms, then, the injunction has dissolved, and this case" is moot. *Id.* at 328.

The *Rumsfeld* decisions do not bind this court. Since the injunction dissolved, plaintiffs have occasionally argued that its holding on the legality of requiring the anthrax vaccine should apply to some new case. But the *Rumsfeld* opinion is not even binding within the D.C. Circuit, much less on this district court.[25] *Bates*, 935 F. Supp. 2d at 27 (declining to apply *Rumsfeld* to a pending case). Courts have also held that the reasoning in *Rumsfeld* "is not 'binding' on the [Air Force Board for Correction of Military Records]" or the Service Secretaries. *Id.*

Finally, the issue litigated in *Rumsfeld* is irrelevant to this case. In *Rumsfeld*, plaintiffs argued that the military was using an approved anthrax vaccine for an allegedly unapproved use (to prevent inhalation anthrax). *Id.* at 19. The court's

---

[25] Notably, the district court explicitly declined to follow the Eleventh Circuit's holding in *Speigner* that as-applied challenges to military regulations are not justiciable. *Rumsfeld I*, 297 F. Supp. 2d at 126-27.

holding was limited—it was limited to a single product, and offered limited prospective relief that the military could not require an allegedly off-label use without consent or without FDA approval that went through proper procedures. *Id*. Here, the FDA *has* approved two COVID-19 vaccines—Comirnaty and Spikevax. There are no allegations that the military is requiring an off-label use of any product or any challenges to the procedures that the FDA used to approve those products.

Accordingly, the Court should dismiss this *Rumsfeld* claim.

**E. Claims Against FDA Should be Dismissed For Additional Reasons.**

Plaintiffs attempt to plead three claims against FDA, challenging both the FDA's statements on interchangeability of vaccines, and FDA's alleged "waivers" of certain BLA requirements. As set forth in Part II.A, Plaintiffs have not identified a discrete agency action subject to challenge under the APA, and as set forth in Part II.E, Plaintiffs cannot evade this requirement by making nonstatutory claims. Plaintiffs' claims against FDA fail to state a claim for additional reasons as well.

With respect to the interchangeability statements, Plaintiffs argue that the products do not meet the standard for "interchangeability" under a PHSA provision. *See* TAC ¶¶ 240-50 (citing 42 U.S.C. § 262(k)).  Under § 262(k)(4), FDA may make a statutory interchangeability determination when reviewing a BLA for a biological product manufactured by one company and comparing it with a product manufactured by another company.  This statutory determination is only made in the

context of certain BLAs submitted under § 262(k), and certain supplements to BLAs submitted under § 262(k), and no such BLA or supplement is present here.  As the Court previously held, FDA did not make a statutory interchangeability finding under (k)(4).  *See* ECF No. 47 at 21-23.  FDA provided information, based on its scientific expertise and consistent with its statutory authority, about the uses of the EUA product.  *See supra* pp. 29-31.[26]

In addition to the EUA provision, FDA also has implicit authority to disseminate information to the public. *Hoxsey Cancer Clinic v. Folsom*, 155 F. Supp. 376, 378 (D.D.C. 1957); *see also Barr v. Matteo*, 360 U.S. 564, 574–75 (1959) (finding implicit authority for public officials to make "public statement of agency policy in respect to matters of wide public interest and concern"); *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589 (2022). That authority is recognized in several statutory provisions. These include 21 U.S.C. § 375(b), which expressly recognizes FDA's power to alert the public to "imminent danger[s] to health" and to "collect[], report[], and illustrate[e] the results of [FDA's] investigations." *Id.* In addition, under 42 U.S.C. § 242*o*(b), HHS (of which FDA is part) has authority to "issue

---

[26] Insofar as Plaintiffs are arguing that the existence of Section 262(k) somehow precludes the finding here, the provision does not apply to FDA statements that products authorized for emergency use can be used interchangeably with products that are licensed; the § 262(k) process is an approval process, and requiring EUA products to go through that process would undermine EUA.  Indeed, Congress explicitly superseded the provisions of the PHSA cited in the TAC for EUA products.  *See* 21 U.S.C. § 360bbb-3(a)(1) ("Notwithstanding any provision of" the PHSA "the Secretary may authorize the introduction into interstate commerce" an EUA-authorized product).

information related to public health . . . for the use of the public." In this instance, FDA disseminated information about the safety and effectiveness of interchangeable use of the licensed and EUA vaccines to address the COVID-19 pandemic. Determinations about drug safety are at the very core of the responsibilities delegated to FDA and directly implicate the full depth of its scientific and technical expertise. *See*, *e.g.*, *Henley v. FDA*, 77 F.3d 616, 621 (2d Cir. 1996) (deferring to FDA's expertise); *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1490–91 (D.C. Cir. 1995); *see also City of Oxford v. FAA*, 428 F.3d 1346, 1352 (11th Cir. 2005) ("[t]he reviewing court may not substitute its judgment for that of the agency"). Plaintiffs have not plausibly alleged that FDA was incorrect or that there is some medical issue related to such interchangeable use.

Finally, with respect to the alleged FDA "waivers," Defendants explained above that Plaintiffs' reading of FDA's exercise of enforcement discretion is incorrect. FDA did not "waive" any requirements applicable to EUA vaccines. It determined that the vials in question were manufactured pursuant to all conditions of the BLA except for the label, and exercised enforcement discretion with respect to labelling of those particular lots. *See* ECF No. 65-14 ¶ 13; SBRA at 27. "To address the issue of these lots not bearing the vial label associated with BLA approval, CBER worked with the Applicant to develop a Dear HCP letter to be included with lots considered by CBER to be BLA-compliant." SBRA at 27.

Plaintiffs allege that FDA is not requiring "each "EUA product package include the EUA factsheet and that each recipient be informed of the statutory right to refuse administration of the product" in violation of 21 U.S.C. § 360bbb-3. TAC ¶¶ 264, 277. But the TAC alleges no facts indicating that anyone failed to comply with the "appropriate conditions" that FDA designed to ensure that individuals are so informed. *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Rather, incorporated materials indicate that the lots of vaccine referred to have been "manufactured in compliance with the BLA." ECF No. 65-14 ¶ 13 (cited at TAC ¶ 141). Because these lots are not authorized only for emergency use, "the conditions in the Letter of Authorization for the EUA—including the condition requiring vaccination providers to provide recipients with the Fact Sheet for Recipients . . . do not apply when these lots are used for the approved indication." *Id.* Indeed, EUA vaccine was previously "distributed with unified Fact Sheets . . . that provide [the appropriate] information about the EUA and BLA products." *Id.* Because Plaintiffs have not plausibly construed the FDA documents here, they have not stated a claim.

## CONCLUSION

For the foregoing reasons, the court should grant Defendants' motion to dismiss.

Dated:  April 28, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ *Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: Amy.Powell@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this submission contains 15581 words, not including the

case style, tables, signature block, and certificate of service, according to Microsoft

Word's word count function and thus is in compliance with Local Rule 7.1(F), and

the Order dated April 27, 2023, ECF No. 143.

/s/ *Amy E. Powell*

United States Department of Justice
Civil Division, Federal Programs Branch
c/o U.S. Attorney's Office
150 Fayetteville St, Ste 2100
Raleigh, NC 27601
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: Amy.Powell@usdoj.gov