# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**BENJAMIN COKER, et al,**

    *Plaintiffs*,

    v.

**LLOYD AUSTIN, et al,**

    *Defendants.*

**No. 3:21-cv-1211-AW-HTC**

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................1

LEGAL  STANDARDS ...................................................................................1

I.   RULE 12(B)(1) CHALLENGE TO SUBJECT MATTER JURISDICTION.....1

II.  RULE 12(B)(6) FAILURE TO STATE A CLAIM. .........................................2

ARGUMENT ..................................................................................................4

I.   CONGRESS' RESCISSION IS RETROACTIVE. ..........................................4

II.  PLAINTIFFS' CLAIMS ARE NOT MOOT......................................................7

    A.    Defendants Have Retained or Reenacted a *De Facto* Mandate.................7

    B.    Plaintiffs Continue to Face Credible Threats of Further Punishment for Past Non-Compliance. ...............................................................................11

    C.    This Court Can Provide Relief Requested by Plaintiffs. ..........................12

    D.    Defendants Have Not Taken Corrective Actions......................................13

    E.    Defendants' Voluntary Cessation Does Not Moot This Case. ................14

    F.    Defendants' Actions Are Capable of Repetition Yet Evade Review. .....15

III. PLAINTIFFS HAVE STANDING...................................................................16

    A.    Plaintiffs Have Standing for Claims Against Military Defendants. ........16

    B.    Plaintiffs Have Standing for Claims Against FDA..................................17

IV. PLAINTIFFS' CLAIMS ARE JUSTICIABLE................................................18

    A.    There is No Exhaustion Requirement for Plaintiffs' APA Claims...........18

    1.    There Are No Military Procedures for Challenging Generally Applicable Regulations. ...................................................................................... 20

    2.    Plaintiffs' Claims Are Exempt from Exhaustion. ........................................ 21

3. Any Administrative Exhaustion Requirements That May Apply Are Discretionary and Non-Jurisdictional. ............................................. 22

B. *Mindes* Does Not Apply to Plaintiffs' Facial Challenges. ......................23

C. Plaintiffs' Claims Are Ripe. .....................................................................25

V. PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATIONS OF INFORMED CONSENT LAWS ...........................................................................26

A. Plaintiffs Have Stated a Claim for Informed Consent Violations. ..........26

B. Plaintiffs Have Stated Claims for Non-Statutory Review. .....................26

C. Plaintiffs Challenge Discrete, Final Agency Actions. .............................27

D. Anthrax Vaccine Mandate Cases Are Persuasive Precedent and Support Facial Plausibility of Plaintiffs' Informed Consent Claims. ....................29

VI. THE COURT CANNOT DISMISS WITHOUT PRODUCTION OF THE ADMINISTRATIVE RECORD AND/OR A HEARING REGARDING POST-RESCISSION ACTIONS ...................................................................................30

VII. CONCLUSION .................................................................................................32

CERTIFICATE OF SERVICE ..................................................................................32

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| |
|---|
| **BENJAMIN COKER**, *et al.* |
| *Plaintiffs* |
| **v.** |
| **LLOYD AUSTIN, III**, *et al.* |
| *Defendants.* |

**No. 3:21-cv-1211-AW-HTC**

## INTRODUCTION

For the reasons set forth below, this Court must deny Defendants' April 28, 2023 motion to dismiss, ECF 144, Plaintiffs' April 6, 2022 Third Amended and Supplement Complaint ("TAC"). ECF 137.

## LEGAL  STANDARDS

### I.    RULE 12(b)(1) CHALLENGE TO SUBJECT MATTER JURISDICTION

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). Where, as here, "a challenged rule is replaced with a new rule," "the change will not moot the case if the government

repeals the challenged rule and replaces it with something substantially similar." *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020).

"The burden of establishing mootness rests with the party seeking dismissal." *Beta Upsilon Chi Upsilon Ch. at the Univ. of Fla. v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009)); *see also West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("[T]he Government, not petitioners, bears the burden to establish that a once-live case has become moot.").

In assessing a motion to dismiss under Rule 12(b)(1), a district court "may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir.1991). In such cases, "a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline*, 921 F.2d at 1243; *accord Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (cleaned up).

## II.     RULE 12(B)(6) FAILURE TO STATE A CLAIM.

In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court set forth the "plausibility" standard that Plaintiffs must meet to survive a Rule 12(b)(6) motion to dismiss. A complaint "does not need detailed factual allegations," but they must "be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 544.

"In ruling on a 12(b)(6) motion," the Court must "accept[] the factual allegations in the complaint as true," and it must "construe[] them in the light most favorable to the plaintiff." *Speaker*, 623 F.3d at 1379 (citation omitted). Further, the Court "must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

For an Administrative Procedure Act ("APA") claim, this simply requires the plaintiff "to allege the specific nature of the … obligation [the agency] failed to satisfy." *Speaker v. HHS*, 623 F.3d 1371, 1381 (11th Cir.2010) ("*Speaker*"). For a claim that agency action is arbitrary and capricious, a plaintiff must allege facts sufficient to show one of the types of conduct found to violate the APA. *See, e.g., J.E.C.M. v. Lloyd*, 352 F.Supp.3d 559, 583 (E.D. Va. 2018) ("*J.E.C.M.*") (plaintiff had stated APA claims because agency "was motivated by 'factors which Congress has not intended it to consider'") (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

Judicial review of agency actions under the APA "must proceed on the complete administrative record." *Gupta v. U.S. Attorney General*, 2014 WL 12868884, at *1 (M.D. Fla. Nov. 21, 2014) (citation omitted). *See also Vargus v. McHugh*, 87 F.Supp.3d 298, 302 (D.D.C. 2015) (the court "cannot fully evaluate"

the government's arguments for dismissal regardless of "[w]hether ... th[o]se points [were] dispositive of Plaintiff's claims").

A court cannot rule on a motion to dismiss an APA claim of arbitrary and capricious agency action because the court is reviewing not only the legality of the agency's action, but also "the path by which it reached its decision." *Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325, 339 (D.C. Cir.1989). *See also Farrell v. Tillerson*, 315 F.Supp.3d 47, 69 (D.D.C.2018). In the absence of the record, a court cannot defer to agency decision-making because Rule 12 requires the court to "accept the Plaintiffs' well-plead factual allegations as true and resolve all reasonable inferences in the Plaintiffs' favor." *Pitman v. USCIS*, 2017 WL 5991738, at *3 (D. Utah Dec. 1, 2017) ("*Pitman*") (citations omitted).

## ARGUMENT

### I. CONGRESS' RESCISSION IS RETROACTIVE.

On December 23, 2022, the August 24, 2021 DOD Mandate was "rescind[ed]" by Section 525 of the Fiscal Year 2023 National Defense Authorization Act (the "2023 NDAA"). "Rescind" means "an annulling; avoiding, or making void; abrogation; rescission", while "rescission" means "void in its inception"; or "an undoing of it from the beginning." BLACK'S LAW DICTIONARY at 1306 (6th ed. 1990). Thus, by definition, "rescind" has retroactive effect back to the date of the rule's issuance.

4

Congress used the term "rescind", rather than more commonly used terms like "repeal" or "amend", to unambiguously direct Defendants and the courts to go back in time to undo the mandates from the August 24, 2021 issuance through the present. Defendants themselves have acknowledged Congress' unambiguous directive that Section 525 by promising to remove adverse paperwork and correct adverse actions arising from past violations of the now-rescinded mandate. *See* TAC, ¶¶ 99-101.

Neither Congress nor the Supreme Court have adopted a broad presumption that all legislation must be applied prospectively, as Defendants claim. *See* ECF 141-1 at 54 (citations omitted). The presumption against retroactivity does not apply to jurisdictional, procedural, or remedial statutes. *See Landsgraf v. USI Film Products*, 811 U.S. 244, 273-76 (1994). Section 525 is remedial because it confirms or clarifies rights and powers and rights to redress, *see* 2 Sutherland Statutory Construction §§ 41:3 (8th ed. Nov. 2022 Update), namely, that service members may not be mandated COVID-19 vaccines or punished for noncompliance with Secretary Austin's now rescinded August 24, 2021 mandate.

Defendants suggest that Plaintiffs' interpretation of "rescind", based on the undisputed "black letter law" definition in BLACKS LAW DICTIONARY, *see supra* Section I, is limited to "contract law" and does not apply to the rescission of a statute or regulation. ECF 144-1 at 54 n.23. In so doing, however, Defendants implicitly concede that Plaintiffs' interpretation is correct. Plaintiffs are not conscripts, nor are

they property of the State. Instead, they are members of the All-Volunteer Force who agreed to join the military by signing enlistment contracts for a specified contractual term. Their relationship with Military Defendants and the U.S. Government is contractual, even if key contract terms governing eligibility to serve and compensation are set forth in federal statutes.

Congress has the plenary authority to raise and regulate military forces, *see* U.S. CONST. ART I, § 8, CL. 12-14, which it has exercised to abolish conscription and replace it with an All-Volunteer Force governed by contractual relationships. Recognizing the catastrophic effects of the August 24, 2021 DOD Mandate on military readiness, recruitment, and retention, *see* TAC ¶¶ 92-94 & ECF 137-10 at 1-2 (Congressional letter stating that the mandate would cause the Army to lose 75,000 soldiers and disqualified up to 50 percent of likely recruits), Congress again exercised its plenary authority to rescind the COVID mandate. Given the contractual relationship with service members in the AVF, Congress chose to use "rescind", a term originating in contract law, to unambiguously express its intent that rescission must be applied retroactively and to specify the remedy and standard for compliance: restoration of Plaintiffs and other service members to the pre-Mandate *status quo*.

Defendants note that, according to the online Merriam-Webster Thesaurus, "[t]he words 'rescind' and 'repeal' are synonyms." ECF 141-1 at 54 (*citing* https://www.merriam-webster.com/thesaurus/rescind). This is accurate, but

irrelevant. Merriam-Webster also lists over 100 other words as synonyms, including terms like "nullify", "void", "abrogate", and "invalidate" used in the BLACK'S LAW DICTIONARY on which Plaintiffs rely, as well as terms like "call", "surrender", "hold back" that are at best distantly related. Congress can read a dictionary or thesaurus just as well it can read the U.S. Code. Given the wide range of synonyms and potential meanings, Congress selected the one term—"rescind"—that most precisely and concisely expressed its "clear intent" that its directive should "apply retroactively and restore the status quo ante." ECF 141-1 at 54.

In urging the Court to replace the term actually used in Section 525 with another of Defendants' choice, Defendants have "attempted to usurp major policy decisions properly made by Congress." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497 (1979). Defendants also seek to usurp the judicial role insofar as they assert that this Court must defer to their reading of the statute. The meaning of "rescind" is a purely legal question of statutory construction appropriate for judicial review.

## II.   PLAINTIFFS' CLAIMS ARE NOT MOOT.

### A.   Defendants Have Retained or Reenacted a *De Facto* Mandate.

In Section 525, Congress directed Secretary Austin to remove the COVID vaccines from the list of required shots for members of the armed forces as if they had never been there, as a condition of receiving funding in the 2023 NDAA. Yet in the very document purportedly rescinding the Mandate, Secretary Austin retains

existing restrictions, *see* ECF 137-2, Jan. 10, 2023 Secretary Austin Rescission Memo, at 1 ("No individuals currently serving shall be separated solely on the basis of their refusal…"), and he directs commands to consider vaccination status in making "deployment, assignment and other operational decisions." *Id.* at 2. Such broad, sweeping language "allow[s] the [military] to do just about anything it wants …"). *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305–06 (2022) (Alito, J., dissenting). Defendants may consider vaccination status, in conjunction with any other factor whatsoever, for essentially all material decisions involving Plaintiffs' future careers, up to and including discharging them from service or even pursuing criminal prosecution under the Uniform Code of Military Justice ("UCMJ") for failure to obey a lawful order. *See infra* Section II.B.

Defendants claim that the Assistant Secretary of Defense guidance issued February 24, 2023 ("February 24, 2023 Guidance Memo") eliminates this *de facto* mandate. *See* ECF 144-1 at 8-9. But the orders implementing the Deputy Secretary's guidance in the individual service branches do not appear to prohibit commands from taking vaccination status into account in making assignment, deployment, and operational decisions. *See* TAC, ¶¶ 103-110. Where, as here, there is any conflict or ambiguity between Secretary Austin's January 10, 2023 directive and the DOD Assistant Secretary's February 24, 2023 Guidance Memo, "the Secretary's directive controls." February 24, 2023 Guidance Memo at 2. Accordingly, the *de facto*

mandate adopted in the Secretary Austin's controlling January 10, 2023 directive remains in place.[1]

The Executive Branch and expert public health agencies long ago recognized that the mandated monovalent vaccines do not protect against infection or prevent transmission. *See* TAC, ¶¶ 85-91. Congress' rescission of the mandate has removed any legitimate or rational basis for the military to require these shots. But that is irrelevant to Military Defendants because the mandates were not, as they assert, a force protection measure, but rather the means to target and purge service members who had the temerity to assert their statutory and constitutional rights. Defendants' orders implementing Section 525 will ensure that Pentagon leadership can continue their ongoing campaign to illegally discriminate against and purge service members like Plaintiffs with strongly held religious convictions.[2]

---

[1] By "rescinding" the mandate and removing the COVID-19 shots from the list of required immunizations for military members, there is no longer any reason for the DOD to track or consider COVID vaccination status for anyone, including the people who took it. Otherwise, it is just the negative image of the same photograph that Defendants can use to identify. Military Defendants' orders and policies requiring tracking consideration of vaccination status for a vaccine that is no longer required remove any doubt that they have retained or reenacted COVID vaccination requirement substantially similar to the rescinded mandate.

[2] Defendants were aware and even telegraphed that the new policies would result in continuing discrimination against unvaccinated service members. For example, Secretary of the Navy Carlos Del Toro stated in December 2022 that the repeal of the mandate would "unquestionably . . . create almost two classes of citizens in our services . . . Those that can't deploy and those that can deploy." Heather Mongilio, *Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines*, USNI NEWS (Dec. 7, 2022), available at:

This is not idle speculation or hyperbole. Prior to rescission, federal district courts had found that each of the four Armed Services had likely engaged in systematic violations of service members' religious liberties.[3] A Department of Justice attorney arguing in defense of these practices in *Doster v. United States* before the Sixth Circuit Court of Appeals asserted that the military can ignore the Religious Freedom Restoration Act ("RFRA") unless and until sued in federal court.

> According to the Air Force, RFRA allows it to freely burden a service member's religious beliefs (even for irrational reasons) in its day-to-day operations. The Air Force says that the statute gets triggered only in judicial proceedings, at which point it must come up with sufficient justifications for its actions under strict scrutiny. Lest there be any doubt, counsel responded "more or less yes" when asked at argument whether the executive branch took the "position that [it does] not have to worry about RFRA until somebody sues." Arg., No. 22-3497, at 18:37–46.

*Doster v. Kendall*, 54 F.4th 398, 438 (6th Cir. 2022), *denying reh'g*, 2023 WL 2966353 (6th Cir. Apr. 17, 2023).[4]

---

https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines.

[3] *See, e.g., U.S. Navy SEALs 1-26 v. Biden*, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022), 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) (Navy class-wide preliminary injunction); *Doster v. Kendall*, 2022 WL 2974733 (S.D. Ohio July 14, 2022) (Air Force class-wide preliminary injunction); *Colonel Fin. Mgmt. Officer v. Austin*, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022) ("*CFMO*") (Marine Corps class-wide injunction); *Schelske v. Austin*, 2022 WL 17835506 (N.D. Tex. Dec. 16, 2022) (Army preliminary injunction for individual service members).

[4] During oral argument in *Doster v. Kendall*, the Court asked, "Is it the Executive Branch's position that you don't have to worry about RFRA until somebody sues?" Defendant's counsel responded, "More or less, yes. RFRA itself is not a record

The Defendants' continued tracking and consideration of their vaccination status will provide the means to continue to target and punish them going forward. It also demonstrates that rescission has not mooted Plaintiffs' claims because they continue to face credible threats of enforcement and punishment for their beliefs and unvaccinated status as discussed below.

A case is not mooted if the challenged conduct continues after the repeal of an unconstitutional policy, *see, e.g. Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 662 (1993), or where, as here, a defendant "double[s] down" on its challenged action after repeal. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012). Defendants have doubled down on their wrongful conduct by repealing the vaccine mandate in name only, while continuing to discriminate against Plaintiffs by retaining or reenacting vaccination requirements substantially similar to the August 24, 2021 mandate.

**B.    Plaintiffs Continue to Face Credible Threats of Further Punishment for Past Non-Compliance.**

Plaintiffs continue to face a credible threat of involuntary discharge and even criminal prosecution under the UCMJ for violating the now-rescinded mandate, which prevents this case from being moot. *See, e.g., Tandon v. Newsom*, 141 S.Ct.

---

review statute and does not require the government to take any particular process." Oral Argument at 18:38-18:55, *Doster v. Kendall*, No. 22-3497 (6th Cir. Jul. 25, 2022).

1294, 1297 (2021). This threat is neither abstract nor speculative, as demonstrated by the testimony of the DOD and Service Under-Secretaries at a February 28, 2023 hearing before the House Armed Services Committee ("HASC"). There, Under-Secretaries for the DOD and each of the Armed Services repeatedly confirmed that the military deems the service members who did not comply with the now-rescinded mandate to have disobeyed a "lawful order" for which they may be involuntarily discharged and/or prosecuted under the UCMJ. *See* TAC, ¶¶ 112-114 & ECF 137-11, Feb. 28, 2023 HASC Hearing Transcript, at 2-3 (Chairman Banks questioning) & 4-5 (Rep. Gaetz questioning).[5]

### C.   This Court Can Provide Relief Requested by Plaintiffs.

An action for equitable relief remains live so long as the defendant has not "completely and irrevocably eradicated the effects of the alleged [underlying] violation." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). A case cannot be moot where, as here, the replacement rules "threaten [Plaintiffs] in the same way as" as the challenged and rescinded rule, and the agency has "repeatedly refused to disavow enforcement against" Plaintiffs. *Franciscan Alliance v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022).

---

[5] The Under-Secretaries also confirmed that the military has no plans or procedures to reinstate discharged service members or to provide take specific corrective actions for current members, *see id.* at 4-5, who must pursue the existing futile and inadequate military remedies that failed them before. *See infra* Section IV.A.2.

Defendants have stated their intention to continue using vaccination status to make essentially material decisions involving unvaccinated service members. The requested injunctive relief is the only avenue for Plaintiffs to protect their statutory rights and to prevent future criminal prosecution under the UCMJ.

This Court can also provide a declaratory judgment finding that Defendants' actions have violated and continue to violate their federal statutory rights. While this Court cannot order backpay or monetary relief, under principles of res judicata and/or collateral estoppel, declaratory relief can serve as a precursor to monetary relief against the Defendants for backpay in the Court of Federal Claims, which precludes this case from being moot. *See, e.g., Doster*, 54 F.4th at 439 (noting that a declaratory judgment finding Defendants' actions unlawful can serve "as a predicate for monetary damages.").

**D.    Defendants Have Not Taken Corrective Actions.**

Secretary Austin's Rescission Memo and the Armed Services implementing orders state that Military Defendants will remove or correct some (but not all) past adverse actions taken against unvaccinated service members. To date, Defendants have not removed or corrected all of the adverse actions taken against Plaintiffs or restored them to the position in which they would have been absent the unlawful mandates. *See* TAC, ¶¶ 115-118. Nor have they made any legally binding or

enforceable commitment to do so. At most, they have asserted that adverse paperwork "will be removed soon." ECF 144-1 at 21-22.

Defendants' promises to take corrective actions are meaningless because, in their view, no Plaintiff has suffered any adverse actions, *see id.* at 8, so there is nothing to correct. Such a non-promise to correct an undefined scope of adverse actions at some unspecified point in the future is insufficient to establish mootness. *See, e.g., Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) ("a claim becomes moot when a plaintiff actually receives complete relief on that claim, not merely when that relief is offered or tendered").

## E.     Defendants' Voluntary Cessation Does Not Moot This Case.

The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). A defendant asserting that "voluntary compliance moots a case" "bear[s] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Defendants cannot meet this standard because their officials have "a track record of 'moving the goalposts'" and retain the "authority to reinstate [the challenged policies] at any time", subjecting Plaintiffs to a credible threat of

discriminatory vaccination requirements in the future or punishment for past non-compliance. *Tandon*, 141 S. Ct. at 1297. Nor have Defendants offered any evidence that could satisfy their heavy burden. Empty future promises by their counsel do not constitute evidence sufficient to overcome their burden. Indeed, their admission that they have not in fact corrected adverse actions is decisive against them.

### F.   Defendants' Actions Are Capable of Repetition Yet Evade Review.

To qualify for this exception to mootness, Plaintiffs must show "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Fla. Bd. of Bus. Regul. v. N.L.R.B.,* 605 F.2d 916, 920 (5th Cir. 1979) (citation and quotation marks omitted). The rescinded mandate and the *de facto* mandates are "inherently capable of evading review" because they involve a virus that the Defendants admit is constantly changing and a vaccine that has grown less and less effective against that virus over time. Here, the vaccine mandate was in effect for less than 18 months, a time period the Supreme Court has repeatedly held to be insufficient to obtain complete judicial review. *See, e.g., First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978).

With respect to the second requirement, Defendants have "already" "repeat[ed] [their] allegedly wrongful conduct", *City of Jacksonville*, 508 U.S. at

662, by reenacting a substantially similar *de facto* mandate and refusing to repeal or modify their discriminatory policies, procedures, and processes. *See supra* Section II.A. Defendants also continue to defend the lawfulness of the mandates and the language used in the Defendants' acts of rescission are qualified by legalistic phrasing that invites abuse of those who remain unvaccinated. Finally, the Defendants' ongoing campaign to persecute and purge service members like Plaintiffs with strongly held religious convictions demonstrate that there is a reasonable expectation that Plaintiffs will be subjected the same action again.

## III.   PLAINTIFFS HAVE STANDING

### A.   Plaintiffs Have Standing for Claims Against Military Defendants.

Defendants assert that Plaintiffs lack standing against the Military Defendants because Plaintiffs have "already have had any adverse actions based on vaccination status removed from their records (or will be removed soon)." ECF 144-1 at 21-22. Defendants' parenthetical "or will be removed soon" nullifies all that preceded it and concedes that Defendants have not in fact removed or corrected all of the adverse actions taken against Plaintiffs.

Defendants' factually unsupported assertions are contradicted by Plaintiffs' sworn testimony and the factual allegations in the TAC. *See generally* TAC, ¶¶ 142-146 & ECF 137-3 (Plaintiff March 2023 Status Chart). It also flies in the face of Defendants' consistent litigation position that "no Plaintiff has been subject to final

disciplinary action for non-compliance," ECF 107 at 9, and that no Plaintiff has suffered any "final adverse actions" at all. *See* ECF 115, Aug. 29, 2022 Hearing Tr., at 71:1.

Defendants' motion thus asks the Court to trust them that they will correct any remaining adverse actions real soon now, while at the same time denying that any adverse actions were ever taken, rendering their promise meaningless. How will the Court know all of these adverse actions have ever been removed if the claims are dismissed? How can the Court simply trust the DoD's naked assertion in light of how they have treated servicemembers who filed RFRA claims?

Defendants' standing challenge is not, in fact, a Rule 12(b)(1) "factual attack" on the Court's subject matter jurisdiction, because the Parties do not dispute the underlying facts. Nor do Defendants present factual evidence that the actions alleged by Plaintiffs in their sworn testimony actually occurred. This is instead a dispute as to the meaning of "adverse". For the purposes of ruling on Defendants' motion to dismiss, the Court must treat Plaintiffs' factual allegations as true; it cannot dismiss the TAC based on Defendants' unsupported factual assertions or defer to the military narrow definition of "adverse" actions.

## B.    Plaintiffs Have Standing for Claims Against FDA.

This Court's November 12, 2021 Order found that Plaintiffs had standing to pursue preliminary injunctive relief. *See Doe #1-#14 v. Austin*, 572 F.Supp.3d 1224,

1235 (N.D. Fla. 2021). In its November 8, 2022 Order, the Court dismissed Plaintiffs' claims against the FDA as moot because the Second Amended Complaint ("SAC"), ECF 56, did not challenge the FDA's actions with respect to the Moderna's FDA-licensed SPIKEVAX® product and its EUA product. *See* ECF 126, Nov. 8, 2022 Order, at 10. The TAC cures these jurisdictional defects by amending and supplementing the SAC to challenge the FDA's actions with respect to Moderna. *See* ECF 137 at 21-22 & 24-25.

Plaintiffs' arguments for standing and the Court's reasoning in the November 8, 2021 Order regarding the FDA's actions with respect to Pfizer apply equally to its actions regarding Moderna.[6] Having corrected the jurisdictional defect in the TAC, the Court should deny Defendants' motion to dismiss Plaintiffs' claims against the FDA.

## IV.  PLAINTIFFS' CLAIMS ARE JUSTICIABLE.

### A.  There is No Exhaustion Requirement for Plaintiffs' APA Claims.

Courts start with the presumption of a "virtually unflagging" duty to resolve all cases that fall within their jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (citation omitted). Courts must

---

[6] Plaintiffs have repeatedly and extensively briefed the issue of FDA standing for their claims in the First and Second Amended Complaints regarding Pfizer's FDA-licensed COMIRNATY® and EUA products. *See, e.g,*. ECF 68 at 19-22. Defendants motion does not present any new facts or arguments regarding Plaintiffs' standing to sue the FDA so Plaintiffs will not repeat those arguments here.

review a claim against the military if Congress has "provided" for that review. *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *Parisi v. Davidson*, 405 U.S. 34, 39, 44–46 (1972); *see also Axon Enterprise, Inc. v. FTC*, 598 U.S. ---, 2023 WL 2938328, at *20 (May 11, 2023) (Alito, J., concurring) ("When Congress withholds jurisdiction, we must respect its choice. But when Congress grants jurisdiction to the Nation's courts, we must respect that choice too.")

The Supreme Court has repeatedly held that the APA embodies a strong "presumption" favoring judicial review of agency action, *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993), which may only be overcome by a "clear statement" from Congress stripping the federal courts of jurisdiction. *Santos-Zacaria v. Garland*, 598 U.S. ---, 2023 WL 3356525, at *4 (May 18, 2023).

In *Darby v. Cisneros*, 509 U.S. 137, 145 (1993) ("*Darby*"), the Supreme Court held that the APA does not impose an exhaustion requirement and instead "incorporates exhaustion requirements established by statute or agency rule." There is "no military exception to *Darby*." *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 84 (D. Md. 2021) (*quoting Brezler v. Mills*, 220 F. Supp. 3d 303, 323 (E.D.N.Y. 2016). *See also Ostrow v. Sec'y of Air Force*, 48 F.3d 562 (D.C. Cir. 1995) (per curiam); *Crane v. Sec'y of Army*, 92 F.Supp.2d 155, 161 (W.D.N.Y. 2000).[7]

---

[7] Defendants assert that the APA precludes review of "issues about … military policy." ECF 144-1 at 37 (*quoting Saavedra-Bruno v. Albright*, 197 F.3d 1153, 1158 & n.1 (D.C. Cir. 1999)). This broad assertion is incorrect as a matter of black letter

Plaintiffs bring challenges under the APA for Defendants' violations of federal laws, including 10 U.S.C. § 1107a and the 2023 NDAA, that do not require exhaustion as a prerequisite for judicial review. Accordingly, Plaintiffs may seek APA review in this Court.

### 1.    There Are No Military Procedures for Challenging Generally Applicable Regulations.

As  Plaintiffs explained in their September 26, 2022 supplemental briefin on APA exhaustion, there are no military administrative procedures for challenging generally applicable rules or regulations issued by Secretary Austin or a Service Secretary. *See* ECF 119 at 2-3. Each Plaintiff has, however, pursued available military remedies.

All Plaintiffs have submitted a Religious Accommodation Request. Plaintiffs Coker, Connell, Cothran, Craymer, Harwood, Kaltrider, Kupper, Roberts, Sigoloff, and Snow have had their final appeal denied, while Furman and Karr were discharged before they could file an appeal. Plaintiffs Cossette, Dixon, Stermer, and Thompson had their initial RARs denied and had RAR appeals pending when the

---

law and has been repeatedly rejected by the Supreme Court. It is also a misreading of *Saavedra-Bruno*, which makes no such assertion or finding. *Saavedra-Bruno* addressed APA review of decision making by consular officials, rather than military policy; the quoted statement is taken from the APA's legislative history, rather than its text. The APA does provide for a "military exception" to the APA's notice-and-comment rulemaking requirements, *see* 5 U.S.C. § 553, but the TAC does not allege any violation of the APA's rulemaking requirements.

mandate was rescinded and processing of RARs ceased. *See* TAC, ¶ 150. Several have had medical exemption requests denied once if not twice: Connnell (denied twice for cancer); Cothran (denied twice for lack of supply); Craymer (twice); Dixon (twice – nursing and lack of supply); Kaltrider (twice – natural immunity and lack of supply); Karr (fertility); Morgan; Roberts; Sigoloff. *See id.*, ¶ 151.

## 2.   Plaintiffs' Claims Are Exempt from Exhaustion.

Defendants contend that the "doors of the federal courthouse [are] closed" to Plaintiffs unless and until they first seek relief in the applicable Board of Correction of Military Records ("BCMR"). ECF 141-1 at 35 (*quoting Hodges v. Callaway*, 499 F.2d, 420 (5th Cir. 1974)). But several courts have found that available military remedies for the DOD Mandate are futile and inadequate and that service members are therefore exempt from the exhaustion requirement. *See, e.g., Navy SEALs 1-26 v. Biden*, 2022 WL 34443, at *1; *CFMO*, 2022 WL 3643512, at *9. While these opinions address the military's religious accommodation process, the same conclusion should apply with respect to Plaintiffs' claims.

Military procedures are futile and inadequate because a BCMR cannot provide the relief that Plaintiffs seek or hear facial challenges to military regulations. *See Roe v. Shanahan*, 359 F.Supp.3d 382, 403 (E.D. Va. 2019) (a BCMR "cannot adjudicate a claim that the [military] policies *themselves* are unconstitutional or otherwise unlawful.")(emphasis in original). BCMRs are empowered to make

recommendations to the Service Secretary to "correct an error or remove an injustice" with respect to individual service members. 10 U.S.C. § 1552(a)(1). *See also Hodges*, 499 F.2d at 423 ("the Service Secretary always has the final say over decisions by … the BCMR[.]"). In other words, BCMRs may hear only "as-applied" challenges to individual military personnel decisions, which are non-justiciable in the Eleventh Circuit under *Speigner*.

In any case, "[n]othing suggests that the [BCMRs] would depart from the conclusions" of the Service Secretaries or other senior decisionmakers "and conclude that [their] determinations contained an 'error' to 'correct' or an 'injustice' to 'remove.'" *Roe*, 359 F.Supp.3d at 421. Accordingly, plaintiffs are not required to exhaust at a BCMR before seeking relief in federal court. *Id.* at 404.

### 3. Any Administrative Exhaustion Requirements That May Apply Are Discretionary and Non-Jurisdictional.

Defendants once again repeat their erroneous assertion that Plaintiffs are required to seek review before the applicable BCMR. *See, e.g.,* ECF 141-1 at 36-37. Yet they cite no authority that BCMR exhaustion is a jurisdictional requirement for Plaintiffs' claims. Absent a "clear statement" from Congress that exhaustion is jurisdictional, *Santos-Zacaria*, 2023 WL 3356525, at *4, courts lack the authority "to engage in this business of jurisdiction-stripping-by-implication". *Axon Enterprise*, 2023 WL 2938328, at *16 (Gorsuch, J., concurring).

As explained above, service members may seek review of individual military personnel decisions either in the applicable BCMR or a district court at their discretion. Such an administrative exhaustion requirement "is quintessentially a claim-processing rule [that] promotes efficiency in litigation." *Santos-Zacaria*, 2023 WL 3356525, at *4. Defendants seek to convert the BCMR procedure, which is an optional or alternative administrative procedure for challenging individual military personnel decisions, into a mandatory, jurisdictional exhaustion requirement. Doing so "would disserve that very interest", *id.* because it would likely result in a flood of individual BCMR claims challenging a generally applicable regulation (and thus seeking relief that is unavailable) that could more efficiently and expeditiously addressed in district court. Moreover, courts may not dismiss constitutional or statutory challenges for failure to exhaust where the administrative body itself lacks the jurisdiction to hear such claims or to provide the requested relief. *See Axon Enterprise*, 2023 WL 2938328, at *10.

### B.    *Mindes* Does Not Apply to Plaintiffs' Facial Challenges.

Plaintiffs' TAC raises only facial challenges to generally applicable military regulations. Such facial challenges are justiciable under *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001), as this Court found affirmed in its November 8, 2022 Order. *See* ECF 126 at 12. To the extent the justiciability test in *Mindes v. Seaman*, 435 F.2d 197 (5th Cir. 1971), is still applicable in the Eleventh Circuit, it

applies only to "as-applied" claims, which Plaintiffs dropped from the TAC consistent with the Court's November 8, 2022 Order. Defendants appear to concede this point, *see* ECF 144-1 at 34 n.14, as they must in light of controlling Eleventh Circuit precedent and this Court's orders setting forth the law of the case, yet nevertheless now urge the Court to apply the *Mindes* justiciability test and factors to dismiss the TAC.

While inapplicable to Plaintiffs' claims in the TAC, they easily satisfy *Mindes*. Plaintiffs have pursued and exhausted all available military remedies as discussed above, and the four *Mindes* factors support judicial review.

First, Plaintiffs have identified Defendants' violation of numerous federal laws and their own regulations. Plaintiffs' claims are strong because Defendants' post-Rescission generally applicable vaccination requirements are contrary to Congress' directive in Section 525 of the NDA.

Second, Plaintiffs have already and continue to suffer severe injuries, as set forth in the TAC. They also continue to face the credible threat of further punishment or even criminal prosecution under the UCMJ. *See supra* Section II.B.

Third, judicial review would not interfere with military functions. Plaintiffs' claims largely seek to require the military to follow its own regulations. "Requiring the military to follow its own policies does not interfere with its functions." *Roe v. DOD*, 947 F.3d 207, 218 (4th Cir. 2020).

Fourth, the issues raised by Plaintiffs do not implicate military discretion. In Section 525 of the 2023 NDAA, Congress has exercised its plenary authority under Article I, Section 8, cl. 12-14 of the U.S. Constitution to raise and regulate military forces. Where Congress has given an express directive to the military and dictated the remedy, there is no room for military discretion. The principal question before this Court—what does "rescind" mean?—is a "purely a legal matter" appropriate for judicial review. *Air Force Officer v. Austin,* 2022 WL 468799, at *8 (M.D. Ga. Feb. 15, 2022) (*quoting Mindes*, 453 F.2d at 201). Similarly, the question of whether Defendants' actions against Plaintiffs for non-compliance with the mandate are "adverse" actions for purpose of standing and defeating mootness is a purely legal matter that does not implicate military discretion or require deference to military judgments.

### C.    Plaintiffs' Claims Are Ripe.

Defendants assert in passing that Plaintiffs' claims are "unripe as well", ECF 141-1 at 24, without explaining why. Plaintiffs' claims in the TAC are "facial challenge[s]" presenting "purely legal claim[s] [that are] presumptively ripe for judicial review because [they] do[] not require a developed factual record." ECF 126, November 8, 2022 Order, at 8 (*quoting Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).

## V.   PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATIONS OF INFORMED CONSENT LAWS.

### A.   Plaintiffs Have Stated a Claim for Informed Consent Violations.

To state a claim under the APA, a plaintiff need only "allege the specific nature of the … obligation [the agency] failed to satisfy." *Speaker*, 623 F.3d at 1381. The Court's November 8, 2022 appears to find that Plaintiffs' carried this burden for their Informed Consent claims, and reject Defedants' argument to the contrary:

> The rub is that the FDA and the military determined that an EUA vaccine—or at least the Pfizer EUA vaccine—is essentially the same as the FDA-approved version. The government acknowledges that the two are "legally distinct" but insists nonetheless that they are close enough such that the EUA version can be mandated without a presidential waiver. At the preliminary injunction stage, I concluded that the government's interpretation of § 1107a was unpersuasive. ECF No. 47 at 14. A fully approved FDA-compliant vaccine is not always the same as its EUA counterpart.

ECF 126 at 4.

### B.   Plaintiffs Have Stated Claims for Non-Statutory Review.

TAC Counts 4 and 8 seek non-statutory review of Defendant officials' *ultra vires* actions in the event that the Court determines that one or more of the challenged actions are not "final" agency actions. Plaintiffs satisfy the "critical factors" for such non-statutory review. ECF 144-1 at 48 (*quoting Puerto Rico v. United States*, 490 F.3d 50, 59 (1st Cir. 2007)).

Plaintiffs have alleged that officers of the United States, *e.g.,* Peter Marks and Terry Adirim, have violated numerous federal statutes, including the Informed

Consent Laws, the EUA statue, the Public Health Safety Act, and the Food, Drug, and Cosmetic Act, as well as applicable DOD and FDA regulations implementing these statutes. None of these officials and officers of the United States had any statutory authority to make interchangeability determinations, to waive mandatory statutory requirements, or to confer the legal status or benefits of FDA licensure on unlicensed EUA products. In doing so, these officials have "wholly deprive[d] [Plaintiffs] of a meaningful and adequate means of vindicating [their] ... rights" under these federal statutes. *Rhode Island Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 41–42 (1st Cir.2002).

Plaintiffs have pleaded more than sufficient facts for a reasonable factfinder to conclude that the Defendants' combined actions (*i.e.*, Defendants' interchangeability determinations and the FDA waivers of mandatory statutory requirements) were specifically designed to wholly deprive service members of their statutory rights to informed consent in 10 U.S.C. §1107a. It is no great leap to suggest that this was all done to avoid having to comply with the requirements of 10 U.S.C. §1107a and vitiate Plaintiffs' informed consent rights.

### C.    Plaintiffs Challenge Discrete, Final Agency Actions.

Plaintiffs' claims are not impermissible "Programmatic Attacks" against broad agency policies. ECF 144-1 at 43-48. Plaintiffs instead challenge a series of discrete, final and inter-related agency actions as set forth in the TAC: (1) Secretary

Austin's January 10, 2023 Rescission Memorandum and its retention or reenactment of a *de facto* mandate substantially similar to the now-rescinded mandate, *see* ECF 137-2; (2) Military Defendants' specific post-Rescission generally applicable orders and policies implementing rescission of the mandate, *see generally* TAC, ¶¶ 100-110 (identifying DOD and Armed Services orders and policies challenged by Plaintiffs), including the DOD's Interchangeability Directives, which remain in place, *see id.*, ¶¶ 58-61; (3) Military Defendants' generally applicable orders or policy that it may continue to enforce or punish non-compliance with the now-rescinded mandates; (4) the FDA Interchangeability Guidance, *see id.*, ¶¶ 135-138; and (5) the FDA's waiver of mandatory statutory requirements through "enforcement discretion." *See id.*, ¶¶ 139-141.

With the possible exception of the interchangeability directives and the FDA's waivers, each of these agency actions are final because these actions: (1) "mark the consummation of the agency's decisionmaking process;" and (2) are actions "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations and internal quotations omitted).

Plaintiffs do not, as Defendants' assert, "challenge 'the continuing (and thus constantly changing) operations of the' military as it carries out its policies." ECF 144-1 at 44 (*quoting Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990)). The

agency actions challenged in the TAC set forth Defendants' consistent policy from the issuance of the mandate through the present.

Further, contrary to Defendants' assertion that many instances of agency action in the aggregate cannot be challenged under the APA, similar yet discrete injuries that occur repeatedly or continuously can be challenged without constituting "a broad programmatic attack." *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 21 (D.D.C. 2018). "Because Plaintiffs are attempting to correct discrete agency action, and not an agency's policy as a whole, Defendants' arguments here are without merit." *Missouri v. Biden*, --- F.Supp.3d ---, 2023 WL 2578260, at *27 (W.D. La. Mar. 20, 2023).

### D.     Anthrax Vaccine Mandate Cases Are Persuasive Precedent and Support Facial Plausibility of Plaintiffs' Informed Consent Claims.

In the TAC, Plaintiffs describe the military's nearly century long policy of using America's citizen-soldiers for testing experimental medical treatments. *See* TAC, ¶¶ 47-49. These policies have required Congressional or judicial intervention to stop DoD from experimenting on America's citizen soldiers on at least three different occasions in the last 30 years.

The most recent and relevant instance was the DOD's Anthrax vaccine mandate that was successfully challenged in the *Doe v. Rumsfeld* line of cases. *See* TAC, ¶¶ 50-52 (*discussing Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003), *modified sub nom. John Doe No. 1 v Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004),

*modified sub nom. John Doe No. 1 v. Rumsfeld*, 2005 WL 774857 (D.D.C. Feb. 6,

2005)). There, the D.C. district court found that the mandate of unlicensed vaccines

violated service members' informed consent rights and repeatedly enjoined

Defendants DOD and FDA from mandating unlicensed vaccines.[8] The *Doe v.*

*Rumsfeld* cases are, at a minimum, persuasive precedent because they addressed the

same violations of the informed consent laws by the DOD and FDA that are alleged

here.[9]

## VI.   THE COURT CANNOT DISMISS WITHOUT PRODUCTION OF THE ADMINISTRATIVE RECORD AND/OR A HEARING REGARDING POST-RESCISSION ACTIONS

This Court cannot rule on Defendants' motion to dismission without the

complete administrative record. *See, e.g., Occidental Petroleum Corp. v. S.E.C.*, 873

F.2d 325, 339 (D.C. Cir.1989); *Farrell v. Tillerson*, 315 F.Supp.3d 47, 69

(D.D.C.2018) ("*Farrell*"). While Military Defendants have produced the

administrative record for the rescinded August 24, 2021 mandate, they have not

---

[8] In the final chapter of the *Doe v. Rumsfeld* litigation, the Court found that DoD's and FDA's arguments defending its program – many of the same ones they have used here – were "not substantially justified" under the Equal Access to Justice Act. and ordered the DOD and FDA to pay plaintiffs' attorneys' fees. *Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 190 (D.D.C. 2007)(citations omitted). There as here, Defendants had "abruptly altered course" without explanation, which the court found "indicative of the unreasonableness of the agency's initial stance." *Id.*

[9] Thus, for Plaintiffs Kupper, Snow, Stermer and Thomspon, this is now the third different time during their careers where DOD has knowingly used unlicensed or experimental biologics on the all-volunteer force. *See* TAC ¶ 53.

provided any record materials for the post-Rescission generally applicable COVID vaccination policies and orders challenged in the TAC. Defendant FDA has not provided an index of the record supporting the actions challenged in the TAC; without such an index, Plaintiffs cannot determine whether the limited number documents provided to date are in the FDA record or not.

There are also significant factual disputes as to what the Military Defendants' post-Rescission COVID vaccination policies are. Plaintiffs' theory of the case is predicated on allegations, supported by record evidence, that Defendants' have unlawfully taken (and will continue to take) adverse actions against them on the basis of their COVID vaccination status. Defendants attempt to refute these critical, merits-based allegations by submitting ever-changing and contradictory departmental-level orders that formally rescind vaccination requirements, without any evidence that they have in fact done so. Defendants' promises to take corrective actions are meaningless because, in their view, no Plaintiff has suffered any final adverse actions, so there is nothing to correct. Plaintiffs, by contrast, have repeatedly submitted actual evidence of their injuries and Defendants' ongoing discriminatory actions in sworn testimony by competent witnesses who experienced it.

Plaintiffs should be afforded an opportunity for a hearing, limited discovery, and/or record review before the Court simply accepts at face value Defendants' factually unsupported view of these central and disputed merits questions. *See, e.g.,*

*Williamson v. Tucker*, 645 F.2d 404, 412-414 (5th Cir. 1981). Defendants' mootness arguments require the Court to rule on the merits of Plaintiffs' claims; fundamental fairness dictates Plaintiffs have some opportunity to discovery or hearing, even if limited to jurisdictional issues, to test Defendants' factual contentions. *Williamson*, 645 F.2d at 414.

## VII.  CONCLUSION

Defendants' Motion to Dismiss should be denied in its entirety.

Dated:  May 19, 2023              Respectfully submitted,

                                  */s/ Brandon Johnson*
                                  Brandon Johnson, Esq.
                                  DC Bar No. 491370
                                  Defending the Republic
                                  2911 Turtle Creek Blvd., Suite 300
                                  Dallas, TX 75219
                                  Tel. (214) 707-1775
                                  Email: bcj@defendingtherepublic.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion and memorandum is 8,000 words or less according to Microsoft Word's word count function.

*/s/ Brandon Johnson*

## CERTIFICATE OF SERVICE

This is to certify that on this 19th day of May, 2023, the foregoing document was e-filed using the CM/ECF system.

*/s/ Brandon Johnson*