## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

**BENJAMIN COKER,** *et al.***,**

               Plaintiffs,

   v.

**LLOYD AUSTIN, III, in his official capacity as Secretary of Defense,** *et al.***,**

               Defendants.

Case No. 3:21-cv-01211-AW-HTC

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

ARGUMENT............................................................. 2

I.  Plaintiffs have Failed to Establish the Court's Subject-Matter
    Jurisdiction over their Claims. ....................................2

    A.  Plaintiffs Lack Standing to Challenge Alleged "Post-Rescission
        Vaccination Orders," and the Court should Dismiss Claims 1-2. ........2

    B.  The Court Should Dismiss Plaintiffs' Challenges to the
        Rescinded Vaccination Requirement as Moot. ...................................4

    C.  Plaintiffs Lack Standing to Raise Informed Consent Claims for
        Additional Reasons. .................................................9

    D.  Challenges to FDA Actions Should be Dismissed for Lack of
        Jurisdiction. .......................................................9

II. Plaintiffs' Claims Fail to Satisfy *Mindes* Scrutiny.......................................10

    A.  *Mindes* Applies Here........................................................10

    B.  Plaintiffs Have Not Established that BCMR Relief Was Sought
        or is Inadequate....................................................15

    C.  Plaintiffs Effectively Abandon Any Argument that the *Mindes*
        Factors Weigh in Favor of Review....................................17

III. Plaintiffs Otherwise Fail to State a Claim. .................................................18

    A.  Plaintiffs' Opposition Does Not Identify the Discrete Agency
        Action Challenged in Each APA Count. ...........................................18

    B.  Plaintiffs Fail to Demonstrate the Critical Factors Necessary for
        Nonstatutory Review ......................................................19

    C.  The NDAA Does Not Apply Retroactively to All Prior Actions
        Taken by the Military Related to the COVID-19 Vaccination
        Requirement. .....................................................20

D.    Informed Consent Claims Should Be Dismissed for Additional
      Reasons........................................................................................22

E.    Claims Against FDA Should be Dismissed For Additional
      Reasons........................................................................................23

F.    Plaintiffs' APA Claims Should Be Dismissed on the Pleadings. .......23

CONCLUSION ...................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967) ..................................................................11

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  271 F.3d 262 (D.C. Cir. 2001)...................................................24

*Austin v. U.S. Navy SEALs 1-26*,
  142 S. Ct. 1301 (2022).............................................................17

*Axon Enter., Inc. v. FTC*,
  143 S. Ct. 890 (2023)...............................................................20

*Baldwin Metals Co. v. Donovan*,
  642 F.2d 768 (5th Cir. 1981) ...............................................11, 16

*Bard v. Seamans*,
  507 F.2d 765 (10th Cir. 1974) ..................................................16

*Bark v. USFS*,
  37 F. Supp. 3d 41 (D.D.C. 2014) ...............................................19

*Bates v. Donley*,
  935 F. Supp. 2d 14 (D.D.C. 2013) .............................................23

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*,
  217 F.3d 393 (5th Cir. 2000) ......................................................8

*Bell v. United States*,
  366 U.S. 393 (1961) ..................................................................22

*Coker v. Austin*,
  No. 3:21-cv-1211-AW-HTC, 2022 WL 19333274 (N.D. Fla. Nov. 7, 2022) .....10

*Colonel Fin. Mgmt. Officer v. Austin,* ("*Col. FMO*"),
  No. 8:22-cv-1275, 2023 WL 2764767 (M.D. Fla. Apr. 3, 2023)....................8, 9

*Cousins v. Sec'y of U.S. Dep't of Transp.*,
   880 F.2d 603 (1st Cir. 1989)...............................................................20

*Darby v. Cisneros*,
   509 U.S. 137 (1993) ...........................................................12, 13, 15

*Doe 1-14 v. Austin*,
   572 F. Supp.3d 1224 (N.D. Fla. 2021) ................................................ 9

*Doster v. Kendall*,
   54 F.4th 398 (6th Cir. 2022),
   *reh'g en banc denied*, 65 F.4th 792 (6th Cir. 2023) ............................ 6

*Elgin v. Dep't of the Treasury*,
   567 U.S. 1 (2012) ..............................................................................20

*Farrell v. Tillerson*,
   315 F. Supp. 3d 47 (D.D.C. 2018) .....................................................24

*Fla. Dep't of Lab. & Emp. Sec. v. U.S. Dep't of Lab.*,
   893 F.2d 1319 (11th Cir. 1990) .........................................................14

*Fla. Power & Light Co. v Lorion*,
   470 U.S. 729 (1985) ..........................................................................14

*Golden and Zimmerman, LLC v. Domenech*,
   559 F.3d 426 (4th Cir. 2010) .............................................................18

*Golden v. Zwickler*,
   394 U.S. 103 (1969) ............................................................................ 6

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) ..........................................................................11

*Gupta v. U.S. Att'y Gen.*,
   No. 6:13-cv-1027-Orl-40KRS, 2015 WL 13788645 (M.D. Fla. May 5, 2015)...24

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
   138 S. Ct. 13 (2017) ..........................................................................11

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) ...............................................................15

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004).............................................................18

*Keister v. Bell*,
    29 F.4th 1239 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1020 (2023) ................ 7

*LaRouche v. Fowler*,
    152 F.3d 974 (D.C. Cir. 1998)............................................................. 8

*Linfors v. United States*,
    673 F.2d 332 (11th Cir. 1982) .......................................................12, 16

*Loma Linda Univ. Med. Ctr. v. Sebelius*,
    684 F. Supp. 2d 42 (D.D.C. 2010) .....................................................23

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ............................................................14

*Martin v. Donley*,
    886 F. Supp. 2d 1 (D.D.C. 2012) ......................................................23

*Mazares v. Dep't of the Navy*,
    302 F.3d 1382 (Fed. Cir. 2002).........................................................23

*McCarthy v. Madigan*,
    503 U.S. 140 (1992) .......................................................................11

*McCurdy v. Zuckert*,
    359 F.2d 491 (5th Cir. 1966) ............................................................16

*McDonald's Corp. v. Robertson*,
    147 F.3d 1301 (11th Cir. 1998) .........................................................24

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ....................................................................... 6

*Meister v. Tex. Adjutant Gen. Dep't*,
   233 F.3d 332 (5th Cir. 2000) ...........................................................................12

*Mindes v. Seaman*,
   453 F.2d 197 (5th Cir. 1971) ....................................................................10, 12

*Mohammadi-Motlagh v. INS*,
   727 F.2d 1450 (9th Cir. 1984) ........................................................................24

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ........................................................................................24

*O'Neil v. Sec'y of the Navy*,
   76 F. Supp. 2d 641 (W.D. Pa. 1999) ...............................................................23

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................................................17

*Pharmachemie B.V. v. Barr Lab'ys, Inc.*,
   276 F.3d 627 (D.C. Cir. 2002) .......................................................................8, 9

*Puerto Rico v. United States*,
   490 F.3d 50 (1st Cir. 2007) .............................................................................20

*Ramirez v. ICE*,
   310 F. Supp. 3d 7 (D.D.C. 2018) ....................................................................19

*RCM Techs., Inc. v. DHS*,
   614 F. Supp. 2d 39 (D.D.C. 2009) ..................................................................19

*Rivers v. Roadway Express, Inc.*,
   511 U.S. 298 (1994) ........................................................................................21

*Rucker v. Sec'y of the Army*,
   702 F.2d 966 (11th Cir. 1983) ........................................................................14

*Sanchez-Espinoza v. Reagan*,
   770 F.2d 202 (D.C. Cir. 1985) ........................................................................11

*Schism v. United States*,
  316 F.3d 1259 (Fed. Cir. 2002)............................................................22

*Short v. Berger*,
  593 F. Supp. 3d 944 (C.D. Cal. 2022),
  *appeal dismissed*, No. 22-55339, 2022 WL 2421096 (9th Cir. May 17, 2022)...15

*Speigner v. Alexander*,
  248 F.3d 1292 (11th Cir. 2001) ........................................................12

*Swisher Int'l, Inc. v. FDA*,
  No. 21-13088, 2022 WL 320889 (11th Cir. Feb. 3, 2022) ..................................17

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).......................................................... 6

*Troiano v. Supervisor of Elections in Palm Beach Cnty.*,
  382 F.3d 1276 (11th Cir. 2004) ........................................................ 7

*Union Oil Co. of Cal. v. Alaska, Dep't of Nat. Res.*,
  526 P.2d 1357 (Alaska 1974)............................................................13

*United States v. Shearer*,
  473 U.S. 52 (1985) ........................................................14

*Vibe Micro, Inc. v. Shabanets*,
  878 F.3d 1291 (11th Cir. 2018) ........................................................24

*Von Hoffburg v. Alexander*,
  615 F.2d 633 (5th Cir. 1980) ........................................................ 12, 14, 15, 16

*West v. Brown*,
  558 F.2d 757 (5th Cir. 1977) ........................................................12

*Wilt v. Gilmore*,
  62 F. App'x 484 (4th Cir. 2003) ........................................................15

*Winck v. England*,
  327 F.3d 1296 (11th Cir. 2003) ........................................................ 11, 12, 14, 16

*Winter v. NRDC*,
   555 U.S. 7 (2008) ................................................................................11

*Zemeka v. Holder*,
   963 F. Supp. 2d 22 (D.D.C. 2013) ....................................................23

**STATUTES**

5 U.S.C. § 551(13) ..................................................................................18

5 U.S.C. § 702 .........................................................................................12

5 U.S.C. § 704 ..............................................................................11, 12, 13

5 U.S.C. § 706 .........................................................................................24

10 U.S.C. § 1552(a)(1) ............................................................................13

**RULES**

Fed. R. Civ. P. 8(a)(3) ............................................................................14

**OTHER AUTHORITIES**

2 Sutherland Stat. Const. (8th ed. Nov. 2022) .......................................21

18A Charles Alan Wright & Arthur R. Miller,
   *Federal Practice & Procedure* (3d ed. updated 2023) ........................ 7

S. Amdt. 6526 to H.R. 7776, 117 Cong. (2022),
   https://www.congress.gov/amendment/117th-congress/senate-
   amendment/6526/text, *was not agreed to in Senate,*
   https://www.congress.gov/amendment/117th-congress/senate-
   amendment/6526/actions ...................................................................21

*Impact of Vaccination on Risk of COVID-19–Related Mortality,*
   https://perma.cc/XE67-5Q9B............................................................. 3

*Sen. Cruz Press Release,*
   https://perma.cc/49PR-SQ9Y.............................................................22

*Stay Up to Date*,
   https://perma.cc/MU3U-46JS ............................................................... 4

*Summary of Guidance* (as of August 2022),
   https://perma.cc/EW3L-J3D2 ............................................................. 4

## INTRODUCTION

Plaintiffs effectively abandon their claims against the Food and Drug Administration ("FDA") by not responding to most of Defendants' Motion to Dismiss the FDA claims in the Third Amended Complaint ("TAC"). And Plaintiffs fail to salvage their claims against the military Defendants because they have not identified a single "post-rescission vaccination order" to which they are subject. In the face of substantial evidence that there is no COVID-19 vaccination requirement and that all adverse actions against Plaintiffs have been removed, Plaintiffs do not identify a single lingering injury traceable to the prior challenged mandate and redressable by this Court. Moreover, to the extent Plaintiffs claim their "facial" and "purely legal" challenge also requires this Court to adjudicate individual promotion, assignment and operational decisions, they still have not identified an injury, and in any event, such decisions are not justiciable. Plaintiffs continue to fail to state a claim under the APA or to satisfy the critical factors necessary for nonstatutory review. For all these reasons, the Court should dismiss the TAC.

## ARGUMENT

I. **Plaintiffs have Failed to Establish the Court's Subject-Matter Jurisdiction over their Claims.**

### A. Plaintiffs Lack Standing to Challenge Alleged "Post-Rescission Vaccination Orders," and the Court should Dismiss Claims 1-2.

Plaintiffs are not subject to hypothetical "post rescission vaccination orders," and therefore lack standing to bring Counts 1 and 2. *See* Mem. Supp. Defs.' Mot. to Dismiss ("MTD"), at 18-21, ECF No. 144-1. Plaintiffs continue to insist that language in the January 10 rescission memorandum could be wielded as a "de facto" mandate because it does not prohibit the consideration of vaccination status in general in making operational decisions. *See* Pls.' Opp'n ("Opp."), at 7-9, ECF No. 145. Plaintiffs rely on a portion of the memorandum that refers to *other* immunizations when it states "[o]ther standing Departmental policies, procedures, and processes regarding immunizations remain in effect." Ex. 1, ECF No. 144-4. *See* A.R. 40-562, ECF No. 31-5. Moreover, the Deputy Secretary of Defense explained that, other than complying with entry requirements into a foreign country, "commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." Ex. 2, ECF No. 144-5. Defendants have also shown that each Military

Department rescinded the policies associated with the challenged COVID-19 vaccination requirements. MTD at 8-10.

Plaintiffs also point to a pre-NDAA statement by the Secretary of the Navy that retaining Sailors unvaccinated against COVID-19 would "create almost two classes of citizens in our services . . . [t]hose that can't deploy and those than can deploy." Opp. at 9 n.2 (citation omitted). But that quote is from a news article dated December 7, 2022, weeks before the NDAA passed and subsequent guidance from the Secretary and Deputy Secretary of Defense. Moreover, current policy unambiguously prohibits commanders from considering COVID-19 vaccination status when making deployment, assignment, or other operational decisions. Ex. 2, ECF No. 144-5. Navy policy echoes that prohibition as well. *See* Ex. 8C, NAVADMIN 038/23, ECF No. 144-11, at pdf pp. 12-13 ("COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions.").

And regardless of how the Court interprets the rescission memorandum and guidance, none of the Plaintiffs claim to have been subject to any ongoing action subjecting them to a COVID-19 vaccination requirement.[1]  Nor have they identified

---

[1] Plaintiffs include arguments that the Government has conceded that vaccines are ineffective, and arguments mischaracterizing statements that DOJ made about the Religious Freedom Restoration Act in another case. *See* Opp. at 9-10. Neither argument has any bearing on Plaintiffs' standing, but both propositions are incorrect as a matter of public record. First, the COVID-19 vaccines are still recommended for people six months or older. *See Impact of Vaccination on Risk of COVID-*

any specific operational decision that injured them.  They have no Article III injury, much less one traceable to any vaccine requirement and redressable by the Court.[2]

### B. The Court Should Dismiss Plaintiffs' Challenges to the Rescinded Vaccination Requirement as Moot.

Because the military no longer has a COVID-19 vaccination requirement, Plaintiffs' challenges to that requirement are moot. *See* MTD at 21-26.  Plaintiffs' argument that they nonetheless face a threat of involuntary discharge is not supported by plausible factual allegations, and is in fact demonstrably false.  The Secretary of Defense has directed that "[n]o individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation[,]" and instructed the Services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand."  Ex.

---

*19–Related Mortality,* https://perma.cc/XE67-5Q9B; *Stay Up to Date,* https://perma.cc/MU3U-46JS (CDC recommendations); *see also Summary of Guidance* (as of August 2022), https://perma.cc/EW3L-J3D2 (indicating that available vaccines continue to be effective in protecting against serious illness and death).  Moreover, DOJ argued in *Doster* that RFRA prohibits certain agency actions that burden religious beliefs and creates a cause of action that could force the Government to make a showing in Court, but does not require a specific administrative process.  *See* Appellants' Reply Br., *Doster v. Kendall*, Case No. 22-3497, Dkt. No. 47, at 10-13 (October 14, 2022) (explaining that RFRA does not provide a cause of action to review the administrative exemption process, only whether the application of the policy to an individual is prohibited).

[2] Plaintiffs argue in a footnote that there is something nefarious about tracking vaccination status.  Opp. at 9 n.1.  They have not challenged such tracking, but in any event, their suspicions are baseless.  DoD, of course, keeps medical records for its service members in general, and has particular reason to keep track of vaccination status which affects operational risk management.  *See, e.g.,* MTD at 20-21 (discussing relevance of unvaccinated service members in assessing risk and force protection measures in Navy guidance).

1.  And the Services have already done so for these Plaintiffs.  Each of the Services submitted declarations explaining that any adverse actions resulting from the mandate have been removed.  *See* ECF Nos. 144-8 (Air Force), 144-11 (Navy and Marine Corps), 144-12 and 13 (Army).  At the time of the filing of the Motion to Dismiss, the only possible action outstanding was Major Harwood's promotion.  Ex. 8 ¶ 7, ECF No. 144-11.  That action (which is not justiciable in any event, *see* MTD at 43) has since been completed; the Secretary of the Navy determined that he should be promoted, retroactive to his original date of promotion as if there had been no hold.  Ex. 14 (attached here).  Accordingly, all adverse actions with respect to Plaintiffs have been removed, and Plaintiffs' opposition does not identify any adverse actions that remain.  In the face of these detailed declarations, Plaintiffs' citations to the complaint, Opp. at 13, 16, do not suffice to demonstrate a credible threat of injury.  Nor does Plaintiffs' speculation that unidentified "adverse action" might still exist, Opp. at 17, constitute a specific injury that remains.[3]

Plaintiffs argue that the Court can still order declaratory relief, because such relief would be a predicate for a different court to award backpay or monetary

---

[3] Plaintiffs also suggest that there is something inconsistent about Defendants' statements in the summer of 2022 that Plaintiffs suffered no "final adverse actions" as of that time. *See* Opp. at 16-17.  Defendants' statements accurately reflected the status at the time.  Some adverse actions were later finalized, but as reflected in the declarations, to implement the rescission, Defendants terminated or removed certain actions even though they were not "final adverse actions". *See, e.g.,* Ex. 5 ¶11, ECF No. 144-8.

damages, citing to a Sixth Circuit opinion in a RFRA matter. *See* Opp. at 13 (citing *Doster v. Kendall*, 54 F.4th 398, 439 (6th Cir. 2022), *reh'g en banc denied*, 65 F.4th 792 (6th Cir. 2023)). But the *Doster* decision was describing the basis for class certification in that case, not holding open an otherwise moot case because of a freestanding claim for declaratory relief. Here, there is no claim for damages, and the possibility of a future damages suit, assuming one would even be available, does not prevent this case from becoming moot. Plaintiffs' position contradicts the established principle that declaratory relief must be based on an actual controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Plaintiffs incorrectly assume that they could maintain standing to seek a declaratory judgment by transplanting their perceived standing to litigate a separate claim for monetary relief. This fails under the fundamental principle that a plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Thus, contrary to Plaintiffs' assumption, their claimed standing to seek damages in hypothetical future actions cannot preserve any continued standing to seek a

declaratory judgment here.[4]   The Court previously dismissed all as-applied challenges; given that the facially challenged order has been rescinded and Plaintiffs cannot show any remaining injury, the facial challenge should be dismissed as well.

The voluntary cessation doctrine does not rescue Plaintiffs' moot claims, and Plaintiffs ignore the case law regarding legislative action.  "When a government fully repeals a challenged law, a case challenging that law is almost surely moot." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1020 (2023). And even when a challenged law is not fully repealed, so long as the law or policy has been "unambiguously terminated," any challenge to it is moot, unless a plaintiff identifies a "reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Id.* (quoting *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1285 (11th Cir. 2004)). Here, the challenged policy has been unambiguously terminated by Congress, and the "voluntary cessation" exception does not apply. Even if implementation of the NDAA could be deemed "voluntary," Plaintiffs have provided no reason to think the challenged vaccine requirement will be reinstated, that they will once again be subject to that requirement, and any

---

[4] It is not clear in any event that Plaintiffs could bring a claim for back pay or damages.  They have not identified a relevant waiver of sovereign immunity or attempted to state a claim for backpay. And it is not clear that preclusion would apply to such a claim.  For example, a judgment against official capacity defendants, even on identical claims, would not bind individual capacity defendants in an action for monetary damages. *See, e.g.*, 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4458 (3d ed. updated 2023) ("[A]n official who has litigated in his official capacity is not precluded from relitigation in his personal capacity.").

exemption they seek regarding a new requirement will once again be denied. On the contrary, Defendants have gone beyond what Congress required by, for example, requiring that the records of current service members who sought an exemption be updated. "Because in this action Congress has unambiguously renounced the mandate and has directed by statute a rescission of the mandate, recurrence of the military's challenged conduct seems, absent any compelling evidence to the contrary, remote and implausible." *Colonel Fin. Mgmt. Officer v. Austin,* ("*Col. FMO*"), 2023 WL 2764767, at *2 (M.D. Fla. Apr. 3, 2023). Defendants, for their part, have made clear that they have no intention to reimplement the kind of broad, force-wide COVID-19 vaccination requirement challenged in this case. No commander is authorized to implement even a narrower COVID-19 vaccination requirement without clearance.

Nor is this dispute "capable of repetition yet evading review." *See* Opp. at 15-16. The relevant inquiry under the evading-review analysis is "whether 'the challenged activity is by its very nature short in duration, so that it could not, or probably would not, be able to be adjudicated while fully live.'" *Pharmachemie B.V. v. Barr Lab'ys, Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (quoting *LaRouche v. Fowler*, 152 F.3d 974, 978 (D.C. Cir. 1998)); s*ee also, e.g.*, *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 399 (5th Cir. 2000) (considering whether the challenged action was "inherently capable of evading review" (emphasis

added)). The military requires a number of vaccines and those requirements have been in place for decades, so a vaccination requirement is not "by its very nature short in duration." *Pharmachemie*, 276 F.3d at 633.  And there is no reasonable expectation that these Plaintiffs will be subject to the same action again.  Plaintiffs in *Col. FMO* also argued that this exception applied, and that argument was rejected. 2023 WL 2764767.  This Court should do the same.

### C. Plaintiffs Lack Standing to Raise Informed Consent Claims for Additional Reasons.

Plaintiffs simply ignore the additional standing defects attached to the informed consent claims; Defendants presented additional evidence showing that Plaintiffs were never injured by the DoD guidance because they were never refused licensed or BLA-compliant vaccines.  *See* MTD at 26-29.  Given that they were previously offered a licensed vaccine and are no longer required to receive it, an opinion on whether EUA-labelled vaccine could have been required by DoD would be advisory because it would not address a live "case or controversy."

### D. Challenges to FDA Actions Should be Dismissed for Lack of Jurisdiction.

Plaintiffs argue that they have standing to sue FDA because the Court held they would have had standing to challenge FDA's approval of the Pfizer vaccine. *See* Opp. at 17-18.  But Plaintiffs ignore that the Court's reasoning was premised on DoD's requirement that Plaintiffs *take* the vaccine, which is no longer true. *Doe 1-*

*14 v. Austin*, 572 F. Supp.3d 1224, 1235 (N.D. Fla. 2021); *Coker v. Austin*, 3:21-cv-1211-AW-HTC, 2022 WL 19333274 at *3 (N.D. Fla. Nov. 7, 2022). Presumably for that reason, the TAC does not challenge the approval of the Pfizer or Moderna vaccine. But extending the Court's reasoning to Plaintiffs' current claims leads to the inexorable conclusion that none of Plaintiffs' alleged injuries are fairly traceable to the challenged FDA "actions."   Invalidating FDA's interchangeability findings and exercise of enforcement discretion would have no impact on Plaintiffs.  MTD at 29-34.

Plaintiffs wholly fail to respond to other reasons why this Court lacks jurisdiction over the claims against FDA, including that both the EUA findings and the exercise of enforcement discretion are committed to agency discretion by law. MTD, at 30-31, 33-34.  Indeed, Plaintiffs wholly ignore the discussion of *Heckler v. Cheney* and the exercise of enforcement discretion.  Those claims can be dismissed for this reason alone.

## II.     Plaintiffs' Claims Fail to Satisfy *Mindes* Scrutiny.

### A. *Mindes* Applies Here.

Recognizing that their claims fail to satisfy the doctrine developed from *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), Plaintiffs' opposition seeks to bypass *Mindes* altogether.  First, they suggest that *Mindes* is inapplicable because it is not jurisdictional.  Opp. at 22-23.  Second, they claim that *Mindes* does not apply

to a facial challenge to a regulation. *Id*. at 23-25. Third, they claim that 5 U.S.C. § 704 precludes the Court from finding that the extraordinary relief demanded is unavailable under *Mindes* because of adequate Boards for Correction of Military Records ("BCMRs") remedies. *Id*. at 19-22. Each claim is meritless.

First, the Court should reject Plaintiffs' effort to second-guess *Mindes'* foundation. That *Mindes* is not jurisdictional merely means that it may be subject to waiver or forfeiture. *Cf. Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017); *but see Winck v. England*, 327 F.3d 1296, 1298-1301 (11th Cir. 2003) (declining to subject military exhaustion to waiver principles). "[A]ll the bases for nonmonetary relief" that Plaintiffs have requested "are discretionary," *see Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 (D.C. Cir. 1985) (Scalia, J.), and "extraordinary," *Winter v. NRDC*, 555 U.S. 7, 22 (2008). Thus, the Court exercises its jurisdiction by concluding that traditional equitable principles bar the court from granting the demanded relief at all or at this time. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999); *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).[5] In the military context, principles governing "the withholding of discretionary relief," *see Sanchez-Espinoza*, 770 F.2d at 208;

---

[5] Those principles apply to Plaintiffs' demand for declaratory relief. *Sanchez-Espinoza*, 770 F.2d at 208 n.8; *see also Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967) ("equitable defenses may be interposed" for declaratory and injunctive relief); *Baldwin Metals Co. v. Donovan*, 642 F.2d 768, 775 n.17 (5th Cir. 1981) (similar).

have been "distilled" into a multifactor test, *see Mindes*, 453 F.2d at 201.  The Court has a "duty" to "dismiss any action or deny relief" on these appropriate "equitable ground[s]."  *See* 5 U.S.C. § 702.

Second, although *Speigner v. Alexander*, 248 F.3d 1292 (11th Cir. 2001), does not categorically bar facial challenges to military regulations, it in no way implies that all are justiciable.  *See id*. at 1298.  "[C]laims still fall within *Mindes* that *Stanley* [and *Speigner* do] not encompass."  *See Meister v. Tex. Adjutant Gen. Dep't*, 233 F.3d 332, 341 (5th Cir. 2000).  A wealth of controlling caselaw applies *Mindes* to facial challenges to military regulations.  *See Linfors v. United States*, 673 F.2d 332, 332-34 (11th Cir. 1982) (challenge to "Coast Guard policy of not including time as a cadet for retirement purposes"); *Von Hoffburg v. Alexander*, 615 F.2d 633, 636 (5th Cir. 1980) ("seeking a declaratory judgment that the Army regulation under which [plaintiff] was discharged is unconstitutionally vague"); *West v. Brown*, 558 F.2d 757, 758 (5th Cir. 1977).  Indeed, this Circuit has relatively recently reaffirmed *Mindes'* core principles.  *See Winck*, 327 F.3d at 1303 n.5 (describing how *Mindes'* core had "been adhered to, either expressly or impliedly" in circuit precedent).

Finally, *Darby v. Cisneros*, 509 U.S. 137 (1993)—which does not address military exhaustion—is of no help to Plaintiffs.  Opp. at 19.  In that case, the Supreme Court construed provisions of 5 U.S.C. § 704 providing that agency action is reviewable "whether or not there has been presented or determined an application

for a declaratory order, for any form of reconsideration, or, . . . for an appeal to superior agency authority." 5 U.S.C. § 704.  The Court found an administrative law judge decision reviewable pursuant to that text over the Government's contention that the plaintiff should have sought an appeal to the Secretary of the agency.  *Darby*, 509 U.S. at 141-42, 154.  Specifically, the Court held that "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or" rule.  *Id*. at 154.

But BCMR members are not "superior agency authority," 5 U.S.C. § 704, to any of Plaintiffs' commanders who made any decision at issue in the TAC.  Nor do BCMRs provide a "form of reconsideration" of any challenged action taken by any Plaintiffs' chain of command.  *See* 5 U.S.C. § 704.  As normally used in the context of administrative adjudication, "reconsideration" implies reexamination by the initial decisionmaker.  *See Union Oil Co. of Cal. v. Alaska, Dep't of Nat. Res.*, 526 P.2d 1357, 1363 n.9 (Alaska 1974).  BCMRs, however, are "boards of civilians" existing entirely outside the command structure.  10 U.S.C. § 1552(a)(1).

Properly understood, this Circuit's requirement that military plaintiffs seek adequate relief from the civilian BCMR, which, if denied, can be reviewed on an administrative record, is not the type of exhaustion addressed in *Darby*.  Rather, BCMR review affords a civilian decisionmaker to make a decision on Plaintiffs' claims on the basis of a record, in lieu of proceeding first with  judicial review that

would involve "commanding officers . . . stand[ing] prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions," *see United States v. Shearer*, 473 U.S. 52, 58 (1985), and "continuing supervision" of military commanders "by the issuing court" that a potential "injunction often requires," *see Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Accordingly, this Circuit has stressed, in a decision post-dating *Darby*, that the requirement to seek a BCMR remedy before seeking relief in federal court "'maintain[s] the balance between military authority and the power of federal courts,' . . . by reducing 'inappropriate intrusion into military matters[.]'" *Winck*, 327 F.3d at 1303 (quoting *Von Hoffburg*, 615 F.2d at 637 and *Rucker v. Sec'y of the Army*, 702 F.2d 966, 969 (11th Cir. 1983)).

Moreover, Plaintiffs' reliance on the APA to oppose *Mindes* is in tension with the TAC's long list of specific relief sought.  The proper APA remedy "except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Fla. Power & Light Co. v Lorion*, 470 U.S. 729, 744 (1985); *see also Fla. Dep't of Lab. & Emp. Sec. v. U.S. Dep't of Lab.*, 893 F.2d 1319, 1322 (11th Cir. 1990) ("If the agency has misapplied the law, . . . the case must be remanded to the agency to make a new determination").  But the TAC does not request an order remanding any challenged agency action to the military on its list of specific demands.  *See* Fed. R. Civ. P. 8(a)(3) (requiring the demanded relief to be included

in the pleading).  Given that mismatch, whether and how *Darby* would apply if Plaintiffs sought a typical APA remedy need not be addressed to conclude that the TAC should be dismissed because the relief demanded is unavailable under *Mindes*. Thus the TAC provides no basis to reach the legal questions it presents.[6]

### B. Plaintiffs Have Not Established that BCMR Relief Was Sought or is Inadequate.

Plaintiffs are wrong to suggest that discretionary relief should be available because they made religious and medical exemption requests and because BCMR relief would be inadequate.  First, Plaintiffs' citation to their religious and medical exemption requests, Opp. at 20-21, focuses on the wrong administrative process, *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974); *Short v. Berger*, 593 F. Supp. 3d 944, 950 (C.D. Cal. 2022), *appeal dismissed*, 2022 WL 2421096 (9th Cir. May 17, 2022), and is especially meritless given the disconnect between the exemptions requested and the issues in this case.

Second, BCMR remedies are adequate.  Military remedies are inadequate "'where no genuine opportunity for adequate relief exists, irreparable injury will

---

[6] Even if *Darby* precluded military exhaustion for Plaintiffs' APA claims, that conclusion would "not preclude application of the exhaustion requirement to [their] other claims" in Count 4.  *See Von Hoffburg*, 615 F.2d at 641.  Again, it would then be imprudent to review the APA claims at the same time the BCMR is reviewing Count-4 related issues.  *See Wilt v. Gilmore*, 62 F. App'x 484, 488-89 (4th Cir. 2003); *see also Darby*, 509 U.S. at 146 ("[F]ederal courts [remain] free to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review").

result if the complaining party is compelled to pursue administrative remedies, or an administrative appeal would be futile.'" *Winck*, 327 F.3d at 1304 (citation omitted).

Plaintiffs' argument that BCMR relief would be inadequate because "there are no military administrative procedures for challenging generally applicable rules or regulations," Opp. at 20, misstates the relevant inquiry.  If the BCMR can redress Plaintiffs' injury, it can provide an adequate remedy, regardless of the ground on which it acts.  *See Linfors*, 673 F.2d at 334; *Baldwin Metals*, 642 F.2d at 775 n.17; *Bard v. Seamans*, 507 F.2d 765, 769 (10th Cir. 1974); *McCurdy v. Zuckert*, 359 F.2d 491, 494 (5th Cir. 1966) (considering whether "as a result of" administrative remedy "any possible injury could be repaired," not the legal basis for the redressed injury). And BCMRs have broad latitude to redress injuries through records corrections.

Moreover, Plaintiffs' argument is irreconcilable with this Circuit's precedent requiring BCMR action when plaintiffs challenge generally appliable military regulations or policies. *See Linfors*, 673 F.3d at 333-34 (challenging generally applicable "Coast Guard policy of not including time as a cadet for retirement purposes"); *Von Hoffburg*, 615 F.2d at 638-39 ("seeking a declaratory judgment that the Army regulation under which she was discharged is unconstitutionally vague"). At bottom, Plaintiffs provide no explanation as to why the BCMR cannot "restore Plaintiffs to the pre-Mandate *status quo ante*," TAC, Relief Requested.

### C. Plaintiffs Effectively Abandon Any Argument that the *Mindes* Factors Weigh in Favor of Review.

Plaintiffs' opposition makes plain that the *Mindes* factors weigh against review.  Opp. at 24-25.  The sweeping relief they demand would subject military commanders to this Court's oversight whenever Plaintiffs claim that some future military action is related to their COVID-19 vaccination status.  Plaintiffs justify that intervention with a cursory reference only to "Defendants' post-Recission generally applicable [COVID-19] vaccination requirements," *id*. at 24, which do not exist and remain unidentified.   Insofar as Plaintiffs are describing future commander operational decisionmaking, *see id*. at 8, any order is hypothetical.  Moreover, the Supreme Court recently entered an emergency stay in related litigation to curtail such judicial action.  *See Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (mem.) (Kavanaugh, J., concurring).  Thus, even if Plaintiffs could establish a prospective injury sufficient to establish standing, Opp. at 24—which they cannot, *see supra* at 2-4—they have not established that they meet the more demanding burden to seek interference in military decisionmaking under *Mindes*.  *Cf. O'Shea v. Littleton*, 414 U.S. 488, 499 (1974); *Swisher Int'l, Inc. v. FDA*, 2022 WL 320889, at *6 n.5 (11th Cir. Feb. 3, 2022).

**III.   Plaintiffs Otherwise Fail to State a Claim.**

   **A. Plaintiffs' Opposition Does Not Identify the Discrete Agency Action Challenged in Each APA Count.**

Plaintiffs also fail to identify the discrete action at issue in each of the APA Counts.   They claim that the first two counts of the TAC challenge the 2023 Rescission Memorandum, Opp. at 27-28, but those counts plainly challenge unspecified policies and commander decisions, TAC ¶¶ 156, 173.   Indeed, Plaintiffs state they are challenging "Defendants' consistent policy from the issuance of the [August 2021] mandate," Opp. at 28-29, not some specific right or obligation determined in the Rescission Memorandum.

But even if the TAC challenged the Rescission Memorandum's reference to pre-existing immunization requirements (including non-COVID-immunization requirements) as the agency action subject to judicial review, Plaintiffs have not explained how that reference is an "agency action" under the APA, 5 U.S.C. § 551(13), let alone final agency action.   Plaintiffs have not explained how a reference to prior immunization requirements determines any rights or obligations or how legal consequences flow from it.   *See Golden and Zimmerman, LLC v. Domenech*, 559 F.3d 426, 432-33 (4th Cir. 2010); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004).   Insofar as Plaintiffs complain that their commanders have discretion to consider vaccination status in making operational

decisions, the decisionmaking process certainly cannot be final before the commander even makes a decision.

Other than discussion of the Rescission Memorandum, Plaintiffs' opposition refers to "generally applicable orders and policies" rather than identifying the discrete action or actions at issue. Opp. at 28. The opposition "point[s] to no written rules, orders, or even guidance documents of the [Defendants] that set forth the supposed" de facto mandate. *See Bark v. USFS*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014); *see also RCM Techs., Inc. v. DHS*, 614 F. Supp. 2d 39, 43-45 (D.D.C. 2009) (finding no agency action in challenge to purported agency policy). And the opposition appears to concede that the "interchangeability directives and the FDA's waivers"—even if they were agency actions within the meaning of the APA (which they are not)— fail to satisfy the *Bennett v. Spear* test. Opp. at 28. The APA counts in the TAC do not seek to hold unlawful any decisions that are akin to the circumscribed decisions to place the teenage plaintiffs in ICE detention facilities challenged in *Ramirez v. ICE*, 310 F. Supp. 3d 7, 21 (D.D.C. 2018).

### B. Plaintiffs Fail to Demonstrate the Critical Factors Necessary for Nonstatutory Review

Plaintiffs' opposition makes no real effort to demonstrate the critical factors needed for nonstatutory review. Confusingly, Plaintiffs assert that Drs. Adirim and Marks somehow deprived them of a means of seeking judicial review of their statutory claim. Opp. at 26-27. Plaintiffs do not explain why they cannot seek APA

review of a final agency action—such as a BCMR decision. *Cf. Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 901 (2023) (describing *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10-15 (2012) in the context of a different doctrine) ("Although [agency] might not be able to hold the draft law unconstitutional, . . . the Court of Appeals could [on judicial review of the agency's decision]—and that was sufficient to ensure 'meaningful review' of [plaintiff's] claim.").

If no final agency action exists, the APA envisions that plaintiffs will generate one by first seeking relief from the agency. *See Cousins v. Sec'y of U.S. Dep't of Transp.*, 880 F.2d 603, 610 (1st Cir. 1989). For example, Plaintiffs can create a record before the BCMR encompassing all their evidence and arguments about their claimed inability to find an FDA-licensed dose of a COVID-19 vaccine. *See id*. If the BCMR denies their request to be restored to the pre-mandate status quo, "the same information will make up part of the record on appeal." *See id*. Nonstatutory review is unavailable to "circumvent" these "procedural requirements." *Puerto Rico v. United States*, 490 F.3d 50, 60 (1st Cir. 2007). Plaintiffs' opposition abandons any argument that they satisfy the remaining critical factors.

### C. The NDAA Does Not Apply Retroactively to All Prior Actions Taken by the Military Related to the COVID-19 Vaccination Requirement.

As set forth in Defendants' motion, Congress did not intend the NDAA direction to rescind the mandate to apply retroactively to all prior actions taken by

the military, MTD at 53-55, and Plaintiffs admit that "rescind" and "rescission" have more than one definition, Opp. at 6-7.

Plaintiffs argue that NDAA § 525 should be presumed retroactive because it is "remedial." Opp. at 5 (citing 2 Sutherland Stat. Const. § 41:3 (8th ed. Nov. 2022)). But section 525 is not remedial—it directs the Secretary of Defense to rescind a policy. Moreover, Plaintiffs misstate the law. "Our decisions simply do not support the proposition that we have espoused a 'presumption' in favor of retroactive application of restorative statutes." *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 310 (1994). Even for remedial or restorative statutes, if Congress intends "to reach conduct preceding" enactment, Congress must make that intent clear. *Id*. at 313. Here, Congress did not.[7]

---

[7] Indeed, additional legislative history confirms Defendants' reading of the statute. For example, on December 15, 2022, even though the NDAA already included the word "rescind," Senator Johnson proposed an amendment to require the military to reinstate and provide backpay to members who were discharged "solely on the refusal of such member to receive a vaccine for COVID-19," and for those who received any adverse action "to compensate such member for any pay and benefits lost as a result of such punishment." S. Amdt. 6526 to H.R. 7776, 117 Cong. (2022), https://www.congress.gov/amendment/117th-congress/senate-amendment/6526/text. The Senate rejected the proposed amendment. *See* https://www.congress.gov/amendment/117th-congress/senate-amendment/6526/actions.   And a month after the NDAA, nineteen senators introduced a bill that Senator Cruz stated "builds off of the [NDAA]" and "includes measures not incorporated into the NDAA, including a requirement that the Secretary of Defense to offer reinstatement to service members who were fired over the military's COVID-19 vaccine mandate." *Sen. Cruz Press Release,* https://perma.cc/49PR-SQ9Y. Representative Bishop, who offered a companion bill in the House, explained that "last year's NDAA . . . didn't provide any meaningful remedies for servicemembers who were kicked out due to the mandate." *Id.* These statements reflect a collective understanding that the NDAA did not provide the remedies sought by Plaintiffs in this case.

Plaintiffs also argue that the word "rescind" must be retroactive because the relationship between Service members and Defendants is allegedly "contractual." Opp. at 5-6.[8] But the NDAA does not alter or rescind a contract, and even in contract law, this term has different meanings.  The retroactive contract remedy sometimes called "rescission" does not apply here because Plaintiffs are not seeking reimbursement to cover costs for partial performance. MTD at 54-55.

Plaintiffs' claim that the statute required unwinding of all consequences of the now-defunct vaccination requirement is meritless.

### D. Informed Consent Claims Should Be Dismissed for Additional Reasons.

Plaintiffs insist the Court's prior holdings on informed consent issues confirm that their current claims survive.  Opp. at 26.  Defendants previously explained that the TAC does not appear to raise the claims that previously survived a motion to dismiss, MTD, at 55-56, and Plaintiffs have no response.

Plaintiffs appear to concede now that there was no "consent decree" in the *Doe v. Rumsfeld* matter.  Thus, even if that decision were applicable here (which it is not), Defendants cannot be "estopped" from purportedly taking a contrary position.  Instead, Plaintiffs argue that the decisions by the Court in that case should

---

[8] Plaintiffs' premise is incorrect. "Federal employees, both military and civilian, serve by appointment, not contract, and their rights to compensation are a matter of 'legal status' . . . ." *Schism v. United States*, 316 F.3d 1259, 1274-75 (Fed. Cir. 2002); *see also Bell v. United States*, 366 U.S. 393, 401 (1961).

be taken as "persuasive precedent" on the informed consent claims.  Opp. at 29-30.

But that Court was addressing a very different issue, MTD at 57-59, and in any event,

other district court judges reached other conclusions with respect to the anthrax

vaccine challenges.  *See, e.g., Mazares v. Dep't of the Navy*, 302 F.3d 1382, 1385

(Fed. Cir. 2002); *O'Neil v. Sec'y of the Navy*, 76 F. Supp. 2d 641, 645 (W.D. Pa.

1999); *Martin v. Donley*, 886 F. Supp. 2d 1, 5–6 (D.D.C. 2012); *Bates v. Donley*,

935 F. Supp. 2d 14, 29 (D.D.C. 2013).  Nothing about *Doe v. Rumsfeld* supports any

claim here.

### E.  Claims Against FDA Should be Dismissed For Additional Reasons.

Plaintiffs do not respond to Defendants' additional reasons to dismiss the FDA

claims.  Specifically, Plaintiffs' "interchangeability" arguments fail as a matter of

law.  FDA has ample authority to make statements about interchangeability, and

FDA has not "waived" any requirements applicable to EUA vaccines. MTD at 59-

62. Those arguments are conceded.

### F.  Plaintiffs' APA Claims Should Be Dismissed on the Pleadings.

Although "'[s]ummary judgment is the proper mechanism for deciding, as a

matter of law, whether an agency action is supported by the administrative record[,]

. . . [D]efendants may have solid grounds for moving to dismiss complaints in cases

brought under the APA." *Zemeka v. Holder*, 963 F. Supp. 2d 22, 24 (D.D.C. 2013)

(quoting *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C.

2010)).  Most grounds raised by Defendants are threshold "bars," *see id.*, that do not require application of a 5 U.S.C. § 706 standard to a particular agency action.  *See* MTD at 15-53; *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (courts may dismiss complaints that fail to provide defendants adequate notice of the claim).[9]

Defendants here raise certain non-threshold grounds for dismissal, MTD, at 53-62, and "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  Even under the APA, no record is needed to resolve claims that fail as a matter of law. *See Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266 (D.C. Cir. 2001); *Mohammadi-Motlagh v. INS*, 727 F.2d 1450, 1452 (9th Cir. 1984); *see also Farrell v. Tillerson*, 315 F. Supp. 3d 47, 65-69 (D.D.C. 2018) (contrasting need for the record for APA § 706(2)(C) claims and § 706(2)(A) claims).  Plaintiffs' APA claims fail at the outset because of dispositive legal issues that do not require the Court to

---

[9] The administrative record for an APA claim includes everything "considered, directly, or indirectly, by [the agency] in the rendering of the [discrete] decision at issue."  *See, e.g., Gupta v. U.S. Att'y Gen.*, 2015 WL 13788645, at *1 (M.D. Fla. May 5, 2015).  Because the TAC does not identify the discrete action at issue in each APA count, it would be difficult or impossible to compile and organize an administrative record for them.  *See supra* at 18-19; MTD, at 47-48.

decide whether an agency action was supported by its administrative record.  *See* MTD, at 53-62.[10]

## CONCLUSION

For the foregoing reasons, the court should grant Defendants' motion to dismiss.

Dated:  June 2, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ *Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.

---

[10] Plaintiffs have also failed to demonstrate that any "issue is indeed genuine and material and so a hearing would be productive."  *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998) (citation omitted).

Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: Amy.Powell@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this submission contains 6,158 words, not including the case style, tables, signature block, and certificate of service, according to Microsoft Word's word count function and thus is in compliance with Local Rule 7.1(F), and the Order dated April 27, 2023, ECF No. 143 (requiring no more than 6,400 words).

/s/ *Amy E. Powell*

United States Department of Justice
Civil Division, Federal Programs Branch
c/o U.S. Attorney's Office
150 Fayetteville St, Ste 2100
Raleigh, NC 27601
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: Amy.Powell@usdoj.gov