## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**BENJAMIN COKER, JOSEPH
CONNELL, et al.,**

      **Plaintiffs,**

**v.**                                **Case No. 3:21-cv-1211-AW-HTC**

**LLOYD AUSTIN, III, in his official
capacity as Secretary of Defense, et al.,**

      **Defendants.**

_____/

## ORDER GRANTING MOTION TO DISMISS

Eighteen current or former military servicemembers initiated this lawsuit to challenge the Department of Defense's COVID-19 vaccine mandate. Defendants are the DOD, Army, Navy, and Air Force Secretaries (Military Defendants), as well as the Food and Drug Administration Commissioner. (Plaintiffs also originally named the Health and Human Services Secretary, but their operative complaint does not.)

DOD rescinded the mandate, but Plaintiffs' operative complaint—the Third Amended Complaint (TAC)—still challenges it as unlawful. *See* ECF No. 141. Defendants moved to dismiss under Rules 12(b)(1) and (6). ECF No. 144; ECF No. 144-1 (MTD). They argued that the entire case is nonjusticiable—raising standing, mootness, and ripeness. They separately argued that Plaintiffs failed to state a claim. Plaintiffs responded, requesting an evidentiary hearing on jurisdiction. ECF No. 145 (Resp.). Rather than hold a hearing, the court directed Plaintiffs to

1

identify any of Defendants' factual assertions they disputed. ECF No. 152. Plaintiffs responded with additional affidavits, and they indicated they no longer sought an evidentiary hearing. ECF No. 155. Each side has also filed several notices of supplemental authority. ECF Nos. 147-151.

The motion is now ripe. This order grants Defendants' motion to dismiss for lack of subject-matter jurisdiction.

## I.   BACKGROUND

Plaintiffs serve or served in the Army, Navy (including the Marine Corps), or Air Force. ECF No. 137-3 at 2; TAC at 12-21.[1] One Plaintiff (Lund) was vaccinated while the mandate was in place, TAC ¶ 30, and the rest were not. Each (other than Lund) sought an exemption from the mandate, but none was successful. ECF No. 137-3 at 2; TAC at 12-21. Because they refused vaccination, the military took action—including with reprimands or counseling letters, the initiation of involuntary separation processes, duty and travel restrictions, and delayed or canceled promotions. ECF No. 137-3 at 2; ECF No. 137-4; TAC ¶ 84.

After I denied preliminary injunctive relief, Plaintiffs filed a second amended complaint. Defendants moved to dismiss, and I granted that motion in part with leave to amend. ECF No. 126. The parties then jointly moved to stay the case while

---

[1] All facts in this section are undisputed. And all record citations are to CM/ECF-assigned page numbers.

Congress considered the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (NDAA). ECF No. 130. The NDAA, which the President signed into law in December 2022, stated that "the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19." Pub. L. No. 117-263, 136 Stat. 2395, 2571-72 (2022).

DOD then rescinded the mandate. TAC ¶ 99 (citing ECF No. 137-2 (Recission Memo)). DOD's Recission Memo stated that no servicemembers "shall be separated solely on the basis" of refusing a vaccine if they sought an accommodation. Recission Memo at 2. It further stated that each military branch will update personnel records "to remove any adverse actions" for those people. *Id.* "Other standing Departmental policies" on immunization remained in effect, preserving commanders' authority to consider vaccine status "in making deployment, assignment, and other operational decisions"—such as when other countries require vaccinations. *Id.* at 3.

DOD later issued a Guidance Memo regarding recission. TAC ¶ 100; ECF No. 144-5 (Guidance Memo). The Guidance Memo specified that DOD commanders will not require any servicemember to get a COVID-19 vaccine and will not consider vaccination status in making deployment, assignment, or operational decisions. Guidance Memo at 2-3. The Guidance Memo provided the exception (noted above) for when specific operational requirements demanded

otherwise—such as when vaccines were required for entry into other countries. *Id.* The Guidance Memo also amended DOD Instruction 6205.02 to require superiors to request approval before mandating any vaccination. *Id.* at 3.[2]

The branches themselves implemented the NDAA and DOD Memos by ordering recission of any adverse actions that were based solely on vaccination status, including halting separation proceedings and updating personnel files. TAC ¶ 101 (citing ECF No. 135-1 (Army); ECF No. 135-2 (Navy); ECF No. 135-3 (Marine Corps); ECF No. 135-4 (Air Force)). Military representatives testified before Congress that the military may still discipline or prosecute servicemembers who previously refused vaccination without making an accommodation request. TAC ¶¶ 111-119; ECF No. 137-11. They also testified that any servicemember who sought accommodations and was discharged because of vaccine status could seek reentry. ECF No. 137-11 at 6, 12.

After these developments, Plaintiffs filed their Third Amended Complaint, asserting six Administrative Procedure Act claims (Counts One through Three and Five through Seven) and two nonstatutory claims (Counts Four and Eight). Plaintiffs still seek declaratory and injunctive relief against any vaccine requirement and

---

[2] *See also* DOD Instr. 6205.02: DOD Immunization Program § 2.11(g) (Feb. 27, 2023 update) (incorporating the amendment), available at https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/620502p.pdf?ver=z0y1F_Enh5ZAcMDq5hLz-Q%3d%3d.

related "adverse actions"—such as assignment restrictions, reprimands, and lost promotions. TAC at 11, 89-90.

Five Plaintiffs (Coker, Connell, Furman, Thompson, and Lund) have retired since the case began. TAC ¶¶ 19-20, 25, 30, 36; *compare also* ECF No. 152 at 2-3, *with* ECF No. 155 at 1. Another (Sigoloff) will resign on August 31 with an honorable discharge, ECF No. 155 at 4, and another (Kupper) will voluntarily retire on September 1, *id.* at 3-4.

## II.   STANDARD OF REVIEW

Rule 12(b)(1) motions to dismiss for lack of jurisdiction take two forms. "Facial attacks" require courts to ask whether a plaintiff plausibly alleged jurisdiction exists, taking the complaint's allegations as true. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. May 1981) (analogizing Rule 12(b)(1) facial attacks to Rule 12(b)(6) motions); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

"Factual attacks" challenge a court's jurisdiction "irrespective of the pleadings" and allow courts to consider "matters outside the pleadings." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)); *Kennedy v. Floridian Hotel, Inc.*,

998 F.3d 1221, 1232 (11th Cir. 2021) ("[T]he court may consider both oral and written evidence in the record . . . ." (citing *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1170 (11th Cir. 2011))). In doing so, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Kennedy*, 998 F.3d at 1230 (quoting *Lawrence*, 919 F.2d at 1529).

I construe Defendants' motion as a factual attack, as it (and Defendants' reply) relied on evidence beyond the complaint. *See* MTD at 29-30 (citing both Rule 12(b)(1) standards). A court need not hold an evidentiary hearing to resolve a factual attack. *Kennedy*, 998 F.3d at 1232 (citing *Odyssey Marine*, 657 F.3d at 1170). "[I]t is within the district court's discretion 'to devise a method for making a determination with regard to the jurisdictional issue,'" *id.* (quoting *Odyssey Marine*, 657 F.3d at 1170), so long as the nonmovant is afforded an "ample opportunity to present evidence bearing on the existence of jurisdiction," *id.* (quoting *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)). Plaintiffs have had an ample opportunity here and have supplemented their response with new affidavits. *See* ECF Nos. 152, 155. Moreover, although they originally requested an evidentiary hearing, Resp. at 34, Plaintiffs have since indicated that one is unnecessary, ECF No. 155 at 7.

### III.   ANALYSIS

Federal courts cannot "adjudicate hypothetical or abstract disputes," or "exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). They only have jurisdiction when there is an actual controversy, and there must be an actual controversy at all stages of a lawsuit. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732-34 (2008). Here, Defendants contend there is no jurisdiction. They present arguments based on standing, ripeness, and mootness—all of which implicate the court's jurisdiction.

Standing requires a personal stake in the case—Plaintiffs must show (1) an injury that is concrete, particularized, and actual or imminent; (2) traceability; and (3) redressability. *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)). Ripeness resembles standing's imminence requirement and "keeps federal courts from deciding cases prematurely." *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006) (citing *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)). And mootness occurs when a live controversy initially existed, but new circumstances make the court unable to afford meaningful relief. *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189-90 (11th Cir. 2011) (quoting *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009)).

*i.*

Counts One and Two do not challenge the old mandate itself, but instead allege that the Military Defendants have implemented new "post-recission vaccination orders" that violate the APA. TAC ¶¶ 156, 173. In other words, these counts claim Military Defendants have reenacted a new "de facto" vaccine mandate after the NDAA required them to rescind the original.[3]

Defendants contend Plaintiffs have not established standing for these counts, MTD at 33-36, and I agree. It is unclear what "post-recission" actions Counts One and Two challenge; those counts broadly allege in conclusory fashion that the Military Defendants have "orders and policies retaining existing restrictions (or reenacting . . . a *de facto* mandate or restrictions), [are] continuing to enforce pre-Rescission requirements and punish past violations, and refus[e] to restore the pre-Mandate *status quo*." TAC ¶¶ 156, 173. Plaintiffs allege no facts in the Third Amended Complaint (or their affidavits) showing that any of them will be injured by any new post-recission action or policy. That makes any dispute here purely hypothetical.

Plaintiffs insist that they face credible threats of future harm because DOD's retention of pre-mandate policy supports the conclusion that there is a new de facto

---

[3] To the extent Counts One and Two challenge the rescinded DOD mandate itself, they are moot for the same reasons that I will discuss as to Counts Three through Eight.

vaccine mandate. Resp. at 10-12; *see also* Recission Memo at 3 (stating commanders may consider vaccine status in making "deployment, assignment, and other operational decisions"); Guidance Memo at 2-3 (same). But they have not alleged any facts to suggest that this is so. In fact, Recission and Guidance Memos, the amended DODI 6205.02, and the intrabranch recission orders all explicitly cabin commanders' discretion to consider vaccination status, much less mandate any COVID-19 vaccine. Excluding limited circumstances (like compliance with foreign-nation entry requirements), DOD directed commanders to not consider vaccination status at all in making operational decisions. *See* Guidance Memo at 3. Plaintiffs have alleged no facts to suggest that any superior will order any Plaintiff to get a COVID-19 vaccine in the immediate future.[4]

*ii.*

Counts Three through Five challenge the rescinded DOD mandate itself. TAC ¶ 190 (DOD and the Armed Services exceeded authority by mandating EUA vaccines), ¶¶ 220-221 (similar), ¶ 230 (DOD and the Armed Services acted arbitrarily and capriciously by mandating EUA vaccines). Consistent with the court's earlier order, Plaintiffs maintain that these are facial challenges, not as-applied. Resp. at 26. But whether facial or as-applied, the claims are moot.

---

[4] This is obvious to the retired or soon-to-be retired Plaintiffs. *Cf. Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023); *Crocker v. Austin*, 2023 WL 3261596, at *3 (W.D. La. May 4, 2023).

Plaintiffs "cannot be subject to a vaccine requirement that no longer exists." *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted); *accord U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023) (courts are powerless to "enjoin policies that no longer exist");[5] *cf. also Health Freedom Def. Fund v. President of U.S.*, 71 F.4th 888, 892 (11th Cir. 2023) (holding challenge to a non-military vaccine mandate was moot because "there [wa]s no longer any Mandate . . . to set aside or uphold"). The NDAA, Recission Memo, and intrabranch recission memos afford Plaintiffs the relief they seek in Counts Three through Five; there is nothing left for the claims to achieve. *See Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023); *cf.* TAC at 11, 89-90 (requesting, among similar types of relief, a declaration that the mandate "is null and void").[6]

To the extent Plaintiffs request relief that would restore them to their pre-mandate status quo, the Military Defendants have shown that they have rescinded

---

[5] The court lacks jurisdiction to entertain any as-applied challenge to military policy. ECF No. 126 at 12-13.

[6] In addition to *Robert*, *U.S. Navy Seals 1-26*, and *Roth*, other courts have dismissed as moot similar lawsuits challenging the DOD mandate. *Short v. Berger*, 2023 WL 2258384 (9th Cir. Feb. 24, 2023); *Alvarado v. Austin*, No. 23-1419 at ECF No. 25 (4th Cir. Aug. 3, 2023); *Bazzrea v. Mayorkas*, --- F. Supp. 3d ----, 2023 WL 3958912, at *4-7 (S.D. Tex. June 12, 2023); *Davis v. Austin*, 2023 WL 4352444, at *11 (M.D. Fla. July 5, 2023); *Bongiovanni v. Austin*, 2023 WL 4352445, at *12 (M.D. Fla. July 5, 2023); *Crocker v. Austin*, 2023 WL 4143224, at *8 (W.D. La. June 22, 2023); *Clements v. Austin*, 2023 WL 3479466, at *3-4 (D.S.C. May 16, 2023); *Colonel Fin. Mgmt. Officer v. Austin*, 2023 WL 2764767, at *2 (M.D. Fla. Apr. 3, 2023) (indicative ruling).

all adverse actions against the Plaintiffs based solely on their refusal to get vaccinated (putting aside the five retired Plaintiffs, whose claims are clearly moot). Six Plaintiffs (Cossette, Craymer, Kaltrider, Morgan, Roberts, Stermer) concede that they experience no continuing adverse actions based solely on refusing to get vaccinated. *Compare* ECF No. 152, *with* ECF No. 155 at 1. The remaining Plaintiffs did not concede that fact, *see* ECF No. 155, but Defendants have shown that they face no live harms that the court can redress with their requested prospective relief.[7] And while several Plaintiffs fear future reputational harms because of past

---

[7] Sigoloff's ongoing actions related to conduct other than his being unvaccinated. *See* ECF No. 137-4 at 24-27 (being late one day, threatening a special agent, social media activity, and handing out "business cards"); *see also* ECF No. 144-13. Similarly, Kupper's only lingering adverse action is a reprimand for statements he made on a TV show. ECF No. 155-5. Karr was separated but she has never attempted to rejoin the Air Force after the NDAA (despite the Military Defendants' invitation to do so), ECF No. 155-4; ECF No. 137-11 at 6, 12, so she is not involuntarily out of the military. Cothran and Snow cited only past monetary harms, *see* ECF Nos. 155-1, 155-7, which do not support a live controversy as to prospective relief. The Air Force canceled Dixon's AFSOC/JA assignment before the NDAA but has since reassigned her (although to a post previously held by a lower-ranked servicemember). ECF No. 155-2; ECF No. 144-8 ¶ 6. And Harwood's canceled promotion has now been awarded. ECF No. 155-3. There is a Fitness Report that is still on his file, but it is unclear whether it was based on refusing to get vaccinated. *See id.* To the extent it was, Harwood submitted a pending request to correct it, *id.*, and any claim that the military is not rescinding it fast enough is not ripe even if not moot, *see Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386-87 (D.C. Cir. 2012) ("[D]eclining jurisdiction . . . while there is still time for the challenging party to 'convince the agency to alter a tentative position' provides the agency 'an opportunity to correct its own mistakes . . .,' potentially eliminating the need for (and costs of) judicial review." (citation omitted)).

enforcement, *e.g.*, TAC ¶ 22; ECF No. 137-4 at 13-14; ECF No. 155-5 at 3-4, reputational injuries cannot create jurisdiction where they are merely "the lingering effect[s] of an otherwise moot aspect of a lawsuit"—here, the DOD mandate's enforcement. *Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011) (quoting *Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003)). Of course, even if any Plaintiff suffered a lingering harm based on refusing to get vaccinated, it would still be unclear how the court can afford effectual relief because there remains no mandate to declare unlawful or enjoin. *See Robert*, 72 F.4th at 1164; *U.S. Navy Seals 1-26*, 72 F.4th at 672; *Health Freedom Def. Fund*, 71 F.4th at 892.

Arguing they still face a credible threat of future enforcement under the old mandate, Plaintiffs rely on the congressional testimony by military representatives that the military may still prosecute servicemembers who did not get vaccinated and did not request accommodations while the mandate was active. Resp. at 14-15, 19-20. That does not show any credible enforcement threat against *these* Plaintiffs, though. They all requested accommodations. ECF No. 137-3 at 2. For that same reason, their reliance on *Abbott v. Biden* is misplaced. 70 F.4th 817 (5th Cir. 2023); *see* ECF No. 147. A state governor initiated that suit on behalf of his state's national guardsmen, which included more than 1,000 members who were "unvaccinated[ and] never sought an accommodation." *Abbott*, 70 F.4th at 825. The Fifth Circuit

recognized that but for those guardsmen, the NDAA would have "very likely moot[ed]" the appeal. *Id.* at 824-25.

Next, Plaintiffs invoke two exceptions to the mootness doctrine, but neither applies. Plaintiffs first invoke the exception that voluntarily ceasing conduct does not ordinarily moot a case. Resp. at 17-18. Whether they can rely on that exception is questionable because there was nothing voluntary about the DOD's recission— duly enacted legislation stated, in no uncertain terms, "the Secretary of Defense shall rescind the mandate." NDAA, Pub. L. No. 117-263, 136 Stat. at 2571-72; *see also U.S. Navy Seals 1-26*, 72 F.4th at 674 n.7 (noting the voluntariness question but not resolving it). But either way, the exception does not apply. The Military Defendants are entitled to a rebuttable presumption that they will not reengage in the ceased conduct. *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) (citing *Troiano v. Supervisor of Elections*, 382 F.2d 1276, 1283 (11th Cir. 2004)). Plaintiffs neither allege nor cite facts rebutting that presumption.

The second exception Plaintiffs advance is for disputes capable of repetition yet evading review. But Plaintiffs cite no facts supporting this exception either. *See Robert*, 72 F.4th at 1164-65 (holding neither mootness exception saved a DOD-mandate challenge); *see also U.S. Navy Seals 1-26*, 72 F.4th at 673-75; *Roth*, 62 F.4th at 1119; *Clements v. Austin*, 2023 WL 3479466, at *4 (D.S.C. May 16, 2023); *Colonel Fin. Mgmt. Officer v. Austin*, 2023 WL 2764767, at *2 (M.D. Fla. Apr. 3,

2023). Plaintiffs emphasize that the Military Defendants still defend the rescinded mandate as lawful, *see* Resp. at 14-15, 19, but "the government need not concede unlawful conduct to moot an action by rescission," *Colonel Fin. Mgmt. Officer*, 2023 WL 2764767, at *2; *cf. Health Freedom Def. Fund*, 71 F.4th at 892 ("[T]hat fact has little, if anything to do with the voluntary-cessation analysis." (cleaned up)).

*iii.*

That leaves Counts Six through Eight, which are against the FDA. These counts allege that FDA exceeded its authority in two ways. One, Plaintiffs contend that FDA made a nonstatutory determination that EUA and licensed vaccine was interchangeable. TAC ¶¶ 241, 276. And two, Plaintiffs challenge so-called "FDA waivers." *Id.* ¶¶ 258, 273. The gist of their FDA-waiver claims is that when FDA exercised its discretion to not take enforcement action with respect to mislabeled vaccine, FDA "waived" requirements mandated by statute. *See id.* ¶¶ 260-261 (citing ECF No. 65-14 ¶ 13)). But as to each of Counts Six through Eight, there is again no jurisdiction. Assuming Plaintiffs had standing to bring these claims in the first instance, *see* MTD at 44-48, there is no requirement that they get any COVID-19 vaccine. *See Bazzrea v. Mayorkas*, --- F. Supp. 3d ----, 2023 WL 3958912, at *4-7 (S.D. Tex. June 12, 2023) (holding that servicemembers' claims against FDA Commissioner were moot). Thus, there is no meaningful relief the court can provide, so the claims are moot.

14

## III.

This court lacks subject-matter jurisdiction over any of Plaintiffs' claims. For that reason, I do not resolve Defendants' Rule 12(b)(6) arguments.

The motion to dismiss (ECF No. 144) is GRANTED. The clerk will enter a judgment that says, "This case is dismissed without prejudice for lack of subject-matter jurisdiction."

The clerk will then close the file.

SO ORDERED on August 25, 2023.

                        *s/ Allen Winsor*
                        United States District Judge